

# United States Tax Court

Washington, DC 20217

INDU RAWAT,

      Petitioner

      v.

COMMISSIONER OF INTERNAL REVENUE,

      Respondent

Docket No. 15340-16.

## NOTICE OF FILING OF NOTICE OF APPEAL TO COURT OF APPEALS

TO:

| | | |
|---|---|---|
| Mark J. Langer, Clerk of Court<br>U. S. Court of Appeals<br>for the District of Columbia<br>Circuit<br>E. Barrett Prettyman<br>William B. Bryant Annex<br>333 Constitution Avenue, NW<br>Washington, DC 20001-2866 | William M. Paul<br>Acting Chief Counsel<br>Internal Revenue Service<br>1111 Constitution Ave, NW<br>Washington, DC 20224 | Christopher S. Rizek<br>Caplin & Drysdale, Chartered<br>One Thomas Circle, N.W.<br>Suite 1100<br>Washington, DC 20005 |

The United States Court of Appeals for the **D.C.** Circuit and the parties are hereby notified that on **May 31, 2023, petitioner** filed a Notice of Appeal to Court of Appeals from the **May 22, 2023, Order and Decision** of the United States Tax Court. A copy of that Notice of Appeal is herewith served upon you.

The parties are hereby notified that the papers constituting the record of the case in the United States Tax Court include any transcripts of proceedings. The record on appeal will be sent to the United States Court of Appeals **within 30 days of receiving the Court of Appeals case number**.

Counsel for the Commissioner of Internal Revenue are **FRANCESCA UGOLINI, CHIEF, APPELLATE SECTION, TAX DIVISION, UNITED STATES DEPARTMENT OF JUSTICE, P.O. BOX 502, WASHINGTON, D.C. 20044, UPON WHOM SERVICE OF DOCUMENTS AND PAPERS IN PROCEEDINGS IN THE COURT OF APPEALS IS TO BE MADE**, and William M. Paul, Acting Chief Counsel, Internal Revenue Service.

(Signed) Stephanie A. Servoss
Clerk of the Court

Enclosures:  Copy of Notice of Appeal and Docket Entries.

Fee Paid:    Yes ‗‗XX‗‗  No ‗‗‗‗



# United States Tax Court
Washington, DC 20217

Indu Rawat, Petitioner v. Commissioner of Internal
Revenue, Respondent

Docket No. 15340-16

## **Printable Docket Record**

| Name | Contact | Counsel |
|------|---------|---------|
| Indu Rawat | 50 Raffles Place<br>#30-30<br>048623, Singapore<br>Singapore<br><br>No Phone | Christopher S. Rizek (RC0369)<br>crizek@capdale.com<br>202-862-8852<br><br>Nathan J. Hochman (HN0101)<br>nhochman@bgrfirm.com<br>310-274-7100 |

