**[NOT YET SCHEDULED FOR ORAL ARGUMENT]**
# No. 23-1142

**In the United States Court of Appeals
for the District of Columbia Circuit**

———————————————

**INDU RAWAT, Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

———————————————

**On Appeal from the Decision of
the United States Tax Court**

———————————————

**BRIEF FOR APPELLANT**

———————————————

Christopher S. Rizek                    Nathan J. Hochman
  *Caplin & Drysdale, Chartered*          *Ross LLP*
  *One Thomas Circle, N.W.*               *1900 Avenue of the Stars*
  *Suite 1100*                            *Suite 1225*
  *Washington, DC 20005*                  *Los Angeles, CA 90067*
  *Telephone: (202) 862-8852*             *Telephone: (424) 704-5600*
  *crizek@capdale.com*                    *nhochman@rossllp.com*

DOC# 10067402

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.    Parties, Intervenors, and Amici Curiae.** The parties in the dispute are Indu Rawat, Appellant, and the Commissioner of Internal Revenue, Appellee. At this time, there are no intervenors or amici that have stated their appearance before this Court.

**B.    Rulings Under Review.** The ruling under review is the May 22, 2023 Order and Decision of the United States Tax Court (J. Gustafson) in Docket No. 15340-16. That order followed the Tax Court's February 7, 2023 memorandum opinion denying Appellant's motion for summary judgment and determining that Appellant, a nonresident alien not in the business of trading partnership interests, is nevertheless liable for U.S. tax on that portion of the gain from the sale of her partnership interest in Innovation Ventures, LLC that was attributable to inventory of the underlying entity. The Tax Court's memorandum opinion can be found at T.C. Memo. 2023-14.

**C.    Related Cases.** To the Appellant's knowledge, the only case related to the case at bar is *Innovation Ventures, LLC, Manoj Bhargava, Tax Matters Partner v. Commissioner*, Docket No. 5741-19 (U.S. Tax Court), which involves the same transaction; however, in that case the Commissioner has taken a completely opposite position treating the transaction as not taxable.

i

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

TABLE OF CONTENTS........................................................................... ii

TABLE OF AUTHORITIES ................................................................. iv

GLOSSARY........................................................................................ viii

STATEMENT OF JURISDICTION.........................................................1

   1.   Jurisdiction in the United States Tax Court....................................1

   2.   Jurisdiction in the Court of Appeals..............................................1

STATUTE AND REGULATIONS ..........................................................2

STATEMENT OF THE ISSUE................................................................3

STATEMENT OF THE CASE.................................................................3

   1.   Statement of facts ..........................................................................3

   2.   Course of proceedings and disposition in the Tax Court ...............4

SUMMARY OF ARGUMENT ................................................................9

ARGUMENT .........................................................................................12

   I.   The Sale of a Partnership Interest is the Sale of a Single, Unitary Property.12

     A.  The plain language of section 741 supports the entity theory.....................13

     B.  Section 751(a) does not change what was sold; it changes the character of the gain...................................................................................14

     C.  The sole purpose and effect of section 751(a) is to characterize certain gain as ordinary income..........................................................18

     D.  Section 751(a) does not determine source. .................................19

   II.   The Sale of Mrs. Rawat's Partnership Interest is Foreign Source as the Sale of her Personal Property. ..................................................................24

     A.  The gain from Mrs. Rawat's sale of her partnership interest is not effectively connected to a U.S. trade or business.............................24

ii

B.  There is no basis for differentiating the Inventory Gain from the Non-Inventory Gain for sourcing purposes. ..........................................................28

C.  There is no statutory basis for a "deemed" sale of inventory. ...................34

III.  CONCLUSION..............................................................................................36

CERTIFICATE OF COMPLIANCE .......................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Caminetti v. United States*,
    242 U.S. 470 (1917)........................................................................31

*Coggin Automotive Corporation v. Commissioner*,
    292 F.3d 1326 (11th Cir. 2002) .......................................................34

*George Edward Quick Trust v. Commissioner*,
    54 T.C. 1336 (1970)...................................................................31, 34

*\*Grecian Magnesite Mining, Indus. & Shipping Co., SA v. Commissioner*,
    149 T.C. 63 (2017)...................... x, 10, 16, 20, 21, 25, 26, 27, 28, 29, 30, 33, 35

*\*Grecian Magnesite Mining, Indus. & Shipping Co., SA v. Commissioner*,
    926 F.3d 819 (D.C. Cir. 2019)...................... x, 3, 7, 8, 20, 21, 25, 26, 27, 30, 35

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)........................................................................13

*Innovation Ventures, LLC, Manoj Bhargava, Tax Matters Partner v. Commissioner*,
    Docket No. 5741-19....................................................................x, 5, 6

*Mingo v. Commissioner*,
    T.C. Memo. 2013-149, 105 T.C.M. (CCH) 1857 (2013) ........................31, 34, 35

*Nat'l Railroad Passenger Corp. v. United States*,
    431 F.3d 374 (D.C. Cir. 2005).........................................................13

*Petroleum Corp. of Texas, Inc. v. United States*,
    939 F.2d 1165 (5th Cir. 1991) .......................................................34

*Pollack v. Commissioner*,
    69 T.C. 142 (1977)........................................................................18

iv

*Rawat v. Commissioner*,
   T.C. Memo. 2023-14 (2023)............... x, 8, 16, 17, 21, 24, 25, 26, 28, 30, 32, 34

*Toso v. Commissioner*,
   151 T.C. 27 (2018)....................................................................................31

*United States v. Morison*,
   844 F.2d 1057 (4th Cir. 1988) ................................................................31

**Statutes**

Foreign Investment in Real Property Tax Act of 1980, Pub. L. No. 96-
   499, 94 Stat. 2682 (Dec. 5, 1980) ...........................................................17

Pub. L. No. 83-591, 68A Stat. 1 (Aug. 16, 1954)...........................................15, 17

Pub. L. No. 94-455, 90 Stat. 1520 (Oct. 4, 1976) .....................................15

Internal Revenue Code (26 U.S.C.):
   § 64..............................................................................................15
   § 65..............................................................................................15
   § 306(a)(1)(A) ...............................................................................16
   § 338.............................................................................................33
   § 512(b)(5) ....................................................................................31
   § 512(b)(16)(A) ..............................................................................31
   *§ 741............... 2, 9, 11, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23, 28, 30, 31, 32, 33
   § 751........................... 6, 9, 10, 14, 17, 18, 19, 20, 21, 22, 23, 28, 29, 30, 32, 35
   *§ 751(a) x, 2, 9, 10, 11, 14, 15, 16, 17, 18, 19, 20, 28, 29, 30, 31, 32, 33, 34, 35
   § 751(d) .........................................................................................32
   § 751(d)(1) .....................................................................................32
   § 814.............................................................................................33
   § 864.............................................................................................33
   § 864(c) .........................................................................................24
   § 864(c)(1) .......................................................................................x
   § 864(c)(5) ....................................................................................27
   § 864(c)(8) ............................................................................2, 21, 22, 23, 30
   § 865.......................................................................................12, 32
   § 865(i) .........................................................................................32
   § 865(i)(1) ................................................................................12, 32
   *§ 865(a) ..............................................................2, 11, 12, 24, 28, 35
   § 865(a)(2) ............................................................................12, 24, 36
   § 865(b) .......................................................................................2, 11, 24

Internal Revenue Code (26 U.S.C.) (cont'd):

§ 871(a) ....................................................................................24

§ 875 ..................................................................................2, 35

§ 875(1) .....................................................................25, 26, 27

§ 897 .......................................................................................17

§ 897(g) ..............................................................2, 16, 17, 28, 30

§ 904 .......................................................................................19

§ 989 .......................................................................................33

§ 1221(a) ................................................................................32

§ 1221(a)(1) ............................................................................32

§ 1291 .....................................................................................31

§ 6212 .......................................................................................5

§ 6213(a) ...............................................................................1, 2

§ 6512(b) ...................................................................................2

§ 6512(b)(1) ..............................................................................1

§ 6651(a)(1) ..............................................................................6

§ 6651(a)(2) ..............................................................................6

§ 6654 .......................................................................................6

§ 7422 ...................................................................................1, 2

