**[NOT YET SCHEDULED FOR ORAL ARGUMENT]**
# No. 23-1142

In the United States Court of Appeals
for the District of Columbia Circuit

---

**INDU RAWAT, Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

---

On Appeal from the Decision of
the United States Tax Court

---

STATUTORY ADDENDUM TO
BRIEF FOR APPELLANT

---

Christopher S. Rizek
 *Caplin & Drysdale, Chartered*
 *One Thomas Circle, N.W.*
 *Suite 1100*
 *Washington, DC 20005*
 *Telephone: (202) 862-8852*
 *crizek@capdale.com*

Nathan J. Hochman
 *Ross LLP*
 *1900 Avenue of the Stars*
 *Suite 1225*
 *Los Angeles, CA 90067*
 *Telephone: (424) 704-5600*
 *nhochman@rossllp.com*

# ADDENDUM TABLE OF CONTENTS

<u>Statutes</u>

Internal Revenue Code (26 U.S.C.) (as in effect in 2008 unless otherwise indicated):

§ 741....................................................................................................1
§ 751....................................................................................................2
§ 864(c) ..............................................................................................7
§ 864(c)(8) (2020)............................................................................14
§ 865..................................................................................................17
§ 871(a)(1).........................................................................................28
§ 875..................................................................................................30
§ 897(g).............................................................................................31
§ 6213(a) (2016) ..............................................................................32
§ 6512(b) (2016) ..............................................................................34
§ 7442 (2016) ...................................................................................37
§ 7482 (current)................................................................................38

<u>Regulations</u>

Treasury Regulation (26 C.F.R.) (as in effect in 2008 unless otherwise indicated):

§ 1.751-1(a)......................................................................................43
§ 1.864(c)(8)-1 (2020).......................................................................46

Pursuant to D.C. Circuit Rule 28(a)(5) and Fed. R. App. P. 28(f) this addendum is filed separately from Appellant's brief.

i

**Internal Revenue Code (26 U.S.C.) (as in effect in 2008 unless otherwise indicated):**

### § 741. Recognition and character of gain or loss on sale or exchange

In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items).

## § 751. Unrealized receivables and inventory items

**(a) Sale or exchange of interest in partnership.--**The amount of any money, or the fair market value of any property, received by a transferor partner in exchange for all or a part of his interest in the partnership attributable to--

    **(1)** unrealized receivables of the partnership, or

    **(2)** inventory items of the partnership,

shall be considered as an amount realized from the sale or exchange of property other than a capital asset.

**(b) Certain distributions treated as sales or exchanges.--**

    **(1) General rule.--**To the extent a partner receives in a distribution--

        **(A)** partnership property which is--

            **(i)** unrealized receivables, or

            **(ii)** inventory items which have appreciated substantially in value, in exchange for all or a part of his interest in other partnership property (including money), or

        **(B)** partnership property (including money) other than property described in subparagraph (A)(i) or (ii) in exchange for all or a part of his interest in partnership property described in subparagraph (A)(i) or (ii),

such transactions shall, under regulations prescribed by the Secretary, be considered as a sale or exchange of such property between the distributee and the partnership (as constituted after the distribution).

**(2) Exceptions.--**Paragraph (1) shall not apply to--

**(A)** a distribution of property which the distributee contributed to the partnership, or

**(B)** payments, described in section 736(a), to a retiring partner or successor in interest of a deceased partner.

**(3) Substantial appreciation.--**For purposes of paragraph (1)--

**(A) In general.--**Inventory items of the partnership shall be considered to have appreciated substantially in value if their fair market value exceeds 120 percent of the adjusted basis to the partnership of such property.

**(B) Certain property excluded.--**For purposes of subparagraph (A), there shall be excluded any inventory property if a principal purpose for acquiring such property was to avoid the provisions of this subsection relating to inventory items.

**(c) Unrealized receivables.**--For purposes of this subchapter, the term "unrealized receivables" includes, to the extent not previously includible in income under the method of accounting used by the partnership, any rights (contractual or otherwise) to payment for--

**(1)** goods delivered, or to be delivered, to the extent the proceeds therefrom would be treated as amounts received from the sale or exchange of property other than a capital asset, or

**(2)** services rendered, or to be rendered.

For purposes of this section and sections 731, 732, and 741 (but not for purposes of section 736), such term also includes mining property (as defined in section 617(f)(2)), stock in a DISC (as described in section 992(a)), section 1245 property (as defined in section 1245(a)(3)), stock in certain foreign corporations (as described in section 1248), section 1250 property (as defined in section 1250(c)), farm land (as defined in section 1252(a)), franchises, trademarks, or trade names (referred to in section 1253(a)), and an oil, gas, or geothermal property (described in section 1254) but only to the extent of the amount which would be treated as gain to which section 617(d)(1), 995(c), 1245(a), 1248(a), 1250(a), 1252(a), 1253(a), or 1254(a) would apply if (at the time of the transaction described in this section or section 731, 732, or 741, as the case may be) such property had been

4

sold by the partnership at its fair market value. For purposes of this section and sections 731, 732, and 741 (but not for purposes of section 736), such term also includes any market discount bond (as defined in section 1278) and any short-term obligation (as defined in section 1283) but only to the extent of the amount which would be treated as ordinary income if (at the time of the transaction described in this section or section 731, 732, or 741, as the case may be) such property had been sold by the partnership.

**(d) Inventory items.--**For purposes of this subchapter, the term "inventory items" means--

> **(1)** property of the partnership of the kind described in section 1221(a)(1),

> **(2)** any other property of the partnership which, on sale or exchange by the partnership, would be considered property other than a capital asset and other than property described in section 1231, and

> **(3)** any other property held by the partnership which, if held by the selling or distributee partner, would be considered property of the type described in paragraph (1) or (2).

**(e) Limitation on tax attributable to deemed sales of section 1248 stock.--**For purposes of applying this section and sections 731 and 741 to any amount resulting from the reference to section 1248(a) in the second sentence of subsection (c), in

the case of an individual, the tax attributable to such amount shall be limited in the manner provided by subsection (b) of section 1248 (relating to gain from certain sales or exchanges of stock in certain foreign corporation).

**(f) Special rules in the case of tiered partnerships, etc.--**In determining whether property of a partnership is--

  **(1)** an unrealized receivable, or

  **(2)** an inventory item,

such partnership shall be treated as owning its proportionate share of the property of any other partnership in which it is a partner. Under regulations, rules similar to the rules of the preceding sentence shall also apply in the case of interests in trusts.

## § 864. Definitions and special rules

**§864(c)**

**(c) Effectively connected income, etc.--**

    **(1) General rule.--**For purposes of this title--

        **(A)** In the case of a nonresident alien individual or a foreign corporation engaged in trade or business within the United States during the taxable year, the rules set forth in paragraphs (2), (3), (4), (6), and (7) shall apply in determining the income, gain, or loss which shall be treated as effectively connected with the conduct of a trade or business within the United States.

        **(B)** Except as provided in paragraph (6) or (7) or in section 871(d) or sections 882(d) and (e), in the case of a nonresident alien individual or a foreign corporation not engaged in trade or business within the United States during the taxable year, no income, gain, or loss shall be treated as effectively connected with the conduct of a trade or business within the United States.

    **(2) Periodical, etc., income from sources within United States--Factors.--**In determining whether income from sources within the United States of the types described in section 871(a)(1), section 871(h), section 881(a), or section

7

881(c), or whether gain or loss from sources within the United States from the sale or exchange of capital assets, is effectively connected with the conduct of a trade or business within the United States, the factors taken into account shall include whether--

    **(A)** the income, gain, or loss is derived from assets used in or held for use in the conduct of such trade or business, or

    **(B)** the activities of such trade or business were a material factor in the realization of the income, gain, or loss. In determining whether an asset is used in or held for use in the conduct of such trade or business or whether the activities of such trade or business were a material factor in realizing an item of income, gain, or loss, due regard shall be given to whether or not such asset or such income, gain, or loss was accounted for through such trade or business.

**(3) Other income from sources within United States.--**All income, gain, or loss from sources within the United States (other than income, gain, or loss to which paragraph (2) applies) shall be treated as effectively connected with the conduct of a trade or business within the United States.

**(4) Income from sources without United States.--**

**(A)** Except as provided in subparagraphs (B) and (C), no income, gain, or loss from sources without the United States shall be treated as effectively connected with the conduct of a trade or business within the United States.

**(B)** Income, gain, or loss from sources without the United States shall be treated as effectively connected with the conduct of a trade or business within the United States by a nonresident alien individual or a foreign corporation if such person has an office or other fixed place of business within the United States to which such income, gain, or loss is attributable and such income, gain, or loss--

**(i)** consists of rents or royalties for the use of or for the privilege of using intangible property described in section 862(a)(4) derived in the active conduct of such trade or business;

**(ii)** consists of dividends or interest, and either is derived in the active conduct of a banking, financing, or similar business within the United States or is received by a corporation the principal business of which is trading in stocks or securities for its own account; or

**(iii)** is derived from the sale or exchange (outside the United States) through such office or other fixed place of business of personal property described in section 1221(a)(1), except that this clause shall

9

not apply if the property is sold or exchanged for use, consumption, or disposition outside the United States and an office or other fixed place of business of the taxpayer in a foreign country participated materially in such sale.

Any income or gain which is equivalent to any item of income or gain described in clause (i), (ii), or (iii) shall be treated in the same manner as such item for purposes of this subparagraph.

**(C)** In the case of a foreign corporation taxable under part I or part II of subchapter L, any income from sources without the United States which is attributable to its United States business shall be treated as effectively connected with the conduct of a trade or business within the United States.

