**[NOT YET SCHEDULED FOR ORAL ARGUMENT]**

# No. 23-1142

In the United States Court of Appeals
for the District of Columbia Circuit

———————————————

**INDU RAWAT, Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

———————————————

**On Appeal from the Decision of
the United States Tax Court**

———————————————

**REPLY BRIEF FOR APPELLANT**

———————————————

Christopher S. Rizek
Leila D. Carney
  *Caplin & Drysdale, Chartered*
  *One Thomas Circle, N.W., Ste. 1100*
  *Washington, DC 20005*
  *Telephone: (202) 862-8852*
  *crizek@capdale.com*

Nathan J. Hochman
  *Ross LLP*
  *1900 Avenue of the Stars, Ste. 1225*
  *Los Angeles, CA 90067*
  *Telephone: (424) 704-5600*
  *nhochman@rossllp.la*

# TABLE OF CONTENTS

TABLE OF CONTENTS........................................................ i

TABLE OF AUTHORITIES ................................................ ii

GLOSSARY....................................................................... vii

STATUTE AND REGULATIONS ................................... viii

SUMMARY OF ARGUMENT ...............................................1

ARGUMENT ..........................................................................2

   I. Sections 741 and 751 together describe the tax treatment of gain from the sale of a partnership interest. .................................................................2

     A. The plain language of sections 741 and 751 is dispositive. ..........................3

     B. Legislative history places section 751 in context but does not replace its plain language. ..........................................................7

   II. Section 751 does not change the property sold. ...............................................9

     A. Section 751 changes the character of gain, nothing more...........................9

     B. Courts have not expanded the reach of section 751.....................................12

     C. Section 751 does not transform Mrs. Rawat's sale of a partnership interest into a sale of inventory. ...................................................15

   III. Section 865(a), not (b), applies to Mrs. Rawat's sale of her partnership interest............................................................19

     A. Section 751 is not a backdoor into section 865(b). .....................................19

     B. The Commissioner concedes that Mrs. Rawat's partnership interest is "personal property" under Subchapter N. ........................................................22

     C. Partnership tax experts agree that section 865(a) applies to the sale of an interest in a partnership that holds inventory. ...................................................24

CONCLUSION......................................................................26

CERTIFICATE OF COMPLIANCE....................................28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Caminetti v. United States,*
242 U.S. 470 (1917).................................................................4, 8

*Charron v. United States,*
200 F.3d 785 (Fed. Cir. 1999) ............................................21

*Coggin Automotive Corp. v. Commissioner,*
292 F.3d 1326 (11th Cir. 2002) ...........................4, 8, 15, 23

*Commissioner v. Engle,*
464 U.S. 206 (1984)...................................................................4

*Dresser Indus., Inc. v. United States,*
238 F.3d 603 (5th Cir. 2001) .............................................16

*Fluor Corp. and Affiliates v. United States,*
126 F.3d 1397 (Fed. Cir. 1997) .........................................16

*George Edward Quick's Trust v. Commissioner,*
444 F.2d 90 (8th Cir. 1971) ...........................................8, 14

*George Edward Quick's Trust v. Commissioner,*
54 T.C. 1336 (1970)...........................................6, 8, 13, 14

*Glade Creek Partners, LLC v. Commissioner,*
T.C. Memo. 2023-82, T.C.M. (RIA) 2023-082 (2023) .....................11

*Grecian Magnesite Mining, Indus. & Shipping Co., SA v. Commissioner,*
149 T.C. 63 (2017)...................................viii, 2, 3, 13, 17, 18, 19, 22, 24, 26, 27

*Grecian Magnesite Mining, Indus. & Shipping Co., SA v. Commissioner,*
926 F.3d 819 (D.C. Cir. 2019)........................................ viii, 2, 14, 15

*Hay v. Commissioner,*
145 F.2d 1001 (4th Cir. 1944) ................................................20, 21

*Helvering v. Stockholms Enskilda Bank*,
293 U.S. 84 (1934)......................................................................20, 21

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)............................................................................3, 14

*Marquardt Co. v. United States*,
822 F.2d 1573 (Fed. Cir. 1987) ........................................................16

*Mingo v. Commissioner*,
773 F.3d 629 (5th Cir. 2014) ................................................8, 12, 13

*Mingo v. Commissioner*,
T.C. Memo. 2013-149, 105 T.C.M (CCH) 1857 (2013) ...................8, 12, 13, 14

*Nat'l R.R. Passenger Corp. v. United States*,
431 F.3d 374 (D.C. Cir. 2005)............................................................3, 14

*Petroleum Corp. of Texas, Inc. v. United States*,
939 F.2d 1165 (5th Cir. 1991) ..........................................................15

*Rawat v. Commissioner*,
T.C. Memo. 2023-14 (Feb. 7, 2023)............................................ viii, 22, 24, 25

*Rodman v. Commissioner*,
542 F.2d 845 (2d Cir. 1976) ..............................................................16

*Rosenthal v. Commissioner*,
416 F.2d 491 (2d Cir. 1969) ..............................................................15

*SAS Inst., Inc. v. Iancu*,
138 S. Ct. 1348 (2018).................................................................6, 17

*Schudel v. Commissioner*,
563 F.2d 1300 (9th Cir. 1977) ..........................................................16

*United States v. Estate of Romani*,
523 U.S. 517 (1998)............................................................................4

*United States v. Morison*,
844 F.2d 1057 (4th Cir. 1988) ........................................................4, 8

*United States v. Woolsey*,
  326 F.2d 287 (5th Cir. 1964) .......................................................10, 11

*Ware v. Commissioner*,
  906 F.2d 62 (2d Cir. 1990) ..........................................................9, 10

*Woodhall v. Commissioner*,
  454 F.2d 26 (9th Cir. 1972) .............................................................13

**Statutes**

Pub. L. 99-514, title XII, § 1211(a) (1986)......................................4

Pub. L. No. 83-591 § 741 (1954) ........................................... ix, 7, 20

Pub. L. No. 94-455 § 1901(a)(10) and (a)(11).................................4, 7