| Respondent Counsel | Respondent Counsel Contact |
|--------------------|----------------------------|
| Shan-Zu Katy Lin | s.katy.lin@irscounsel.treas.gov<br>313-234-1780 |
| James M. Cascino | james.m.cascino@irscounsel.treas.gov<br>312-368-8654 |
| Eric R. Skinner | eric.r.skinner@irscounsel.treas.gov<br>313-234-1851 |
| H. Barton Thomas | barton.thomas@irscounsel.treas.gov<br>312-368-8155 |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 1 | 07/07/16 | P | **PETITION FILED by Petr. Indu Rawat: FEE PAID** | See Filings and Proceedings | | 07/12/16 | R |
| 2 | 07/07/16 | RQT | **REQUEST FOR PLACE OF TRIAL AT WASHINGTON, DC by Petr. Indu Rawat** | See Filings and Proceedings | | 07/12/16 | R |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| 3 | 08/15/16 | M011 | **MOTION FOR EXTENSION OF TIME TO 11/8/16 TO ANSWER by Resp. (NO OBJECTION)** | See Filings and Proceedings | GRM 08/15/2016 | 08/15/16 | P |
| 4 | 08/15/16 | MISC | **GRANTED MOTION FOR EXTENSION OF TIME TO 11/8/16 TO ANSWER** | See Filings and Proceedings | | 08/16/16 | B |
| 5 | 11/04/16 | A | **ANSWER by Resp. (EXHIBITS)** | See Filings and Proceedings | | 11/04/16 | P |
| 6 | 11/21/16 | NCA | **NOTICE OF CHANGE OF ADDRESS by Counsel Michael J. Desmond** | See Filings and Proceedings | | 11/21/16 | R |
| 7 | 02/09/17 | M059 | **MOTION TO CHANGE PLACE OF TRIAL TO DETROIT, MI by Resp. (NO OBJECTION)** | See Filings and Proceedings | GRM 02/09/2017 | 02/09/17 | P |
| 8 | 02/09/17 | MISC | **GRANTED MOTION TO CHANGE PLACE OF TRIAL TO DETROIT, MI by Resp.** | See Filings and Proceedings | | 02/10/17 | B |
| 9 | 04/27/17 | NTD | **NOTICE OF TRIAL ON 9/18/2017 AT DETROIT, MI.** | | | 04/27/17 | B |
| 10 | 04/27/17 | SPTO | **STANDING PRE-TRIAL ORDER ATTACHED TO NOTICE OF TRIAL** | | | 04/27/17 | B |
| 11 | 06/21/17 | M006 | **MOTION FOR CONTINUANCE OF TRIAL GENERALLY by Resp. & Petr. Indu Rawat (NO OBJECTION)** | See Filings and Proceedings | GRM 06/22/2017 | | |
| 12 | 06/22/17 | MISC | **GRANTED MOTION FOR CONTINUANCE** | See Filings and | | 06/23/17 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|---|---|---|---|---|---|---|---|
| | | | OF TRIAL GENERALLY by Resp. & Petr. Indu Rawat | Proceedings | | | |
| 13 | 07/12/17 | OAJ | ORDER THAT CASE IS ASSIGNED TO JUDGE GUSTAFSON . FOR TRIAL OR OTHER DISPOSITION. | | | 07/12/17 | B |
| 14 | 07/18/17 | O | ORDER PARTIES BY 8-31-17 FILE A JOINT STATUS REPORT. | | | 07/19/17 | B |
| 15 | 08/28/17 | RPT | STATUS REPORT by Resp. (STRICKEN) | See Filings and Proceedings | | 08/28/17 | P |
| 16 | 08/28/17 | RPT | STATUS REPORT by Resp. & Petr. Indu Rawat | See Filings and Proceedings | | | |
| 17 | 08/29/17 | O | ORDER STATUS REPORT FILED 8/28/17 (INDEX NO 15) IS STRICKEN FROM RECORD. PARTIES BY 12/30/17 FILE A STATUS REPORT. | | | 08/31/17 | B |
| 18 | 12/14/17 | RPT | STATUS REPORT by Resp. & Petr. Indu Rawat | See Filings and Proceedings | | | |
| 19 | 12/14/17 | O | ORDER PARTIES BY 4/30/18 FILE A JOINT STATUS REPORT. | | | 12/15/17 | B |
| 20 | 04/25/18 | RPT | STATUS REPORT by Resp. & Petr. Indu Rawat | See Filings and Proceedings | | | |
| 21 | 04/26/18 | O | ORDER PARTIES BY 7/26/18, AND EVERY 90 DAYS THEREAFTER, SHALL FILE A JOINT | | ORD 04/06/2020 | 04/26/18 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| | | | **STATUS REPORT. (VACATED)** | | | | |
| 22 | 05/09/18 | EA | **ENTRY OF APPEARANCE by Counsel Christopher S. Rizek for Petr. Indu Rawat** | See Filings and Proceedings | | 05/09/18 | B |
| 23 | 05/15/18 | M112 | **MOTION TO WITHDRAW AS COUNSEL by Michael J. Desmond for Petr. Indu Rawat (NO OBJECTION)** | See Filings and Proceedings | GRM 05/24/2018 | 05/15/18 | R |
| 24 | 05/24/18 | MISC | **GRANTED MOTION TO WITHDRAW AS COUNSEL by Counsel Michael J. Desmond** | See Filings and Proceedings | | 05/24/18 | B |
| 25 | 07/20/18 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |
| 26 | 10/24/18 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |
| 27 | 01/22/19 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |
| 28 | 04/15/19 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |
| 29 | 07/10/19 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | 07/10/19 | P |
| 30 | 09/19/19 | EA | **ENTRY OF APPEARANCE by Counsel Nathan J. Hochman for Petr. Indu Rawat** | See Filings and Proceedings | | 09/19/19 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 31 | 10/08/19 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |
| 32 | 12/20/19 | M034 | **Motion for Summary Judgment** (Objection) | Petr. Indu Rawat | Granted in Part - ORD 7/28/2022 & Denied in Part - ORD 02/07/2023 | 12/20/19 | R |
| 33 | 12/20/19 | MISP | **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT by Petr. Indu Rawat** | See Filings and Proceedings | | 12/20/19 | R |
| 34 | 12/26/19 | O | **ORDER THAT RESPONDENT BY 1/31/20 SHALL FILE A REPLY TO PETITIONER'S MOTION FOR SUMMARY JUDGMENT. PETITIONER BY 2/28/20 SHALL FILE A REPLY TO RESPONDENT'S RESPONSE. IF RESPONDENT FILES A CROSS-MOTION, THEN PETITIONER'S REPLY DUE BY 2/28/20 SHALL INCLUDE A RESPONSE TO THE CROSS-MOTION AND RESPONDENT BY 3/27/20 SHALL FILE A REPLY.** | | | 12/26/19 | B |
| 35 | 01/06/20 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 36 | 01/27/20 | M011 | **MOTION FOR EXTENSION OF TIME by Resp. (OBJECTION)** | See Filings and Proceedings | ORD 01/28/2020 | 01/27/20 | P |
| 37 | 01/27/20 | OPPO | **OPPOSITION TO MOTION FOR EXTENSION OF TIME by Petr. Indu Rawat** | See Filings and Proceedings | | 01/27/20 | R |
| 38 | 01/28/20 | O | **ORDER RESP. MOTION FOR EXTENSION OF TIME IS GRANTED IN THAT RESP. BY 3/2/20 FILE A RESPONSE TO MOTION FOR SUMMARY JUDGMENT. PETR. FILE A REPLY TO RESPONSE TO MOTION BY 4/3/20.** | | | 01/28/20 | B |
| 39 | 03/02/20 | RSP | **RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp.** | See Filings and Proceedings | | 03/02/20 | P |
| 40 | 03/02/20 | DCL | **DECLARATION OF S. KATY LIN IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp. (EXHIBITS)** | See Filings and Proceedings | | 03/02/20 | P |
| 41 | 03/02/20 | MISP | **MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp.** | See Filings and Proceedings | | 03/02/20 | P |
| 42 | 04/03/20 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| 43 | 04/03/20 | MISC | **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT by Petr. Indu Rawat** | See Filings and Proceedings | | 04/03/20 | R |
| 44 | 04/06/20 | O | **ORDER THAT THE ORDER DATED 4/26/18 IS VACATED AND STATUS REPORTS NO LONGER NEED TO BE FILED AS ORDERED THEREIN.** | | | 04/06/20 | B |
| 45 | 04/07/20 | NODC | **NOTICE OF DOCKET CHANGE OF REPLY TO MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT BY PETR. INDU RAWAT FILED 04/03/2020. THE DOCKET ENTRY TEXT WAS CHANGED TO BE A REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT.** | | | 04/07/20 | B |
| 46 | 04/17/20 | M115 | **MOTION FOR LEAVE TO FILE FIRST AMENDED RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp. (NO OBJECTION)** | See Filings and Proceedings | GRM 04/20/2020 | 04/17/20 | P |
| 47 | 04/17/20 | MISCL | **FIRST AMENDED RESPONSE TO MOTION FOR SUMMARY** | See Filings and Proceedings | | 04/17/20 | P |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| | | | JUDGMENT by Resp. (ELODGED) | | | | |
| 48 | 04/17/20 | M115 | **MOTION FOR LEAVE TO FILE FIRST AMENDED MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp. (NO OBJECTION)** | See Filings and Proceedings | GRM 04/20/2020 | 04/17/20 | P |
| 49 | 04/17/20 | MISCL | **FIRST AMENDED MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp. (ELODGED)** | See Filings and Proceedings | | 04/17/20 | P |
| 50 | 04/20/20 | MISC | **GRANTED MOTION FOR LEAVE TO FILE FIRST AMENDED MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp.** | See Filings and Proceedings | | 04/20/20 | B |
| 51 | 04/20/20 | MISC | **FIRST AMENDED MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp.** | See Filings and Proceedings | | 04/20/20 | P |
| 52 | 04/20/20 | MISC | **GRANTED MOTION FOR LEAVE TO FILE FIRST AMENDED RESPONSE TO MOTION FOR** | See Filings and Proceedings | | 04/20/20 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| | | | **SUMMARY JUDGMENT by Resp.** | | | | |
| 53 | 04/20/20 | MISC | **FIRST AMENDED MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp.** | See Filings and Proceedings | | 04/20/20 | P |
| 54 | 07/24/20 | RTP | **REPORT by Resp.** | See Filings and Proceedings | | 08/17/20 | P |
| 55 | 08/18/20 | STST | **STIPULATION OF SETTLED ISSUES by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |
| 56 | 04/07/21 | NCAP | **Notice of Change of Address and Telephone Number for Shan-Zu Katy Lin** | | | 04/07/21 | B |
| 57 | 04/07/21 | NCAP | **Notice of Change of Address and Telephone Number for Eric R. Skinner** | | | 04/07/21 | B |
| 58 | 07/20/21 | O | **Order petr. motion for summary judgment is granted in part as to the Non-Inventory gain issue that resp. concedes and is denied in part as to the Inventory Gain issue. Parties by 08/06/2021 file a joint status report that include their recommendations as to further proceedings in this case.** | | ORD 07/28/2022 | 07/20/21 | B |
| 59 | 07/26/21 | RPT | **Status Report** | Resp. & Petr. Indu | | 07/26/21 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| | | | | Rawat | | | |
| 60 | 07/28/21 | O | Order that the parties' request is granted and that second "Ordered" paragraph of our Order of 07/20/2021 is amended to require that the status report be filed no later than 09/13/2021. | | | 07/28/21 | B |
| 61 | 08/18/21 | M000 | Motion for Reconsideration of Petitioner's Motion for Summary Judgment (Attachment(s)) | Petr. Indu Rawat | ORD 07/28/2022 | 08/18/21 | B |
| 62 | 08/24/21 | NODC | Notice of Docket Change for Docket Entry No. 61 | | | 08/24/21 | B |
| 63 | 08/26/21 | O | Order resp. by 09/23/2021 file a response to the motion for reconsideration. Petr. by 10/22/2021 file a reply to the respondent's response to the motion for reconsideration. | | | 08/26/21 | B |
| 64 | 09/13/21 | RPT | Status Report | Resp. & Petr. Indu Rawat | | 09/13/21 | B |
| 65 | 09/13/21 | EA | Entry of Appearance for Respondent | Resp. | | 09/13/21 | B |
| 66 | 09/23/21 | RSP | Response to Motion for Reconsideration of Petitioner's Motion for Summary Judgment | Resp. | | 09/23/21 | B |
| 67 | 10/18/21 | M011 | Motion for Extension of Time (No Objection) | Petr. Indu Rawat | ORD 10/20/2021 | 10/18/21 | B |
| 68 | 10/20/21 | O | Order petr. motion for extension of time filed 10/18/2021 is granted and | | | 10/20/21 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| | | | time to reply is extended to 11/05/2021 | | | | |
| 69 | 10/29/21 | REPL | **Reply to Response to Motion for Reconsideration of Petitioner's Motion for Summary Judgment** | Petr. Indu Rawat | | 10/29/21 | B |
| 70 | 07/28/22 | O | **Order petr's motion for reconsideration filed 08/18/2021 is granted and the Court's Order served 07/20/21 is vacated in its entirety. Petr. motion for summary judgment filed 12/20/2019 is granted in part and denied in part as stated herein. Parties by 08/29/2022 file a joint status report that shall include their recommendations as to further proceedings in this case.** | | Vacated in Part -- See 09/09/22 Order | 07/28/22 | B |
| 71 | 08/23/22 | STST | **Stipulation of Settled Issues** | Resp. & Petr. Indu Rawat | | 08/23/22 | B |
| 72 | 08/29/22 | RPT | **Status Report** | Resp. & Petr. Indu Rawat | | 08/29/22 | B |
| 73 | 09/09/22 | O | **Order the Court's 7/28/22 Order (Docket Index #70) is vacated in part, insofar as it denied in part petr's motion for summary judgment. The Inventory Gain Issue remains unresolved and petr's motion addressing it remains pending and is taken under advisement** | | | 09/09/22 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| | | | as to remaining Inventory Gain Issue. | | | | |
| 74 | 11/14/22 | M115 | **Motion for Leave to File First Supplement to FIRST AMENDED MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp.** (Objection) | Resp. | ORD 11/22/22 | 11/14/22 | B |
| 75 | 11/14/22 | MISCL | **First Supplement to FIRST AMENDED MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp.** (Lodged) | Resp. | | 11/14/22 | B |
| 76 | 11/22/22 | O | **Order the Motion for Leave to file First Supplement to First Amended Memorandum in Support of Response to Motion for Summary Judgment is granted and the First Supplement to First Amended Memorandum is filed. Petr. by 12/5/22 may file a 6-page reply to resp's supplement.** | | | 11/22/22 | B |
| 77 | 11/22/22 | SPMT | **First Supplement To First Amended Memorandum in Support of Response to Motion for Summary Judgment** | Resp. | | 11/22/22 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| 78 | 12/05/22 | REPL | **Reply to First Supplement To First Amended Memorandum in Support of Response to Motion for Summary Judgment** | Petr. Indu Rawat | | 12/05/22 | B |
| 79 | 02/07/23 | MOP | **Memorandum Opinion Judge Gustafson T.C. Memo. 2023-14 (An appropriate order will be issued.)** | | | 02/07/23 | B |
| 80 | 02/07/23 | O | **Order that petitioner's motion for summary judgment (Doc. 32) is hereby denied in remaining part as to the Inventory Gain issue. Parties, by 03/10/2023, shall file a joint status report.** | | | 02/07/23 | B |
| 81 | 03/10/23 | RPT | **Status Report** | Resp. & Petr. Indu Rawat | | 03/10/23 | B |
| 82 | 03/15/23 | O | **Order parties by 4/17/23 file the third stipulation of settled issues described in their recent status report and (b) shall file either the proposed decision document described in their recent status report, or status reports as stated herein.** | | | 03/15/23 | B |
| 83 | 04/13/23 | STST | **Stipulation of Settled Issues** | Resp. & Petr. Indu Rawat | | 04/13/23 | B |
| 84 | 04/17/23 | RPT | **Status Report** | Resp. & Petr. Indu Rawat | | 04/17/23 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 85 | 04/17/23 | M007 | **Motion for Entry of Decision** (Attachment(s)) (Objection) | Petr. Indu Rawat | ORD - 05/22/2023 | 04/17/23 | B |
| 86 | 04/18/23 | O | **Order that respondent, by 04/24/2023, shall file a response to petitioner's Motion for Entry of Decision. Petitioner, by 05/01/2023, shall file a reply to just-referenced response.** | | | 04/18/23 | B |
| 87 | 04/18/23 | STST | **Stipulation of Settled Issues** | Resp. & Petr. Indu Rawat | | 04/18/23 | B |
| 88 | 04/24/23 | RSP | **Response to Motion for Entry of Decision** | Resp. | | 04/24/23 | B |
| 89 | 04/24/23 | M115 | **Motion for Leave to File First Amended Response to Motion for Entry of Decision** (No Objection) | Resp. | ORD - 04/25/2023 | 04/24/23 | B |
| 90 | 04/24/23 | MISCL | **First Amended Response to Motion for Entry of Decision** (Attachment(s)) (Lodged) | Resp. | | 04/24/23 | B |
| 91 | 04/25/23 | O | **Motion for Leave to File First Amended Response to Motion for Entry of Decision GRANTED** | | | 04/25/23 | B |
| 92 | 04/25/23 | AMAT | **First Amended Response to Motion for Entry of Decision** (Attachment(s)) | Resp. | | 04/25/23 | B |
| 93 | 05/18/23 | O | **Order that petitioner, by 05/26/2023, shall make an appropriate filing.** | | | 05/18/23 | B |
| 94 | 05/19/23 | NINF | **Notice of Intent Not to File a Reply** | Petr. Indu Rawat | | 05/19/23 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 95 | 05/22/23 | OAD | **Order and Decision Entered, Judge Gustafson - Petitioner's Motion for Entry of Decision (Doc. 85) is granted.** | | | 05/22/23 | B |
| 96 | 05/31/23 | NOA | **Notice of Appeal for the D.C. Circuit** | Petr. Indu Rawat | | 05/31/23 | B |
| 97 | 05/31/23 | AFP | **Appellate Filing Fee Received** | Petr. Indu Rawat | | 06/05/23 | B |
| 98 | 06/05/23 | NOT | **Notice of filing of notice of appeal to Court of Appeals.** | | | 06/05/23 | B |