§ 7482(a) ...................................................................................2

§ 7482(a)(1) ..............................................................................1

§ 7482(b) ...................................................................................2

§ 7482(b)(1) ..............................................................................1

Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, § 13501(a)(1)
(2017) ......................................................................................21

Tax Reform Act of 1986 .........................................................19

## Rules and Regulations

Revenue Rule 91-32, 1991-1 C.B. 107 ..............................20, 21

Treasury Regulations (26 C.R.F.):

§ 1.751-1(a)...............................................................................2

§ 1.751-1(a)(2) ...................................................................29, 34

§ 1.864(c)(8)-1 ........................................................................22

§ 1.864(c)(8)-1(i) .....................................................................23

§ 1.864(c)(8)-1(a) ....................................................................22

§ 1.864(c)(8)-1(c) .....................................................................23

§ 1.864(c)(8)-1 (2020) ..............................................................2

## Other Authorities

Fed. R. App. P. 28(f) ...................................................................................2

H.R. REP. NO. 83-2543 (July 26, 1954) (Conf. Rep.) ..............................19

H.R. REP. NO. 83-1337, 83d Cong., 2d Sess. (March 9, 1954) ...............19

H.R. REP. NO. 94-658, 94th Cong., 1st Sess. (Nov. 12, 1975) ..............16

H.R. REP. NO. 99-426, 99th Cong., 1st Sess. (Dec. 7, 1985)...................19

H.R. REP. NO. 99-841, 99th Cong., 2d Sess., vol. 2 (Sept. 18, 1986)
(Conf. Rep.) .........................................................................................19

McKee, Nelson, & Whitmire, *Federal Taxation of Partnerships and
Partners* (4th Ed. 2007, updated through Aug. 2023) ¶ 17.01 ....................18, 31

D.C. Circuit Rule 28(a)(5) .........................................................................2

S. REP. NO. 83-1622, 83d Cong., 2d Sess. (April 5, 1954)......................19

S. REP. NO. 99-313, 99th Cong., 2d Sess. (May 29, 1986)) ....................19

Staff of Comm. on Tax'n, 84th Cong., Summary of the New
Provisions of the Internal Revenue Code of 1954 (J. Comm. Print
1955) ....................................................................................................18

\* Authorities upon which we chiefly rely are marked with asterisks.

# GLOSSARY

| Term | Definition |
|------|------------|
| Code | Internal Revenue Code of 1986, Title 26 U.S.C., as in effect during 2008, the tax year at issue, unless otherwise indicated. |
| ECI | "Effectively connected income," as defined in section 864(c)(1) of the Internal Revenue Code of 1986, 26 U.S.C. § 864(c)(1). |
| *Grecian Magnesite I* | The opinion of the Tax Court in *Grecian Magnesite Mining, Indus. & Shipping Co., SA v. Commissioner*, 149 T.C. 63 (2017). |
| *Grecian Magnesite II* | The opinion of this Court in *Grecian Magnesite Mining, Indus. & Shipping Co., SA v. Commissioner*, 926 F.3d 819 (D.C. Cir. 2019). |
| Innovation Ventures | Innovation Ventures, LLC, a U.S. business taxable as a partnership; and in context to that entity's case presently pending in the United States Tax Court, captioned *Innovation Ventures, LLC, Manoj Bhargava, Tax Matters Partner v. Commissioner*, Docket No. 5741-19. |
| Inventory Gain | The portion of money received by Appellant attributable to inventory pursuant to section 751(a) of the Internal Revenue Code of 1986, 26 U.S.C. § 751(a). |
| IRS | Internal Revenue Service, an agency of the U.S. Department of the Treasury. |

| Term | Definition |
| --- | --- |
| Non-Inventory Gain | The portion of money received by Appellant that is *not* attributable to inventory pursuant to section 751(a) of the Internal Revenue Code of 1986, 26 U.S.C. § 751(a). |
| *Rawat* | The opinion of the Tax Court in *Rawat v. Commissioner*, T.C. Memo. 2023-14 (Feb. 7, 2023). |
| U.S.C. | United States Code. |

## STATEMENT OF JURISDICTION

**1.      Jurisdiction in the United States Tax Court.**

The United States Tax Court had jurisdiction over this matter pursuant to

sections 6213(a) and 7442 of the Internal Revenue Code of 1986, as amended

("Code").[1]  The Tax Court had further jurisdiction over Appellant's overpayment

of tax, interest, penalties and additions to tax pursuant to section 6512(b)(1).  This

appeal is limited to that overpaid amount (plus interest), the balance of the

deficiency (and a small amount of refund due to Appellant) having been resolved

pursuant to stipulations of the parties.

**2.      Jurisdiction in the Court of Appeals**.

Because this is an appeal from an Order and Decision of the United States

Tax Court, this Court has jurisdiction pursuant to section 7482(a)(1).  Appellant is

not a resident of the United States, and therefore venue in this Court is appropriate

pursuant to section 7482(b)(1) (flush language at end).

---

[1]      Unless otherwise noted, "section" refers throughout to the identified section
of the Internal Revenue Code of 1986, Title 26, U.S.C., as in effect during 2008,
the tax year at issue.

## STATUTES AND REGULATIONS

The following pertinent statutes and regulations are set forth in the addendum, which is being filed separately pursuant to D.C. Circuit Rule 28(a)(5) and Fed. R. App. P. 28(f).  Unless otherwise indicated, "section" refers to a section of the Internal Revenue Code of 1986, Title 26 U.S.C., as in effect during 2008, the tax year at issue.

**Statutes:**

Section 741

Section 751

Section 864(c)

Section 864(c)(8) (2020)

Section 865

Section 871(a)(1)

Section 875

Section 897(g)

Section 6213(a) (2016)

Section 6512(b) (2016)

Section 7442 (2016)

Section 7482 (current)

**Regulations:**

Treas. Reg. (26 C.F.R.) § 1.751-1(a)

Treas. Reg. (26 C.F.R.) § 1.864(c)(8)-1 (2020)

## STATEMENT OF THE ISSUE

Whether, in light of this Court's holding in *Grecian Magnesite Mining, Indus. & Shipping Co., SA v. Commissioner*, 926 F.3d 819 (D.C. Cir. 2019), the Tax Court erred in holding that Appellant, a nonresident alien not in the business of trading partnership interests, is nevertheless liable for U.S. tax on the portion of the gain from the sale of her partnership interest in Innovation Ventures, LLC that was attributable to inventory of the underlying entity.

## STATEMENT OF THE CASE

### 1.    Statement of facts

This case involves the proper U.S. tax treatment of gain realized by the Appellant, Mrs. Indu Rawat, from the sale of her partnership interest in Innovation Ventures, LLC ("Innovation Ventures") in 2008.  Mrs. Rawat was in 2008 a nonresident alien (citizen of Canada and in 2008 a resident of India).  Petition ¶¶ 1, 5.a., 5.b., 5.c,; Answer ¶¶ 1, 5.a., 5.b., 5.c, (initially denying this allegation for lack of information); Report by Respondent (July 24, 2020) (conceding the nonresident alien issue); Stipulation of Settled Issues (Aug. 23, 2022) (stipulating that Mrs. Rawat was a nonresident alien).  Innovation Ventures is a U.S. business, treated as a partnership for federal income tax purposes during 2008.  *See, e.g.*, Petition ¶ 5.e; Answer, ¶ 5.e; Respondent's Declaration of S. Katy Lin in Support

3

of Response to Motion for Summary Judgment (Mar. 2, 2020) and

Exhibit 1 thereto.[2]

In 2008 Mrs. Rawat sold her 29.2% partnership interest in Innovation

Ventures to Innovation Ventures Acquisition Co., LLC, in exchange for a

promissory note with a principal amount of $438,075,000.  Petition ¶¶ 5.e, 5.l, 5.m,

5.n; Answer ¶¶ 5.e, 5.l, 5.m, 5.n, and Exhibit A thereto.  Mrs. Rawat was not

otherwise engaged in any U.S. trade or business, including the trade or business of

dealing in partnership interests.