**(D)** No income from sources without the United States shall be treated as effectively connected with the conduct of a trade or business within the United States if it either—

**(i)** consists of dividends, interest, or royalties paid by a foreign corporation in which the taxpayer owns (within the meaning of section 958(a)), or is considered as owning (by applying the ownership rules of section 958(b)), more than 50 percent of the total combined voting power of all classes of stock entitled to vote, or

**(ii)** is subpart F income within the meaning of section 952(a).

10

**(5) Rules for application of paragraph (4)(B).--**For purposes of subparagraph (B) of paragraph (4)--

**(A)** in determining whether a nonresident alien individual or a foreign corporation has an office or other fixed place of business, an office or other fixed place of business of an agent shall be disregarded unless such agent (i) has the authority to negotiate and conclude contracts in the name of the nonresident alien individual or foreign corporation and regularly exercises that authority or has a stock of merchandise from which he regularly fills orders on behalf of such individual or foreign corporation, and (ii) is not a general commission agent, broker, or other agent of independent status acting in the ordinary course of his business,

**(B)** income, gain, or loss shall not be considered as attributable to an office or other fixed place of business within the United States unless such office or fixed place of business is a material factor in the production of such income, gain, or loss and such office or fixed place of business regularly carries on activities of the type from which such income, gain, or loss is derived, and

**(C)** the income, gain, or loss which shall be attributable to an office or other fixed place of business within the United States shall be the income, gain, or loss property allocable thereto, but, in the case of a sale or

11

exchange described in clause (iii) of such subparagraph, the income which shall be treated as attributable to an office or other fixed place of business within the United States shall not exceed the income which would be derived from sources within the United States if the sale or exchange were made in the United States.

**(6) Treatment of certain deferred payments, etc.--**For purposes of this title, in the case of any income or gain of a nonresident alien individual or a foreign corporation which--

**(A)** is taken into account for any taxable year, but

**(B)** is attributable to a sale or exchange of property or the performance of services (or any other transaction) in any other taxable year, the determination of whether such income or gain is taxable under section 871(b) or 882 (as the case may be) shall be made as if such income or gain were taken into account in such other taxable year and without regard to the requirement that the taxpayer be engaged in a trade or business within the United States during the taxable year referred to in subparagraph (A).

12

**(7) Treatment of certain property transactions.--**For purposes of this title, if—

> **(A)** any property ceases to be used or held for use in connection with the conduct of a trade or business within the United States, and
>
> **(B)** such property is disposed of within 10 years after such cessation, the determination of whether any income or gain attributable to such disposition is taxable under section 871(b) or 882 (as the case may be) shall be made as if such sale or exchange occurred immediately before such cessation and without regard to the requirement that the taxpayer be engaged in a trade or business within the United States during the taxable year for which such income or gain is taken into account.

## § 864. Definitions and special rules (2020)

**§ 864(c)(8) (2020)**

**(8) Gain or loss of foreign persons from sale or exchange of certain partnership interests.**--

(A) **In general.**--Notwithstanding any other provision of this subtitle, if a nonresident alien individual or foreign corporation owns, directly or indirectly, an interest in a partnership which is engaged in any trade or business within the United States, gain or loss on the sale or exchange of all (or any portion of) such interest shall be treated as effectively connected with the conduct of such trade or business to the extent such gain or loss does not exceed the amount determined under subparagraph (B).

(B) **Amount treated as effectively connected.**--The amount determined under this subparagraph with respect to any partnership interest sold or exchanged--

(i) in the case of any gain on the sale or exchange of the partnership interest, is--

(I) the portion of the partner's distributive share of the amount of gain which would have been effectively connected with the conduct of a trade or business within the United States if the partnership had sold all of its assets at their fair market value as of the date of the sale or exchange of such interest, or

14

**(II)** zero if no gain on such deemed sale would have been so effectively connected, and

**(ii)** in the case of any loss on the sale or exchange of the partnership interest, is--

**(I)** the portion of the partner's distributive share of the amount of loss on the deemed sale described in clause (i)(I) which would have been so effectively connected, or

**(II)** zero if no loss on such deemed sale would be have been so effectively connected.

For purposes of this subparagraph, a partner's distributive share of gain or loss on the deemed sale shall be determined in the same manner as such partner's distributive share of the non-separately stated taxable income or loss of such partnership.

**(C) Coordination with United States real property interests.**--If a partnership described in subparagraph (A) holds any United States real property interest (as defined in section 897(c)) at the time of the sale or exchange of the partnership interest, then the gain or loss treated as effectively connected income under subparagraph (A) shall be reduced by the amount so treated with respect to such United States real property interest under section 897.

15

**(D) Sale or exchange.**--For purposes of this paragraph, the term "sale or exchange" means any sale, exchange, or other disposition.

**(E) Secretarial authority.**--The Secretary shall prescribe such regulations or other guidance as the Secretary determines appropriate for the application of this paragraph, including with respect to exchanges described in section 332, 351, 354, 355, 356, or 361.

## § 865. Source rules for personal property sales

**(a) General rule.--**Except as otherwise provided in this section, income from the sale of personal property--

**(1)** by a United States resident shall be sourced in the United States, or

**(2)** by a nonresident shall be sourced outside the United States.

**(b) Exception for inventory property.--**In the case of income derived from the sale of inventory property--

**(1)** this section shall not apply, and

**(2)** such income shall be sourced under the rules of sections

861(a)(6), 862(a)(6), and 863.

Notwithstanding the preceding sentence, any income from the sale of any unprocessed timber which is a softwood and was cut from an area in the United States shall be sourced in the United States and the rules of sections 862(a)(6) and 863(b) shall not apply to any such income. For purposes of the preceding sentence, the term "unprocessed timber" means any log, cant, or similar form of timber.

**(c) Exception for depreciable personal property.--**

**(1) In general.**--Gain (not in excess of the depreciation adjustments) from the sale of depreciable personal property shall be allocated between sources in the United States and sources outside the United States--

17

**(A)** by treating the same proportion of such gain as sourced in the United States as the United States depreciation adjustments with respect to such property bear to the total depreciation adjustments, and

**(B)** by treating the remaining portion of such gain as sourced outside the United States.

**(2) Gain in excess of depreciation.**--Gain (in excess of the depreciation adjustments) from the sale of depreciable personal property shall be sourced as if such property were inventory property.

**(3) United States depreciation adjustments.**--For purposes of this subsection--

**(A) In general.**--The term "United States depreciation adjustments" means the portion of the depreciation adjustments to the adjusted basis of the property which are attributable to the depreciation deductions allowable in computing taxable income from sources in the United States.

**(B) Special rule for certain property.**--Except in the case of property of a kind described in section 168(g)(4), if, for any taxable year--

**(i)** such property is used predominantly in the United States, or

**(ii)** such property is used predominantly outside the United States, all of the depreciation deductions allowable for such year shall be treated

18

as having been allocated to income from sources in the United States

(or, where clause (ii) applies, from sources outside the United States).

**(4) Other definitions.**--For purposes of this subsection--

**(A) Depreciable personal property.**--The term "depreciable personal property" means any personal property if the adjusted basis of such property includes depreciation adjustments.

**(B) Depreciation adjustments.**--The term "depreciation adjustments" means adjustments reflected in the adjusted basis of any property on account of depreciation deductions (whether allowed with respect to such property or other property and whether allowed to the taxpayer or to any other person).

**(C) Depreciation deductions.**--The term "depreciation deductions" means any deductions for depreciation or amortization or any other deduction allowable under any provision of this chapter which treats an otherwise capital expenditure as a deductible expense.

**(d) Exception for intangibles.--**

**(1) In general.**--In the case of any sale of an intangible--

**(A)** this section shall apply only to the extent the payments in consideration of such sale are not contingent on the productivity, use, or disposition of the intangible, and

19

**(B)** to the extent such payments are so contingent, the source of such payments shall be determined under this part in the same manner as if such payments were royalties.

**(2) Intangible.**--For purposes of paragraph (1), the term "intangible" means any patent, copyright, secret process or formula, goodwill, trademark, trade brand, franchise, or other like property.

**(3) Special rule in the case of goodwill.**--To the extent this section applies to the sale of goodwill, payments in consideration of such sale shall be treated as from sources in the country in which such goodwill was generated.

**(4) Coordination with subsection (c).**--

**(A) Gain not in excess of depreciation adjustments sourced under subsection (c).**--Notwithstanding paragraph (1), any gain from the sale of an intangible shall be sourced under subsection (c) to the extent such gain does not exceed the depreciation adjustments with respect to such intangible.

**(B) Subsection (c)(2) not to apply to intangibles.**--Paragraph (2) of subsection (c) shall not apply to any gain from the sale of an intangible.

20

**(e) Special rules for sales through offices or fixed places of business.--**

  **(1) Sales by residents.--**

    **(A) In general.**--In the case of income not sourced under subsection (b), (c), (d)(1)(B) or (3), or (f), if a United States resident maintains an office or other fixed place of business in a foreign country, income from sales of personal property attributable to such office or other fixed place of business shall be sourced outside the United States.

    **(B) Tax must be imposed.**--Subparagraph (A) shall not apply unless an income tax equal to at least 10 percent of the income from the sale is actually paid to a foreign country with respect to such income.

  **(2) Sales by nonresidents.--**

    **(A) In general.**--Notwithstanding any other provisions of this part, if a nonresident maintains an office or other fixed place of business in the United States, income from any sale of personal property (including inventory property) attributable to such office or other fixed place of business shall be sourced in the United States. The preceding sentence shall not apply for purposes of section 971 (defining export trade corporation).