Internal Revenue Code (26 U.S.C):
  § 64.........................................................................................7
  § 65.........................................................................................7
  § 162......................................................................................21
  § 274......................................................................................21
  § 338...................................................................................5, 16
  § 341 (1975) .............................................................................4
  § 453...................................................................................8, 12
  § 631.................................................................................15, 16
  § 691...................................................................................8, 13
  § 707 (1975) .............................................................................4
  § 735 (1975) .............................................................................4
  § 741............................................... 1, 2, 3, 4, 5, 7, 9, 10, 14, 15, 17, 20, 23, 25
  § 751.......ix, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 24, 25, 26
  § 751 (1975)..............................................................................4
  § 751(a) ................................................................. viii, 3, 7, 9, 23
  § 751(a)(1) .............................................................................10
  § 751(d)..................................................................................22
  § 814.......................................................................................5
  § 861.............................................................................16, 20, 22, 23
  § 862...................................................................................22, 23
  § 863...................................................................................22, 23
  § 864.................................................................................5, 22, 23
  § 864(c) ..................................................................................ix

iv

Internal Revenue Code (26 U.S.C) (cont'd):

§ 864(c)(8) ................................................................ix, 25

§ 865.......................... ix, 4, 5, 6, 13, 15, 16, 19, 21, 22, 23, 27

§ 865(i)(1) ...............................................................22

§ 865(i)(2) ...............................................................16

§ 865(a) ............................... 19, 20, 21, 23, 24, 26

§ 865(a)(2) ...........................................................1, 22

§ 865(b)............................ 6, 11, 14, 15, 16, 19, 21, 22, 23, 24

§ 871(a)(1) .............................................................ix

§ 873 ...................................................................21

§ 875 ...................................................................ix

§ 897(g) ............................................................ix, 5

§ 904 ..................................................................16

§ 989 ...................................................................5

§ 1014 ...............................................................8, 14

§ 1014(a) .............................................................13

§ 6213(a) .............................................................ix

§ 6512(b) .............................................................ix

§ 7442 .................................................................ix

§ 7482 .................................................................ix

## Rules and Regulations

Rev. Rul. 91-32, 1991-1 C.B. 107 ...................................17

Treasury Regulations (26 C.R.F.):

§ 1.708-1 ..............................................................16

§ 1.751-1 ............................................................5, 17

§ 1.751-1(a).............................................................ix

§ 1.751-1(a)(1) .......................................................17

§ 1.751-1(a)(2) .......................................................18

§ 1.751-1(a)(3) .......................................................19

§ 1.751-1(d)(1) ...................................................17, 18

§ 1.864(c)(8)-1 .......................................................ix

§ 1.864(c)(8)-1(b) ...................................................17

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ............................18

D.C. Circuit Rule 28(a)(5) .............................................ix

Fed. R. App. P. 28(f) ............................................................ix

H.R. Rep. No. 83-1337 (1954) ............................................7

H.R. Rep. No. 83-2543 (1954) ............................................7

H.R. Rep. No. 94-658 (1975) ..............................................8

IRS Publication 537, *Installment Sales*
I.R.S. Pub. 537 (Cat. No. 15067V 2022) ............................13

Jeffrey L. Gould, *Day of the Jackel: Rawat v. the Code*, Tax Notes
Federal, vol. 179 (Apr. 3, 2023) ........................................24

Kimberly S. Blanchard, *You Missed a Spot: The Tax Court's Error in
Rawat*, Tax Notes Federal, vol. 110 (June 5, 2023) ......................24

Kristen Parillo, *IRS Attorney: Statute Backs Court's Aggregate
Approach in Rawat: Partnership Bar's Disagreement*, Tax Notes
International, vol. 110 (May 15, 2023) ........................................25

Kristen Parillo, *IRS Wants to Push Pause on Entry of Final Decision
in Rawat*, Tax Notes International, vol. 110 (May 8, 2023) ......................24

Kristen Parillo, *Tax Court's Rawat Opinion May Go Beyond Sourcing
Rules*, Tax Notes International, vol. 110 (May 1, 2023) ............................25

Monte A. Jackel, *Grecian Magnesite and Its Offspring: Is Rawat
Correct?*, Tax Notes Federal, vol. 178 (Feb. 13, 2023) ................................24

Monte A. Jackel, *Partnership Aggregate-Entity Cases, Rulings, and
Analysis*, Tax Notes Federal, vol. 178 (Mar. 27, 2023) ................................24

Robert Willens, *Response to Monte Jackel on Rawat*, Tax Notes
Federal, vol. 178 (Feb. 20, 2023) ........................................24

S. Rep. No. 83-1622 (1954) ............................................7, 10

Staff of Comm. on Tax'n, 84th Cong., Summary of the New
Provisions of the Internal Revenue Code of 1954, at 94 (J. Comm.
Print 1955). ................................................................7

William S. McKee et al., *Federal Taxation of Partnerships &
Partners*, 1997 WL 663649, ¶ 17.02[3][a] ................................17, 18

vi

# GLOSSARY

| Term | Definition |
|------|------------|
| Code | Internal Revenue Code of 1986, Title 26 U.S.C., as in effect during 2008, the tax year at issue, unless otherwise indicated. |
| *Grecian Magnesite I* | The opinion of the Tax Court in *Grecian Magnesite Mining, Indus. & Shipping Co., SA v. Commissioner*, 149 T.C. 63 (2017). |
| *Grecian Magnesite II* | The opinion of this Court in *Grecian Magnesite Mining, Indus. & Shipping Co., SA v. Commissioner*, 926 F.3d 819 (D.C. Cir. 2019). |
| Inventory Gain | The portion of money received by Appellant attributable to inventory pursuant to section 751(a) of the Internal Revenue Code of 1986, 26 U.S.C. § 751(a). |
| IRS | Internal Revenue Service, an agency of the U.S. Department of the Treasury. |
| Non-Inventory Gain | The portion of money received by Appellant that is *not* attributable to inventory pursuant to section 751(a) of the Internal Revenue Code of 1986, 26 U.S.C. § 751(a). |
| *Rawat* | The opinion of the Tax Court in *Rawat v. Commissioner*, T.C. Memo. 2023-14 (Feb. 7, 2023). |
| U.S.C. | United States Code. |

# STATUTE AND REGULATIONS

The pertinent statutes and regulations identified below are set forth in the addendum to Appellant's initial brief.  The addendum was filed separately pursuant to D.C. Circuit Rule 28(a)(5) and Fed. R. App. P. 28(f).  Unless otherwise indicated, "section" refers to a section of the Internal Revenue Code of 1986, Title 26 U.S.C. (the "Code"), as in effect during 2008, the tax year at issue.