Indu Rawat,

     Petitioner

     v.

Commissioner of Internal Revenue

     Respondent

Electronically Filed
Docket No. 15340-16
Document No. 96

# Notice of Appeal for the D.C. Circuit


Indu Rawat,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed

Docket No. 15340-16

Document No. 96

# Notice of Appeal

# UNITED STATES TAX COURT

| | | |
|---|---|---|
| INDU RAWAT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Docket No. 15340-16 |
| | ) | |
| COMMISSIONER OF | ) | Filed Electronically |
| INTERNAL REVENUE, | ) | |
| | ) | Judge Gustafson |
| Respondent. | ) | |

## <u>NOTICE OF APPEAL</u>

Petitioner Indu Rawat hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the decision entered on May 22, 2023.

Dated: May 31, 2023

Respectfully submitted,

CHRISTOPHER S. RIZEK
Tax Court Bar No. RC0369
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Suite 1100
Washington, DC 20005
Telephone: (202) 862-8852
crizek@capdale.com

s/ Nathan J. Hochman
NATHAN J. HOCHMAN
Tax Court Bar No. HN0101
Browne George Ross LLP
2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067
Telephone: (424) 202-5559
nhochman@bgrfirm.com



Indu Rawat,

     Petitioner

     v.

Commissioner of Internal Revenue

     Respondent

Docket No. 15340-16
Document No. 97

# Appellate Filing Fee Received

Receipt
**United States Tax Court**
*400 2nd Street NW*
*Washington, DC 20217*
*202-521-0700*

Order Id: 160352      MITCHELLK

06-01-23 08:08      Till: 100

APPEAL FEE - 15340-16      $500.00

Subtotal: $500.00
Sales Tax Total: $0.00

Item Count:1

**Total: $500.00**

Receipt: 160355

PAY.GOV:$500.00

Thank You!



## U.S. Tax Court Fees
## Appeals

This form may be used for the ordering and paying of services rendered by the United States Tax Court.

When paying the filing fee, use the Docket Number(s) communicated to you on the "Order to Pay" filing fee.

\* Required Field

First Name \*

Meredith

Middle Initial

P

Last Name \*

Kinder

Street Address 1 \*

One Thomas Circle, NW

Street Address 2

Suite 1100

Country \*

United States

City \*

Washington

State/Province \*

District Of Columbia

Zip/Postal Code \*

20005

Phone Number \*

(202) 862-7808

Extension

Email Address \*

mkinder@capdale.com

Number of Petitions ( $500.00 Each ) *

1

Docket Number 1 *

15340-16

Total Dollar Amount *

$500.00

The content of this document may contain Sensitive But Unclassified (SBU) data and/or Controlled Unclassified Information (CUI).