### 2.    Course of proceedings and disposition in the Tax Court

The IRS examined the Innovation Ventures partnership return(s) and

whether Mrs. Rawat was liable for U.S. tax on the sale of her partnership interest.[3]

---

[2]     Although Innovation Ventures is technically a limited liability corporation, it is taxable as a partnership and thus subject to the partnership provisions (Chapter 1, subchapter K) of the Code; and for convenience the parties and the Tax Court have routinely referred to the sale of Mrs. Rawat's membership shares in Innovation Ventures as the sale of a "partnership" interest.  *See, e.g.*, Petition ¶ 5.hh; Answer ¶ 5.hh; Joint Status Report (Aug. 28, 2017) ¶ 3 (describing Petitioner's "interest in a U.S. partnership"); Memorandum in Support of Motion for Summary Judgment (Dec. 20, 2019) ¶¶ 2-3 and the numerous references therein.

[3]     As a nonresident alien who was not otherwise engaged in a U.S. trade or business, Mrs. Rawat did not file income tax returns for the years 2008 or 2009. (She did file for previous years when she was a partner in Innovation Ventures and received partnership allocations from it.  Petition ¶ 5.j; Answer ¶ 5.j.) Accordingly, the adjustments in question were proposed in connection with the examination of the sale of her partnership interest in Innovation Ventures.  *See* Petition ¶ 5.t; Answer ¶ 5.t; First Amended Response to Motion for Summary

4

The parties agreed during the examination that most of the gain from the sale of Mrs. Rawat's partnership interest was attributable to assets other than inventory of Innovation Ventures (the so-called "Non-Inventory Gain"). The parties likewise agreed that a small portion of the gain from the sale of Mrs. Rawat's partnership interest ($6.5 million of the total $438 million received) was attributable to Innovations Ventures' inventory (the so-called "Inventory Gain"). Petition ¶ 5.cc; Answer ¶ 5.cc and Exhibit C; First Amended Response to Motion for Summary Judgment (Apr. 20, 2020) ¶ 3. With Mrs. Rawat's consent (on a Form 870-LT), the IRS, on March 19, 2012, assessed tax, penalties, and additions to tax for the 2008 tax year based upon the IRS's adjustments attributable to the Inventory Gain, but not with respect to the Non-Inventory Gain. *See, e.g.,* Petition ¶ 5.hh; Answer ¶ 5(hh); Respondent's Declaration of S. Katy Lin in Support of Response to Motion for Summary Judgment (Mar. 2, 2020) ¶¶ 9-12 and Exhibit 3 thereto.

On May 13, 2016, the IRS mailed to Mrs. Rawat a statutory notice of deficiency of tax, plus additions to tax, pursuant to section 6212 of the Code, with respect to the IRS's adjustments attributable to the Non-Inventory Gain issue. The proposed tax deficiencies were as follows:

---

Judgment (Apr. 20, 2020) ¶ 3. Adjustments to the partnership returns of Innovation Ventures itself are still pending in the Tax Court in *Innovation Ventures, LLC, Manoj Bhargava, Tax Matters Partner v. Commissioner*, Docket Number 5741-19. *Id.*

| Year | Tax |
|------|-----|
| December 31, 2008 | $3,833,820.00 |
| December 31, 2009 | $2,555,880.00 |

The proposed additions to tax were as follows:

| Year | IRC 6651(a)(1) | IRC 6651(a)(2) | IRC 6654 |
|------|----------------|----------------|----------|
| December 31, 2008 | $958,454.99 | | |
| December 31, 2009 | $575,073.00 | $638,970.00 | $46,768.98 |

*See* Petition ¶¶ 2, 3 and Exhibit A (Notice of Deficiency) at 1; Answer ¶¶ 2 and 3.

These adjustments (including to 2009) related exclusively to the Non-Inventory

Gain.  Petition, Exhibit A at p. 6 ("backing out" the Inventory Gain recognized

under section 751, tax on which had already been assessed); Joint Status Report

(April 25, 2018) ¶ 3.

On June 1, 2016, after the IRS issued the statutory notice of deficiency

described above (related to the Non-Inventory Gain), Mrs. Rawat paid the

IRS $2,942,000.27, fully paying the assessed amounts related to the Inventory

Gain (as subsequently adjusted by Respondent), including interest.  Petition ¶ 5.hh;

Answer ¶ 5hh; Joint Status Report (Dec. 14, 2017) ¶ 3.  On July 7, 2016, Mrs.

Rawat filed a petition in the Tax Court, disputing all of the deficiencies, penalties,

and additions to tax determined by the IRS, and specifically invoking the Tax

6

Court's refund jurisdiction with respect to the payment related to the Inventory Gain adjustments in 2008.  *See* Petition, ¶¶ 3, 5.hh; Answer ¶¶ 3, 5.hh.

Mrs. Rawat moved for summary judgment with respect to both issues, the Non-Inventory Gain and the Inventory Gain.  Motion for Summary Judgment (Dec. 20, 2019); Memorandum in Support of Motion for Summary Judgment (Dec. 20, 2019).  The parties agreed that the "Non-Inventory Gain" issue would be resolved pursuant to this Court's resolution of *Grecian Magnesite Mining, Indus. & Shipping Co., SA v. Commissioner*, 926 F.3d 819 (D.C. Cir. 2019) ("*Grecian Magnesite II*"), *aff'g* 149 T.C. 63 (2017) ("*Grecian Magnesite I*"), and so stipulated before the Tax Court.  Joint Status Report (October 8, 2019) ¶ 3; First Amended Memorandum in Support of Response to Motion for Summary Judgment (Apr. 20, 2020), p. 4, ¶ 3; Stipulation of Settled Issues (Aug. 18, 2020).  In *Grecian Magnesite II*, this Court concluded (as the Tax Court had) that the sale of a partnership interest by a nonresident alien not otherwise engaged in a U.S. trade or business was foreign source income and not taxable in the U.S.  In this case, the IRS briefly contended that Mrs. Rawat was not a nonresident alien, but later conceded that issue.  First Amended Memorandum in Support of Response to Motion for Summary Judgment (Apr. 20, 2020) p. 4, ¶ 2; Report by Respondent (July 24, 2020) (conceding the nonresident alien issue); Stipulation of Settled Issues (Aug. 23, 2022) (stipulating Mrs. Rawat was a nonresident alien).  The Non-

7

Inventory Gain issue was therefore resolved in Mrs. Rawat's favor following

*Grecian Magnesite II* and the Tax Court's decision reflects that, *see* Order

(July 20, 2021).  The Non-Inventory Gain adjustments are accordingly not at issue

in this appeal.

Resolution of the Inventory Gain issue, and Mrs. Rawat's payment related to

that, was slightly more protracted and is the subject of this appeal.  In conjunction

with Mrs. Rawat's motion for summary judgment, the Tax Court initially held that

Mrs. Rawat's agreement permitting assessment of those liabilities constituted a

concession on the merits, *see* Order (July 20, 2021), but reconsidered upon Mrs.

Rawat's motion.  The Tax Court then determined that, though the agreement

characterized and recognized ordinary income in the amount of the Inventory Gain,

it did not extend to the source of such income, leaving open whether it was taxable

to Mrs. Rawat.  Motion for Reconsideration of Petitioner's Motion for Summary

Judgment (Aug. 18, 2021); Order (July 28, 2022).  Ultimately the Tax Court

denied Mrs. Rawat's motion for summary judgment on the Inventory Gain issue, in

the memorandum opinion dated February 7, 2023, that is at issue in this appeal.

Memorandum Opinion (Feb. 7, 2023) ("*Rawat*").  The parties entered stipulations

as to the effect of that opinion, and Mrs. Rawat proposed a form of decision

document that would properly reflect it.  Stipulation of Settled Issues

(Apr. 13, 2023); Motion for Entry of Decision (April 17, 2023).  On May 22, 2023,

the Tax Court thus entered its order and decision, which Mrs. Rawat promptly

appealed to this Court.[4]  Order and Decision (May 22, 2023); Notice of Appeal

(May 31, 2023).

## SUMMARY OF ARGUMENT

The subject of this appeal is the opinion of the Tax Court that resulted in the

final order and decision dated May 22, 2023.  The Tax Court erred when it found

Mrs. Rawat liable for income taxes in connection with the Inventory Gain from a

sale in 2008 of her interest in a U.S. business, Innovation Ventures.  Mrs. Rawat

was a "nonresident alien" for United States tax purposes during the year of the

sale.  Innovation Ventures was taxable as a partnership, and what Mrs. Rawat sold

was her partnership interest.