    **(B) Exception.**--Subparagraph (A) shall not apply to any sale of inventory property which is sold for use, disposition, or consumption outside the

United States if an office or other fixed place of business of the taxpayer in a foreign country materially participated in the sale.

**(3) Sales attributable to an office or other fixed place of business.**--The principles of section 864(c)(5) shall apply in determining whether a taxpayer has an office or other fixed place of business and whether a sale is attributable to such an office or other fixed place of business.

**(f) Stock of affiliates.**--If--

**(1)** a United States resident sells stock in an affiliate which is a foreign corporation,

**(2)** such sale occurs in a foreign country in which such affiliate is engaged in the active conduct of a trade or business, and

**(3)** more than 50 percent of the gross income of such affiliate for the 3-year period ending with the close of such affiliate's taxable year immediately preceding the year in which the sale occurred was derived from the active conduct of a trade or business in such foreign country, any gain from such sale shall be sourced outside the United States. For purposes of paragraphs (2) and (3), the United States resident may elect to treat an affiliate and all other corporations which are wholly owned (directly or indirectly) by the affiliate as one corporation.

**(g) United States resident; nonresident.**--For purposes of this section--

    **(1) In general.**--Except as otherwise provided in this subsection--

        **(A) United States resident.**--The term "United States resident" means--

            **(i)** any individual who--

                **(I)** is a United States citizen or a resident alien and does not have a tax home (as defined in section 911(d)(3)) in a foreign country, or

                **(II)** is a nonresident alien and has a tax home (as so defined) in the United States, and

            **(ii)** any corporation, trust, or estate which is a United States person (as defined in section 7701(a)(30)).

        **(B) Nonresident.**--The term "nonresident" means any person other than a United States resident.

    **(2) Special rules for United States citizens and resident aliens.**--For purposes of this section, a United States citizen or resident alien shall not be treated as a nonresident with respect to any sale of personal property unless an income tax equal to at least 10 percent of the gain derived from such sale is actually paid to a foreign country with respect to that gain.

    **(3) Special rule for certain stock sales by residents of Puerto Rico**.-- Paragraph (2) shall not apply to the sale by an individual who was a bona fide

23

resident of Puerto Rico during the entire taxable year of stock in a corporation if--

> **(A)** such corporation is engaged in the active conduct of a trade or business in Puerto Rico, and

> **(B)** more than 50 percent of its gross income for the 3-year period ending with the close of such corporation's taxable year immediately preceding the year in which such sale occurred was derived from the active conduct of a trade or business in Puerto Rico.

> For purposes of the preceding sentence, the taxpayer may elect to treat a corporation and all other corporations which are wholly owned (directly or indirectly) by such corporation as one corporation.

**(h) Treatment of gains from sale of certain stock or intangibles and from certain liquidations.--**

> **(1) In general.**--In the case of gain to which this subsection applies--

> > **(A)** such gain shall be sourced outside the United States, but

> > **(B)** subsections (a), (b), and (c) of section 904 and sections 902, 907, and 960 shall be applied separately with respect to such gain.

> **(2) Gain to which subsection applies.**--This subsection shall apply to--

> > **(A) Gain from sale of certain stock or intangibles.**--Any gain--

**(i)** which is from the sale of stock in a foreign corporation or an intangible (as defined in subsection (d)(2)) and which would otherwise be sourced in the United States under this section,

**(ii)** which, under a treaty obligation of the United States (applied without regard to this section), would be sourced outside the United States, and

**(iii)** with respect to which the taxpayer chooses the benefits of this subsection.

**(B) Gain from liquidation in possession.**--Any gain which is derived from the receipt of any distribution in liquidation of a corporation--

**(i)** which is organized in a possession of the United States, and

**(ii)** more than 50 percent of the gross income of which during the 3-taxable year period ending with the close of the taxable year immediately preceding the taxable year in which the distribution is received is from the active conduct of a trade or business in such possession.

**(i) Other definitions.**--For purposes of this section--

**(1) Inventory property.**--The term "inventory property" means personal property described in paragraph (1) of section 1221(a).

25

**(2) Sale includes exchange.**--The term "sale" includes an exchange or any other disposition.

**(3) Treatment of possessions.**--Any possession of the United States shall be treated as a foreign country.

　　**(4) Affiliate.**--The term "affiliate" means a member of the same affiliated group (within the meaning of section 1504(a) without regard to section 1504(b)).

　　**(5) Treatment of partnerships.**--In the case of a partnership, except as provided in regulations, this section shall be applied at the partner level.

**(j) Regulations.**--The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purpose of this section, including regulations--

**(1)** relating to the treatment of losses from sales of personal property,

**(2)** applying the rules of this section to income derived from trading in futures contracts, forward contracts, options contracts, and other instruments, and

**(3)** providing that, subject to such conditions (which may include provisions comparable to section 877) as may be provided in such regulations, subsections (e)(1)(B) and (g)(2) shall not apply for purposes of sections 931, 933, and 936.

**(k) Cross references.--**

(1) For provisions relating to the characterization as dividends for source purposes of gains from the sale of stock in certain foreign corporations, see section 1248.

(2) For sourcing of income from certain foreign currency transactions, see section 988.

## § 871. Tax on nonresident alien individuals

**§ 871(a)(1)**

**(a) Income not connected with United States business--30 percent tax.--**

**(1) Income other than capital gains.--**Except as provided in subsection (h), there is hereby imposed for each taxable year a tax of 30 percent of the amount received from sources within the United States by a nonresident alien individual as--

**(A)** interest (other than original issue discount as defined in section 1273), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, and other fixed or determinable annual or periodical gains, profits, and income,

**(B)** gains described in section 631(b) or (c), and gains on transfers described in section 1235 made on or before October 4, 1966,

**(C)** in the case of--

**(i)** a sale or exchange of an original issue discount obligation, the amount of the original issue discount accruing while such obligation was held by the nonresident alien individual (to the extent such discount was not theretofore taken into

account under clause (ii)), and

28

**(ii)** a payment on an original issue discount obligation, an amount equal to the original issue discount accruing while such obligation was held by the nonresident alien individual (except that such original issue discount shall be taken into account under this clause only to the extent such discount was not theretofore taken into account under this clause and only to the extent that the tax thereon does not exceed the payment less the tax imposed by subparagraph (A) thereon), and

**(D)** gains from the sale or exchange after October 4, 1966, of patents, copyrights, secret processes and formulas, good will, trademarks, trade brands, franchises, and other like property, or of any interest in any such property, to the extent such gains are from payments which are contingent on the productivity, use, or disposition of the property or interest sold or exchanged, but only to the extent the amount so received is not effectively connected with the conduct of a trade or business within the United States.

29

### § 875. Partnerships; beneficiaries of estates and trusts

For purposes of this subtitle--

**(1)** a nonresident alien individual or foreign corporation shall be considered as being engaged in a trade or business within the United States if the partnership of which such individual or corporation is a member is so engaged, and

**(2)** a nonresident alien individual or foreign corporation which is a beneficiary of an estate or trust which is engaged in any trade or business within the United States shall be treated as being engaged in such trade or business within the United States.

### § 897. Disposition of investment in United States real property

**§ 897(g)**

**. . .**

**(g) Special rule for sales of interest in partnerships, trusts, and estates.**--Under regulations prescribed by the Secretary, the amount of any money, and the fair market value of any property, received by a nonresident alien individual or foreign corporation in exchange for all or part of its interest in a partnership, trust, or estate shall, to the extent attributable to United States real property interests, be considered as an amount received from the sale or exchange in the United States of such property.

## § 6213. Restrictions applicable to deficiencies; petition to Tax Court (2016)

## § 6213(a) (2016)

**(a) Time for filing petition and restriction on assessment.--**Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6851, 6852, or 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A, or B, chapter 41, 42, 43, or 44 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court, including the Tax Court, and a refund may be ordered by such court of any amount collected within the period during which the Secretary is prohibited from collecting by levy or through a proceeding in court under the provisions of this subsection. The Tax Court shall have no jurisdiction to enjoin any action or proceeding or

32

order any refund under this subsection unless a timely petition for a redetermination of the deficiency has been filed and then only in respect of the deficiency that is the subject of such petition.  Any petition filed with the Tax Court on or before the last date specified for filing such petition by the Secretary in the notice of deficiency shall be treated as timely filed.

33

## § 6512. Limitations in case of petition to Tax Court (2016)

**§ 6512(b) (2016)**

. . .

**(b) Overpayment determined by Tax Court.—**

**(1) Jurisdiction to determine.--**Except as provided by paragraph (3) and by section 7463, if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year, of gift tax for the same calendar year or calendar quarter, of estate tax in respect of the taxable estate of the same decedent, or of tax imposed by chapter 41, 42, 43, or 44 with respect to any act (or failure to act) to which such petition relates, in respect of which the Secretary determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer. If a notice of appeal in respect of the decision of the Tax Court is filed under section 7483, the Secretary is authorized to refund or credit the overpayment determined by the Tax Court to the extent the overpayment is not contested on appeal.

**(2) Jurisdiction to enforce.--**If, after 120 days after a decision of the Tax Court has become final, the Secretary has failed to refund the overpayment

34

determined by the Tax Court, together with the interest thereon as provided in subchapter B of chapter 67, then the Tax Court, upon motion by the taxpayer, shall have jurisdiction to order the refund of such overpayment and interest. An order of the Tax Court disposing of a motion under this paragraph shall be reviewable in the same manner as a decision of the Tax Court, but only with respect to the matters determined in such order.