<u>Statutes</u>

Internal Revenue Code (26 U.S.C.) (as in effect in 2008 unless otherwise indicated):

§ 741
§ 751
§ 864(c)
§ 864(c)(8) (2020)
§ 865
§ 871(a)(1)
§ 875
§ 897(g)
§ 6213(a) (2016)
§ 6512(b) (2016)
§ 7442 (2016)
§ 7482 (current)

<u>Regulations</u>

Treasury Regulation (26 C.F.R.) (as in effect in 2008 unless otherwise indicated):

§ 1.751-1(a)
§ 1.864(c)(8)-1 (2020)

# SUMMARY OF ARGUMENT

Section 741 addresses the tax consequences of a partner's sale of an interest in a partnership, generally characterizing the amount realized as gain "from the sale or exchange of a capital asset." Section 751 does not address the property sold; it addresses a portion of the amount realized, characterizing it as ordinary income rather than capital gain. The legislative history of section 751 speaks to this sole purpose, although the Commissioner misinterprets both its applicability and its meaning. But legislative history cannot replace the unambiguous plain language of section 751. While section 751 characterizes some of the gain on the sale of a partnership interest as ordinary in character, it cannot change the property that was actually sold.

Appellant, Mrs. Rawat, sold a partnership interest, an item of (intangible) personal property. The gain Mrs. Rawat recognized from the sale of her partnership interest is thus foreign source pursuant to section 865(a)(2). This case really is that simple. Appellee, the Commissioner, puts it clearly: "with exceptions not relevant here, [nonresident aliens] are not subject to tax on activities sourced outside the United States, including sales of personal property (such as partnership interests), which are generally regarded as taking place in their country of residence." Appellee's Brief at 10.

1

**ARGUMENT**

## I. Sections 741 and 751 together describe the tax treatment of gain from the sale of a partnership interest.

Section 741 characterizes gain "[i]n the case of a sale or exchange of *an interest in a partnership*." (Emphasis added.) That identifies the item sold as a single piece of intangible personal property. *Grecian Magnesite I* emphasized that section 741 further describes the gain from the transaction consistently, as gain from "the sale or exchange of *a* capital *asset*, except as otherwise provided in section 751." *Grecian Magnesite Mining, Indus. & Shipping Co., SA v. Commissioner,* 149 T.C. 63, 82 (2017) ("*Grecian Magnesite I*") (quoting section 741 in part with emphasis as shown), *aff'd* 926 F.3d 819 (D.C. Cir. 2019) ("*Grecian Magnesite II*"). Section 751 again addresses the gain from the sale but identifies the property as the "transferor partner['s] . . . interest in the partnership." Then, to the extent the resulting gain is "attributable to . . . inventory items of the partnership," section 751 states that the gain "shall be considered as an amount realized from the sale or exchange of property other than a capital asset." Both sections 741 and 751 address the sale of a single asset, a partnership interest, but treat portions of the resulting gain differently with respect to their character.

To bend section 751 to his purpose, the Commissioner repeatedly paraphrases its language. For instance, the Commissioner suggests this restatement: "income from the sale that is attributable to inventory is considered as

an amount realized from the sale of inventory property (rather than from the sale of a capital asset)." Appellee's Brief at 9. But that's not exactly what the statute says. The Commissioner tries again, quoting section 751(a) before rewriting it: "gain from the sale of 'property other than a capital asset'—that is . . . the amount is considered as gain from the sale of those inventory items." Appellee's Brief at 27. That's not what the statute says either. Finally, the Commissioner offers what can hardly be called a restatement: "the inventory gain is considered as income from the deemed disposition of inventory located in the United States." Appellee's Brief at 40. The statute definitely does not say that.

The Commissioner's rephrasings are not equivalent to the statutory language, neither logically nor contextually, and they expose the gap between the explicit statutory language and what the Commissioner would have it say. It is only the character of the *gain* that is affected by section 751; it does not change the property that is sold. And, under section 741 and *Grecian Magnesite I*, that property is a partnership interest.

### A. The plain language of sections 741 and 751 is dispositive.

Canons of statutory construction support Mrs. Rawat's plain reading of the statutes. The first canon of statutory construction is that the analysis starts with the plain language. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). Second, a statute may not be expanded beyond its plain language. *Nat'l R.R.*

*Passenger Corp. v. United States*, 431 F.3d 374, 378 (D.C. Cir. 2005); *Coggin Automotive Corp. v. Commissioner*, 292 F.3d 1326, 1332 (11th Cir. 2002). Third, a statute's legislative history cannot be used to expand an unambiguous statute. *E.g., Caminetti v. United States*, 242 U.S. 470, 485 (1917); *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988). Thus, in the absence of an ambiguity, the plain language of sections 741 and 751 controls.

Additional canons of statutory construction guide the interpretation of the statutory text. First, throughout a statutory regime such as Title 26, the same language should be interpreted consistently. *E.g.*, *Commissioner v. Engle*, 464 U.S. 206, 217-18 (1984). Here, the phrase "from the sale or exchange of property other than a capital asset" has consistently been used to mean "ordinary" in character, and therefore it should be so interpreted in section 751.[1] Second, where Congress has expressly addressed an issue, including in a more recent law, such as section 865 (added in 1986,[2] over thirty years after sections 741 and 751 were placed in the Code), the "specific policy embodied in a later federal statute should control [the] construction of the [earlier] statute, even though it had not been expressly amended." *United States v. Estate of Romani*, 523 U.S. 517, 530-31

---

[1] *E.g.,* Code §§ 341, 707, 735 (1975), *amended by* Pub. L. No. 94-455 § 1901(a)(10) and (a)(11); *see* Appellant's Brief at 15-16.

[2] Pub. L. 99-514, title XII, § 1211(a) (1986).

(1998). In this case, Congress has added several statutes with relevant explicit provisions, including those that provide: (1) for the sourcing of income from the sales of personal property, including from inventory when actual inventory is sold, *i.e.*, section 865; (2) for the sourcing of income from real property held by a partnership on the sale of a partnership interest, *i.e.*, section 897(g); and (3) for a deemed sale in a provision actually using the word "deem," *e.g.*, section 864.[3] These examples demonstrate that when Congress wishes to enact the result the Commissioner urges on this Court, Congress knows how to do so.[4]

The Commissioner twice accuses Mrs. Rawat of "dissecting" the statute. Appellee's Brief at 11 and 26. Mrs. Rawat admittedly does "dissect" the statute, searching in vain for the place it says that the sale of a partnership interest constitutes a sale of inventory (or even a "deemed" sale). Mrs. Rawat does not "read the [section 751] exception out of Section 741," as Appellee claims, and she does not need to. Appellee's Brief at 29. The content that the Commissioner imagines to be in the statutes is just not there, as the Commissioner sometimes

---

[3] *See also* Code §§ 338, 814, 989; *see* Appellant's Brief at 34, n.23. The Commissioner uses the word "deem" or "deemed" twenty-four times in its brief, while sections 741 and 751 use it zero times (as does Treasury Regulation section 1.751-1).