# United States Tax Court

Washington, DC 20217

INDU RAWAT,

     Petitioner

     v.

COMMISSIONER OF INTERNAL
REVENUE,

     Respondent

Docket No. 15340-16

## <u>ORDER AND DECISION</u>

We decided in favor of the Commissioner the principal disputed issue in this case (concerning "Inventory Gain") by our opinion released February 7, 2023, as T.C. Memo. Op. 2023-14. By stipulation (see Docs. 55, 71, 83, 87) the parties have resolved the remaining issues, and have agreed on the form that the decision should take in order to effectuate the Court's opinion and the parties' stipulations. (See Doc. 92, para. 2, Ex. A; Doc. 94.)

Petitioner Indu Rawat has filed a motion (Doc. 85) for entry of that decision--not because she agrees with the Court's opinion but, on the contrary, because she evidently intends to appeal the decision once it is entered. The Commissioner opposes the motion as premature, urging that a related case is pending--i.e., *Innovation Ventures v. Commissioner*, Docket No. 5741-19--the outcome of which might be inconsistent with the adverse treatment resulting against Ms. Rawat from our opinion and, depending on that outcome, might prompt in this case a concession by the Commissioner, notwithstanding our opinion, if no decision has yet become final in this case. The Commissioner points to the risk that the entry of decision in this case now and a later entry of a decision in *Innovation Ventures* might yield an inconsistency that could not be cured because of the finality rules of section 7481(a), to Ms. Rawat's detriment.

Ms. Rawat observes, however, that the *Innovation Ventures* case "was filed after this one; it has been stayed for over three years, with periodic status reports being the only filings or indication of any progress whatsoever; and petitioner here has advised the Court repeatedly of her desire to obtain finality, notwithstanding the risk of an inconsistent result in *Innovation Ventures*. E.g., Joint Status Report, para. 5 (March 10, 2023) (Doc. No. 82)."

Given Ms. Rawat's willingness to assume that risk, it is

ORDERED that Ms. Rawat's motion (Doc. 85) for entry of decision is granted.

It is therefore

DECIDED:

1.      That there is no deficiency in income tax due from petitioner for the taxable years 2008 and 2009;

2.      That there are no penalties or additions to tax due from petitioner for the taxable years 2008 and 2009;

3.      That there is an overpayment due to petitioner for the taxable year 2008 in the amount of $833.40, which shall be refunded to her with additional statutory interest as provided by law.


**(Signed) David Gustafson**
**Judge**

# United States Tax Court

T.C. Memo. 2023-14

INDU RAWAT,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

—————

Docket No. 15340-16.                        Filed February 7, 2023.

—————

P, a nonresident alien, was a partner in IV LLC, a
U.S. partnership for federal income tax purposes. In 2008
(i.e., before the 2017 effective date of I.R.C. § 864(c)(8)),
P sold her interest in IV LLC, and $6.5 million of the
proceeds of that sale ("Inventory Gain") was "attributable
to . . . inventory items" for purposes of I.R.C. § 751(a)(2).
P moved for summary judgment on the grounds that the
entire proceeds of the sale (including the Inventory Gain)
are treated under I.R.C. § 741 as gain from the sale of a
capital asset, are further treated as income from the sale of
personal property under the general rule of I.R.C.
§ 865(a)(2), and are therefore non-U.S.-source income on
which P is not taxed.

*Held*: Because the Inventory Gain was attributable
to inventory items for purposes of I.R.C. § 751(a)(2), it is
excepted from the general rule of I.R.C. § 741; it is, for
purposes of the sourcing rules, "income derived from the
sale of inventory property" under the exception of
I.R.C. §865(b); and it may therefore be U.S.-source income.
P's motion for summary judgment will be denied.

—————

[*2] *Christopher S. Rizek* and *Nathan J. Hochman*, for petitioner.

*H. Barton Thomas* and *S. Katy Lin*, for respondent.

## MEMORANDUM OPINION

GUSTAFSON, *Judge*: This case involves the federal income tax consequences for a nonresident alien individual upon the sale of her interest in a U.S. partnership when a portion of the sale proceeds is attributable to inventory items of the partnership held for sale in the United States. At issue are the years 2008 and 2009, for which the Internal Revenue Service ("IRS") issued to petitioner, Indu Rawat, a statutory notice of deficiency ("NOD"). She filed a petition in the Court pursuant to section 6213(a)[1] and claimed an overpayment pursuant to section 6512(b). Now pending before the Court is Ms. Rawat's motion for summary judgment. Doc. 32. The motion asserts two issues: first, a so-called "Non-Inventory Gain issue" that the Commissioner now concedes, *see* Docs. 54–55, and second, an "Inventory Gain issue" that we address in this Opinion. Potential U.S.-source income inheres in inventory that a partnership holds for sale in the United States, and when that inventory is later sold, U.S.-source income may be realized. However, a foreign partner who sells her partnership interest before that inventory gain is realized thereby receives compensation for the value of that inventory but might avoid U.S. taxation on her receipt of that value. Ms. Rawat asks us to hold that she is not liable for U.S. federal income tax on the Inventory Gain as a matter of law. We will deny her motion.

## *Background*

The facts pertinent to Ms. Rawat's motion are not in dispute, and they can be stated briefly as follows.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., as in effect at the relevant times; regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), as in effect at the relevant times; and Rule references are to the Tax Court Rules of Practice and Procedure. Some dollar amounts are rounded. Parenthetical references to "Doc." are to documents as they are numbered in the docket record of this case, and the page numbers cited in those references are according to the numbering in the portable document format ("PDF") of the digital file.

**[*3]** *Petitioner and her partnership interest*

Ms. Rawat was a nonresident alien individual for federal income tax purposes during 2008 and 2009. She filed U.S. federal income tax returns as a nonresident alien for the 2000 through 2007 tax years. She did not file returns for the 2008 and 2009 tax years.

Innovation Ventures, LLC ("IV LLC"), is a U.S. business that manufactures and sells popular consumer products including 5-hour Energy drinks. IV LLC was treated as a partnership for federal income tax purposes during the years at issue.

Between December 2000 and January 2007, Ms. Rawat acquired a 30% interest in IV LLC. On January 4, 2008, Ms. Rawat executed a note for the sale of her interest in IV LLC to Manoj Bhargava for $438 million. The note provided for interest-only payments to Ms. Rawat until 2028, when the note would mature.

At the time the note was executed, IV LLC had inventory items with a basis of $6.4 million, which it held for future sale in the United States.[2] IV LLC later sold those inventory items for a profit of $22.4 million, and Ms. Rawat admits that her share of income "attributable to the inventory" was $6.5 million (an amount agreed to by Ms. Rawat and the IRS, as explained below). Thus, of the $438 million sale price paid to Ms. Rawat (by the note from Mr. Bhargava) for her interest in IV LLC, $6.5 million was allocable to inventory held in the United States for sale therein ("Inventory Gain").

*Partnership examination and Form 5701*

The IRS conducted an examination of IV LLC for the 2007 and 2008 tax years. In December 2010 the IRS issued Form 5701, "Notice of Proposed Adjustment", Doc. 40, Ex. 4, to IV LLC and to Ms. Rawat. The Form 5701 proposed to include in Ms. Rawat's income for 2008 $6.5 million arising from the Inventory Gain issue.

---

[2] The record does not show whether the inventory would be sold within or without the United States, so for purposes of deciding Ms. Rawat's motion for summary judgment (in which context we assume facts and draw inferences in favor of the non-movant, *see infra* Part I.A) we assume (in the Commissioner's favor) that the inventory was for sale in the United States (thus potentially yielding U.S.-source income, *see infra* Part II.B).

**[\*4]** *Agreement on Form 870–LT*

Consistent with the Form 5701, Ms. Rawat executed with the IRS Form 870–LT, "Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items". Doc. 40, Ex. 3. A "Schedule of Adjustments" attached to the Form 870–LT includes, under "Other income (loss)", an adjustment of $6,523,176, with the explanation that "[o]ther income relates to unrealized receivables[3] as defined under Section 751." In February 2011 Ms. Rawat signed the Form 870–LT, and in April 2011 the IRS countersigned. As we previously held,[4] Ms. Rawat and the IRS did not reach agreement about the "source" (whether U.S. or non-U.S.) of the $6.5 million of income nor about Ms. Rawat's ultimate tax liabilities for the 2008 and 2009 tax years.