When a partner transfers her interest in a partnership, the amount of gain (if

any) on the sale is recognized as income, pursuant to the first sentence of

section 741.  Pursuant to the second sentence of section 741, that gain is usually

taxable, if at all, as capital gain; but pursuant to section 751(a), if a portion of the

amount received is attributable to certain property held by the partnership—

"unrealized receivables" or "inventory items," as defined elsewhere in section

---

[4]      The Tax Court did order a refund of $833.40 to Mrs. Rawat with respect
to 2008, which the parties had stipulated was attributable simply to a calculation
error and not to the merits of the underlying assessment and payment.  Stipulation
of Settled Issues, (Apr. 18, 2023); Order and Decision (May 22, 2023).

751—then that portion of the amount received is taxable, if at all, as ordinary income ("an amount realized from the sale or exchange of property other than a capital asset"). The parties agree that a portion of the amount of money received by Mrs. Rawat for the sale of her interest in Innovation Ventures was attributable to inventory held for sale by Innovation Ventures, and that such portion (which the parties and the Tax Court referred to as the "Inventory Gain") is ordinary in character, but the parties disagree that Mrs. Rawat is taxable on such portion.

Both the Tax Court and this Court previously held in *Grecian Magnesite I* and *II* that gain on the sale of a partnership interest is treated as "foreign source" income for a nonresident alien who is not otherwise engaged in a U.S. trade or business. As a consequence, in this case the IRS conceded that the amount of Mrs. Rawat's gain that was *not* attributable to inventory items (the "Non-Inventory Gain") was foreign source income, and thus that Mrs. Rawat was not subject to tax on it. That eliminated all of the deficiency, leaving for resolution only the amount of tax due from the Inventory Gain, which Mrs. Rawat had already paid.

The Tax Court erred, however, in holding that the Inventory Gain arising from Mrs. Rawat's sale of her partnership interest was not similarly foreign source income and that she therefore was taxable in the U.S. on it. Its reasoning relies on a fundamental misconception of section 751(a) and its application here. Rather than simply treating section 751 as determining the "character" of a portion of the

10

gain (as capital or ordinary income), the Tax Court erroneously held that section

751(a) effectively determined the "source" of that income as well.  In other words,

the Tax Court held that under section 751(a), Mrs. Rawat did not just sell a

partnership interest, the gain on which would be foreign source income and not

taxable income to her, though ordinary in character, to the extent attributable to

inventory.  Instead, the Court held, that Mrs. Rawat was "deemed" to have actually

sold *inventory itself*, generating ordinary income but also U.S. source income that

is taxable to her as a nonresident alien, no different than if she had *in fact*

sold inventory.

The Tax Court's holding is inconsistent with a correct interpretation of

sections 741 and 751(a).  First, contrary to the Tax Court's interpretation,

section 751(a) does not adopt a "disaggregation" theory of partnerships; it merely

treats a portion of the amount received as ordinary income to preclude the

conversion of income taxable at ordinary rates to that taxable at capital rates.

Second, those Code provisions say *nothing* about the *source* of amounts received

from the sale of a partnership interest; they are concerned exclusively with the

*character* of such amounts.  In changing the character (and tax rate) from capital to

ordinary, section 751(a) does not and cannot create taxable U.S. source income

where there otherwise is none.  By contrast, the applicable source rules in section

865(a) and (b) delineate taxable income from nontaxable income and in doing so

clearly distinguish between a sale of personal property like a partnership interest and an actual sale of inventory as defined in section 865 itself. This Court's holding in *Grecian Magnesite II* regarding the sale of a partnership interest is consistent with the applicable statutory language that a single, unitary interest is sold, not an interest in a capital asset and a separate interest in inventory property. The Inventory Gain from the sale of such interest is personal property and foreign source to Mrs. Rawat under section 865(a)(2).

For these reasons, the Tax Court's opinion was erroneous, and its order and decision should be reversed.

## ARGUMENT

### I.    The Sale of a Partnership Interest is the Sale of a Single, Unitary Property.

When a nonresident alien, such as Mrs. Rawat, sells personal property, such as her partnership interest in Innovation Ventures, Chapter 1, subchapter N of the Code governs the source of any gain. At the time of Mrs. Rawat's sale, section 865(a) provided the general rule that such gain from the sale of personal property is foreign source gain, with certain exceptions. That is, if the Inventory Gain is gain from the sale of a partnership interest, which is personal property, then the Inventory Gain is foreign source under section 865(a). However, if the Inventory Gain were gain from the actual sale of inventory property, as defined in section 865(i)(1), then such gain would be U.S. source.

12

As a result, this dispute centers on determining what Mrs. Rawat sold for the purpose of sourcing: a unitary partnership interest or inventory. The Tax Court focused on whether to view a partnership as an "entity" or an "aggregate" to illuminate whether a partnership interest is a unitary interest in the partnership under the entity theory or composed of severable interests in each of the assets held by the partnership under the aggregate theory. A thorough analysis of the relevant statutes demonstrates that Mrs. Rawat's Inventory Gain is gain from the sale of a unitary partnership interest, and therefore nontaxable foreign source gain from the sale of personal property similar to Mrs. Rawat's Non-Inventory Gain.

**A.      The plain language of section 741 supports the entity theory.**

Chapter 1, subchapter K of the Code generally addresses the tax consequences of conducting business as a partner in a partnership, with statutes and case law together pointing toward when to treat a partnership as an entity or an aggregation of assets. Section 741 specifically addresses the transfer of a partnership interest, and as in all situations of statutory interpretation, the analysis starts with the language of the statute in question. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("As in any case of statutory construction, our analysis begins with 'the language of the statute.'") (citation omitted); *Nat'l Railroad Passenger Corp. v. United States*, 431 F.3d 374, 376 (D.C. Cir. 2005)

13

(declining to expand a statute beyond its plain language, having stated, "We begin, as we must, with the statute's language.").  Section 741 provides:

> *Recognition and character of gain or loss on sale or exchange*.
> In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner.  Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items).

Section 741 immediately supports the entity theory, describing what was sold as "an interest in a partnership," not interests in the assets of a partnership.  The plain language of the first sentence references the sale of a singular unitary interest, and conceptually and grammatically it stands alone.  The second sentence of section 741 addresses the "gain or loss" from the completed sale—not *what* was sold.  Section 741's cross-reference to section 751(a) does not disaggregate the partnership interest; it simply discusses the character of a portion of the resulting gain or loss.

## B.    Section 751(a) does not change *what* was sold; it changes the *character* of the *gain*.

The plain language of section 751(a) continues the analysis of the tax consequences following a completed sale of a partnership interest.

Section 751(a) provides:

> The amount of any money . . . received by a transferor partner in exchange for all or part of his interest in the partnership attributable to— (1) unrealized receivables of the partnership, or (2) inventory items of the

partnership, shall be considered as an amount realized from the sale or exchange of property other than a capital asset.

The subject of this one-sentence paragraph is "[t]he *amount of any money*." Until the verb ("shall be considered") is reached, the sentence simply identifies the portion of the money at issue. It then provides that such amount of money "shall be considered as an amount realized from the sale or exchange of property other than a capital asset." This language does not "deem" there to have been an actual sale of property "other than a capital asset;" rather, it recharacterizes ("considers") the character of the *amount realized.*

The antiquated phrase "shall be considered as an amount realized from the sale or exchange of property other than a capital asset" from the 1954 enactment of section 751(a) is a relic from before "ordinary income" became a defined term of art in the Code, but it means nothing more than income that is "ordinary" in character. *See* Internal Revenue Code of 1954, Pub. L. No. 83-591 § 741, 68A Stat. 1, 248 (Aug. 16, 1954) (enacting subchapter K, including sections 741 and 751(a)); Pub. L. No. 94-455 § 1901(a)(10) and (a)(11) (Oct. 4, 1976) (enacting sections 64 and 65). When Congress later added sections 64 and 65 to the Code, defining "ordinary income," it explained: "Both new sections are intended to replace the cumbersome and lengthy terminology of present law which . . . describe these . . . as: 'gain (or loss) from the sale or exchange of property which is

15

not a capital asset . . . ."  H.R. REP. NO. 94-658 at 374, 93d Cong., 1st Sess.