**(3) Limit on amount of credit or refund.--**No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid--

**(A)** after the mailing of the notice of deficiency,

**(B)** within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment, or

**(C)** within the period which would be applicable under section 6511(b)(2), (c), or (d), in respect of any claim for refund filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency--

**(i)** which had not been disallowed before that date,

35

**(ii)** which had been disallowed before that date and in respect of which a timely suit for refund could have been commenced as of that date, or

**(iii)** in respect of which a suit for refund had been commenced before that date and within the period specified in section 6532.

In the case of a credit or refund relating to an affected item (within the meaning of section 6631(a)(5)), the preceding sentence shall be applied by substituting the periods under sections 6229 and 6230(d) for the periods under section 6511(b)(2), (c), and (d).

In a case described in subparagraph (B) where the date of the mailing of the notice of deficiency is during the third year after the due date (with extensions) for filing the return of tax and no return was filed before such date, the applicable period under subsections (a) and (b)(2) of section 6511 shall be 3 years.

**(4) Denial of jurisdiction regarding certain credits and reductions.--**The Tax Court shall have no jurisdiction under this subsection to restrain or review any credit or reduction made by the Secretary under section 6402.

## § 7442. Jurisdiction (2016)

**§ 7442 (2016)**

The Tax Court and its divisions shall have such jurisdiction as is conferred on them by this title, by chapters 1, 2, 3, and 4 of the Internal Revenue Code of 1939, by title II and title and title III of the Revenue Act of 1926 (44 Stat. 10-87), or by laws enacted subsequent to February 26, 1926.

## § 7482. Courts of review (current)

**§ 7482 (current)**

**(a) Jurisdiction.--**

**(1) In general.--**The United States Courts of Appeals (other than the United States Court of Appeals for the Federal Circuit) shall have exclusive jurisdiction to review the decisions of the Tax Court, except as provided in section 1254 of Title 28 of the United States Code, in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury; and the judgment of any such court shall be final, except that it shall be subject to review by the Supreme Court of the United States upon certiorari, in the manner provided in section 1254 of Title 28 of the United States Code.

**(2) Interlocutory orders.--**

**(A)** In general.--When any judge of the Tax Court includes in an interlocutory order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals may, in its discretion, permit an appeal to be taken from such order, if application is made to it within 10 days after the entry of such

order. Neither the application for nor the granting of an appeal under this paragraph shall stay proceedings in the Tax Court, unless a stay is ordered by a judge of the Tax Court or by the United States Court of Appeals which has jurisdiction of the appeal or a judge of that court.

**(B)** Order treated as Tax Court decision.--For purposes of subsections (b) and (c), an order described in this paragraph shall be treated as a decision of the Tax Court.

**(C)** Venue for review of subsequent proceedings.--If a United States Court of Appeals permits an appeal to be taken from an order described in subparagraph (A), except as provided in subsection (b)(2), any subsequent review of the decision of the Tax Court in the proceeding shall be made by such Court of Appeals.

**(3)** Certain orders entered under section 6213(a).--An order of the Tax Court which is entered under authority of section 6213(a) and which resolves a proceeding to restrain assessment or collection shall be treated as a decision of the Tax Court for purposes of this section and shall be subject to the same review by the United States Court of Appeals as a similar order of a district court.

**(b) Venue.--**

**(1) In general.--**Except as otherwise provided in paragraphs (2) and (3), such decisions may be reviewed by the United States court of appeals for the circuit in which is located--

**(A)** in the case of a petitioner seeking redetermination of tax liability other than a corporation, the legal residence of the petitioner,

**(B)** in the case of a corporation seeking redetermination of tax liability, the principal place of business or principal office or agency of the corporation, or, if it has no principal place of business or principal office or agency in any judicial circuit, then the office to which was made the return of the tax in respect of which the liability arises,

**(C)** in the case of a person seeking a declaratory decision under section 7476, the principal place of business, or principal office or agency of the employer,

**(D)** in the case of an organization seeking a declaratory decision under section 7428, the principal office or agency of the organization,

**(E)** in the case of a petition under section 6234, the principal place of business of the partnership,

**(F)** in the case of a petition under section 6015(e), the legal residence of the petitioner, or

40

**(G)** in the case of a petition under section 6320 or 6330--

> **(i)** the legal residence of the petitioner if the petitioner is an individual, and
>
> **(ii)** the principal place of business or principal office or agency if the petitioner is an entity other than an individual.

If for any reason no subparagraph of the preceding sentence applies, then such decisions may be reviewed by the Court of Appeals for the District of Columbia. For purposes of this paragraph, the legal residence, principal place of business, or principal office or agency referred to herein shall be determined as of the time the petition seeking redetermination of tax liability was filed with the Tax Court or as of the time the petition seeking a declaratory decision under section 7428 or 7476, or the petition under section 6234, was filed with the Tax Court.

**(2)** By agreement.--Notwithstanding the provisions of paragraph (1), such decisions may be reviewed by any United States

Court of Appeals which may be designated by the Secretary and the taxpayer by stipulation in writing.

**(3)** Declaratory judgment actions relating to status of certain governmental obligations.--In the case of any decision of the Tax Court in a proceeding

under section 7478, such decision may only be reviewed by the Court of

Appeals for the District of Columbia.

**Treas. Reg. (26 C.F.R.) (as in effect in 2008 unless otherwise indicated):**

**§ 1.751–1 Unrealized receivables and inventory items.**

**§ 1.751-1(a)**

**(a) Sale or exchange of interest in a partnership—(1) Character of amount realized.** To the extent that money or property received by a partner in exchange for all or part of his partnership interest is attributable to his share of the value of partnership unrealized receivables or substantially appreciated inventory items, the money or fair market value of the property received shall be considered as an amount realized from the sale or exchange of property other than a capital asset. The remainder of the total amount realized on the sale or exchange of the partnership interest is realized from the sale or exchange of a capital asset under section 741. For definition of "unrealized receivables" and "inventory items which have appreciated substantially in value", see section 751(c) and (d). Unrealized receivables and substantially appreciated inventory items are hereafter in this section referred to as "section 751 property". See paragraph (e) of this section.

**(2) Determination of gain or loss.** The income or loss realized by a partner upon the sale or exchange of its interest in section 751 property is the amount of income or loss from section 751 property (including any remedial allocations under § 1.704–3(d)) that would have been allocated to the partner (to the extent attributable to the partnership interest sold or exchanged) if the

43

partnership had sold all of its property in a fully taxable transaction for cash in an amount equal to the fair market value of such property (taking into account section 7701(g)) immediately prior to the partner's transfer of the interest in the partnership. Any gain or loss recognized that is attributable to section 751 property will be ordinary gain or loss. The difference between the amount of capital gain or loss that the partner would realize in the absence of section 751 and the amount of ordinary income or loss determined under this paragraph (a)(2) is the transferor's capital gain or loss on the sale of its partnership interest. See § 1.460–4(k)(2)(iv)(E) for rules relating to the amount of ordinary income or loss attributable to a contract accounted for under a long-term contract method of accounting.

**(3) Statement required.** A partner selling or exchanging any part of an interest in a partnership that has any section 751 property at the time of sale or exchange must submit with its income tax return for the taxable year in which the sale or exchange occurs a statement setting forth separately the following information—

**(i)** The date of the sale or exchange;

**(ii)** The amount of any gain or loss attributable to the section 751 property; and

44

**(iii)** The amount of any gain or loss attributable to capital gain or loss on the sale of the partnership interest.

### § 1.864(c)(8)–1 Gain or loss by foreign persons on the disposition of certain partnership interests. (2020)

**§ 1.864(c)(8)-1 (2020)**

**(a) Overview.** This section provides rules and definitions under section 864(c)(8). Paragraph (b) of this section provides the general rule treating gain or loss recognized by a nonresident alien individual or foreign corporation from the sale or exchange of a partnership interest as effectively connected gain or effectively connected loss. Paragraph (c) of this section provides rules for determining the limitations on the amount of effectively connected gain or effectively connected loss under section 864(c)(8) and paragraph (b) of this section. Paragraph (d) of this section provides rules regarding coordination with section 897. Paragraph (e) of this section provides rules regarding certain tiered partnerships. Paragraph (f) of this section provides rules regarding U.S. income tax treaties. Paragraph (g) of this section provides definitions. Paragraph (h) of this section provides a rule regarding certain contributions of property to a partnership. Paragraph (i) of this section contains examples illustrating the rules set forth in this section. Paragraph (j) of this section provides the applicability date.

**(b) Gain or loss treated as effectively connected gain or loss—(1) In general.**

Notwithstanding any other provision of subtitle A of the Internal Revenue Code, if a foreign transferor owns, directly or indirectly, an interest in a partnership that is engaged in the conduct of a trade or business within the United States, outside

46

capital gain, outside capital loss, outside ordinary gain, or outside ordinary loss (each as defined in paragraph (b)(2) of this section) recognized by the foreign transferor on the transfer of all (or any portion) of the interest is treated as effectively connected gain or effectively connected loss, subject to the limitations described in paragraph (b)(3) of this section. Except as provided in paragraph (d) of this section, this section does not apply to prevent any portion of the gain or loss that is otherwise treated as effectively connected gain or effectively connected loss under provisions of the Internal Revenue Code other than section 864(c)(8) from being so treated.

**(2) Determination of outside gain and loss—(i) In general.** The amount of gain or loss recognized by the foreign transferor in connection with the transfer of its partnership interest is determined under all relevant provisions of the Internal Revenue Code and the regulations thereunder. See, e.g., §§ 1.741–1(a) and 1.751–1(a)(2). For purposes of this section, the amount of gain or loss that is treated as capital gain or capital loss under sections 741 and 751 is referred to as outside capital gain or outside capital loss, respectively. The amount of gain or loss that is treated as ordinary gain or ordinary loss under sections 741 and 751 is referred to as outside ordinary gain or outside ordinary loss, respectively.