[4] These basic principles of statutory construction are applied throughout the remainder of this reply brief.

candidly acknowledges: "Under those [Subchapter K] rules, *gain* attributable to inventory is treated differently than the rest of the *gain* from the sale of *the partnership interest* when *it* is sold." Appellee's Brief at 17 (emphases added).

The problem is that the Commissioner is reading the section 751 inventory gain exception into section 865. But section 751 is explicitly a "Provision[] Common to Other Subparts" of only Subchapter K, *i.e.*, it is not applicable to other subchapters of the Code. Code, Subch. K, Part II, Subp. D (title).[5] Section 865 has its own specific exception for inventory gain—which, unfortunately for the Commissioner, is inapplicable here, because it applies only to gain from a sale of actual inventory property. Code § 865(b). Ironically, in the sole case the Commissioner cites on statutory construction, Justice Gorsuch admonished: "Where a statute's language carries a plain meaning, the duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018); Appellee's Brief at 28.

---

[5] *See also George Edward Quick's Trust v. Commissioner,* 54 T.C. 1336, 1343 (1970).

## B. Legislative history places section 751 in context but does not replace its plain language.

The Commissioner claims that Mrs. Rawat uses legislative history while rejecting its use. But Mrs. Rawat cited legislative history only for context, not to resolve an ambiguity in the statute, because there is none. The legislative background was provided for the limited purposes of showing the following:

1. Section 751(a) was added to the Code explicitly to preclude the "collapsible partnership" transaction, in which the sale of a partnership interest was used to mask the sale of inventory, transmuting ordinary income into capital gain.[6]

2. The legislative history of section 751 is completely silent on sourcing.[7]

3. The term "ordinary income" came into use after the enactment of sections 741 and 751,[8] prior to which Congress described ordinary

---

[6] *See* Staff of Comm. on Tax'n, 84th Cong., Summary of the New Provisions of the Internal Revenue Code of 1954, at 94 (J. Comm. Print 1955).

[7] *See* H.R. REP. NO. 83-1337 (1954); H.R. REP. NO. 83-2543 (1954) (Conf. Rep.); S. REP. NO. 83-1622 (1954).

[8] *See* Internal Revenue Code of 1954, Pub. L. No. 83-591 § 741 (1954) (enacting Subchapter K, including sections 741 and 751(a)); Pub. L. No. 94-455 § 1901(a)(10) and (a)(11) (1976) (enacting sections 64 and 65).

income using phrasing such as "from the sale or exchange of property which is not a capital asset," like the phrasing in section 751.[9]

The Commissioner's atextual citation of legislative history does not justify an "interpretation [of a statutory provision] . . . in quantum leap fashion" in lieu of "address[ing] the plain meaning of the statute itself." *Coggin*, 292 F.3d at 1333. Recapping the legislative history of a statute does not justify expanding the statute's scope beyond its unambiguous plain language. *E.g., Caminetti*, 242 U.S. at 485; *Morison*, 844 F.2d at 1064; *c.f., Mingo v. Commissioner*, T.C. Memo. 2013-149, 105 T.C.M (CCH) 1857 (2013) (basing its analysis wholly on the 1954 legislative history); *George Edward Quick's Trust v. Commissioner*, 54 T.C. 1336 (1970) (also basing its analysis wholly on the 1954 legislative history).[10]

---

[9] H.R. REP. NO. 94-658 at 374 (1975) (explaining that the term ordinary income is intended to "replace the cumbersome and lengthy terminology of present law which . . . describe these . . . as: 'gain (or loss) from the sale or exchange of property which is not a capital asset'"); *see also* Appellant's Brief at 15-16.

[10] On review, *Mingo* and *George Edward Quick's Trust* were affirmed on statutory bases other than Code section 751. *Mingo v. Commissioner*, 773 F.3d 629 (5th Cir. 2014) (relying on Code section 453); *George Edward Quick's Trust v. Commissioner*, 444 F.2d 90 (8th Cir. 1971) (relying on Code sections 691 and 1014).

## II.    Section 751 does not change the property sold.

### A.    Section 751 changes the character of gain, nothing more.

Although the Commissioner goes to great lengths to explain that

section 751(a) is an exception to section 741 going beyond character, the cases he

cites actually support Mrs. Rawat's position that it refers to the sale of a single

property and only determines the character of a portion of the resulting gain.  For

instance, *Ware v. Commissioner*, 906 F.2d 62 (2d Cir. 1990), is only about

characterization, *i.e.*, "'[w]hether *payment* received by petitioner . . . for his

withdrawal from the law partnership . . . is *characterized* as *ordinary income or

capital gain*.'"  *Id.* at 66 (emphases added).[11]  The Second Circuit emphasized that

section 751(a) provides an "exception to *capital gain treatment*."  *Id.* at 64

(emphasis added).[12]  It explained: "The *proceeds* from a sale of *an interest in a*

_____

[11] Appellee's Brief at 17.  The full phrase the Commissioner selectively quoted is:

> [T]he Tax Court framed the issue more broadly: 'Whether payment received
> by petitioner . . . for his withdrawal from the law partnership . . . is
> *characterized as ordinary income or capital gain*.'   Most significantly,
> section 741 of the Code, which entitles a partner to *treat the sale of his
> partnership interest as capital gain*, bears on its face an explicit exception for
> unrealized receivables under section 751.

*Ware*, 906 F.2d at 66 (emphases added).

[12] The Court explained that the exception addresses the collapsible partnership
problem: "Without the unrealized receivable *exception to capital gain
treatment* . . . members of a partnership could . . . treat their otherwise ordinary

9

*partnership* are generally *treated as capital gain*, except to the extent that they are attributable to 'unrealized receivables,' which are *treated as ordinary income*. *See* 26 U.S.C. §§ 741, 751(a)(1)." *Id.* at 64 (emphases added). *Ware* has no holding on the (entity v. aggregate) nature of a partnership interest; it does not say that the taxpayer actually sold unrealized receivables; and it does not address sourcing whatsoever.