*Notice of Computational Adjustment*

In February 2012 the IRS issued to Ms. Rawat a Notice of Computational Adjustment for her 2008 tax year. Doc. 40, Ex. 6. The text of the notice indicates that "[t]he adjustments are being made as a result of" several possible alternatives, including "an agreement you signed", and a copy of the Form 870–LT agreement was attached. The notice included Form 4549–A, "Income Tax Discrepancy Adjustments", that listed a $6.5 million increase in income for "Sch E - Inc/Loss - Partnership - Innovation Ventures LLC" (i.e., the Inventory Gain issue addressed in the Form 870–LT) and a tax liability of $2.3 million. Additionally, the IRS determined nearly $1 million in additions to tax under section 6651(a)(1) and (2) and section 6654.

---

[3] The Commissioner plausibly explains (and we assume) that the reference in the "Remarks" to "unrealized receivables" is a "scrivener's error" that should instead refer to inventory.

[4] Our order of July 28, 2022, Doc. 70, stated:

The Form 870–LT determined adjustments to 'ordinary income' and 'other income' (relating to the inventory gain), among other income items and deductions, but specifically lacked a determination as to the source of the income or as to Ms. Rawat's deficiency and corresponding tax liability. (Doc. 5 at 26–28). Neither the source of the income, nor Ms. Rawat's deficiency, nor her tax liability were 'matters agreed upon' within the meaning of section [7121] and we may not read them into the agreement. *Zaentz v. Commissioner*, 90 T.C. [753,] 761, 766 (1988). Therefore, we find that the parties did not agree to these items in the Form 870–LT, and that the source of the inventory gain Ms. Rawat recognized on the sale of her partnership interest remains at issue.

**[\*5]**  In March 2012 the IRS assessed these amounts (though they were later reduced to reflect a $1.9 million charitable contribution deduction carryover from the prior year).

*Statutory notice of deficiency and petition*

In May 2016 the IRS issued to Ms. Rawat an NOD for her 2008 and 2009 tax years.  Doc. 1, Ex. A.  The NOD reflected the previously determined income for 2008 (from the Inventory Gain issue, as stated in the Notice of Computational Adjustment) and further determined additional taxes owed by Ms. Rawat under section 453A(c)(2)(B) as interest on the deferred tax liability attributable to the installment obligation (i.e., Mr. Bhargava's note for his purchase of Ms. Rawat's partnership interest in IV LLC) for both 2008 and 2009 ("Non-Inventory Gain").  Doc. 55, para. 4.  The NOD indicated a $3.8 million deficiency in tax for 2008 and a $2.6 million deficiency in tax for 2009.  Altogether, the deficiencies in tax and additions to tax totaled $4.8 million for 2008 and $3.8 million for 2009.

In June 2016 Ms. Rawat paid $2.9 million in tax, interest, and additions to tax attributable to the initial assessments for the 2008 tax year (i.e., arising from the computational adjustments for the Inventory Gain issue).  In July 2016 Ms. Rawat filed her petition with this Court in order to challenge the items in the NOD and to invoke the Court's overpayment jurisdiction under section 6512(b) with respect to her $2.9 million payment for the computational adjustment.  Her petition alleges an address in Singapore.

*Petitioner's motion for summary judgment*

Ms. Rawat's motion for summary judgment, Docs. 32, 33, contends that the opinions of this Court and of the Court of Appeals for the D.C. Circuit in *Grecian Magnesite Mining, Industrial & Shipping Co., SA v. Commissioner*, 149 T.C. 63 (2017), *aff'd*, 926 F.3d 819 (D.C. Cir. 2019),[5] effectively resolve both the Non-Inventory Gain issue (which the Commissioner has since conceded) and the Inventory Gain issue (which is still in dispute and is now before us).  Ms. Rawat's general

---

[5] Congress effectively overruled *Grecian Magnesite* in the Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, § 13501(a)(1), 131 Stat. 2054, 2138–41, by adding to the Code section 864(c)(8), effective for transactions after November 27, 2017. Ms. Rawat sold her interest in IV LLC in 2008, before the effective date of section 864(c)(8), so in resolving her motion we follow *Grecian Magnesite* without regard to section 864(c)(8).

**[*6]** position is that, under *Grecian Magnesite*, a nonresident alien individual is not subject to U.S. income tax on the sale of the individual's interest in a U.S. partnership because those gains would be sourced outside the United States under the general rule of section 865(a)(2), irrespective of whether any portion of the gains would be attributable to inventory items under section 751(a)(2). Ms. Rawat contends that, under the rationale of this Court's decision in *Grecian Magnesite*, her nonresident status resolves in her favor both the Inventory Gain and the Non-Inventory Gain issues.

*Respondent's response*

The Commissioner did not file a cross-motion for summary judgment but opposes Ms. Rawat's motion on the ground[6] that the sourcing of the Inventory Gain must be made under the rules of section 865(b), as to which Ms. Rawat has not yet made a showing.

*Discussion*

I.    *General legal principles*

A.    *Summary judgment*

Under Rule 121(b), summary judgment is appropriate if there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. *See also Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994); *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). The moving party bears the burden of showing that no such genuine dispute exists and that she is entitled to judgment on the substantive issues as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982). In deciding whether to grant summary judgment, we draw inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986); *Naftel*,

---

[6] The Commissioner's opposition also included two contentions that we do not address here: First, the Commissioner contended that the agreement on Form 870–LT executed by the parties resolves the disputed Inventory Gain issue in his favor, but we decided that issue against the Commissioner in a previous order. Doc. 70; *see supra* note 4. Second, the Commissioner originally contended that a genuine dispute of material fact as to whether Ms. Rawat was a nonresident alien in 2008 and 2009 precludes summary judgment on the Inventory Gain issue; but since then he has stipulated that she was a nonresident alien in 2008. *See* Doc. 71.

**[\*7]** 85 T.C. at 529. If any genuine dispute of fact exists, the motion must be denied. *Espinoza*, 78 T.C. at 416.

Ms. Rawat has moved for summary judgment, so she has the burden to show that there are no material facts in dispute and that she is entitled to judgment on the substantive issues as a matter of law.

## B. *Partnership taxation in an international context*

This case, like *Grecian Magnesite*, 149 T.C. at 71, "arises at the intersection of two areas of tax law—i.e., partnership taxation (subchapter K of the Code) and U.S. taxation of international transactions (subchapter N of the Code)." That is, we address the U.S. federal income tax treatment of a nonresident alien's sale of her interest in a U.S. partnership.

### 1. *A partnership interest as a singular capital asset*

It may assist our discussion of Ms. Rawat's sale of her interest in IV LLC to give a simplified description of the legal context in which the current dispute arises. To survey that context, we can broadly describe several forms in which a taxpayer might own a business:

First, she might own a business as a sole proprietor. She would directly own each of the assets used in the business—its inventory to be sold, its assets used in the business, its cash in the bank, and so on. She would report the business's revenue, deductions, and income or loss on Schedule C, "Profit or Loss From Business", attached to her individual income tax return. If she sold the business, she would do so by selling its assets; and she would have to account for her gain or loss on each of those assets—whether capital assets, depreciable property or real property used in the business, or inventory.

Second, the business might be incorporated, and the owner would not directly own corporate assets but would instead own shares of stock in the corporation. The corporation is recognized as a legal person distinct from its owners. The corporation (and not the owner) would directly own the assets of the business. The corporation would report its revenue, deductions, and income or loss on its own corporate income tax return, on which it would report its own income tax liability. The owner would not report on her individual tax return any portion of the corporation's revenue and deductions as such but would instead report (on Schedule B, "Interest and Ordinary Dividends"), any dividends that she received from the corporation. The owner could sell her interest in

[*8] the corporation by selling her shares, and then on her individual tax return she would report on Schedule D, "Capital Gains and Losses", her gain or loss on the sale of the shares. In reporting that gain or loss on the sale of her stock, she would not account for the underlying items of gain or loss of the corporation nor attribute her proceeds to the various assets of the corporation. Rather, she owned stock; she sold stock; and she reports her gain or loss on the sale of the stock.