(Nov. 12, 1975).[5]

The understanding that the plain language of section 751(a) simply means

"ordinary income" is further supported by contrasting it with the language of

section 897(g), an actual statutory sourcing "exception," mentioned by the Tax

Court in both *Grecian Magnesite I* and *Rawat*.  *Grecian Magnesite I*, 149 T.C.

at 74 n.12; *Rawat* at *14 n.12.  Section 897(g) states:

> [T]he amount of any money . . . received by a nonresident alien . . . in
> exchange for all or part of its interest in a partnership . . . shall, to the extent
> attributable to United States real property interests, be considered as an
> amount received from the sale or exchange in the United States *of
> such property*.

(Emphasis added.)  Section 897(g) uses "*such* property" to refer specifically to

U.S. real property, instead of using the classic description of ordinary income as

"from the sale or exchange of property other than a capital asset."  In contrast, the

phrasing of section 751(a) does not make a direct reference to the amount

attributable to inventory as being considered to be received *from the sale of

inventory*.  Moreover, the phrase in section 897(g), "from the sale or exchange in

the United States," makes explicit that it is a sourcing rule (in addition to it being

---

[5]    There are other Code provisions that recharacterize gain from the sale of a
capital asset as ordinary income without changing the nature of the asset itself.
*See, e.g.*, section 306(a)(1)(A) (providing that gain from the disposition of certain
stock is ordinary income).

located in subchapter N, entitled "Tax Based on Income from Sources Within or
Without the United States"). In fact, for partnerships that buy and sell U.S. real
property, section 897(g) governs real property inventory, sourcing it to the United
States; section 897(g) would be superfluous if section 751(a) were held to govern
the sourcing of inventory in the first place.[6] Accordingly, the Tax Court
acknowledged below that section 751(a) is not on equal footing with
section 897(g): "we accepted that the construct reflected in sections 741 and 751
(again, in the absences of express statutory exceptions, such as the one provided in
section 897(g)) governed generally the tax consequences of a sale of a partnership
interest." *Rawat* at *14 n.12. The plain language and operation of the two statutes
reveals the absurdity of applying section 751(a) in the same manner as
section 897(g). *Id.*

By its plain language, section 751(a) changes only the income tax
characterization of the *money* received from capital to ordinary, affecting the
ultimate applicable tax rate while continuing to refer to what was sold as a singular
"interest in the partnership." The government's contention that section 751(a)
governs more than the character of income—that it causes the disaggregation of a

---

[6]      Section 897 is known as the Foreign Investment in Real Property Tax Act of
1980 ("FIRPTA"), Pub. L. No. 96-499, 94 Stat. 2682 (Dec. 5, 1980), and was
enacted well after section 751's enactment in the Internal Revenue Code of 1954,
Pub. L. No. 83-591 § 741, 68A Stat. 1, 248 (Aug. 16, 1954).

partnership interest upon disposition for any and all purposes—is contrary to the plain language of this provision.

### C. The sole purpose and effect of section 751(a) is to characterize certain gain as ordinary income.

Section 751 was enacted solely to change the character of and thus the rate applicable to amounts that would otherwise be treated as capital gains. It targeted "collapsible partnerships," which were a structure utilized to convert ordinary income into capital gain by selling interests in a partnership to a related buyer and then terminating the partnership. *See* Staff of Comm. on Tax'n, 84th Cong., Summary of the New Provisions of the Internal Revenue Code of 1954, at 94 (J. Comm. Print 1955) ("The 1939 Code contained no special rules to prevent the conversion into capital gain, by virtue of transfers of partnership interests or by distributions of property, of income which if realized *by the partnership* in its normal business operations would be ordinary income.") (emphasis added).[7] The legislative history of section 751 never touched on the possibility that section 751

---

[7]    *See also, Pollack v. Commissioner*, 69 T.C. 142, 146 (1977) (in enacting sections 741 and 751, "Congress . . . sought to . . . reduce the availability of the collapsible partnership as a tax avoidance device."); McKee, Nelson, & Whitmire, *Federal Taxation of Partnerships and Partners* (4th Ed. 2007, updated through Aug. 2023) ¶ 17.01 ("The Collapsible Partnership Provision: 751(a)") ("The Service was quite properly concerned that the allowance of capital gain treatment on the sale of the interest in a partnership holding appreciated ordinary income property might result in the conversion of ordinary income into capital gain if the sale were followed by a 'collapse' of the partnership.").

18

could affect sourcing under subchapter N.[8]  And in other areas, Congress has made it clear that the character of income is a tax attribute entirely discrete from the source of income.[9]  The collapsible partnership problem concerned solely the character of gain, and resolving it was the entirety of the purpose and scope of section 751.

### D.    Section 751(a) does not determine source.

Neither section 741 nor section 751 addresses sourcing, as they are found in Chapter 1, subchapter K of the Code, while subchapter N addresses sourcing. Subchapter K as a whole does not once address whether income or gain is U.S. source or foreign source.  Likewise, subchapter N's sourcing provisions do not once address the character of income or gain.[10]  In changing the character and

---

[8]    *See* H.R. REP. NO. 83-1337 (1954); H.R. REP. NO. 83-2543 (1954) (Conf. Rep.); S. REP. NO. 83-1622 (1954).

[9]    For example, the legislative history to the foreign exchange gain or loss provision in the Tax Reform Act of 1986 identifies character and source as tax attributes to be separately legislated: "The principal issues presented by foreign currency transactions relate to the timing of recognition, the character (capital or ordinary), and the geographic source (domestic or foreign) of exchange gains or losses."  H.R. REP. NO. 99-426, at 449 (1985); S. REP. NO. 99-313, at 433 (1986) (same); *see also,* H.R. REP. NO. 99-841, at II-662 (1986) (Conf. Rep.) ("Present law presents issues relating to the timing of recognition, the character, and the geographic source or allocation of exchange gain or loss.").

[10]    Subchapter N does include a character-related limitation on the foreign tax credit, but that is not a source provision.  *See* section 904.

applicable tax rate from capital to ordinary, sections 741 and 751(a) make no provision for the source of such income, or its taxability.

On the sale of a partnership interest, the source of the gain as U.S. or foreign is a separate analysis. For example, in the Revenue Ruling that provided guidance prior to *Grecian Magnesite I*,[11] the IRS itself acknowledged that sections 741 and 751 determine only character and not source. See Rev. Rul. 91-32, 1991-1 C.B. 107 ("Situation 2: The character . . . is determined under section 741 and section 751 of the Code."). Only then does the Revenue Ruling's analysis turn to separately determining whether the income is taxable under the sourcing rules. *Id.* Likewise in analyzing source in *Grecian Magnesite I* the Tax Court stated: "Having established that GMM's disputed gain arises from personal property in the form an indivisible capital asset, we now turn to the rules governing taxation of international transactions to determine *whether that gain was taxable*." *Grecian Magnesite I*, 149 T.C. at 82 (emphasis added, footnote omitted). Only after having determined that the entire interest sold is personal property, and having determined the character of the resulting gain, did the Tax Court then turn to the question of

---

[11]    Both opinions in *Grecian Magnesite* rejected Revenue Ruling 91-32, 1991-1 C.B. 107 as contrary to the law: "We criticize the ruling's treatment of the subchapter N issues [and] decline to defer to the ruling. We will instead follow the Code . . . ." *Grecian Magnesite I*, 149 T.C. at 84. *See also*, *Grecian Magnesite II*, 926 F.3d at 823 ("We thus do not defer to the Ruling . . . .").

20

whether that gain is U.S. or foreign source—*whether it is taxable*. *Id.* The Tax Court even stated this explicitly here: "[Mrs. Rawat] is correct that section 751 is *not a sourcing rule . . .* Both sections 741 and 751 are provisions that define the *character* of the property sold and of its proceeds, *to which the sourcing rules must then* be applied." *Rawat* at *13 (emphasis added).