47

**(ii) Nonrecognition provisions.** A foreign transferor's gain or loss recognized in connection with the transfer of its partnership interest does not include gain or loss to the extent that the gain or loss is not recognized by reason of one or more nonrecognition provisions of the Internal Revenue Code.

**(3) Limitations.** For purposes of applying this section, this paragraph (b)(3) limits the amount of gain or loss recognized by a foreign transferor that may be treated as effectively connected gain or effectively connected loss.

**(i) Capital gain limitation.** Outside capital gain recognized by a foreign transferor is treated as effectively connected gain to the extent it does not exceed aggregate deemed sale EC capital gain determined under paragraph (c)(3)(ii)(B) of this section.

**(ii) Capital loss limitation.** Outside capital loss recognized by a foreign transferor is treated as effectively connected loss to the extent it does not exceed aggregate deemed sale EC capital loss determined under paragraph (c)(3)(ii)(B) of this section.

**(iii) Ordinary gain limitation.** Outside ordinary gain recognized by a foreign transferor is treated as effectively connected gain to the extent it

48

does not exceed aggregate deemed sale EC ordinary gain determined under paragraph (c)(3)(ii)(A) of this section.

**(iv) Ordinary loss limitation.** Outside ordinary loss recognized by a foreign transferor is treated as effectively connected loss to the extent it does not exceed aggregate deemed sale EC ordinary loss determined under paragraph (c)(3)(ii)(A) of this section.

**(c) Amount treated as effectively connected with the conduct of a trade or business within the United States.** This paragraph (c) describes the steps to be followed in computing the limitations described in paragraph (b)(3) of this section.

**(1) Step 1: Determine deemed sale gain and loss.** Determine the amount of gain or loss that the partnership would recognize with respect to each of its assets (other than interests in partnerships described in paragraph (e) of this section) upon a deemed sale of all of the partnership's assets on the date of the transfer of the partnership interest described in paragraph (b)(1) of this section (deemed sale). For this purpose, a deemed sale is treated as a sale by the partnership to an unrelated person of each of its assets (tangible and intangible) in a fully taxable transaction for cash in an amount equal to the fair market value of each asset (taking into account section 7701(g)) immediately before

49

the partner's transfer of the interest in the partnership. For rules concerning the

deemed sale of certain partnership interests, see paragraph (e) of

this section.

**(2) Step 2: Determine deemed sale EC gain and loss—(i) In general—(A)**

Effectively connected determination. With respect to each asset deemed sold in

paragraph (c)(1) of this section, determine the amount of gain or loss from the

deemed sale that would be treated as effectively connected gain or effectively

connected loss (including by reason of section 897). Gain described in this

paragraph (c)(2) is referred to as deemed sale EC gain, and loss described in

this paragraph (c)(2) is referred to as deemed sale EC loss. Section 864 and the

regulations thereunder apply for purposes of determining whether deemed sale

gain or loss would be treated as effectively connected gain or loss. See

paragraph (c)(2)(ii) of this section for sourcing rules that apply for purposes of

determining deemed sale EC gain and deemed sale EC loss.

(B) 10–year exception. For purposes of applying paragraph (c)(2)(i)(A) of

this section, gain or loss from the deemed sale of an asset (other than a

United States real property interest within the meaning of section 897(c)

will not be treated as deemed sale EC gain or deemed sale EC loss if—

50

(1) No income or gain produced by the asset was taxable as income that was effectively connected with the conduct of a trade or business within the United States by the partnership (or the foreign transferor, a predecessor of the foreign transferor, or a predecessor of the partnership) during the lesser of the ten-year period ending

on the date of the transfer or the period for which the partnership (and, if applicable, the foreign transferor, a predecessor of the foreign transferor, and a predecessor of the partnership) held the asset; and

(2) The asset has not been used, or held for use, in the conduct of a trade or business within the United States by the partnership (or the foreign transferor, a predecessor of the foreign transferor, or a predecessor of the partnership) during that same period.

**(ii) Sourcing rules for determining deemed sale EC gain and deemed sale EC loss—(**A) In general. For purposes of applying section 865(e)(2)(A) in connection with the determination of deemed sale EC gain and deemed sale EC loss under this paragraph (c)(2)(ii)(A), except to the extent provided in paragraphs (c)(2)(ii)(B) through (E) of this section, the deemed sale of an asset will be treated as attributable to an office or other fixed place of business maintained by the partnership in the United States. However, if the partnership

51

does not maintain an office or other fixed place of business in the United States (within the meaning of section 864(c)(5)(A) and § 1.864–7), neither the office attribution described in this paragraph (c)(2)(ii)(A), nor the rules of paragraphs (c)(2)(ii)(B) through (E) of this section, will apply.

(B) Look-back rule for sale of inventory property. The deemed sale of inventory property (as defined in section 865(i)(1)) will not be treated as attributable to an office or other fixed place of business maintained by the partnership in the United States to the extent of foreign source inventory gain or loss. Foreign source inventory gain or loss is determined by multiplying the deemed sale gain or deemed sale loss attributable to inventory property by the foreign source inventory ratio. The foreign source inventory ratio cannot exceed one. If the amount in paragraph (c)(2)(ii)(B)(1) of this section is not positive, the foreign source inventory ratio is zero. If the amount in paragraph (c)(2)(ii)(B)(1) of this section is positive, but the amount in paragraph (c)(2)(ii)(B)(2) of this section is not positive, the foreign source inventory ratio is one. The foreign source inventory ratio is—

(1) The gross income of the partnership from sources without the United States (as determined under sections 865(b) and 865(e)(2)) that was attributable to inventory property sold during the lesser of—

(i) The period comprised of the partnership's three taxable years immediately preceding the date of the deemed sale, or

(ii) The period beginning on the date the partnership (or any of its predecessors) was formed and ending on the last day of the partnership's taxable year immediately preceding the date of the deemed sale; over

(2) The total gross income of the partnership that was attributable to inventory property sold during that same period.

(C) Look-back rule for intangibles. The deemed sale of an intangible (as defined in section 865(d)(2), including going concern value) will not be treated as attributable to an office or other fixed place of business maintained by the partnership in the United States to the extent of foreign source intangible gain or loss. Foreign source intangible gain or loss is determined by multiplying the deemed sale gain or deemed sale loss from an intangible, without regard to any gain described in section 865(d)(4)(A), by the foreign source intangible ratio. The foreign source intangible ratio cannot exceed one. If the amount in paragraph (c)(2)(ii)(C)(1) of this section is not positive, the foreign source intangible ratio is zero. If the amount in paragraph (c)(2)(ii)(C)(1) of this section is positive, but the amount in paragraph

(c)(2)(ii)(C)(2) of this section is not positive, the foreign source inventory ratio is one. The foreign source intangible ratio is—

(1) The gross ordinary income (other than from dispositions of depreciable or amortizable property) of the partnership from sources without the United States that was not effectively connected with the conduct of a trade or business within the United States, during the lesser of—

(i) The period comprised of the partnership's three taxable years immediately preceding the date of the deemed sale, or

(ii) The period beginning on the date the partnership (or any of its predecessors) is formed and ending on the last day of the partnership's taxable year immediately preceding the year in which the deemed sale occurs; over

(2) The total gross ordinary income (other than from dispositions of depreciable or amortizable property) of the partnership during that period.

(D) Depreciable personal property—(1) Depreciation recapture. The deemed sale of depreciable personal property (as defined in section 865(c)(4)(A)), including from the sale of an amortizable intangible (as defined in section

54

865(d)(2)), will not be treated as attributable to an office or other fixed place of business maintained by the partnership in

the United States to the extent the deemed sale gain would be treated as from sources outside the United States after applying section 865(c)(1) at the time of the deemed sale.

(2) Gain in excess of depreciation or loss with respect to depreciable personal property. For purposes of this section, if the deemed sale of depreciable personal property (other than an amortizable intangible) results in deemed sale gain in excess of the property's depreciation adjustments (as defined in section 865(c)(4)(B)), or results in deemed sale loss, attribution to an office or other fixed place of business maintained by the partnership in the United States with respect to the excess deemed sale gain, or deemed sale loss, will be determined based on where the property is located: If the property is located outside the United States, the excess deemed sale gain, or the deemed sale loss, will not be treated as attributable to an office or other fixed place of business maintained by the partnership in the United States; if the property is located within the United States, the excess deemed sale gain, or the deemed sale loss, will be treated as attributable to an office or other

55

fixed place of business maintained by the partnership in the United States.

(E) Material change in circumstances rule. If a material change in circumstances occurred that causes the applicable rule provided in paragraph (c)(2)(ii)(B) or (C) of this section to provide a sourcing result that is materially different from the sourcing result that would occur if the applicable period described in paragraph (c)(2)(ii)(B)(1) or (c)(2) (ii)(C)(1) of this section began on the date on which the material change in circumstance occurred and ended on the last day of the partnership's taxable year immediately preceding the year in which the deemed sale occurs (the modified look-back period), the applicable rule provided in paragraph (c)(2)(ii)(B) or (C) of this section may be applied by reference to the modified look-back period. The difference between the sourcing results is determined by comparing the foreign source inventory ratio (as described in paragraph (c)(2)(ii)(B) of this section) or the foreign source intangible ratio (as described in paragraph (c)(2)(ii)(C) of this section), as applicable, with the foreign source inventory ratio or foreign source intangible ratio, as applicable, if that ratio were determined by reference to the modified look-back period. For purposes of this paragraph (c)(2)(ii)(E), the sourcing results will not be materially different unless the percentage point difference

56

between the ratios described in the preceding sentence is at least 30

percentage points.