Likewise, *United States v. Woolsey*, 326 F.2d 287, 292 (5th Cir. 1964), interprets sections 741 and 751 only to determine the character of gain, and its holding remands the case with an instruction to "fragmentize the *consideration*" (in the sense of "amount received") by "determining *what portion of the consideration*" is "ordinary income." (Emphasis added.) Nonetheless, the Commissioner quotes the court's recitation of legislative history,[13] though *Woolsey* (like *Ware*) has no holding about the nature of the partnership interest itself nor the

___

income as capital gains arising out of the partners' sales of their interests in the partnership." *Ware*, 906 F. 2d at 64 (emphasis added).

[13] The Commissioner attributes the term "sever[ed]" to *Woolsey*, 326 F.2d at 292 n.7, but *Woolsey* is only quoting in a footnote from a paragraph of the legislative history regarding character as a result of the collapsible partnership problem. The sentence preceding the use of the word "severable" makes this clear: "The sale of a partnership interest or distributions to partners should not be permitted to change the character of this income." S. REP. NO. 83-1622 at 99 (1954).

sourcing of the resulting gain.  Appellee's Brief at 18;[14] *Woolsey*, 326 F.2d at 291, n.7 (quoting the 1954 legislative history on collapsible partnerships).  *Woolsey* does not hold, and no case has ever held, that section 751 results in gain on the sale of a partnership interest being treated as gain from the actual sale of inventory under section 865(b).

Lastly, the Commissioner cites *Glade Creek Partners, LLC v. Commissioner*, T.C. Memo. 2023-82, T.C.M. (RIA) 2023-082 (2023), another case regarding the character of income.  Appellee's Brief at 30.  In *Glade Creek*, the Tax Court employed various descriptions of section 751, including that it is an "exception that requires taxpayers to report *the sale of a partnership interest* as resulting in ordinary income or loss if the partnership holds inventory." *Glade Creek Partners, LLC* at 667 (emphasis added).  *Glade Creek* holds only that "[t]he *character* of gain or loss under section 751 is an affected item." *Id*. at 667, n.10 (emphasis added).

The above cases only demonstrate that section 751 changes the character of a portion of the gain on the sale of a partnership interest.  It does not transmogrify the property that was sold.  What's more, the cases have nothing to do with source or Subchapter N.

---

[14]  The Commissioner's summary of *Woolsey* on pages 28-29 of his brief is correct only insofar as it pertains to the ordinary character of inventory gain.

## B.    Courts have not expanded the reach of section 751.

The Commissioner suggests that other cases, on the installment method of accounting for income and the statutory regime for stepped-up basis in the estate and gift tax area, show that section 751 has a reach beyond Subchapter K. While these cases assume that section 751 applies to change the character of income, that is where their actual determinations on section 751 end. They have no holding that a partnership interest is disaggregated; they have no holding that the nature or identity of the property sold is changed; and they have no holding on source. They shed no light on Mrs. Rawat's case.

The *Mingo* opinions the Commissioner cites, *Mingo v. Commissioner*, T.C. Memo. 2013-149, *aff'd*, 773 F.3d 629 (5th Cir. 2014), relate to the timing of the inclusion of income, based on the premise that all of the taxpayer's gain from the sale of the partnership interest was U.S. taxable income. The Fifth Circuit addressed the question of whether income can be both ordinary and reported under the installment method of accounting:[15] "[can] the installment method . . . be used to report the *portion of the partnership interest* attributable to unrealized receivables, *given its status as ordinary income*." *Mingo*, 773 F.3d at 634

---

[15] Code § 453.

(emphases added).  It stated its conclusion only with respect to proceeds already "classified as ordinary income."  *Id.* at 634[16]

*Mingo* simply confirms that section 751 changes the character of income, rendering the installment method unavailable.  It does not shed any light on whether section 751's characterization of gain changes the property being sold, or (again) the sourcing of the resulting income under section 865.

As for *George Edward Quick's Trust*, 54 T.C. 1336, it has little or no connection with this case.  It involves the step-up in basis governed by section 1014(a), and it relates to unrealized receivables because under section 691 they represent the right to receive income in respect of a decedent (a deceased partner), not because they are ordinary income resulting from the sale of a partnership interest under section 751.  *Id*. at 1344-45; *see also Woodhall v. Commissioner*, 454 F.2d 26 (9th Cir. 1972) (same issue), *aff'g*, T.C. Memo. 1969-279, 28 T.C.M.

---

[16] The conclusion in *Mingo* is consistent with IRS Publication 537, *Installment Sales*, which similarly focuses on character and uses language consonant with the holding of *Grecian Magnesite I* that a partnership interest was sold:

> *Sale of Partnership Interest*
>
> A partner who sells a partnership interest at a gain may be able to report the sale on the installment method.  The sale of a partnership interest is treated as the sale of a single capital asset*.*  The [section 751] *part of any gain or loss . . . will be treated as ordinary income*.

I.R.S. Pub. 537 (Cat. No. 15067V 2022) at 9 (emphasis added).

(CCH) 1438 (1968) (discussing sections 741 and 751 exclusively for the calculation of ordinary income). The Tax Court in *George Edward Quick's Trust* relied on statutes other than sections 741 and 751, and the Eighth Circuit affirmed on that basis: "§ 1014 *by its terms* requires separate treatment for those assets in the hands of the successor which are income in respect of a decedent." *George Edward Quick's Trust*, 444 F.2d at 92 (emphasis added), *aff'g*, 54 T.C. 1336 (1970). Thus, despite superficial similarities, *George Edward Quick's Trust* addresses a wholly different estate tax issue governed by unrelated statutes.

None of the above cases hold that section 751 effects a sale of inventory (or unrealized receivables) to which section 865(b) would apply. None of these cases offer a holding on sourcing.

Despite the irrelevant and narrow holdings of *Mingo* and *George Edward Quick's Trust*, the Commissioner raises the specter of a Circuit split. In contrast, ignoring the plain language of a statute would contravene established case law in every Circuit. *Hughes Aircraft Co.,* 525 U.S. at 438; *Nat'l R.R. Passenger Corp.,* 431 F.3d at 378. There is no foundation in *Mingo* and *George Edward Quick's Trust* for reading a "deemed sale" into sections 741, 751, or any other statute; rather, doing so would result in a novel holding. In *Grecian Magnesite II*, this Circuit affirmed the Tax Court's holding "reject[ing] the application of the aggregate theory, holding that Grecian's interest in the partnership was a single,

indivisible capital asset" for the purposes of applying section 865. *Grecian Magnesite II*, 926 F.3d at 822. Following this holding with respect to the entire partnership interest is logical and consistent with the above cases, with other cases on statutory interpretation, and with sections 741, 751, and 865 themselves.