Third, as in this case, the business might be a partnership (or be treated as a partnership), and the taxpayer might be a partner who owns an interest in the partnership. For income tax purposes a partnership has some resemblance to a corporation, but in some respects it is treated as a confederation or aggregation of its partners. The partnership is not itself subject to the income tax, *see* § 701, but instead each partner separately reports on her individual income tax return her share of the partnership's taxable income or loss, *see* § 702(a), and the partnership's income is taxable to her to the extent of her distributive share, *see* § 702(c). That reporting can be thought of as roughly analogous to the sole proprietor's reporting on Schedule C.

However, if the owner of a partnership interest sells that interest, then we consult sections 741 and 751 (discussed below in Part II.A) to determine the income tax treatment of that sale. Generally speaking, under section 741 her gain or loss "shall be considered as gain or loss from the sale or exchange of a capital asset" (a proposition that Ms. Rawat stresses here)—but section 741 immediately provides an exception that the Commissioner invokes: "except as otherwise provided in section 751 (relating to . . . inventory items)." Section 751(a)(2) in turn provides:

> The amount of any money . . . received by a transferor partner in exchange for all or a part of his interest in the partnership attributable to—
>
> . . . .
>
> (2) inventory items of the partnership,
>
> shall be considered as an amount realized from the sale or exchange of property other than a capital asset.

The question now before us is whether this inventory exception referenced in section 741 calls for distinct treatment of the inventory-related portion of sale proceeds when the selling partner is a nonresident

**[*9]** alien individual. That question is discussed in Part II below, but first we describe the general principles of taxation of international transactions.

2.  *U.S. "source" and "effective*[] *connect*[ion]*" with a U.S. business*

U.S. federal income tax is imposed on nonresident alien individuals by section 871. For "Income connected with the United States business", subsection (b)(1)[7] of section 871 provides:

> A [1] nonresident alien individual [2] engaged in trade or business within the United States during the taxable year *shall be taxable* as provided in section 1 or 55 on his taxable income which is [3] effectively connected with the conduct of a trade or business within the United States.

(Emphasis added.)

The parties present no dispute about the application of these principles to most of Ms. Rawat's income from IV LLC. In order to address the dispute that does exist, it is helpful first to observe that undisputed treatment.

a.  *Petitioner was liable for income tax on her distributive share of IV LLC's income.*

Not at issue is Ms. Rawat's liability for U.S. income tax on her distributive share of IV LLC's income, and it is clear that when she was a partner in IV LLC she was so liable under the three conditions of section 871(b)(1) as numbered above: First, it is stipulated that Ms. Rawat is a nonresident alien individual. Second, section 875(1) provides that "a nonresident alien individual . . . shall be considered as being engaged in a trade or business within the United States if the partnership of which such individual . . . is a member is so engaged", and under that provision, as a matter of law, Ms. Rawat was "engaged

---

[7] Subsection (a)(1) of section 871 imposes tax on a nonresident alien individual for certain income that is "not effectively connected with the conduct of a trade or business within the United States", *see infra* note 11 (fixed or determinable annual or periodical income), but this subsection is not relied on by the Commissioner and is not at issue here.

**[*10]** in a trade or business within the United States",[8] i.e., IV LLC's business of selling energy drinks. Third, Ms. Rawat's distributive share of IV LLC's income was "effectively connected" to its U.S. energy drink business.[9] Ms. Rawat was thus liable through 2007 for U.S. income tax on her portion of IV LLC's income that was effectively connected with its energy drink business in the United States.

> b. *Petitioner was not liable for U.S. income tax on most of the proceeds of the sale of her partnership interest.*

Also not in dispute is Ms. Rawat's non-liability for U.S. income tax on most of the proceeds of the 2008 sale of her partnership interest for $438 million. About $431.5 million of those proceeds was attributable to so-called Non-Inventory Gain, and the Commissioner now concedes that that portion is not subject to U.S. income tax.

That concession is appropriate. Before the Court of Appeals for the D.C. Circuit issued its opinion in *Grecian Magnesite*, the Commissioner maintained his position, based on Rev. Rul. 91-32, 1991-1 C.B. 107, that the gain realized by a foreign partner upon disposing of its interest in a U.S. partnership should be analyzed asset by asset and that, to the extent that the assets of the partnership would give rise to effectively connected income if sold by the partnership, the departing partner's pro rata share of such gain should likewise be treated as effectively connected income. This Court rejected that position in *Grecian Magnesite* and held that, as a general rule, the asset to be considered in the sourcing analysis is the partnership interest itself (which is the subject of the sale) and not the underlying partnership assets. Section 865(a), discussed below in Part II.B, provides the "General Rule" that "[e]xcept as otherwise provided in this section,

---

[8] Ms. Rawat asserts, Doc. 78, para. 7, that "[t]he reasoning of" *Grecian Magnesite* "is based on the principle that the taxpayer in question is not in a US trade or business"; but in fact our opinion in that case explicitly holds that the partnership's "trade or business is attributed to [the partner] by section 875(1)." *Grecian Magnesite*, 149 T.C. at 82.

[9] If a U.S. partnership has some income that is not effectively connected with its U.S. business, then a nonresident alien partner's share of that portion of the income would avoid U.S. taxation by virtue of section 871(b)(2), which provides: "In determining taxable income for purposes of paragraph (1), gross income includes only gross income which is effectively connected with the conduct of a trade or business within the United States." But apparently that was not the case with IV LLC, and in any event no such issue has arisen in this case.

**[*11]** income from the sale of personal property . . . (2) by a nonresident shall be sourced outside the United States." The parties concur that a partnership interest is "personal property" and that, for a sale in 2008,[10] the Code does not "otherwise provide[]" any relevant exception that might be applicable to the Non-Inventory Gain portion of the proceeds of the sale of that interest.

Still in dispute is the portion of the sale proceeds that is attributable to Inventory Gain. We must decide whether that portion should be treated as "effectively connected" to IV LLC's energy drink business in the United States.

II.    *Analysis*

A.    *Characterizing the proceeds and sale under sections 741 and 751*

1.    *Petitioner's reliance on section 741*

Ms. Rawat's contention, stated simply, is that the Inventory Gain portion should be treated like the Non-Inventory Gain portion, because (she contends) neither of those portions is "effectively connected" to the energy drink business in the United States. Section 741 provides:

> In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss *from the sale or exchange of a capital asset, except as otherwise provided in section 751* (relating to unrealized receivables and *inventory items*).

(Emphasis added.) Ms. Rawat is correct when she asserts that "the most important point in [her] motion", Doc. 43 at 20, is that she did not sell inventory but instead an interest in a partnership that owned inventory. Under section 741 Ms. Rawat's interest in IV LLC was a singular "capital asset"; and on the sale of that interest, she must recognize gain or loss. As a nonresident alien, she is taxable under section 871(b)(2) only on income that is "effectively connected with the conduct of a trade or business within the United States". Under section 864(c)(3), "[a]ll income, gain, or loss from sources within the United States . . . shall be

---

[10] For a sale on or after November 27, 2017, section 864(c)(8) now provides an exception that would change the outcome. *See supra* note 5.

**[\*12]** treated as effectively connected",[11] while under section 864(c)(4)(A), "no income . . . from sources without the United States shall be treated as effectively connected". And under section 865(a)(2), "income from the sale of personal property [such as a partnership interest] . . . by a nonresident [such as Ms. Rawat] shall be sourced outside the United States". Ms. Rawat prevails unless some other statutory provision creates an exception to these generalities, and we conclude that there is such an exception, as we now explain.