Following the holding of the Tax Court in *Grecian Magnesite I* that on the sale of a partnership interest, subchapter K determined what was sold and subchapter N then determined its source, in 2017 Congress enacted a new sourcing provision in subchapter N. The new section 864(c)(8) provides that gain on the sale of a partnership that is allocable to inventory is U.S. source. Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, § 13501(a)(1) (2017). Plainly Congress believed a new statutory provision was necessary to change the sourcing rule of *Grecian Magnesite I*. *See* H.R. REP. NO. 115-466, at 509 (2017) (Conf. Rep.) (discussing gain treated as ordinary under section 751), 510-11 (stating *Grecian Magnesite* "rejects the logic of [Rev. Rul. 91-32] and instead holds that, generally, gain or loss on sale or exchange by a foreign person of an interest in a partnership that is engaged in a U.S. trade or business is foreign source").[12]

---

[12]     In *Grecian Magnesite II*, this Court properly determined (and the IRS agreed) that section 864(c)(8) was prospective and thus not applicable to the year at issue there. *Grecian Magnesite II*, 926 F.3d at 823. Likewise, in this case, the Tax Court correctly determined that new section 864(c)(8) does not apply, because Appellant's sale preceded that provision's effective date. *Rawat* at *5 n.5. Thus,

Following the enactment of section 864(c)(8), the IRS promulgated a new regulation, Treas. Reg. (26 C.F.R.) § 1.864(c)(8)-1 (2020), explaining the application of the sourcing provision to inventory gain under the new statute. Yet even the new regulation acknowledges that character and source require separate analyses. Paragraph (b)(1) of the regulation begins by addressing character as an attribute of gain or loss independent of source and separately determined:

> In general. Notwithstanding any other provision of subtitle A of the Internal Revenue Code, if a foreign transferor owns, directly or indirectly, an interest in a partnership that is engaged in the conduct of a trade or business within the United States, outside capital gain, outside capital loss, outside ordinary gain, or outside ordinary loss (each as defined in paragraph (b)(2) of this section) recognized by the foreign transferor on the transfer of all (or any portion) of the interest is treated as effectively connected gain or effectively connected loss, subject to the limitations described in paragraph (b)(3) of this section.

Next, paragraph (b)(2)(i) of the regulation references sections 741 and 751 as the authority for *characterizing* an *amount* of gain or loss as capital or ordinary:

> For purposes of this section, the *amount* of gain or loss that is *treated* as *capital* gain or *capital* loss *under sections 741 and 751* is referred to as outside capital gain or outside capital loss, respectively. The *amount* of gain or loss that is *treated* as *ordinary* gain or *ordinary* loss *under sections 741 and 751* is referred to as outside ordinary gain or outside ordinary loss, respectively.

(Emphasis added.) This regulation thus properly applies sections 741 and 751 as

---

the law applicable to Appellant's sale of her partnership interest is the law as decided by *Grecian Magnesite I* and *II*, not the new Code provision.

determinative of the *character* of an *amount* of gain or loss.  It likewise correctly relies on other authority—the new statute, section 864(c)(8), appropriately located in subchapter N—for regulating the *source* of such gain or loss.  Treas. Reg. § 1.864(c)(8)-1(a) ("This section provides rules and definitions under section 864(c)(8).").

The regulation continues at length describing whether gain, *including gain treated as "ordinary gain" under section 751* like the Inventory Gain here, *is or is not* effectively connected to a U.S. trade or business.  *See, e.g.*, Treas. Reg. § 1.864(c)(8)-1(c) (determining the amount of gain that is treated as effectively connected income), (i) (providing several examples).  In doing so, the regulation itself expressly contemplates that some gain, even that attributable to inventory and treated as ordinary income pursuant to section 751, may be foreign source. Sourcing ordinary gain would not be necessary if the underlying property itself was "disaggregated" such that property giving rise to ordinary income was "deemed" to be separately sold under the IRS's theory here.  It makes sense only under the entity theory, which allows for gain to be both ordinary and foreign source.

Thus, in both the new statute and the new regulation, both Congress and the IRS understood that under prior law (applicable here), even "inventory gain" that was recognized as ordinary income by a foreign person from the sale of an interest

23

in a U.S. partnership was to be foreign source, *i.e.*, the substantive position of Appellant here.  And with good reason—sections 741 and 751 determine character, not source, and thus do not determine whether income is taxable.

## II.    The Sale of Mrs. Rawat's Partnership Interest is Foreign Source as the Sale of her Personal Property.

When a nonresident alien, such as Mrs. Rawat, sells personal property, such as her partnership interest in Innovation Ventures, Chapter 1, subchapter N of the Code governs the source of gain.[13]  At the time of Mrs. Rawat's sale, section 865(a) provided the general rule that such gain from the sale of personal property is foreign source, with certain exceptions.  Thus, if the Inventory Gain is gain from the sale of a partnership interest, which is personal property, then the Inventory Gain is foreign source and not taxable to Mrs. Rawat under section 865(a)(2).  However, if, pursuant to section 865(b) the Inventory Gain were gain from the actual sale of inventory (as defined in section 865(i)(1)), it would be U.S. source and taxable to Mrs. Rawat.  Here, the undisputed fact is that Mrs. Rawat sold a partnership interest, not inventory (*Rawat* at *3, *7), and thus the sale of her personal property is foreign source and not taxable.

### A.    The gain from Mrs. Rawat's sale of her partnership interest is not effectively connected to a U.S. trade or business.

---

[13]    The IRS stipulated that Ms. Rawat was a nonresident alien in 2008, the year of the sale.  See *Rawat* at *9 ("First, it is stipulated that Ms. Rawat is a nonresident alien individual."); Stipulation of Settled Issues (Aug. 23, 2022).

Mrs. Rawat's income from the sale of her partnership interest is not effectively connected income within the meaning of section 864(c),[14] because she is not in the business of trading partnership interests. Under *Grecian Magnesite I*, the U.S. trade or business of a partnership is not imputed to a nonresident alien partner selling her interest in that partnership simply because the partnership conducted a U.S. trade or business. 149 T.C. at 88. Section 875(1) provides that a nonresident alien is treated as being in the trade or business of a partnership in which she holds an interest, and that rule then applies to the items of partnership income, deductions, gain, loss, credit, etc., that are derived from the operations of the partnership. The Tax Court observed that "under that provision [section 875(1)], as a matter of law, Ms. Rawat was 'engaged in a trade or business within the United States,'[] i.e., IV LLC's business of selling energy drinks." *Rawat* at *9-10.

But the rule in section 875(1) is inapplicable to the issue here. As the Tax Court itself made clear in the opinion below, section 875(1) is not relevant to the Inventory Gain, because "[n]ot at issue is Ms. Rawat's liability for U.S. income tax

---

[14]     Under section 871(a), nonresident aliens may be taxable on "Effectively Connected Income" ("ECI"). ECI is defined in section 864(c) as income "effectively connected with a trade or business within the United States," and with certain exceptions it generally is sourced as U.S. income. As this Court previously recognized, some ECI is U.S. source and thus subject to U.S. tax, and some isn't. *Grecian Magnesite II*, 926 F.3d at 822.

on her distributive share of IV LLC's income . . . ." *Rawat* at *9.  This is because Mrs. Rawat's gain from selling her partnership interest is not effectively connected to or derived from being engaged in the business of the partnership.

The Tax Court found in *Grecian Magnesite I* that the "gain in the redemption was not realized from [the partnership's] trade or business of mining magnesite, that is, from *activities at the partnership level*; rather, GMM realized gain at the *partner level* from the distinct sale of its partnership interest." *Grecian Magnesite I*, 149 T.C. at 88 (emphasis added).  The Tax Court then ultimately found that GMM was not "in the business of redeeming and selling partnership interests." *Id.* at 91.  Similarly, Mrs. Rawat is not in the trade or business of buying and selling partnership interests simply by virtue of divesting her interest in a U.S. partnership, and there is no evidence, nor has the Government ever contended, that she was engaged in that business on any other basis.

There is no imputation statute like section 875(1) that governs gain on the sale of Mrs. Rawat's partnership interest.  Regardless of whether the entity theory or the aggregation theory is applied, the business of Innovation Ventures cannot be imputed to Mrs. Rawat's sale because there is simply no statutory basis for doing so.  For that reason, both *Grecian Magnesite I* and *II*, and the Tax Court here in *Rawat,* refrain from applying section 875(1) in analyzing whether gain on the sale

26

of a partnership interest is ECI.  In selling her partnership interest, Mrs. Rawat did

not engage in a U.S. trade or business, *ergo* her Inventory Gain is not ECI.