(iii) Examples. This paragraph (c)(2)(iii) provides examples that illustrate the

rules of paragraph (c)(2)(ii) of this section.  Except as otherwise provided, the

following facts apply for purposes of this paragraph (c)(2)(iii). FP is a foreign

corporation and a partner in PRS, a partnership that is engaged in the conduct of

a trade or business within the United States (the U.S. Business) and a business in

Country A (the Country A Business). Both businesses purchase inventory

property and sell the purchased inventory property to unrelated customers; this is

the only income-generating activity carried on by the businesses. PRS maintains

an office or fixed place of business within the U.S. (within the meaning of

section 864(c)(5)(A) and § 1.864–7) and, for its U.S. business, PRS sells its

inventory property through its U.S. office. For the Country A business, PRS sells

its inventory property through its Country A office for consumption in Country

A; PRS's Country A office materially participates in each sale. The gain or loss

from the inventory sold through PRS's Country A office is treated as from

sources without the United States and is not effectively connected with PRS's

U.S. Business. In year 4, FP sells its entire interest in PRS, thereby triggering the

deemed sale described in paragraph (c)(1) of this section. In the deemed sale,

PRS recognizes $10x of gain on the sale of its inventory property (the only asset

57

PRS holds other than goodwill and going concern value). The 10–year exception provided in paragraph (c)(2)(i)(B) of this section does not apply.

(A) **Example 1:** Determining foreign source inventory gain—(1) Facts. Based on PRS's sales records for the three taxable years immediately preceding the date of the deemed sale, PRS's gross income from sources without the United States that is attributable to sales of inventory property is $12x and PRS's total gross income attributable to sales of inventory property during that period is $30x.

(2) Analysis. To determine foreign source inventory gain or loss described in paragraph (c)(2)(ii)(B) of this section, the $10x deemed sale gain attributable to inventory property is multiplied by PRS's foreign source inventory ratio. PRS's foreign source inventory ratio is PRS's gross income from sources without the United States that are attributable to sales of inventory property within PRS's three taxable years preceding the date of the deemed sale, over PRS's total gross income attributable to sales of inventory property during the same period. Thus, based on PRS's sales records from the three taxable years preceding the date of the deemed sale, the foreign source inventory gain for PRS's inventory is $4x (the $10x deemed sale gain attributable to inventory multiplied by the foreign source inventory ratio of $12x over $30x).

58

(B) **Example 2:** Determining deemed sale EC gain attributable to inventory property under the material change in circumstances rule—(1) Facts. The facts are the same as in paragraph (c)(2)(iii)(A)(1) of this section (the facts of Example 1 in this paragraph (c)(2)(iii)), except that at the beginning of year 3 (PRS's taxable year immediately preceding the date of the deemed sale), PRS started a new business in Country B (the Country B Business) to take advantage of favorable market prospects for its products in Country B. For the Country B Business, PRS sells its inventory property through its Country B office for consumption in Country B; PRS's Country B office materially participates in each such sale. The gain or loss from the inventory sold through PRS's Country B office is foreign source gain or loss. Also, at the beginning of year 3, PRS substantially reduced its U.S. Business as a result of market factors. As a result of these changes in year 3, 95% of PRS's inventory property is sold in its Country A Business and Country B Business (collectively, the Foreign Businesses) beginning on the date in which these changes occurred; accordingly, 5% of PRS' inventory property is sold in its U.S. Business after these changes. Based on PRS's sales records for the three taxable years preceding the date of the deemed sale, PRS's gross income from sources without the United States that are attributable to sales of inventory property is $15x and PRS's total gross income attributable to sales of inventory property during that period is $30x; for year 3, PRS's gross income from sources

59

without the United States that are attributable to sales of inventory property is
$9.5x, and PRS's total gross income attributable to sales of inventory property in
Year 3 is $10x.

(2) Analysis. The material change in circumstances rule described in paragraph
(c)(2)(ii)(E) of this section applies if due to a material change in circumstances, the
sourcing rule provided in paragraph (c)(2)(ii)(B) of this section provides a sourcing
result that is materially different from the sourcing result that would occur if that
sourcing rule was applied by reference to the modified look-back period; that is,
the period beginning on the date in which a material chance in circumstances
occurred and ending on the last day of the PRS's taxable year immediately
preceding the date of the deemed sale. For this purpose, the reduction in PRS's
U.S. business in year 3, coupled with the creation of the Country B Business in the
same year, qualifies as a material change in circumstances. Thus, the modified
look-back period consists of year 3; that is, the period starting at the beginning of
year 3, the date in which the material change in circumstances occurred, and
ending of the last day of year 3, the last day of PRS's taxable year immediately
preceding the date of the deemed sale. Based on PRS's sales records for the three
taxable years preceding the deemed sale, the foreign source inventory ratio,
expressed as a percentage, is 50% ($15x) attributable to PRS's gross income from
sources without the United States with respect to sales of its inventory property,

60

over $30x attributable to PRS's total gross income with respect to sales of its

inventory property). Due to the material change in circumstances, however, 95% of

PRS's inventory property is sold in its Foreign Businesses. ($9.5x attributable to

PRS's gross income from sources without the United States with respect to sales of

its inventory property, over $10x attributable to PRS's total gross income with

respect to sales of its inventory property.) Accordingly, if PRS applied the sourcing

rule provided in paragraph (c)(2)(ii)(B) of this section by reference to the modified

look-back period, 95% ($9.5x/$10x), or $9.5x, of the gain would be attributable to

sales for PRS's Foreign Businesses (gain from sources without the United States),

and only 5% ($.5x/$10x), or $0.5x, of the gain would be attributable to sales for

PRS's U.S. Business (gain from United States sources). The excess of the foreign

source inventory ratio determined by reference to the modified look-back period

(expressed as a percentage), over the foreign source inventory ratio (also expressed

as a percentage) is 45%; that is 95% (as determined under the modified look-back

period) minus 50% (as determined under the foreign source inventory ratio).

Accordingly, the sourcing results are materially different because the 45

percentage point difference is greater than the 30 percentage point threshold

provided in paragraph (c)(2)(ii)(E) of this section. Thus, the material change in

circumstances rule of paragraph (c)(2)(ii)(E) of this section applies and the foreign

source inventory gain determined under paragraph (c)(2)(ii)(B) of this section,

61

determined by reference to the modified look-back period, is $9.5x; that is, the deemed sale gain attributable to inventory property ($10x), multiplied by the foreign source inventory ratio determined by reference to the modified look-back period ($9.5x/$10x).

**(3) Step 3: Determine the foreign transferor's distributive share of deemed sale EC gain or deemed sale EC loss—(i) In general.** A foreign transferor's distributive share of deemed sale EC gain or deemed sale EC loss with respect to each asset is the amount of the deemed sale EC gain and deemed sale EC loss determined under paragraph (c)(2) of this section that would have been allocated to the foreign transferor by the partnership under all applicable Internal Revenue Code sections (including section 704) upon the deemed sale described in paragraph (c)(1) of this section, taking into account allocations of tax items applying the principles of section 704(c), including any remedial allocations (see § 1.704–3(d)), and any section 743(b) basis adjustments (see § 1.743–1(j)(3)). For this purpose, a foreign transferor's distributive share of deemed sale EC gain or deemed sale EC loss does not include any amount that is excluded from the foreign transferor's gross income or otherwise exempt from U.S. Federal income tax by reason of an applicable provision of the Internal Revenue Code (including, for example, by reason of section 864(b)(2), 872(b), or 883). Similarly, a foreign transferor's

distributive share of deemed sale EC gain or deemed sale EC loss does not include any amount to which an exception under

section 897 applies, such as section 897(k) or section 897(l), if that amount is not otherwise treated as effectively connected under a provision of the Code. For rules regarding the determination of a foreign transferor's distributive share of deemed sale EC gain and deemed sale EC loss under an applicable U.S. income tax treaty, see paragraph (f) of this section.

**(ii) Aggregate deemed sale EC items—(**A) Ordinary gain or loss. A foreign transferor's aggregate deemed sale EC ordinary gain (if the net aggregate of the foreign transferor's distributive share of the deemed sale EC ordinary gain and loss is a gain) or aggregate deemed sale EC ordinary loss (if the net aggregate of the foreign transferor's distributive share of the deemed sale EC ordinary gain and loss is a loss) is determined by taking into account—

(1) The portion of the foreign transferor's distributive share of deemed sale EC gain and deemed sale EC loss that is attributable to the deemed sale of the partnership's assets that are section 751(a) property; and

(2) Deemed sale EC gain and deemed sale EC loss from the deemed sale of assets that are section 751(a) property that would be allocated to the foreign transferor with respect to interests in partnerships that are engaged in the

conduct of a trade or business within the United States under paragraph (e)(1)(ii) of this section upon the deemed asset sales described in paragraph (e)(1)(i) of this section.

(B) Capital gain or loss. A foreign transferor's aggregate deemed sale EC capital gain (if the net aggregate of the foreign transferor's distributive share of the deemed sale EC capital gain and loss is a gain) or aggregate deemed sale EC capital loss (if the net aggregate of the foreign transferor's distributive share of the deemed sale EC capital gain and loss is a loss) is determined by taking into account—

(1) The portion of the foreign transferor's distributive share of deemed sale EC gain and deemed sale EC loss that is attributable to the deemed sale of assets that are not section 751(a) property; and

(2) Deemed sale EC gain and deemed sale EC loss from the sale of assets that are not section 751(a) property and that would be allocated to the foreign transferor with respect to all interests in partnerships that are engaged in the conduct of a trade or business within the United States under paragraph (e)(1)(ii) of this section upon the deemed asset sales described in paragraph (e)(1)(i) of this section.