### C. Section 751 does not transform Mrs. Rawat's sale of a partnership interest into a sale of inventory.

Appellee accuses Mrs. Rawat of "transform[ing] income attributable to U.S. inventory into foreign-source income . . . ." Appellee's Brief at 24. Quite the contrary, it is the Commissioner who seeks to "transform" the property that Mrs. Rawat sold into actual inventory itself, rather than simply acknowledging the sale of her partnership interest. If she had sold inventory, then section 865(b) would apply without the Commissioner's detour through section 751.

Section 751 does not provide for a "deemed" sale (and neither does section 741), and that cannot be read into a statute.[17] The cases that the Commissioner cites involve provisions that explicitly use the word "deemed," so they cannot provide any support for inserting "deemed" into sections 741 and

---

[17] *See Coggin*, 292 F.3d at 1331 (holding that plain statutory language precluded a "deemed" distribution); *Petroleum Corp. of Texas, Inc. v. United States*, 939 F.2d 1165, 1169 (5th Cir. 1991) (holding that plain statutory language precluded the "deemed" ownership of inventory).

751.[18]  Even *Rodman v. Commissioner*, 542 F.2d 845 (2d Cir. 1976), where the

taxpayer argued that there was "no deemed sale or exchange of *a partnership*

*interest*," is based on Treasury Regulation section 1.708-1, which expressly

provides for "deemed" distributions.  *Id.* at 855, n.12 (emphasis added).  Yet,

*Rodman* is the Commissioner's sole example of a case using the term "deemed

sale" to refer to what he identifies vaguely as "that same language in a related

Subchapter K provision."  Appellee's Brief at 32.  These so-called examples

undermine the Commissioner's position, as they in fact highlight the contrasting

language of section 751.[19]  As noted previously, Justice Gorsuch has cautioned

---

[18] The following cases cited on pages 32-33 of Appellee's Brief regarding "deem" all involve statutes that explicitly use the word "deem."  *Rosenthal v. Commissioner*, 416 F.2d 491 (2d Cir. 1969) (regarding section 631, which uses "deemed" twice); *Schudel v. Commissioner*, 563 F.2d 1300 (9th Cir. 1977) (also regarding section 631); *Fluor Corp. and Affiliates v. United States*, 126 F.3d 1397 (Fed. Cir. 1997) (interpreting "deem" because it is used in section 904, which uses "deem" or "deemed" nine times); *Dresser Indus., Inc. v. United States*, 238 F.3d 603 (5th Cir. 2001) (regarding both section 861, which uses "deemed" twice, and section 904); *Marquardt Co. v. United States*, 822 F.2d 1573 (Fed. Cir. 1987) (regarding section 338, which uses "deem" or "deemed" ten times).

[19] Moreover, the Commissioner's misleading framing is underscored by his reference to the definition of inventory in section 865(i)(2), which defines "sale" for the purpose of section 865 to include "exchange" or "disposition."  The Commissioner's brief picks a pointless fight that a "formal 'sale' of inventory" is not required; however, for section 865 to apply, a sale, exchange, or disposition of inventory *is* required.  Appellee's Brief at 23; Code § 865(b).  Here, the inventory held by the partnership was not sold, exchanged, or disposed of, and in fact it remained in the partnership the day after the sale just as it had the day before the sale of the partnership interest.

against reading into a statute language that "appears nowhere in the text . . . ." *SAS Inst., Inc.*, 138 S. Ct. at 1355.

Appellee asks this court to rewrite not just the statute but the applicable regulation as well. Until this particular occasion, the IRS has applied section 751 in a manner inconsistent with a deemed sale of specific inventory.[20] The instructions in Treasury Regulation section 1.751-1 start with the phrase "*Character of amount realized.*" Treas. Reg. § 1.751-1(a)(1). The Commissioner points out that "the amount of the selling partner's 'income' attributable to inventory is determined *in the same manner* as if the partnership had actually sold the inventory." Appellee's Brief at 23 (emphasis added). More accurately, the regulation determines ordinary income based not on the consequences of a partner's literal sale of specific inventory items but on a calculation of whether the aggregate value of all of the partnership's inventory has substantially appreciated compared to its aggregate adjusted basis.[21] Treas. Reg. § 1.751-1(d)(1). The

---

[20] Treas. Reg. § 1.751-1; Rev. Rul. 91-32, 1991-1 C.B. 107. *See also* Treas. Reg. § 1.864(c)(8)-1(b) (providing instructions on determining the character of gain under sections 741 and 751 independently of the source); *Grecian Magnesite I*, 149 T.C. at 78 (noting the Commissioner's argument that section 741's purview is limited to character); *see also* Appellant's Brief at 20-22.

[21] The preeminent partnership treatise describes the calculation as follows: "the starting point is the fair market value of the § 751 assets to the partnership, rather than the fair market value of the transferor-partner's share of these assets." William S. McKee et al., *Federal Taxation of Partnerships & Partners*, 1997

regulation provides for this calculation "even though the specific inventory items distributed may not be appreciated in value." Treas. Reg. § 1.751-1(d)(1). Thus, this is purely a calculation based on partnership-wide attributes like aggregate appreciation and adjusted basis, in order that "[a]ny gain or loss recognized that is attributable to section 751 property will be ordinary gain or loss." Treas. Reg. § 1.751-1(a)(2).

The Commissioner claims that this regulation provides for "analyzing a deemed or hypothetical sale of the partnership's property" in order to do this calculation. Appellee's Brief at 30. But, as with the statute, neither the word "deem" nor "hypothetical"[22] occur in Treasury Regulation section 1.751-1, which in fact consistently describes the partner as selling the partnership interest, and the

---

WL 663649, ¶ 17.02[3][a]; Treas. Reg. § 1.751-1(a)(2) ("if the partnership had sold all of its property").

[22] The Commissioner conflates the meaning of "deemed" and "hypothetical." *See* Appellant's Brief at 33-34, including n.23. According to Black's Law Dictionary, the relevant definition of "hypothetical" is "[i]nvolving tentative theory or supposition adopted provisionally . . . ." *Hypothetical*, adj., Black's Law Dictionary (11th ed. 2019). The relevant definition of "deem" is "[t]o treat (something) as if (1) it were really something else . . . ." *Deem*, vb., Black's Law Dictionary (11th ed. 2019) (def. 1). A "hypothetical" sale supports Mrs. Rawat's position: inventory was not actually sold, or even "deemed" to have been sold, but a provisional calculation related to the partnership's inventory is employed to determine the amount of ordinary income. The discussion in the leading partnership taxation treatise, William S. McKee et al., *Federal Taxation of Partnerships & Partners*, 1997 WL 663649, ¶ 17.02, uses the word "hypothetical" repeatedly, but never uses the word "deem."

partnership as holding the inventory.  *E.g.*, Treas. Reg. § 1.751-1(a)(3) ("[a]

partner selling or exchanging any part of an interest in a partnership that has any

section 751 property . . . must submit [a statement]").[23]  There is simply no basis in

the statute or regulation for finding that Mrs. Rawat actually sold something other

than the partnership interest she actually sold.