2.      *The exception of section 751*

Section 741, the starting point of our summary above, does indeed provide that gain or loss on a partner's sale of her partnership interest "shall be considered as gain or loss from the sale or exchange of a [singular] capital asset"—a provision critical to Ms. Rawat's contention—but the Commissioner urges the express exception that immediately follows in section 741, i.e., "except as otherwise provided in section 751". That referenced section 751 provides:

> (a) Sale or exchange of interest in partnership.—*The amount of any money*, or the fair market value of any property, received by a transferor partner in exchange for all or a part of his interest in the partnership *attributable to*—
>
> > (1) unrealized receivables of the partnership, or
> >
> > (2) *inventory items* [plural] of the partnership, *shall be considered* as an amount *realized from the sale* or exchange of property *other than a capital asset.*

(Emphasis added.) The Commissioner argues, and we agree, that the general approach of section 741, which calls for the sold partnership interest to be analyzed not asset-by-asset but rather as a singular "capital asset", gives way to the specific provision in section 751(a)(2) that the portion of the sold partnership interest attributable to

---

[11] In the quotation of section 864(c)(3) in text above, we elide the parenthetical qualifier "(other than income, gain, or loss to which paragraph (2) applies)", because it is not relevant here. Section 864(c)(2) makes special provision for "Periodical, etc., income"—i.e., income "of the types described in section 871(a)(1), section 871(h), section 881(a), or section 881(c)"; and sections 871(a)(1) and 881(a)(1) both define this income as "interest . . . , dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, and other *fixed or determinable annual or periodical* gains, profits, and income." (Emphasis added.)

**[\*13]** inventory items must be separately "considered" as pertaining to "other than a capital asset". Consequently, our analysis cannot end with her "most important" point (that she actually sold not inventory but a partnership interest) but must proceed to ask: What is the "property other than a capital asset" from which the "money . . . received" is "considered" to have been "realized" under section 751(a)? The only answers suggested in the statute are "unrealized receivables" and, pertinent to this case, "inventory items". Therefore, in the vocabulary of section 751(a), the Inventory Gain is "attributable to inventory" and is "considered" to have been "realized from the sale" of "inventory items".

3. *Sections 741 and 751 as non-sourcing rules*

a. *The interaction of sections 741 and 751*

Ms. Rawat contends, however, that this argument makes an unwarranted use of section 751. She notes that the issue in this case is the source (U.S. or non-U.S.) of the proceeds, and she asserts that "[s]ection 751 is not a sourcing rule". In her view, the effect of section 751, where it applies, is to assure that the proceeds of a sale will take on the character (non-capital) of "property other than a capital asset" and will therefore be taxed—if at all—as ordinary income, not capital gain. Her assertions are not wrong, as far as they go. She is correct that section 751 is not a sourcing rule—but neither is section 741 (as she acknowledges). Where it applies, section 741 assures that proceeds on the sale of a partnership interest will be taxed—if at all—as gain arising from the sale of a capital asset. Both sections 741 and 751 are provisions that define the character of the property sold and of its proceeds, to which the sourcing rules must then be applied.

The reason that we know to treat the sale of a partnership interest as "the sale . . . of a [singular] capital asset" (as Ms. Rawat contends) is that section 741 so provides, imposing (where it applies) the "entity" theory on such sales. The proceeds of the sale are to be "considered as gain or loss from" such a sale. It is because of section 741 that the sale of a partnership interest is "considered as" the sale of a singular asset. Without section 741, we might instead invoke the aggregate character of the partnership and treat the selling partner as if, like a sole proprietor, she had sold her proportionate share of the

**[\*14]** underlying hotchpot of partnership assets; but section 741, where it applies, precludes that aggregation approach.[12]

However, to tautologize, section 741 applies only where it applies. As we have noted, section 741 has an explicit exception: "except as otherwise provided in section 751 (relating to unrealized receivables and inventory items)." Section 751 provides that the "inventory items" portion of proceeds "shall be considered as an amount realized from the sale or exchange of property other than a capital asset". Section 741, by its own terms, does not apply to the "inventory items" portion addressed by section 751, to which section 741 yields. The singular "capital asset" treatment of section 741 is thus partially disaggregated by section 751.

b.      *The differences of sections 741 and 751*

Moreover, Ms. Rawat's view—confining the effect of section 751(a) to the assuring of non-capital treatment—does not give sufficient attention to the different wording of the two statutes. Section 741 provides that in general the proceeds—

> shall be considered as gain or loss from the sale or exchange of a capital *asset*.

(Emphasis added.) But the exception in section 751(a) provides that the proceeds attributable to inventory—

> shall be considered as an amount realized from the sale or exchange of *property other than* a capital asset.

---

[12] Ms. Rawat's argument—that sections 741 and 751 merely determine the character (capital vs. ordinary) of a partner's gain or loss from the sale of a partnership interest—proves too much. Accepting her constricted view of sections 741 and 751 would undermine the rationale of *Grecian Magnesite*, on whose holding she depends. In *Grecian Magnesite* we construed section 741 as not only determining the character of gain or loss but also as identifying (subject to section 751 and other express statutory exceptions) the property involved in the transaction (i.e., "an interest in a partnership" as opposed to a proportionate share of partnership assets). And we accepted that the construct reflected in sections 741 and 751 (again, in the absence of express statutory exceptions, such as the one provided in section 897(g)) governed generally the tax consequences of a sale of a partnership interest. Petitioner's position, resting on the view that sections 741 and 751 have a more limited scope than we gave them in *Grecian Magnesite*, is an implicit claim that our decision in *Grecian Magnesite* was right for the wrong reasons. But petitioner offers no alternative rationale (from subchapter N or otherwise) to justify the result in *Grecian Magnesite* nor to salvage its holding that is critical to her argument.

**[\*15]** (Emphasis added.)  That is, the general rule refers to gain or loss from the sale of a singular "asset", § 741, whereas the exception refers to an amount realized from the sale of "property".  This difference in the wording of these two statutes tends against Ms. Rawat's assumption that section 751 inherits the "entity" approach of section 741.

As we have noted, section 741 posits gain or loss from the sale of a singular "capital asset".  It is the singular "asset" that signals that the partnership interest, and not the partnership's underlying (plural) assets, is the subject of the sale.  The exception in section 751(a), however, posits an amount realized from the sale of "property" (i.e., "property other than a capital asset").  The word "asset" is necessarily singular, but the word "property" can mean "a thing or things owned; possessions collectively".  *Property*, *Webster's New World College Dictionary* (4th ed. 2008).[13]  One's "property" may consist of many "assets".  If the drafters of sections 741 and 751 had intended section 751 to reflect the same "entity" approach reflected in section 741, they could perhaps have worded section 751 to provide (in a manner corresponding to section 741) that the inventory portion of proceeds "shall be considered as gain or loss from the sale or exchange of a non-capital asset".  But they did not.

In *Grecian Magnesite* and in this case we give a close reading to section 741 and ascribe significance to "asset".  This close reading benefits Ms. Rawat in the analysis of her Non-Inventory Gain.  Turning then to section 751, we do not relax, take a casual view, and assume that the chosen wording—"property other than a capital asset"—was a random circumlocution.  Rather, we observe that the drafters chose a word—"property"—that may stand for one asset or many assets.  That being so, we note that when inventory is involved, the sale proceeds attributable to inventory are considered to have been realized from the sale of multiple assets.

In support of this broader understanding of section 751, the Commissioner cites *George Edward Quick Trust v. Commissioner*, 54

---

[13] To the same effect, the second definition of "property" in the *Oxford English Dictionary* (1933) is "[t]hat which one owns; a thing or things belonging to or owned by some person or persons; a possession (usually material), or possessions collectively; one's wealth or goods".

**[*16]** T.C. 1336 (1970), *aff'd per curiam*, 444 F.2d 90 (8th Cir. 1971),[14] and *Mingo v. Commissioner*, T.C. Memo. 2013-149, *aff'd*, 773 F.3d 629 (5th Cir. 2014),[15] and he aptly quotes, Doc. 53 at 35, our opinion in *Grecian Magnesite*, 149 T.C. at 78 n.16, which states:

> Section 751 is a specific exception to section 741 that causes unrealized receivables and inventory items to be *addressed separately* from the remainder of the partnership interest when that interest is sold or liquidated. . . . We note that by the express terms of section 741, section 751 is (like section 897(g) . . .) an exception, and it mandates an "aggregation" approach for *characterizing* only gain "attributable to" "unrealized receivables" or "inventory items".