The Government has never contended that Mrs. Rawat was engaged in a

U.S. trade or business (except pursuant to section 875(1)), and to do so would be

inconsistent with its acknowledgment that the Non-Inventory Gain was not taxable

under *Grecian Magnesite I* and *II*.   Joint Stipulation of Settled Issues (Aug. 18,

2020) ("Respondent concedes in this stipulation of settled issues that petitioner is

not subject to tax on the Non-Inventory Gain.").[15]  In other words, the IRS

effectively conceded that Mrs. Rawat was not in the trade or business of dealing in

partnerships interests.  But that must be equally true for the Inventory Gain, and

the Government has never identified any statutory basis for saying that the

Inventory Gain is effectively connected to any other trade or business.

The Inventory Gain also is not ECI under the "U.S. office rule" in

section 864(c)(5).  As in *Grecian Magnesite I* and *II*, Innovation Ventures sold its

products, not partnership interests, and thus it did not "regularly carr[y] on

activities of the type from which" the gain in question in this case was derived.

*Grecian Magnesite II,* 926 F.3d at 826-27 (the U.S. office at issue "was engaged in

---

[15]     As a basis independent of section 875(1) for Mrs. Rawat being in a U.S. trade or business was never asserted in the Tax Court proceedings, the Government has waived any such argument.

27

the business of magnesite mining . . . not in the business of redemption" of ownership interests).[16]  Conversely, Mrs. Rawat's sale of her partnership interest in Innovation Ventures was not within the type of activities that Innovation Ventures regularly carries on.  Thus, the Inventory Gain is not attributable to a U.S. office and is not ECI.  Any argument by the Government to the contrary is inconsistent with this Court's (and the Tax Court's) holding in *Grecian Magnesite I* and *II*.

### B.    There is no basis for differentiating the Inventory Gain from the Non-Inventory Gain for sourcing purposes.

It is erroneous to "disaggregate" the partnership interest for sourcing purposes on the basis that the Inventory Gain is characterized as ordinary income by section 751(a).  The Tax Court's analysis mistakenly commences with the idea that section 741 *alone* "imposes" the entity theory.  *Rawat* at *13-14.  In contrast, in *Grecian Magnesite I*, the Tax Court looked to subchapter K more broadly for that proposition.[17]  Further, the Tax Court in *Grecian Magnesite I* expressly determined that the exceptions in section 751 themselves *support* the entity theory.

---

[16]    The parties stipulated in the Tax Court that Innovation Ventures produced, purchased, and sold only within the United States.  Stipulation of Settled Issues (April 13, 2023) ¶ 3.

[17]    *See Grecian Magnesite I*, 149 T.C. at 81-82 ("subchapter K mandates treating the disputed gain as capital gain from the disposition of a single asset, and . . . we apply the provisions of section 865 accordingly."); *id.* at 80 ("The *partnership provisions in subchapter K* of the Code provide a general rule that the 'entity theory' applies to sales and liquidating distributions of partnership interests.") (emphasis added).

*Grecian Magnesite I*, 149 T.C. at 79 ("If Congress had intended section 741 to be interpreted as a look-through provision, the[] exceptions in section 751 and 897(g) would be superfluous.").[18]

But while inventory was not at issue in *Grecian Magnesite I*, the Tax Court there nevertheless commented on it.  It interpreted section 751(a) as fragmenting the partnership interest for purposes of assigning the character of a portion of the partnership interest sale income.  *Grecian Magnesite I*, 149 T.C. at 78 n.16 ("it mandates an 'aggregation' approach for *characterizing* only gain 'attributable to' unrealized receivables or inventory items.") (emphasis added).

The Tax Court explained the exception for inventory in section 751 as follows: "[a] partner has gain of a *character* and *amount* consistent with such *a hypothetical sale* [of allocable unrealized receivables and inventory items]."  *Id.* at 78 n.16.  This accords with the Treasury Regulations under section 751(a), which hypothesize a sale transaction solely for purposes of determining the amount of gain or loss attributable to inventory in the sale of a partnership interest.  Treas. Reg. § 1.751-1(a)(2).  But that is different from saying there is a "deemed" or "hypothetical" sale for sourcing or any other purpose.  Thus the Tax

---

[18]     Section 897(g) is a sourcing rule in subchapter N that specifies the source of an amount received from the sale of certain U.S. real property interests, noteworthy here as an example of a statutory sourcing rule.

Court concluded:

> [I]n order to view the redemption transaction as a hypothetical sale of GMM's portions of partnership property, one would have to abandon, *for no reason evident in the statute or the regulations*, the conclusions called for *by subchapter K* . . . that the disputed portion of the redemption proceeds is to be treated as "gain or loss from the sale or exchange of the partnership interest" . . . which is "a [singular] capital asset."

*Grecian Magnesite I*, 149 T.C. at 87 (emphasis added).  The inventory exception did not change the analysis in *Grecian Magnesite I* because the exception does not change what was sold: a partnership interest—not inventory— was sold in both *Grecian Magnesite* and in this case.[19]

In this case, however, the Tax Court mistakenly attached significance to the difference between the wording of the second sentence in section 741 and section 751(a), in that while section 741 refers to a partnership interest as a "capital asset," section 751(a) refers to "property other than a capital asset."  *Rawat* at *15. But as discussed previously, such a distinction was just the drafters' way of

---

[19]     The Tax Court's citation of section 897(g) in *Grecian Magnesite I* not only recognizes that exceptions to the entity theory must be statutory, but in providing an explicit sourcing rule in subchapter N that identifies specific property, section 897(g) stands in stark contrast to section 751(a) (even more so in light of the new section 864(c)(8)).  In the case here, the Tax Court acknowledged that section 751(a) is *not* on equal footing with section 897(g): "we accepted that the construct reflected in sections 741 and 751 (again, in the absences of express statutory exceptions, such as the one provided in section 897(g)) governed generally the tax consequences of a sale of a partnership interest."  *Rawat* at *14 n.12.

differentiating the *character* of the amount received as capital or ordinary.  The

sale of the unified partnership interest is a *fait accompli* by the time the second

sentence of section 741 and section 751(a), regarding the character of the resulting

gain, are applied.  The taxpayer already has money—money that is considered to

be from the sale or exchange of property other than a capital asset.  The statute

speaks for itself.[20]

The Tax Court here also erroneously interpreted "property" in section 751(a)

as plural and therefore supporting fragmentation of the partnership interest, when

the statutory context suggests it is singular.  The second sentence of section 741's

use of "gain or loss" is phrased in the *singular* form, supporting the interpretation

---

[20]    Much of the law prior to *Grecian Magnesite* addressing the question of
when a partnership interest is treated as an indivisible asset reviews legislative
history that goes beyond the plain language of the statute.  *E.g.*, *Mingo v.
Commissioner*, T.C. Memo. 2013-149 (basing its conclusion wholly on the 1954
legislative history); *George Edward Quick Trust v. Commissioner*, 54 T.C. 1336
(1970) (also basing its conclusion wholly on the 1954 legislative history).  But the
correct analysis is that the statute governs, based on a longstanding judicial
doctrine that legislative history is only relevant to the interpretation of a statute if
the statute is facially ambiguous.  *E.g.*, *Caminetti v. United States*, 242 U.S. 470
(1917); *United States v. Morison*, 844 F.2d 1057 (4th Cir. 1988).  The preeminent
treatise on partnership taxation observes that "[a]s the U.S. Supreme Court moves
toward more of a plain language interpretation of the Code, the willingness of the
lower courts to apply the aggregate/entity analysis to justify results *not directly
supported by the language of the Code* may be waning."  McKee, Nelson, &
Whitmire, *Federal Taxation of Partnerships and Partners* (4th Ed. 2007, updated
through Aug. 2023) ¶ 16.03[1] at 16-40 (emphasis added).

that the partnership interest that was sold is a singular entity.[21]  Moreover, as

discussed above, section 751(a) addresses the "amount of any money," while

section 741 identifies a singular partnership interest that is sold.  Thus, the context

supports interpreting "property" in section 751(a) as singular when applying it to

the sale of a partnership interest pursuant to section 741.