**(iii) Partial transfers.** If a foreign transferor transfers less than all of its interest in a partnership, then for purposes of paragraph (c)(3)(i) of this section, the foreign transferor's distributive share of deemed sale EC gain and deemed sale EC loss is determined by reference to the amount of deemed sale EC gain or deemed sale EC loss determined under paragraph (c)(3)(i) of this section that is attributable to the portion of the foreign transferor's partnership interest that was transferred.

**(d) Coordination with section 897.** If a foreign transferor transfers an interest in a partnership in a transfer that is subject to section 864(c)(8) and the partnership owns one or more United States real property interests (as defined in section 897(c)), then the foreign transferor determines its effectively connected gain and effectively connected loss under this section, and not pursuant to section 897(g). Accordingly, with respect to a transfer that is subject to section 864(c)(8), section 864(c)(8)(C) does not reduce the amount of gain or loss treated as effectively connected gain or loss under this section. For rules regarding a transfer not subject to section 864(c)(8) of an interest in a partnership that owns one or more United States real property interests, see section 897(g) and the regulations thereunder. If a foreign transferor transfers an interest in a partnership in the manner described in paragraph (b)(2)(ii) of this section, the transfer is treated as not subject to section 864(c)(8) to the extent of the gain or loss that is not recognized; instead, if the

65

partnership owns one or more United States real property interests at the time of transfer, the rules of section 897(g) and the regulations thereunder apply to the unrecognized gain or loss.

**(e) Tiered partnerships—(1) Transfers of upper-tier partnerships.** Assets sold in a deemed sale described in paragraph (c)(1) of this section do not include interests in partnerships that are engaged in the conduct of a trade or business within the United States or interests in partnerships that hold, directly or indirectly, partnerships that are engaged in the conduct of a trade or business within the United States. Rather, if a foreign transferor transfers an interest in a partnership (upper-tier partnership) that owns, directly or indirectly, an interest in one or more partnerships that are engaged in the conduct of a trade or business within the United States, then—

> **(i)** Beginning with the lowest-tier partnership that is engaged in the conduct of a trade or business within the United States in a chain of partnerships and going up the chain, each partnership that is engaged in the conduct of a trade or business within the United States is treated as selling its assets in a deemed sale in accordance with the principles of paragraph (c)(1) of this section; and

> **(ii)** Each partnership must determine its deemed sale EC gain and deemed sale EC loss in accordance with the principles of paragraph (c)(2) of this section,

66

and determine the distributive share of deemed sale EC gain and deemed sale EC loss for each partner that is either a partnership (in which the foreign transferor is a direct or indirect partner) or a foreign transferor, in accordance with the principles of paragraph (c)(3)(i) of this section.

**(2) Transfers by upper-tier partnerships.** If a foreign transferor is a direct or indirect partner in an upper-tier partnership and the upper-tier partnership transfers an interest in a partnership that is engaged in the conduct of a trade or business within the United States (including a partnership held indirectly through one or more partnerships), then the principles of this section (including paragraph (e)(1) of this section) apply with respect to the gain or loss on the transfer that is allocated to the foreign transferor by the upper-tier partnership.

**(3) Coordination with section 897.** For purposes of this paragraph (e), a lower-tier partnership that holds one or more United States real property interests is treated as engaged in the conduct of a trade or business within the United States.

**(f) Treaty coordination.** This paragraph (f) describes how paragraph (c)(3) of this section applies in the case of a transfer of an interest in a partnership by a foreign transferor that is eligible for benefits under an applicable U.S. income tax treaty.

67

As a general matter, a foreign transferor must satisfy the requirements of the limitation on benefits article, if any, in the treaty between the jurisdiction in which the transferor is resident and the United States to be eligible for treaty benefits. In the case of a foreign transferor that is entitled to treaty benefits, in determining the foreign transferor's distributive share of deemed sale EC gain and deemed sale EC loss, gain or loss derived by the foreign transferor attributable to assets deemed sold that would be exempt from tax under an applicable U.S. income tax treaty if disposed of by the partnership are not taken into account under paragraph (c)(3) of this section. In general, gain or loss on the alienation of a partnership interest will be treated as effectively connected gain or loss under section 864(c)(8) to the extent that the gain or loss is either attributable to assets forming part of a U.S. permanent establishment or fixed place of business, or taxable under a provision governing the disposition of United States real property interests. Gain or loss from the alienation of a partnership interest will be considered gain or loss attributable to the alienation of assets forming part of a permanent establishment or fixed place of business in the United States to the extent the assets deemed sold under section 864(c)(8) form a part of the U.S. permanent establishment or fixed place of business of the partnership. If, however, after applying treaty benefits in paragraph (c)(3) of this section, the only gains or losses that would be taken into account are

gains or losses attributable to United States real property interests, the foreign

transferor determines

its effectively connected gain and effectively connected loss pursuant to section

897 and not under this section.

**(g) Definitions.** The following definitions apply for purposes of this section.

**(1) Effectively connected gain.** The term effectively connected gain means

gain that is treated as effectively connected with the conduct of a trade or

business within the United States.

**(2) Effectively connected loss.** The term effectively connected loss means loss

treated as effectively connected with the conduct of a trade or business within

the United States.

**(3) Foreign transferor.** The term foreign transferor means a nonresident alien

individual or foreign corporation.

**(4) Section 751(a) property.** The term section 751(a) property means

unrealized receivables described in section 751(c) and inventory items

described in section 751(d).

**(5) Transfer.** The term transfer means a sale, exchange, or other disposition,

and includes a distribution from a partnership to a partner to the extent that

gain or loss is recognized on the distribution, as well as a transfer treated as a sale or exchange under section 707(a)(2)(B).

**(h) Anti-stuffing rule.** If a foreign transferor (or a person that is related to a foreign transferor within the meaning of section 267(b) or 707(b)) transfers property (including another partnership interest) to a partnership in a transaction with a principal purpose of reducing the amount of gain treated as effectively connected gain, or increasing the amount of loss treated as effectively connected loss, under section 864(c)(8) or section 897, the transfer is disregarded for purposes of section 864(c) (8) or section 897, as appropriate.

**(i) Examples.** This paragraph (i) provides examples that illustrate the rules of this section. Except as otherwise provided, the following facts are presumed for purposes of this paragraph (i). FP is a foreign corporation. USP is a domestic corporation. PRS is a partnership that was formed on January 1, 2018, when FP and USP each contributed $100x in cash. PRS has made no distributions and received no contributions other than those described in the preceding sentence. FP's adjusted basis in its interest in PRS is $100x. X is a foreign corporation that is unrelated to FP, USP, or PRS. Upon the formation of PRS, FP and USP entered into an agreement providing that all income, gain, loss, and deduction of PRS will be allocated equally between FP and USP. PRS is engaged in the conduct of a trade or business within the United States (the U.S. Business) and an unrelated

70

business in Country A (the Country A Business). In a deemed sale described in paragraph (c)(1) of this section, gain or loss on assets of the U.S. Business would be treated as effectively connected gain or effectively connected loss, and gain or loss on assets of the Country A Business would not be so treated (including by reason of paragraph (c)(2)(i)(B) of this section).  PRS has no liabilities.

(1) **Example 1.** Deemed sale limitation—(i) Facts. On January 1, 2019, FP sells its entire interest in PRS to X for $105x. FP does not qualify for the benefits of an income tax treaty between the United States and another country. Immediately before the sale, PRS's balance sheet appears as follows:

| | Adjusted basis | Fair market value |
|---|---|---|
| U.S. Business section 1231 asset................................................ | $100x | $104x |
| Country A Business capital asset............................................... | 100x | 106x |
| Total.......................................................................................... | 200x | 210x |

ii) Analysis—(A) Outside gain or loss. FP is a foreign transferor (within the meaning of paragraph (g)(3) of this section) and transfers (within the meaning of paragraph (g)(5) of this section) its interest in PRS to X. For purposes of this example, for implicity, PRS is assumed to hold no section 751(a) property and depreciation recapture is assumed to be zero. FP recognizes a $5x capital gain under section 741, which is an outside capital gain within the meaning of paragraph (b)(2)(i) of this section.  Under paragraph (b)(1) of this section, FP's $5x

71

capital gain is treated as effectively connected gain to the extent that it does not exceed the limitation described in paragraph (b)(3)(i) of this section, which is FP's aggregate deemed sale EC capital gain.

(B) Deemed sale. FP's aggregate deemed sale EC capital gain is determined according to the three-step process set forth in paragraph (c) of this section. First, the amount of gain or loss that PRS would recognize with respect to each of its assets upon a deemed sale described in paragraph (c)(1) of this section is a $4x gain with respect to the U.S. Business section 1231 asset and a $6x gain with respect to the Country A Business capital asset. Second, under paragraph (c)(2) of this section, PRS's deemed sale EC gain is $4x. Third, under paragraph (c)(3)(ii)(B) of this section, FP's aggregate deemed sale EC capital gain is $2x (that is, the aggregate of its distributive share of deemed sale EC gain attributable to the deemed sale of assets that are not section 751(a) property, which is 50% of $4x).

(C) Limitation. Under paragraph (b)(3)(i) of this section, the $5x outside capital gain recognized by FP is treated as effectively connected gain to the extent that it does not exceed FP's $2x aggregate deemed sale EC capital gain. Accordingly, FP recognizes $2x of capital gain that is treated as effectively connected gain.