### III.    Section 865(a), not (b), applies to Mrs. Rawat's sale of her partnership interest.

Under section 865(a), income from a nonresident's sale of a partnership

interest is foreign source because "[i]ncome from the sale of personal

property . . . by a nonresident shall be sourced outside the United States."  *See*

*Grecian Magnesite I*, 149 T.C. 63.  The Commissioner's attempt to apply section

865(b), which governs the source of income from the actual sale of inventory, does

not apply because, regardless of the character of Mrs. Rawat's gain on the sale of

her partnership interest, Mrs. Rawat did not actually sell inventory.

### A.    Section 751 is not a backdoor into section 865(b).

In *Grecian Magnesite I*, the Tax Court examined Subchapter K for support

that a partnership interest was the property sold for the purposes of section 865.

That applies equally here.  The inventory gain exception in Subchapter K regarding

the characterization of certain gain is not in tension with *Grecian Magnesite I*'s

---

[23] The regulation's language conflicts with the conclusion drawn by Appellee's Brief at page 33, note 6.

conclusion that section 741 supports the application of section 865(a) to the sale of a partnership interest.

The cases the Commissioner cites do not further inform how section 741 relates to the sourcing provisions, yet they are illuminating on other matters. First, the Commissioner cites *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84 (1934), which, despite addressing the 1921 version of section 861, has more than one relevant holding on statutory interpretation. In interpreting a "word or clause," the Supreme Court emphasized the importance of "the context, the general purposes of the statute in which it is found, [and] the occasion and circumstances of its use . . . ." *Id.* at 94. Regarding exceptions to general statutory rules, the Supreme Court further provided "[w]e cannot assent to the view that Congress has written into the law an exception of such importance in a manner so indirect and casual." *Id.* at 93. In view of these rules, it is doubtful that the *Stockholms Enskilda Bank* court would have taken an exception specifically designed to avoid converting ordinary income into capital gain and applied it in another context to justify using a sourcing exception that *literally* does not apply.

Surprisingly, the Commissioner next cites *Hay v. Commissioner*, 145 F.2d 1001 (4th Cir. 1944), which held that a characterization statute did *not* affect the application of a sourcing statute because "*the primary purpose* of [the former] was to provide for the determination of the *amount of gain* resulting from a

complete distribution and to direct that it be *taxed as a capital gain . . . .*" *Id.*
at 1006 (emphases added).  And in *Charron v. United States*, 200 F.3d 785 (Fed.
Cir. 1999), also cited by Appellee, the court applied the rules on expense
deductions set forth in section 162 and 274 to determine what deductions are
allowable to a nonresident alien pursuant to section 873.  *Charron* does not find
that sections 162 and 274 change the nature of the property sourced; indeed,
property is not sourced under section 873.

All of these cases examine statutes not at issue in this case but are
nevertheless helpful to Mrs. Rawat.  *Stockholms Enskilda Bank* supports
circumspect restraint in statutory interpretation.  *Hay* supports limiting the scope of
characterization provisions to characterization.  *Charron* supports using the Code
with internal consistency.  Thus, these cases are supportive of, and consistent with,
Mrs. Rawat's position that in light of Subchapter K, including but unaffected by
the inventory gain exception of section 751, Mrs. Rawat has foreign source gain on
the sale of the property she sold, a partnership interest, under section 865(a).

The differently drafted inventory gain exceptions[24] in sections 751 and 865
further highlight the error in the Commissioner's position.  Section 865(b) applies

---

[24] The fact that these exceptions were not intended to be applied jointly is
evidenced by these two inventory gain exceptions having noncoextensive
definitions of "inventory," indicating that, regardless of overlap, they are simply

when a taxpayer actually sells inventory. But the Commissioner's contention that section 751 may cause section 865(b) to also apply when a taxpayer did not actually sell inventory is erroneous. It does not harmonize Subchapters K and N, unlike *Grecian Magnesite I*, and it does not satisfy the statutory interpretation guidance in the cases the Commissioner cites. Rather, interpreting the inventory gain exceptions in the two provisions according to their differing language and purposes is necessary for overall coherence. Section 865(b) cannot apply to any of Mrs. Rawat's gain, because she did not sell inventory; she sold a partnership interest.

## B. The Commissioner concedes that Mrs. Rawat's partnership interest is "personal property" under Subchapter N.

The Commissioner states, quite early in its brief, what sounds like a concession in the following full paragraph:

> Within Subtitle A of the Code (covering "Income Taxes"), Subchapter N provides specific rules for determining the source—U.S. or foreign—of a variety of types of income. *See* I.R.C. §§ 861-865. *The parties here agree that Rawat's partnership interest was considered "personal property" under those rules.* (Doc. 79 at 11.) The source rules provide that income from personal property sales by nonresidents generally "shall be sourced outside the United States." I.R.C. § 865(a)(2). That general rule, however, is subject to an exception for "income derived from the sale of inventory property." I.R.C. § 865(b).

---

directed at different issues. Code § 865(i)(1); *c.f.* Code § 751(d); *see* Appellant's Brief at 32, n.22.

Appellee's Brief at 14 (emphasis added).  The Tax Court had put it thus: "The parties concur that a partnership interest is 'personal property' . . . ." *Rawat v. Commissioner,* T.C. Memo. 2023-14 (Feb. 7, 2023) at 11 ("*Rawat*").  The Commissioner's statement goes much further in that it specifically acknowledges that Mrs. "*Rawat's* partnership interest was considered personal property under those rules [in sections 861 to 865]," *i.e.*, that Mrs. Rawat sold a partnership interest for purposes of section 865.

But then, the remainder of the Commissioner's brief takes Mrs. Rawat, a Canadian investor, on a circuitous route from section 865(a), in which a partnership interest is personal property, to section 741, then section 751(a), then back to section 865—but this time landing on section 865(b).  By leaving the sourcing rules in Subchapter N and filtering the partnership interest through section 751(a) (even though it expressly applies only within Subchapter K), the Commissioner finds a way back to Subchapter N with a different property to analyze afresh—claiming there is no longer a partnership interest, but inventory, that was sold.