(Emphasis added.) To the same effect, and perhaps even more explicitly on point, our opinion in *Grecian Magnesite*, 149 T.C. at 79, characterized section 751 as one of the "exceptions to section 741 that, when they apply, do require that we look through the partnership to the underlying assets and *deem such a sale as the sale of separate interests in each asset* owned by the partnership." (Emphasis added.)

That is, governed in the Inventory Gain analysis not by section 741 but instead by section 751, "we look through the partnership to the underlying assets and *deem such a sale as the sale of separate interests in each asset*". *Grecian Magnesite*, 149 T.C. at 79 (emphasis added). Deeming a sale of the inventory is called for by section 751 (which "consider[s]" the proceeds to be "realized from the sale . . . of property", not of the partnership interest per se). Deeming a sale is

---

[14] As the Commissioner describes *Quick Trust*, *see* Doc. 53 at 37, it "addressed the treatment of an interest in a partnership that held unrealized receivables." That "treatment" was an effect on tax "basis" under section 1014(c) of an inherited partnership interest as affected by section 691 (concerning "income in respect of decedents"). *Quick Trust* is thus an instance in which the Court cited section 751 not only as governing the character of income as capital or ordinary (as Ms. Rawat would limit section 751) but also as warranting, for other tax purposes, the division of a partnership interest into different pieces.

[15] In *Mingo*, T.C. Memo. 2013-149, at *11, we held that "the portion of gain attributable to section 751 property in the sale or exchange of a partnership [interest] may only be reported under the installment method to the extent that income realized on a direct sale of such property would be reportable under the installment method." The Commissioner correctly characterizes *Mingo* as "another example of the application of collateral consequences of the deemed transactions under the section 751 regulations". Doc. 77 at 5.

**[\*17]** likewise called for by equivalent text in the subparagraph of the implementing regulation, Treasury Regulation § 1.751-1(a)(1), that provides (as its caption indicates) for the "Character of amount realized".[16]   Deeming a sale is consistent also with the subsequent subparagraph (entitled "Determination of gain or loss"), which provides:

> The income or loss realized by a partner upon the sale or exchange of its interest in section 751 property is the amount of income or loss from section 751 property . . . that would have been allocated to the partner (to the extent attributable to the partnership interest sold or exchanged) if the partnership had *sold all of its property in a fully taxable transaction for cash* in an amount equal to the fair market value of such property . . . immediately prior to the partner's transfer of the interest in the partnership.

Treas. Reg. § 1.751-1(a)(2) (emphasis added).   That is, both the subparagraph that characterizes the transaction and its "amount realized" and the subparagraph that determines the "gain or loss" from that amount hypothesize a sale of the inventory to which the proceeds was attributable.

Admittedly, section 751 and Treasury Regulation § 1.751-1(a)(1) do not tell us the source of the proceeds nor their effective connection to a U.S. business; rather, they tell us the nature of the property considered to have been sold and the nature of the income that is to be taxed (or not).   To find the sourcing rules and their effect on the nonresident alien's liability, we look elsewhere.

B.    *Sourcing the proceeds*

The sourcing rules are given in sections 861–865.   Section 865 (entitled "Source rules for personal property sales") provides in part as follows:

> (a) General rule.—Except as otherwise provided in this section, income from the sale of personal property—
>> (1) by a United States resident shall be sourced in the United States, or

---

[16] Treasury Regulation § 1.751-1(a)(1) bears the caption "Character of amount realized" and, like section 751, provides that proceeds attributable to inventory are "considered as an amount realized from the sale or exchange of property other than a capital asset".

**[\*18]**           (2) by a nonresident shall be sourced outside the United States.

       (b) Exception for inventory property.—In the case of income derived from the sale of inventory property—

          (1) this section shall not apply, and

          (2) such income shall be sourced under the rules of sections 861(a)(6), 862(a)(6), and 863.

There is no dispute that the "General rule" of subsection (a) applies to the Non-Inventory Gain and sources it "outside the United States". *But see* § 864(c)(8) (covering sales on or after November 27, 2017). Section 741 provides the character of the partnership interest sold (i.e., "a capital asset"), and section 865(a)(2) dictates its source ("outside the United States"). The Commissioner has conceded that Ms. Rawat is not taxable on that Non-Inventory Gain portion of the proceeds of her partnership interest. Ms. Rawat would have us apply this non-U.S. source "General rule" of section 865(a)(2) to the Inventory Gain as well and thereby avoid the "Exception" of section 865(b) (and its incorporation of the more complicated "rules of sections 861(a)(6), 862(a)(6), and 863").

As to that Inventory Gain, however, we have held that this portion of the proceeds is excepted from section 741 and that, under section 751(a), this portion is "attributable to . . . inventory items". For that reason we cannot follow the general rule of section 865(a) ("sourced outside the United States") but must instead follow the "Exception for inventory property" that is provided in subsection (b) of section 865 for "income derived from the sale of inventory property".

As quoted above, that subsection—section 865(b)—directs us to find the sourcing rules for the Inventory Gain in the provisions of "sections 861(a)(6), 862(a)(6), and 863",[17] and those three sections provide in relevant part as follows (emphasis added):

       Sec. 861(a). Gross income from sources within United States.—The following items of gross income shall be treated as income from sources *within the United States*:

---

[17] Each of these three statutes makes provision as to "inventory property (within the meaning of section 865(i)(1))", and we elide the parenthetical in our quotations in text. Section 865(i)(1) provides: "The term 'inventory property' means personal property described in paragraph (1) of section 1221(a)"; and section 1221(a)(1)

**[*19]**         . . . .

(6) Sale or exchange of inventory property.—Gains, profits, and income derived from the purchase of inventory property . . . *without* the United States (other than within a possession of the United States) and its *sale* or exchange *within the United States*.

Sec. 862(a). Gross income from sources without United States.—The following items of gross income shall be treated as income from sources *without the United States*:

. . . .

(6) gains, profits, and income derived from the purchase of inventory property . . . *within* the United States and its *sale* or exchange *without the United States*;

Sec. 863(b). . . . Gains, profits, and income—

. . . .

(2) from the sale or exchange of inventory property . . . *produced* (in whole or in part) by the taxpayer *within* and *sold* or exchanged *without* the United States, or *produced* (in whole or in part) by the taxpayer *without* and *sold* or exchanged *within* the United States, or

(3) derived from the purchase of inventory property . . . *within* a possession of the United States and its sale or exchange within the United States,

shall be treated as derived *partly from sources within and partly from sources without* the United States.

---

in turn specifies "stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business". The parties have suggested no dispute that the Inventory Gain at issue is attributable to "inventory property" so defined.

**[\*20]** We need not parse these statutes further than to observe that they provide the sourcing rules for—

- "income derived from the . . . [sale] of inventory property", §§ 861(a)(6), 862(a)(6);

- "income . . . from the sale . . . of inventory property", § 863(b)(2); and

- income "derived from the . . . [sale] of inventory property", § 863(b)(3).

We think these phrases, like the similar phrase in section 865(b)— "income derived from the sale of inventory property"—describe the Inventory Gain, which, under section 751(a), is "attributable to . . . inventory items" and is "considered as an amount realized from the sale or exchange of property other than a capital asset." Consequently, since Ms. Rawat's motion is based on her contention, which we reject, that the sourcing rule for the Inventory Gain is the general rule of section 865(a)(2), we will deny her motion.

Despite our rejection of Ms. Rawat's principal contention about the effects of sections 741 and 751 and her reliance on the default sourcing rule of section 865(a), she might nonetheless prevail in whole or in part by showing, pursuant to section 865(b), that the source of the Inventory Gain was "without the United States" under sections 861(a)(6), 862(a)(6), and 863. In the pending motion, however, she has not attempted to make that showing.

To reflect the foregoing,

*An appropriate order will be issued.*