Furthermore, sections 751 and 865 provide different definitions of

"inventory"[22] that are explicitly for use in their respective functions, determining

character and determining source.  Section 751(d) defines "inventory items" "[f]or

purposes of this subchapter [K]" while section 865(i)(1) defines "inventory

property" "[f]or purposes of this section," *i.e.*, "Source rules for personal property

---

[21]    *C.f., Toso v. Commissioner*, 151 T.C. 27, 40 (2018) ("The use of the
singular, 'any gain recognized on such disposition' . . . indicates that section 1291
applies to each disposition of PFIC stock separately, rather than to an annual
aggregation of sales of multiple stocks.") (emphasis omitted).  In contrast, statutes
regularly use "gains" and "amounts" as plural forms.  *E.g*., Code §§ 512(b)(5) and
(b)(16)(A) ("gains or losses from the sale, exchange, or other disposition of
property"), 382(h)(6)(C) ("amounts which would be treated as recognized built-in
gains or losses . . . if such amounts"), 1374(d)(5)(C) (same), 1256(f)(4)(B) ("all
such gains or losses shall be treated as short-term capital gains or losses").

[22]    The definition of "inventory items" in section 751(d) is both more narrow
and more broad than that in section 865(i)(1).  Section 751(d)'s definition is more
narrow in that 865(i)(1) defines "inventory property" by reference to all of section
1221(a), while section 751(d)(1) defines "inventory items" by reference only to
1221(a)(1), excluding paragraphs 1221(a)(2) through (a)(8).  Section 751(d)'s
definition is more broad than that in section 865(i)(1) in that it adds additional
definitions in 751(d)(2) and (d)(3) beyond the reference to section 1221(a)(1).

sales." It is inconsistent to fragment a partnership interest on the basis of a definition of inventory items (in section 751) that is itself inconsistent with the statute that governs the sourcing of income from inventory property (section 865) and actually defines the concept in different terms.

The opinion below concentrates on whether a partnership interest is a "capital asset," but section 741 does *not* actually describe a "partnership interest" as a "capital asset." It says that the "gain or loss" is treated as "gain or loss from the sale or exchange of a capital asset." The Tax Court dismissed this point by inexplicably suggesting that it "proves too much." *Rawat* at *14 n.12. But the first sentence of section 741 is a complete provision—it both identifies what is sold (a partnership interest) and describes what the character of gain or loss that will be recognized to the transferor partner (capital).

It is consonant with the entity theory that the default rule for gain or loss is that it is "considered as gain or loss from the sale or exchange of a capital asset." And as the Tax Court previously noted in *Grecian Magnesite I*, specifically excepting some "amount" of the gain from that treatment actually supports the entity theory of what was sold. *Grecian Magnesite I*, 149 T.C. at 79. Thus, a close reading of the statute supports Mrs. Rawat's position and provides no justification whatsoever for the Government's.

33

**C.     There is no statutory basis for a "deemed" sale of inventory.**

To the extent that the Government contends that the Inventory Gain

emanated from a "deemed" sale of inventory, such argument lacks any statutory

basis in subchapter K (or elsewhere in the Code).  Neither section 741 nor section

751(a) provides in plain language for a deemed sale of inventory (or for the

disaggregation of a partnership interest).  They do not use the term "deemed sale"

or the phrase "shall be treated as having sold," language that Congress has

intentionally used elsewhere, in multiple statutes.[23]  Even the applicable regulation

discusses the concept only in connection with calculating *how much* of the gain is

to be treated as ordinary income.  Treas. Reg. § 1.751-1(a)(2).

In *Coggin Automotive Corporation v. Commissioner*, 292 F.3d 1326, 1331

(11th Cir. 2002), the Eleventh Circuit reversed the Tax Court, which had "deemed

[the partner] to own a pro rata share of . . . inventories" based on the "aggregate

approach."  The Eleventh Circuit criticized the Tax Court for relying on legislative

history to apply the "fictional aggregate theory or the fictional entity theory . . . on

an *ad hoc* basis," to make a "quantum leap" to the deemed ownership of inventory

rather than applying the plain literal meaning of the statute.  *Id.* at 1333.  The

---

[23]     *E.g.*, sections 338 (using both "deemed sale" and "shall be treated as having
sold"); 814 (same); 864 ("deemed sale" and "if the partnership had sold"); 989
("deemed sale" and "shall be treated as an actual distribution").

Eleventh Circuit warned the Tax Court that a dispute with a statute's plain language "must be cured by Congress."  *Id.* at 1332, 1334; *see also, Petroleum Corp. of Texas, Inc. v. United States*, 939 F.2d 1165, 1169 (5th Cir. 1991) (rejecting the aggregate theory, holding that "the Code provisions . . . simply do not support the district court's finding that, for tax purposes, Taxpayers were deemed to have distributed property . . . .").

In addition, the Tax Court below cited two other court cases—*George Edward Quick Trust v. Commissioner*, 54 T.C. 1336 (1970), and *Mingo v. Commissioner*, T.C. Memo 2013-149—neither of which addresses the inventory characterization rule of section 751(a).  *Rawat* at *15-16.  The issue in *George Edward Quick Trust* was a decedent's basis in a partnership interest, and *Mingo* concerned the availability of the installment method for receivables.  *Mingo* recognized the collapsible partnership issue discussed above, noting that "[t]he purpose of section 751 is to prevent the conversion of potential ordinary income into capital gain when a partnership interest is sold or exchanged."  *Mingo* at *4. Most importantly for present purposes, neither of these decisions holds that section 751(a) provides for disaggregation of the partnership interest and then a deemed or hypothetical sale of the assets held by a partnership.

35

## III.    CONCLUSION

In all relevant respects, the facts of Appellant's case are similar to the facts of *Grecian Magnesite I* and *II*, and thus this court's holding in *Grecian Magnesite II* controls here.  Mrs. Rawat is a nonresident alien, not engaged in a U.S. trade or business (except within the irrelevant scope of section 875), who sold a partnership interest.  Mrs. Rawat has acknowledged that some of the gain from the sale is allocable to inventory, the "Inventory Gain."  But that does not alter the nature of what she sold: a partnership interest, indivisible and unitary, exactly the type of personal property that the taxpayer sold in *Grecian Magnesite I* and *II*.  Under those opinions, the sourcing rule for personal property, section 865(a), determines whether all of the gain from Mrs. Rawat's sale of an indivisible partnership interest is U.S. source or foreign source, including the Inventory Gain.  Section 751(a) does not change that, as it only characterizes the Inventory Gain as ordinary income if taxable; it does not change the fact that Mrs. Rawat sold a partnership interest, and it does not change the Inventory Gain itself, which is otherwise nontaxable foreign source income, to taxable U.S. source income.  Mrs. Rawat sold her partnership interest, and because she is a nonresident alien, her gain from the sale of personal property is foreign source income and not taxable under section 865(a)(2).  For all these reasons, the Tax Court's opinion was erroneous, and its order and decision should be reversed.

Respectfully Submitted,


/s/ Christopher S. Rizek
Christopher S. Rizek
Caplin & Drysdale, Chartered
1 Thomas Circle NW
Suite 1100
Washington, D.C. 20005
T: (202) 862-8852 / F: (202) 429-3301
crizek@capdale.com


/s/ Nathan J. Hockman
Nathan J. Hochman
Ross LLP
1900 Avenue of the Stars
Suite 1225
Los Angeles, CA 90067
T: (424) 704-5600 / F: (424) 704-5680
nhochman@rossllp.la

SEPTEMBER 8, 2023

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.    This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i), applicable pursuant to D.C. Circuit Rule 28(c), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1):

    [X] this document contains 10,705 words, or

    [ ] this brief uses a monospaced typeface and contains [state the number of] lines of text.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    [X] this document has been prepared in a proportionally spaced typeface using  in Microsoft Word for Microsoft Office 16 in Times New Roman, size 14, or

    [ ] this document has been prepared in a monospaced typeface using _____ with _____.

(s) /s/ Christopher S. Rizek

Attorney for _____ Indu Rawat _____

Dated: September 8, 2023