(2) **Example 2.** Outside gain limitation—(i) Facts. On January 1, 2019, FP sells its entire interest in PRS to X for $110x. FP does not qualify for the benefits of an

72

income tax treaty between the United States and another country. Immediately before the sale, PRS's balance sheet appears as follows:

| | Adjusted basis | Fair market value |
|---|---|---|
| U.S. Business section 1231 asset............................................. | $100x | $150x |
| Country A Business capital asset............................................. | 100x | 70x |
| Total................................................................................ | 200x | 220x |

(ii) Analysis—(A) Outside gain or loss. FP is a foreign transferor (within the meaning of paragraph (g)(3) of this section) and transfers (within the meaning of paragraph (g)(5) of this section) its interest in PRS to X. For purposes of this example, for simplicity, PRS is assumed to hold no section 751(a) property and depreciation recapture is assumed to be zero. FP recognizes a $10x capital gain under section 741, which is an outside capital gain within the meaning of paragraph (b)(2)(i) of this section. Under paragraph (b)(1) of this section, FP's $10x capital gain is treated as effectively connected gain to the extent that it does not exceed the limitation described in paragraph (b)(3)(i) of this section, which is FP's aggregate deemed sale EC capital gain.

(B) Deemed sale. FP's aggregate deemed sale EC capital gain is determined according to the three-step process set forth in paragraph (c) of this section. First, the amount of gain or loss that PRS would recognize with respect to each of its assets upon a deemed sale described in paragraph (c)(1) of this section is a $50x

73

gain with respect to the U.S. Business section 1231 asset and a $30x loss with respect to the Country A Business capital asset. Second, under paragraph (c)(2) of this section, PRS's deemed sale EC gain is $50x. Third, under paragraph (c)(3)(ii)(B) of this section, FP's aggregate deemed sale EC capital gain is $25x (that is, the aggregate of its distributive share of deemed sale EC gain attributable to the deemed sale of assets that are not section 751(a) property, which is 50% of $50x).

(C) Limitation. Under paragraph (b)(3)(i) of this section, the $10x outside capital gain recognized by FP is treated as effectively connected gain to the extent that it does not exceed FP's $25x aggregate deemed sale EC capital gain. Accordingly, FP recognizes $10x of capital gain that is treated as effectively connected gain.

(3) **Example 3.** Interaction with section 751(a)—(i) Facts. On January 1, 2019, FP sells its entire interest in PRS to X for $95x. FP does not qualify for the benefits of an income tax treaty between the United States and another country. Through both its U.S. Business and its Country A Business, PRS holds inventory items and receivables that are section 751 property (as defined in § 1.751–1(a)). Immediately before the sale, PRS's balance sheet appears as follows:

74

| | Adjusted basis | Fair market value |
|---|---|---|
| U.S. Business section 1231 asset................................ | $20x | $50x |
| U.S. Business inventory and receivables..................... | 30x | 50x |
| Country A Business capital asset............................... | 100x | 80x |
| Country A Business inventory.................................... | 50x | 10x |
| Total................................................................... | 200x | 190x |

(ii) Analysis—(A) Outside gain or loss. FP is a foreign transferor (within the meaning of paragraph (g)(3) of this section) and transfers (within the meaning of paragraph (g)(5) of this section) its interest in PRS to X. Under sections 741 and 751, FP recognizes a $10x ordinary loss and a $5x capital gain. See § 1.751–1(a). Under paragraph (b)(2)(i) of this section, FP has outside ordinary loss equal to $10x and outside capital gain equal to $5x. Under paragraph (b)(1) of this section, FP's outside ordinary loss and outside capital gain are treated as effectively connected loss and effectively connected gain to the extent that each does not exceed the applicable limitation described in paragraph (b)(3) of this section. In the case of FP's outside ordinary loss, the applicable limitation is FP's aggregate deemed sale EC ordinary loss. In the case of FP's outside capital gain, the applicable limitation is FP's aggregate deemed sale EC capital gain.

(B) Deemed sale. FP's aggregate deemed sale EC ordinary loss and aggregate deemed sale EC capital gain are determined according to the three-step process set forth in paragraph (c) of this section.

75

(1) Step 1. The amount of gain or loss that PRS would recognize with respect to each of its assets upon a deemed sale described in paragraph (c)(1) of this section is as follows:

| Asset | Gain/(loss) |
|---|---|
| U.S. Business section 1231 asset........................................................................ | $30x |
| U.S. Business inventory and receivables........................................................... | 20x |
| Country A Business capital asset........................................................................ | (20x) |
| Country A Business inventory............................................................................ | (40x) |

(2) Step 2. Under paragraph (c)(2) of this section, PRS's deemed sale EC gain and deemed sale EC loss must be determined with respect to each asset. The amounts determined under paragraph (c)(2) of this section are as follows:

| Asset | Deemed sale EC gain/(loss) |
|---|---|
| U.S. Business section 1231 asset........................................................................ | $30x |
| U.S. Business inventory and receivables........................................................... | 20x |
| Country A Business capital asset........................................................................ | 0 |
| Country A Business inventory............................................................................ | 0 |

(3) Step 3. Under paragraph (c)(3)(ii)(B) of this section, FP's aggregate deemed sale EC capital gain is $15x (that is, the aggregate of its distributive share of deemed sale EC gain that is attributable to the deemed sale of assets that are not section 751(a) property, which is 50% of $30x) and FP's aggregate deemed sale EC ordinary loss is $0 (that is, the aggregate of its distributive share of deemed sale EC loss that is attributable to the deemed sale of assets that are section 751(a) property).

76

(C) Limitation—(i) Capital gain. Under paragraph (b)(3)(i) of this section, the $5x outside capital gain recognized by FP is treated as effectively connected gain to the extent that it does not exceed FP's $15x aggregate deemed sale EC capital gain. Accordingly, the amount of FP's capital gain that is treated as effectively connected gain is $5x.

(ii) Ordinary loss. Under paragraph (b)(3)(iv) of this section, the $10x outside ordinary loss recognized by FP is treated as effectively connected loss to the extent that it does not exceed FP's $0 aggregate deemed sale EC ordinary loss. Accordingly, the amount of FP's ordinary loss that is treated as effectively connected loss is $0.

(4) **Example 4.** Coordination with income tax treaties—(i) Facts—(A) Sale of interest. On January 1, 2019, FP sells its entire interest in PRS to X for $105x. Immediately before the sale, PRS's balance sheet appears as follows:

| | Adjusted basis | Fair market value |
|---|---|---|
| U.S. Business section 1231 asset............................................... | $100x | $104x |
| Country A Business capital asset................................................ | 100x | 106x |
| Total...................................................................... | 200x | 210x |

(B) Treaty benefits. FP is a qualified resident of Country A under a U.S. income tax treaty between the United States and Country A that is similar or identical in all

77

material respects to the 2006 U.S. Model Income Tax Convention (the Treaty). PRS is treated as fiscally transparent for purposes of Country A tax law. PRS does not carry on its U.S. Business through a U.S. permanent establishment (PE).

(ii) Analysis—(A) Outside gain or loss. FP is a foreign transferor (within the meaning of paragraph (g)(3) of this section) and transfers (within the meaning of paragraph (g)(5) of this section) its interest in PRS to X. For purposes of this example, for simplicity, PRS is assumed to hold no section 751(a) property and depreciation recapture is assumed to be zero. FP recognizes a $5x capital gain under section 741, which is an outside capital gain within the meaning of paragraph (b)(2)(i) of this section.  Under paragraph (b)(1) of this section, FP's $5x capital gain is treated as effectively connected gain to the extent that it does not exceed the limitation described in paragraph (b)(3)(i) of this section, which is FP's aggregate deemed sale EC capital gain.

(B) Deemed sale. FP's aggregate deemed sale EC capital gain is determined according to the three-step process set forth in paragraph (c) of this section by taking into account the treaty coordination rule under paragraph (f) of this section.

(1) Step 1. The amount of gain or loss that PRS would recognize with respect to each of its assets upon a deemed sale described in paragraph (c)(1) of this section is as follows:

78

| Asset | Gain/(loss) |
|---|---|
| U.S. Business section 1231 asset............................................................................. | $4x |
| Country A Business capital asset........................................................................... | 6x |

(2) Step 2. Under paragraph (c)(2) of this section, PRS's deemed sale EC gain is as follows:

| Asset | Gain/(loss) |
|---|---|
| U.S. Business section 1231 asset............................................................................. | $4x |
| Country A Business capital asset........................................................................... | 0x |

(3) Step 3. FP is eligible for benefits under the Treaty and derives the gain on the deemed sale of U.S. Business section 1231 asset. Under paragraph (c)(3)(i) and paragraph (f) of this section, because gain from the disposition of the U.S. Business section 1231 asset does not form part of a U.S. PE, the gain is exempt from U.S. tax under the Treaty, and is not taken into account in determining FP's distributive share of deemed sale EC gain under paragraphs (c)(3)(i) and paragraph (f) of this section. Therefore, FP's aggregate deemed sale EC capital gain is $0x under paragraph (c)(3)(ii)(B) of this section.

(C) Limitation. Under paragraph (b)(3)(i) of this section, the $5x outside capital gain recognized by FP is not treated as effectively connected gain since all of it would exceed FP's $0x aggregate deemed sale EC capital gain.

**(j) Applicability date.** This section applies to transfers occurring on or after December 26, 2018, and to amounts received on or after December 26, 2018,

79

pursuant to an installment sale (as defined in section 453(b)) occurring on or after

November 27, 2017.