The convoluted nature of the Commissioner's theory contrasts sharply with the Commissioner's straightforward admission that Mrs. Rawat's partnership interest is personal property under section 865.  But as the Eleventh Circuit put it in *Coggin*, "the statute just does not do what the litigation position of the

Commissioner would have it do." *Coggin*, 292 F.3d at 1333. Even where a portion of the gain on the sale of a partnership interest is allocable to inventory, there simply is no support for applying Code section 865(b) to any of the gain. It remains gain from the sale of a partnership interest, which is (intangible) personal property sourced under section 865(a).

### C.     Partnership tax experts agree that section 865(a) applies to the sale of an interest in a partnership that holds inventory.

The partnership tax bar[25] has been following the apparent departure from *Grecian Magnesite I* that the *Rawat* holding represents. It has expressed consternation at the Tax Court's handspring from determining that the property sold is an interest in a partnership to finding that "[d]eeming a sale of the inventory is called for by section 751" (*Rawat*, T.C. Memo. 2023-14 at 16). Kristen Parillo, *IRS Wants to Push Pause on Entry of Final Decision in Rawat*, TAX NOTES INTERNATIONAL, vol. 110 (May 8, 2023). The article explained, "The tax community has been closely following the developments in *Rawat* because of what

---

[25] *E.g.*, Monte A. Jackel, *Partnership Aggregate-Entity Cases, Rulings, and Analysis*, TAX NOTES FEDERAL, vol. 178 (Mar. 27, 2023); Jeffrey L. Gould, *Day of the Jackel: Rawat v. the Code*, TAX NOTES FEDERAL, vol. 179 (Apr. 3, 2023) (letter to the editor); Robert Willens, *Response to Monte Jackel on Rawat*, TAX NOTES FEDERAL, vol. 178 (Feb. 20, 2023) (letter to the editor); Monte A. Jackel, *Grecian Magnesite and Its Offspring: Is Rawat Correct?*, TAX NOTES FEDERAL, vol. 178 (Feb. 13, 2023); Kimberly S. Blanchard, *You Missed a Spot: The Tax Court's Error in Rawat*, TAX NOTES FEDERAL, vol. 110 (June 5, 2023).

some partnership tax specialists view as the court's misinterpretation of section

751." *Id*. at 810.  In a follow-up article, Kristen Parillo elaborated:

> "Most of the partnership bar does not view section 751 as a fragmentation rule," said [Kimberly S.] Blanchard.  Rather, they view the exception . . . as only excepting hot assets from capital gain treatment, not turning off section 741 entirely . . . "So instead of having capital gain, you have ordinary income . . . . And there's nothing in the code or regulations that suggest that that's not the end of it, really."

Kristen Parillo, *IRS Attorney: Statute Backs Court's Aggregate Approach in Rawat: Partnership Bar's Disagreement*, TAX NOTES INTERNATIONAL, vol. 110 at 958 (May 15, 2023).

A staff person at the IRS Office of Associate Chief Counsel (International) observed that *Rawat*'s holding has limited impact on the source of inventory gain due to the enactment of section 864(c)(8) governing sales occurring after December 26, 2018, so the lasting effect of *Rawat* will be in its "broader implications beyond just this issue of sourcing with respect to section 751." Kristen Parillo, *Tax Court's Rawat Opinion May Go Beyond Sourcing Rules*, TAX NOTES INTERNATIONAL, vol. 110 at 654 (May 1, 2023).  Natasha Khemani of Deloitte Tax LLP expressed concern that if *Rawat* stands, "[t]horny questions could arise in other contexts, such as those involving international provisions like subpart F, state sourcing provisions, and compliance and reporting."  *Id*. at 654. The partnership tax bar thus has grave concerns about the ramifications of the Tax Court's ruling.

# CONCLUSION

Mrs. Rawat, a nonresident alien, sold her interest in a partnership. *Grecian Magnesite I* held that income from the sale of a partnership interest is sourced as income from personal property under section 865(a). Mrs. Rawat is aware of no case that holds that a partner's sale of her partnership interest is anything but a sale of a partnership interest, or that the resulting income can be sourced as anything but income from personal property under section 865(a).

Mrs. Rawat did not sell the partnership's actual inventory, which remained in the partnership. Section 751 by its own terms does not deem a partner who sold her partnership interest to have in fact sold inventory; rather, it characterizes a portion of the gain as ordinary income. Treasury Regulation section 1.751-1 does not calculate the amount of ordinary gain attributable to inventory in a manner that is consistent with a deemed sale of specific inventory by a partner.

The logic of *Grecian Magnesite I* applies equally to non-inventory gain and inventory gain, notwithstanding the latter's ordinary character under section 751. It remains gain from Mrs. Rawat's sale of her partnership interest, and it is therefore foreign source to Mrs. Rawat under section 865(a). The same property was sold, a partnership interest, so the same sourcing rule applies, section 865(a). As this Court expressly stated in *Grecian Magnesite I*, the sale of a partnership

interest is "the disposition of a single asset, and . . . we apply the provisions of section 865 accordingly." *Grecian Magnesite I*, 149 T.C. at 82.

For the above reasons and those stated in Appellant's initial brief, the Tax Court's opinion was erroneous, and its order and decision should be reversed.

Respectfully Submitted,


/s/ Christopher S. Rizek
Christopher S. Rizek
Caplin & Drysdale, Chartered
1 Thomas Circle NW
Suite 1100
Washington, D.C. 20005
T: (202) 862-8852 / F: (202) 429-3301
crizek@capdale.com


/s/ Nathan J. Hochman
Nathan J. Hochman
Ross LLP
1900 Avenue of the Stars
Suite 1225
Los Angeles, CA 90067
T: (424) 704-5600 / F: (424) 704-5680
nhochman@rossllp.la

November 28, 2023

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i), applicable pursuant to D.C. Circuit Rule 28(c), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1):

   [X] this document contains 6,490 words, or

   [ ] this brief uses a monospaced typeface and contains [state the number of] lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:
   [X] this document has been prepared in a proportionally spaced typeface using  in Microsoft Word for Microsoft Office 16 in Times New Roman, size 14, or
   [ ] this document has been prepared in a monospaced typeface using _____ with _____.

(s) <u>Christopher S. Rizek</u>
Attorney for _____<u>Indu Rawat</u>_____
Dated: November 28, 2023