# United States Court of Appeals
# for the District of Columbia Circuit

## No. 23-1142

INDU RAWAT,

*Appellant,*

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Appellee.*

*On Appeal from the Decision of the United States Tax Court*

## JOINT APPENDIX

DAVID A. HUBBERT
*Deputy Assistant Attorney General*
JACOB E. CHRISTENSEN
DOUGLAS C. RENNIE
TAX DIVISION, DEPARTMENT OF JUSTICE
P.O. Box 502
Washington, DC 20044
(202) 307-0878

*Counsel for Appellee*

NATHAN J. HOCHMAN
ROSS LLP
1900 Avenue of the Stars, Suite 1225
Los Angeles, CA 90067
(424) 704-5600

CHRISTOPHER S. RIZEK
LEILA D. CARNEY
CAPLIN & DRYSDALE
One Thomas Circle NW, Suite 1100
Washington, DC 20005
(202) 862-5000

*Counsel for Appellant*

December 5, 2023

# JOINT APPENDIX

## TABLE OF CONTENTS

### Tax Court Docket Entries

| Date | Description | Page |
|---|---|---|
|  | Tax Court Docket Sheet | A1 |
| 07/07/2016 | Document No. 1, Petition | A16 |
| 11/04/2016 | Document No. 5, Answer | A42 |
| 08/28/2017 | Document No. 16, Joint Status Report | A85 |
| 12/14/2017 | Document No. 18, Joint Status Report | A91 |
| 04/25/2018 | Document No. 20, Joint Status Report | A95 |
| 07/10/2019 | Document No. 29, Joint Status Report | A99 |
| 10/08/2019 | Document No. 31, Joint Status Report | A104 |
| 12/20/2019 | Document No. 33, Memorandum in Support of Petitioner's Motion for Summary Judgment | A110 |
| 03/02/2020 | Document No. 40, Respondent's Declaration of S. Katy Lin in Support of Response to Motion for Summary Judgment | A125 |
| 04/03/2020 | Document No. 43, Petitioner's Reply to Memorandum in Support of Response to Motion for Summary Judgment | A260 |
| 04/20/2020 | Document No. 53, Respondent's First Amended Response to Motion for Summary Judgment | A286 |
| 07/24/2020 | Document No. 54, Respondent's Report | A290 |
| 08/18/2020 | Document No. 55, Joint Stipulation of Settled Issues | A293 |
| 07/20/2021 | Document No. 58, Order | A297 |
| 08/18/2021 | Document No. 61, Petitioner's Motion for Reconsideration of Petitioner's Motion for Summary Judgment | A309 |
| 07/28/2022 | Document No. 70, Order | A332 |
| 08/23/2022 | Document No. 71, Second Joint Stipulation of Settled Issues | A340 |
| 09/09/2022 | Document No. 73, Order | A343 |
| 02/07/2023 | Document No. 79, Memorandum Opinion | A344 |
| 02/07/2023 | Document No. 80, Order | A364 |
| 04/13/2023 | Document No. 83, Third Stipulation of Settled Issues | A365 |
| 04/17/2023 | Document No. 85, Motion for Entry of Decision | A370 |

| 04/18/2023 | Document No. 87, Fourth Stipulation of Settled Issues | A379 |
|------------|------------------------------------------------------|------|
| 05/22/2023 | Document No. 95, Order and Decision | A383 |
| 05/31/2023 | Document No. 96, Notice of Appeal | A385 |



# United States Tax Court
Washington, DC 20217

| Indu Rawat, Petitioner v. Commissioner of Internal Revenue, Respondent | Docket No. 15340-16 |
|---|---|

### **Printable Docket Record**

| Name | Counsel |
|---|---|
| Indu Rawat | Christopher S. Rizek (RC0369) |
| | crizek@capdale.com |
| | 202-862-8852 |
| | Nathan J. Hochman (HN0101) |
| | nhochman@bgrfirm.com |
| | 310-274-7100 |

| Respondent Counsel | Respondent Counsel Contact |
|---|---|
| Shan-Zu Katy Lin | s.katy.lin@irscounsel.treas.gov |
| | 313-234-1780 |
| Douglas C. Rennie | douglas.c.rennie@usdoj.gov |
| | 202-305-7546 |
| James M. Cascino | james.m.cascino@irscounsel.treas.gov |
| | 312-368-8654 |
| Eric R. Skinner | eric.r.skinner@irscounsel.treas.gov |
| | 313-234-1851 |
| H. Barton Thomas | barton.thomas@irscounsel.treas.gov |
| | 312-368-8155 |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|---|---|---|---|---|---|---|---|
| 1 | 07/07/16 | P | **PETITION FILED by Petr. Indu Rawat: FEE PAID** | See Filings and Proceedings | | 07/12/16 | R |
| 2 | 07/07/16 | RQT | **REQUEST FOR PLACE OF TRIAL AT** | See Filings and | | 07/12/16 | R |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
|  |  |  | **WASHINGTON, DC by Petr. Indu Rawat** | Proceedings |  |  |  |
| 3 | 08/15/16 | M011 | **MOTION FOR EXTENSION OF TIME TO 11/8/16 TO ANSWER by Resp. (NO OBJECTION)** | See Filings and Proceedings | GRM 08/15/2016 | 08/15/16 | P |
| 4 | 08/15/16 | MISC | **GRANTED MOTION FOR EXTENSION OF TIME TO 11/8/16 TO ANSWER** | See Filings and Proceedings |  | 08/16/16 | B |
| 5 | 11/04/16 | A | **ANSWER by Resp. (EXHIBITS)** | See Filings and Proceedings |  | 11/04/16 | P |
| 6 | 11/21/16 | NCA | **NOTICE OF CHANGE OF ADDRESS by Counsel Michael J. Desmond** | See Filings and Proceedings |  | 11/21/16 | R |
| 7 | 02/09/17 | M059 | **MOTION TO CHANGE PLACE OF TRIAL TO DETROIT, MI by Resp. (NO OBJECTION)** | See Filings and Proceedings | GRM 02/09/2017 | 02/09/17 | P |
| 8 | 02/09/17 | MISC | **GRANTED MOTION TO CHANGE PLACE OF TRIAL TO DETROIT, MI by Resp.** | See Filings and Proceedings |  | 02/10/17 | B |
| 9 | 04/27/17 | NTD | **NOTICE OF TRIAL ON 9/18/2017 AT DETROIT, MI.** |  |  | 04/27/17 | B |
| 10 | 04/27/17 | SPTO | **STANDING PRE-TRIAL ORDER ATTACHED TO NOTICE OF TRIAL** |  |  | 04/27/17 | B |
| 11 | 06/21/17 | M006 | **MOTION FOR CONTINUANCE OF TRIAL GENERALLY by Resp. & Petr. Indu Rawat (NO OBJECTION)** | See Filings and Proceedings | GRM 06/22/2017 |  |  |

A2

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 12 | 06/22/17 | MISC | **GRANTED MOTION FOR CONTINUANCE OF TRIAL GENERALLY by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | 06/23/17 | B |
| 13 | 07/12/17 | OAJ | **ORDER THAT CASE IS ASSIGNED TO JUDGE GUSTAFSON . FOR TRIAL OR OTHER DISPOSITION.** | | | 07/12/17 | B |
| 14 | 07/18/17 | O | **ORDER PARTIES BY 8-31-17 FILE A JOINT STATUS REPORT.** | | | 07/19/17 | B |
| 15 | 08/28/17 | RPT | **STATUS REPORT by Resp. (STRICKEN)** | See Filings and Proceedings | | 08/28/17 | P |
| 16 | 08/28/17 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |
| 17 | 08/29/17 | O | **ORDER STATUS REPORT FILED 8/28/17 (INDEX NO 15) IS STRICKEN FROM RECORD. PARTIES BY 12/30/17 FILE A STATUS REPORT.** | | | 08/31/17 | B |
| 18 | 12/14/17 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |
| 19 | 12/14/17 | O | **ORDER PARTIES BY 4/30/18 FILE A JOINT STATUS REPORT.** | | | 12/15/17 | B |
| 20 | 04/25/18 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |
| 21 | 04/26/18 | O | **ORDER PARTIES BY 7/26/18, AND EVERY 90 DAYS THEREAFTER,** | | ORD 04/06/2020 | 04/26/18 | B |

A3

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| | | | **SHALL FILE A JOINT STATUS REPORT. (VACATED)** | | | | |
| 22 | 05/09/18 | EA | **ENTRY OF APPEARANCE by Counsel Christopher S. Rizek for Petr. Indu Rawat** | See Filings and Proceedings | | 05/09/18 | B |
| 23 | 05/15/18 | M112 | **MOTION TO WITHDRAW AS COUNSEL by Michael J. Desmond for Petr. Indu Rawat (NO OBJECTION)** | See Filings and Proceedings | GRM 05/24/2018 | 05/15/18 | R |
| 24 | 05/24/18 | MISC | **GRANTED MOTION TO WITHDRAW AS COUNSEL by Counsel Michael J. Desmond** | See Filings and Proceedings | | 05/24/18 | B |
| 25 | 07/20/18 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |
| 26 | 10/24/18 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |
| 27 | 01/22/19 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |
| 28 | 04/15/19 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |
| 29 | 07/10/19 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | 07/10/19 | P |
| 30 | 09/19/19 | EA | **ENTRY OF APPEARANCE by Counsel Nathan J. Hochman for Petr. Indu Rawat** | See Filings and Proceedings | | 09/19/19 | B |

A4

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 31 | 10/08/19 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |
| 32 | 12/20/19 | M034 | **Motion for Summary Judgment (Objection)** (Objection) | Petr. Indu Rawat | Granted in Part - ORD 7/28/2022 & Denied in Part - ORD 02/07/2023 | 12/20/19 | R |
| 33 | 12/20/19 | MISP | **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT by Petr. Indu Rawat** | See Filings and Proceedings | | 12/20/19 | R |
| 34 | 12/26/19 | O | **ORDER THAT RESPONDENT BY 1/31/20 SHALL FILE A REPLY TO PETITIONER'S MOTION FOR SUMMARY JUDGMENT. PETITIONER BY 2/28/20 SHALL FILE A REPLY TO RESPONDENT'S RESPONSE. IF RESPONDENT FILES A CROSS-MOTION, THEN PETITIONER'S REPLY DUE BY 2/28/20 SHALL INCLUDE A RESPONSE TO THE CROSS-MOTION AND RESPONDENT BY 3/27/20 SHALL FILE A REPLY.** | | | 12/26/19 | B |
| 35 | 01/06/20 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |

A5

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 36 | 01/27/20 | M011 | **MOTION FOR EXTENSION OF TIME by Resp. (OBJECTION)** | See Filings and Proceedings | ORD 01/28/2020 | 01/27/20 | P |
| 37 | 01/27/20 | OPPO | **OPPOSITION TO MOTION FOR EXTENSION OF TIME by Petr. Indu Rawat** | See Filings and Proceedings | | 01/27/20 | R |
| 38 | 01/28/20 | O | **ORDER RESP. MOTION FOR EXTENSION OF TIME IS GRANTED IN THAT RESP. BY 3/2/20 FILE A RESPONSE TO MOTION FOR SUMMARY JUDGMENT. PETR. FILE A REPLY TO RESPONSE TO MOTION BY 4/3/20.** | | | 01/28/20 | B |
| 39 | 03/02/20 | RSP | **RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp.** | See Filings and Proceedings | | 03/02/20 | P |
| 40 | 03/02/20 | DCL | **DECLARATION OF S. KATY LIN IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp. (EXHIBITS)** | See Filings and Proceedings | | 03/02/20 | P |
| 41 | 03/02/20 | MISP | **MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp.** | See Filings and Proceedings | | 03/02/20 | P |
| 42 | 04/03/20 | RPT | **STATUS REPORT by Resp. & Petr. Indu Rawat** | See Filings and Proceedings | | | |

A6

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 43 | 04/03/20 | MISC | **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT by Petr. Indu Rawat** | See Filings and Proceedings | | 04/03/20 | R |
| 44 | 04/06/20 | O | **ORDER THAT THE ORDER DATED 4/26/18 IS VACATED AND STATUS REPORTS NO LONGER NEED TO BE FILED AS ORDERED THEREIN.** | | | 04/06/20 | B |
| 45 | 04/07/20 | NODC | **NOTICE OF DOCKET CHANGE OF REPLY TO MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT BY PETR. INDU RAWAT FILED 04/03/2020. THE DOCKET ENTRY TEXT WAS CHANGED TO BE A REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT.** | | | 04/07/20 | B |
| 46 | 04/17/20 | M115 | **MOTION FOR LEAVE TO FILE FIRST AMENDED RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp. (NO OBJECTION)** | See Filings and Proceedings | GRM 04/20/2020 | 04/17/20 | P |
| 47 | 04/17/20 | MISCL | **FIRST AMENDED RESPONSE TO MOTION FOR SUMMARY** | See Filings and Proceedings | | 04/17/20 | P |

A7

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| | | | JUDGMENT by Resp. (ELODGED) | | | | |
| 48 | 04/17/20 | M115 | **MOTION FOR LEAVE TO FILE FIRST AMENDED MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp. (NO OBJECTION)** | See Filings and Proceedings | GRM 04/20/2020 | 04/17/20 | P |
| 49 | 04/17/20 | MISCL | **FIRST AMENDED MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp. (ELODGED)** | See Filings and Proceedings | | 04/17/20 | P |
| 50 | 04/20/20 | MISC | **GRANTED MOTION FOR LEAVE TO FILE FIRST AMENDED MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp.** | See Filings and Proceedings | | 04/20/20 | B |
| 51 | 04/20/20 | MISC | **FIRST AMENDED MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp.** | See Filings and Proceedings | | 04/20/20 | P |
| 52 | 04/20/20 | MISC | **GRANTED MOTION FOR LEAVE TO FILE FIRST AMENDED RESPONSE TO MOTION FOR** | See Filings and Proceedings | | 04/20/20 | B |

A8

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
|  |  |  | **SUMMARY JUDGMENT by Resp.** |  |  |  |  |
| 53 | 04/20/20 | MISC | **FIRST AMENDED MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp.** | See Filings and Proceedings |  | 04/20/20 | P |
| 54 | 07/24/20 | RTP | **REPORT by Resp.** | See Filings and Proceedings |  | 08/17/20 | P |
| 55 | 08/18/20 | STST | **STIPULATION OF SETTLED ISSUES by Resp. & Petr. Indu Rawat** | See Filings and Proceedings |  |  |  |
| 56 | 04/07/21 | NCAP | **Notice of Change of Address and Telephone Number for Shan-Zu Katy Lin** |  |  | 04/07/21 | B |
| 57 | 04/07/21 | NCAP | **Notice of Change of Address and Telephone Number for Eric R. Skinner** |  |  | 04/07/21 | B |
| 58 | 07/20/21 | O | **Order petr. motion for summary judgment is granted in part as to the Non-Inventory gain issue that resp. concedes and is denied in part as to the Inventory Gain issue. Parties by 08/06/2021 file a joint status report that include their recommendations as to further proceedings in this case.** |  | ORD 07/28/2022 | 07/20/21 | B |
| 59 | 07/26/21 | RPT | **Status Report** | Resp. & Petr. Indu |  | 07/26/21 | B |

A9

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| | | | | Rawat | | | |
| 60 | 07/28/21 | O | **Order that the parties' request is granted and that second "Ordered" paragraph of our Order of 07/20/2021 is amended to require that the status report be filed no later than 09/13/2021.** | | | 07/28/21 | B |
| 61 | 08/18/21 | M000 | **Motion for Reconsideration of Petitioner's Motion for Summary Judgment (Attachment(s)) (Attachment(s))** | Petr. Indu Rawat | ORD 07/28/2022 | 08/18/21 | B |
| 62 | 08/24/21 | NODC | **Notice of Docket Change for Docket Entry No. 61** | | | 08/24/21 | B |
| 63 | 08/26/21 | O | **Order resp. by 09/23/2021 file a response to the motion for reconsideration. Petr. by 10/22/2021 file a reply to the respondent's response to the motion for reconsideration.** | | | 08/26/21 | B |
| 64 | 09/13/21 | RPT | **Status Report** | Resp. & Petr. Indu Rawat | | 09/13/21 | B |
| 65 | 09/13/21 | EA | **Entry of Appearance for Respondent** | Resp. | | 09/13/21 | B |
| 66 | 09/23/21 | RSP | **Response to Motion for Reconsideration of Petitioner's Motion for Summary Judgment** | Resp. | | 09/23/21 | B |
| 67 | 10/18/21 | M011 | **Motion for Extension of Time (No Objection) (No Objection)** | Petr. Indu Rawat | ORD 10/20/2021 | 10/18/21 | B |

A10

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| 68 | 10/20/21 | O | **Order petr. motion for extension of time filed 10/18/2021 is granted and time to reply is extended to 11/05/2021** | | | 10/20/21 | B |
| 69 | 10/29/21 | REPL | **Reply to Response to Motion for Reconsideration of Petitioner's Motion for Summary Judgment** | Petr. Indu Rawat | | 10/29/21 | B |
| 70 | 07/28/22 | O | **Order petr's motion for reconsideration filed 08/18/2021 is granted and the Court's Order served 07/20/21 is vacated in its entirety. Petr. motion for summary judgment filed 12/20/2019 is granted in part and denied in part as stated herein. Parties by 08/29/2022 file a joint status report that shall include their recommendations as to further proceedings in this case.** | | Vacated in Part -- See 09/09/22 Order | 07/28/22 | B |
| 71 | 08/23/22 | STST | **Stipulation of Settled Issues** | Resp. & Petr. Indu Rawat | | 08/23/22 | B |
| 72 | 08/29/22 | RPT | **Status Report** | Resp. & Petr. Indu Rawat | | 08/29/22 | B |
| 73 | 09/09/22 | O | **Order the Court's 7/28/22 Order (Docket Index #70) is vacated in part, insofar as it denied in part petr's motion for summary judgment. The Inventory Gain Issue remains unresolved and petr's motion addressing** | | | 09/09/22 | B |

A11

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| | | | it remains pending and is taken under advisement as to remaining Inventory Gain Issue. | | | | |
| 74 | 11/14/22 | M115 | **Motion for Leave to File First Supplement to FIRST AMENDED MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp. (Objection)** (Objection) | Resp. | ORD 11/22/22 | 11/14/22 | B |
| 75 | 11/14/22 | MISCL | **First Supplement to FIRST AMENDED MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT by Resp. (Lodged)** (Lodged) | Resp. | | 11/14/22 | B |
| 76 | 11/22/22 | O | **Order the Motion for Leave to file First Supplement to First Amended Memorandum in Support of Response to Motion for Summary Judgment is granted and the First Supplement to First Amended Memorandum is filed. Petr. by 12/5/22 may file a 6-page reply to resp's supplement.** | | | 11/22/22 | B |
| 77 | 11/22/22 | SPMT | **First Supplement To First Amended Memorandum in Support of Response to Motion for Summary Judgment** | Resp. | | 11/22/22 | B |

A12

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 78 | 12/05/22 | REPL | **Reply to First Supplement To First Amended Memorandum in Support of Response to Motion for Summary Judgment** | Petr. Indu Rawat | | 12/05/22 | B |
| 79 | 02/07/23 | MOP | **Memorandum Opinion Judge Gustafson T.C. Memo. 2023-14 (An appropriate order will be issued.)** | | | 02/07/23 | B |
| 80 | 02/07/23 | O | **Order that petitioner's motion for summary judgment (Doc. 32) is hereby denied in remaining part as to the Inventory Gain issue. Parties, by 03/10/2023, shall file a joint status report.** | | | 02/07/23 | B |
| 81 | 03/10/23 | RPT | **Status Report** | Resp. & Petr. Indu Rawat | | 03/10/23 | B |
| 82 | 03/15/23 | O | **Order parties by 4/17/23 file the third stipulation of settled issues described in their recent status report and (b) shall file either the proposed decision document described in their recent status report, or status reports as stated herein.** | | | 03/15/23 | B |
| 83 | 04/13/23 | STST | **Stipulation of Settled Issues** | Resp. & Petr. Indu Rawat | | 04/13/23 | B |
| 84 | 04/17/23 | RPT | **Status Report** | Resp. & Petr. Indu Rawat | | 04/17/23 | B |

A13

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| 85 | 04/17/23 | M007 | **Motion for Entry of Decision (Attachment(s)) (Objection)** (Attachment(s)) (Objection) | Petr. Indu Rawat | ORD - 05/22/2023 | 04/17/23 | B |
| 86 | 04/18/23 | O | **Order that respondent, by 04/24/2023, shall file a response to petitioner's Motion for Entry of Decision. Petitioner, by 05/01/2023, shall file a reply to just-referenced response.** | | | 04/18/23 | B |
| 87 | 04/18/23 | STST | **Stipulation of Settled Issues** | Resp. & Petr. Indu Rawat | | 04/18/23 | B |
| 88 | 04/24/23 | RSP | **Response to Motion for Entry of Decision** | Resp. | | 04/24/23 | B |
| 89 | 04/24/23 | M115 | **Motion for Leave to File First Amended Response to Motion for Entry of Decision (No Objection)** (No Objection) | Resp. | ORD - 04/25/2023 | 04/24/23 | B |
| 90 | 04/24/23 | MISCL | **First Amended Response to Motion for Entry of Decision (Attachment(s)) (Lodged)** (Attachment(s)) (Lodged) | Resp. | | 04/24/23 | B |
| 91 | 04/25/23 | O | **Motion for Leave to File First Amended Response to Motion for Entry of Decision GRANTED** | | | 04/25/23 | B |
| 92 | 04/25/23 | AMAT | **First Amended Response to Motion for Entry of Decision (Attachment(s))** (Attachment(s)) | Resp. | | 04/25/23 | B |
| 93 | 05/18/23 | O | **Order that petitioner, by 05/26/2023, shall make** | | | 05/18/23 | B |

A14

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| | | | an appropriate filing. | | | | |
| 94 | 05/19/23 | NINF | **Notice of Intent Not to File a Reply** | Petr. Indu Rawat | | 05/19/23 | B |
| 95 | 05/22/23 | OAD | **Order and Decision Entered, Judge Gustafson - Petitioner's Motion for Entry of Decision (Doc. 85) is granted.** | | | 05/22/23 | B |
| 96 | 05/31/23 | NOA | **Notice of Appeal for the D.C. Circuit** | Petr. Indu Rawat | | 05/31/23 | B |
| 97 | 05/31/23 | AFP | **Appellate Filing Fee Received** | Petr. Indu Rawat | | 06/05/23 | B |
| 98 | 06/05/23 | NOT | **Notice of filing of notice of appeal to Court of Appeals.** | | | 06/05/23 | B |
| 99 | 06/16/23 | EA | **Entry of Appearance for Respondent** | Resp. | | 06/16/23 | B |
| 100 | 06/28/23 | ROA | **Record on Appeal E-filed for the D.C. Circuit** | | | | |

A15



INDU RAWAT,

BY: _____

Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent.

)
)
)
)
)
)
)
)
)
)

Docket No.

**15340-16**

## PETITION

Petitioner, Indu Rawat ("Petitioner"), hereby petitions for a redetermination of the deficiency set forth by the Commissioner of Internal Revenue ("Respondent") in a Notice of Deficiency (Letter 894(cg)-c) dated May 13, 2016 with respect to the taxable years ending December 31, 2008 and December 31, 2009. Petitioner further petitions for an overpayment determination with respect to tax, interest and penalties paid on June 1, 2016 for the taxable year ending December 31, 2008. As the basis for her case, Petitioner alleges as follows:

1.    Petitioner is an individual nonresident alien with an **Address Used By Court** address of 50 Raffles Place #30-30, Republic of Singapore, 048623. Petitioner did not file an original Form 1040 series U.S. Individual Income Tax Return for the 2008 or 2009 tax year.

2.    Respondent issued a Notice of Deficiency to Petitioner for the 2008 and 2009 tax years. The Notice of Deficiency (a redacted copy of which is attached as Exhibit A) is dated May

**SERVED Jul 12 2016**

A16

13, 2016, and was issued by the Internal Revenue Service Appeals
Office in Detroit, Michigan (Service symbols: AP:TS:MI:DET:AFS).

3.   In the Notice of Deficiency, Respondent determined
deficiencies, penalties and additions to tax in the following
amounts:

| Tax Year | Deficiency | Additions to Tax |
|----------|------------|------------------|
| 2008 | $3,833,820 | $958,454.99  (Code § 6651(a)(1))[1] |
| 2009 | $2,555,880 | $575,073.00  (Code § 6651(a)(1))<br>$638,970.00  (Code § 6651(a)(2))<br>$46,768.98  (Code § 6654) |

All of the determined deficiencies, penalties and additions to
tax are in dispute.  In addition, Petitioner invokes this
Court's overpayment jurisdiction under Code § 6512(b) with
respect to $2,942,000.27 in tax, interest, penalties and
additions to tax paid on June 1, 2016 for the 2008 tax year.

4.   The Commissioner's determinations of tax, penalties
and additions to tax for the 2008 and 2009 tax years as set
forth in the Notice of Deficiency, and the overpayment of tax,
interest, penalties and additions to tax for the 2008 tax year,
are based on the following errors:

    a. Respondent erred in determining that Petitioner, as a
       nonresident alien, is subject to U.S. income tax on

---

[1] All references to "Code" or "§" are to the Internal Revenue
Code of 1986, as amended.

A17

the January 4, 2008 sale of her membership interest in Innovation Ventures, LLC ("Innovation Ventures").

b. Respondent erred in determining that Petitioner, as a nonresident alien, is subject to an increase in tax in the 2008 and 2009 tax years equal to the amount of interest determined under Code § 453A(c)(2).

c. Respondent erred in assessing tax against Petitioner for the 2008 tax year pursuant to a Notice of Computational Adjustment dated February 10, 2012, by failing to take into consideration the fact that, as a nonresident alien, Petitioner was not subject to U.S. income tax and, more specifically, was not subject to U.S. income tax with respect to the adjustment of partnership items of Innovation Ventures for the 2008 tax year.

d. Respondent erred in assessing tax against Petitioner for the 2008 tax year pursuant to a Notice of Computational Adjustment dated February 10, 2012 by failing to apply the installment method of accounting set forth in I.R.C. § 453 to an adjustment of partnership items of Innovation Ventures for the 2008 tax year.

3

A18

e. Respondent erred in determining that Petitioner is subject to an addition to tax under Code § 6651(a)(1) for the 2008 tax year.

f. Respondent erred in not determining that Petitioner's failure to file a federal income tax return for the 2008 tax year was due to reasonable cause and not due to willful neglect.

g. Respondent erred in determining that Petitioner is subject to additions to tax under Code §§ 6651(a)(1), 6651(a)(2) and 6654 for the 2009 tax year.

h. Respondent erred in not determining that Petitioner's failure to file a federal income tax return for the 2009 tax year was due to reasonable cause and not due to willful neglect.

i. Respondent erred in not determining that Petitioner's failure to pay the amount shown as tax on any return filed for the 2009 tax year was due to reasonable cause and not due to willful neglect.

5. The facts upon which Petitioner relies as the basis for her assertion that the Commissioner's determinations of tax, penalties and additions to tax set forth in the Notice of Deficiency are erroneous, and as the basis for her assertion that there is an overpayment for 2008, are that:

4

a. Petitioner is a citizen of Canada and was a citizen of Canada during the 2008 and 2009 tax years.

b. During the 2008 tax year Petitioner was, for United States income tax purposes, a resident of the Republic of India.

c. Petitioner was not a resident of the United States during the 2008 or 2009 tax years.

d. Innovation Ventures was formed as a Michigan limited liability company on December 15, 2000.

e. Innovation Ventures was, during the 2008 and 2009 tax years, treated as a partnership for federal income tax purposes.

f. Innovation Ventures has, since 2000, maintained an office or fixed place of business in the United States.

g. Innovation Ventures has never been engaged in the business of selling membership interests in limited liability companies or partnership interests in partnerships.

h. Between December 15, 2000 and January 1, 2007, Petitioner acquired 300,000 Class A membership units in Innovation Ventures.

5

A20

i. From December 15, 2000 through January 4, 2008, Petitioner was a non-managing member of Innovation Ventures.

j. For the 2000 through 2007 tax years, Petitioner filed IRS Form 1040NR U.S. Nonresident Alien Income Tax Returns reporting and paying tax on her allocated share of Innovation Ventures' items of income, loss, deduction and credit.

k. On December 28, 2007, Petitioner contributed 5,000 Class A membership units in Innovation Ventures to Rural India Supporting Trust, leaving Petitioner with 295,000 Class A membership units in Innovation Ventures.

l. On January 4, 2008, Petitioner sold to Innovation Ventures Acquisition Co., LLC all 295,000 Class A membership units that she then held in Innovation Ventures for an aggregate purchase price of $438,075,000.

m. The $438,075,000 aggregate purchase price was paid by delivery to Petitioner of a promissory note (the "Note") in the full amount of the aggregate purchase price.

n. The Note was issued on January 4, 2008 and required that its $438,075,000 principal balance be paid in

6

full on or before January 1, 2028, with interest
payable quarterly.

o. Petitioner has never been engaged in a U.S. trade or
business, other than the U.S. trade or business she
was deemed to have been engaged in by owning, as a
non-managing member, membership units in Innovation
Ventures.

p. Petitioner has never been engaged in the business of
selling membership interests in limited liability
companies or partnership interests in partnerships.

q. Petitioner has never had an office or fixed place of
business in the United States.

r. The economic gain Petitioner recognized on the January
4, 2008 sale of her Class A membership units in
Innovation Ventures was not effectively connected with
a U.S. trade or business.

s. The economic gain Petitioner recognized on the January
4, 2008 sale of her Class A membership units in
Innovation Ventures was not attributable to an office
or fixed place of business in the United States.

t. The IRS conducted an examination of the IRS Form 1065
U.S. Returns of Partnership Income filed by
Innovations Ventures for the tax years ending December

7

31, 2007 and December 31, 2008 (the "TEFRA Examination").

u. Through an IRS Form 870-LT Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items accepted on behalf of Respondent on April 28, 2011 (the "Form 870-LT"), Petitioner and Respondent agreed to the resolution of specified issues arising in connection with the TEFRA Examination.

v. Pursuant to Code § 751, the Form 870-LT determined, as a partnership item of Innovation Ventures, that $6,523,176 of the aggregate purchase price paid for Petitioner's membership units in Innovation Ventures was attributable to inventory items of Innovation Ventures.

w. Part II of the Form 870-LT purported to resolve "partner level determinations (affected items) as shown on the attached schedule of adjustments."

x. The schedule of adjustments attached to the Form 870-LT showed only partnership-level determinations with respect to Innovation Ventures and did not show any partner-level determinations (affected items) with respect to Petitioner.

y. Petitioner's status as a nonresident alien is not a partnership item or an affected item of Innovation Ventures.

z. Petitioner's status as a nonresident alien and her liability as a nonresident alien for the adjustment to partnership items of Innovation Ventures as reflected on Part I of the Form 870-LT is not referenced or shown on any schedule of adjustments attached to the Form 870-LT.

aa.    Whether application of the adjustment of partnership items of Innovation Ventures is subject to reporting by Petitioner under the installment method of accounting set forth in Code § 453 is not a partnership item or an affected item of Innovation Ventures.

bb.    Application of the installment method of accounting set forth in Code § 453 to the adjustment to partnership items of Innovation Ventures agreed to in Part I of the Form 870-LT is not referenced or shown on any schedule of adjustments attached to the Form 870-LT.

cc.    On February 10, 2012, the IRS issued a Notice of Computational Adjustment to Petitioner purporting to

compute the tax and additions to tax for the 2008 tax year arising from the Form 870-LT.

dd.     On March 19, 2012, the IRS assessed $2,258,984 in tax against Petitioner for the 2008 tax year pursuant to the February 10, 2012 Notice of Computational Adjustment.

ee.     On March 19, 2012, the IRS assessed penalties or additions to tax against Petitioner for the 2008 tax year pursuant to Code §§ 6651(a)(1) and 6654.

ff.     On May 10, 2012, the IRS corrected the calculations shown on the February 10, 2012 Notice of Computational Adjustment to take into account, as an itemized deduction, the carryover of a charitable contribution deduction pursuant to Code § 170(b)(1)(D).

gg.     A portion of the tax and additions to tax assessed on March 19, 2012 was subsequently abated to reflect the carryover of the charitable contribution deduction.

hh.     On June 1, 2016, Petitioner full paid the tax, penalties and additions to tax assessed on March 19, 2012 for the 2008 tax year, together with interest thereon.

10

ii.     In not filing U.S. nonresident income tax returns
        (IRS Forms 1040NR) for the 2008 and 2009 tax years,
        Petitioner reasonably and in good faith relied on her
        professional U.S. tax advisors.

jj.     In not paying U.S. income tax for the 2009 tax
        year, Petitioner reasonably and in good faith relied
        on her professional U.S. tax advisors.

kk.     Respondent has not made a return for Petitioner
        for the 2009 tax year that satisfies the requirements
        of Code § 6020(b).

WHEREFORE, Petitioner prays that this Court may hear this
case and determine:

1. That there are no deficiencies in income tax for the
   2008 and 2009 tax years at issue;

2. That no penalties or additions to tax under Code §§
   6651(a)(1), 6651(a)(2) or 6654 for the 2008 and 2009
   tax years are due;

3. That there is an overpayment of tax, interest,
   penalties and additions to tax of $2,942,000.27 for
   the 2008 tax year; and

11

A26

4. That this Court grant such other and further relief as
   is just and appropriate.

Dated:   July 6, 2016

*Michael Desmond*                    **ADMITTED**

Michael J. Desmond
(Tax Court No. DM 0366)
THE LAW OFFICES OF MICHAEL J.
DESMOND, APC
233 E. Carrillo, Suite A
Santa Barbara, CA  93101
(805) 618-1862
michael@desmondtaxlaw.com

Attorney for Petitioner

A27

A28

**Department of the Treasury**
**Internal Revenue Service**
Appeals Office
Stop #33
500 Woodward Ave., Suite 1369
Detroit, MI 48226

Date: MAY 1 3 2016

· INDU RAWAT
50 RAFFLES PLACE # 30-30
SINGAPORE 048623

Letter Number: 894(cg)-c

**Person to Contact:**
 Andrew F Shimko
 Employee ID Number:
 Tel: 313-628-3043
 Fax: 313-628-3042
**Refer Reply to:**
 AP:TS:MI:DET:AFS
**In Re:**
 Income Tax Liability
**Form Number:**
 1040
**SSN/EIN Number:**
 ██████████
**Last Day to File a Petition with the
United States Tax Court:** OCT 1 1 2016

REGISTERED MAIL *RR 090 969 396 US*

**Notice of Deficiency**

| Tax Year(s) Ended | Tax | Penalties or Additions to Tax | | |
| | | IRC 6651(a)(1) | IRC 6651(a)(2) | IRC 6654 |
|---|---|---|---|---|
| December 31, 2008 | $3,833,820.00 | $958,454.99 | | |
| December 31, 2009 | $2,555,880.00 | $575,073.00 | $638,970.00 | $46,768.98 |

Dear Taxpayer:

We have determined that you owe additional tax or other amounts, or both, for the tax year(s) identified above. This letter is your NOTICE OF DEFICIENCY as required by law. The enclosed statement shows how we figured the deficiency.

If you want to contest this determination in court before making any payment, you have 90 days from the date of this letter (150 days if this letter is addressed to you outside of the United States) to file a petition with the United States (U.S.) Tax Court for a redetermination of the deficiency. You can get a copy of the rules for filing a petition and a petition form you can use by writing to the address below:

United States Tax Court
400 Second Street, NW
Washington DC 20217

The Tax Court has a simplified procedure for small tax cases when the amount in dispute for <u>each</u> tax year is $50,000 or less. If you intend to file a petition for multiple tax years and the amount in dispute for any one or more of the tax years exceeds

A29

The Tax Court has a simplified procedure for small tax cases when the amount in dispute for **each** tax year is $50,000 or less. If you intend to file a petition for multiple tax years and the amount in dispute for any one or more of the tax years exceeds $50,000, this simplified procedure is not available to you. If you use this simplified procedure, you cannot appeal the Tax Court's decision. You can get information pertaining to the simplified procedure for small cases from the Tax Court by writing to the court at the above address or from the court's internet site at www.ustaxcourt.gov.

Send the completed petition form, a copy of this letter, and copies of all statements and/or schedules you received with this letter to the Tax Court at the above address. The court cannot consider your case if you file the petition late. The petition is considered timely filed if the postmark date falls within the prescribed 90 or 150 day period and the envelope containing the petition is properly addressed with the correct postage.

The time you have to file a petition with the court is set by law and cannot be extended or suspended. Thus, contacting the Internal Revenue Service (IRS) for more information, or receiving other correspondence from the IRS won't change the allowable period for filing a petition with the Tax Court.

As required by law, separate notices are sent to husbands and wives. If this letter is addressed to both husband and wife, and both want to petition the Tax Court, both must sign and file the petition or each must file a separate, signed petition. If only one spouse petitions the Tax Court, the full amount of the deficiency will be assessed against the non-petitioning spouse. If more than one tax year is shown above, you may file one petition form showing all of the years you are contesting.

If you decide not to file a petition with the Tax Court, please sign the enclosed waiver form and return it to us at the IRS address on the top of the first page of this letter. This will permit us to assess the deficiency quickly and can help limit the accumulation of interest. The enclosed envelope is for your convenience.

If you decide not to sign and return the waiver, and you don't file a petition with the Tax Court within the time limit, the law requires us to assess and bill you for the deficiency after 90 days from the date of this letter (150 days if this letter is addressed to you outside the United States).

If you are a C corporation, under Internal Revenue Code Section 6621(c), large corporate underpayments may be subject to a higher rate of interest than the normal rate of interest for underpayments.

If you have questions about this letter, you may write to or call the contact person whose name, telephone number, and IRS address are shown on the first page of this letter. If you write, please include your telephone number, the best time for us to call you if we need more information, and a copy of this letter to help us identify your account. Keep the original letter for your records. If you prefer to call and the telephone number is outside your local calling area, there will be a long distance charge to you.

The contact person identified on the front of this letter can access your tax information and help you get answers. You also have the right to contact the office of the Taxpayer Advocate. You can call 1-877-777-4778 and ask for Taxpayer Advocate assistance. Or you can contact the Taxpayer Advocate for the IRS office that issued this notice of deficiency by calling 313-628-3670 or writing to P.O. Box 330500, Stop 7, Detroit, MI 48232-6500. Taxpayer Advocate assistance is not a substitute for established IRS procedures such as the formal appeals process. The Taxpayer Advocate is not able to reverse legally correct tax determinations, nor extend the time fixed by law that you have to file a petition in the U.S. Tax Court. The Taxpayer Advocate can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling.

Thank you for your cooperation.

Sincerely,
John A. Koskinen
Commissioner

By

Ronald K. Webster
Appeals Team Manager

Enclosures:
  Waiver
  Envelope
  Statement

cc: Michael J. Desmond

| Form **4089** | Department of the Treasury - Internal Revenue Service | Symbols: |
|---|---|---|
| (Rev. January 1983) | **Notice of Deficiency - Waiver** | AP:TS:MI:DET:AFS |

Name(s), SSN or EIN, and address of taxpayer(s)
INDU RAWAT
50 RAFFLES PLACE #30-30
SINGAPORE 048623

| Kind of Tax | X Copy to Authorized Representative |
|---|---|
| | MICHAEL J DESMOND |
| Income | LAW OFFICES OF MICHAEL J DESMOND APC |
| | 233 E CARRILLO ST SUITE A |
| | SANTA BARBARA CA 93101 -7159 |

| Tax Year Ended | | Deficiency | | |
|---|---|---|---|---|
| | Increase in Tax | Penalties or Additions to Tax | | |
| | | IRC 6651(a)(1) | IRC 6651(a)(2) | IRC 6654 |
| 12/31/2008 | $3,833,820.00 | $958,454.99 | | |
| 12/31/2009 | $2,555,880.00 | $575,073.00 | $638,970.00 | $46,768.98 |

In making this determination of your tax liability, careful consideration has been given to your claim for refund filed on May 24, 2012 and August 8, 2012. It is determined that the issue raised on your claim (The propriety of an assessment using TEFRA procedures) is not allowed because we believe that the form and substance of the assessment was in fact proper. If a petition to the United States Tax Court is filed against the deficiency proposed herein, the issue set forth in your claim for refund should be made a part of the petition to be considered by the Tax Court in any redetermination of your tax liability. If a petition is not filed, the claim for refund will be disallowed and official notice will be issued by certified mail in accordance with section 6532(a)(1) of the Internal Revenue Code.

---

**Interest, as provided by law, will be charged on the unpaid liability until it is paid in full.**
**See the attached explanation for the above deficiencies**

I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest provided by law.

| Your Signature | | |
|---|---|---|
| | | *(Date signed)* |
| Spouse's Signature, If A Joint Return Was Filed | | |
| | | *(Date signed)* |
| Taxpayer's Representative Sign Here | | |
| | | *(Date signed)* |
| Corporate Name: | | |
| Corporate Officers Sign Here | *(Signature)* | *(Title)* | *(Date signed)* |
| | *(Signature)* | *(Title)* | *(Date signed)* |

A32

**Note:**

If you consent to the assessment of the amounts shown in this waiver, please sign and return it in order to limit the accumulation of interest and expedite our bill to you. Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are entitled to a refund. It will not prevent us from later determining, if necessary, that you owe additional tax; nor will it extend the time provided by law for either action.

If you later file a claim and the Internal Revenue Service disallows it, you may file suit for refund in a district court or in the United States Claims Court, but you may not file a petition with the United States Tax Court.

**Who Must Sign**

If this waiver is for any year(s) for which you filed a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.

For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

---

### If you agree, please sign one copy and return it; keep the other copy for your records.

Department of the Treasury - Internal Revenue Service          www.irs.gov          Form **4089**-c (Rev. 01/1983)

| Form **5278** (Rev. June 2011) | **Statement - Income Tax Changes** | Schedule 1 |
|---|---|---|

**1. Name(s) of taxpayer(s)**
INDU RAWAT

**2.** ☑ Notice of Deficiency    ☐ Other
☐ Settlement Computation

| 3. Taxpayer Identification Number ▮▮▮▮▮▮ | 4. Form number 1040 | 5. Docket number | 6. Office symbols AP:TS:MI:DET:AFS:LMC |
|---|---|---|---|

| | Tax Year(s) Ended | | |
|---|---|---|---|
| **7. Adjustments to income** | **Year: 12/31/2008** | **Year: 12/31/2009** | |
| a. Standard Deduction | | (5,700.00) | |
| b. Exemptions | | (3,650.00) | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| **8. Total adjustments** | 0.00 | (9,350.00) | |
| **9. Taxable income as shown in** | | | |
|    ☐ Preliminary letter dated _____ | | | |
|    ☐ Notice of deficiency dated _____ | | | |
|    ☑ Return as filed | 4,627,522.00 | 0.00 | |
| **10. Taxable income as revised** | 4,627,522.00 | (9,350.00) | |
| **11. Tax**    Tax Method _____ | 1,598,229.00 TAX RATE | 0.00 TAX TABLE | |
|      Filing Status _____ | Single | Single | |
| **12. Alternative tax, if applicable** | | | |
| **13. Alternative minimum tax** *(Starting in tax year 2000)* | | | |
| **14. Corrected tax liability** - *(lesser of line 11 or 12 plus line 13)* | 1,598,229.00 | 0.00 | |
| **15. Less credits**   a. | | | |
|      b. | | | |
|      c. | | | |
| **16. Balance** - *(line 14 less total of lines 15a - 15c)* | 1,598,229.00 | 0.00 | |
| **17. Plus other taxes**   a. Other Taxes - Section 453A(c)(2)(B) | 3,833,820.00 | 2,555,880.00 | |
|      b. | | | |
|      c. | | | |
| **18. Total corrected tax liability** - *(line 16 plus lines 17a - 17c)* | 5,432,049.00 | 2,555,880.00 | |
| **19. Total tax shown on return or as previously adjusted** | 1,598,229.00 | 0.00 | |
| **20. Adjustments:** increase or (decrease) to:   a. | | | |
|      b. | | | |
|      c. | | | |
| **21. Deficiency - Increase in tax** *(overassessment - decrease in tax)* *(line 18 less line 19 adjusted by lines 20a - 20c)* | 3,833,820.00 | 2,555,880.00 | |
| **22. Adjustments to prepayment credits - Increase** *(decrease)* | | | |
| **23. Balance due or** *(Overpayment)* excluding interest and penalties *(line 21 adjusted by line 22)* | 3,833,820.00 | 2,555,880.00 | |
| **24. Penalties and/or Additions to Tax** *(listed below)* | | | |
| Delq-IRC 6651(a)(1) | 958,454.99 | 575,073.00 | |
| Delq-IRC 6651(a)(2) | | 638,970.00 | |
| Estimated Tax-IRC 6654 | | 46,768.98 | |

Form **5278** (Rev. 6-2011) Catalog Number 23735U     publish.no.irs.gov     Department of the Treasury - Internal Revenue Service

| Name of Taxpayer: | INDU RAWAT | | 10/01/2015 |
|---|---|---|---|
| Identification Number: | ▓▓▓▓▓ | Total | 16.20.00 |

## 2009 - STANDARD DEDUCTION

| | |
|---|---|
| 1. Filing status amount | 5,700.00 |
| 2. If taxpayer (or spouse if married filing jointly) can be claimed as a dependent, enter earned income amount (if earned income is less than $ 650 , enter $ 950 ); otherwise, skip this line and enter amount from line 1 on line 3 | |
| 3. Smaller of line 1 or line 2 (if applicable) | 5,700.00 |
| 4. Multiply number of age/blind exemptions by $ 1,400 | 0.00 |
| 5. Net disaster loss included in standard deduction | 0.00 |
| 6. State and local taxes paid included in standard deduction computation | 0.00 |
| 7. Enter $500 ($1,000 if married filing jointly) | 500.00 |
| 8. Smaller of line 6 or line 7 | 0.00 |
| 9. Deductible portion of vehicle taxes paid | 0.00 |
| 10. Adjusted gross income | 0.00 |
| 11. Excluded foreign earned income | 0.00 |
| 12. Add lines 10 and 11 | 0.00 |
| 13. Enter $125,000 ($250,000 if married filing jointly) | 125,000.00 |
| 14. If line 12 is greater than line 13, subtract line 13 from line 12; otherwise, skip lines 14 through 16 and enter amount from line 9 on line 17 | |
| 15. Divide line 14 by $10,000 and enter result as decimal rounded to at least three places (no more than 1.000) | |
| 16. Multiply line 9 by line 15 | |
| 17. Subtract line 16 from line 9 | 0.00 |
| 18. Standard deduction. Add lines 3, 4, 5, 8, and 17 | 5,700.00 |

| | |
|---|---|
| Name of Taxpayer: **INDU RAWAT** | 10/01/2015 |
| Identification Number: ▓▓▓▓▓▓ | Total 16.20.00 |

## 2009 - PERSONAL EXEMPTION WORKSHEET

| | |
|---|---:|
| 1. Maximum additional exemption amount | 2,000.00 |
| 2. Amount from prior year's Form 8914, line 2 | |
| 3. Subtract line 2 from line 1 | |
| 4. Multiply $500 by the total number of displaced individuals listed in Part I of Form 8914 | 0.00 |
|    (Maximum amount is $2,000; $1,000 if married filing separately) | |
| 5. Smaller of line 3 or line 4 | |
| 6. Multiply $ 3,650.00  by the total number of exemptions claimed | 3,650.00 |
| 7. Add lines 5 and 6 | |
| 8. Adjusted gross income | 0.00 |
| 9. Limitation based on filing status | 166,800.00 |
|    NOTE: If line 8 is not greater than line 9, STOP; | |
|    enter amount from line 7 on line 17 below | |
| 10. Subtract line 9 from line 8 | 0.00 |
| 11. If line 10 is more than $122,500 ($61,250 if married filing separately), | 0.00 |
|    multiply $ 2,433.00   by the total number of exemptions claimed; | |
|    otherwise, skip line 12 and go to line 13 | |
| 12. Add lines 5 and 11 and enter the amount on line 17 below; | 0.00 |
|    do not complete the rest of the worksheet | |
| 13. Divide line 10 by $2,500 ($1,250 if married filing separately) | 0.00 |
|    (If result is not a whole number, increase to next whole number) | |
| 14. Multiply line 13 by 2% and enter the result as a decimal rounded to at least three places | 0.00 |
| 15. Multiply line 6 by line 14 | 0.00 |
| 16. Divide line 15 by 3.0 | 0.00 |
| 17. Deduction for exemptions | 3,650.00 |
|    (subtract line 16 from line 7; or the amount from line 9 or line 12 above) | |

A36

Indu Rawat, Form 1040
Calculation of Gain on Sale Partnership
For Purposes of the IRC 453A(c) Interest
Liability on the Deferred Gain
December 31, 2008 and 2009

| Description | Amounts | | Applicable Percentage | |
|---|---|---|---|---|
| Selling Price | 438,075,000 | | Outstanding Obligation | 438,075,000 |
| Relief of Liabilities | 4,026,191 | | Exempted Amount (453A(c)(4)(A) | 5,000,000 |
| Total Proceeds | 442,101,191 A | | Numerator for Applicable Percentage | 433,075,000 C |
| Basis | | | Outstanding Obligation | 438,075,000 D |
| Liabilities (Above) | 4,026,191 | | Applicable Percentage(453A(c)(4) | 98.86% = C / D |
| Capital | 653,700 | | Deferred Tax Liability | 64,634,719 |
| Total Basis | 4,679,891 B | | Applicable Percentage(453A(c)(4) | 98.86% |
| Gain (A) - (B) | 437,421,300 | | Amount of Deferred Gain Subject to IRC 453A Interest | 63,897,008 |
| IRC 751 Recognized | 6,523,176 | | 2008 Interest (Rate = .06) (453A(c)(2)(B) | 3,833,820 |
| Deferred Gain | 430,898,124 | | 2009 Interest (Rate = .04) (453A(c)(2)(B) | 2,555,880 |
| Capital Gain Rate | 15% | | | |
| Deferred Liability | 64,634,719 | | | |

A37

| Name of Taxpayer: | INDU RAWAT | | 10/01/2015 |
| Identification Number: | | Total | 16.20.00 |

## EXPLANATION OF THE DELINQUENCY PENALTY

Since your income tax return was not filed within the time limit prescribed by law and/or the tax was not paid, and you have not shown that such failure was due to reasonable cause, an addition to the tax is charged as shown below, in accordance with Section 6651(a)(1) and/or Section 6651(a)(2) of the Internal Revenue Code.

### 2008 - DELINQUENCY PENALTY

| | | |
|---|---|---|
| 1. Delinquency penalty abated | | 0.00 |
| 2. Date return due | 04/15/2009 | |
| 3. Date return filed | 04/28/2011 | |
| 4. Failure to File penalty rate | 0.250 | |
| 5. Failure to Pay penalty rate | 0.000 | |
| 6. Total corrected tax liability | | 5,432,049.00 |
| 7. Allowable payments on or prior to due date of return | | 0.00 |
| 8. Net Amount Due (line 6 less line 7) | | 5,432,049.00 |
| 9. Failure to File Penalty - line 8 multiplied by line 4 | | 1,358,012.25 |
| 10. Minimum penalty if over 60 days delinquent | | 135.00 |
| 11. Failure to File Penalty - Greater of line 9 or line 10 | | 1,358,012.25 |
| 12. Previously assessed/previously agreed Failure to File Penalty | | 399,557.26 |
| 13. Net Failure to File Penalty - line 11 less line 12 | | 958,454.99 |
| 14. Failure to Pay Penalty - line 8 multiplied by line 5 | | 0.00 |
| 15. Previously assessed/previously agreed Failure to Pay Penalty | | 0.00 |
| 16. Net Failure to Pay Penalty - line 14 less line 15 * | | 0.00 |
| 17. Total Delinquency Penalty - Sum of line 13 and 16 | | 958,454.99 |

* If an amount appears as the Failure to Pay Penalty, the amount only reflects the addition to tax under Internal Revenue Code section 6651(a)(2) through the date of this notice. The addition to tax will continue to accrue from the due date of the return at a rate of 0.5 percent each month, or fraction thereof, of nonpayment, not exceeding 25 percent.

A38

| Name of Taxpayer: | INDU RAWAT | | 10/01/2015 |
|---|---|---|---|
| Identification Number: | ▮▮▮▮ | Total | 16.20.00 |

### EXPLANATION OF THE DELINQUENCY PENALTY

Since your income tax return was not filed within the time limit prescribed by law and/or the tax was not paid, and you have not shown that such failure was due to reasonable cause, an addition to the tax is charged as shown below, in accordance with Section 6651(a)(1) and/or Section 6651(a)(2) of the Internal Revenue Code.

### 2009 - DELINQUENCY PENALTY

| | | |
|---|---|---|
| 1. Delinquency penalty abated | | 0.00 |
| 2. Date return due | 04/15/2010 | |
| 3. Date return filed | 10/01/2015 | |
| 4. Failure to File penalty rate | 0.225 | |
| 5. Failure to Pay penalty rate | 0.250 | |
| 6. Total corrected tax liability | | 2,555,880.00 |
| 7. Allowable payments on or prior to due date of return | | 0.00 |
| 8. Net Amount Due (line 6 less line 7) | | 2,555,880.00 |
| 9. Failure to File Penalty - line 8 multiplied by line 4 | | 575,073.00 |
| 10. Minimum penalty if over 60 days delinquent | | 135.00 |
| 11. Failure to File Penalty - Greater of line 9 or line 10 | | 575,073.00 |
| 12. Previously assessed/previously agreed Failure to File Penalty | | 0.00 |
| 13. Net Failure to File Penalty - line 11 less line 12 | | 575,073.00 |
| 14. Failure to Pay Penalty - line 8 multiplied by line 5 | | 638,970.00 |
| 15. Previously assessed/previously agreed Failure to Pay Penalty | | 0.00 |
| 16. Net Failure to Pay Penalty - line 14 less line 15 * | | 638,970.00 |
| 17. Total Delinquency Penalty - Sum of line 13 and 16 | | 1,214,043.00 |

* If an amount appears as the Failure to Pay Penalty, the amount only reflects the addition to tax under Internal Revenue Code section 6651(a)(2) through the date of this notice. The addition to tax will continue to accrue from the due date of the return at a rate of 0.5 percent each month, or fraction thereof, of nonpayment, not exceeding 25 percent.

A39

SCHEDULE 7

| Name of Taxpayer: INDU RAWAT | | 10/01/2015 |
|---|---|---|
| Identification Number: ▮▮▮▮▮ | Total | 16.20.00 |

## 2009 - EXPLANATION OF THE ESTIMATED TAX PENALTY

Since you did not pay sufficient estimated tax, addition to the tax is charged as shown below, in accordance with Section 6654(a) of the Internal Revenue Code.

| | | |
|---|---|--:|
| 1. Total corrected tax liability, Form 4549, line 11 (Tax Per Return, if a return was filed) | | 2,555,880.00 |
| 2. Refundable Credits | | 0.00 |
| 3. Withholding taxes | | 0.00 |
| 4. Line 1 less sum of lines 2 & 3 (if less than $1000, estimated penalty does not apply) | | 2,555,880.00 |
| 5. 90% of the sum of line 1 less line 2 | | 2,300,292.00 |
| 6. Prior year tax liability (100% of prior year tax except*) | | 1,758,051.90 |
| 7. The smaller of line 5 or 6 (as adjusted) | | 1,758,051.90 |

| | Apr 15, 2009 | Jun 15, 2009 | Sep 15, 2009 | Jan 15, 2010 |
|---|---|---|---|---|
| 8. Payment Due Date | Apr 15, 2009 | Jun 15, 2009 | Sep 15, 2009 | Jan 15, 2010 |
| 9. Payment Required | 439,512.98 | 439,512.98 | 439,512.98 | 439,512.98 |
| 10. Payments & Credits | 0.00 | 0.00 | 0.00 | 0.00 |
| 11. Overpayment from line 17 | | 0.00 | 0.00 | 0.00 |
| 12. Total of lines 10 & 11 | | 0.00 | 0.00 | 0.00 |
| 13. Previous Qtr Underpayment | | 439,512.98 | 879,025.96 | 1,318,538.94 |
| 14. Line 12 less line 13 | 0.00 | 0.00 | 0.00 | 0.00 |
| 15. Remaining Underpayment | | 439,512.98 | 879,025.96 | |
| 16. Underpayment | 439,512.98 | 439,512.98 | 439,512.98 | 439,512.98 |
| 17. Overpayment | 0.00 | 0.00 | 0.00 | 0.00 |
| 18. Penalty | 17,580.51 | 14,642.40 | 10,211.15 | 4,334.92 |
| 19. Previously Assessed/Previously Agreed Estimated Tax Penalty | | | | 0.00 |
| 20. Estimated Tax Penalty | | | | 46,768.98 |

\* If qualified small business and prior year AGI was < $500,000 ($250,000 if MFS): use 90% of prior year tax.
 If not qualified small business and prior year AGI was > $150,000 ($75,000 if MFS): use 110% of prior year tax.

A40



15340-16

ORIGIN ID:SBAA  (805)-618-1662
MICHAEL DESMOND

233 E. CARRILLO STREET
SUITE A
SANTA BARBARA, CA 93101
UNITED STATES US

SHIP DATE: 06JUL16
ACTWGT: 1.00 LB
CAD: 103723397/INET3730

BILL SENDER

TO CLERK OF THE COURT
UNITED STATES TAX COURT
400 SECOND STREET, N.W.

WASHINGTON DC 20217
(202) 521-0700

REF:
DEPT:
INV:
PO:

FedEx
Express

E

THU - 07 JUL 3:00P
STANDARD OVERNIGHT

TRK# 7766 8291 3895
0201

20217
IAD
DC-US

XC TSGA

US TAX COURT
RECEIVED

NOV 4 2016
7:00 AM

JRN



US TAX COURT
eFILED

NOV 4 2016

INDU RAWAT

        Petitioner(s)

           v.

COMMISSIONER OF INTERNAL REVENUE,
        Respondent

ELECTRONICALLY FILED

Docket No.   15340-16

# ANSWER

SERVED Nov 04 2016

A42

INDU RAWAT                          )
                    Petitioner,     )
                                    )
          v.                        )     Docket No.  15340-16
                                    )
COMMISSIONER OF INTERNAL REVENUE,   )     Filed Electronically
                                    )
                    Respondent.     )

**ANSWER**

RESPONDENT, in answer to the petition filed in the above-entitled case, admits and denies as follows:

1.    First sentence, denies for lack of information of knowledge Petitioner's residential status or current address. Second sentence, admits.

2.    Admits.

3. First and second sentence, inclusive, admits.  Third sentence, admits Petitioner invokes the Court's overpayment jurisdiction under IRC section 6512(b) with respect to $2,942,000.27 in tax, interest, penalties and additions to tax paid on June 1, 2016 for the 2008 tax year. Further admits Petitioner paid $2,942,000.27 in tax, interest, penalties and additions to tax paid on June 1, 2016 for the 2008 tax year.

4.    (a) through (i), inclusive, denies Commissioner erred.

5.    Answers Petitioner's allegations as follows:

          (a) Denies for lack of information or knowledge.

          (b) Denies for lack of information or knowledge.

(c) Denies for lack of information or knowledge.

(d) Denies for lack of information or knowledge.

(e) Admits Innovation Ventures, LLC (IV, LLC) filed Form 1065, U.S. Return of Partnership Income, during the 2008 and 2009 tax year.

(f) Admits.

(g) Denies for lack of information or knowledge.

(h) Denies for lack of information or knowledge.

(i) Denies for lack of information or knowledge.

(j) Denies for lack of information or knowledge whether Petitioner filed Form 1040 NR, U.S. Nonresident Alien Income Tax Returns for years 2000 through 2003 and paid tax on her allocated share of IV LLC's items of income, loss, deduction and credit.  Admits for the 2004 through 2007 tax years, Petitioner filed Form 1040 NR, U.S. Nonresident Alien Income Tax Returns. Denies for lack of information or knowledge whether Petitioner reported and paid tax on her allocated share or Innovation Ventures' items of income, loss, deduction and credit for the 2004 through 2007 tax years.

(k) Denies for lack of information or knowledge.

(l) Admits "Membership Interest Purchase Agreement" purports to show a sale on January 4, 2008 between IV, LLC,

Docket No. 15340-16      - 3 -

Innovations Ventures Acquisitions Co., LLC and Indu Rawat for

295,000 Class A Memberships in IV, LLC for $438,075,000.00.

(m) Denies for lack of information or knowledge if the
$438,075,000 aggregate purchase price was paid by delivery to
Petitioner of a promissory note.  Admits "Promissory Note",
dated January 4, 2028 in the amount of $438,075,000, was signed
by Petitioner and Manoj Bhargava on behalf of Innovation
Ventures Acquisition Co., LLC. Alleges "Promissory Note" in
question is attached hereto as Exhibit A.

(n) Neither admits nor denies as "Promissory Note",
attached as Exhibit A, speaks for itself.

(o) Denies for lack of information or knowledge.

(p) Denies for lack of information or knowledge.

(q) Denies for lack of information or knowledge.

(r) Denies.

(s) Denies.

(t) Admits.

(u) Admits the parties entered into a Form 870-LT,
Agreement for Partnership Items and Partnership Level
Determinations as to Penalties, Additions to Tax, and Additional
Amounts and Agreement for Affected Items (Form 870-LT), which
agreement is attached as Exhibit B.  Neither denies nor admits
remainder of paragraph as Form 870-LT speaks for itself.

(v) Neither admits nor denies.  Alleges Form 870-LT, attached as Exhibit B, speaks for itself.

(w) Neither admits nor denies.  Alleges Form 870-LT, attached as Exhibit B, speaks for itself.

(x) Neither admits nor denies.  Alleges Form 870-LT, attached as Exhibit B, speaks for itself.

(y) Neither admits nor denies as statement is a legal conclusion, not a statement of fact.

(z) Neither admits nor denies.  Alleges Form 870-LT, attached as Exhibit B, speaks for itself.

(aa) Neither admits nor denies as statement is a legal conclusion, not a statement of fact.

(bb) Neither admits nor denies.  Alleges Form 870-LT, attached as Exhibit B, speaks for itself.

(cc) Admits respondent issued a "Notice of Computations Adjustment" to Petitioner on February 10, 2012, a copy of which is attached as exhibit C.

(dd) Admits respondent assessed $2,258,984 against Petitioner on March 19, 2012, denies remainder for lack of information or knowledge.

(ee) Denies for lack of information or knowledge.

(ff) Denies for lack of information or knowledge.

(gg) Denies for lack of information or knowledge.

(hh) Admits.

(ii) Denies for lack of information or knowledge.

(jj) Denies for lack of information or knowledge.

(kk) Denies for lack of information or knowledge.

6.    Denies generally each and every allegation of the petition not herein specifically admitted, qualified or denied.

WHEREFORE, it is prayed that the relief sought in the petition be denied and that respondent's determination, as set forth in the notices of deficiency, be in all respects approved.

WILLIAM J. WILKINS
Chief Counsel
Internal Revenue Service

Date: **NOV 0 4 2016**          By: _____

S. KATY LIN
Senior Attorney
(Large Business &
International)
Tax Court Bar No. LS0403
500 Woodward Avenue
One Detroit Center
Suite 1300
Detroit, MI 48226
Telephone: (313) 628-3116

OF COUNSEL:
THOMAS J. KANE
Division Counsel
(Large Business & International)
WILLIAM G. MERKLE
Area Counsel
(Retailers, Food, Transportation & Health Care)
ERIC R. SKINNER
Associate Area Counsel
(Large Business & International)



*Notice - This instrument is a registered obligation both as to principal and interest. In accordance with Section 4 below, the transfer of this obligation may only be effected through the surrender of this instrument to the issuer followed by the reissuance of this obligation or the issuance of a new obligation hereunder. In addition, each and every transfer of this obligation must be, and can only be, accomplished through the book entry system maintained by the issuer hereof.*

**"ANY UNITED STATES PERSON WHO HOLDS THIS OBLIGATION WILL BE SUBJECT TO THE LIMITATIONS UNDER THE UNITED STATES INCOME TAX LAWS, INCLUDING THE LIMITATIONS PROVIDED IN SECTIONS 165(j) AND 1287(a) OF THE INTERNAL REVENUE CODE"**

<u>PROMISSORY NOTE</u>

$438,075,000.00

Issue Date: January 4, 2008
Maturity Date: January 1, 2028

FOR VALUE RECEIVED, Innovation Ventures Acquisition Co., LLC, a Michigan limited liability company (the *"Maker" or "Issuer"*) promises to pay to the order of Indu Rawat (*"Payee"*) at such place or places as Payee shall from time to time designate in writing, the principal amount of FOUR HUNDRED THIRTY EIGHT MILLION SEVENTY FIVE THOUSAND & NO/100 ($438,075,000.00) DOLLARS, payable in full as set forth herein, in lawful money of the United States of America.

1.    <u>Commercial Transaction</u>. This Note is issued in connection with that certain Purchase Agreement of even date herewith (the "Purchase Agreement") by and among Maker, Payee and Innovation Ventures, LLC, a Michigan limited liability company (the "Company"). This Note is secured by a certain pledge and security agreement of even date by and among Maker and Payee. Interest and principal on this Note are payable only outside the United States and its possessions (the *"United States"*). Prior to any payment under this Note, Payee shall provide in writing to Maker the bank account or delivery address outside the United States to which Maker shall make direct payment under this Note.

Exhibit __A__

Dkt. No. 15340-16

A49

CONFIDENTIAL



2.    <u>Repayment; Maturity</u>.

      A.    The outstanding principal balance of this Note shall be paid in full on or before January 1, 2028 (the "Maturity Date"). No payments of principal shall be required before the Maturity Date, however, the outstanding principal balance due hereunder shall accelerate and become due and payable upon the occurrence of a Default as defined below.

      B.    On April 1, 2008, and on the first day of each calendar quarter thereafter until this Note is paid in full, the Maker shall pay to the Payee all of the accrued but unpaid interest due under this Note calculated at the rate of 4.39% compounded quarterly.

      C.    This Note may be prepaid prior to maturity, whether in whole or in part, without the prior written consent of Payee and without penalty.

    3.    <u>Defaults</u>.  The following events are hereby defined as "Defaults" for all purposes of this Note:

      A.    Maker shall fail to pay any amount when due under this Note and such failure to pay is not cured within five (5) business days of Payee's written notice to Maker of such failure;

      B.    Maker shall institute proceedings for an order for relief, or shall consent to the institution of such a proceeding against it, or shall file a petition or consent seeking reorganization or arrangement under, the federal bankruptcy laws, or shall consent to the appointment of a receiver or trustee or assignee in bankruptcy of it or its property, or shall make an assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due; or

      C.    An involuntary order for relief under the federal bankruptcy laws shall have been entered or a decree or order of a court having proper jurisdiction shall have been entered approving as properly filed a petition seeking reorganization of Maker under the federal bankruptcy laws or any other similar applicable federal or state laws, and such decree or order shall have continued undischarged or unstayed for a period of sixty (60) days; or a decree or order of a court having proper jurisdiction for the appointment of a receiver or trustee or assignee in bankruptcy or insolvency of Maker or of substantially all of the assets of Maker or for sequestration of substantially all of the assets of Maker, or for the winding up or liquidation in insolvency or bankruptcy of the affairs of Maker, shall have been entered, and such decree or order shall have remained in force undischarged and unstayed for a period of thirty (30) days.

Notwithstanding anything to the contrary contained in this Note, Maker shall have the continuing right to defer the payment of interest otherwise due on the first day of a calendar quarter to successive calendar quarters, however, such right of deferral may not be employed to permit the deferral of more than 8 quarterly payments at any one time. Such deferred payments shall bear interest at the rate stated in Paragraph 2.B., above. Provided that the total number of deferred payments does not exceed 8 quarterly payments at any one time, the failure to pay interest on the first day of any particular calendar quarter (subject to stated notice and cure provisions) shall not

2

CONFIDENTIAL

COPY

be deemed a Default under this Note. If an event of default exists, Payee may exercise any right, power or remedy permitted by law, and, without limiting the generality of the foregoing, Payee shall thereupon have the right to declare the entire unpaid principal amount hereof, together with Payee's reasonable attorneys' fees and costs of collection, immediately due and payable.

        4.    <u>Registration, Foreign Status of Payee and Certification</u>:

        A.    Notwithstanding any provision to the contrary set forth in this Note, (i) this obligation is registered as to both principal and any stated interest with the issuer and transfer of this obligation may be effected only by surrender of the old instrument and either the reissuance by the issuer of the old instrument to the new holder or the issuance by the issuer of a new instrument to the new holder; and (ii) the right to the principal of, and stated interest on, this obligation may be transferred only through a book entry system maintained by the issuer. The book entry system of the issuer shall identify the owner of this obligation and such other information as may be required from time to time by the United States taxing authorities to meet United States requirements for "registered" status under the Internal Revenue Code of 1986, as amended, and the regulations and rulings thereunder (the "*Code*").

        B.    Each and every holder hereof agrees that prior to receiving any payment hereunder, whether of principal or stated interest, the holder shall deliver to the issuer a certificate correctly prepared, fully completed and properly executed in a form designed to meet the requirements of Code §871(h)(5) ("*Certificate*"). The issuer acknowledges receipt of a Certificate in the form of a W-8BEN dated as of the date of issue of this Note, however, upon request of the issuer, the holder will prepare (or re-prepare) and submit to the Issuer such new or additional Certificate(s) as may be requested by Issuer. The Issuer may, without penalty, delay the payment of principal or interest otherwise due hereunder until such time as the issuer is in receipt of a valid Certificate and such delay will not constitute a Default hereunder.

        C.    Payee agrees to cooperate fully and promptly with Issuer to provide any information or additional tax forms required by Issuer to comply with its obligations under the *Code*.

        D.    The Maker and Payee intend and expect this Note and the payments of interest hereunder to qualify as "portfolio interest" as defined in Code §§871(h) and 881(c). If, however, for any reason, it is finally determined that Maker is obliged under the Code to withhold tax in any amount on the payments under this Note, Maker shall properly and timely withhold, report and pay to the U.S. government the required withholding taxes and shall remit the remaining amounts to Payee. Payment of such remaining amounts to Payee shall be deemed to fully comply with Maker's obligations hereunder.

        5    <u>Rights Cumulative</u>. The rights and remedies of Payee as provided herein shall be cumulative and concurrent, and may be pursued singly, successively or together against Maker, at the sole discretion of Payee; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release of the same. Payee shall not by any act or omission be deemed to waive any of its rights or remedies under this Note unless such waiver is in writing and signed by Payee, and then only to the extent specifically set forth therein; and a

A51



waiver of one event shall not be construed as continuing or as a bar to or waiver of such right or remedy on a subsequent event.

      6.    <u>Construction of Terms</u>. The word "Maker" whenever used herein is intended to and shall be construed to mean the undersigned. Whenever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

      7.    <u>Modifications</u>. This Note may not be changed orally, but only by an agreement in writing signed by Maker and Payee.

      8.    <u>Governing Law</u>. This Note shall be governed by and construed according to the laws of the State of Michigan.

      9.    <u>Headings</u>. The headings preceding the text of the paragraphs hereof are inserted solely for convenience of reference and shall not constitute a part of this Note nor shall they affect its meaning, construction or effect.

      10.    <u>Severability</u>. If any provision of this Note or the application thereof is held by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions hereof shall not be affected thereby, and each provision of this Note shall be valid and enforceable to the fullest extent permitted by law.

      11.    <u>Lost, Stolen, Destroyed or Mutilated Note</u>. Upon receipt of evidence satisfactory to Maker of the loss, theft, destruction or mutilation of this Note and, in case of any such loss, theft or destruction, upon receipt of indemnity reasonably satisfactory to Maker or, in the case of any such mutilation, upon surrender and cancellation of this Note, Maker will make and deliver, in lieu of such lost, stolen, destroyed or mutilated Note, a new Note of like tenor and in an amount equal to the unpaid principal amount of this Note.

      12.    <u>Collection</u>. If this Note is placed in the hands of an attorney for collection as provided herein or for enforcement, Maker agrees to pay all reasonable attorneys' fees incurred by Payee and all court and other reasonable costs of any good faith collection efforts.

      13.    <u>Notices</u>. All notices, demands and other communications made hereunder shall be in writing and shall be given either by personal delivery, by nationally recognized overnight courier (with charges prepaid) or by telecopy (with telephone confirmation), and shall be deemed to have been given or made when personally delivered, the day following the date deposited with such overnight courier service or when transmitted by telecopy machine and confirmed by telephone, addressed to the respective parties at their last known address. With respect to the holder of this Note, the last known address shall be the address reflected on the most recent Form W-8BEN received from the holder and with respect to the Maker, the last known address shall be the registered agent address of the Maker in the State of Michigan.

*Signatures Appear on Following Page*

CONFIDENTIAL



IN WITNESS WHEREOF, Maker has caused this Note to be duly executed as of the day and year first above written.

MAKER:

Innovation Ventures Acquisition Co., LLC,
a Michigan limited liability company

By: _____

Manoj Bhargava

Its: Manager

DELIVERED AND ACCEPTED IN _____

By: _____

Printed Name: Indu Rawat

Date: _____

5

CONFIDENTIAL

## PLEDGE AND SECURITY AGREEMENT

THIS PLEDGE AND SECURITY AGREEMENT (this "Security Agreement") is made and entered into as of January 4, 2008 by and between INNOVATION VENTURES ACQUISITION CO., LLC, a Michigan limited liability company whose address is c/o Manoj Bhargava, 46570 Humboldt Dr., Novi, MI 48337 (the "Debtor") and INDU RAWAT (the "Secured Party") in connection with that certain Membership Interest Purchase Agreement dated January 4, 2008 (the "Purchase Agreement") by and among the Debtor, the Secured Party and Innovation Ventures, LLC, a Michigan Limited liability company (the "LLC") pursuant to which the Debtor was the maker of a certain promissory note also dated January 4, 2008 in favor of the Secured Party in the amount of $438,075,000.00 (the "Promissory Note").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.   Grant of Security Interest. Debtor hereby assigns to Secured Party, to the fullest extent permitted by law, all of Debtor's right, title and interest in and to 295,000 Class A Membership Units in the LLC and any and all distributions of whatsoever kind or nature related to, arising out of or derived from such Units at such times and in such forms and amounts which Debtor may at anytime be entitled (individually and collectively the "Collateral") to secure the prompt and complete payment and performance when due (whether by maturity, acceleration or otherwise) of all of the Obligations due Secured Party.  For purposes hereof, the term "Obligations" shall mean any and all indebtedness, liabilities and obligations of Debtor to Secured Party of whatsoever nature, whether heretofore, now existing or hereafter owing or incurred, joint or several, whether for principal, interest, fees, costs, expenses or otherwise arising under or related to the Purchase Agreement, including, without limitation:

(a)   All the unpaid principal of, and accrued interest on the Promissory Note and any and all extensions, renewals, supplements or modifications thereof or future advances thereunder; and

(b)   All other amounts due Secured Party from time to time, under, arising out of or in connection with the Promissory Note or the Purchase Agreement (including any and all extensions, renewals or modifications thereof ), the loan or loans evidenced thereby or any other documents executed in connection therewith (including, this Security Agreement), including all interest, costs, expenses and attorneys' fees which may be paid or incurred by Secured Party in the administration and collection of any Obligations, and in the protection, maintenance and disposition of any Collateral.

008247\016805\{00176007.DOC}

2.     Representations and Warranties.   Debtor hereby represents and warrants to Secured Party that:

(a)     Authorization; Enforceability.  This Security Agreement and the Promissory Note have each been duly executed and delivered and constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with its terms. The execution and delivery of this Security Agreement and the Promissory Note does not constitute a breach of any provision contained in any agreement or instrument to which Debtor is or may become a party or by which Debtor is or may be bound.

(b)     Solvency.  Debtor is solvent and is paying his debts as the same become due and owing in so far as the same affects the Collateral and Debtor shall remain solvent upon the execution and compliance of the terms of this Security Agreement and the Obligations secured hereby, such that the execution thereof does not render Debtor insolvent.

(c)     Threatened or Pending Proceedings.  There are no actions or proceedings which are threatened or pending against Debtor or any of its assets which might result in any adverse change in Debtor's financial condition or which might adversely affect the Collateral.

(d)     Title.  Debtor shall be the sole owner of all of the Collateral and shall have good and marketable title thereto free and clear of any and all liens, encumbrances and interests of others.

(e)     Perfection.  The security interests granted by this Security Agreement will, upon filing of appropriate financing statements in the appropriate jurisdiction and with the appropriate public offices, constitute a valid and continuing first lien on and first priority perfected security interest in the Collateral in favor of Secured Party, prior to all other liens, encumbrances and interests of all others.

(f)     No Competing Filings.  No security agreement, financing statement or equivalent security or lien instrument or continuation statement covering all or any part of the Collateral is on file or of record in any public office, except such as may have been filed in favor of Secured Party, pursuant to this Security Agreement.

(g)     Continued Accuracy.  Debtor's representations and warranties contained in this Security Agreement are and shall continue at all times to be true and accurate.

3.     Covenants.  Debtor hereby covenants and agrees to and with Secured Party that, until all of the Obligations are fully satisfied:

(a)     Further Documentation; Pledge of Instruments.  At any time and from time to time, upon the request of Secured Party, and at the sole expense of Debtor, Debtor will promptly and duly execute and deliver any and all such further

documents and take such further actions as Secured Party may deem desirable in obtaining the full benefits of this Security Agreement and of the rights and powers herein granted, including, without limitation, the filing of any financing or continuation statements under the Uniform Commercial Code in affect in any jurisdiction with respect to the liens and security interests granted hereby and transferring any Collateral to Secured Party's possession. Debtor also hereby authorizes Secured Party to file any financing or continuation statements to the extent permitted by applicable law. If any amount payable under or in connection with any Collateral shall be or become evidenced by any promissory note or other instrument (other than an instrument which constitutes chattel paper), such note or instrument shall be immediately pledged to Secured Party hereunder, and shall be duly endorsed in a manner satisfactory to Secured Party and delivered to Secured Party.

(b)     Maintenance of Books. Debtor will keep and maintain, at its own cost and expense, satisfactory and complete books, including without limitation a record of all payments received and all credits granted with respect to the Collateral and all other dealings with the Collateral.

(c)     Indemnification. In any suit, proceeding or action brought by Secured Party relating to the Collateral, Debtor will save, indemnify, defend and keep Secured Party harmless from and against any and all expense, loss or damage suffered by reason of any and all defense, set-off, counterclaim, recoupment or reduction of liability whatsoever of the obligee thereunder arising out of a breach by Debtor of any obligation thereunder or arising out of any other agreement, indebtedness or liability at any time owing to or in favor of such obligee or its successors from Debtor, and all such obligations of Debtor shall be and remain enforceable against and only against Debtor and shall not be enforceable against Secured Party.

(d)     Limitation on Liens on Collateral. Debtor will not create, permit or suffer to exist, and will defend the Collateral against and take such other action as is necessary to remove, any lien, mortgage, pledge, assignment, security interest, charge or encumbrance of any kind and any agreement to give or refrain from giving any of the foregoing on the Collateral and will defend the right, title and interest of Secured Party in and to any of the Collateral and in and to the proceeds and products thereof against the claims and demands of any person or party.

(e)     Matters Relating to LLC. Debtor will perform and comply in all respects with its obligations and duties under any Operating Agreement concerning the business and affairs of the LLC or otherwise imposed on Debtor as a member and/or manager of the LLC.

(f)     Limitation on Disposition. Debtor will not voluntarily or involuntarily sell, transfer, lease or otherwise dispose of the Collateral.

(g)     Further Identification of Collateral. Debtor will furnish to Secured Party from time to time, statements and schedules further identifying and

describing the Collateral and such other reports in connection with the Collateral as Secured Party may request, all in detail as Secured Party may require.

(h)     Notices.  Debtor will advise Secured Party promptly in such detail as Secured Party may require of the occurrence of any other event which might have an effect on the aggregate value of the Collateral or on the security interests created hereunder.

(i)     Performance by Secured Party of Debtor's Obligations.  If Debtor fails to perform or comply with any of its agreements contained herein and Secured Party, as provided for by the terms of this Security Agreement, shall itself perform or comply, or otherwise cause performance or compliance with such agreement, the expenses of Secured Party incurred in connection with such performance or compliance, together with interest thereon at the default rate of interest under the Obligations, shall be payable by Debtor to Secured Party on demand and shall constitute Obligations secured hereby.

(j)     Notice of Material Events.  Debtor will promptly notify Secured Party in writing of the occurrence of any Event of Default, the commencement of any litigation against, by or affecting the Debtor.

(k)     Financial Statements and Information.  At any time and from time to time, upon the request of Secured Party and at the sole expense of Debtor, Debtor will promptly and duly prepare or cause to be prepared and deliver or cause to be delivered, any and all financial statements and other information relating to Debtor.

4.     Performance by Secured Party of Debtor's Obligations.  If a Debtor fails to perform or comply with any of its agreements contained herein and the same continues after notice of Secured Party's intention to do so, and Secured Party, as provided for by the terms of this Security Agreement, shall itself perform or comply or otherwise cause performance or compliance with such agreement, all fees and expenses of Secured Party incurred in connection with such performance or compliance, together with interest thereon at the default rate of interest provided for in the Obligations secured thereby (and if no default rate of interest be stated, then the rate of interest specified in such Obligation), shall be payable by Debtor to Secured Party on demand and shall constitute Obligations secured hereby.

5.     Events of Default.  A Debtor shall be in default under this Security Agreement upon the occurrence of any of the following events (each of which may be referred to as an "Event of Default"):

(a)     The occurrence of a default or an event of default under the Promissory Note or the Purchase Agreement which remains uncured after the expiration of any applicable cure period.

(b)     Debtor's failure to observe or perform any of the terms and conditions of this Security Agreement or a breach of any covenant or default or event of default, as provided therein, under the Obligations or any instrument executed by Debtor in connection therewith.

(c)     Any warranty, representation or statement made or furnished to Security Party by Debtor is or becomes untrue in any respect.

(d)     The placement or issuance of any levy, lien, writ of attachment, writ of garnishment, writ of execution or similar process, against Debtor or any of Debtor's property, provided the same is not removed or satisfied within thirty (30) days or upon Debtor depositing a sum with Secured Party in a sufficient amount to satisfy the same.

(e)     If a Debtor shall have become insolvent, makes an assignment for the benefit of creditors or is generally unable to pay or meet its obligations as they mature, or shall apply for or consent to the appointment of a custodian, trustee or receiver for all or any portion of the properties, assets or the Collateral, if any such custodian, trustee or receiver shall not be discharged forthwith; or if any proceedings shall be commenced by or against Secured Party under any bankruptcy, reorganization, arrangement insolvency, readjustment of debt, dissolution or liquidation law or a statute of the United States or any State thereof, which shall not be dismissed within sixty (60) calendar days.

6.     Rights Upon Default.   In addition to any other rights given to Secured Party hereunder and applicable law, if any Event of Default shall occur and be continuing, all payments and/or distributions received by Debtor under or in connection with any of the Collateral shall be held by Debtor in trust for Secured Party, shall be segregated from other funds of Debtor and shall immediately upon receipt by Debtor be turned over to Secured Party in the same form as received by Debtor (duly endorsed by Debtor to Secured Party, if required) including all original checks, drafts, acceptances, notes and other evidence of payment related thereto.

7.     Remedies Upon Default.   If any Event of Default shall occur and be continuing, Secured Party may declare any and all of the Obligations to be immediately due and payable without notice, and shall have and may exercise, in addition to all other rights and remedies granted to it in this Security Agreement and in any other instrument or agreement securing, evidencing or relating to the Obligations, any one or more of the following rights and remedies:

(a)     All the rights and remedies upon default, in forfeiture and otherwise available to secured parties under the Uniform Commercial Code and other applicable law.

(b)     To receive any and all distributions of whatsoever kind or nature from the LLC, at such times and in such forms and amounts which Debtor may at any time be entitled.

008247\016805\{00176007.DOC}

CONFIDENTIAL

(c)    Sell, dispose of or cause to be sold, or disposed of, all or any part of the Collateral at one or more public or private sales or other dispositions, in such places and times and on such terms and conditions as Secured Party as may be commercially reasonable under the circumstances existing at the time of sale.

To the extent permitted by applicable law, Debtor waives all claims, damages and demands against Secured Party arising out of the repossession, retention, sale or other disposition of the Collateral. Debtor agrees that Secured Party need not give more than ten (10) days notice of the time and place of any public sale or of the time after which a private sale may take place and that such notice is reasonable notification of such matters. No notification need be given to Debtor, if Debtor, after the occurrence of an Event of Default, has signed a statement renouncing or modifying any right to notification of sale or other intended disposition.

Debtor agrees to pay all costs of Secured Party, including reasonable attorneys' fees and expenses, incurred with respect to the collection of any of the Obligations and the enforcement of any of its rights hereunder. Debtor hereby waives presentment, demand, protest or any notice (to the extent permitted by applicable law) of any kind in connection with this Security Agreement or the Collateral.

      8.    Secured Party's Appointment as Attorney-in-Fact.

      (a)    Appointment; Powers. Debtor hereby irrevocably constitutes and appoints Secured Party, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of Debtor and in the name of Debtor or in its own name, from time to time in Secured Party's discretion, for the purpose of carrying out the terms of this Security Agreement, to exercise any of the rights or remedies granted to Secured Party under this Security Agreement, to exercise any of the rights and remedies granted to Secured Party under this Security Agreement and to take any and all other appropriate action and to execute any and all documents and instruments which may be necessary or desirable under this Security Agreement.

      (b)    Powers Coupled With An Interest. All powers, authorizations and agencies herein contained in this Security Agreement with respect to the Collateral are irrevocable and powers coupled with an interest. Debtor hereby ratifies all that said attorney shall lawfully do or cause to be done by virtue hereof.

      9.    Disclaimer of any Liability.    Secured Party shall not have any liability as a member of the LLC as a result of the assignment of Debtor's membership interest in the LLC made by this Security Agreement.

      10.    Venue; Jurisdiction, Waiver of Jury Trial; Waiver of Statute of Limitations; Release of Secured Party.

A60

(a)　Venue; Jurisdiction.  The validity of this Security Agreement, its construction, interpretation and enforcement and the rights of the parties hereto shall be determined under, governed by and construed in accordance with the laws of the State of Michigan, without regard to principals of conflicts of law. The parties agree that all actions or proceedings arising in connection with this Security Agreement shall be tried and litigated only in the courts of Oakland County, the State of Michigan and of the United States for the Eastern District of Michigan. Debtor hereby irrevocably accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction and venue of such courts.

(b)　Waiver of Jury Trial.　Secured Party and Debtor acknowledge and agree that there may be a constitutional right to a jury trial in connection with any claim, dispute or lawsuit arising between them, but that such right may be waived. Accordingly, the parties agree that notwithstanding such constitutional right, in this commercial matter the parties believe and agree that it shall be in their best interest to waive such right, and, accordingly, hereby waive such right to a jury trial, and further agree that the best forum for hearing any claim, dispute or lawsuit, if any, arising in connection with this Security Agreement or the relationship between Secured Party and Debtor, shall be a court of competent jurisdiction sitting without a jury.

(c)　Waivers Voluntary.  The waivers contained in this Security Agreement are freely, knowingly and voluntarily given by each party, without any duress or coercion, after each party has consulted with its counsel and has carefully and completely read all of the terms and provisions of this Security Agreement, specifically including the waivers contained in this Section.  Neither Secured Party nor Debtor shall be deemed to have relinquished the waivers contained herein except by a writing signed by the party to be charged without having relinquished any such waiver.

(d)　Waiver by Debtor.  Debtor hereby knowingly, voluntarily and intelligently waives any and all causes of action and claims which it may have against Secured Party or its agents as a result of the exercise by Secured Party or its agents, of any of Secured Party's rights and remedies hereunder, and Secured Party or its agents shall have no duty with respect to the Collateral.  Debtor hereby further knowingly, voluntarily and intelligently waives any and all defenses it may have in connection with the Obligations or the exercising by the Secured Party of its rights and remedies after the Default has occurred under this Security Agreement.

12.　Notices.  All notices, requests and demands to or upon the respective parties hereto to be effective, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered by hand, or by next day delivery or three (3) days after being deposited in the U.S. mail, postage prepaid, or in the case electronic notice, when sent, confirmed, addressed to such party.

13.     Severability.  Any provision of this Security Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.

14.     No Waiver, Cumulative Remedies.  Secured Party shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies hereunder and no waiver shall be valid unless in writing, signed by Secured Party and then only to the extent therein set forth.

15.     Successors and Assigns.  This Security Agreement and all Obligations of Debtor hereunder shall be binding upon the successors and assigns of Debtor, and shall, together with the rights and remedies of Secured Party hereunder inure to the benefit of Secured Party and its successors and assigns; provided, however, that Debtor may not assign any of its rights or Obligations hereunder without the prior written consent of Secured Party.

16.     Counterparts.  This Security Agreement may be executed by the parties hereto on any number of separate counterparts and all of such counterparts taken together shall be deemed to constitute one and the same instrument.

17.     Survival of Agreements, Representations, and Warranties.  All agreements, representations, warranties and indemnities made herein shall survive the execution and delivery of this Security Agreement and incurring the Obligations secured hereby.

18.     Construction.  Neither this Security Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Secured Party, whether under any rule of construction or otherwise.  On the contrary, this Security Agreement has been reviewed by each of the parties and their counsel and shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of all parties hereto.

19.     Complete Agreement.  This Security Agreement together with the exhibits to this Security Agreement, the Note and the other agreements and documents executed in connection herewith or referred to herein or by their terms referring hereto, is intended by the parties as a final expression of their agreement and is intended as a complete statement of the terms and conditions of their agreement.

20.     Headings.  Headings used herein are for convenience of reference only and shall not constitute a part of this Security Agreement for any other purpose or affect the construction of this Security Agreement.

008247\016805\(00176007.DOC)

- 8 -

A62

Each of the parties hereto has caused this Assignment of Membership Interest and Security Agreement to be executed and delivered as of the date first set forth above.

DEBTOR:

INNOVATION VENTURES ACQUISITION CO., LLC, a Michigan limited liability company

Manoj Bhargava, Manager

SECURED PARTY:

Indu Rawat

| Form 870-LT (Rev. 6-2008) For partnership taxable years ending after August 5, 1997 | Department of the Treasury — Internal Revenue Service **Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items** | IN REPLY REFER TO: |
|---|---|---|
| Taxpayer(s) name(s), address and zip code:<br><br>Indu Rawat | Name of Partnership:<br><br>Innovation Ventures LLC<br>DBA Living Essentials<br><br>EIN: ██████ | Tax Year(s) Ended:<br><br>200712 200812<br><br>**RECEIVED** |
| TIN: ██████ | Name of Tax Matters Partner:<br><br>Manoj Bhargava, TMP | FEB 1 4 2011<br><br>LB&I:MMT |

### Part I— Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached Schedule of Adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive(s) the restrictions provided by IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as set forth in the attached Schedule of Adjustments, plus any interest provided by law. IRC Section 6651 late filing penalty applies to any late filed returns that are required to report the partnership item adjustments.

This is a binding settlement only when you sign this form, it is returned to us, and we sign on behalf of the Commissioner. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If Part I of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership ~~RECEIVED~~ this agreement will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted. FEB 1 4 2011

Once the taxpayer signs such a waiver and it is countersigned by the Commissioner, the taxpayer ~~cannot file~~ an Administrative Adjustment Request (AAR) on any partnership items for the related TEFRA entity. This includes partnership items not specifically addressed on the attached Schedule of Adjustments.

| Signature of Taxpayer<br><br>*Indu Rawat* | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner<br>APR 2 8 2011<br><br>Office OGDEN COMPLIANCE SERVICES CENTER | Signature ██████<br><br>Title Tefra Coord |
|---|---|---|

| log Number 57314P | www.irs.gov | (See instructions for Signing Agreement) | Form 870-LT (Rev. 6-2008) |

Exhibit B
Dkt. No. 15340-16

A65

## Part II – Offer of Agreement for Affected Items and Waiver of Restrictions on Assessment

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partner level determinations (affected items) as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partner level determinations, as set forth in the attached Schedule of Adjustments, plus any interest provided by law. This is a binding settlement only when you sign this form; return it to us and we sign on behalf of the Commissioner.

If Part II of this agreement form is signed for the Commissioner, the treatment under this agreement of the specified affected items and the partner level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of affected items or partner level determinations as to penalties, additions to tax, and additional amounts, or a refund or credit based on any change in the treatment of these affected items or partner level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

This agreement with respect to affected items and partner level determinations as to penalties, additions to tax, and additional amounts is not subject to a request for consistent settlement terms pursuant to IRC section 6224(c)(2).

**RECEIVED**

FEB 1 4 2011

LB&I HMT
Team 1690

| Signature of Taxpayer *Indu Rawat* | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner APR 2 8 2011 | Signature |
|---|---|---|
| | Office OGDEN COMPLIANCE SERVICES CENTER | Title |

# Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items

## SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Innovation Ventures LLC DBA Living Essentials | 12/31/2007 | 12/31/2008 | |
| EIN: | | | |
| **DETAIL OF ADJUSTMENTS TO ORDINARY INCOME:** | | | |
| a. Additional § 263A costs | 503,160.00 | (503,160.00) | |
| b. Insurance expenses | 1,000.00 | 1,000.00 | |
| c. Travel expense | 25,071.00 | 69,257.00 | |
| d. Auto & truck expenses | 7,525.00 | 12,462.00 | |
| e. Legal & professional fees | 97,850.00 | 75,212.00 | |
| f. | | | |
| g. | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | 634,606.00 | (345,229.00) | |
| OTHER ADJUSTMENTS | | | |
| A. Portfolio income (loss) interest | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 105,012.00 | 31,780.00 | |
| (3) CORRECTED | 105,012.00 | 31,780.00 | |
| B. Guaranteed payments to partner | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 207,912.00 | 608,852.00 | |
| (3) CORRECTED | 207,912.00 | 608,852.00 | |

REMARKS

Other income relates to unrealized receivables as defined under Section 751. For additional information please refer to Form 886-A.

A67

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Innovation Ventures LLC<br>DBA Living Essentials<br><br>EIN: ▓▓▓▓ | 12/31/2007 | 12/31/2008 | |
| C. Net gain (loss) under section 1231 not casualty/theft | | | |
| (1) ADJUSTMENT | | 0.00 | |
| (2) AS REPORTED | | (792.00) | |
| (3) CORRECTED | | (792.00) | |
| D. Other income (loss) | | | |
| (1) ADJUSTMENT | 0.00 | 6,523,176.00 | |
| (2) AS REPORTED | 31,068.00 | 0.00 | |
| (3) CORRECTED | 31,068.00 | 6,523,176.00 | |
| E. Charitable contributions 50 percent | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 17,914.00 | 15,158.00 | |
| (3) CORRECTED | 17,914.00 | 15,158.00 | |
| F. Section 179 expense deduction | | | |
| (1) ADJUSTMENT | 0.00 | | |
| (2) AS REPORTED | 125,000.00 | | |
| (3) CORRECTED | 125,000.00 | | |
| G. Other deductions | | | |
| (1) ADJUSTMENT | 0.00 | 6,088,298.00 | |
| (2) AS REPORTED | 15,912.00 | 29,699,560.00 | |
| (3) CORRECTED | 15,912.00 | 35,787,858.00 | |
| H. Investment income included in portfolio income | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 105,012.00 | 31,780.00 | |
| (3) CORRECTED | 105,012.00 | 31,780.00 | |
| I. Net earnings (loss) from self-employment | | | |
| (1) ADJUSTMENT | 1,022,795.00 | 697,073.00 | |
| (2) AS REPORTED | 296,095.00 | 852,927.00 | |
| (3) CORRECTED | 1,318,890.00 | 1,550,000.00 | |

# Form 870-LT, Other Adjustments (Continued)

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Innovation Ventures LLC DBA Living Essentials | 12/31/2007 | 12/31/2008 | |
| EIN: | | | |
| J.  Gross nonfarm income | | | |
| (1) ADJUSTMENT | 0.00 | | |
| (2) AS REPORTED | 366,112.00 | | |
| (3) CORRECTED | 366,112.00 | | |
| K.  Adj./tax pref. items depreciation in serv. after 1986 | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 5,953.00 | 42,218.00 | |
| (3) CORRECTED | 5,953.00 | 42,218.00 | |
| L.  Nondeductible expenses | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 7,200.00 | 146,130.00 | |
| (3) CORRECTED | 7,200.00 | 14 ,130.00 | |
| M.  Distributions - money (cash/securities) | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 26,780,400.00 | 69,351,085.00 | |
| (3) CORRECTED | 26,780,400.00 | 69,351,085.00 | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |

**Internal Revenue Service**
38275 W. 12 Mile, Suite 200
Farmington Hills, MI 48331

**Department of the Treasury**

**Date:**
February 10, 2012
**Taxpayer Identification Number:**
████████████

Ms. Indu Rawat
████████████████████████████ IV
██████████002
██████

**Name of Partnership:**
Innovation Ventures, LLC
**Partnership ID Number:**
████████████

**Tax Year Ending:**
200812
**Person to Contact:**
Michael A. Murray
**Employee Identification Number:**
02-37183
**Contact Hours:**
8:00 am - 4:30 pm
**Telephone Numbers:**
(248) 848-8522
(Not a toll-free number)

### Notice of Computational Adjustment

Dear Ms. Rawat:

We have completed our examination of the partnership return for the year(s) shown above.

The enclosed Form 4549-A, Income Tax Discrepancy Adjustments, explains changes made to your income tax liability, including applicable penalties, as a result of our examination of the partnership. Form 4549-A does not require any signatures, should not be returned to us, and should be kept for your records.

The adjustments are being made as a result of:

- an agreement you signed,
- an agreement signed by representatives of an entity you are directly or indirectly invested in,
- a court decision,
- an Administrative Adjustment Request,
- allowing a Notice of Final Partnership Administrative Adjustment that was sent to you, the Tax Matters Partner of the partnership or an entity through which you hold your partnership interest, to lapse without bringing a timely challenge in Tax Court, or
- failure to file consistently with the partnership return.

This notice of computational adjustment includes a Form 4549-A which reflects the amount you owe based upon adjustments to a partnership(s) in which are directly or indirectly invested. This does not include any adjustments that may be proposed as a result of any other partnership examinations not referenced above. You may choose to pay the amount shown on the Form 4549-A, as interest will continue to accrue on any unpaid balance. You will receive a separate billing that will reflect any credits/payments and updated interest calculations. If you are due a refund, it will be issued to you if you owe no other taxes, have no other legal obligations that we are required to collect, and are not a party to any other partnership examinations. If you are 'ue a refund, it should be sent to you within six to eight weeks.

Exhibit C
Dkt. No. 15340-16

**Letter 4735 (11-2011)**
Catalog Number 57922V



A70

To dispute the computational adjustment made to your return or to assert partner-level defenses to any penalty imposed in this notice, you must pay the tax as adjusted in full, and then file a claim for refund at the address provided above within six months from the date of this letter. If you send your claim to an address other than the above address, processing will be delayed and your claim may be disallowed if received at the address specified in this letter after the end of the six-month period. You may file a refund suit as provided by law if your timely-filed refund claim is disallowed or not acted upon within six months after the date it is filed.

If you believe that the calculation of the computational adjustment is wrong because of a mathematical error, please contact us. You do not have to pay the tax in order to discuss issues related to the calculation of the liability. You may call the person whose telephone number and contact hours are shown above or write that person at the IRS address at the top of this letter. Additionally, if you have any other questions about this notice, contact the person listed on this form as they will be most familiar with your case. If you do not contact us concerning any mathematical errors related to this liability within six months from the date of this letter, your failure to contact us may preclude you from raising these issues during any later collection due process proceedings.

If you have any affected items subject to deficiency procedures, a separate notice of deficiency will be sent to you.

If you write, please include your telephone number, the hours you can be reached and a copy of this letter.

Thank you for your cooperation.

Sincerely,

Michael A. Murray
Revenue Agent

Enclosures:
Form 4549-A
Copy of this letter
Form 870-LT

Name and Address of Taxpayer

Indu Rawat

Taxpayer Identification Number

Return Form No.:
1040

| Person with whom examination changes were discussed. | Name and Title: |
|---|---|

| 1. **Adjustments to Income** | Period End 12/31/2008 | Period End | Period End |
|---|---|---|---|
| a. Sch E-Inc/Loss-Partnership-Innovation Ventures LLC | 6,523,176.00 | | |
| b. Standard Deduction | (5,450.00) | | |
| c. Exemptions | (2,333.00) | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| 2. **Total Adjustments** | 6,515,393.00 | | |
| 3. Taxable Income Per Return or as Previously Adjusted | 0.00 | | |
| 4. **Corrected Taxable Income** | 6,515,393.00 | | |
|     Tax Method | TAX RATE | | |
|     Filing Status | Single | | |
| 5. **Tax** | 2,258,984.00 | | |
| 6. **Additional Taxes / Alternative Minimum** | | | |
| 7. Corrected Tax Liability | 2,258,984.00 | | |
| 8. **Less**    a. | | | |
|   **Credits**   b. | | | |
|          c. | | | |
|          d. | | | |
| 9. **Balance** *(Line 7 less total of Lines 8a thru 8d)* | 2,258,984.00 | | |
| 10. **Plus**   a. | | | |
|   **Other**   b. | | | |
|   **Taxes**   c. | | | |
|         d. | | | |
| 11. Total Corrected Tax Liability *(Line 9 plus Lines 10a thru 10d)* | 2,258,984.00 | | |
| 12. Total Tax Shown on Return or as Previously Adjusted | 0.00 | | |
| 13. Adjustments to: a. | | | |
|            b. | | | |
|            c. | | | |
| 14. Deficiency-Increase in Tax or *(Overassessment - Decrease in Tax)* *(Line 11 less Line 12 adjusted by Lines 13a through 13c)* | 2,258,984.00 | | |
| 15. Adjustments to Prepayment Credits-Increase *(Decrease)* | | | |
| 16. **Balance Due or (Overpayment)** - *(Line 14 adjusted by Line 15)* *(Excluding interest and penalties)* | 2,258,984.00 | | |

| Name of Taxpayer<br>Indu Rawat | Taxpayer Identification Number | Return Form No.:<br>1040 |
|---|---|---|

| **17. Penalties/ Code Sections** | Period End<br>12/31/2008 | Period End | Period End |
|---|---|---|---|
| a. Delq-IRC 6651(a)(2) | 384,027.28 | | |
| b. Delq-IRC 6651(a)(1) | 508,271.40 | | |
| c. Estimated Tax-IRC 6654 | 72,595.97 | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| **18. Total Penalties** | 964,894.65 | | |
| Underpayment attributable to negligence: *(1981-1987)*<br>*A tax addition of 50 percent of the interest due on the*<br>*underpayment will accrue until it is paid or assessed.* | | | |
| Underpayment attributable to fraud: *(1981-1987)*<br>*A tax addition of 50 percent of the interest due on the*<br>*underpayment will accrue until it is paid or assessed.* | | | |
| Underpayment attributable to Tax Motivated Transactions *(TMT)*.<br>Interest will accrue and be assessed at 120% of underpayment<br>rate in accordance with IRC 6621(c). | 0.00 | | |
| **19. Summary of Taxes, Penalties and Interest:** | | | |
| a. Balance due or *(Overpayment)* Taxes - *(Line 16, Page 1)* | 2,258,984.00 | | |
| b. Penalties *(Line 18)* - computed to 02/10/2012 | 964,894.65 | | |
| c. Interest *(IRC § 6601)* - computed to 03/11/2012 | 0.00 | | |
| d. TMT Interest - computed to 03/11/2012 *(on TMT underpayment)* | 0.00 | | |
| e. Amount due or refund - *(sum of Lines a, b, c and d)* | 3,223,878.65 | | |

**Other Information:**
The adjustment is due to the examination of Innovative Ventures LLC, DBA Living Essentials. A form 870 LT has been signed and executed agreeing to the adjustments flowing through Innovation Ventures. This agreement also binds you to the resulting change to your return.

| Examiner's Signature:<br>Name<br><br>Michael Murray | Employee ID:<br><br>02-37185 | Office:<br><br>Farmington Hills, MI | Date:<br><br>02/10/2012 |
|---|---|---|---|

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the required tax. The IRS may order backup withholding *(withholding of a percentage of your dividend and/or interest payments)* if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

A73

---

### 2008 - Form 6251 - Alternative Minimum Tax Computation

|   |   |
|---|---:|
| 1. If filing Schedule A, enter taxable income before exemptions; | |
|     otherwise, enter adjusted gross income | 6,523,176.00 |
| 2. Total adjustment and preferences (excluding any NOL deduction) | 0.00 |
| 3. Net operating loss deduction | 0.00 |
| 4. Alternative tax net operating loss deduction | 0.00 |
| 5. Alternative minimum taxable income (combine lines 1 thru 4) | 6,523,176.00 |
| 6. Exemption amount | 0.00 |
| 7. Subtract line 6 from line 5 (if zero or less, enter zero) | 6,523,176.00 |
| 8. If capital gains are reported, see line 19 from continuation page | |
|     (If FEIT worksheet for AMT is used, enter amount from line 6 of that worksheet instead) | |
|     All others: | |
|     If line 7 is $175,000 or less ($87,500 if MFS) multiply | |
|     line 7 by 26%. Otherwise, multiply line 7 by 28% and | |
|     subtract $3,500 ($1,750 if MFS) from the result | 1,822,989.00 |
| 9. Alternative minimum tax foreign tax credit | 0.00 |
| 10. Tentative minimum tax (line 8 less line 9) | 1,822,989.00 |
| 11. Regular tax before credits (if Schedule J was used to figure tax, | |
|     use the refigured amounts for lines 44 and 47 of Form 1040 | |
|     without using Schedule J) | 2,258,984.00 |
| 12. Alternative minimum tax | 0.00 |

### Exemption Worksheet (line 6 above)

|   |   |
|---|---:|
| A. Exemption amount based on filing status | 46,200.00 |
| B. Alternative minimum taxable income | 6,523,176.00 |
| C. Enter $112,500 ($150,000 if married filing jointly or | |
|     qualifying widow(er), $75,000 if married filing separately) | 112,500.00 |
| D. Subtract line C from line B | 6,410,676.00 |
| E. Multiply line D by 25% | 1,602,669.00 |
| F. Subtract line E from line A (if zero or less, enter zero) | 0.00 |

### 2008 - Form 6251 - Continuation, Tax Computation Using Maximum Capital Gain Rates

| | |
|---|---:|
| 1. Amount from Form 6251 report, line 7 | 6,523,176.00 |
|    (If FEIT worksheet for AMT was used, enter amount from line 3 of that worksheet instead) | |
| 2. Amount from line 6 Qualified Dividends and Capital Gain Tax Worksheet | |
|    or line 13 Schedule D Tax Worksheet (refigured for AMT) | 0.00 |
| 3. Amount from Schedule D line 19 (refigured for AMT) | 0.00 |
| 4. Amount from line 2 if no Schedule D worksheet; otherwise, the smaller of | |
|    the sum of line 2 and line 3 or Schedule D worksheet line 10 (refigured for AMT) | 0.00 |
| 5. Smaller of line 1 or line 4 | 0.00 |
| 6. Subtract line 5 from line 1 | 6,523,176.00 |
| 7. If line 6 is $175,000 or less ($87,500 if MFS) multiply line 6 by 26%; | |
|    otherwise, multiply line 6 by 28% and subtract $3,500 ($1,750 if MFS) | |
|    from the result | 1,822,989.00 |
| 8. Enter: | |
|    $65,100 if married filing jointly or qualifying widow(er) | |
|    $32,550 if single or married filing separately | 32,550.00 |
|    $43,650 if head of household | |
| 9. Amount from line 7 Qualified Dividends and Capital Gain Tax Worksheet | |
|    or line 14 Schedule D Tax Worksheet | 0.00 |
| 10. Subtract line 9 from line 8 (if zero or less, enter zero) | 32,550.00 |
| 11. Smaller of line 1 or line 2 | 0.00 |
| 12. Smaller of line 10 or line 11 | 0.00 |
| 13. Subtract line 12 from line 11 | 0.00 |
| 14. Multiply line 13 by 15% | 0.00 |
| 15. Subtract line 11 from line 5 | 0.00 |
| 16. Multiply line 15 by 25% | 0.00 |
| 17. Total of lines 7, 14 and 16 | 1,822,989.00 |
| 18. If line 1 is $175,000 or less ($87,500 if MFS) multiply line 1 by 26%; | |
|    otherwise, multiply line 1 by 28% and subtract $3,500 ($1,750 if MFS) | |
|    from the result | 1,822,989.00 |
| 19. Smaller of line 17 or line 18. Enter here and on line 8 of Form 6251 report | 1,822,989.00 |

## EXPLANATION OF THE DELINQUENCY PENALTY

Since your income tax return was not filed within the time limit prescribed by law and/or the tax was not paid, and you have not shown that such failure was due to reasonable cause, an addition to the tax is charged as shown below, in accordance with Section 6651(a)(1) and/or Section 6651(a)(2) of the Internal Revenue Code.

### 2008 - DELINQUENCY PENALTY

| | | |
|---|---|--:|
| 1. Delinquency penalty abated | | 0.00 |
| 2. Date return due | 04/15/2009 | |
| 3. Date return filed | 02/10/2012 | |
| 4. Failure to File penalty rate | 0.225 | |
| 5. Failure to Pay penalty rate | 0.170 | |
| 6. Total corrected tax liability | | 2,258,984.00 |
| 7. Allowable payments on or prior to due date of return | | 0.00 |
| 8. Net Amount Due (line 6 less line 7) | | 2,258,984.00 |
| 9. Failure to File Penalty - line 8 multiplied by line 4 | | 508,271.40 |
| 10. Minimum penalty if over 60 days delinquent | | 135.00 |
| 11. Failure to File Penalty - Greater of line 9 or line 10 | | 508,271.40 |
| 12. Previously assessed/previously agreed Failure to File Penalty | | 0.00 |
| 13. Net Failure to File Penalty - line 11 less line 12 | | 508,271.40 |
| 14. Failure to Pay Penalty - line 8 multiplied by line 5 | | 384,027.28 |
| 15. Previously assessed/previously agreed Failure to Pay Penalty | | 0.00 |
| 16. Net Failure to Pay Penalty - line 14 less line 15 * | | 384,027.28 |
| 17. Total Delinquency Penalty - Sum of line 13 and 16 | | 892,298.68 |

* If an amount appears as the Failure to Pay Penalty, the amount only reflects the addition to tax under Internal Revenue Code section 6651(a)(2) through the date of this notice. The addition to tax will continue to accrue from the due date of the return at a rate of 0.5 percent each month, or fraction thereof, of nonpayment, not exceeding 25 percent.

A76

## 2008 - EXPLANATION OF THE ESTIMATED TAX PENALTY

Since you did not pay sufficient estimated tax, addition to the tax is charged as shown below, in accordance with Section 6654(a) of the Internal Revenue Code.

| | | | | |
|---|---|---|---|---|
| 1. Total corrected tax liability, Form 4549, line 11 (Tax Per Return, if a return was filed) | | | | 2,258,984.00 |
| 2. Refundable Credits | | | | 0.00 |
| 3. Withholding taxes | | | | 0.00 |
| 4. Line 1 less sum of lines 2 & 3 (if less than $1000, estimated penalty does not apply) | | | | 2,258,984.00 |
| 5. 90% of the sum of line 1 less line 2 | | | | 2,033,085.60 |
| 6. Prior year tax liability (110% of tax if AGI was more than $150,000. or if MFS more than $75,000.) | | | | 0.00 |
| 7. The smaller of line 5 or 6 (as adjusted) | | | | 2,033,085.60 |

| | Apr 15, 2008 | Jun 15, 2008 | Sep 15, 2008 | Jan 15, 2009 |
|---|---|---|---|---|
| 8. Payment Due Date | Apr 15, 2008 | Jun 15, 2008 | Sep 15, 2008 | Jan 15, 2009 |
| 9. Payment Required | 508,271.40 | 508,271.40 | 508,271.40 | 508,271.40 |
| 10. Payments & Credits | 0.00 | 0.00 | 0.00 | 0.00 |
| 11. Overpayment from line 17 | | 0.00 | 0.00 | 0.00 |
| 12. Total of lines 10 & 11 | | 0.00 | 0.00 | 0.00 |
| 13. Previous Qtr Underpayment | | 508,271.40 | 1,016,542.80 | 1,524,814.20 |
| 14. Line 12 less line 13 | 0.00 | 0.00 | 0.00 | 0.00 |
| 15. Remaining Underpayment | | 508,271.40 | 1,016,542.80 | |
| 16. Underpayment | 508,271.40 | 508,271.40 | 508,271.40 | 508,271.40 |
| 17. Overpayment | 0.00 | 0.00 | 0.00 | 0.00 |
| 18. Penalty | 27,697.15 | 22,614.44 | 16,018.02 | 6,266.36 |
| 19. Previously Assessed/Previously Agreed Estimated Tax Penalty | | | | 0.00 |
| 20. Estimated Tax Penalty | | | | 72,595.97 |

A77

## 2008 - PERSONAL EXEMPTION WORKSHEET

1. Multiply $500 by the total number of displaced individuals listed in Part I of Form 8914
   (Maximum amount is $2,000; $1,000 if married filing separately)       0.00

2. Multiply $3,500.00  by the total number of exemptions claimed       3,500.00

3. Add lines 1 and 2       3,500.00

4. Adjusted gross income       6,523,176.00

5. Limitation based on filing status
   NOTE: If line 4 is not greater than line 5, STOP;
   enter amount from line 3 on line 13 below       159,950.00

6. Subtract line 5 from line 4       6,363,226.00

7. If line 6 is more than $122,500 ($61,250 if married filing separately)
   multiply $ 2,333.00  by the total number of exemptions claimed;
   otherwise, skip line 8 and go to line 9       2,333.00

8. Add lines 1 and 7 and enter the amount on line 13 below;
   do not complete the rest of the worksheet       2,333.00

9. Divide line 6 by $2,500 ($1,250 if married filing separately)
   (If result is not a whole number, increase to next whole number)       0.00

10. Multiply line 9 by 2% and enter the result as a decimal rounded to at least three places       0.00

11. Multiply line 2 by line 10       0.00

12. Divide line 11 by 3.0       0.00

13. Deduction for exemptions
    (subtract line 12 from line 3; or the amount from line 5 or line 8 above)       2,333.00

## HOW TO PAY YOUR TAXES

If you agree with our examination, pay now by sending a check or money order payable to United States Treasury and your signed agreement. The enclosed report does not reflect any balance currently due on your account.

Why it is to your advantage to pay now:

- Decreases future interest charges
- Prevents assessment of failure to pay penalty
- Reduces payment of nondeductible interest
- Eliminates further contact with us

If you agree with our examination and cannot pay now:

1) Can you pay the full amount within 120 days?   [ ] Yes    [ ] No
   - If yes, send in the signed agreement now and submit the balance due when you receive a bill. Checks should be made payable to United States Treasury.
   - If no, you may be eligible for a payment plan.

2) If you would like us to consider an installment agreement, submit your written request or check the box below and return this flyer with your signed agreement.

   [ ] I would like to pay $ _____ per month.

   (We encourage you to make your payments as large as possible to limit penalty and interest charges.)

   I would like my payment to be due on the _____ of the month.

   (Please indicate a date between the 1st and 28th of the month.)

   You will be charged a fee if your request is approved. DO NOT include the fee with this flyer. We will send you a bill for the fee when we approve your request.

   Please provide a telephone number where we can contact you regarding your request.

   Home: ( ___ ) _____

   Work: ( ___ ) _____

A79

| Form **870-LT** (Rev. 6-2008) For partnership taxable years ending after August 5, 1997 | Department of the Treasury — Internal Revenue Service **Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items** | IN REPLY REFER TO: |
|---|---|---|
| Taxpayer(s) name(s), address and zip code:<br><br>Indu Rawat<br><br><br><br>TIN: | Name of Partnership:<br><br>Innovation Ventures LLC<br>DBA Living Essentials<br><br>EIN:<br><br>Name of Tax Matters Partner:<br>Manoj Bhargava, TMP | Tax Year(s) Ended:<br>200712 200812<br><br>**RECEIVED**<br><br>FEB 1 4 2011<br><br>LB&I:HMT |

### Part I — Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached Schedule of Adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive(s) the restrictions provided by IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as set forth in the attached Schedule of Adjustments, plus any interest provided by law. IRC Section 6651 late filing penalty applies to any late filed returns that are required to report the partnership item adjustments.

This is a binding settlement only when you sign this form, it is returned to us, and we sign on behalf of the Commissioner. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If Part I of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items in this agreement will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

Once the taxpayer signs such a waiver and it is countersigned by the Commissioner, the taxpayer cannot file an Administrative Adjustment Request (AAR) on any partnership items for the related TEFRA entity. This includes partnership items not specifically addressed on the attached Schedule of Adjustments.

| Signature of Taxpayer<br><br>*Indu Rawat* | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner<br>APR 2 8 2011<br><br>Office OGDEN COMPLIANCE SERVICES CENTER | Signature<br><br>Title |
|---|---|---|

| log Number 57314P | www.irs.gov | (See instructions for Signing Agreement) | Form **870-LT** (Rev. 6-2008) |
|---|---|---|---|

**Part II – Offer of Agreement for Affected Items and Waiver of Restrictions on Assessment**

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partner level determinations (affected items) as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partner level determinations, as set forth in the attached Schedule of Adjustments, plus any interest provided by law. This is a binding settlement only when you sign this form; return it to us and we sign on behalf of the Commissioner.

If Part II of this agreement form is signed for the Commissioner, the treatment under this agreement of the specified affected items and the partner level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of affected items or partner level determinations as to penalties, additions to tax, and additional amounts, or a refund or credit based on any change in the treatment of these affected items or partner level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

This agreement with respect to affected items and partner level determinations as to penalties, additions to tax, and additional amounts is not subject to a request for consistent settlement terms pursuant to IRC section 6224(c)(2).

RECEIVED

—FEB 1 4 2011

LB&I:HMT
Team 1690

| Signature of Taxpayer *Indu Rawat* | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner APR 2 8 2011 | Signature |
| | Office OGDEN COMPLIANCE SERVICES CENTER | Title |

Catalog Number 57314P            www.irs.gov            (See instructions for Signing Agreement)            Form 870-LT (Rev. 6-2008)

A81

# Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items

## SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Innovation Ventures LLC DBA Living Essentials | 12/31/2007 | 12/31/2008 | |
| EIN: | | | |
| **DETAIL OF ADJUSTMENTS TO ORDINARY INCOME:** | | | |
| a. Additional § 263A costs | 503,160.00 | (503,160.00) | |
| b. Insurance expenses | 1,000.00 | 1,000.00 | |
| c. Travel expense | 25,071.00 | 69,257.00 | |
| d. Auto & truck expenses | 7,525.00 | 12,462.00 | |
| e. Legal & professional fees | 97,850.00 | 75,212.00 | |
| f. | | | |
| g. | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | 634,606.00 | (345,229.00) | |
| OTHER ADJUSTMENTS | | | |
| A. Portfolio income (loss) interest | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 105,012.00 | 31,780.00 | |
| (3) CORRECTED | 105,012.00 | 31,780.00 | |
| B. Guaranteed payments to partner | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 207,912.00 | 608,852.00 | |
| (3) CORRECTED | 207,912.00 | 608,852.00 | |

**REMARKS**

Other income relates to unrealized receivables as defined under Section 751. For additional information please refer to Form 886-A.

A82

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Innovation Ventures LLC<br>DBA Living Essentials<br><br>EIN: | 12/31/2007 | 12/31/2008 | |
| C.  Net gain (loss) under section 1231 not casualty/theft | | | |
| (1) ADJUSTMENT | | 0.00 | |
| (2) AS REPORTED | | (792.00) | |
| (3) CORRECTED | | (792.00) | |
| D.  Other income (loss) | | | |
| (1) ADJUSTMENT | 0.00 | 6,523,176.00 | |
| (2) AS REPORTED | 31,068.00 | 0.00 | |
| (3) CORRECTED | 31,068.00 | 6,523,176.00 | |
| E.  Charitable contributions 50 percent | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 17,914.00 | 15,158.00 | |
| (3) CORRECTED | 17,914.00 | 15,158.00 | |
| F.  Section 179 expense deduction | | | |
| (1) ADJUSTMENT | 0.00 | | |
| (2) AS REPORTED | 125,000.00 | | |
| (3) CORRECTED | 125,000.00 | | |
| G.  Other deductions | | | |
| (1) ADJUSTMENT | 0.00 | 6,088,298.00 | |
| (2) AS REPORTED | 15,912.00 | 29,699,560.00 | |
| (3) CORRECTED | 15,912.00 | 35,787,858.00 | |
| H.  Investment income included in portfolio income | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 105,012.00 | 31,780.00 | |
| (3) CORRECTED | 105,012.00 | 31,780.00 | |
| I.  Net earnings (loss) from self-employment | | | |
| (1) ADJUSTMENT | 1,022,795.00 | 697,073.00 | |
| (2) AS REPORTED | 296,095.00 | 852,927.00 | |
| (3) CORRECTED | 1,318,890.00 | 1,550,000.00 | |

A83

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Innovation Ventures LLC DBA Living Essentials | 12/31/2007 | 12/31/2008 | |
| EIN: ~~XXXXXXXX~~ | | | |
| J. Gross nonfarm income | | | |
| (1) ADJUSTMENT | 0.00 | | |
| (2) AS REPORTED | 366,112.00 | | |
| (3) CORRECTED | 366,112.00 | | |
| K. Adj./tax pref. items depreciation in serv. after 1986 | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 5,953.00 | 42,218.00 | |
| (3) CORRECTED | 5,953.00 | 42,218.00 | |
| L. Nondeductible expenses | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 7,200.00 | 146,130.00 | |
| (3) CORRECTED | 7,00.00 | 146,130.00 | |
| M. Distributions - money (cash/securities) | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 26,780,400.00 | 69,351,085.00 | |
| (3) CORRECTED | 26,780,400.00 | 69,351,085.00 | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |

US TAX COURT
RECEIVED

AUG 28 2017
5:17 PM

JRN



US TAX COURT
eFILED

AUG 28 2017

INDU RAWAT,

       Petitioner,

ELECTRONICALLY FILED

      v.

Docket No.   15340-16

COMMISSIONER OF INTERNAL REVENUE,

       Respondent

# JOINT STATUS REPORT

**UNITED STATES TAX COURT**

| | | |
|---|---|---|
| INDU RAWAT | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Docket No. 15340-16 |
| | ) | |
| COMMISSIONER OF INTERNAL REVENUE, | ) | Filed Electronically |
| | ) | |
| Respondent. | ) | |

**JOINT STATUS REPORT**

THE PARTIES SUBMIT, pursuant to the Court's Order dated July 18, 2017, this Joint Status Report setting forth their recommendations as to further proceedings in this case.

IN SUPPORT THEREOF, the parties respectfully state:

1. On June 21, 2017, the parties moved to continue this case from the trial session scheduled to begin September 18, 2017 in Detroit, Michigan. Said motion was granted on June 22, 2017.

2. On July 12, 2017, this case was assigned to Judge Gustafson for trial or other disposition.

3. Judge Gustafson presided over *Grecian Magnesite, Mining, Industrial & Shipping Co., SA v. Commissioner*, Docket Number 19215-12, which presented a substantially similar issue to the primary issue presented in this case. Specifically, the common issue is whether any part of the gain realized by a foreign partner on the disposition of an interest in a U.S. partnership is U.S.-source income, effectively connected with a

Docket No. 15340-15

U.S. trade or business. In *Grecian Magnesite*, respondent relied on the authorities described in Revenue Ruling 91-32, 1991-1 C.B. 107, as well as other related, complementary, or supportive authorities for his position that the gain realized by a foreign partner on the disposition of a U.S. partnership interest was U.S.-source income effectively connected with a U.S. trade or business.

4.   On July 13, 2017, the Court issued an opinion in *Grecian Magnesite* at 149 T.C. No.3.

5.   On July 18, 2017, the Court ordered the parties, in light of the opinion in *Grecian Magnesite*, to file a joint status report (or, if that is not expedient, then separate reports) or another appropriate filing in which they state their joint or several recommendations as to further proceedings in this case no later than August 31, 2017.

6.   The substantive issues in this case are whether (1) petitioner is subject to U.S. income tax on the 2008 sale of her membership interest in Innovation Ventures, LLC ("IV"), and whether she is subject to an increase in tax equal to the amount of interest determined under IRC section 453A(c); (2) respondent erred in assessing taxes against petitioner with respect to adjustments of partnership items of IV and by failing to apply

- 2 -

A87

Docket No. 15340-15

the installment method of accounting under IRC section 453
related to a prior IV partnership level adjustment under IRC
section 751, and (3) penalties under IRC section 6651(a)(1),
6651(a)(2) and 6654.

7.   As in *Grecian Magnesite*, respondent relies on the
authorities described in Revenue Ruling 91-32, 1991-1 C.B. 107,
and other related, complementary, or supportive authorities for
his position that, to the extent treated as a sale of a
partnership interest, Petitioner's sale of her interest in IV in
2008 resulted in U.S.-source income effectively connected with a
U.S. trade or business.

**RECOMMENDATION**

8.   In their Joint Motion for Continuance filed June 21,
2017, the parties stated that a determination in *Grecian
Magnesite* as to the correctness of respondent's position might
affect the trial preparation and/or resolution of this case. The
parties also stated that they continue to work on the case,
including informal discovery and settlement discussions.

9.   Whether respondent appeals the Court's determination
in *Grecian Magnesite* may affect the parties' view on the
appropriate handling or disposition of this case.

- 3 -

A88

Docket No. 15340-15

10. It is our understanding that a decision has not yet been entered in *Grecian Magnesite*. The appeal period will expire 90 days after such decision is entered.

11. Consequently, the parties recommend that the Court order the filing of a further status report on or before December 31, 2017. The parties believe that this deadline should allow sufficient time following the entry of a decision in *Grecian Magnesite* and the expiration of the appeal period in that case for the parties to evaluate and coordinate on the next steps in this case as well as provide the parties time to continue to discuss the possible settlement of issues in this case that are not specifically addressed by the opinion in *Grecian Magnesite*.

Docket No. 15340-15

WILLIAM M. PAUL
Acting Chief Counsel
Internal Revenue Service

_(signature)_

MICHAEL J. DESMOND
THE LAW OFFICES OF MICHAEL J.
DESMOND, APC
Tax Court Bar No. DM0366
21 E. Carrillo, Suite 220
Santa Barbara, CA 93101
Telephone: (805)618-1862

By: _(signature)_

S KATY LIN
Senior Attorney
(Large Business &
International)
Tax Court Bar No. LS0403
500 Woodward Avenue
One Detroit Center
Suite 1300
Detroit, MI 48226
Telephone: (313) 628-3116

Date: _August 28, 2017_

Date: AUG 28 2017

- 5 -

A90

US TAX COURT
RECEIVED

DEC 14 2017
11:35 AM

JRN



US TAX COURT
eFILED

DEC 14 2017

INDU RAWAT,

        Petitioner,

ELECTRONICALLY FILED

      v.

Docket No.   15340-16

COMMISSIONER OF INTERNAL REVENUE,

        Respondent

# JOINT STATUS REPORT

## UNITED STATES TAX COURT

| | | |
|---|---|---|
| INDU RAWAT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Docket No. 15340-16 |
| | ) | |
| COMMISSIONER OF INTERNAL REVENUE, | ) | |
| | ) | Filed Electronically |
| Respondent. | ) | |

### JOINT STATUS REPORT

THE PARTIES SUBMIT, pursuant to the Court's Order dated August 29, 2017, the following Joint Status Report.

1.    On July 12, 2017, this case was assigned to Judge Gustafson for trial or other disposition. On August 28, 2017, the parties submitted a prior Joint Status Report and, consistent with the parties' joint recommendation in that report, on August 29, 2017, the Court ordered that a further status report be filed no later than December 30, 2017.

2.    The petition filed in this case presents two primary issues for resolution, (1) whether petitioner, as a nonresident alien, is subject to tax on that portion of the gain on the sale of her interest in a U.S. partnership that is attributable to inventory (the "Inventory Gain Issue"); and (2) whether petitioner is subject to tax on the remaining balance of the gain on the sale of her partnership interest (the "Non-Inventory Gain" issue).

3.    The Inventory Gain Issue is subject to an overpayment claim raised in the petition pursuant to I.R.C. § 6512(b).  The Non-Inventory Gain issue is the subject of a Notice of Deficiency issued by respondent for the 2008 and 2009 tax years that is challenged in the petition.

4.    The Non-Inventory Gain issue was, subject to respondent's right to appeal, resolved by this Court's opinion in Grecian Magnesite Mining, Industrial & Shipping Co., SA v. Commissioner, 149 T.C. No. 3 (2017).  A Decision was entered in the Grecian Magnesite case on September 21, 2017; a notice of appeal has not yet been filed in the case, although the time period for doing so remains open.

5.    On August 27, 2017, petitioner made a formal offer to settle the Inventory Gain Issue, which was not specifically resolved by Grecian Magnesite.  On November 30, 2017, counsel for petitioner and counsel for respondent met in Detroit, Michigan, to discuss the possibility of settling the Inventory Gain Issue and, if settlement could not be reached, to discuss stipulations that could be used to facilitate presentation of the issue to the Court for resolution.

6.    The parties continue to discuss settlement and to work on stipulations.

A93

7.    In order to provide time for a decision to be made on an
appeal of Grecian Magnesite, petitioner and respondent
respectfully request that the Court direct the filing of a further
status report on or before April 30, 2018.  Should a basis for
settlement be reached prior to that date, the parties will
promptly inform the Court.

                                    DRITA TONUZI
                                    Deputy Chief Counsel
                                    (Operations)
                                    Internal Revenue Service

_/s/ Michael Desmond_                  By: _/s/ S. Katy Lin_
MICHAEL J. DESMOND                       S. KATY LIN
Counsel for Petitioner                   Senior Attorney (Large
Tax Court Bar No. DM0366                 Business & International)
21 E. Carrillo, Suite 220                Tax Court Bar No. LS0403
Santa Barbara, CA 93101                  500 Woodward Avenue
Telephone: (805) 618-1862                Detroit, MI  48226
                                         Telephone: (313) 628-3116

Date: _12/11/17_                       Date: _DEC 14 2017_

A94

US TAX COURT
RECEIVED

APR 25 2018
1:45 PM

JRN 

US TAX COURT
eFILED

APR 25 2018

INDU RAWAT,

      Petitioner,

                  ELECTRONICALLY FILED

      v.                   Docket No.   15340-16

COMMISSIONER OF INTERNAL REVENUE,

      Respondent

# JOINT STATUS REPORT

INDU RAWAT,                          )
                                     )
                    Petitioner,      )
                                     )
          v.                         )   Docket No. 15340-16
                                     )
COMMISSIONER OF INTERNAL REVENUE,    )
                                     )   Filed Electronically
                    Respondent.      )

## JOINT STATUS REPORT

THE PARTIES SUBMIT, pursuant to the Court's Order dated December 14, 2017, the following Joint Status Report.

1.   On December 14, 2017, the parties submitted a prior Joint Status Report.  On that same date, the Court ordered that a further status report be filed no later than April 30, 2018.

2.   The petition in this case presents two primary issues for resolution, (1) whether petitioner, as a nonresident alien, is subject to tax on that portion of the gain on the sale of her interest in a U.S. partnership that is attributable to inventory (the "Inventory Gain Issue"); and (2) whether petitioner is subject to tax on the remaining balance of the gain on the sale of her partnership interest (the "Non-Inventory Gain" issue).

3.   The Inventory Gain Issue is subject to an overpayment claim raised in the petition pursuant to I.R.C. § 6512(b).  The Non-Inventory Gain issue is the subject of a Notice of Deficiency

1

A96

them.  Because the Inventory Gain Issue may be affected by issues raised in Grecian Magnecite, if the issue is presented to the Court for resolution, the parties suggest that such presentation wait until a D.C. Circuit decision is issued in that case.

7.   Petitioner and respondent respectfully request that the Court direct the filing of a further status report on or before October 31, 2018.

WILLIAM M. PAUL
Acting Chief Counsel
Internal Revenue Service

MICHAEL J. DESMOND
Counsel for Petitioner
Tax Court Bar No. DM0366
21 E. Carrillo, Suite 220
Santa Barbara, CA 93101
Telephone: (805) 618-1862

Date: 4/18/18

By: _____
S. KATY LIN
Senior Attorney (Large
Business & International)
Tax Court Bar No. LS0403
500 Woodward Avenue
Detroit, MI 48226
Telephone: (313) 628-3116

Date: APR 25 2018

3

A97

issued by respondent for the 2008 and 2009 tax years that is
challenged in the petition.

4.     The Non-Inventory Gain issue was, subject to appeal,
resolved by this Court's opinion in Grecian Magnesite Mining,
Industrial & Shipping Co., SA v. Commissioner, 149 T.C. No. 3
(2017).  A Decision in favor of the petitioner was entered in
Grecian Magnesite on September 21, 2017.  On December 15, 2017,
respondent filed a Notice of Appeal from the Decision to the U.S.
Court of Appeals for the D.C. Circuit.  The case is now pending in
the D.C. Circuit (Docket No. 17-1268) and awaiting briefing, which
is currently scheduled to be completed by July 23, 2018.

5.     On August 27, 2017, petitioner made a formal offer to
settle the Inventory Gain Issue, which was not specifically
resolved by Grecian Magnesite.  On November 30, 2017, counsel met
in Detroit, Michigan to discuss the possibility of settling the
Inventory Gain Issue.  Although discussions continue, no
settlement of the Inventory Gain Issue has been reached.

6.     As the parties await a decision from the D.C. Circuit in
the Grecian Magnesite case, they continue to work on resolution of
the Inventory Gain Issue, whether by way of settlement or by
presentation to the Court on stipulated facts.  Draft stipulations
of fact have been exchanged and the parties continue to work on

2

A98

US TAX COURT
RECEIVED

JUL 10 2019

JRN

US TAX COURT
eFILED

JUL 10 2019

INDU RAWAT,

        Petitioner,

ELECTRONICALLY FILED

      v.

Docket No.   15340-16

COMMISSIONER OF INTERNAL REVENUE,

        Respondent

# JOINT STATUS REPORT

SERVED Jul 10 2019

A99

## UNITED STATES TAX COURT

INDU RAWAT,                          )
                                     )
                  Petitioner,        )
                                     )
         v.                          )   Docket No. 15340-16
                                     )
COMMISSIONER OF INTERNAL REVENUE,    )
                                     )   Filed Electronically
                  Respondent.        )

### JOINT STATUS REPORT

Pursuant to the Court's Order dated April 26, 2018, the parties submit the following Joint Status Report.

1.   On April 25, 2018, the parties submitted a Joint Status Report.  On the following day, April 26, 2018, the Court ordered that further status reports be filed no later than July 26, 2018, and every 90 days thereafter.  Pursuant to that order, the parties last submitted their Joint Status Report on April 22, 2019 and now submit this Joint Status Report.

2.   As previously reported, the petition in this case presents two primary issues for resolution: (1) whether petitioner, as a nonresident alien, is subject to tax on that portion of the gain on the sale of her interest in a U.S. partnership that is attributable to inventory (the "Inventory Gain Issue"); and (2) whether petitioner is subject to tax on the remaining balance of the gain on the sale of her partnership interest (the "Non-Inventory Gain" issue).

DOC# 3150383.v2-7/9/19

3.    On October 9, 2018, the Court of Appeals for the D.C. Circuit heard oral argument in the case of Grecian Magnesite, Industrial & Shipping Co., SA v. Commissioner of Internal Revenue, 149 T.C. No. 3 (2017), appeal docketed, No. 17-1268 (D.C. Cir. Dec. 18, 2017) (Grecian Magnesite).  The parties have agreed to resolve the Non-Inventory Gain issue in accordance with the resolution of Grecian Magnesite.

4.    On June 11, 2019, the Court of Appeals for the D.C. Circuit affirmed the Tax Court's decision.  Grecian Magnesite, Industrial & Shipping Co., SA v. Commissioner of Internal Revenue, No. 17-1268 (D.C. Cir.).  A petition for a writ of certiorari has not been filed in the case, although the time period for doing so remains open.

5.    While the parties have made efforts to settle the Inventory Gain Issue, which was not specifically addressed in Grecian Magnesite, the parties have been unable to achieve a settlement of the Inventory Gain Issue.  The parties anticipate further discussion of this issue after the Grecian Magnesite decision becomes final.

6.    In addition, the parties also wish to notify the Court that in Innovation Ventures, LLC, Manoj Bhargava, Tax Matters Partner v. Commissioner of Internal Revenue, Dkt. No. 5741-19, respondent has taken an inconsistent position with respect to the

transactions at issue in this case.  That position is contrary to respondent's position in this case that Indu Rawat ("Rawat") has taxable income from the sale of interests in Innovation Ventures, LLC ("Innovation Ventures").

7.    Specifically, in the Innovation Ventures case, respondent alleges that Innovation Ventures is not entitled to increase the inside basis of its assets on account of purchases of membership interests in 2008 from Rawat because, among other reasons: there was not a bona fide sale or exchange of membership interests that would give rise to a basis adjustment under section 743(b); the transactions at issue meet all the requirements for invocation of the anti-abuse provisions under Treasury Regulation section 1.701-2; or the increased basis of the goodwill should be disregarded for Federal tax purposes under judicial doctrines, including the economic substance doctrine and the step transaction doctrine.

8.    The parties are continuing to discuss whether settlement can be reached.  Moreover, petitioner is considering whether the "Inventory Gain" issue is subject to resolution by the Court on a motion for summary judgment.

9.    The parties in this case will continue to report to the Court, with the next status report filed no later than 90 days from the date hereof.  By that date respondent will know whether

Docket No. 15340-16          - 4 -

<u>Grecian Magnesite</u> has become final, petitioner should know whether the remaining issue can be resolved on motion, and the parties will report to the Court accordingly.  Should a basis for settlement be reached prior to that date, the parties will promptly inform the Court.


Respectfully submitted,      DRITA TONUZI
                             Deputy Chief Counsel
                             Internal Revenue Service


                             By: _____
_____
CHRISTOPHER S. RIZEK         H. BARTON THOMAS
Counsel for Petitioner       Special Trial Attorney
Tax Court Bar No. RC0369     (Large Business & International)
One Thomas Circle, N.W.      Tax Court Bar No. TH0204
Suite 1100                   200 West Adams St., #2400
Washington, DC 20005         Chicago, IL 60606
Telephone: (202) 862-8852    Telephone: (312) 368-8155
crizek@capdale.com           barton.thomas@irscounsel.treas.gov

Date:  July 9, 2019          Date: July 9, 2019


A103

US TAX COURT
RECEIVED

OCT 8 2019
2:56 PM



US TAX COURT
eFILED

OCT 8 2019

INDU RAWAT,

        Petitioner,

                                ELECTRONICALLY FILED

        v.                          Docket No.   15340-16

COMMISSIONER OF INTERNAL REVENUE,

        Respondent

# JOINT STATUS REPORT

INDU RAWAT,                         )
                                    )
                    Petitioner,     )
                                    )
          v.                        )   Docket No. 15340-16
                                    )
COMMISSIONER OF INTERNAL REVENUE,   )   Filed Electronically
                                    )
                    Respondent.     )   Judge David Gustafson

### JOINT STATUS REPORT

Pursuant to the Court's Order dated April 26, 2018, the parties submit the following Joint Status Report.

1.   The parties submitted their last Joint Status Report on July 10, 2019, in accordance with the Court's April 26, 2018 order that status reports be filed every 90 days.

2.   As previously reported, the petition in this case presents two primary issues for resolution: (1) whether petitioner Indu Rawat ("Rawat"), as a nonresident alien, is subject to tax on that portion of the gain on the sale of her interest in a U.S. partnership that is attributable to inventory (the "Inventory Gain Issue"); and (2) whether petitioner is subject to tax on the remaining balance of the gain on the sale of her partnership interest (the "Non-Inventory Gain" issue).

3.   The parties agreed to resolve the Non-Inventory Gain issue in accordance with the resolution of Grecian Magnesite Mining, Industrial & Shipping Co., SA v. Commissioner, 149 T.C.

DOC# 3187131

A105

No. 3 (2017), <u>affirmed</u>, 926 F.3d 819 (D.C. Cir. June 11, 2019)

("<u>Grecian Magnesite</u>").  Respondent did not file a petition for a

writ of certiorari of the D.C. Circuit's opinion, and the time for

doing so has expired, so that opinion is now final.  Pursuant to

the affirmance, this Court's docket indicates that the case was

returned with the mandate on August 6, 2019.  To that extent,

therefore, the parties are in agreement that the Non-Inventory

Gain issue is ripe for resolution by the Court.

     4.   The remaining Inventory Gain Issue was not specifically

addressed in <u>Grecian Magnesite</u>.  Petitioner, however, believes

that gain "attributable to . . . inventory items of [a]

partnership" (in the words of section 751(a) of the Internal

Revenue Code) is also subject to the logic of the <u>Grecian</u>

<u>Magnesite</u> opinion(s).  Petitioner's position is that petitioner's

gain is not treated as U.S. source income under the provisions of

Code sections 865(a) and (b), which source as domestic only the

gain from actual sales of inventory, not gain from the sale of a

partnership interest.  Petitioner now intends to move for partial

summary judgment on this issue, with a target date of

approximately November 15, 2019, to file the motion and supporting

materials.

5.      Petitioner notes further that in another case,

Innovation Ventures, LLC, Manoj Bhargava, Tax Matters Partner v.

Commissioner, Dkt. No. 5741-19, respondent has taken a

diametrically inconsistent position concerning whether Mrs. Rawat

engaged in a bona fide sale or exchange of a partnership interest

in Innovation Ventures, LLC ("Innovation Ventures").  Petitioner

further notes that in that case, respondent's position, among

others, is that Rawat did not engage in a bona fide sale or

exchange of a partnership interest in Innovation Ventures, whereas

in this case respondent has taken the position that Rawat did

engage in a bona fide sale or exchange of a partnership interest

in Innovation Ventures.  Petitioner contends that, if respondent

asserts that Rawat did not engage in a bona fide sale or exchange

of a partnership interest in Innovation Ventures, that position

would necessarily mean that Rawat had no taxable income from the

sale of her interests in Innovation Ventures and is therefore not

liable for the deficiency asserted in this case relating to either

the Non-Inventory Gain or the Inventory Gain Issues.

6.      Respondent's position in the Innovation Ventures case is

that Innovation Ventures is not entitled to increase the basis of

its assets on account of purchases of membership interests in 2008

from Rawat because, among other reasons:  there was not a bona

fide sale or exchange of membership interests that would give rise

to a basis adjustment under section 743(b); the transactions at

issue meet all the requirements for invocation of the anti-abuse

provisions under Treasury Regulation section 1.701-2; or the

increased basis of the goodwill should be disregarded for Federal

tax purposes under judicial doctrines, including the economic

substance doctrine and the step transaction doctrine.

    7.    The parties have been discussing whether, in light of

the <u>Grecian Magnesite</u> result and respondent's position in the

<u>Innovation Ventures</u> case, a settlement of this case can be

reached.  The parties have been unable to reach a settlement to

date.

Docket No. 15340-16      - 5 -

Respectfully submitted,

DRITA TONUZI
Deputy Chief Counsel
Internal Revenue Service

By: _____

CHRISTOPHER S. RIZEK
Tax Court Bar No. RC0369
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Suite 1100
Washington, DC 20005
Telephone: (202) 862-8852
crizek@capdale.com

H. BARTON THOMAS
Special Trial Attorney
(Large Business & International)
Tax Court Bar No. TH0204
200 West Adams St., #2400
Chicago, IL 60606
Telephone: (312) 368-8155
barton.thomas@irscounsel.treas.gov

NATHAN J. HOCHMAN
Tax Court Bar No. HN0101
Browne George Ross LLP
2121 Avenue of the Stars
Suite 2800
Los Angeles, California 90067
Telephone: (424) 202-5559
nhochman@bgrfirm.com

Date:  Oct. 8, 2019

Counsel for Respondent

Date:  Oct. 8, 2019

Counsel for Petitioner

A109

US TAX COURT
RECEIVED

DEC 20 2019
6:24 PM



US TAX COURT
eFILED

DEC 20 2019

INDU RAWAT,

       Petitioner,

                                 ELECTRONICALLY FILED

       v.                          Docket No.   15340-16

COMMISSIONER OF INTERNAL REVENUE,

       Respondent

# PETITIONER'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**SERVED Dec 20 2019**

A110

# UNITED STATES TAX COURT

| | |
|---|---|
| INDU RAWAT, | ) |
| | ) |
|         Petitioner, | ) |
| | ) |
|         v. | ) Docket No. 15340-16 |
| | ) |
| COMMISSIONER OF | ) |
| INTERNAL REVENUE, | ) Filed Electronically |
| | ) |
|         Respondent. | ) |

## MEMORANDUM IN SUPPORT OF
## PETITIONER'S MOTION FOR SUMMARY JUDGMENT

Petitioner's Motion for Summary Judgment addresses the two core issues in this case: the tax treatment of the so-called "Non-Inventory Gain" amount from the sale of Petitioner's partnership interest that occurred in December, 2008; and the tax treatment of the so-called "Inventory Gain" amount from the same sale. The parties previously agreed that the Non-Inventory Gain issue would be resolved pursuant to the resolution of Grecian Magnesite Mining, Indus. & Shipping Co., SA v. Comm'r, 149 T.C. 63 (2017), aff'd, 926 F.3d 819 (D.C. Cir. 2019) ("Grecian Magnesite"), which is now final and resolved in favor of the taxpayer. Consistent with the parties' prior agreement, this case requires entry of judgment in Petitioner's favor on the Non-Inventory Gain issue.

DOC# 3235080

Following the rationale of the <u>Grecian Magnesite</u> opinion, the Inventory

Gain likewise should not be treated as taxable U.S. source income under the

applicable provisions of the Internal Revenue Code of 1986 (the "Code" or "IRC"

or "Section"), specifically sections 751(a), 865(a), and 865(b).  Therefore,

Petitioner is similarly entitled to judgment in her favor on the Inventory Gain issue.

## STATEMENT OF FACTS

This case involves the proper U.S. tax treatment of gain realized by the

petitioner, Indu Rawat ("Petitioner"), from the sale of her partnership interest in

Innovation Ventures, LLC ("IV LLC") in 2008 in exchange for a promissory note

with a principal amount of $438,075,000.  The relevant facts are set forth below.

1.      IV LLC was treated as a partnership for federal income tax purposes

during all relevant tax years, including 2008.  <u>See, e.g.</u>, Petition, at ¶5.e; Answer, at

¶5(e); Joint Status Report, at ¶3 (Aug. 28, 2017) (describing Petitioner's "interest in

---

[1]   Petitioner paid a portion of the tax and penalties at issue in this case on June 1,
2016.  <u>See</u> Petition, at ¶5.hh; Answer, at ¶5.hh.  If Petitioner prevails on this
motion, then there is no deficiency and the Court should order the amount paid
to be refunded, with interest.  If Respondent prevails on the remaining
inventory gain issue, then a Rule 155 computation may be necessary before a
final decision document may be entered.

a U.S. partnership"); Joint Status Report, at ¶2 (Dec. 14, 2017) (same); Joint Status

Report, at ¶2 (Apr. 25, 2018) (same); Joint Status Report, at ¶3 (July 20, 2018)

(same); Joint Status Report, at ¶2 (Oct. 24, 2018) (same); Joint Status Report, at ¶2

(Jan. 22, 2019) (same); Joint Status Report, at ¶2 (Apr. 15, 2019) (same); Joint

Status Report, at ¶2 (July 10, 2019) (same); Joint Status Report, at ¶2 (Oct. 8,

2019) (same).

2.      The parties to this proceeding agree that in 2008 Petitioner, as a

nonresident alien, sold her partnership interest in IV LLC. See Joint Status Report,

at ¶6 (Aug. 28, 2017) ("whether . . . petitioner is subject to U.S. income tax *on the*

*2008 sale* of her membership interest in Innovation Ventures, LLC.") (emphasis

added); Joint Status Report, at ¶2 (Dec. 14, 2017) ("whether petitioner, as a

nonresident alien, is subject to tax on that portion of the gain *on the sale* of her

interest in a U.S. partnership that is attributable to inventory") (emphasis added);

Joint Status Report, at ¶2 (Apr. 25, 2018) (same); Joint Status Report, at ¶3 (July

20, 2018) (same); Joint Status Report, at ¶2 (Oct. 24, 2018) (same); Joint Status

Report, at ¶2 (Jan. 22, 2019) (same); Joint Status Report, at ¶2 (Apr. 15, 2019)

(same); Joint Status Report, at ¶2 (July 10, 2019) (same); Joint Status Report, at ¶2

(Oct. 8, 2019) ("whether petitioner . . . is subject to tax on that portion of the gain

*on the sale* of her interest in a U.S. partnership that is attributable to inventory")

(emphasis added).

3.     The parties also agree that the treatment of the portion of the gain

from the sale of Petitioner's partnership interest attributable to non-inventory, the

so-called Non-Inventory Gain Issue, is resolved by this Court's holding in Grecian

Magnesite, most recently in the Joint Status Report filed October 8, 2019.  See

Joint Status Report, at ¶3 (Oct. 8, 2019); Joint Status Report, at ¶4 (Dec. 14, 2017);

Joint Status Report, at ¶4 (Apr. 25, 2018); Joint Status Report, at ¶4 (July 20,

2018); Joint Status Report, at ¶3 (Oct. 24, 2018); Joint Status Report, at ¶3 (Jan.

22, 2019); Joint Status Report, at ¶3 (Apr. 15, 2019); Joint Status Report, at ¶3

(July 10, 2019).

4.     The parties have been unable to agree to the treatment of the portion

of the gain from the sale of Petitioner's partnership interest attributable to

inventory, the so-called Inventory Gain Issue.  See, e.g., Joint Status Report, at ¶5

(July 10, 2019).

5.     On May 13, 2016, Respondent mailed to Petitioner a notice of

deficiency of tax, plus penalties or additions to tax, with respect to Respondent's

adjustments attributable to the Non-Inventory Gain issue.  The proposed tax deficiencies are as follows:

| Year | Tax |
|------|-----|
| December 31, 2008 | $3,833,820.00 |
| December 31, 2009 | $2,555,880.00 |

The proposed penalties or additions to tax are as follows:

| Year | IRC 6651(a)(1) | IRC 6651(a)(2) | IRC 6654 |
|------|----------------|----------------|----------|
| December 31, 2008 | $958,454.99 | | |
| December 31, 2009 | $575,073.00 | $638,970.00 | $46,768.98 |

See Petition, Exhibit A (Notice of Deficiency), at p. 1.

6.  On June 1, 2016, Petitioner paid $2,942,000.27 in tax, interest, penalties, and additions to tax for the 2008 tax year, with respect to Respondent's adjustments attributable to the so-called Inventory Gain issue, thereby fully paying the amount assessed on March 19, 2012, as subsequently adjusted by Respondent. See, e.g., Petition, at ¶5.hh; Answer, at ¶5.hh.

7.  On July 7, 2016, Petitioner filed the instant Tax Court petition, disputing all of the deficiencies, penalties and additions to tax determined by the IRS.  See Petition.

## **ARGUMENT**

**I.  THE PARTIES AGREE THAT PETITIONER IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE NON-INVENTORY GAIN ISSUE.**

Petitioner and Respondent agreed early on during the proceedings in this Court that the Non-Inventory Gain issue presented the same issue as the Grecian Magnesite case and should be resolved the same way.  See Joint Status Report, at ¶4 (Dec. 14, 2017); Joint Status Report, at ¶4 (Apr. 25, 2018); Joint Status Report, at ¶4 (July 20, 2018); Joint Status Report, at ¶ 3 (Oct. 24, 2018); Joint Status Report, at ¶3 (Jan. 22, 2019); Joint Status Report, at ¶3 (Apr. 15, 2019); Joint Status Report, at ¶3 (July 10, 2019); and Joint Status Report, at ¶3 (Oct. 8, 2019). Because the issue in that case has now been finally resolved in favor of the taxpayer, this one should be as well.

The holding of the Grecian Magnesite opinions (both this Court's and the D.C. Circuit's) bears restating briefly for the light it sheds on the sale at issue in this case.  Both opinions determined that a non-resident alien taxpayer does not conduct a U.S. trade or business merely by making a passive investment in a U.S. partnership, nor by selling that partnership interest, even if the partnership conducts a U.S. trade or business.  See 926 F.3d at 826-27; 149 T.C. at 90-92.  As

Respondent concedes, that is true of Petitioner here just as it was of the petitioner in Grecian Magnesite: Petitioner did not engage in a U.S. trade or business merely by selling her partnership interest in Innovation Ventures. The Non-Inventory Gain therefore is non-taxable in the U.S. Respondent agrees that Petitioner is not liable under Grecian Magnesite for the Non-Inventory Gain portion of the proceeds from the sale of her partnership interest, and Petitioner is therefore entitled to a decision in her favor on that issue.

But that holding also determines the Inventory Gain issue, namely, whether Petitioner sold any "inventory property" (as defined for purposes of the U.S. sourcing rule in section 865(b)) when she sold her partnership interest. She did not. Petitioner did not sell inventory, she sold a partnership interest. Under Grecian Magnesite, that sale of a partnership interest does not rise to the level of engaging in a U.S. trade or business. See 926 F.3d at 826-27; 149 T.C. at 90-92. Thus, Petitioner again does not have taxable U.S. source income under Grecian Magnesite for the Inventory Gain, and judgment should be entered in her favor on this issue.

## II. PETITIONER IS NOT TAXED ON GAIN "ATTRIBUTABLE TO" ITEMS OF INVENTORY, AND THUS IS ENTITLED TO SUMMARY JUDGMENT ON THE INVENTORY GAIN ISSUE.

Just as Petitioner is not liable for U.S. tax on the Non-Inventory Gain from the sale of her partnership interest, she is not liable for U.S. tax on the Inventory Gain portion. The Court should thus grant summary judgment in her favor on this issue as well.

Generally, a taxpayer who recognizes gain from the sale or exchange of any property must characterize such gain as either ordinary income, usually subject to tax at the higher ordinary income tax rate (up to 39.6% for the year at issue), or capital gain, subject to tax at the preferential capital gain tax rate (20% for the year at issue). Gain arising from the sale or exchange of a "capital asset" is usually characterized as capital gain. Section 1221 initially defines the term "capital asset" broadly to mean "property held by the taxpayer (whether or not connected with his trade or business)," but it then carves out numerous exceptions. As relevant here, section 1221(a)(1) carves out "stock in trade *of the taxpayer*" (emphasis added), and "property held *by the taxpayer* primarily for sale to customers in the ordinary course *of his trade or business*" (emphasis added). Similarly, section 1221(a)(4) excepts from the definition of capital asset "accounts or notes receivable acquired

in the ordinary course of trade or business . . . from the sale of property described in paragraph (1)."

Section 741 provides: "In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner." Thus, for sale or exchange purposes, section 741 treats the partnership interest that is sold or exchanged as a single asset, and not as a sale of undivided interests in the partnership's properties. See Grecian Magnesite, 149 T.C. at 82. The second sentence of section 741 then provides for the characterization of gain or loss recognized in such sale or exchange: "Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital *asset*, except as otherwise provided by section 751 (relating to unrealized receivables and inventory items)." IRC § 741 (emphasis added). Section 741 is plainly a characterization rule; it does not say anything about the sourcing of the gain or loss at issue.

Section 751(a) in turn provides that:

The amount of any money, or the fair market value of any property, received by a transferor partner in exchange for all or a part of his interest in the partnership attributable to (1) unrealized receivables of the partnership, or (2) inventory items of the partnership, shall be considered as an amount realized from the sale or exchange of property other than a capital asset.

Thus, under section 751(a), a portion of Petitioner's gain on the sale of her single interest in Innovation Ventures LLC is treated as being "attributable to . . . inventory items *of the partnership*." IRC § 751(a) (emphasis added). Section 751(d) defines inventory items, solely for Subchapter K purposes, to mean, *inter alia*, "property *of the partnership* of the kind described in section 1221(a)(1)." IRC § 751(d) (emphasis added). Section 751(d) does not define inventory items for purposes of section 865(b) (which is not part of Subchapter K), nor does it attribute ownership of partnership inventory items to the partners.

Section 751(a) merely characterizes a portion of the gain arising from the sale or exchange of a single partnership interest as ordinary income, if that portion is attributable to the partnership's inventory items, as defined by section 751(d). But that is all section 751(a) does: it determines the *character* of the gain. As a leading partnership treatise puts it, "§ 751(a) fragments sales of partnership interests *for the sole purpose* of determining the *character* of a selling partner's gain with respect to §751 property." McKee, Nelson, & Whitmire, *Federal Taxation of Partnerships and Partners* ¶16.03[1] (emphasis added); id., ¶16.04[1][b] ("§751 imposes aggregate treatment on transfers of interests *for the limited purpose of recharacterizing the gain recognized*.") (emphasis added).

Section 751 is not a sourcing rule. Instead, a partnership interest is personal property, gain or loss from which is generally subject to the sourcing rules under section 865. <u>Grecian Magnesite</u>, 149 T.C. at 82. Section 865(a) states the general rule that the source of income from the sale of personal property is determined by the residence of the seller; thus, a sale of personal property, such as a partnership interest, by a nonresident gives rise to foreign-source income. This broad rule is followed by several exceptions, none of which applies to gain from the sale or exchange of a partnership interest. Specifically, section 865(b) provides a special sourcing rule for income derived from the sale of inventory property, defined in section 865(i)(1) as "personal property described in paragraph (1) of section 1221(a)." By its terms, section 865(b) provides a special sourcing rule *only* for income realized from the sale of actual inventory property held by "the taxpayer" for sale to customers in the ordinary course of a trade or business conducted by the taxpayer. It does not extend to any other personal property, nor specifically to the sale of a partnership interest. Thus, the Inventory Gain from the sale of Petitioner's interest in IV LLC is, under section 865(a), entirely foreign-source ordinary income, not subject to U.S. income tax.

In the present case, Petitioner sold her partnership interest and realized

approximately $6.5 million of gain "attributable to" IV LLC's inventory items in

2008. Under section 751(a), such gain is characterized as ordinary income (rather

than capital gain) to Petitioner, and thus taxable (if at all) at the higher ordinary

income rate. Petitioner agreed to the characterization of this amount. Petitioner

has never challenged the *characterization* of Inventory Gain as ordinary in nature.

But, as stated, section 751(a) does not determine the source of such ordinary

gain.[2] The source of that gain remains determined according to the same rules that

apply to source the portion of her gain that is characterized under section 741 as

---

[2] The contrast with section 897(g), which the Tax Court discussed in Grecian Magnesite, is instructive. Like section 751(a), section 897(g) "looks through" the sale of a partnership interest to certain underlying assets (in that case, real property in the United States). Section 897(g) then treats a portion of the sale proceeds as gain from the sale of the actual underlying property. But the "look through" provision is not why such gain is sourced to the U.S.; rather, it is sourced to the U.S. because section 897, as a whole, is a sourcing provision. Section 897(a) provides that gain or loss by a non-resident alien from the disposition of a U.S. real property interest is treated "as if the taxpayer were engaged in a trade or business within the United States" and "as if such gain or loss were effectively connected with such trade or business." The very fact that Congress felt it necessary to write such a rule means that such gain would not otherwise be treated as effectively connected with a trade or business or sourced to the United States. In short, a sourcing rule was still required, and section 897(a) provides it. Congress did no such thing with respect to gain characterized as ordinary under section 751.

capital gain.  Thus, for the same reasons that, under Grecian Magnesite,

Petitioner's Non-Inventory Gain from the sale of her partnership interest in IV

LLC is not sourced to or taxable by the United States, her Inventory Gain is

similarly not sourced to or taxable by the United States.

## CONCLUSION

The Court should therefore grant Petitioner's Motion for Summary

Judgment on both issues, determining that:

1)    Petitioner has no deficiency for 2008 attributable to the Non-

Inventory Gain;

2)    Petitioner is entitled to a refund of amounts paid with respect to 2008

attributable to the Inventory Gain.

Dated: Dec. 20, 2019                Respectfully submitted,


CHRISTOPHER S. RIZEK
Tax Court Bar No. RC0369
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Suite 1100
Washington, DC 20005
Telephone: (202) 862-8852
crizek@capdale.com

NATHAN J. HOCHMAN
Tax Court Bar No. HN0101
Browne George Ross LLP
2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067
Telephone: (424) 202-5559
nhochman@bgrfirm.com

Counsel for Petitioner

JRB 

INDU RAWAT,

       Petitioner,

ELECTRONICALLY FILED

      v.

Docket No.   15340-16

COMMISSIONER OF INTERNAL REVENUE,

      Respondent

# RESPONDENT'S DECLARATION OF S. KATY LIN IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT

**SERVED Mar 02 2020**

A125

## UNITED STATES TAX COURT

| | | |
|---|---|---|
| INDU RAWAT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Docket No.  15340-16 |
| | ) | |
| COMMISSIONER OF INTERNAL REVENUE, | ) | Filed Electronically |
| | ) | |
| Respondent. | ) | Judge David Gustafson |

## DECLARATION OF S. KATY LIN

I, S. Katy Lin, pursuant to 28 U.S.C. § 1746, declare and state as follows:

1.  I am an attorney admitted to practice before the United States Tax Court.

2.  I am employed by the Office of Chief Counsel of the Internal Revenue Service as a Senior Attorney, assigned to the Detroit, Michigan office.

3.  I am one of the attorneys assigned to represent respondent in Indu Rawat v. Commissioner, Docket No. 15340-16.

4.  I have personal knowledge of the matters set forth in this declaration, and if called upon, could and would testify to the same.

5.  I am competent to testify as to formal matters involved in this case because I have access to and have reviewed the Commissioner's administrative and legal files.

6.  All exhibits referenced below have been redacted in accordance with Rule 27 of the Court's Rules of Practice and Procedure.

7.  Attached as **Exhibit 1** is a true and correct copy of the Form 1065, U.S. Return of Partnership Income, filed by Innovation Ventures LLC for the 2008 tax year.

8.  Attached as **Exhibit 2** is a true and correct copy of a Form 2848, Power of Attorney and Declaration of Representative executed by petitioner Indu Rawat on August 6, 2010 ("Form 2848").  Form 2848 named Gerald Stein as a representative of petitioner.

9.  Attached as **Exhibit 3** is a true and correct copy of Form 870-LT, Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items ("Form 870-LT"), executed by petitioner Indu Rawat on or about February 14, 2011 and duly countersigned by respondent on April 28, 2011.

10.  The Remarks section of the Form 870-LT includes a scrivener's error in that it refers to unrealized receivables, instead of inventory.  The adjustment for other income in the Form 870-LT for the 2008 tax year is $6,523,176.  The Remarks section of the Form 870-LT also states:  "For additional information please refer to Form 886-A."

11.  Attached as **Exhibit 4** is a true and correct electronic copy of Form 5701, Notice of Proposed Adjustment with Form 886-A, Explanation of Items, issued to Innovation Ventures, LLC, Mr. Manoj Bhargava, TMP, and Mr. Gerald Stein, CPA/POA dated December 15, 2010 (Form 886-A").  Respondent is still in the process of seeking the original audit file for Innovation Ventures 2008 tax year and expects that file may contain a copy of the Form 886-A countersigned by Mr. Stein.

12.  The Form 886-A specifies that:

> On January 4, 2008, Ms. Indu Rawat sold her 29.2% interest in Innovation Ventures to Mr. Manoj Bhargava for $438,075,000. Ms. Rawat received an interest only note for $438,075,000 that matures in 2028 from Mr. Bhargava. The interest rate on the note is 4.39%. At the time of Ms. Rawat's sale, Innovation Ventures' [sic] had inventory of $6,426,056.  This inventory was later sold for a profit of $22,339,644. Ms. Rawat's 29.2% of this profit is $6,523,176. IRC 751 requires the seller to recognize ordinary income to the extent of this inventory's fair market value exceeds its basis.  Thus, Ms. Rawat must recognize ordinary income in the amount of $6,523,176.

13.  Attached as **Exhibit 5** is a true and correct copy of a blank Form 870-LT including the page titled "Instructions for Signing Form 870-LT."

14.  Following the parties' execution of the Form 870-LT, respondent issued a Notice of Computational Adjustment to petitioner.  Attached as **Exhibit 6** is a true and correct copy of the Notice of Computational Adjustment issued to petitioner on

February 10, 2012 with enclosed Form 4549-A, Income Tax

Discrepancy Adjustments, and executed Form 870-LT.

15.  Attached as **Exhibit 7** is a true and correct copy of the

Form 4549-A titled *** CORRECTED REPORT *** issued to petitioner

on March 16, 2012 increasing her itemized deductions to reflect

a charitable contributions deduction carryover from the prior

tax year, with Form 886-A, Explanation of Items.  Assessments of

the tax, penalties and additions to tax under sections

6651(a)(1) and 6654, and interest in the collective amount of

$2,942,000 were made on March 19, 2012.

16.  Attached as **Exhibit 8** is a true and correct copy of a

letter dated April 28, 2017 from Michael J. Desmond to S. Katy

Lin setting forth petitioner's responses to respondent's

Branerton requests ("Petitioner's Response to Respondent's First

Branerton").  Response 2 addresses residency questions.

Petitioner's responses did not conclusively establish her

residency status during those years, and the parties have not

stipulated to petitioner's residency status during 2008 or any

other year.

17.  On September 4, 2019, respondent requested information

from the Department of Homeland Security related to petitioner's

travel to and from the United States.  On December 16, 2019,

respondent received certified Treasury Enforcement Communication

Systems ("TECS") reports that show petitioner may have met the "substantial presence test" in 2008.  However, the TECS records are inconclusive because they do not show land-based exits from the United States.

18.  Respondent has requested from the Canadian government, but has not yet received, records of petitioner's international travel.  The requested records should show petitioner's land-based entries into Canada from 2006 through 2009.

19.  Response 18 of Petitioner's Response to Respondent's First Branerton states that Gerald Stein represented petitioner in connection with the "determination and computation of U.S. tax impact on petitioner of TEFRA examination adjustments for Innovation Ventures for the 2007 and 2008 tax years."


     I declare under penalty of perjury that the foregoing is true and correct.
                              3/2/2020
     Executed on: _____


                    /s/ S. Katy Lin
                    _____
                    S. KATY LIN
                    Senior Attorney
                    Large Business & International
                    Tax Court Bar No. LS0403
                    500 Woodward Avenue
                    Detroit, MI  48226
                    Telephone:  (313) 628-3116
                    s.katy.lin@irscounsel.treas.gov

Docket No. 15340-16

Exhibit 1

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 93269104222429 |

**Form 1065**

Department of the Treasury
Internal Revenue Service

## U.S. Return of Partnership Income

For calendar year **2008** or tax year beginning **01-01-2008**, ending **12-31-2008**
► See separate Instructions.

OMB No. 1545-0099

**2008**

| A Principal business activity | | | D Employer identification number |
|---|---|---|---|
| Manufacturing | Use the IRS label. Otherwise, print or type. | Name of partnership INNOVATION VENTURES LLC DBA LIVING ESSENTIALS | |
| **B** Principal product or service NUTRITIONAL SUPPLEMENT | | Number, street, and room or suite no. If a P.O. box, see instructions. 46570 HUMBOLDT DRIVE | E Date business started 07-07-2000 |
| **C** Business code number 424990 | | City or town, state, and ZIP code NOVI, MI 48377 | F Total assets (see the Instructions) $ 42,750,147 |

**G** Check applicable boxes: **(1)** ☐ Initial return **(2)** ☐ Final return **(3)** ☐ Name Change **(4)** ☐ Address Change **(5)** ☐ Amended return
**(6)** ☐ Technical termination - also check (1) or (2)
**H** Check accounting method: **(1)** ☐ Cash **(2)** ☑ Accrual **(3)** ☐ Other (specify) ►
**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ► ........ 6
**J** Check if Schedule M-3 attached ☑

**Caution.** Include *only* trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.

| | | | | |
|---|---|---|---|---:|
| **Income** | **1a** | Gross receipts or sales | 1a 191,957,361 | |
| | **b** | Less returns and allowances | 1b 9,616,945 | 1c 182,340,416 |
| | **2** | Cost of goods sold (Schedule A, line 8) | 2 | 40,733,572 |
| | **3** | Gross profit. Subtract line 2 from line 1c | 3 | 141,606,844 |
| | **4** | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) | 4 | |
| | **5** | Net farm profit (loss) (attach Schedule F (Form 1040)) | 5 | |
| | **6** | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | 6 | |
| | **7** | Other income (loss) (attach statement) | 7 | 254,544 |
| | **8** | **Total income (loss).** Combine lines 3 through 7 | 8 | 141,861,388 |
| **Deductions (see the instructions for limitations)** | **9** | Salaries and wages (other than to partners) (less employment credits) | 9 | 2,661,610 |
| | **10** | Guaranteed payments to partners | 10 | 608,853 |
| | **11** | Repairs and maintenance | 11 | 754,018 |
| | **12** | Bad debts | 12 | 84,136 |
| | **13** | Rent | 13 | 792,174 |
| | **14** | Taxes and licenses | 14 | 745,141 |
| | **15** | Interest | 15 | 226,710 |
| | **16a** | Depreciation (if required, attach Form 4562) | 16a 3,655,175 | |
| | **b** | Less depreciation reported on Schedule A and elsewhere on return | 16b | 16c 3,655,175 |
| | **17** | Depletion (Do not deduct oil and gas depletion.) | 17 | |
| | **18** | Retirement plans, etc. | 18 | |
| | **19** | Employee benefit programs | 19 | 263,884 |
| | **20** | Other deductions (attach statement) | 20 | 61,360,312 |
| | **21** | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 | 21 | 71,152,013 |
| | **22** | **Ordinary business income (loss).** Subtract line 21 from line 8 | 22 | 70,709,375 |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

MANOJ BHARGAVA
Signature of general partner or limited liability company member manager
Date 2009-04-09

May the IRS discuss this return with the preparer shown below (see instructions)? ☑ Yes ☐ No

**Paid Preparer's Use Only**

| Preparer's signature | | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code | PLANTE & MORAN PLLC 19176 HALL ROAD SUITE 300 CLINTON TOWNSHIP, MI 48038 | | | EIN ► Phone no. (586) 416-4900 |

For Privacy Act and Paperwork Reduction Act Notice, see separate Instructions.　　Cat. No. 11390Z　　Form **1065** (2008)

A132

Form 1065 (2008)                                                                                               Page **2**

| **Schedule A** | **Cost of Goods Sold** (see the instructions) | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | 6,426,056 |
| 2 | Purchases less cost of items withdrawn for personal use | 2 | 44,895,282 |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs *(attach statement)* | 4 | 3,928,304 |
| 5 | Other costs *(attach statement)* | 5 | 1,225,943 |
| 6 | **Total.** Add lines 1 through 5 | 6 | 56,475,585 |
| 7 | Inventory at end of year | 7 | 15,742,013 |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | 40,733,572 |

**9a** Check all methods used for valuing closing inventory:

    (i) ☐ Cost as described in Regulations section 1.471-3

    (ii) ☑ Lower of cost or market as described in Regulations section 1.471-4

    (iii) ☐ Other (specify method used and attach explanation) ▶ _____

**b** Check this box if there was a writedown of "subnormal" goods as described in Regulations section 1.471-2(c)   ▶ ☐

**c** Check this box if the LIFO inventory method was adopted this tax year for any goods *(if checked, attach Form 970)*   ▶ ☐

**d** Do the rules of section 263A (for property produced or acquired for resale) apply to the partnership?    ☑ Yes   ☐ No

**e** Was there any change in determining quantities, cost, or valuations between opening and closing inventory?
If "Yes," attach explanation    ☐ Yes   ☑ No

| **Schedule B** | **Other Information** | | Yes | No |
|---|---|---|---|---|

**1** What type of entity is filing this return? Check the applicable box:

**a** ☐ Domestic general partnership      **b** ☐ Domestic limited partnership

**c** ☑ Domestic limited liability company      **d** ☐ Domestic limited liability partnership

**e** ☐ Foreign partnership      **f** ☐ Other ▶

**2** At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person?        **No**

**3** At the end of the tax year:

**a** Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), or trust own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below        **No**

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |

**b** Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below    **Yes**

| (i) Name of Individual or Estate | (ii) Social Security Number or Employer Identification Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| MANOJ BHARGAVA | ▮▮▮▮▮▮ | US | 79.200 % |

**4** At the end of the tax year, did the partnership

**a** Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below        **No**

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |

Form **1065** (2008)

A133

Form 1065 (2008)                            **Page 3**

| | | Yes | No |
|---|---|---|---|
| **b** | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below    .    .    .    .    . | | No |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| **5** | Did the partnership file the Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . | | No |
| **6** | Does the partnership satisfy **all four** of the following conditions? | | |
| **a** | The partnership's total receipts for the tax year were less than $250,000. | | |
| **b** | The partnership's total assets at the end of the tax year were less than $1 million. | | |
| **c** | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| **d** | The partnership is not filing and is not required to file Schedule M-3   .   .   .   .   .   .   .   .   .   . | | No |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | |
| **7** | Is this partnership a publicly traded partnership as defined in section 469(k)(2)?   .   .   .   .   .   . | | No |
| **8** | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt?   .   .   .   .   .   .   .   .   .   .   .   . | | No |
| **9** | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction?   .   .   .   .   .   .   .   .   .   .   .   . | | No |
| **10** | At any time during calendar year 2008, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. If "Yes," enter the name of the foreign country. ▶ _____ | | No |
| **11** | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions   .   .   .   .   .   .   .   . | | No |
| **12a** | Is the partnership making, or had it previously made (and not revoked), a section 754 election? See instructions for details regarding a section 754 election. | Yes | |
| **b** | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions   .   .   . | Yes | |
| **c** | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions   .   . | | No |
| **13** | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (including a disregarded entity).   .   .   ▶ ☐ | | |
| **14** | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property?   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . | | No |
| **15** | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions ▶ _____ | | |
| **16** | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ▶ _____ | Yes | |
| **17** | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return ▶ _____ | | |

**Designation of Tax Matters Partner** (see the instructions)

Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

| | | | |
|---|---|---|---|
| Name of designated TMP ▶ | Manoj Bhargava | Identifying number of TMP ▶ | ▮▮▮▮▮ |
| Address of designated TMP ▶ | 39018 Kennedy Farmington Hills, MI 48331 | | |

Form **1065** (2008)

Form 1065 (2008)                                                                                                      Page **4**

## Schedule K — Partners' Distributive Share Items

| | | | Total Amount |
|---|---|---|---:|
| **Income (Loss)** | **1** Ordinary business income (loss) (page 1, line 22) | **1** | 70,709,375 |
| | **2** Net rental real estate income (loss) (attach Form 8825) | **2** | |
| | **3a** Other gross rental income (loss) ... **3a** | | |
| | **b** Expenses from other rental activities (attach statement) ... **3b** | | |
| | **c** Other net rental income (loss). Subtract line 3b from line 3a | **3c** | |
| | **4** Guaranteed payments | **4** | 608,852 |
| | **5** Interest income | **5** | 31,780 |
| | **6** Dividends: **a** Ordinary dividends | **6a** | |
| | **b** Qualified dividends ... **6b** | | |
| | **7** Royalties | **7** | |
| | **8** Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | **8** | |
| | **9a** Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | **9a** | |
| | **b** Collectibles (28%) gain (loss) ... **9b** | | |
| | **c** Unrecaptured section 1250 gain (attach statement) ... **9c** | | |
| | **10** Net section 1231 gain (loss) (attach Form 4797) | **10** | -792 |
| | **11** Other income (loss) (see instructions) Type ▶ | **11** | |
| **Deductions** | **12** Section 179 deduction (attach Form 4562) | **12** | |
| | **13a** Contributions | **13a** | 15,158 |
| | **b** Investment interest expense | **13b** | |
| | **c** Section 59(e)(2) expenditures: **(1)** Type ▶ **(2)** Amount ▶ | **13c(2)** | |
| | **d** Other deductions (see instructions) Type ▶ | **13d** | 29,699,560 |
| **Self-Employ-ment** | **14a** Net earnings (loss) from self-employment | **14a** | 852,927 |
| | **b** Gross farming or fishing income | **14b** | |
| | **c** Gross nonfarm income | **14c** | |
| **Credits** | **15a** Low-income housing credit (section 42(j)(5)) | **15a** | |
| | **b** Low-income housing credit (other) | **15b** | |
| | **c** Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | **15c** | |
| | **d** Other rental real estate credits (see instructions) · · · Type ▶ | **15d** | |
| | **e** Other rental credits (see instructions) · · · Type ▶ | **15e** | |
| | **f** Other credits (see instructions) · · · Type ▶ | **15f** | |
| **Foreign Transactions** | **16a** Name of country or U.S. possession ▶ | | |
| | **b** Gross income from all sources | **16b** | |
| | **c** Gross income sourced at partner level | **16c** | |
| | Foreign gross income sourced at partnership level | | |
| | **d** Passive category ▶ **e** General category ▶ **f** Other ▶ | **16f** | |
| | Deductions allocated and apportioned at partner level | | |
| | **g** Interest expense ▶ **h** Other ▶ | **16h** | |
| | Deductions allocated and apportioned at partnership level to foreign source income | | |
| | **i** Passive category ▶ **j** General category ▶ **k** Other ▶ | **16k** | |
| | **l** Total foreign taxes (check one): ▶ Paid ☐ Accrued ☐ | **16l** | |
| | **m** Reduction in taxes available for credit (attach statement) | **16m** | |
| | **n** Other foreign tax information (attach statement) | | |
| **Alternative Minimum Tax (AMT) Items** | **17a** Post-1986 depreciation adjustment | **17a** | 42,218 |
| | **b** Adjusted gain or loss | **17b** | |
| | **c** Depletion (other than oil and gas) | **17c** | |
| | **d** Oil, gas, and geothermal properties—gross income | **17d** | |
| | **e** Oil, gas, and geothermal properties—deductions | **17e** | |
| | **f** Other AMT items (attach statement) | **17f** | |
| **Other Information** | **18a** Tax-exempt interest income | **18a** | |
| | **b** Other tax-exempt income | **18b** | |
| | **c** Nondeductible expenses | **18c** | 146,130 |
| | **19a** Distributions of cash and marketable securities | **19a** | 69,351,085 |
| | **b** Distributions of other property | **19b** | |

**Other Information**

| 20a | Investment income | | 20a | 31,780 |
| b | Investment expenses · · · · · · · · · · · · · · · · · | | 20b | |
| c | Other items and amounts *(attach statement)* · · · · · · · · · · | | | |

Form **1065** (2008)

A136

Form 1065 (2008)                                                                                     Page **5**

## Analysis of Net Income (Loss)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l . . . . . . . . . . . . . . . | | | | | **1** | | 41,634,497 |

| 2 | Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|---|
| a | General partners | | | | | | |
| b | Limited partners | | 39,886,821 | 1,747,676 | | | |

## Schedule L    Balance Sheets per Books

| | Assets | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | | (a) | (b) | (c) | (d) |
| 1 | Cash | | 25,078 | | 7,496 |
| 2a | Trade notes and accounts receivable | 4,885,265 | | 11,761,847 | |
| b | Less allowance for bad debts | 75,000 | 4,810,265 | 65,864 | 11,695,983 |
| 3 | Inventories | | 6,155,708 | | 14,399,105 |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities | | | | |
| 6 | Other current assets (attach statement) | | 2,250,756 | | 6,921,065 |
| 7 | Mortgage and real estate loans | | | | |
| 8 | Other investments (attach statement) | | | | |
| 9a | Buildings and other depreciable assets | 1,236,398 | | 8,574,380 | |
| b | Less accumulated depreciation | 72,137 | 1,164,261 | 522,491 | 8,051,889 |
| 10a | Depletable assets | | | | |
| b | Less accumulated depletion | | | | |
| 11 | Land (net of any amortization) | | | | |
| 12a | Intangible assets (amortizable only) | 430,031 | | 430,031 | |
| b | Less accumulated amortization | | 430,031 | | 430,031 |
| 13 | Other assets (attach statement) | | 773,150 | | 1,244,578 |
| 14 | Total assets | | 15,609,249 | | 42,750,147 |
| | **Liabilities and Capital** | | | | |
| 15 | Accounts payable | | 5,313,249 | | 10,731,359 |
| 16 | Mortgages, notes, bonds payable in less than 1 year | | 90,273 | | 12,164,394 |
| 17 | Other current liabilities (attach statement) | | 8,057,666 | | 7,860,591 |
| 18 | All nonrecourse loans | | | | |
| 19 | Mortgages, notes, bonds payable in 1 year or more | | 95,011 | | 6,698,404 |
| 20 | Other liabilities (attach statement) | | | | |
| 21 | Partners' capital accounts | | 2,053,050 | | 5,295,399 |
| 22 | Total liabilities and capital | | 15,609,249 | | 42,750,147 |

**Schedule M-1**     **Reconciliation of Income (Loss) per Books With Income (Loss) per Return**

**Note.** Schedule M-3 may be required instead of Schedule M-1 (see instructions).

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | Net income (loss) per books | . | | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | | a | Tax-exempt interest $ | | |
| 3 | Guaranteed payments (other than health insurance) . . . | | | 7 | Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | | |
| 4 | Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | | a | Depreciation $ | | |
| a | Depreciation $ | | | | | | |
| b | Travel and entertainment $ | | | 8 | Add lines 6 and 7 . . . . | | |
| 5 | Add lines 1 through 4 . . . | | | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | | |

| | **Schedule M-2**    **Analysis of Partners' Capital Accounts** | | | | | |
|---|---|---|---|---|---|---|
| 1 | Balance at beginning of year . . | 2,053,050 | 6 | Distributions:   a Cash . . . | 69,351,085 |
| 2 | Capital Contributed: a Cash . . | | |        b Property | |
| |                b Property . . | | 7 | Other decreases (itemize): | |
| 3 | Net income (loss) per books . . | 72,593,434 | | | 538,822 |
| 4 | Other increases (itemize): | | 8 | Add lines 6 and 7 . . . . | 69,889,907 |
| | | 538,822 | 9 | Balance at end of year. Subtract line 8 from line 5 | 5,295,399 |
| 5 | Add lines 1 through 4 . . . | 75,185,306 | | | |

**Additional Data**

|  |  |
|---|---|
| Software ID: | |
| Software Version: | |
| EIN: | ███████ |
| Name: | INNOVATION VENTURES LLC |
| | DBA LIVING ESSENTIALS |
| Return Software ID: | 08000093 |
| Return Software Version: | 2008.03040 |

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | | DLN: 93269104222429 |
|---|---|---|---|

Form **4562**

Department of the Treasury
Internal Revenue Service
(99)

**Depreciation and Amortization**
**(Including Information on Listed Property)**

► See separate instructions.  ► Attach to your tax return.

OMB No. 1545-0172

**2008**

Attachment
Sequence No. **67**

| Name(s) shown on return INNOVATION VENTURES LLC DBA LIVING ESSENTIALS | Business or activity to which this form relates | Identifying number |
|---|---|---|

### Part I    Election To Expense Certain Property Under Section 179
*Note: If you have any listed property, complete Part V before you complete Part I.*

| | | |
|---|---|---|
| 1 Maximum amount. See the instructions for a higher limit for certain businesses | **1** | $ 250,000 |
| 2 Total cost of section 179 property placed in service (see instructions) | **2** | |
| 3 Threshold cost of section 179 property before reduction in limitation (see instructions) | **3** | $ 800,000 |
| 4 Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | **4** | |
| 5 Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | **5** | |

| (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|
| **6** | | |

| | | | |
|---|---|---|---|
| 7 Listed property. Enter the amount from line 29. | **7** | | |
| 8 Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | | **8** | |
| 9 Tentative deduction. Enter the smaller of line 5 or line 8 | | **9** | |
| 10 Carryover of disallowed deduction from line 13 of your 2007 Form 4562. | | **10** | |
| 11 Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instructions). | | **11** | |
| 12 Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | | **12** | |
| 13 Carryover of disallowed deduction to 2009. Add lines 9 and 10, less line 12  ► | **13** | | |

*Note: Do not use Part II or Part III below for listed property. Instead, use Part V.*

### Part II    Special Depreciation Allowance and Other Depreciation (Do not include listed property.) (See Instructions.)

| | | |
|---|---|---|
| 14 Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | **14** | |
| 15 Property subject to section 168(f)(1) election | **15** | |
| 16 Other depreciation (including ACRS) | **16** | |

### Part III    MACRS Depreciation (Do not include listed property.) (See Instructions.)
#### Section A

| | | |
|---|---|---|
| 17 MACRS deductions for assets placed in service in tax years beginning before 2008 | **17** | |

18 If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here  ► ☐

#### Section B—Assets Placed in Service During 2008 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only—see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| **19a** 3-year property | | | | | | |
| **b** 5-year property | | | | | | |
| **c** 7-year property | | | | | | |
| **d** 10-year property | | | | | | |

A140

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only—see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs. | | S/L | |
| h Residential rental property | | | 27.5 yrs. | MM | S/L | |
| | | | 27.5 yrs. | MM | S/L | |
| i Nonresidential real property | | | 39 yrs. | MM | S/L | |
| | | | | MM | S/L | |

**Section C—Assets Placed in Service During 2008 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs. | | S/L | |
| c 40-year | | | 40 yrs. | MM | S/L | |

**Part IV    Summary** (See instructions)

21 Listed property. Enter amount from line 28   .   .   .   .   .   .   . | **21** |

22 **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations—see instr.   .   .   .   .   . | **22** |

23 For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs   .   .   .   .   .   .   . | **23** |

**For Paperwork Reduction Act Notice, see separate instructions.**     Cat. No. 12906N     Form **4562** ( 2008)

---

A141

Form 4562 ( 2008)          Page **2**

| Part V | **Listed Property** (Include automobiles, certain other vehicles, cellular telephones, certain computers, and property used for entertainment, recreation, or amusement.) |
|---|---|

**Note:** *For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.*

**Section A—Depreciation and Other Information (Caution:** *See the instructions for limits for passenger automobiles.***)**

**24a** Do you have evidence to support the business/investment use claimed? ☐ Yes ☐ No     **24b** If "Yes," is the evidence written? ☐ Yes ☐ No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (l) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| **25** Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) . . . . . . . . . . | | | | | **25** | | | |
| **26** Property used more than 50% in a qualified business use: | | | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| **27** Property used 50% or less in a qualified business use: | | | | | | | | |
| | | % | | | | S/L - | | |
| | | % | | | | S/L - | | |
| | | % | | | | S/L - | | |
| **28** Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 . . . . | | | | | **28** | | | |
| **29** Add amounts in column (l), line 26. Enter here and on line 7, page 1 . . . . . . . . | | | | | | **29** | | |

**Section B—Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person.
If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **30** Total business/investment miles driven during the year (**do not** include commuting miles) . | | | | | | | | | | | | |
| **31** Total commuting miles driven during the year . | | | | | | | | | | | | |
| **32** Total other personal(noncommuting) miles driven | | | | | | | | | | | | |
| **33** Total miles driven during the year. Add lines 30 through 32 . . . . . . . . | | | | | | | | | | | | |
| **34** Was the vehicle available for personal use during off-duty hours? . . . . . . | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| **35** Was the vehicle used primarily by a more than 5% owner or related person? . . . . | | | | | | | | | | | | |
| **36** Is another vehicle available for personal use? . | | | | | | | | | | | | |

**Section C—Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who **are not** more than 5% owners or related persons (see instructions).

| | Yes | No |
|---|---|---|
| **37** Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? . . . . . . . . . . . . . . . . . . . . . | | |
| **38** Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners . . . . | | |
| **39** Do you treat all use of vehicles by employees as personal use? . . . . . . . . . | | |
| **40** Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? . . . . . . . . . . . . . . | | |
| **41** Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) . . . . | | |

**Note:** If your answer to 37, 38, 39, 40, or 41 is "Yes," do not complete Section B for the covered vehicles.

| Part VI | **Amortization** |
|---|---|

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| **42** Amortization of costs that begins during your 2008 tax year (see instructions): | | | | | |
| SECTION 754 STEP-UP | 2008-01-04 | 444,788,014 | 197 | 180M | 29,652,534 |
| **43** Amortization of costs that began before your 2008 tax year . . . . . . . . | | | | **43** | |
| **44 Total.** Add amounts in column (f). See the instructions for where to report . . . | | | | **44** | 29,652,534 |

Form **4562** (2008)

A142

**Additional Data**

Software ID:
Software Version:
EIN: ███████
Name: INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

A143

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | | DLN: 93269104222429 |
|---|---|---|---|

Form **4562**

Department of the Treasury
Internal Revenue Service
(99)

**Depreciation and Amortization**
**(Including Information on Listed Property)**

▶ See separate instructions.     ▶ Attach to your tax return.

OMB No. 1545-0172

**2008**

Attachment
Sequence No. **67**

| Name(s) shown on return | Business or activity to which this form relates | Identifying number |
|---|---|---|
| INNOVATION VENTURES LLC DBA LIVING ESSENTIALS | | |

**Part I     Election To Expense Certain Property Under Section 179**
Note: If you have any listed property, complete Part V before you complete Part I.

| | | |
|---|---|---|
| 1 Maximum amount. See the instructions for a higher limit for certain businesses | **1** | $ 250,000 |
| 2 Total cost of section 179 property placed in service (see instructions) | **2** | |
| 3 Threshold cost of section 179 property before reduction in limitation (see instructions) | **3** | $ 800,000 |
| 4 Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | **4** | |
| 5 Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | **5** | |

| (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|
| **6** | | |
| | | |

| | | | |
|---|---|---|---|
| 7 Listed property. Enter the amount from line 29. | **7** | | |
| 8 Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | | **8** | |
| 9 Tentative deduction. Enter the **smaller** of line 5 or line 8 | | **9** | |
| 10 Carryover of disallowed deduction from line 13 of your 2007 Form 4562. | | **10** | |
| 11 Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instructions). | | **11** | |
| 12 Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | | **12** | |
| 13 Carryover of disallowed deduction to 2009. Add lines 9 and 10, less line 12 . ▶ | **13** | | |

**Note:** Do not use Part II or Part III below for listed property. Instead, use Part V.

**Part II     Special Depreciation Allowance and Other Depreciation (Do not** include listed property.) (See instructions.)

| | | |
|---|---|---|
| 14 Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | **14** | |
| 3,257,101 | | |
| 15 Property subject to section 168(f)(1) election | **15** | |
| 16 Other depreciation (including ACRS) | **16** | |

**Part III     MACRS Depreciation (Do not** include listed property.) (See instructions.)

**Section A**

| | | |
|---|---|---|
| 17 MACRS deductions for assets placed in service in tax years beginning before 2008 | **17** | |
| 69,220 | | |
| 18 If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here . ▶ ☐ | | |

**Section B—Assets Placed in Service During 2008 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only—see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g)Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | | | | | |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |

A144

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only—see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| **e** 15-year property | | | | | | |
| **f** 20-year property | | | | | | |
| **g** 25-year property | | | 25 yrs. | | S/L | |
| **h** Residential rental property | | | 27.5 yrs. | MM | S/L | |
| | | | 27.5 yrs. | MM | S/L | |
| **i** Nonresidential real property | | | 39 yrs. | MM | S/L | |
| | | | | MM | S/L | |
| | | | | MM | S/L | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Section C—Assets Placed in Service During 2008 Tax Year Using the Alternative Depreciation System** | | | | | | |
| **20a** Class life | | | | | S/L | |
| **b** 12-year | | | 12 yrs. | | S/L | |
| **c** 40-year | | | 40 yrs. | MM | S/L | |

**Part IV**     **Summary** (See instructions)

**21** Listed property. Enter amount from line 28 . . . . . . . . . . . . .   **21**

23,610

**22 Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations—see instr. . . . . .   **22**

3,655,175

**23** For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs . . . . . . . .   **23**

**For Paperwork Reduction Act Notice, see separate instructions.**     Cat. No. 12906N     Form **4562** ( 2008)

Form 4562 ( 2008 )                                                                                                          Page **2**

**Part V** **Listed Property** (Include automobiles, certain other vehicles, cellular telephones, certain computers, and property used for entertainment, recreation, or amusement.)
**Note:** *For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.*

**Section A—Depreciation and Other Information (Caution:** *See the instructions for limits for passenger automobiles.***)**

24a Do you have evidence to support the business/investment use claimed? ☑ Yes ☐ No          24b If "Yes," is the evidence written? ☑ Yes ☐ No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation/ deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) . . . . . . . . . . . . | | | | | | 25 | 10,960 | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| See Additional Data Table | | % | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | | % | | | | S/L - | | |
| | | % | | | | S/L - | | |
| | | % | | | | S/L - | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 | | | | | 28 | | 23,610 | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 | | | | | | 29 | | |

**Section B—Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person.
If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (**do not** include commuting miles) | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year . | | | | | | | | | | | | |
| 32 Total other personal(noncommuting) miles driven | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 . . . . . . . . | | | | | | | | | | | | |
| 34 Was the vehicle available for personal use during off-duty hours? | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? | | | | | | | | | | | | |

**Section C—Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who **are not** more than 5% owners or related persons (see instructions).

| | Yes | No |
|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? . . . . . . . . . . . . . . . . . . . . . . . . | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners . . . . | | |
| 39 Do you treat all use of vehicles by employees as personal use? . . . . . . . . . . . . | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? . . . . . . . . . . . . . . . . | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) . . . . . | | |
| **Note:** If your answer to 37, 38, 39, 40, or 41 is "Yes," do not complete Section B for the covered vehicles. | | |

**Part VI** **Amortization**

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2008 tax year (see instructions): | | | | | |
| | | | | | |
| | | | | | |
| 43 Amortization of costs that began before your 2008 tax year . . . . . . . | | | 43 | | 47,865 |
| 44 **Total.** Add amounts in column (f). See the instructions for where to report . . | | | 44 | | 47,865 |

Form **4562** (2008)

A146

## Additional Data

Software ID:
Software Version:
EIN: ▮▮▮▮▮▮
Name: INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**Form 4562, Part III, Line 19, Section B—Assets Placed in Service During 2008 Tax Year Using the General Depreciation System:**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only—see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g)Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | 136,510 | 5. | MQ | 200 DB | 21,632 |
| c 7-year property | | 3,874,791 | 7. | MQ | 200 DB | 282,733 |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs. | | S/L | |
| h Residential rental property | | | 27.5 yrs. | MM | S/L | |
| | | | 27.5 yrs. | MM | S/L | |
| i Nonresidential real property | 2008-06 | 57,815 | 39 yrs. | MM | S/L | 804 |
| | 2008-10 | 14,000 | 39 yrs. | MM | S/L | 75 |
| | | | | MM | S/L | |

**Form 4562, Part V, Line 26, Property used more than 50% in a qualified business use (see page 8 of the instructions):**

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation/ deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 2007 vehicle | 2007-03-20 | | 26,132 | 26,132 | 5 | S/L-S/L | 4,900 | |
| 2007 vehicle | 2007-09-01 | | 30,376 | 30,376 | 5 | S/L-S/L | 4,900 | |
| 2008 VEHICLE | 2008-04-29 | | 41,087 | 30,127 | 5 | S/L-S/L | | |
| 2006 VEHICLE | 2006-08-07 | | 19,500 | | 5 | S/L-S/L | 2,850 | |

A147

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 93269104222429 |

| Form **4797** | **Sales of Business Property** | OMB No. 1545-0184 |
| | (Also Involuntary Conversions and Recapture Amounts Under Sections 179 and 280F(b)(2)) | **2008** |
| Department of the Treasury Internal Revenue Service (99) | ► Attach to your tax return.    ► See separate instructions. | Attachment Sequence No. **27** |

Name(s) shown on return
INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**Identifying number** ▮▮▮▮▮

**1** Enter the gross proceeds from sales or exchanges reported to you for 2008 on Form(s) 1099-B or 1099-S (or substitute statement) that you are including on line 2, 10, or 20 (see instructions) . | **1** |

**Part I  Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty or Theft—Most Property Held More Than 1 Year** (see instructions)

| (a) Description of property | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Gross sales price | (e) Depreciation allowed or allowable since acquisition | (f) Cost or other basis, plus Improvements and expense of sale | (g) Gain or (loss) Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|
| **2** VEHICLE | 08-07-2006 | 02-01-2008 | 9,500 | 9,208 | 19,500 | -792 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---|
| **3** Gain, if any, from Form 4684, line 39 . . . . . . . . . . . . . . . . | **3** | |
| **4** Section 1231 gain from installment sales from Form 6252, line 26 or 37 . . . . . . . | **4** | |
| **5** Section 1231 gain or (loss) from like-kind exchanges from Form 8824 . . . . . . . . | **5** | |
| **6** Gain, if any, from line 32, from other than casualty or theft . . . . . . . . . . | **6** | |
| **7** Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate line as follows: . . . . | **7** | -792 |

**Partnerships (except electing large partnerships) and S corporations.** Report the gain or (loss) following the instructions for Form 1065, Schedule K, line 10, or Form 1120S, Schedule K, line 9. Skip lines 8, 9, 11, and 12 below.

**Individuals, partners, S corporation shareholders, and all others.** If line 7 is zero or a loss, enter the amount from line 7 on line 11 below and skip lines 8 and 9. If line 7 is a gain and you did not have any prior year section 1231 losses, or they were recaptured in an earlier year, enter the gain from line 7 as a long-term capital gain on the Schedule D filed with your return and skip lines 8, 9, 11, and 12 below.

| | | |
|---|---|---|
| **8** Nonrecaptured net section 1231 losses from prior years (see instructions) . . . . . . . . | **8** | |
| **9** Subtract line 8 from line 7. If zero or less, enter -0-. If line 9 is zero, enter the gain from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below and enter the gain from line 9 as a long-term capital gain on the Schedule D filed with your return (see instructions) . . . . . . . . | **9** | |

**Part II  Ordinary Gains and Losses** (see instructions)

**10** Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less):

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---|
| **11** Loss, if any, from line 7 . . . . . . . . . . . . . . . . . . . . . . | **11** | ( ) |
| **12** Gain, if any, from line 7, or amount from line 8, if applicable . . . . . . . . . . | **12** | |
| **13** Gain, if any, from line 31 . . . . . . . . . . . . . . . . . . . . . | **13** | |
| **14** Net gain or (loss) from Form 4684, lines 31 and 38a . . . . . . . . . . . . | **14** | |
| **15** Ordinary gain from installment sales from Form 6252, line 25 or 36 . . . . . . . . . | **15** | |
| **16** Ordinary gain or (loss) from like-kind exchanges from Form 8824 . . . . . . . . . . | **16** | |
| **17** Combine lines 10 through 16. . . . . . . . . . . . . . . . . . . . . | **17** | |

**18** For all except individual returns, enter the amount from line 17 on the appropriate line of your return and skip lines a and b below. For individual returns, complete lines a and b below:

**a** If the loss on line 11 includes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the part of the loss from income-producing property on Schedule A (Form 1040), line 28, and the part of the loss from property used as an employee on Schedule A (Form 1040), line 23. Identify as from "Form 4797, line 18a." See instructions . . . . . . . . . . . . . . . . . . . . . . . . . | **18a** |

**b** Redetermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Form 1040, line 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . | **18b** |

For Paperwork Reduction Act Notice, see separate instructions.    Cat. No. 13086I    Form **4797** (2008)

A148

Form 4797 (2008)                                                                                                    Page **2**

**Part III** **Gain From Disposition of Property Under Sections 1245, 1250, 1252, 1254, and 1255** (see instructions)

| 19 | (a) Description of section 1245, 1250, 1252, 1254, or 1255 property: | (b) Date acquired(mo., day, yr.) | (c) Date sold (mo., day, yr.) |
|---|---|---|---|
| A | | | |
| B | | | |
| C | | | |
| D | | | |

| These columns relate to the properties on lines 19A through 19D. ▶ | | Property A | Property B | Property C | Property D |
|---|---|---|---|---|---|
| 20 | Gross sales price (**Note:** *See line 1 before completing.*) | 20 | | | | |
| 21 | Cost or other basis plus expense of sale . . | 21 | | | | |
| 22 | Depreciation (or depletion) allowed or allowable | 22 | | | | |
| 23 | Adjusted basis. Subtract line 22 from line 21 . | 23 | | | | |
| 24 | Total gain. Subtract line 23 from line 20 . . | 24 | | | | |
| 25 | **If section 1245 property:** | | | | | |
| a | Depreciation allowed or allowable from line 22 | 25a | | | | |
| b | Enter the **smaller** of line 24 or 25a . . . | 25b | | | | |
| 26 | **If section 1250 property:** If straight line depreciation was used, enter -0- on line 26g, except for a corporation subject to section 291. | | | | | |
| a | Additional depreciation after 1975 (see instructions) . | 26a | | | | |
| b | Applicable percentage multiplied by the **smaller** of line 24 or line 26a (see instructions) . . . | 26b | | | | |
| c | Subtract line 26a from line 24. If residential rental property **or** line 24 is not more than line 26a, skip lines 26d and 26e . . . . . . . . | 26c | | | | |
| d | Additional depreciation after 1969 and before 1976 | 26d | | | | |
| e | Enter the **smaller** of line 26c or 26d . . | 26e | | | | |
| f | Sections 291 amount (corporations only) . . | 26f | | | | |
| g | Add lines 26b, 26e, and 26f . . . . . . | 26g | | | | |
| 27 | **If section 1252 property:** Skip this section if you did not dispose of farmland or if this form is being completed for a partnership (other than an electing large partnership). | | | | | |
| a | Soil, water, and land clearing expenses . . | 27a | | | | |
| b | Line 27a multiplied by applicable percentage (see instructions) . | 27b | | | | |
| c | Enter the **smaller** of line 24 or 27b . . . | 27c | | | | |
| 28 | **If section 1254 property:** | | | | | |
| a | Intangible drilling and development costs, expenditures for development of mines and other natural deposits, and mining exploration costs (see instructions) . . . . . . . . . | 28a | | | | |
| b | Enter the **smaller** of line 24 or 28a . . . | 28b | | | | |
| 29 | **If section 1255 property:** | | | | | |
| a | Applicable percentage of payments excluded from income under section 126 (see instructions) . | 29a | | | | |
| b | Enter the **smaller** of line 24 or 29a (see instructions) | 29b | | | | |

**Summary of Part III Gains.** Complete property columns A through D through line 29b before going to line 30.

| 30 | Total gains for all properties. Add property columns A through D, line 24 . . . . . . . . . | 30 | |
|---|---|---|---|
| 31 | Add property columns A through D, lines 25b, 26g, 27c, 28b, and 29b. Enter here and on line 13 . | 31 | |
| 32 | Subtract line 31 from line 30. Enter the portion from casualty or theft on Form 4684, line 33. Enter the portion from other than casualty or theft on Form 4797, line 6 . . . . . . . . . . | 32 | |

**Part IV** **Recapture Amounts Under Sections 179 and 280F(b)(2) When Business Use Drops to 50% or Less** (see instructions)

A149

| | (a) Section 179 | (b) Section 280F(b)(2) |
|---|---|---|
| 33 Section 179 expense deduction or depreciation allowable in prior years . . **33** | | |
| 34 Recomputed depreciation (see instructions) . . . . . . . . . . **34** | | |
| 35 Recapture amount. Subtract line 34 from line 33. See the instructions for where to report . . **35** | | |

Form **4797** (2008)

**Additional Data**

|  |  |
|---:|:---|
| **Software ID:** | |
| **Software Version:** | |
| **EIN:** | ███████ |
| **Name:** | INNOVATION VENTURES LLC<br>DBA LIVING ESSENTIALS |

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 93269104222429 |

Form **8916-A**

**Supplemental Attachment to Schedule M-3**

OMB No. 1545-2061

Department of the Treasury
Internal Revenue Service

► Attach to Schedule M-3 for Form 1065, 1120, 1120-L, 1120-PC, or 1120S.

**2008**

Name of common parent
INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

Employer identification number
█████

Name of subsidiary

Employer identification number
█████

| Part I | Cost of Goods Sold | | | | |
|---|---|---|---|---|---|
| **Cost of Goods Sold Items** | | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Deduction per Tax Return |
| **1** Amounts attributable to cost flow assumptions | | | | | |
| **2** Amounts attributable to: | | | | | |
| **a** Stock option expense | | | | | |
| **b** Other equity based compensation | | | | | |
| **c** Meals and entertainment | | | | | |
| **d** Parachute payments | | | | | |
| **e** Compensation with section 162(m) limitation | | | | | |
| **f** Pension and profit sharing | | | | | |
| **g** Other post-retirement benefits | | | | | |
| **h** Deferred compensation | | | | | |
| **i** Section 198 environmental remediation costs | | | | | |
| **j** Amortization | | | | | |
| **k** Depletion | | | | | |
| **l** Depreciation | | | | | |
| **m** Corporate owned life insurance premiums | | | | | |
| **n** Other section 263A costs | | 3,928,304 | | | 3,928,304 |
| **3** Inventory shrinkage accruals | | | | | |
| **4** Excess inventory and obsolescence reserves | | -70,348 | 70,348 | | |
| **5** Lower of cost or market write-downs | | | | | |
| **6** Other items with differences (attach schedule) | | 36,722,233 | -1,142,908 | | 35,579,325 |
| **7** Other items with no differences | | 1,225,943 | | | 1,225,943 |
| **8** Total cost of goods sold. Add lines 1 through 7, in columns a, b, c, and d | | 41,806,132 | -1,072,560 | | 40,733,572 |

For Paperwork Reduction Act Notice, see page 4.   Cat. No. 48657X   Form **8916-A** (2008)

Form 8916-A (2008) Page **2**

## Part II    Interest Income

| | Interest Income Item | (a) Income (Loss) per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Income (Loss) per Tax Return |
|---|---|---|---|---|---|
| 1 | Tax-exempt interest income | | | | |
| 2 | Interest income from hybrid securities | | | | |
| 3 | Sales/lease interest income | | | | |
| 4a | Intercompany interest income – From outside tax affiliated group | | | | |
| 4b | Intercompany interest income – From tax affiliated group | | | | |
| 5 | Other interest income | 31,780 | | | 31,780 |
| 6 | Total interest income. Add lines 1 through 5. Enter total on Schedule M-3 (Forms 1120,1120-PC,and 1120-L), Part II, line 13 or Schedule M-3 (Forms 1065, and 1120-S) Part II, line 11. | 31,780 | | | 31,780 |

## Part III    Interest Expense

| | Interest Expense Item | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Deduction per Tax Return |
|---|---|---|---|---|---|
| 1 | Interest expense from hybrid securities | | | | |
| 2 | Lease/purchase interest expense | | | | |
| 3a | Intercompany interest expense – Paid to outside tax affiliated group | | | | |
| 3b | Intercompany interest expense – Paid to tax affiliated group | | | | |
| 4 | Other interest expense | 226,710 | | | 226,710 |
| 5 | Total interest expense. Add lines 1 through 4. Enter total on Schedule M-3 (Form 1120) Part III, line 8; Schedule M-3 (Forms 1120-PC and 1120-L), Part III, line 36; Schedule M-3 (Form 1065) Part III, line 27; or Schedule M-3 (Form 1120-S) Part III, line 26. | 226,710 | | | 226,710 |

Form **8916-A** (2008)

**Additional Data**

Software ID:
Software Version:
EIN: █████████
Name: INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

## TY 2008 Code V Other Deductions

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**EIN:**

| Type of Credit | Amount |
| --- | --- |
| Section 754 amortization | 29,652,534 |

A155

## TY 2008 Inventoriable
## Costs Paid

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**EIN:** ███████

| Type | Amount |
|------|--------|
| FREIGHT | 1,225,943 |

A156

## TY 2008 Itemized Other
## Deductions

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**EIN:** ▮▮▮▮▮▮▮▮

| Type | Amount |
|------|--------|
| Delivery expenses | 3,550,516 |
| Dues & Subscriptions | 34,431 |
| Insurance | 280,440 |
| Miscellaneous | 12,803 |
| Office expense | 275,820 |
| Professional fees | 2,890,686 |
| Research and Development | 991,409 |
| Security | 619 |
| Subcontract services | 927,817 |
| Supplies | 553,251 |
| Telephone & Utilities | 223,340 |
| Travel expenses | 294,713 |
| Vehicle expenses | 50,202 |
| OUTSIDE SALES COMMISIONS | 3,809,512 |
| additional section 263A COSTS | -3,928,304 |
| Advertising | 51,326,760 |
| Meals and Entertainment | 18,432 |
| Amortization expense | 47,865 |

A157

## TY 2008 Itemized Section
## 263A Costs

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**EIN:** ███████

| Type | Amount |
|------|--------|
| additional section 263A COSTS | 3,928,304 |

A158

## TY 2008 Nonincludible U.S. Entity

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**EIN:** ▓▓▓▓▓▓▓

| Name | EIN | Net Income (Loss) Amount |
|---|---|---|
| CHAI 5 REAL ESTATE LLP | ▓▓▓▓▓ | 324,011 |
| BIO CLINICAL DEVELOPMENT INC | ▓▓▓▓ | 54,852 |

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 93269104222429 |

## TY 2008 Nonincludible U.S. Entity

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**EIN:** ▮▮▮▮▮▮▮▮

| Name | EIN | Net Income (Loss) Amount |
|---|---|---|
| chal distribution llp | ▮▮▮▮▮▮ | 240 |

A160

## TY 2008 Other Income (Loss)

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**EIN:** ▮▮▮▮▮▮

| Type | Amount |
|------|--------|
| DISCOUNTS | 254,544 |

## TY 2008 Other Items and Amounts

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**EIN:** ▮▮▮▮▮

**Fuel Tax Credit Information:**

**Lookback interest - completed long term contracts:**

**Lookback interest - income forecast method:**

**Dispositions of property with section 179 deductions:**

**Recapture of section 179 deduction:**

**Special basis adjustments:**

**Section 453(l)(3) information:**

**Section 453A information:**

**Section 1260(b) information:**

**Interest allocable to production expenditures:**

**CCF nonqualified withdrawal:**

**Information needed to figure depletion - oil and gas:**

**Amortization of reforestation costs:**

**Unrelated business taxable income:**

**Other information:** DPAD Information - Wage Expense Included in Directly Allocated COGS

**Fuel Tax Credit Information:**

**Lookback interest - completed long term contracts:**

**Lookback interest - income forecast method:**

**Dispositions of property with section 179 deductions:**

**Recapture of section 179 deduction:**

**Special basis adjustments:**

**Section 453(l)(3) information:**

**Section 453A information:**

**Section 1260(b) information:**

**Interest allocable to production expenditures:**

**CCF nonqualified withdrawal:**

**Information needed to figure depletion - oil and gas:**

**Amortization of reforestation costs:**

**Unrelated business taxable income:**

**Other information:** DPAD Information - Wage Expense Included in Total Cost of Goods Sold

**Fuel Tax Credit Information:**

**Lookback interest - completed long term contracts:**

**Lookback interest - income forecast method:**

**Dispositions of property with section 179 deductions:**

**Recapture of section 179 deduction:**

**Special basis adjustments:**

**Section 453(l)(3) information:**

**Section 453A information:**

**Section 1260(b) information:**

**Interest allocable to production expenditures:**

**CCF nonqualified withdrawal:**

**Information needed to figure depletion - oil and gas:**

**Amortization of reforestation costs:**

**Unrelated business taxable income:**

**Other information:** DPAD Information - Wage Expense Included in Directly Allocable Expense-QPAI

**Fuel Tax Credit Information:**

**Lookback interest - completed long term contracts:**

**Lookback interest - income forecast method:**

**Dispositions of property with section 179 deductions:**

**Recapture of section 179 deduction:**

**Special basis adjustments:**

**Section 453(l)(3) information:**

**Section 453A information:**

**Section 1260(b) information:**

**Interest allocable to production expenditures:**

**CCF nonqualified withdrawal:**

**Information needed to figure depletion - oil and gas:**

**Amortization of reforestation costs:**

**Unrelated business taxable income:**

**Other information:**  DPAD Information - Wage Expense Included in Directly Allocable Expense-Non-Q

---

**Fuel Tax Credit Information:**

**Lookback interest - completed long term contracts:**

**Lookback interest - income forecast method:**

**Dispositions of property with section 179 deductions:**

**Recapture of section 179 deduction:**

**Special basis adjustments:**

**Section 453(l)(3) information:**

**Section 453A information:**

**Section 1260(b) information:**

**Interest allocable to production expenditures:**

---

**CCF nonqualified withdrawal:**

**Information needed to figure depletion - oil and gas:**

**Amortization of reforestation costs:**

**Unrelated business taxable income:**

**Other information:**  DPAD Information - Domestic production gross receipts

---

**Fuel Tax Credit Information:**

**Lookback interest - completed long term contracts:**

**Lookback interest - income forecast method:**

**Dispositions of property with section 179 deductions:**

**Recapture of section 179 deduction:**

**Special basis adjustments:**

**Section 453(l)(3) information:**

**Section 453A information:**

**Section 1260(b) information:**

**Interest allocable to production expenditures:**

**CCF nonqualified withdrawal:**

**Information needed to figure depletion - oil and gas:**

**Amortization of reforestation costs:**

**Unrelated business taxable income:**

**Other information:** DPAD Information - Allocable cost of goods sold

**Fuel Tax Credit Information:**

**Lookback interest - completed long term contracts:**

**Lookback interest - income forecast method:**

**Dispositions of property with section 179 deductions:**

**Recapture of section 179 deduction:**

**Special basis adjustments:**

**Section 453(l)(3) information:**

**Section 453A information:**

**Section 1260(b) information:**

**Interest allocable to production**

**expenditures:**

**CCF nonqualified withdrawal:**

**Information needed to figure depletion - oil and gas:**

**Amortization of reforestation costs:**

**Unrelated business taxable income:**

**Other information:** DPAD Information - Total cost of goods sold

**Fuel Tax Credit Information:**

**Lookback interest - completed long term contracts:**

**Lookback interest - income forecast method:**

**Dispositions of property with section 179 deductions:**

**Recapture of section 179 deduction:**

**Special basis adjustments:**

**Section 453(l)(3) information:**

**Section 453A information:**

**Section 1260(b) information:**

**Interest allocable to production expenditures:**

**CCF nonqualified withdrawal:**

**Information needed to figure depletion - oil and gas:**

**Amortization of reforestation costs:**

**Unrelated business taxable income:**

**Other information:** DPAD Information - Directly allocable expenses

A167

**Lookback interest - completed long term contracts:**

**Lookback interest - income forecast method:**

**Dispositions of property with section 179 deductions:**

**Recapture of section 179 deduction:**

**Special basis adjustments:**

**Section 453(l)(3) information:**

**Section 453A information:**

**Section 1260(b) information:**

**Interest allocable to production expenditures:**

**CCF nonqualified withdrawal:**

**Information needed to figure depletion - oil and gas:**

**Amortization of reforestation costs:**

**Unrelated business taxable income:**

**Other information:** DPAD Information - Interest expense

**Fuel Tax Credit Information:**

**Lookback interest - completed long term contracts:**

**Lookback interest - income forecast method:**

**Dispositions of property with section 179 deductions:**

**Recapture of section 179 deduction:**

**Special basis adjustments:**

A168

**Section 453(l)(3) information:**

**Section 453A information:**

**Section 1260(b) information:**

**Interest allocable to production expenditures:**

**CCF nonqualified withdrawal:**

**Information needed to figure depletion - oil and gas:**

**Amortization of reforestation costs:**

**Unrelated business taxable income:**

**Other information:** DPAD Information - Form W-2 wages

**Fuel Tax Credit Information:**

**Lookback interest - completed long term contracts:**

**Lookback interest - income forecast method:**

**Dispositions of property with section 179 deductions:**

**Recapture of section 179 deduction:**

**Special basis adjustments:**

**Section 453(l)(3) information:**

**Section 453A information:**

**Section 1260(b) information:**

**Interest allocable to production expenditures:**

**CCF nonqualified withdrawal:**

**Information needed to figure depletion - oil and gas:**

**Amortization of reforestation**

**costs:**

**Unrelated business taxable income:**

**Other information:**   DPAD Information - Assets allocable to QPA

A170

## TY 2008 Other items with differences schedule

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**EIN:** ███████

| Description | Income (loss) per income statement | Temporary difference | Permanent difference | Income (loss) per tax return |
|---|---|---|---|---|
| Beginning Inventory | 6,155,708 | 270,348 | | 6,426,056 |
| Ending Inventory | -14,399,105 | -1,342,908 | | -15,742,013 |
| Purchases | 44,965,630 | -70,348 | | 44,895,282 |

A171

**TY 2008 Partnership's
Charitable
Contributions**

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS
**EIN:** ▮▮▮▮▮▮▮

| Type | Amount |
|------|--------|
| Cash Charitable Contributions 50 | 15,158 |

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | | DLN: 93269104222429 |
|---|---|---|---|

**SCHEDULE C**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

**Additional Information for Schedule M-3 Filers**

OMB No. 1545-0099

**2008**

▶ Attach to Form 1065. See separate instructions.

Name of partnership
INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

Employer identification number

|  | | Yes | No |
|---|---|---|---|
| 1 | At any time during the tax year, were there any transfers between the partnership and its partners subject to the disclosure requirements of Regulations section 1.707-8? . . . . . . . . . . . . |  | No |
| 2 | Do the amounts reported on Schedule M-3, Part II, lines 7 or 8, column (d), reflect allocations to this partnership from another partnership of income, gain, loss, deduction, or credit that are disproportionate to this partnership's share of capital in such partnership or its ratio for sharing other items of such partnership? |  | No |
| 3 | At any time during the tax year, did the partnership sell, exchange, or transfer any interest in an intangible asset to a related person as defined in sections 267(b) and 707(b)(1)? . . . . . . . . . . . |  | No |
| 4 | At any time during the tax year, did the partnership acquire any interest in an intangible asset from a related person as defined in sections 267(b) and 707(b)(1)? . . . . . . . . . . . . . |  | No |
| 5 | At any time during the tax year, did the partnership make any change in accounting principle for financial accounting purposes? See instructions for a definition of change in accounting principle . . . . . |  | No |
| 6 | At any time during the tax year, did the partnership make any change in a method of accounting for U.S. income tax purposes? . . . . . . . . . . . . . . . . . . . . . . . |  | No |

For Paperwork Reduction Act Notice, see the instructions for Form 1065.    Cat. No. 49945S    Schedule C (Form 1065) 2008

A173

**Additional Data**

| | |
|---:|:---|
| **Software ID:** | |
| **Software Version:** | |
| **EIN:** | ████████ |
| **Name:** | INNOVATION VENTURES LLC<br>DBA LIVING ESSENTIALS |

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 93269104222429 |

## TY 2008 Schedule K Other Deductions

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**EIN:** ▮

| Type of Deduction | Amount |
|---|---|
| Health insurance premiums | 30,852 |
| Section 754 amortization | 29,652,534 |
| Payments for partners to a 401k plan | 16,174 |

A175

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA – Production | DLN: 92520104453929 |

651106

| | | ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0099 |

**Schedule K-1**
**(Form 1065)**

**2008**

Department of the Treasury
Internal Revenue Service

For calendar year 2008, or tax
year beginning  01-01-2008
ending  12-31-2008

**Partner's Share of Income, Deductions,
Credits, etc.** ▶ See back of form and separate Instructions.

**Part I  Information About the Partnership**

**A**  Partnership's employer identification number

**B**  Partnership's name, address, city, state, and ZIP code
INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS
46570 HUMBOLDT DRIVE

NOVI, MI  48377

**C**  IRS Center where partnership filed return
OSPC

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II  Information About the Partner**

**E**  Partner's identifying number

**F**  Partner's name, address, city, state, and ZIP code
MANOJ BHARGAVA
39018 KENNEDY
FARMINGTON HILLS, MI  48331

**G** ☑ General partner or LLC
member-manager    ☐ Limited partner or other LLC
member

**H** ☑ Domestic partner    ☐ Foreign partner

**I**  What type of entity is this partner? Individual

**J**  Partner's share of profit, loss, and capital (see Instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.49500% | 0.79200% |
| Loss | 0.49500% | 0.79200% |
| Capital | 0.49500% | 0.79200% |

**K**  Partner's share of liabilities at year end:
Nonrecourse . . . . . $ 29,664,161
Qualified nonrecourse financing . . $ 0
Recourse . . . . . . . $ 0

**L**  Partner's capital account analysis:
Beginning capital account . . $ 907,566
Capital contributed during the year $
Current year increase (decrease) $ 51,833,751
Withdrawals & distributions . . $ ( 53,912,782 )
Ending capital account . . . $ -1,171,465

☐ Tax basis  ☑ GAAP  ☐ Section 704(b) book
☐ Other (explain)

**Part III  Partner's Share of Current Year Income,
Deductions, Credits, and Other Items**

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 56,025,128 | 15 | Credits |
| 2 | Net rental real estate income (loss) | 16 | Foreign transactions |
| 3 | Other net rental income (loss) | 17 | Alternative minimum tax (AMT) Items |
| 4 | Guaranteed payments 119,294 | A | 33,451 |
| 5 | Interest income 25,180 | | |
| 6a | Ordinary dividends | 18 | Tax-exempt income and nondeductible expenses |
| 6b | Qualified dividends | C | 115,783 |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | 19 | Distributions |
| 9a | Net long-term capital gain (loss) | A | 53,912,782 |
| 9b | Collectibles (28%) gain (loss) | 20 | Other information |
| 9c | Unrecaptured section 1250 gain | A | 25,180 |
| 10 | Net section 1231 gain (loss) -628 | | |
| 11 | Other income (loss) | | |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | | |
| A | 12,010 | | |
| M | 11,294 | | |
| T | | | |
| W | 29,652,534 | | |
| 14 | Self-employment earnings (loss) | | |
| A | 363,369 | | |

\* See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.    Cat. No. 11394R    Schedule K-1 (Form 1065) 2008

A176

**Additional Data**

|  |  |
|---|---|
| **Software ID:** |  |
| **Software Version:** |  |
| **EIN:** | ■■■■■■ |
| **Name:** | INNOVATION VENTURES LLC |
|  | DBA LIVING ESSENTIALS |
| **Form 1065 Schedule K-1 Line 20 Other Information:** | A |

A177

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 92520104453939 |

651106

☐ Final K-1        ☐ Amended K-1        OMB No. 1545-0099

**Schedule K-1**
**(Form 1065)**

**2008**

Department of the Treasury
Internal Revenue Service

For calendar year 2008, or tax
year beginning  01-01-2008
ending  12-31-2008

**Partner's Share of Income, Deductions, Credits, etc.**    ▶ See back of form and separate instructions.

### Part I  Information About the Partnership

**A**  Partnership's employer identification number

**B**  Partnership's name, address, city, state, and ZIP code
INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS
46570 HUMBOLDT DRIVE

NOVI, MI  48377

**C**  IRS Center where partnership filed return
OSPC

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II  Information About the Partner

**E**  Partner's identifying number

**F**  Partner's name, address, city, state, and ZIP code
EDWARD SNYDER
5263 N 250 W
MARION, IN  46592

**G** ☐ General partner or LLC member-manager   ☑ Limited partner or other LLC member

**H** ☑ Domestic partner   ☐ Foreign partner

**I**  What type of entity is this partner?  Individual

**J**  Partner's share of profit, loss, and capital (see instructions):

|         | Beginning | Ending |
|---------|-----------|--------|
| Profit  | 0.17325%  | 0.17325% |
| Loss    | 0.17325%  | 0.17325% |
| Capital | 0.17325%  | 0.16025% |

**K**  Partner's share of liabilities at year end:
Nonrecourse . . . . . . . $ 6,301,780
Qualified nonrecourse financing . $ 0
Recourse . . . . . . . . $ 0

**L**  Partner's capital account analysis:
Beginning capital account . . $ 441,705
Capital contributed during the year $ 
Current year increase (decrease) $ 17,550,710
Withdrawals & distributions . . $ ( 12,600,400 )
Ending capital account . . . $ 5,392,015

☐ Tax basis  ☑ GAAP  ☐ Section 704(b) book
☐ Other (explain)

### Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 12,230,989 | 15 | Credits |
| 2 | Net rental real estate income (loss) | 16 | Foreign transactions |
| 3 | Other net rental income (loss) | 17 | Alternative minimum tax (AMT) items |
| 4 | Guaranteed payments 175,951 | A | 7,302 |
| 5 | Interest income 5,497 | | |
| 6a | Ordinary dividends | 18 | Tax-exempt income and nondeductible expenses |
| 6b | Qualified dividends | C | 25,277 |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | 19 | Distributions |
| 9a | Net long-term capital gain (loss) | A | 12,600,400 |
| 9b | Collectibles (28%) gain (loss) | 20 | Other information |
| | | A | 5,497 |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) -137 | | |
| 11 | Other income (loss) | | |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | | |
| A | 2,622 | | |
| M | 7,951 | | |
| T | | | |
| 14 | Self-employment earnings (loss) | | |
| A | 175,951 | | |

\* See attached statement for additional information.

*For IRS Use Only*

For Paperwork Reduction Act Notice, see Instructions for Form 1065.    Cat. No. 11394R    Schedule K-1 (Form 1065) 2008

A178

## Additional Data

| | |
|---:|:---|
| **Software ID:** | |
| **Software Version:** | |
| **EIN:** | ████████ |
| **Name:** | INNOVATION VENTURES LLC |
| | DBA LIVING ESSENTIALS |
| **Form 1065 Schedule K-1 Line 20 Other Information:** | A |

efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 9252010445349

651106

☑ Final K-1　☐ Amended K-1　OMB No. 1545-0099

**Schedule K-1**
**(Form 1065)**
**2008**

Department of the Treasury
Internal Revenue Service

For calendar year 2008, or tax
year beginning ___01-01-2008___
ending ___12-31-2008___

**Partner's Share of Income, Deductions, Credits, etc.**　▶ See back of form and separate instructions.

**Part I  Information About the Partnership**

**A** Partnership's employer identification number

**B** Partnership's name, address, city, state, and ZIP code
INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS
46570 HUMBOLDT DRIVE

NOVI, MI  48377

**C** IRS Center where partnership filed return
OSPC

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II  Information About the Partner**

**E** Partner's identifying number

**F** Partner's name, address, city, state, and ZIP code
INDU RAWAT
E-172 WESTEND HEIGHTS DFL PHASE IV
GURGAON, FC  122002
IN

**G** ☐ General partner or LLC member-manager　☑ Limited partner or other LLC member

**H** ☐ Domestic partner　☑ Foreign partner

**I** What type of entity is this partner? Individual

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.29200% | 0.00000% |
| Loss | 0.29200% | 0.00000% |
| Capital | 0.29200% | 0.00000% |

**K** Partner's share of liabilities at year end:
Nonrecourse . . . . . . $_____
Qualified nonrecourse financing . $_____
Recourse . . . . . . . $_____

**L** Partner's capital account analysis:
Beginning capital account . . $_____630,090
Capital contributed during the year $_____
Current year increase (decrease) $_____-359,787
Withdrawals & distributions . . $_____( 270,303 )
Ending capital account . . . $_____

☐ Tax basis　☑ GAAP　☐ Section 704(b) book
☐ Other (explain)

**Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) | 15 | Credits |
| 2 | Net rental real estate income (loss) | 16 | Foreign transactions |
| 3 | Other net rental income (loss) | 17 | Alternative minimum tax (AMT) items |
| 4 | Guaranteed payments | 18 | Tax-exempt income and nondeductible expenses |
| 5 | Interest income | | |
| 6a | Ordinary dividends | 19 | Distributions |
| | | A | 270,303 |
| 6b | Qualified dividends | 20 | Other information |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | | |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | | |
| 11 | Other income (loss) | | |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | | |
| T | | | |
| 14 | Self-employment earnings (loss) | | |

\* See attached statement for additional information.

For IRS Use Only

A180

**Additional Data**

Software ID:
Software Version:
EIN: ████████
Name: INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production DLN: 92520104453959

651106

| | ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0099 |

**Schedule K-1**
**(Form 1065)**

**2008**

Department of the Treasury
Internal Revenue Service

For calendar year 2008, or tax
year beginning 01-01-2008
ending 12-31-2008

**Partner's Share of Income, Deductions,
Credits, etc.** ▶ See back of form and separate instructions.

**Part III Partner's Share of Current Year Income,
Deductions, Credits, and Other Items**

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 1,747,284 | 15 | Credits |
| 2 | Net rental real estate income (loss) | 16 | Foreign transactions |
| 3 | Other net rental income (loss) | 17 | Alternative minimum tax (AMT) items |
| 4 | Guaranteed payments | A | 1,043 |
| 5 | Interest income 786 | | |
| 6a | Ordinary dividends | 18 | Tax-exempt income and nondeductible expenses |
| 6b | Qualified dividends | C | 3,611 |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | 19 | Distributions |
| 9a | Net long-term capital gain (loss) | A | 1,827,700 |
| 9b | Collectibles (28%) gain (loss) | 20 | Other information |
| 9c | Unrecaptured section 1250 gain | A | 786 |
| 10 | Net section 1231 gain (loss) -19 | | |
| 11 | Other income (loss) | | |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | | |
| A | 375 | | |
| T | | | |
| 14 | Self-employment earnings (loss) | | |

**Part I Information About the Partnership**

**A** Partnership's employer identification number

**B** Partnership's name, address, city, state, and ZIP code
INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS
46570 HUMBOLDT DRIVE

NOVI, MI 48377

**C** IRS Center where partnership filed return
OSPC

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II Information About the Partner**

**E** Partner's identifying number

**F** Partner's name, address, city, state, and ZIP code
RAVINDER SAJWAN
19545 DORCHESTER DRIVE
Saratoga, CA 950703901

**G** ☐ General partner or LLC member-manager   ☑ Limited partner or other LLC member

**H** ☑ Domestic partner   ☐ Foreign partner

**I** What type of entity is this partner? Individual

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.02475% | 0.02475% |
| Loss | 0.02475% | 0.02475% |
| Capital | 0.02475% | 0.02415% |

**K** Partner's share of liabilities at year end:
Nonrecourse . . . . . $ 904,534
Qualified nonrecourse financing . $ 0
Recourse . . . . . . $ 0

**L** Partner's capital account analysis:
Beginning capital account . . $ 73,704
Capital contributed during the year $
Current year increase (decrease) $ 2,511,321
Withdrawals & distributions . . $ ( 1,827,700 )
Ending capital account . . . $ 757,325

☐ Tax basis   ☑ GAAP   ☐ Section 704(b) book
☐ Other (explain)

* See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.     Cat. No. 11394R     Schedule K-1 (Form 1065) 2008

A182

**Additional Data**

Software ID:
Software Version:
EIN: ▮▮▮▮
Name: INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS
Form 1065 Schedule K-1 Line 20 Other Information: A

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production |

DLN: 92520104453969

651106

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0099

**Schedule K-1**
**(Form 1065)**

**2008**

Department of the Treasury
Internal Revenue Service

For calendar year 2008, or tax
year beginning  01-01-2008
ending  12-31-2008

**Partner's Share of Income, Deductions,
Credits, etc.**  ▶ See back of form and separate instructions.

**Part I  Information About the Partnership**

**A**  Partnership's employer identification number

**B**  Partnership's name, address, city, state, and ZIP code
INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS
46570 HUMBOLDT DRIVE

NOVI, MI  48377

**C**  IRS Center where partnership filed return
OSPC

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II  Information About the Partner**

**E**  Partner's identifying number

**F**  Partner's name, address, city, state, and ZIP code
Scott Henderson
10524 Kingston Avenue
Huntington Woods, MI  480701111

**G** ☐ General partner or LLC    ☑ Limited partner or other LLC
        member-manager          member

**H** ☑ Domestic partner    ☐ Foreign partner

**I**  What type of entity is this partner? Individual

**J**  Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.01000% | 0.01000% |
| Loss | 0.01000% | 0.01000% |
| Capital | 0.01000% | 0.01000% |

**K**  Partner's share of liabilities at year end:
Nonrecourse . . . . . . $ 374,547
Qualified nonrecourse financing  . $ 0
Recourse . . . . . . . . . $ 0

**L**  Partner's capital account analysis:

Beginning capital account  .  .  $ -15
Capital contributed during the year $
Current year increase (decrease)  $ 1,006,103
Withdrawals & distributions  .  .  $ ( 739,900 )
Ending capital account  .  .  .  $ 266,188

☐ Tax basis  ☑ GAAP  ☐ Section 704(b) book
☐ Other (explain)

**Part III  Partner's Share of Current Year Income,
Deductions, Credits, and Other Items**

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 705,974 | 15 | Credits |
| 2 | Net rental real estate income (loss) | 16 | Foreign transactions |
| 3 | Other net rental income (loss) | 17 | Alternative minimum tax (AMT) items |
| 4 | Guaranteed payments 313,607 | A | 422 |
| 5 | Interest income 317 | | |
| 6a | Ordinary dividends | 18 | Tax-exempt income and nondeductible expenses |
| 6b | Qualified dividends | C | 1,459 |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | 19 | Distributions |
| 9a | Net long-term capital gain (loss) | A | 739,900 |
| 9b | Collectibles (28%) gain (loss) | 20 | Other information |
| 9c | Unrecaptured section 1250 gain | A | 317 |
| 10 | Net section 1231 gain (loss) -8 | | |
| 11 | Other income (loss) | | |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | | |
| A | 151 | | |
| M | 11,607 | | |
| R | 16,174 | | |
| T | | | |
| 14 | Self-employment earnings (loss) | | |
| A | 313,607 | | |

* See attached statement for additional information.

For IRS Use Only

A184

**Additional Data**

|  |  |
|---:|:---|
| Software ID: | |
| Software Version: | |
| EIN: | █████████ |
| Name: | INNOVATION VENTURES LLC |
| | DBA LIVING ESSENTIALS |
| Form 1065 Schedule K-1 Line 20 Other Information: | A |

A185

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | | DLN: 92520104453979 |
|---|---|---|---|

651106

☐ Final K-1   ☐ Amended K-1   OMB No. 1545-0099

| **Schedule K-1** **(Form 1065)** Department of the Treasury Internal Revenue Service **Partner's Share of Income, Deductions, Credits, etc.**  ► See back of form and separate instructions. | **2008** For calendar year 2008, or tax year beginning  01-01-2008 ending  12-31-2008 |
|---|---|

| **Part III** | **Partner's Share of Current Year Income, Deductions, Credits, and Other Items** |
|---|---|

| 1 | Ordinary business income (loss) | 15 | Credits |
|---|---|---|---|
| 2 | Net rental real estate income (loss) | 16 | Foreign transactions |
| 3 | Other net rental income (loss) | 17 | Alternative minimum tax (AMT) items |
| 4 | Guaranteed payments | 18 | Tax-exempt income and nondeductible expenses |
| 5 | Interest income | | |
| 6a | Ordinary dividends | 19 | Distributions |
| 6b | Qualified dividends | 20 | Other information |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | | |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | | |
| 11 | Other income (loss) | | |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | | |
| T | | | |
| 14 | Self-employment earnings (loss) | | |

**Part I   Information About the Partnership**

A   Partnership's employer identification number

B   Partnership's name, address, city, state, and ZIP code
INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS
46570 HUMBOLDT DRIVE
NOVI, MI 48377

C   IRS Center where partnership filed return
OSPC

D ☐ Check if this is a publicly traded partnership (PTP)

**Part II   Information About the Partner**

E   Partner's identifying number

F   Partner's name, address, city, state, and ZIP code
RURAL INDIA TRUST
46570 HUMBOLDT DRIVE
NOVI, MI 48377

G ☐ General partner or LLC member-manager   ☑ Limited partner or other LLC member

H ☑ Domestic partner   ☐ Foreign partner

I   What type of entity is this partner? Exempt Organization

J   Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.00000% | 0.00000% |
| Loss | 0.00000% | 0.00000% |
| Capital | 0.00500% | 0.00560% |

K   Partner's share of liabilities at year end:
Nonrecourse . . . . . . . . $ 209,726
Qualified nonrecourse financing . $ 0
Recourse . . . . . . . . . $ 0

L   Partner's capital account analysis:
Beginning capital account . . $ _____
Capital contributed during the year $ _____
Current year increase (decrease) $ 179,035
Withdrawals & distributions . . $ ( )
Ending capital account . . . $ 179,035

☐ Tax basis   ☑ GAAP   ☐ Section 704(b) book
☐ Other (explain)

* See attached statement for additional information.

*For IRS Use Only*

For Paperwork Reduction Act Notice, see Instructions for Form 1065.      Cat. No. 11394R      Schedule K-1 (Form 1065) 2008

A186

**Additional Data**

|  |  |
|---|---|
| **Software ID:** | |
| **Software Version:** | |
| **EIN:** | ███████████ |
| **Name:** | INNOVATION VENTURES LLC<br>DBA LIVING ESSENTIALS |

efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 93269104222429

## TY 2008 Schedule L Other Assets

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**EIN:** ▮▮▮▮▮▮▮▮

| Type | Beginning of Year Amount | End of Year Amount |
|---|---|---|
| Construction in progress | 773,150 | 1,244,578 |

A188

## TY 2008 Schedule L Other
## Current Assets

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**EIN:** ███████

| Type | Beginning of Year Amount | End of Year Amount |
|---|---|---|
| Prepaid expenses | 192,009 | 2,232,408 |
| MEMBER RECEIVABLES | 2,058,747 | 4,688,657 |

A189

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | | DLN: 93269104222429 |

**TY 2008 Schedule L Other
Current Liabilities**

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**EIN:** ▮▮▮▮▮▮▮

| Type | BOY Amount | EOY Amount |
|---|---|---|
| Accrued insurance | | 3,000 |
| ACCRUED LEGAL FEES | 21,440 | 150,000 |
| ACCRUED FREIGHT | 25,000 | 100,000 |
| ACCRUED MISCELLANEOUS | 93,700 | 210,270 |
| Accrued Wages | 183,988 | 487,981 |
| Accrued Commissions | 266,698 | 832,069 |
| state tax withholdings payable | 524,427 | 1,647,700 |
| MEMBER DISTRIBUTIONS PAYABLE | 900,000 | |
| FEDERAL WITHHOLDINGS PAYABLE | 2,694,352 | |
| ACCRUED ADVERTISING COSTS | 3,348,061 | 4,429,571 |

A190

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 93269104222429 |

## TY 2008 Schedule M-2 Itemized
## Other Decreases Statement

**Name:** INNOVATION VENTURES LLC
DBA LIVING ESSENTIALS

**EIN:** ▮▮▮▮▮▮▮▮

| Type | Amount |
|---|---|
| Transferred capital | 538,822 |

efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 93269104222429

## TY 2008 Schedule M-2 Itemized
## Other Increases Statement

**Name:** INNOVATION VENTURES LLC

DBA LIVING ESSENTIALS

**EIN:** ▮▮▮▮▮▮

| Type | Amount |
|---|---|
| Transferred capital | 538,822 |

A192

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | | DLN: 93269104222429 |
|---|---|---|---|

| **SCHEDULE M-3** | **Net Income (Loss) Reconciliation** | OMB No. 1545-0099 |
|---|---|---|
| **(Form 1065)** | **for Certain Partnerships** | |
| Department of the Treasury Internal Revenue Service | ►Attach to Form 1065 or Form 1065-B. ►See separate instructions. | **2008** |

| Name of partnership | Employer identification number |
|---|---|
| INNOVATION VENTURES LLC DBA LIVING ESSENTIALS | |

**This Schedule M-3 is being filed because (check all that apply):**

A ☑ The amount of the partnership's total assets at the end of the tax year is equal to $10 million or more.

B ☑ The amount of the partnership's adjusted total assets for the year is equal to $10 million or more. If box B is checked, enter the amount of adjusted total assets for the tax year ___112,640,054___.

C ☑ The amount of total receipts for the taxable year is equal to $35 million or more. If box C is checked, enter the total receipts for the tax year ___192,243,685___.

D ☐ An entity that is a reportable entity partner with respect to the partnership owns or is deemed to own an interest of 50 percent or more in the partnership's capital, profit, or loss, on any day during the tax year of the partnership.

| Name of Reportable Entity Partner | Identifying Number | Maximum Percentage Owned or Deemed Owned |
|---|---|---|
| | | |
| | | |
| | | |

E ☐ Voluntary Filer

**Part I**   **Financial Information and Net Income (Loss) Reconciliation**

1a  Did the partnership file SEC Form 10-K for its income statement period ending with or within this tax year?

☐ **Yes.** Skip lines 1b and 1c and complete lines 2 through 11 with respect to that SEC Form 10-K.

☑ **No.** Go to line 1b. See instructions if multiple non-tax-basis income statements are prepared.

b  Did the partnership prepare a certified audited non-tax-basis income statement for that period?

☑ **Yes.** Skip line 1c and complete lines 2 through 11 with respect to that income statement.

☐ **No.** Go to line 1c.

c  Did the partnership prepare a non-tax-basis income statement for that period?

☐ **Yes.** Complete lines 2 through 11 with respect to that income statement.

☐ **No.** Skip lines 2 through 3b and enter the partnership's net income (loss) per its books and records on line 4a.

2  Enter the income statement period:  Beginning ___2008-01-01___   Ending ___2008-12-31___

3a  Has the partnership's income statement been restated for the income statement period on line 2?

☐ **Yes.** (If "Yes," attach an explanation and the amount of each item restated.)

☑ **No.**

b  Has the partnership's income statement been restated for any of the five income statement periods preceding the period on line 2?

☐ **Yes.** (If "Yes," attach an explanation and the amount of each item restated.)

☑ **No.**

| | | | |
|---|---|---|---|
| 4a | Worldwide consolidated net income (loss) from income statement source identified in Part I, line 1 | 4a | 72,972,057 |
| b | Indicate accounting standard used for line 4a (see instructions):  1 ☑ GAAP  2 ☐ IFRS  3 ☐ 704(b)  4 ☐ Tax-basis  5 ☐ Other: (Specify) ► | | |
| 5a | Net income from nonincludible foreign entities (attach schedule) . . . . . . . | 5a | ( ) |
| b | Net loss from nonincludible foreign entities (attach schedule and enter as a positive amount) . . . | 5b | |
| 6a | Net income from nonincludible U.S. entities (attach schedule) 📄 . . . . . . . . | 6a | (378,863) |
| b | Net loss from nonincludible U.S. entities (attach schedule and enter as a positive amount) 📄 . . . . | 6b | 240 |
| 7a | Net income (loss) of other foreign disregarded entities (attach schedule) . . . . . . . . . | 7a | |
| b | Net income (loss) of other U.S. disregarded entities (attach schedule) . . . . . . . . . . | 7b | |
| 8 | Adjustment to eliminations of transactions between includible entities and nonincludible entities (attach schedule) . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 | |
| 9 | Adjustment to reconcile income statement period to tax year (attach schedule) . . . . . . . | 9 | |
| 10 | Other adjustments to reconcile to amount on line 11 (attach schedule) . . . . . . . . . | 10 | |
| 11 | Net income (loss) per income statement of the partnership. Combine lines 4 through 10 . . . . . | 11 | 72,593,434 |

**Note.** Part I, line 11, must equal the amount on Part II, line 26, column (a).

12  Enter the total amount (not just the partnership's share) of the assets and liabilities of all entities included or removed on the following lines:

| | | Total Assets | Total Liabilities |
|---|---|---|---|
| a | Included on Part I, line 4 | 44,605,628 | 38,250,834 |
| b | Removed on Part I, line 5 | | |
| c | Removed on Part I, line 6 | 1,855,477 | 796,086 |
| d | Included on Part I, line 7 | | |

For Paperwork Reduction Act Notice, see the Instructions for your return.          Cat. No. 39669D          Schedule M-3 (Form 1065) 2008

Schedule M-3 (Form 1065) 2008       Page **2**

| Name of partnership | Employer identification number |
|---|---|
| INNOVATION VENTURES LLC | |
| DBA LIVING ESSENTIALS | |

**Part II**    Reconciliation of Net Income (Loss) per Income Statement of Partnership with Income (Loss) per Return

| Income (Loss) Items<br><br>(Attach schedules for lines 1 through 9) | (a)<br>Income (Loss) per<br>Income Statement | (b)<br>Temporary<br>Difference | (c)<br>Permanent<br>Difference | (d)<br>Income (Loss) per<br>Tax Return |
|---|---|---|---|---|
| 1 Income (loss) from equity method foreign corporations | | | | |
| 2 Gross foreign dividends not previously taxed . . . . | | | | |
| 3 Subpart F, QEF, and similar income inclusions . . . | | | | |
| 4 Gross foreign distributions previously taxed . . . | | | | |
| 5 Income (loss) from equity method U.S. corporations . | | | | |
| 6 U.S. dividends . | | | | |
| 7 Income (loss) from U.S. partnerships (attach schedule) | | | | |
| 8 Income (loss) from foreign partnerships (attach schedule) | | | | |
| 9 Income (loss) from other pass-through entities (attach schedule) . . . . . . . . . . . . . . . . | | | | |
| 10 Items relating to reportable transactions (attach details) | | | | |
| 11 Interest income (attach Form 8916-A) . . . . | 31,780 | | | 31,780 |
| 12 Total accrual to cash adjustment . . . . . . . . . | | | | |
| 13 Hedging transactions . . . . . . . . . . . | | | | |
| 14 Mark-to-market income (loss) . . . . . . . . | | | | |
| 15 Cost of goods sold (attach Form 8916-A) . . . | (41,806,132) | 1,072,560 | | (40,733,572) |
| 16 Sale versus lease (for sellers and/or lessors) . . . . | | | | |
| 17 Section 481(a) adjustments . . . . . . . . . | | | | |
| 18 Unearned/deferred revenue . . . . . . . . . | | | | |
| 19 Income recognition from long-term contracts . . . | | | | |
| 20 Original issue discount and other imputed interest . . | | | | |
| 21a Income statement gain/loss on sale, exchange, abandonment, worthlessness, or other disposition of assets other than inventory and pass-through entities . | -792 | 792 | | |
| b Gross capital gains from Schedule D, excluding amounts from pass-through entities . . . . . . . . . . . . | | | | |
| c Gross capital losses from Schedule D, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses . . . . . . . . . . . | | | | |
| d Net gain/loss reported on Form 4797, line 17, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses . . . . . . . . . . | | | | |
| e Abandonment losses . . . . . . . . . . . | | | | |
| f Worthless stock losses (attach details) . . . . . | | | | |
| g Other gain/loss on disposition of assets other than inventory | | -792 | | -792 |
| 22 Other income (loss) items with differences (attach schedule) . . | | | | |
| 23 Total income (loss) items. Combine lines 1 through 22 . | -41,775,144 | 1,072,560 | | -40,702,584 |
| 24 Total expense/deduction items. (from Part III, line 30) (see instructions) . . . . . . . . . . . | (-1,979,808) | -32,755,627 | 724,130 | (-34,011,303) |
| 25 Other items with no differences . . . . . . . . | 116,348,384 | | | 116,348,384 |
| 26 Reconciliation totals. Combine lines 23 through 25 . . | 72,593,434 | -31,683,067 | 724,130 | 41,634,497 |

**Note.** Line 26, column (a), must equal the amount on Part I, line 11, and column (d) must equal Form 1065, page 5, Analysis of Net Income (Loss), line 1.

Schedule M-3 (Form 1065) 2008

A194

Schedule M-3 (Form 1065) 2008

Page **3**

| Name of partnership | Employer identification number |
|---|---|
| INNOVATION VENTURES LLC<br>DBA LIVING ESSENTIALS | ▓▓▓▓▓▓▓▓ |

**Part III** Reconciliation of Net Income (Loss) per Income Statement of Partnership With Income (Loss) per Return—Expense/Deduction Items

| | Expense/Deduction Items | (a)<br>Expense per<br>Income Statement | (b)<br>Temporary<br>Difference | (c)<br>Permanent<br>Difference | (d)<br>Deduction per<br>Tax Return |
|---|---|---|---|---|---|
| 1 | State and local current income tax expense . . . . | | | | |
| 2 | State and local deferred income tax expense . . . . | | | | |
| 3 | Foreign current income tax expense (other than foreign withholding taxes) . . . . . . . . . . . . | | | | |
| 4 | Foreign deferred income tax expense . . . . . . . | | | | |
| 5 | Equity-based compensation . . . . . . . . . | | | | |
| 6 | Meals and entertainment . . . . . . . . . . . | 36,863 | | -18,431 | 18,432 |
| 7 | Fines and penalties . . . . . . . . . . . . . | 127,699 | | -127,699 | |
| 8 | Judgments, damages, awards, and similar costs . . . | | | | |
| 9 | Guaranteed payments . . . . . . . . . . . . | 608,853 | | -578,000 | 30,853 |
| 10 | Pension and profit-sharing . . . . . . . . . . | | | | |
| 11 | Other post-retirement benefits . . . . . . . . . | | | | |
| 12 | Deferred compensation . . . . . . . . . . . . | | | | |
| 13 | Charitable contribution of cash and tangible property . | 15,158 | | | 15,158 |
| 14 | Charitable contribution of intangible property . . . . | | | | |
| 15 | Organizational expenses as per Regulations Sections 1.709-2(a) | | | | |
| 16 | Syndication expenses as per Regulations Sections 1.709-2(b) | | | | |
| 17 | Current year acquisition/reorganization investment banking fees | | | | |
| 18 | Current year acquisition/reorganization legal and accounting fees . . . . . . . . . . . . . . . . | | | | |
| 19 | Amortization/impairment of goodwill . . . . . . . | | | | |
| 20 | Amortization of acquisition, reorganization, and start-up costs . . . . . . . . . . . . . . . . . | | | | |
| 21 | Other amortization or impairment write-offs . . . . . | | 29,700,399 | | 29,700,399 |
| 22 | Section 198 environmental remediation costs . . . . | | | | |
| 23a | Depletion—Oil & Gas . . . . . . . . . . . . | | | | |
| b | Depletion—Other than Oil & Gas . . . . . . . . | | | | |
| 24 | Intangible drilling & development costs . . . . . | | | | |
| 25 | Depreciation . . . . . . . . . . . . . . . | 475,527 | 3,179,648 | | 3,655,175 |
| 26 | Bad debt expense . . . . . . . . . . . . . | 75,000 | 9,136 | | 84,136 |
| 27 | Interest expense (attach Form 8916-A) . . . . | 226,710 | | | 226,710 |
| 28 | Purchase versus lease (for purchasers and/or lessees) . | | | | |
| 29 | Other expense/deduction items with differences (attach schedule) . . . . . . . . . . . . . . . | 413,996 | -133,556 | | 280,440 |
| 30 | Total expense/deduction items. Combine lines 1 through 29. Enter here and on Part II, line 24, reporting positive amounts as negative and negative amounts as positive . . . . . . . . . . . . . . . . | 1,979,806 | 32,755,627 | -724,130 | 34,011,303 |

Schedule M-3 (Form 1065) 2008

**Additional Data**

|  |  |
|---|---|
| Software ID: | |
| Software Version: | |
| EIN: | ███████ |
| Name: | INNOVATION VENTURES LLC |
|  | DBA LIVING ESSENTIALS |

Docket No. 15340-16

Exhibit 2

A197

A198

Form **2848**
(Rev. June 2008)
Department of the Treasury
Internal Revenue Service

# Power of Attorney
# and Declaration of Representative

▶ Type or print. ▶ See the separate instructions.

OMB No. 1545-0150

**For IRS Use Only**

Received by:
Name _M. M____
Telephone (248) 848-05-2
Function _____
Date 8/23/10

| Part I | Power of Attorney |
|---|---|

Caution: *Form 2848 will not be honored for any purpose other than representation before the IRS.*

**1 Taxpayer information.** Taxpayer(s) must sign and date this form on page 2, line 9.

Taxpayer name(s) and address

INDU RAWAT
E-172 WESTEND HEIGHTS, DFL PHASE IV
GURGAON,          122002

Social security number(s) ████  ██

Employer identification number

Plan number (if applicable)

Daytime telephone number

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s)** must sign and date this form on page 2, Part II.

Name and address

GERALD STEIN, PLANTE & MORAN, PLLC
19176 HALL ROAD, SUITE 300
CLINTON TOWNSHIP, MI 48038

CAF No. ████████
Telephone No. 586.416.4956
Fax No. 248.233.9131
Check if new: Address ☐ Telephone No. ☐ Fax No. ☐

Name and address

DAVID LIEBERMAN, SEYBURN KAHN GINN BESS &
SERLIN PC
2000 TOWN CENTER, 15TH FLOOR
SOUTHFIELD, MI 48075

CAF No. ████████
Telephone No. 248.353.7620
Fax No. 248.353.3727
Check if new: Address ☐ Telephone No. ☐ Fax No. ☐

Name and address

DENISE GREENWAY, PLANTE & MORAN, PLLC
19176 HALL ROAD, SUITE 300
CLINTON TOWNSHIP, MI 48038

CAF No. ████████
Telephone No. 586.416.4922
Fax No. 248.233.9096
Check if new: Address ☐ Telephone No. ☐ Fax No. ☐

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) or Civil Penalty (see the instructions for line 3) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) (see the instructions for line 3) |
|---|---|---|
| INCOME | 1040NR | 2007 - 2009 |
| | | |
| | | |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for Line 4. Specific Uses Not Recorded on CAF. ▶ ☐

**5 Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, or additional representatives, the power to sign certain returns, or the power to execute a request for disclosure of tax returns or return information to a third party. See the line 5 instructions for more information.

**Exceptions.** An unenrolled return preparer cannot sign any document for a taxpayer and may only represent taxpayers in limited situations. See Unenrolled Return Preparer on page 1 of the instructions. An enrolled actuary may only represent taxpayers to the extent provided in section 10.3(d) of Treasury Department Circular No. 230 (Circular 230). An enrolled retirement plan administrator may only represent taxpayers to the extent provided in section 10.3(e) of Circular 230. See the line 5 instructions for restrictions on tax matters partners. In most cases, the student practitioner's (levels k and l) authority is limited (for example, they may only practice under the supervision of another practitioner).

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: _____

_____

**6 Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, BUT NOT TO ENDORSE OR CASH, refund checks, initial here _____ and list the name of that representative below.

Name of representative to receive refund check(s) ▶

LHA **For Privacy Act and Paperwork Reduction Act Notice, see page 4 of the instructions.**
713961
09-03-08

Form **2848** (Rev. 6-2008)

**7** Notices and communications. Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2.
- **a** If you also want the second representative listed to receive a copy of notices and communications, check this box ................................................................ ▶ [X]
- **b** If you do not want any notices or communications sent to your representative(s), check this box ................................................................ ▶ [ ]

**8** Retention/revocation of prior power(s) of attorney. The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here ................................................................ ▶ [ ]
YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.

**9** Signature of taxpayer(s). If a tax matter concerns a joint return, **both** husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.

_Indu Rawat_ _____   _06-Aug 2010_ _____
              Signature                                    Date                          Title (if applicable)

INDU RAWAT _____   _____   _____
      Print Name                          PIN Number            Print name of taxpayer from line 1 if other than individual

_____   _____   _____
              Signature                                    Date                          Title (if applicable)

_____   _____
      Print Name                          PIN Number

## Part II   Declaration of Representative

Caution: *Students with a special order to represent taxpayers in qualified Low Income Taxpayer Clinics or the Student Tax Clinic Program (levels k and l), see the instructions for Part II.*

Under penalties of perjury, I declare that:
- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Circular 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:
  - **a** Attorney - a member in good standing of the bar of the highest court of the jurisdiction shown below.
  - **b** Certified Public Accountant - duly qualified to practice as a certified public accountant in the jurisdiction shown below.
  - **c** Enrolled Agent - enrolled as an agent under the requirements of Circular 230.
  - **d** Officer - a bona fide officer of the taxpayer's organization.
  - **e** Full-Time Employee - a full-time employee of the taxpayer.
  - **f** Family Member - a member of the taxpayer's immediate family (for example, spouse, parent, child, brother, or sister).
  - **g** Enrolled Actuary - enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Internal Revenue Service is limited by section 10.3(d) of Circular 230).
  - **h** Unenrolled Return Preparer - the authority to practice before the Internal Revenue Service is limited by Circular 230, section 10.7(c)(1)(viii). You must have prepared the return in question and the return must be under examination by the IRS. See **Unenrolled Return Preparer** on page 1 of the instructions.
  - **k** Student Attorney - student who receives permission to practice before the IRS by virtue of their status as a law student under section 10.7(d) of Circular 230.
  - **l** Student CPA - student who receives permission to practice before the IRS by virtue of their status as a CPA student under section 10.7(d) of Circular 230.
  - **r** Enrolled Retirement Plan Agent - enrolled as a retirement plan agent under the requirements of Circular 230( the authority to practice before the Internal Revenue Service is limited by section 10.3(e)).

▶ IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED. See the Part II instructions.

| Designation - Insert above letter (a-r) | Jurisdiction (state) or identification | Signature | Date |
|---|---|---|---|
| B | MI | _[signature]_ | 8-7-10 |
| A | MI | _[signature]_ | 8-10-10 |
| B | MI | _[signature]_ | 8.09.10 |

713962 09-03-08                                    Form **2848** (Rev. 6-2008)

A199

Docket No. 15340-16

Exhibit 3

| Form **870-LT** (Rev. 6-2008) For partnership taxable years ending after August 5, 1997 | Department of the Treasury — Internal Revenue Service **Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items** | IN REPLY REFER TO: |
|---|---|---|
| Taxpayer(s) name(s), address and zip code:<br><br>Indu Rawat | Name of Partnership:<br><br>Innovation Ventures LLC<br>DBA Living Essentials<br><br>EIN: | Tax Year(s) Ended:<br><br>200712 200812<br><br>**RECEIVED** |
| TIN: | Name of Tax Matters Partner:<br><br>Manoj Bhargava, TMP | FEB 1 4 2011<br><br>LB&I-MMT |

**Part I — Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts**

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached Schedule of Adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive(s) the restrictions provided by IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as set forth in the attached Schedule of Adjustments, plus any interest provided by law. IRC Section 6651 late filing penalty applies to any late filed returns that are required to report the partnership item adjustments.

This is a binding settlement only when you sign this form, it is returned to us, and we sign on behalf of the Commissioner. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If Part I of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items ~~RECEIVED~~ this agreement will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted. FEB 1 4 2011

Once the taxpayer signs such a waiver and it is countersigned by the Commissioner, the taxpayer cannot file an Administrative Adjustment Request (AAR) on any partnership items for the related TEFRA entity. This includes partnership items not specifically addressed on the attached Schedule of Adjustments.

| Signature of Taxpayer<br><br>*Indu Rawat* | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner<br><br>APR 2 8 2011 | Signature |
|---|---|---|
| | Office<br>OGDEN COMPLIANCE SERVICES CENTER | Title |

| Log Number 57314P | www.irs.gov | (See Instructions for Signing Agreement) | Form 870-LT (Rev. 6-2008) |
|---|---|---|---|

A201

## Part II – Offer of Agreement for Affected Items and Waiver of Restrictions on Assessment

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partner level determinations (affected items) as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partner level determinations, as set forth in the attached Schedule of Adjustments, plus any interest provided by law. This is a binding settlement only when you sign this form; return it to us and we sign on behalf of the Commissioner.

If Part II of this agreement form is signed for the Commissioner, the treatment under this agreement of the specified affected items and the partner level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of affected items or partner level determinations as to penalties, additions to tax, and additional amounts, or a refund or credit based on any change in the treatment of these affected items or partner level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

This agreement with respect to affected items and partner level determinations as to penalties, additions to tax, and additional amounts is not subject to a request for consistent settlement terms pursuant to IRC section 6224(c)(2).

RECEIVED

FEB 1 4 2011

LB&I:HMT
Team 1690

| Signature of Taxpayer | Date Signed | Phone Number |
| --- | --- | --- |
| *Indu Rawat* | | |
| Signature of Taxpayer | Date Signed | Phone Number |
| | | |
| By (Signature and Title) | Date Signed | Phone Number |
| | | |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner APR 2 8 2011 | Signature *B. Osborne* |
| --- | --- | --- |
| | Office OGDEN COMPLIANCE SERVICES CENTER | Title *Tefre Course* |

Catalog Number 57314P          www.irs.gov          (See Instructions for Signing Agreement)          Form 870-LT (Rev. 6-2008)

A202

# Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items

## SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Innovation Ventures LLC DBA Living Essentials<br>EIN: ▮▮▮▮ | 12/31/2007 | 12/31/2008 | |
| **DETAIL OF ADJUSTMENTS TO ORDINARY INCOME:** | | | |
| a. Additional § 263A costs | 503,160.00 | (503,160.00) | |
| b. Insurance expenses | 1,000.00 | 1,000.00 | |
| c. Travel expense | 25,071.00 | 69,257.00 | |
| d. Auto & truck expenses | 7,525.00 | 12,462.00 | |
| e. Legal & professional fees | 97,850.00 | 75,212.00 | |
| f. | | | |
| g. | | | |
| **TOTAL ADJUSTMENTS TO ORDINARY INCOME** | 634,606.00 | (345,229.00) | |
| OTHER ADJUSTMENTS | | | |
| A. Portfolio income (loss) interest | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 105,012.00 | 31,780.00 | |
| (3) CORRECTED | 105,012.00 | 31,780.00 | |
| B. Guaranteed payments to partner | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 207,912.00 | 608,852.00 | |
| (3) CORRECTED | 207,912.00 | 608,852.00 | |

REMARKS

Other income relates to unrealized receivables as defined under Section 751. For additional information please refer to Form 886-A.

A203

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Innovation Ventures LLC<br>DBA Living Essentials<br><br>EIN: | 12/31/2007 | 12/31/2008 | |
| C. Net gain (loss) under section 1231 not casualty/theft | | | |
| (1) ADJUSTMENT | | 0.00 | |
| (2) AS REPORTED | | (792.00) | |
| (3) CORRECTED | | (792.00) | |
| D. Other income (loss) | | | |
| (1) ADJUSTMENT | 0.00 | 6,523,176.00 | |
| (2) AS REPORTED | 31,068.00 | 0.00 | |
| (3) CORRECTED | 31,068.00 | 6,523,176.00 | |
| E. Charitable contributions 50 percent | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 17,914.00 | 15,158.00 | |
| (3) CORRECTED | 17,914.00 | 15,158.00 | |
| F. Section 179 expense deduction | | | |
| (1) ADJUSTMENT | 0.00 | | |
| (2) AS REPORTED | 125,000.00 | | |
| (3) CORRECTED | 125,000.00 | | |
| G. Other deductions | | | |
| (1) ADJUSTMENT | 0.00 | 6,088,298.00 | |
| (2) AS REPORTED | 15,912.00 | 29,699,560.00 | |
| (3) CORRECTED | 15,912.00 | 35,787,858.00 | |
| H. Investment income included in portfolio income | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 105,012.00 | 31,780.00 | |
| (3) CORRECTED | 105,012.00 | 31,780.00 | |
| I. Net earnings (loss) from self-employment | | | |
| (1) ADJUSTMENT | 1,022,795.00 | 697,073.00 | |
| (2) AS REPORTED | 296,095.00 | 852,927.00 | |
| (3) CORRECTED | 1,318,890.00 | 1,550,000.00 | |

A204

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Innovation Ventures LLC<br>DBA Living Essentials | 12/31/2007 | 12/31/2008 | |
| **EIN:** ▓▓▓▓▓ | | | |
| **J.  Gross nonfarm income** | | | |
| (1) ADJUSTMENT | 0.00 | | |
| (2) AS REPORTED | 366,112.00 | | |
| (3) CORRECTED | 366,112.00 | | |
| **K.  Adj./tax pref. items depreciation in serv. after 1986** | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 5,953.00 | 42,218.00 | |
| (3) CORRECTED | 5,953.00 | 42,218.00 | |
| **L.  Nondeductible expenses** | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 7,200.00 | 146,130.00 | |
| (3) CORRECTED | 7,200.00 | 14 ,130.00 | |
| **M.  Distributions - money (cash/securities)** | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 26,780,400.00 | 69,351,085.00 | |
| (3) CORRECTED | 26,780,400.00 | 69,351,085.00 | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |

Docket No. 15340-16

Exhibit 4

A206

| Form 5701 (Rev.Aug.1980) | Department of the Treasury - Internal Revenue Service<br>NOTICE of PROPOSED ADJUSTMENT | |
|---|---|---|
| **Innovation Ventures LLC** | Issue No.<br>**009** | |
| **Mr. Manoj Bhargava, TMP** | Date:<br>**12/15/10** | |

 Mr. Gerald Stein, CPA/POA

**Based on the information we now have available and our discussions with you, we believe that the proposed adjustments listed below should be included in the revenue agent's report. However, if you have additional information that would alter or reverse this proposal, please furnish this information as soon as possible.**

| Years | Amount | Account or Return Line | Sain No. | Issue Code |
|---|---|---|---|---|
| 200812 | $6,523,176 | Form K-1 - Line 11(f) | ████ | 751.03 |
| | | | | |
| | | | | |

**ISSUE**
**Section 751 Ordinary Income Recapture**

REASONS FOR PROPOSED ADJUSTMENT

See attached Form 886-A.

Taxpayer Representative's action

Name:_____ Title:_____ Date:_____
( X )Agreed  (  )Agreed in Part (  )Disagreed  (  )Will submit more information by: _____

| **Team Coordinator** | **Date** |
|---|---|
| | |

**(009) Section 751 – Ordinary Income Recapture**

|  | 2008 |
|---|---|
| **Increase/(Decrease) in Taxable Income** | $6,523,176 |

**Facts:**

On January 4, 2008, Ms. Indu Rawat sold her 29.2% interest in Innovation Ventures to Mr. Manoj Bhargava for $438,075,000. Ms. Rawat received an interest only note for $438,075,000 that matures in 2028 from Mr. Bhargava. The interest rate on the note is 4.39%. At the time of Ms. Rawat's sale, Innovation Ventures' had inventory of $6,426,056. This inventory was later sold for a profit of $22,339,644. Ms. Rawat's 29.2% of this profit is $6,523,176. IRC 751 requires the seller to recognize ordinary income to the extent of this inventory's fair market value exceeds its basis. Thus, Ms. Rawat must recognize ordinary income in the amount of $6,523,176.

**Law and Argument:**

IRC 751 provides that the amount of money, or the fair market value of any property, received by a transferor partner in exchange for all or part of his interest in the partnership attributable to…(2) inventory items of the partnership, shall be considered as an amount realized from the sale or exchange of property other than a capital asset. Based on the fair market value of Ms. Rawat's 29.2% share of the inventory ($6,426,056) at the time of sale, she must recognize ordinary income in the amount of $6,523,176.

**Taxpayer's Position:**

The taxpayer is in agreement with this adjustment.

**Conclusion:**

The Partnership must report $6,523,176 of ordinary income for Ms. Rawat, on her Schedule K-1 - Box 11(f). This adjustment reflects appreciated inventory held by Partnership at the time of Ms. Rawat's sale of her Partnership interest to Mr. Bhargava.

Docket No. 15340-16

Exhibit 5

A209

Department of the Treasury — **Internal Revenue Service**

## Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items

IN REPLY
REFER TO:

| Taxpayer(s) name(s), address and zip code: | Name of Partnership: | Tax Year(s) Ended: |
|---|---|---|
| | EIN: | |
| | Name of Tax Matters Partner: | |
| TIN: | | |

## Part I – Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached Schedule of Adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive(s) the restrictions provided by IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as set forth in the attached Schedule of Adjustments, plus any interest provided by law. IRC Section 6651 late filing penalty applies to any late filed returns that are required to report the partnership item adjustments.

This is a binding settlement only when you sign this form, it is returned to us, and we sign on behalf of the Commissioner. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If Part I of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

Once the taxpayer signs such a waiver and it is countersigned by the Commissioner, the taxpayer cannot file an Administrative Adjustment Request (AAR) on any partnership items for the related TEFRA entity. This includes partnership items not specifically addressed on the attached Schedule of Adjustments.

| Signature of Taxpayer | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |

A210

## Part II – Offer of Agreement for Affected Items and Waiver of Restrictions on Assessment

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partner level determinations (affected items) as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partner level determinations, as set forth in the attached Schedule of Adjustments, plus any interest provided by law. This is a binding settlement only when you sign this form; return it to us and we sign on behalf of the Commissioner.

If Part II of this agreement form is signed for the Commissioner, the treatment under this agreement of the specified affected items and the partner level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of affected items or partner level determinations as to penalties, additions to tax, and additional amounts, or a refund or credit based on any change in the treatment of these affected items or partner level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

This agreement with respect to affected items and partner level determinations as to penalties, additions to tax, and additional amounts is not subject to a request for consistent settlement terms pursuant to IRC section 6224(c)(2).

| Signature of Taxpayer | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |

A211

# INSTRUCTIONS FOR SIGNING FORM 870-LT

1. Sign Part I (Offer of Settlement of Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts) of Form 870-LT to settle the partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts, if any, as shown on the attached Schedule of Adjustments.

2. Sign Part II (Offer of Settlement of Affected Items and Waiver of Restrictions on Assessment) of Form 870-LT to settle the items that require partner level determinations (affected items, including penalties, additions to tax, and additional amounts, if any). A pass-through entity cannot agree to partner level determinations by signing Part II of the form if the entity is not subject to tax.

   These items are also shown on the attached Schedule of Adjustments.

   If you sign Part I, but don't sign Part II, we will mail you one of the following:

   • An affected item report, including penalties, additions to tax, and additional amounts, if any, showing the adjustments to your return. You can agree to the affected items at that time or request further Appeals consideration. The report will explain how to do this.

   • A notice of deficiency for the affected items other than penalties, additions to tax, and additional amounts. The notice will tell you how to file a petition with the United States Tax Court to dispute the deficiency attributable to the affected items other than penalties, additions to tax, and additional amounts. Penalties, additions to tax, and additional amounts, if any, will be assessed. You must then pay the tax and penalties before you may file a claim for refund to raise any partner level defenses per IRC section 6230(c)(1).

   The execution and filing of this offer will expedite the adjustment of tax liability.

3. Your agreement to the corrected partnership items in Part I of Form 870-LT will remain in effect, whether or not you sign Part II of this form.

4. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-LT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

5. If the taxpayer is a corporation, the agreement must be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-LT.

6. Your attorney or agent may sign either part of the form for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

7. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust. A trust cannot agree to a partner level determination by signing Part II of the form if the trust is not subject to tax.

8. For a partner who is a subsidiary corporation in a consolidated group:

   • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, the agreement should be signed by a current officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a)

   • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, a current officer of the subsidiary corporation should sign the agreement and should do so in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(6)(iii). The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block. The agreement should also be signed by a current officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s), as only the common parent corporation can bind the other members of the consolidated group. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

9. For a partner who is the common parent corporation of a consolidated group, a current officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year(s) should sign the agreement in the name of the common parent corporation. See Treas. Reg. §§ 1.1502-77(a) and 1.1502-77A(a).

10. If the Tax Matters Partner signs this offer, please include the title with the signature.

11. If the Tax Matters Partner is a subsidiary corporation in a consolidated group:

    • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, a current officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year should sign the agreement on behalf of the Tax Matters Partner. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a). A current officer for the subsidiary corporation should sign it, as it, as the Tax Matters Partner, is binding non-notice partners under the agreement. The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block.

    • If the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, a current officer of the subsidiary corporation should sign the agreement in the name of the subsidiary corporation. See Treas. Reg. §§ 1.1502-77(a)(3)(v) and 1.1502-77(a)(6)(iii). The agreement should also be signed by a current officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s), as only the common parent corporation can bind the other members of the consolidated group. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should also be displayed in the signature block.

**NOTE:** The submission of this offer by you and the acceptance of the offer for the Commissioner may result in an additional tax liability to you plus interest as provided by law. If the result is a decrease in tax, the amount of the decrease will be sent to you with interest as provided by law.

A212

Department of the Treasury — **Internal Revenue Service**

# Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items

## SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| | | | |
| EIN | | | |
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME | | | |
| | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | | | |
| OTHER ADJUSTMENTS | | | |
| A. | | | |
|    (1) ADJUSTMENT | | | |
|    (2) AS REPORTED | | | |
|    (3) CORRECTED | | | |
| B. | | | |
|    (1) ADJUSTMENT | | | |
|    (2) AS REPORTED | | | |
|    (3) CORRECTED | | | |

REMARKS

A213

# Form 870-LT, Other Adjustments (Continued)

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| | | | |
| EIN | | | |
| C. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| D. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| E. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| F. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| G. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| H. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| I. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |

A214

# Form 870-LT, Other Adjustments (Continued)

NAME OF PARTNERSHIP

EIN

| | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| J. | | | |
|    (1) ADJUSTMENT | | | |
|    (2) AS REPORTED | | | |
|    (3) CORRECTED | | | |
| K. | | | |
|    (1) ADJUSTMENT | | | |
|    (2) AS REPORTED | | | |
|    (3) CORRECTED | | | |
| L. | | | |
|    (1) ADJUSTMENT | | | |
|    (2) AS REPORTED | | | |
|    (3) CORRECTED | | | |
| M. | | | |
|    (1) ADJUSTMENT | | | |
|    (2) AS REPORTED | | | |
|    (3) CORRECTED | | | |
| N. | | | |
|    (1) ADJUSTMENT | | | |
|    (2) AS REPORTED | | | |
|    (3) CORRECTED | | | |
| O. | | | |
|    (1) ADJUSTMENT | | | |
|    (2) AS REPORTED | | | |
|    (3) CORRECTED | | | |
| P. | | | |
|    (1) ADJUSTMENT | | | |
|    (2) AS REPORTED | | | |
|    (3) CORRECTED | | | |

A215

Docket No. 15340-16

Exhibit 6

A216

**Internal Revenue Service**
38275 W. 12 Mile, Suite 200
Farmington Hills, MI 48331

**Department of the Treasury**

**Date:**
February 10, 2012

**Taxpayer Identification Number:**
████████████

Ms. Indu Rawat

████████████████████████ IV
██████████02
████████

**Name of Partnership:**
Innovation Ventures, LLC

**Partnership ID Number:**
████████

**Tax Year Ending:**
200812

**Person to Contact:**
Michael A. Murray

**Employee Identification Number:**
02-37183

**Contact Hours:**
8:00 am - 4:30 pm

**Telephone Numbers:**
(248) 848-8522

**(Not a toll-free number)**

### Notice of Computational Adjustment

Dear Ms. Rawat:

We have completed our examination of the partnership return for the year(s) shown above.

The enclosed Form 4549-A, Income Tax Discrepancy Adjustments, explains changes made to your income tax liability, including applicable penalties, as a result of our examination of the partnership. Form 4549-A does not require any signatures, should not be returned to us, and should be kept for your records.

The adjustments are being made as a result of:

- an agreement you signed,
- an agreement signed by representatives of an entity you are directly or indirectly invested in,
- a court decision,
- an Administrative Adjustment Request,
- allowing a Notice of Final Partnership Administrative Adjustment that was sent to you, the Tax Matters Partner of the partnership or an entity through which you hold your partnership interest, to lapse without bringing a timely challenge in Tax Court, or
- failure to file consistently with the partnership return.

This notice of computational adjustment includes a Form 4549-A which reflects the amount you owe based upon adjustments to a partnership(s) in which are directly or indirectly invested. This does not include any adjustments that may be proposed as a result of any other partnership examinations not referenced above. You may choose to pay the amount shown on the Form 4549-A, as interest will continue to accrue on any unpaid balance. You will receive a separate billing that will reflect any credits/payments and updated interest calculations. If you are due a refund, it will be issued to you if you owe no other taxes, have no other legal obligations that we are required to collect, and are not a party to any other partnership examinations. If you are due a refund, it should be sent to you within six to eight weeks.

**Letter 4735 (11-2011)**
Catalog Number 57922V

To dispute the computational adjustment made to your return or to assert partner-level defenses to any penalty imposed in this notice, you must pay the tax as adjusted in full, and then file a claim for refund at the address provided above within six months from the date of this letter. If you send your claim to an address other than the above address, processing will be delayed and your claim may be disallowed if received at the address specified in this letter after the end of the six-month period. You may file a refund suit as provided by law if your timely-filed refund claim is disallowed or not acted upon within six months after the date it is filed.

If you believe that the calculation of the computational adjustment is wrong because of a mathematical error, please contact us. You do not have to pay the tax in order to discuss issues related to the calculation of the liability. You may call the person whose telephone number and contact hours are shown above or write that person at the IRS address at the top of this letter. Additionally, if you have any other questions about this notice, contact the person listed on this form as they will be most familiar with your case. If you do not contact us concerning any mathematical errors related to this liability within six months from the date of this letter, your failure to contact us may preclude you from raising these issues during any later collection due process proceedings.

If you have any affected items subject to deficiency procedures, a separate notice of deficiency will be sent to you.

If you write, please include your telephone number, the hours you can be reached and a copy of this letter.

Thank you for your cooperation.

Sincerely,

Michael A. Murray
Revenue Agent

Enclosures:
Form 4549-A
Copy of this letter
Form 870-LT

**Letter 4735 (11-2011)**
Catalog Number 57922V

| Form **4549-A**<br>(Rev. May 2008) | Department of the Treasury-Internal Revenue Service<br>**Income Tax Discrepancy Adjustments** | | | Page ___1___ of ___2___ |
|---|---|---|---|---|

| Name and Address of Taxpayer | Taxpayer Identification Number | Return Form No.:<br>1040 |
|---|---|---|

Indu Rawat

| | Person with whom examination changes were discussed. | Name and Title: |
|---|---|---|

| **1. Adjustments to Income** | **Period End**<br>12/31/2008 | **Period End** | **Period End** |
|---|---|---|---|
| a. Sch E-Inc/Loss-Partnership-Innovation Ventures LLC | 6,523,176.00 | | |
| b. Standard Deduction | (5,450.00) | | |
| c. Exemptions | (2,333.00) | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| **2. Total Adjustments** | 6,515,393.00 | | |
| 3. Taxable Income Per Return or as Previously Adjusted | 0.00 | | |
| **4. Corrected Taxable Income** | 6,515,393.00 | | |
| Tax Method | TAX RATE | | |
| Filing Status | Single | | |
| **5. Tax** | 2,258,984.00 | | |
| **6. Additional Taxes / Alternative Minimum** | | | |
| 7. Corrected Tax Liability | 2,258,984.00 | | |
| 8. Less    a. | | | |
|    Credits    b. | | | |
|      c. | | | |
|      d. | | | |
| **9. Balance** *(Line 7 less total of Lines 8a thru 8d)* | 2,258,984.00 | | |
| 10. Plus    a. | | | |
|    Other    b. | | | |
|    Taxes    c. | | | |
|      d. | | | |
| 11. Total Corrected Tax Liability *(Line 9 plus Lines 10a thru 10d)* | 2,258,984.00 | | |
| 12. Total Tax Shown on Return or as Previously Adjusted | 0.00 | | |
| 13. Adjustments to: a. | | | |
|      b. | | | |
|      c. | | | |
| 14. Deficiency-Increase in Tax or *(Overassessment - Decrease in Tax)*<br>*(Line 11 less Line 12 adjusted by Lines 13a through 13c)* | 2,258,984.00 | | |
| 15. Adjustments to Prepayment Credits-Increase *(Decrease)* | | | |
| **16. Balance Due or (Overpayment)** - *(Line 14 adjusted by Line 15)*<br>*(Excluding interest and penalties)* | 2,258,984.00 | | |

Catalog Number 23110T      www.irs.gov      Form **4549-A** (Rev. 5-2008)

Form **4549-A**
(Rev. May 2008)

Department of the Treasury-Internal Revenue Service

# Income Tax Discrepancy Adjustments

| Name of Taxpayer | Taxpayer Identification Number | Return Form No.: |
|---|---|---|
| Indu Rawat | | 1040 |

| 17. Penalties/ Code Sections | Period End 12/31/2008 | Period End | Period End |
|---|---|---|---|
| a. Delq-IRC 6651 (a) (2) | 384,027.28 | | |
| b. Delq-IRC 6651 (a) (1) | 508,271.40 | | |
| c. Estimated Tax-IRC 6654 | 72,595.97 | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| **18. Total Penalties** | 964,894.65 | | |
| Underpayment attributable to negligence: *(1981-1987)* *A tax addition of 50 percent of the interest due on the underpayment will accrue until it is paid or assessed.* | | | |
| Underpayment attributable to fraud: *(1981-1987)* *A tax addition of 50 percent of the interest due on the underpayment will accrue until it is paid or assessed.* | | | |
| Underpayment attributable to Tax Motivated Transactions *(TMT).* Interest will accrue and be assessed at 120% of underpayment rate in accordance with IRC 6621(c). | 0.00 | | |
| 19. Summary of Taxes, Penalties and Interest: | | | |
| a. Balance due or *(Overpayment)* Taxes - *(Line 16, Page 1)* | 2,258,984.00 | | |
| b. Penalties *(Line 18)* - computed to 02/10/2012 | 964,894.65 | | |
| c. Interest *(IRC § 6601)* - computed to 03/11/2012 | 0.00 | | |
| d. TMT Interest - computed to 03/11/2012 *(on TMT underpayment)* | 0.00 | | |
| e. Amount due or refund - *(sum of Lines a, b, c and d)* | 3,223,878.65 | | |

**Other Information:**

The adjustment is due to the examination of Innovative Ventures LLC, DBA Living Essentials. A form 870 LT has been signed and executed agreeing to the adjustments flowing through Innovation Ventures. This agreement also binds you to the resulting change to your return.

| Examiner's Signature: Name | Employee ID: | Office: | Date: |
|---|---|---|---|
| Michael Murray | 02-37185 | Farmington Hills, MI | 02/10/2012 |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the required tax. The IRS may order backup withholding *(withholding of a percentage of your dividend and/or interest payments)* if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

A220

### 2008 - Form 6251 - Alternative Minimum Tax Computation

1. If filing Schedule A, enter taxable income before exemptions;
   otherwise, enter adjusted gross income ............................................................ 6,523,176.00
2. Total adjustment and preferences (excluding any NOL deduction) ................. 0.00
3. Net operating loss deduction ........................................................................ 0.00
4. Alternative tax net operating loss deduction ............................................... 0.00
5. Alternative minimum taxable income (combine lines 1 thru 4) ..................... 6,523,176.00
6. Exemption amount .......................................................................................... 0.00
7. Subtract line 6 from line 5 (if zero or less, enter zero) ............................... 6,523,176.00
8. If capital gains are reported, see line 19 from continuation page
   (If FEIT worksheet for AMT is used, enter amount from line 6 of that worksheet instead)
   All others:
   If line 7 is $175,000 or less ($87,500 if MFS) multiply
   line 7 by 26%. Otherwise, multiply line 7 by 28% and
   subtract $3,500 ($1,750 if MFS) from the result ........................................... 1,822,989.00
9. Alternative minimum tax foreign tax credit ................................................. 0.00
10. Tentative minimum tax (line 8 less line 9) ................................................. 1,822,989.00
11. Regular tax before credits (if Schedule J was used to figure tax,
    use the refigured amounts for lines 44 and 47 of Form 1040
    without using Schedule J) ............................................................................ 2,258,984.00
12. Alternative minimum tax .............................................................................. 0.00

### Exemption Worksheet (line 6 above)

A. Exemption amount based on filing status ..................................................... 46,200.00
B. Alternative minimum taxable income .............................................................. 6,523,176.00
C. Enter $112,500 ($150,000 if married filing jointly or
   qualifying widow(er), $75,000 if married filing separately) ............................. 112,500.00
D. Subtract line C from line B ............................................................................. 6,410,676.00
E. Multiply line D by 25% ................................................................................... 1,602,669.00
F. Subtract line E from line A (if zero or less, enter zero) ................................. 0.00

**2008 - Form 6251 - Continuation, Tax Computation Using Maximum Capital Gain Rates**

| | |
|---|---:|
| 1. Amount from Form 6251 report, line 7 | 6,523,176.00 |
| (If FEIT worksheet for AMT was used, enter amount from line 3 of that worksheet instead) | |
| 2. Amount from line 6 Qualified Dividends and Capital Gain Tax Worksheet | |
| or line 13 Schedule D Tax Worksheet (refigured for AMT) | 0.00 |
| 3. Amount from Schedule D line 19 (refigured for AMT) | 0.00 |
| 4. Amount from line 2 if no Schedule D worksheet; otherwise, the smaller of | |
| the sum of line 2 and line 3 or Schedule D worksheet line 10 (refigured for AMT) | 0.00 |
| 5. Smaller of line 1 or line 4 | 0.00 |
| 6. Subtract line 5 from line 1 | 6,523,176.00 |
| 7. If line 6 is $175,000 or less ($87,500 if MFS) multiply line 6 by 26%; | |
| otherwise, multiply line 6 by 28% and subtract $3,500 ($1,750 if MFS) | |
| from the result | 1,822,989.00 |
| 8. Enter: | |
| $65,100 if married filing jointly or qualifying widow(er) | |
| $32,550 if single or married filing separately | 32,550.00 |
| $43,650 if head of household | |
| 9. Amount from line 7 Qualified Dividends and Capital Gain Tax Worksheet | |
| or line 14 Schedule D Tax Worksheet | 0.00 |
| 10. Subtract line 9 from line 8 (If zero or less, enter zero) | 32,550.00 |
| 11. Smaller of line 1 or line 2 | 0.00 |
| 12. Smaller of line 10 or line 11 | 0.00 |
| 13. Subtract line 12 from line 11 | 0.00 |
| 14. Multiply line 13 by 15% | 0.00 |
| 15. Subtract line 11 from line 5 | 0.00 |
| 16. Multiply line 15 by 25% | 0.00 |
| 17. Total of lines 7, 14 and 16 | 1,822,989.00 |
| 18. If line 1 is $175,000 or less ($87,500 if MFS) multiply line 1 by 26%; | |
| otherwise, multiply line 1 by 28% and subtract $3,500 ($1,750 if MFS) | |
| from the result | 1,822,989.00 |
| 19. Smaller of line 17 or line 18. Enter here and on line 8 of Form 6251 report | 1,822,989.00 |

## EXPLANATION OF THE DELINQUENCY PENALTY

Since your income tax return was not filed within the time limit prescribed by law and/or the tax was not paid, and you have not shown that such failure was due to reasonable cause, an addition to the tax is charged as shown below, in accordance with Section 6651(a)(1) and/or Section 6651(a)(2) of the Internal Revenue Code.

### 2008 - DELINQUENCY PENALTY

| | | |
|---|---|---|
| 1. Delinquency penalty abated | | 0.00 |
| 2. Date return due | 04/15/2009 | |
| 3. Date return filed | 02/10/2012 | |
| 4. Failure to File penalty rate | 0.225 | |
| 5. Failure to Pay penalty rate | 0.170 | |
| 6. Total corrected tax liability | | 2,258,984.00 |
| 7. Allowable payments on or prior to due date of return | | 0.00 |
| 8. Net Amount Due (line 6 less line 7) | | 2,258,984.00 |
| 9. Failure to File Penalty - line 8 multiplied by line 4 | | 508,271.40 |
| 10. Minimum penalty if over 60 days delinquent | | 135.00 |
| 11. Failure to File Penalty - Greater of line 9 or line 10 | | 508,271.40 |
| 12. Previously assessed/previously agreed Failure to File Penalty | | 0.00 |
| 13. Net Failure to File Penalty - line 11 less line 12 | | 508,271.40 |
| 14. Failure to Pay Penalty - line 8 multiplied by line 5 | | 384,027.28 |
| 15. Previously assessed/previously agreed Failure to Pay Penalty | | 0.00 |
| 16. Net Failure to Pay Penalty - line 14 less line 15 * | | 384,027.28 |
| 17. Total Delinquency Penalty - Sum of line 13 and 16 | | 892,298.68 |

* If an amount appears as the Failure to Pay Penalty, the amount only reflects the addition to tax under Internal Revenue Code section 6651(a)(2) through the date of this notice. The addition to tax will continue to accrue from the due date of the return at a rate of 0.5 percent each month, or fraction thereof, of nonpayment, not exceeding 25 percent.

A223

## 2008 - EXPLANATION OF THE ESTIMATED TAX PENALTY

Since you did not pay sufficient estimated tax, addition to the tax is charged as shown below, in accordance with Section 6654(a) of the Internal Revenue Code.

| | | | | |
|---|---|---|---|---|
| 1. Total corrected tax liability, Form 4549, line 11 (Tax Per Return, if a return was filed) | | | | 2,258,984.00 |
| 2. Refundable Credits | | | | 0.00 |
| 3. Withholding taxes | | | | 0.00 |
| 4. Line 1 less sum of lines 2 & 3 (if less than $1000, estimated penalty does not apply) | | | | 2,258,984.00 |
| 5. 90% of the sum of line 1 less line 2 | | | | 2,033,085.60 |
| 6. Prior year tax liability (110% of tax if AGI was more than $150,000. or if MFS more than $75,000.) | | | | 0.00 |
| 7. The smaller of line 5 or 6 (as adjusted) | | | | 2,033,085.60 |

| | Apr 15, 2008 | Jun 15, 2008 | Sep 15, 2008 | Jan 15, 2009 |
|---|---|---|---|---|
| 8. Payment Due Date | | | | |
| 9. Payment Required | 508,271.40 | 508,271.40 | 508,271.40 | 508,271.40 |
| 10. Payments & Credits | 0.00 | 0.00 | 0.00 | 0.00 |
| 11. Overpayment from line 17 | | 0.00 | 0.00 | 0.00 |
| 12. Total of lines 10 & 11 | | 0.00 | 0.00 | 0.00 |
| 13. Previous Qtr Underpayment | | 508,271.40 | 1,016,542.80 | 1,524,814.20 |
| 14. Line 12 less line 13 | 0.00 | 0.00 | 0.00 | 0.00 |
| 15. Remaining Underpayment | | 508,271.40 | 1,016,542.80 | |
| 16. Underpayment | 508,271.40 | 508,271.40 | 508,271.40 | 508,271.40 |
| 17. Overpayment | 0.00 | 0.00 | 0.00 | 0.00 |
| 18. Penalty | 27,697.15 | 22,614.44 | 16,018.02 | 6,266.36 |

| | |
|---|---|
| 19. Previously Assessed/Previously Agreed Estimated Tax Penalty | 0.00 |
| 20. Estimated Tax Penalty | 72,595.97 |

A224

## 2008 - PERSONAL EXEMPTION WORKSHEET

1. Multiply $500 by the total number of displaced individuals listed in Part I of Form 8914
   (Maximum amount is $2,000; $1,000 if married filing separately)    0.00

2. Multiply $3,500.00  by the total number of exemptions claimed    3,500.00

3. Add lines 1 and 2    3,500.00

4. Adjusted gross income    6,523,176.00

5. Limitation based on filing status
   NOTE: If line 4 is not greater than line 5, STOP;
   enter amount from line 3 on line 13 below    159,950.00

6. Subtract line 5 from line 4    6,363,226.00

7. If line 6 is more than $122,500 ($61,250 if married filing separately)
   multiply $ 2,333.00  by the total number of exemptions claimed;
   otherwise, skip line 8 and go to line 9    2,333.00

8. Add lines 1 and 7 and enter the amount on line 13 below;
   do not complete the rest of the worksheet    2,333.00

9. Divide line 6 by $2,500 ($1,250 if married filing separately)
   (If result is not a whole number, increase to next whole number)    0.00

10. Multiply line 9 by 2% and enter the result as a decimal rounded to at least three places    0.00

11. Multiply line 2 by line 10    0.00

12. Divide line 11 by 3.0    0.00

13. Deduction for exemptions
    (subtract line 12 from line 3; or the amount from line 5 or line 8 above)    2,333.00

| Name of Taxpayer: Indu Rawat | | 02/10/2012 |
|---|---|---|
| Identification Number: ████████ | Total | 12.40.00 |

## HOW TO PAY YOUR TAXES

If you agree with our examination, pay now by sending a check or money order payable to United States Treasury and your signed agreement. The enclosed report does not reflect any balance currently due on your account.

Why it is to your advantage to pay now:

- Decreases future interest charges
- Prevents assessment of failure to pay penalty
- Reduces payment of nondeductible interest
- Eliminates further contact with us

If you agree with our examination and cannot pay now:

1) Can you pay the full amount within 120 days?  [ ] Yes    [ ] No
   - If yes, send in the signed agreement now and submit the balance due when you receive a bill. Checks should be made payable to United States Treasury.
   - If no, you may be eligible for a payment plan.

2) If you would like us to consider an installment agreement, submit your written request or check the box below and return this flyer with your signed agreement.

   [ ] I would like to pay $ _____ per month.

   (We encourage you to make your payments as large as possible to limit penalty and interest charges.)

   I would like my payment to be due on the _____ of the month.

   (Please indicate a date between the 1st and 28th of the month.)

   You will be charged a fee if your request is approved.  DO NOT include the fee with this flyer.  We will send you a bill for the fee when we approve your request.

   Please provide a telephone number where we can contact you regarding your request.

   Home: ( )  _____

   Work: ( )  _____

A226

<table>
<tr><td>

**Form 870-LT**
(Rev. 6-2008)
For partnership
taxable years ending
after August 5, 1997

</td><td>

Department of the Treasury — Internal Revenue Service
**Agreement for Partnership Items and Partnership Level
Determinations as to Penalties, Additions to Tax, and
Additional Amounts and Agreement for Affected Items**

</td><td>

IN REPLY
REFER TO:

</td></tr>
</table>

| Taxpayer(s) name(s), address and zip code: | Name of Partnership: | Tax Year(s) Ended: |
|---|---|---|
| Indu Rawat ▮▮▮▮▮▮▮▮ | Innovation Ventures LLC<br>DBA Living Essentials<br><br>EIN: ▮▮▮▮▮ | 200712▮▮2008▮▮ |
| | Name of Tax Matters Partner:<br>Manoj Bhargava, TMP | **RECEIVED**<br><br>FEB 1 4 2011 |
| TIN: ▮▮▮▮▮ | | LB&I:NMT |

**Part I — Offer of Agreement to Partnership Items and Partnership Level Determinations as to
Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for
Partnership Items, Penalties, Additions to Tax, and Additional Amounts**

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached Schedule of Adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive(s) the restrictions provided by IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as set forth in the attached Schedule of Adjustments, plus any interest provided by law. IRC Section 6651 late filing penalty applies to any late filed returns that are required to report the partnership item adjustments.

This is a binding settlement only when you sign this form, it is returned to us, and we sign on behalf of the Commissioner. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If Part I of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership ▮▮▮▮▮▮ this agreement will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

**RECEIVED**

FEB 1 4 2011

Once the taxpayer signs such a waiver and it is countersigned by the Commissioner, the taxpayer ▮▮▮▮▮▮ an Administrative Adjustment Request (AAR) on any partnership items for the related TEFRA entity. This includes partnership items not specifically addressed on the attached Schedule of Adjustments.

| Signature of Taxpayer<br><br>*Indu Rawat* | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

<table>
<tr><td>

**FOR
INTERNAL
REVENUE
USE ONLY**

</td><td>

Date accepted for Commissioner
APR 2 8 2011
Office
OGDEN COMPLIANCE SERVICES CENTER

</td><td>

Signature
*B. oo Ji Merk*
Title
*TeFra Coord*

</td></tr>
</table>

log Number 57314P          www.irs.gov          (See instructions for Signing Agreement)          Form **870-LT** (Rev. 6-2008)

**Part II – Offer of Agreement for Affected Items and Waiver of Restrictions on Assessment**

Under sections 6224(c) and 712f of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partner level determinations (affected items) as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partner level determinations, as set forth in the attached Schedule of Adjustments, plus any interest provided by law. This is a binding settlement only when you sign this form; return it to us and we sign on behalf of the Commissioner.

If Part II of this agreement form is signed for the Commissioner, the treatment under this agreement of the specified affected items and the partner level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of affected items or partner level determinations as to penalties, additions to tax, and additional amounts, or a refund or credit based on any change in the treatment of these affected items or partner level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

This agreement with respect to affected items and partner level determinations as to penalties, additions to tax, and additional amounts is not subject to a request for consistent settlement terms pursuant to IRC section 6224(c)(2).

RECEIVED

—FEB 1 4 2011

LB&I:HMT
Team 1690

| Signature of Taxpayer *Indu Rawat* | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner  APR 2 8 2011 | Signature |
| | Office OGDEN COMPLIANCE SERVICES CENTER | Title |

Catalog Number 57314P          www.irs.gov          (See instructions for Signing Agreement)          Form 870-LT (Rev. 6-2008)

A228

# Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items

## SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Innovation Ventures LLC DBA Living Essentials | 12/31/2007 | 12/31/2008 | |
| EIN: ▓▓▓▓▓ | | | |
| **DETAIL OF ADJUSTMENTS TO ORDINARY INCOME:** | | | |
| a. Additional § 263A costs | 503,160.00 | (503,160.00) | |
| b. Insurance expenses | 1,000.00 | 1,000.00 | |
| c. Travel expense | 25,071.00 | 69,257.00 | |
| d. Auto & truck expenses | 7,525.00 | 12,462.00 | |
| e. Legal & professional fees | 97,850.00 | 75,212.00 | |
| f. | | | |
| g. | | | |
| **TOTAL ADJUSTMENTS TO ORDINARY INCOME** | 634,606.00 | (345,229.00) | |
| **OTHER ADJUSTMENTS** | ▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓ | ▓▓▓▓▓ |
| A. Portfolio income (loss) interest | ▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓ | ▓▓▓▓▓ |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 105,012.00 | 31,780.00 | |
| (3) CORRECTED | 105,012.00 | 31,780.00 | |
| B. Guaranteed payments to partner. | ▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓ | ▓▓▓▓▓ |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 207,912.00 | 608,852.00 | |
| (3) CORRECTED | 207,912.00 | 608,852.00 | |

**REMARKS**

Other income relates to unrealized receivables as defined under Section 751. For additional information please refer to Form 886-A.

A229

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Innovation Ventures LLC DBA Living Essentials EIN: ▓▓▓▓▓ | 12/31/2007 | 12/31/2008 | |
| C. Net gain (loss) under section 1231 not casualty/theft | ▓▓▓▓▓ | ▓▓▓▓▓ | |
| (1) ADJUSTMENT | | 0.00 | |
| (2) AS REPORTED | | (792.00) | |
| (3) CORRECTED | | (792.00) | |
| D. Other income (loss) | ▓▓▓▓▓ | ▓▓▓▓▓ | |
| (1) ADJUSTMENT | 0.00 | 6,523,176.00 | |
| (2) AS REPORTED | 31,068.00 | 0.00 | |
| (3) CORRECTED | 31,068.00 | 6,523,176.00 | |
| E. Charitable contributions 50 percent | ▓▓▓▓▓ | ▓▓▓▓▓ | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 17,914.00 | 15,158.00 | |
| (3) CORRECTED | 17,914.00 | 15,158.00 | |
| F. Section 179 expense deduction | ▓▓▓▓▓ | ▓▓▓▓▓ | |
| (1) ADJUSTMENT | 0.00 | | |
| (2) AS REPORTED | 125,000.00 | | |
| (3) CORRECTED | 125,000.00 | | |
| G. Other deductions | ▓▓▓▓▓ | ▓▓▓▓▓ | |
| (1) ADJUSTMENT | 0.00 | 6,088,298 0 | |
| (2) AS REPORTED | 15,912.00 | 29,699,560.00 | |
| (3) CORRECTED | 15,912.00 | 35,787,858.00 | |
| H. Investment income included in portfolio income | ▓▓▓▓▓ | ▓▓▓▓▓ | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 105,012.00 | 31,780.00 | |
| (3) CORRECTED | 105,012.00 | 31,780.00 | |
| I. Net earnings (loss) from self-employment | ▓▓▓▓▓ | ▓▓▓▓▓ | |
| (1) ADJUSTMENT | 1,022,795.00 | 697,073.00 | |
| (2) AS REPORTED | 296,095.00 | 852,927.00 | |
| (3) CORRECTED | 1,318,890.00 | 1,550,000.00 | |

A230

| NAME OF PARTNERSHIP: | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Innovation Ventures LLC DBA Living Essentials | 12/31/2007 | 12/31/2008 | |
| EIN: ▓▓▓▓▓▓▓ | | | |
| J. Gross nonfarm income | | | |
| (1) ADJUSTMENT | 0.00 | | |
| (2) AS REPORTED | 366,112.00 | | |
| (3) CORRECTED | 366,112.00 | | |
| K. Adj./tax pref. items depreciation in serv. after 1986 | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 5,953.00 | 42,218.00 | |
| (3) CORRECTED | 5,953.00 | 42,218.00 | |
| L. Nondeductible expenses | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 7,200.00 | 146,130.00 | |
| (3) CORRECTED | 7,200.00 | 146,130.00 | |
| M. Distributions – money (cash/securities) | | | |
| (1) ADJUSTMENT | 0.00 | 0.00 | |
| (2) AS REPORTED | 26,780,400.00 | 69,351,085.00 | |
| (3) CORRECTED | 26,780,400.00 | 69,351,085.00 | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |

A231

Docket No. 15340-16

Exhibit 7

A232

Form **4549-A**
(Rev. May 2008)

Department of the Treasury-Internal Revenue Service
# Income Tax Discrepancy Adjustments

Page ___1___ of ___2___

Name and Address of Taxpayer

Indu Rawat
E-172 Westend Heights DFL  Phase IV
Gurgaon,  122002       India

Taxpayer Identification Number

Return Form No.:
1040

Person with whom examination changes were discussed.

Name and Title:

| | Period End 12/31/2008 | Period End | Period End |
|---|---|---|---|
| **1.** Adjustments to Income | | | |
| a. Itemized Deductions | (1,893,321.00) | | |
| b. Standard Deduction | 5,450.00 | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| **2.** Total Adjustments | (1,887,871.00) | | |
| **3.** Taxable Income Per Return or as Previously Adjusted | 6,515,393.00 | | |
| **4.** Corrected Taxable Income | 4,627,522.00 | | |
|     Tax Method | TAX RATE | | |
|     Filing Status | Single | | |
| **5.** Tax | 1,598,229.00 | | |
| **6.** Additional Taxes / Alternative Minimum | | | |
| **7.** Corrected Tax Liability | 1,598,229.00 | | |
| **8.** Less    a. | | | |
|     Credits    b. | | | |
|            c. | | | |
|            d. | | | |
| **9.** Balance *(Line 7 less total of Lines 8a thru 8d)* | 1,598,229.00 | | |
| **10.** Plus    a. | | | |
|     Other    b. | | | |
|     Taxes    c. | | | |
|            d. | | | |
| **11.** Total Corrected Tax Liability *(Line 9 plus Lines 10a thru 10d)* | 1,598,229.00 | | |
| **12.** Total Tax Shown on Return or as Previously Adjusted | 2,258,984.00 | | |
| **13.** Adjustments to: a. | | | |
|                 b. | | | |
|                 c. | | | |
| **14.** Deficiency-Increase in Tax or *(Overassessment - Decrease in Tax)* *(Line 11 less Line 12 adjusted by Lines 13a through 13c)* | (660,755.00) | | |
| **15.** Adjustments to Prepayment Credits-Increase *(Decrease)* | | | |
| **16.** Balance Due or *(Overpayment)* - *(Line 14 adjusted by Line 15)* *(Excluding interest and penalties)* | (660,755.00) | | |

Catalog Number 23110T

www.irs.gov

Form **4549-A** (Rev. 5-2008)



A233

# Income Tax Discrepancy Adjustments

| Name of Taxpayer | Taxpayer Identification Number | Return Form No.: |
|---|---|---|
| Indu Rawat | | 1040 |

| 17. Penalties/ Code Sections | Period End 12/31/2008 | Period End | Period End |
|---|---|---|---|
| a. Delq-IRC 6651(a)(2) | (112,328.35) | | |
| b. Delq-IRC 6651(a)(1) | (148,669.87) | | |
| c. Estimated Tax-IRC 6654 | (21,234.46) | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| **18. Total Penalties** | (282,232.68) | | |
| Underpayment attributable to negligence: *(1981-1987)* A tax addition of 50 percent of the interest due on the underpayment will accrue until it is paid or assessed. | | | |
| Underpayment attributable to fraud: *(1981-1987)* A tax addition of 50 percent of the interest due on the underpayment will accrue until it is paid or assessed. | | | |
| Underpayment attributable to Tax Motivated Transactions *(TMT)*. Interest will accrue and be assessed at 120% of underpayment rate in accordance with IRC 6621(c). | 0.00 | | |
| **19. Summary of Taxes, Penalties and Interest:** | | | |
| a. Balance due or *(Overpayment)* Taxes - *(Line 16, Page 1)* | (660,755.00) | | |
| b. Penalties *(Line 18)* - computed to 03/16/2012 | (282,232.68) | | |
| c. Interest *(IRC § 6601)* - computed to 03/11/2012 | 0.00 | | |
| d. TMT Interest - computed to 03/11/2012 *(on TMT underpayment)* | 0.00 | | |
| e. Amount due or refund - *(sum of Lines a, b, c and d)* | (942,987.68) | | |

**Other Information:**

\*\*\* This report supersedes the report dated 02-10-2012. \*\*\*\*

| Examiner's Signature: Name | Employee ID: | Office: | Date: |
|---|---|---|---|
| *Mich P. M* Michael Murray | 02-37185 | Farmington Hills, MI | 03/16/2012 |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the required tax. The IRS may order backup withholding *(withholding of a percentage of your dividend and/or interest payments)* if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

A234

## EXPLANATION OF THE DELINQUENCY PENALTY

Since your income tax return was not filed within the time limit prescribed by law and/or
the tax was not paid, and you have not shown that such failure was due to reasonable cause,
an addition to the tax is charged as shown below, in accordance with Section 6651(a)(1)
and/or Section 6651(a)(2) of the Internal Revenue Code.

### 2008 - DELINQUENCY PENALTY

| | | |
|---|---|---:|
| 1. Delinquency penalty abated | | 0.00 |
| 2. Date return due | 04/15/2009 | |
| 3. Date return filed | 02/10/2012 | |
| 4. Failure to File penalty rate | 0.225 | |
| 5. Failure to Pay penalty rate | 0.170 | |
| 6. Total corrected tax liability | | 1,598,229.00 |
| 7. Allowable payments on or prior to due date of return | | 0.00 |
| 8. Net Amount Due (line 6 less line 7) | | 1,598,229.00 |
| 9. Failure to File Penalty - line 8 multiplied by line 4 | | 359,601.53 |
| 10. Minimum penalty if over 60 days delinquent | | 135.00 |
| 11. Failure to File Penalty - Greater of line 9 or line 10 | | 359,601.53 |
| 12. Previously assessed/previously agreed Failure to File Penalty | | 508,271.40 |
| 13. Net Failure to File Penalty - line 11 less line 12 | | -148,669.87 |
| 14. Failure to Pay Penalty - line 8 multiplied by line 5 | | 271,698.93 |
| 15. Previously assessed/previously agreed Failure to Pay Penalty | | 384,027.28 |
| 16. Net Failure to Pay Penalty - line 14 less line 15 | | -112,328.35 |
| 17. Total Delinquency Penalty - Sum of line 13 and 16 | | -260,998.22 |

- If an amount appears as the Failure to Pay Penalty, the amount only reflects the addition to tax under
Internal Revenue Code section 6651(a)(2) through the date of this notice. The addition to tax will
continue to accrue from the due date of the return at a rate of 0.5 percent each month, or fraction
thereof, of nonpayment, not exceeding 25 percent.

A235

## 2008 - EXPLANATION OF THE ESTIMATED TAX PENALTY

Since you did not pay sufficient estimated tax, addition to the tax is charged as shown below, in accordance with Section 6654(a) of the Internal Revenue Code.

| | | | | |
|---|---|---|---|---|
| 1. Total corrected tax liability, Form 4549, line 11 (Tax Per Return, if a return was filed) | | | | 2,258,984.00 |
| 2. Refundable Credits | | | | 0.00 |
| 3. Withholding taxes | | | | 0.00 |
| 4. Line 1 less sum of lines 2 & 3 (if less than $1000, estimated penalty does not apply) | | | | 2,258,984.00 |
| 5. 90% of the sum of line 1 less line 2 | | | | 2,033,085.60 |
| 6. Prior year tax liability (110% of tax if AGI was more than $150,000. or if MFS more than $75,000.) | | | | 1,438,404.00 |
| 7. The smaller of line 5 or 6 (as adjusted) | | | | 1,438,404.00 |
| 8. Payment Due Date | Apr 15, 2008 | Jun 15, 2008 | Sep 15, 2008 | Jan 15, 2009 |
| 9. Payment Required | 359,601.00 | 359,601.00 | 359,601.00 | 359,601.00 |
| 10. Payments & Credits | 0.00 | 0.00 | 0.00 | 0.00 |
| 11. Overpayment from line 17 | | 0.00 | 0.00 | 0.00 |
| 12. Total of lines 10 & 11 | | 0.00 | 0.00 | 0.00 |
| 13. Previous Qtr Underpayment | | 359,601.00 | 719,202.00 | 1,078,803.00 |
| 14. Line 12 less line 13 | 0.00 | 0.00 | 0.00 | 0.00 |
| 15. Remaining Underpayment | | 359,601.00 | 719,202.00 | |
| 16. Underpayment | 359,601.00 | 359,601.00 | 359,601.00 | 359,601.00 |
| 17. Overpayment | 0.00 | 0.00 | 0.00 | 0.00 |
| 18. Penalty | 19,595.68 | 15,999.67 | 11,332.72 | 4,433.44 |
| 19. Previously Assessed/Previously Agreed Estimated Tax Penalty | | | | 72,595.97 |
| 20. Estimated Tax Penalty | | | | (21,234.46) |

A236

| Name Of Taxpayer: | Indu Rawat | | 02/10/2012 |
|---|---|---|---|
| Identification Number: | ▓▓▓▓▓▓▓ | Total | 13.00.00 |

## 2008 - PERSONAL EXEMPTION WORKSHEET

1. Multiply $500 by the total number of displaced individuals listed in Part I of Form 8914
   (Maximum amount is $2,000; $1,000 if married filing separately)     0.00

2. Multiply $3,500.00 by the total number of exemptions claimed     3,500.00

3. Add lines 1 and 2     3,500.00

4. Adjusted gross income     6,523,176.00

5. Limitation based on filing status
   NOTE: If line 4 is not greater than line 5, STOP;
   enter amount from line 3 on line 13 below     159,950.00

6. Subtract line 5 from line 4     6,363,226.00

7. If line 6 is more than $122,500 ($61,250 if married filing separately)
   multiply $2,333.00 by the total number of exemptions claimed;
   otherwise, skip line 8 and go to line 9     2,333.00

8. Add lines 1 and 7 and enter the amount on line 13 below;
   do not complete the rest of the worksheet     2,333.00

9. Divide line 6 by $2,500 ($1,250 if married filing separately)
   (If result is not a whole number, increase to next whole number)     0.00

10. Multiply line 9 by 2% and enter the result as a decimal rounded to at least three places     0.00

11. Multiply line 2 by line 10     0.00

12. Divide line 11 by 3.0     0.00

13. Deduction for exemptions
    (subtract line 12 from line 3; or the amount from line 5 or line 8 above)     2,333.00

A237

## 2008 - SCHEDULE A - ITEMIZED DEDUCTIONS

| | PER RETURN | PER EXAM | ADJUSTMENT |
|---|---|---|---|
| 1. Medical, dental and insurance premiums | 0.00 | 0.00 | 0.00 |
| 2. 7.5% of adjusted gross income | 489,238.00 | 489,238.00 | |
| 3. Net medical and dental expenses | 0.00 | 0.00 | 0.00 |
| 4. Taxes | 0.00 | 0.00 | 0.00 |
| 5. Home interest expense | 0.00 | 0.00 | 0.00 |
| 6. Qualified mortgage insurance premiums | 0.00 | 0.00 | 0.00 |
| 7. Investment interest | 0.00 | 0.00 | 0.00 |
| 8. Other interest expense | 0.00 | 0.00 | 0.00 |
| 9. Total interest expense | 0.00 | 0.00 | 0.00 |
| 10. Contributions | 0.00 | 1,956,953.00 | (1,956,953.00) |
| 11. Casualty and theft losses | 0.00 | 0.00 | 0.00 |
| 12. Miscellaneous deductions | 0.00 | 0.00 | 0.00 |
| 13. 2% of adjusted gross income | 130,464.00 | 130,464.00 | |
| 14. Excess miscellaneous deductions | 0.00 | 0.00 | 0.00 |
| 15. Other miscellaneous deductions | 0.00 | 0.00 | 0.00 |
| 16. Total itemized deductions (Sum of lines 3, 4, 9, 10, 11, 14, and 15 less any applicable limitation) | 0.00 | 1,893,321.00 | (1,893,321.00) |

## ITEMIZED DEDUCTIONS WORKSHEET - PER EXAM

| | |
|---|---|
| A. Total of lines 3, 4, 9, 10, 11, 14, and 15 | 1,956,953.00 |
| B. Total of lines 3, 7, 11, (plus any gambling losses included on line 15) | 0.00 |
| C. Line A less line B | 1,956,953.00 |
| D. Multiply the amount on line C by 80% | 1,565,562.00 |
| E. Adjusted gross income | 6,523,176.00 |
| F. Itemized deduction limitation | 159,950.00 |
| G. Line E less line F | 6,363,226.00 |
| H. Multiply the amount on line G by 3% | 190,897.00 |
| I. Enter the smaller of line D or line H | 190,897.00 |
| J. Divide line I by 1.5 | 127,264.67 |
| K. Subtract line J from line I | 63,632.33 |
| L. Total itemized deductions (entered on line 16 above) | 1,893,321.00 |

A238

|  | 200812 | 200912 |
|---|---|---|
| Ordinary Income | $6,523,176[1] | |
| Deferred Ordinary Income | $430,898,124 | |
| Deferred Tax Liability | $64,634,719 | |
| §453A(c)(2)(B) Tax Year 2008 Interest Liability | $3,833,820 | |
| §453A(c)(2)(B) Tax Year 2009 Interest Liability | | $2,555,880 |

Interest assessed annually to the Taxpayer on the
deferred tax liability attributable to the deferred capital
gain as factored by the 15% capital gains tax rate.

## Facts and Issue:

Ms. Indu Rawat ("Rawat"), a nonresident alien, was a partner in Innovation Ventures LLC, ("the
partnership" or "IV") with a 29.2% share of all profit and loss of IV and the same percentage of
capital ownership of IV. IV, which is not publically traded partnership within the meaning of
§7704 of the Internal Revenue Code, is engaged in a trade or business through a fixed place
of business in the United States. IV, doing business as Living Essentials, LLC, develops and
markets biotech consumer products in the United States. Its product line includes 5 Hour
Energy vitamin supplement drink and Chaser Plus, a homeopathic over the counter product for
hangovers. The corporate headquarters of IV was located in Novi, Michigan.[2] Strategic
corporate direction, accounts receivable, accounts payable, general ledger accounting,
customer and supplier relations, inventory storage and distribution as well as marketing were
all conducted and managed at the Novi, Michigan corporate headquarters. The partnership
owns appreciated personal property located in the United States that is used or held for use in
the partnerships trade or business within the United States (collectively, the "ECI property").
An example of appreciated personal property owned by IV would be its stock in trade inventory
which IV[3] lists at an adjusted tax basis of $6,426,056[4] and an appreciated value of
$28,765,700 immediately before the sale of Rawat's ownership interest in IV. IV does not
trade in stocks, securities and commodities. In tax year 2008, the year Rawat sold her interest
in IV, she did not file a US Form 1040-NR nonresident individual income tax return. In
contrast, Rawat filed US forms 1040-NR nonresident individual income tax returns for all other
years in which she owned interest in IV.

On January 4th, 2008, Manoj Bhargava ("Bhargava"), chief executive officer and managing
member of IV, through his single member LLC (Innovation Acquisition Co., LLC), bought
Rawat's 29.2% interest in IV for $438,075,000. Prior to the purchase, Bhargava already owned
a 49.5% interest in IV. The parties executed several agreements to effectuate this transaction

---

1 Note: this adjustment was already made at the partnership level audit as a flow though item to Indu, IV 5701 #9.
2 Note that the corporate headquarters of IV is currently situs in Farmington Hills, Michigan.
3 See response to IDR FP INDU 988 001-005.
4 *Id*, footnote #1.

A239

(hereinafter referred to as the "Sale Documents").[5] The Promissory Note, with the maturity date of January 1, 2028, was issued in connection with this transaction. According to the PURCHASE AGREEMENT and PROMISSARY NOTE, no payments of principal shall be required before the maturity date, however the interest of 4.39% would compound quarterly and is to be treated as "Portfolio Interest," as defined in Code §§871(h) and 881(c). Interest payments were paid on April 1st, 2008 as well as the first day of each calendar quarter thereafter and will continue to be paid as such until the note is paid in full. As stated above, prior to tax year 2008, Rawat filed US nonresident individual income tax returns (forms 1040-NR) to account for the partnership income (loss) of IV. Rawat has not filed a US nonresident individual income tax return (form 1040-NR) for tax year 2008 or thereafter.

## Law and Discussion:

### A.  The Sale of Rawat's Partnership Interest Constitutes Effectively Connected Income:

The basic framework for the taxation of foreign persons is in IRC §§ 871, 881 and 882. In general, under these rules, income is classified in one of three basic categories. First, income that is effectively connected with the conduct of a U.S trade or business, or effectively connected income ("ECI"),  is subject to US tax in essentially the same manner as it would be if it were recognized by a US person. IRC §§ 871(b), 882. Second, some types of income, not ECI, are subject to a 30% tax on gross income, but only if they are US sourced,[6] IRC §§ 871(a), 881. Finally, all other income is not subject to US tax when recognized by a foreign person.

The starting point for determining whether gain from the sale of property is ECI is determining whether the Taxpayer is engaged in a US trade of business ("ETB"). §875(1) states that "a nonresident alien individual or foreign corporation shall be considered as being engaged in a trade or business within the United States if the partnership of which such individual or corporation is a member is so engaged." See also Unger v. Commissioner, 936 F2d. 1316 (D.C. Cir. 1991). The imputation rule of §875(1) applies to general and limited partners alike. IV is a US partnership actively engaged in a trade or business in the US. As mentioned above, the following essential business functions of IV were conducted and managed at the Novi, Michigan headquarters: strategic corporate direction, accounts receivable, accounts payable, general ledger accounting, customer and supplier relations, inventory distribution and marketing.  Accordingly, in the tax year at issue, Rawat is deemed to be engaged in the US trade or business of IV because she is a partner in IV.  Furthermore, under IRC §702, Rawat must take into account her distributive share of the items of income, gain, loss, deduction or credit of IV.

---

5 The salient documents used to effectuate this transaction were: Membership Interest Purchase Agreement, the Promissory Note, the Assignment of Membership interest, the Consent Resolutions and the Pledge and Security Agreement
6 This generally applies to certain categories of passive income described in § 871(a)(1) (fixed or determinable annual or periodical income (FDAPI).

A240

The determination of the source and character of a foreign partner's income from the disposition of a partnership interest depends upon the application of IRC §§ 864, 865, 875, and 741.

Rev. Rul. 91-32 discusses the US tax consequences of a foreign partner on the disposition of its interest in a domestic partnership that conducts a trade or business through a fixed place of business or has a permanent establishment in the US. In the examples provided in the ruling, a nonresident alien individual is a partner in a non-publicly traded partnership that is engaged in a trade or business through a fixed place or business in the US. The partnership owns property in the US that is used or held for use in its US trade or business. Under these facts, Rev. Rul. 91-32 states that the gain realized by the foreign partner from the sale of the partnership interest is US sourced ECI because it is attributable to the foreign partner's fixed place of business ("FPB") in the US. Situation 1 of Rev. Rul. 91-32 describes the facts at issue in this case. Because IV is engaged in a trade or business (ETB) in the U.S., Rawat is deemed to be so engaged as a partner in IV.

Rev. Rul. 91-32 reasons that because Subchapter K of the code is a blend of aggregate and entity treatment for partners and partnerships, a partnership may be treated for other purposes of the Code as an aggregate of its partners or as an entity distinct from its partners depending on the purpose and scope of such provisions. Therefore, the treatment of amounts received by a foreign partner from a disposition of a partnership interest must be considered in connection with the general purpose and scope of §§ 864(c) and 865(e).

In applying §§ 864(c) and 865(e), it is appropriate to treat a foreign partner's disposition of its interest in a partnership that is ETB through a FPB in the U.S. as a disposition of an aggregate interest in the partnership's underlying property for purposes of determining the source and ECI character of the gain or loss realized by the foreign partner. Accordingly, a foreign partner's gain or loss from the disposition of an interest in a partnership that is ETB through a FPB in the U.S. will be ECI (U.S. source) gain or loss to the extent such gain or loss is attributable to ECI (U.S. source).

§ 864 defines when income, gain or loss of a foreign Taxpayer will be deemed to be effectively connected to the Taxpayer's US trade or business. In general, any US source fixed or determinable annual or periodical gains, profits, and income (generally known as "FDAP") or capital gain will be treated as effectively connected only to the extent such income either (1) is derived from assets used or held for use in the Taxpayer's trade or business ("asset-use test") or (2) the activities of the Taxpayer's trade or business were a material factor in the production of the income ("material factor test"). Rev. Rul. 91-32 stated that "[since] a foreign partner's gain or loss from the disposition of its interest in a partnership is not gain or loss realized directly from the active conduct of a trade or business within the United States the character of the foreign partner's gain or loss must be determined pursuant to the rules of Treas. Reg. §1.864-4(c)(2)", or the "asset use test." Rev. Rul. 91-32 treats a foreign partner's interest in the partnership as an asset that is effectively connected to the partners' trade or business because the value of the US trade or business of the partnership affects the value of the

A241

foreign partner's interest in the partnership. As a result, the gain from the sale of the interest is effectively connected to the Taxpayer's US trade or business. Here, Rawat's interest in IV is an asset effectively connected to IV and the sale of Rawat's partnership interest therefore, generates ECI.

§865(e)(2) provides that gain from the sale of personal property is treated as US source gain when the sale of such property is attributable to an office or fixed place of business of the Taxpayer in the US. Because of the imputation rule of §875, a foreign partner is deemed to be engaged in a US trade or business when the partnership is found to be so engaged, and thus the foreign partner is properly taxed on the US source operating profits of the partnership. As a result, the sale of Rawat's IV interest is attributable to IV's FPB in the US and the gain from the sale of this interest is treated as US source gain.

The Taxpayer takes the position that Rawat is not subject to taxation because under § 871(a)(2), a nonresident alien is liable for capital gains only if she is present in the US for 183 days or more. What the Taxpayer fails to recognize is that income that is effectively connected with the conduct of a US trade or business is subject to US tax in essentially the same manner as it would be if it were recognized by a US person. There is no residency requirement for tax related to ECI. As demonstrated, above, Rawat's interest in IV is an asset effectively connected to IV's U.S. trade or business and, therefore, the sale of Rawat's partnership interest generates US Source ECI which constitutes income under §741.

## B. Installment Sale:

§ 871(b) provides that a nonresident alien individual engaged in trade or business within the United States during the taxable year shall be taxable as provided in §§ 1 or 55 on his taxable income which is effectively connected with the conduct of a trade or business within the United States. §1001(c) provides the general rule of the taxable year of inclusion of an item of gross income attributable to the sale or disposition of property. §1001(c) provides that except as otherwise provided, the seller of property shall report all recognized gains in the year of sale or disposition of such property.

There is an exception to the reporting requirement under §1001(c) for an installment sale taken into account under the installment method of §453. §453(b) defines the term "installment sale" to mean a disposition of property where at least one payment is to be received after the close of the tax year in which the sale occurred. If an installment sale qualifies for the installment method of reporting, §453(c) provides that the seller's recognition of gain is spread over the period during which the sales proceeds are received. Each payment of principal received by the seller consists of two components: one portion is a nontaxable return of capital (i.e., tax basis), while the remaining portion represents a taxable gain. Any interest income received on the deferred payment is recognized separately as ordinary income.

At this point it is worth noting that §453(d)(1) provides that the general rule of §453(a) shall not apply to any disposition if the Taxpayer elects to have §453(a) not apply to such disposition.

A242

Essentially, unless there is an ineligible transaction, the installment method is mandatory for all installment sales providing that the Taxpayer has not elected out of §453 treatment.[7] §453(d)(1) mandates the time and manner for electing out of §453 is made on a timely filed return (including extensions) for the taxable year of the sale. The sale of Rawat's interest in IV took place in calendar year 2008. No such election was made by Rawat on a timely basis for tax year 2008.

Of the $438,075,000 purchase price, $6,523,176 was allocated to inventory sold.[8] The residual balance of Rawat's gain on the sale of her IV partnership interest, $431,551,824, must be recognized based upon the installment method of §453 as Rawat never elected out of the installment method. As such, the gain is deferred until 2028 at such time as the single principle payment is required by the terms of the note payable for the buyer.[9]

While installment sales by nondealers may be reported under the installment sales method of §453, the application of the interest rule under §453A(a)(1) limits the benefits of such installment reporting by requiring interest be paid on a deferred tax liability that is attributable to obligations arising from certain installment sales. More specifically, the interest charge imposed by §453A(a)(1) applies to any nondealer installment obligation in excess of $150,000 that arose during the taxable year and remains outstanding at the close of the taxable year if the face amount of all such obligations that arose from sales during the year and remaining outstanding as of the close of such taxable year exceeds $5,000,000. It cannot be disputed that the amount of the promissory installment sale note due to Rawat had a face amount in excess of $5,000,000. The note arose from a sale in tax year 2008 and remained outstanding at the end of the same tax year.

§453A(c)(2) provides that interest payable on an installment obligation to which §453(A) applies is an amount equal to the "applicable percentage" of the deferred tax liability of the installment sale obligation multiplied by the underpayment rate of §6621(a)(2) in effect for the month in which the taxable year ends. §453A(c)(4) provides that the "applicable percentage" for all obligations arising during a taxable year is determined by dividing the portion of the aggregate face value of such obligations outstanding at the close of the tax year in excess of $5 million by the aggregate face amount of such obligations arising in and outstanding at the close of the taxable year. §453A(c)(3) provides that the deferred tax liability for any tax year with respect to an installment obligation is the amount of the still unrecognized gain in the obligation as of the close of the taxable year multiplied by the applicable maximum rate of tax for the Taxpayer in effect for that year.

## Taxpayer's Position:

---

7 Also note that there are other limitations to the use of the installment sale method under §453 that are not germane to this fact pattern.
8 The disposition of the IV inventory yielded US income and Rawat has conceded this issue.
9 Note that if the taxpayer were to receive principle payments prior to the scheduled due date of the note of January 1st, 2028, §453(c) would cause immediate gain recognition as the sales proceeds are received.

Form **886-A** (1-1994)    Catalog Number20810W    Page 5    publish.no.irs.gov    Department of the Treasury-Internal Revenue Service

A243

The Taxpayer disagrees with this adjustment, arguing that §871(a)(2) only taxes capital gains of an alien that is present in the United States 183 days or more. Also, according to the Taxpayer's representative, nowhere within Subchapter N is there authority to apply Section 453A to a nonresident alien.

<u>Rebuttal:</u>

§871(b)(1) provides for the general imposition of tax on a nonresident alien's income effectively connected with a U.S. trade or business as follows: "[a] nonresident alien individual engaged in trade or business within the United States during the taxable year shall be taxable as provided in section 1 or 55 on his taxable income which is effectively connected with the conduct of a trade or business within the United States." The imposition of tax by §871(b) on a nonresident alien's effectively connected income with a U.S. trade or business is not dependant upon the nonresident alien's presence in the in the US in excess of 183 days. When a nonresident alien has ECI from a US trade or business, that nonresident alien's ECI is taxed similar to the income of any of US citizen.

§ 61(a)(3) provides that gross income means any income from whatever source derived, including gains derived from dealings in property. The government has established that the sale of Rawat's property constitutes effectively connected income. § 1001 provides for the computation of gain or loss from the sale or disposition of property. § 1001(d) further provides that "[n]othing in this section shall be construed to prevent…the taxation of that portion of any installment payment representing gain or profit in the year in which such payment is received."

The installment sale method of §453 is a statutorily prescribed method of accounting used for determining taxable income throughout Subtitle A[10]. Thus installment sales method of accounting for taxable income, within the limitations set forth in §453, is applicable to the determination of taxable income as referenced in §871(b). §453A is a subset of special rules applicable to §453. If §453 permits installment sale reporting in particular situations, §453A applies in certain instances to limit the benefits of installment sale reporting within certain parameters. The application of the rules §453A is to not limited by Subchapter N in the determination of a nonresident alien's taxable income.

Further proof of the applicability of the installment sales method can be found in §864(c)(6) which was intended to modify a loop hole in §871(b)(2) when the installment sales method was applied to a property sale in a year where the seller had ECI but the payment was received by the same seller in a non ECI year. Note that §871(b)(2) provides that "[i]n determining taxable income for purposes of paragraph (1), gross income includes only gross income which is effectively connected with the conduct of a trade or business within the United States. §871(b)(2) essentially permitted non resident Taxpayers to avoid US taxation of appreciated US property by selling the property in an ECI year with an installment sale instrument that

---

10 Both Subchapter E which governs accounting periods and methods of accounting, including installment sales and Subchapter N relating to taxes on nonresident alien individuals are contained in Subtitle A: "Income Taxes."

**INNOVATION VENTURES**
**PROPERTY HELD FOR USE IN TRADE OR BUSINESS**

| Description | Type of Property | Situs | Tax Basis | FMV | Appreciation | Indu Share 29.205% |
|---|---|---|---|---|---|---|
| Cash | Personal | U.S. | 25,078 | 25,078 | - | - |
| A/R | Personal | U.S. | 4,810,265 | 4,810,265 | - | - |
| Inventory | Personal | U.S. | 6,426,056 | 28,765,700 | 22,339,644 | 6,523,176 |
| Prepaids | Personal | U.S. | 192,009 | 192,009 | - | - |
| Equipment | Personal | U.S. | 961,225 | 961,225 | - | - |
| Notes receivable | Personal | U.S. | 2,058,747 | 2,058,747 | - | - |
| Constr. in process | Personal | U.S. | 773,150 | 773,150 | - | - |
| Sec. 754 - 2006 goodwill | Intangible | U.S. | 329,511 | 329,511 | - | - |
| Goodwill | Intangible | U.S. | - | 1,475,266,920 | 1,475,266,920 | 430,851,704 |
| Patent | Intangible | U.S. | 400,003 | 400,003 | - | - |
| | | | | 437,374,880 | | |

Docket No. 15340-16

Exhibit 8

A246

April 28, 2017

By Electronic & Priority Mail

S. Katy Lin
Senior Attorney (Detroit)
IRS Office of Division Counsel, LB&I
500 Woodward Ave., Suite 1300 - Stop 31
Detroit, MI 48226-8516

Re:    Indu Rawat v. Commissioner, Tax Court Docket No. 15340-16

Dear Ms. Lin:

On behalf of petitioner Indu Rawat, this letter responds to the informal discovery requests set forth in your letter dated February 22, 2017.

Request No. 1:

*Provide all documents relating to contributions made by petitioner to IV, including but not limited to type of contribution (for example, cash, stock, real estate, etc.), the date(s) of contribution, and the amounts contributed.*

**Response to Request No. 1:**

**Petitioner objects to Request No. 1 on the grounds that it seeks information that is neither relevant to the subject matter involved in this case nor reasonably calculated to lead to the discovery of admissible evidence. Neither the Petition nor the underlying Notice of Deficiency raise any issue with respect to contributions made by petitioner to Innovation Ventures, petitioner's outside basis in Innovation Ventures, or the proper computation of gain on the January 4, 2008 sale of petitioner's interest in Innovation Ventures.**

**Notwithstanding and without waiver of this objection, all documents currently in petitioner's possession, custody or control responsive to Request No. 1 are included on the enclosed disc. Petitioner's efforts to obtain documents and information responsive to Request No. 1 remain ongoing and petitioner reserves the right to supplement this response.**

21 East Carrillo Street, Suite 220
Santa Barbara, CA 93101

Phone: 805.618.1862
Fax: 805.617.0291

michael@desmondtaxlaw.com

A247

Request No. 2:

*Petitioner contends she was not present in the US for more than 183 days in 2008. Provide copies of all documents showing petitioner's whereabouts in 2008.*

**Response to Request No. 2:**

**Petitioner objects to Request No. 2 to the extent that it misconstrues the position taken in the Petition and to the extent that it misconstrues the assertions of fact set forth in the Petition. More specifically, in paragraph 5.c of the Petition, petitioner asserts that she was not a resident of the United States during the 2008 or 2009 tax years. Residency is defined only in part by the numerical "substantial presence test" set forth in I.R.C. § 7701(b)(3)[1] and no specific allegation of fact is made in the Petition regarding the number of days petitioner was or was not present in the United States in 2008.**

**To the extent that Request No. 2 can be construed to request documents and information regarding petitioner's presence in the United States that might be relevant to application or non-application of the 183-day rule set forth in I.R.C. § 871(a)(2), petitioner objects to the request on the grounds that it seeks information that is neither relevant to the subject matter involved in this case nor reasonably calculated to lead to the discovery of admissible evidence. Neither the Petition nor the underlying Notice of Deficiency raise any issue with respect to application or non-application of I.R.C. § 871(a)(2).**

**Notwithstanding and without waiver of these objections, all documents currently in petitioner's possession, custody or control responsive to Request No. 2 are included on the enclosed disc. Petitioner's efforts to obtain documents and information responsive to Request No. 2 remain ongoing and petitioner reserves the right to supplement this response.**

Request No. 3:

*Provide all written and/or oral communications between petitioner and any third party regarding the sale of her interest in IV ("2008 sale"), identified in paragraphs 5(l) through 5(n) in petitioner's Tax Court petition and the nature and substance of such advice/assistance, including but not limited to the following:*

---

[1] All references to "I.R.C." are to the Internal Revenue Code of 1986, as amended and in effect during the 2008 and 2009 tax years at issue in this case.

   a.  *Copies of all engagement letters and fee agreements with all third*
       *parties related to the 2008 sale.*
   b.  *The date(s) and time period(s) of such communications and the identity*
       *of the parties to such communications.*
   c.  *Copies of all tax opinions, letters or other written tax advice which*
       *petitioner obtained or received with respect to the 2008 sale.*
   d.  *Copies of all valuations and appraisals petitioner obtained related to the*
       *2008 sale.*
   e.  *Copies of all billings and/or payments made to such third parties*
       *related to said communications and/or advice.*
   f.  *Copies of all notes related to said communications.*
   g.  *Copies of all correspondence related to said communications.*

**Response to Request No. 3:**

**To the extent that Request No. 3 seeks discovery of communications that
occurred after the date on which respondent opened an examination of
petitioner's 2008 federal income tax liability, petitioner objects to the request
as seeking disclosure of information protected from discovery under the
attorney-client privilege and the work product doctrine. Petitioner further
objects to Request No. 3 as vague and confusing to the extent that it seeks
production of oral communications for which no written record has ever
existed.**

**Notwithstanding and without waiver of these objections, all documents that
are currently in petitioner's possession, custody or control responsive to
Request No. 3 are included on the enclosed disc. Petitioner's efforts to obtain
documents and information responsive to Request No. 3 remain ongoing and
petitioner reserves the right to supplement this response.**

Request No. 4:

*Provide all written and/or oral communications between petitioner and any third
party regarding the position of the Internal Revenue Service concerning the tax effect
of the 2008 sale (effectively connected income), the merits and effect of Revenue Ruling
91-32, and/or any other IRS ruling, notice, regulation or announcement, including but
not limited to the following:*

   a.  *The date(s) and time period(s) of such communications and the identity*
       *of the parties to such communications.*
   b.  *Copies of all written tax opinions, letters or other written tax advice*
       *which petitioner obtained or received with respect to said*
       *communications.*

     c. *Copies of all billings and/or payments made to such third parties regarding said communications.*

     d. *Copies of all notes related to said communications.*

     e. *Copies of all correspondence related to said communications.*

**Response to Request No. 4:**

**To the extent that Request No. 4 seeks discovery of communications that occurred after the date on which respondent opened an examination of petitioner's 2008 federal income tax liability, petitioner objects to the request as seeking disclosure of information protected from discovery under the attorney-client privilege and the work product doctrine. Petitioner further objects to Request No. 4 as vague and confusing to the extent that it seeks production of oral communications for which no written record has ever existed.**

**Notwithstanding and without waiver of these objections, all documents that are currently in petitioner's possession, custody or control responsive to Request No. 4 are included on the enclosed disc. Petitioner's efforts to obtain documents and information responsive to Request No. 4 remain ongoing and petitioner reserves the right to supplement this response.**

Request No. 5:

*§ 751 requires a seller to recognize ordinary income to the extent the fair market value of the inventory exceeded its basis. At the time of the 2008 sale, IV had inventory of approximately $6.4 million which was later sold for a profit of $22 million ("inventory sale"). Of the $22 million sale amount, petitioner's share was in excess of $6.6 million. Exam proposed a § 751 adjustment related to the inventory sale. Petitioner agreed to the 751 adjustment and executed both part 1 (related to partnership items) and part 2 (related to affected items) of the Form 870 LT. Provide copies of all written and/or oral communications between petitioner and any third party regarding the inventory sale, including but not limited to:*

     a. *The date(s) and time period(s) of such communications and the identity of the parties to such communications.*

     b. *Copies of all written tax opinions, letters or other written tax advice which petitioner obtained or received with respect to the inventory sale.*

     c. *Copies of all billings and/or payments made to such third parties related to the communications and/or advice.*

     d. *Copies of all notes related to said communications.*

     e. *Copies of all correspondence related to said communications.*

A250

**Response to Request No. 5:**

Petitioner objects to request No. 5 to the extent that it mischaracterizes the Form 870-LT as an agreement that addresses in any way petitioner's proper method of accounting for any portion of the gain on the sale of her interest in Innovation Ventures.

To the extent that Request No. 5 seeks discovery of communications that occurred after the date on which respondent opened an examination of petitioner's 2008 federal income tax liability, petitioner further objects to the request as seeking disclosure of information protected from disclosure under the attorney-client privilege and the work product doctrine. In addition, petitioner objects to Request No. 5 as vague and confusing to the extent that it seeks production of oral communications for which no written record has ever existed.

Notwithstanding and without waiver of these objections, all documents that are currently in petitioner's possession, custody or control responsive to Request No. 5 are included on the enclosed disc. Petitioner's efforts to obtain documents and information responsive to Request No. 5 remain ongoing and petitioner reserves the right to supplement this response.

Request No. 6:

*Provide copies of all written and/or oral communications between petitioner and any third party regarding the Form 870LT she executed, agreeing to the resolution of issues (section 751 and penalties) arising in connection with the IV 2008 examination, including but not limited to:*

   a. *The date(s) and time period(s) of such communications and the identity of the parties to such communications.*
   b. *Copies of all written tax opinions, letters, or other written tax advice which petitioner obtained or received with respect to the 870LT.*
   c. *Copies of all notes related to said communications.*
   d. *Copies of all correspondence related to said communications.*

**Response to Request No. 6:**

Petitioner objects to request No. 6 to the extent that it mischaracterizes the Form 870-LT as an agreement that addresses in any way petitioner's proper method of accounting for any portion of the gain on the sale of her interest in Innovation Ventures.

**To the extent that Request No. 6 seeks discovery of communications that occurred after the date on which respondent opened an examination of petitioner's 2008 federal income tax liability, petitioner further objects to the request as seeking disclosure of information protected from disclosure under the attorney-client privilege and the work product doctrine.**

**Notwithstanding and without waiver of these objections, after a diligent search, no documents or other information responsive to Request No. 6 could be located. Petitioner's efforts to obtain additional documents and information responsive to Request No. 6 remain ongoing and petitioner reserves the right to supplement this response.**

Request No. 7:

*Explain why petitioner did not file a form 1040NR for taxable years 2008 and 2009. If your position is that petitioner was not required to do so, provide a basis for said position.*

**Response to Request No. 7:**

**Petitioner objects to Request No. 7 to the extent that it calls for a legal conclusion or analysis. Notwithstanding and without waiver of this objection, petitioner did not file a Form 1040NR for taxable years 2008 and 2009 because it was determined that she was a nonresident alien not engaged in a trade or business in the United States and because during those taxable years she did not otherwise receive income effectively connected to a U.S. trade or business or income that would otherwise be reportable on Form 1040NR.**

Request No. 8:

*Explain why petitioner did not report taxable gain under IRC section 897(g) in connection with the sale of her interest in IV. If your position is that petitioner was not required to do so, provide a basis for said position.*

**Response to Request No. 8:**

**Petitioner objects to Request No. 8 to the extent that it calls for a legal conclusion or analysis. Petitioner further objects to Request No. 8 as seeking information that is neither relevant to the subject matter involved in this case nor reasonably calculated to lead to the discovery of admissible evidence. The U.S. tax treatment under I.R.C. § 897(g) of any portion of petitioner's interest in Innovation Ventures sold in 2008 that is attributable to a U.S. real property interest is a "partnership item" of Innovation Ventures within the meaning of**

**I.R.C. § 6231(a)(3) and the Tax Court lacks subject matter jurisdiction in this partner-level deficiency proceeding to adjudicate that issue.**

**Notwithstanding and without waiver of these objections, petitioner did not report taxable gain under I.R.C. § 897(g) in connection with the sale of her interest in Innovation Ventures because no determination was made that any portion of the sale price was attributable to a U.S. real property interest and therefore covered by I.R.C. § 897(g).**

Request No. 9:

*Explain why petitioner did not report any taxable gain under IRC 751 in connection with the sale of inventory held by IV. If your position is that petitioner was not required to do so, provide a basis for said position.*

**Response to Request No. 9:**

**Petitioner did not report taxable gain under I.R.C. § 751 in connection with the sale of her interest in Innovation Ventures because no determination was made that any portion of the sale price was attributable to substantially appreciated inventory and therefore covered by I.R.C. § 751.**

Request No. 10:

*Please provide copies of any Forms 8275 or 8275-R filed by petitioner to disclose her reporting position with respect to her interest in IV and the sale of inventory by IV.*

    *a.  If petitioner did not file such forms, explain why not.*

**Response to Request No. 10:**

**Petitioner did not file Forms 8275 or 8275-R for the 2008 or 2009 taxable years and, accordingly, no documents responsive to Request No. 10 exist.**

**For the reasons set forth in response to Request No. 7, petitioner did not file IRS Forms 1040NR for the 2008 or 2009 taxable years. Accordingly, there were no items reported or positions taken on a tax return that were subject to disclosure on IRS Forms 8275 and 8275-R. Moreover, petitioner has never taken a reporting position with respect to her U.S. income tax liability that lacks substantial authority or is contrary to Treasury regulations and, for this additional reason, there was never an occasion for petitioner to file IRS Forms 8275 or 8275-R.**

Request No. 11:

*Provide copies of all 2008 and 2009 tax returns filed by petitioner, whether US or foreign, showing the reporting of any income, including interest, related to the 2008 transaction.*

**Response to Request No. 11:**

**After a diligent search, no documents or other information responsive to Request No. 11 could be located. Petitioner's efforts to obtain additional documents and information responsive to Request No. 11 remain ongoing and petitioner reserves the right to supplement this response.**

Request No. 12:

*Provide copies of all 2008 tax returns filed by petitioner, whether US or foreign, showing the reporting of any income related to the sale of inventory by IV.*

**Response to Request No. 12:**

**See response to Request No. 11.**

Request No. 13:

*Provide copies of all US state returns filed by petitioner in 2008-2010, including but not limited to Michigan, New York and New Jersey.*

**Response to Request No. 13:**

**To the extent that it requests documents or information with respect to the 2010 tax year, petitioner objects to Request No. 13 as seeking information that is neither relevant to the subject matter involved in this case nor reasonably calculated to lead to the discovery of admissible evidence.**

**Notwithstanding and without waiver of this objection, petitioner did not file any U.S. state income tax return in 2008, 2009 or 2010.**

Request No. 14:

*Produce all documents upon which petitioner relies to support her assertion that she has sufficient reasonable cause for her positions to avoid the imposition of the additions to tax under IRC 6651(a)(1) and 6652(a)(2) and/or the penalty under IRC 6654.*

A254

**Response to Request No. 14:**

**Documents responsive to Request No. 14 are included on the attached disc. Petitioner's efforts to obtain additional documents and information responsive to Request No. 14 remain ongoing and petitioner reserves the right to supplement this response.**

**Request No. 15:**

*Produce all documents upon which petitioner relies to support her assertion that she had substantial authority, within the meaning of Treas. Reg. 1.6624(d) [sic] for the positions she took to avoid impositions of the additions to tax under IRC 6651(a)(1) and 6652(a)(2) and/or the penalty under IRC 6654.*

**Response to Request No. 15:**

**Petitioner objects to Request No. 15 as vague and ambiguous in its reference to Treas. Reg. § 1.6624(d).  Construing Request No. 15 as a reference to the substantial authority provisions in Treas. Reg. § 1.6662-4(d), petitioner further objects to Request No. 15 as neither relevant to the subject matter involved in this case nor reasonably calculated to lead to the discovery of admissible evidence.  The Petition does not raise a substantial authority defense to accuracy-related penalties under I.R.C. § 6662(2)(B)(i) or Treas. Reg. § 1.6662-4(d), nor does the underlying Notice of Deficiency assert or otherwise make any reference to accuracy-related penalties under I.R.C. § 6662.**

Request No. 16:

*Provide the legal basis for petitioner's position that the gain from the sale of her membership interest in IV is not effectively connected income and/or is not attributable to a US office.*

**Response to Request No. 16:**

**Petitioner objects to Request No. 16 to the extent that it calls for a legal conclusion or analysis.  Petitioner further objects to Request No. 16 as premature because discovery in this matter is not complete and petitioner is still developing her legal position in the case.**

**Notwithstanding and without waiver of these objections, under I.R.C. § 741 and except as provided by I.R.C. § 751, gain on the sale of petitioner's interest in Innovation Ventures was properly treated as gain on the sale or exchange of**

a capital asset.  In turn, and because petitioner was a nonresident alien in 2008, under I.R.C. §§ 864 and 865, the gain was properly treated as foreign source capital gain not effectively connected to a U.S. trade or business and not subject to U.S. income tax.

Petitioner understands that it is the position of respondent, as set forth in Revenue Ruling 91-32, 1991-1 C.B. 107, that the gain on sale of a nonresident alien's interest in a partnership that itself is engaged in a U.S. trade or business can, at least in part, be treated as effectively connected income subject to U.S. income tax.  Revenue Ruling 91-32 is entitled to no deference in this deficiency proceeding, however, and it is petitioner's position that it is in conflict with the express terms of I.R.C. §§ 741, 864 and 865.

Request No. 17:

*During the examination, respondent was unable to interview petitioner, despite repeated requests to her representative at the time.  As her testimony is highly relevant, we request an opportunity to interview her regarding pertinent aspects of the case, including but not limited to her involvement with IV, her role(s) as partner in IV, her decision and the process to sell her interest in IV, and her understanding and expectations related to the 2008 transaction, as well as the inventory sale.  In addition, we need to discuss with petitioner her understanding and impressions of the agreement she executed, the discussions she may have had with her representatives and her understandings and beliefs as to her filing responsibilities.*

Response to Request No. 17:

Request No. 17 does not set forth a request for documents or information and, accordingly, no response is required.  To the extent that Request No. 17 can be construed to ask for petitioner's position on whether she would consent to a deposition, it is her position that this case will involve only the application of law to undisputed facts that were fully developed by respondent during its examination.  Therefore, it is petitioner's position that there is no need for a deposition.

Request No. 18:

*Provide the names, title, current address and current telephone number for any individual petitioner may call as a witness at trial, and describe such individuals' anticipated testimony.*

**Response to Request No. 18:**

**Petitioner objects to Request No. 18 as premature because discovery in this matter is not complete and petitioner is still developing her legal position in the case. Notwithstanding and without waiver of this objection, should this matter proceed to trial, petitioner currently anticipates that she may call the following witnesses to testify regarding the following subject matters:**

| *Individual* | *Subject Matter* |
|---|---|
| **Indu Rawat**<br>**c/o Michael J. Desmond, Esq.**<br>**Law Offices of Michael J. Desmond, APC**<br>**21 E. Carrillo Street, Suite 220**<br>**Santa Barbara, CA 93101**<br>**(805) 618-1862** | **Acquisition and disposition of petitioner's interest in Innovation Ventures; compliance with U.S. federal income tax reporting and filing requirements.** |
| **Manoj Bhargava**<br>**c/o Jennifer Breen, Esq.**<br>**Morgan, Lewis & Bockius LLP**<br>**1111 Pennsylvania Ave. NW**<br>**Washington, DC 20004-2541**<br>**(202) 739-5577** | **Acquisition and disposition of petitioner's interest in Innovation Ventures.** |
| **Gerald Stein**<br>**Plante Moran, PLLC**<br>**19176 Hall Road, Suite 300**<br>**Clinton Township, MI 48038**<br>**(586) 416-4956** | **Preparation and filing of petitioner's 2007 IRS Form 1040NR federal income tax return; determinations regarding petitioner's federal income tax reporting and filing requirements; determination and computation of U.S. tax impact on petitioner of TEFRA examination adjustments for Innovation Ventures for the 2007 and 2008 tax years.** |
| **Mitchell Sorkin**<br>**Raich Ende Malter & Co. LLP**<br>**1375 Broadway, 15th Floor**<br>**New York, NY 10018**<br>**(212) 944-4433** | **Preparation and filing of petitioner's 2006 (and prior year) IRS Form 1040NR federal income tax return.** |

| Philip J. Gaglio<br>**Grant Thornton LLP**<br>**27777 Franklin Road**<br>**Southfield, MI 48034**<br>**(248) 262-1950** | **2008 appraisal of Innovation Ventures.** |
| --- | --- |
| **Michael A. Murray**<br>**Internal Revenue Service**<br>**38275 W. 12 Mile, Suite 200**<br>**Farmington Hills, MI 48331**<br>**(248) 848-8522** | **TEFRA examination of Innovation Ventures for the 2007 and 2008 tax years; examination of petitioner's U.S. income tax liability for the 2008 and 2009 tax years.** |
| **Custodian of Records**<br>**Innovation Ventures, LLC**<br>**c/o Jennifer Breen, Esq.**<br>**Morgan Lewis**<br>**1111 Pennsylvania Ave. NW**<br>**Washington, DC 20004-2541**<br>**(202) 739-5577** | **Authentication of business records of Innovation Ventures.** |

Request No. 19:

Confirm that it is your position that the installment method of accounting set forth under IRC 453 is applicable to the adjustment to IV's partnership items as agreed by petitioner via the Form 870LT. If so, provide the legal basis for petitioner's position why IRC 453 is applicable to the inventory sale under section 751.

**Response to Request No. 19:**

**In Part I of the Form 870-LT it was determined and agreed, as a partnership item of Innovation Ventures, that $6,523,176 of the gain on sale of petitioner's interest in Innovation Ventures was attributable to substantially appreciated inventory under IRC § 751. Petitioner does not challenge that partnership-level determination.**

**Neither Part I nor Part II of the Form 870-LT addresses in any way the question of whether the portion of the gain attributable to substantially appreciated inventory is subject to reporting under the installment method of accounting. Petitioner understands that it is the position of respondent, as set forth in Revenue Ruling 89-108, 1989-2 C.B. 100, that gain from the sale of a partnership interest may not be reported under the installment method to the extent that it is attributable to the partnership's substantially appreciated inventory. Revenue Ruling 89-108 is entitled to no deference in this deficiency proceeding, however, and it is petitioner's position that it takes an incorrect aggregate theory of partnerships that is in conflict with the express**

**terms of I.R.C. § 741. Accordingly, to the extent subject to U.S. income tax, all gain on the sale of petitioner's interest in Innovation Ventures is properly subject to reporting under the installment method of accounting set forth in I.R.C. § 453.**

**Request No. 20:**

*Confirm whether petitioner speaks English. If she does not, identify all parties including the name(s), addresse(es) and telephone number(s) of persons who assisted in translating communications sought in items (3), (4), (5), and (6), above.*

**Response to Request No. 20:**

**Petitioner does speak English.**

Neither discovery nor petitioner's development of her positions in this case are complete and, as noted above and in general, she reserves the right to supplement these responses.

Sincerely,

Michael J. Desmond

Enclosure:  As stated.

US TAX COURT
RECEIVED

APR 3 2020
6:27 PM



US TAX COURT
eFILED

APR 3 2020

INDU RAWAT,

          Petitioner,

ELECTRONICALLY FILED

      v.

Docket No.   15340-16

COMMISSIONER OF INTERNAL REVENUE,

          Respondent

# PETITIONER'S REPLY TO MEMORANDUM IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT

**SERVED Apr 03 2020**

A260

**UNITED STATES TAX COURT**

INDU RAWAT,                          )
                                     )
      Petitioner,                )
                                     )
      v.                         ) Docket No. 15340-16
                                     )
COMMISSIONER OF                      )
INTERNAL REVENUE,                    ) Filed Electronically
                                     )
      Respondent.                )


**REPLY MEMORANDUM IN SUPPORT OF
PETITIONER'S MOTION FOR SUMMARY JUDGMENT**

      Petitioner's Motion for Summary Judgment (the "Motion") identified two

issues ripe for summary adjudication in her favor: (i) the tax treatment of the

"Non-Inventory Gain" amount from the sale of petitioner's partnership interest in

December 2008; and (ii) the tax treatment of the "Inventory Gain" amount from

the same sale.  The parties previously agreed that the Non-Inventory Gain issue

would be resolved based on, and consistently with, the final holding of Grecian

Magnesite Mining, Indus. & Shipping Co., SA v. Comm'r, 149 T.C. 63 (2017),

aff'd, 926 F.3d 819 (D.C. Cir. 2019) ("Grecian Magnesite").  Because Grecian

Magnesite is now final and resolved in favor of the taxpayer, entry of judgment in

petitioner's favor on the Non-Inventory Gain issue is appropriate.

      Following the rationale of Grecian Magnesite, the "Inventory Gain"

likewise should not be treated as taxable U.S. source income under the applicable

provisions of the Internal Revenue Code of 1986 (the "Code" or "IRC").

Therefore, petitioner contends she is similarly entitled to judgment in her favor on

the Inventory Gain issue.

Rather than just concede the Non-Inventory Gain issue under Grecian

Magnesite pursuant to his prior representations to the Court, respondent now

desperately claims there is a genuine issue of material fact – whether petitioner is,

in fact, a non-resident alien.[1] Of course, Grecian Magnesite applies only to a non-

resident alien who sells a U.S. partnership interest; and respondent has agreed

repeatedly in filings with this Court – eight times over a three-year period – that

petitioner was a non-resident alien in the year at issue.[2] The repeated

acknowledgement of and agreement with this fact is consistent with both parties'

understanding and behavior during the almost eleven-year history of this dispute.

Respondent's sudden change of heart parallels his equally abrupt reversal of

---

[1]     Respondent's Memorandum in Support of Response to Motion for
Summary Judgment (March 2, 2020) ("R. Mem.") 4, 15-19.

[2]     See Joint Status Report, ¶ 2 (Dec. 14, 2017) ("whether petitioner, *as a
nonresident alien*, is subject to tax on that portion of the gain on the sale of her
interest in a U.S. partnership that is attributable to inventory") (emphasis added);
Joint Status Report, ¶ 2 (April 25, 2018) (same); Joint Status Report, ¶ 3 (July 20,
2018) (same); Joint Status Report, ¶ 2 (Oct. 24, 2018) (same); Joint Status Report,
¶ 2 (Jan. 22, 2019) (same); Joint Status Report, ¶ 2 (Apr. 15, 2019) (same); Joint
Status Report, ¶ 2 (July 10, 2019) (same); Joint Status Report, ¶ 2 (Oct. 8, 2019)
(same).

position in the related case, where he now asserts that the sale and purchase of the partnership interest at issue may lack economic substance.[3]

Similarly, on the Inventory Gain issue, respondent tries to introduce other supposedly disputed facts to derail the requisite application of Grecian Magnesite. In addition to relying again on the meritless argument regarding petitioner's non-resident alien status, respondent claims that a factual dispute exists over whether a prior partnership-level settlement embodied in a Form 870-LT resolved the Inventory Gain issue. But there is no genuine issue of material fact regarding the Form 870-LT either. The parties agree that by executing the Form 870-LT, petitioner agreed to partnership-level adjustments regarding the Inventory Gain. By its plain terms and as a matter of law, however, the Form 870-LT only binds petitioner to the *partnership-level* adjustments, and not to any *partner-level* determinations that respondent chooses to make. Rather, when respondent makes partner-level determinations, and assesses an amount of tax via a computational

---

[3]     The related case is Innovation Ventures, LLC, Manoj Bhargava, Tax Matters Partner v. Commissioner, Dkt. No. 5741-19 ("Innovation Ventures"), in which respondent contends that petitioner did *not* make a bona fide sale or exchange of her partnership interest in Innovation Ventures, LLC ("IV LLC"). Respondent first made this contention in his answer there, but did not make any additional allegations of fact to support the new issue. In contrast, in every one of the Joint Status Reports noted above (fn. 2), respondent consistently stated that petitioner had made a bona fide sale of a U.S. partnership interest in IV LLC.

adjustment, petitioner has the legal right to challenge the computational

adjustment, which petitioner did.

Respondent's lengthy exegesis of the sourcing rules that would apply if the

Inventory Gain were treated as petitioner's gain from the sale of actual inventory

is somewhat beside the point. Petitioner concedes that, if she had actually been

engaged in a U.S. trade or business and sold actual inventory, the gain would be

U.S. source. Following the rationale of Grecian Magnesite, however, she did not;

she sold her partnership interest.

Respondent's last attempt to avoid summary judgment is to ask the Court

to defer ruling on the Motion until "resolution" of the Innovation Ventures case,

based on two theories: (i) to avoid "whipsaw," and (ii) on the grounds of judicial

economy. These respondent's blatant reversals of position are not designed to

protect the government from whipsaw. Whipsaws occur when multiple taxpayers

take inconsistent positions, and respondent is thus also forced to take inconsistent

positions to protect the revenue. Here, however, the positions of the taxpayers are

entirely consistent.[4] Both are premised on the fact that there was a purchase and

---

[4]     Courts generally view a whipsaw as a situation where taxpayers treat the
same transaction involving the same income inconsistently, thus creating the
possibility that the income could go untaxed. See, e.g., Bouterie v. Comm'r, 36
F.3d 1361 (5th Cir. 1994). Whipsaw also arises in a tax transaction when two
taxpayers have a claim to the same tax benefit. See Gilbert & Mather, Whipsaw

sale of petitioner's interest in IV LLC. Respondent is simply taking inconsistent

positions, hoping that one will stick. Respondent wants optionality, not to avoid

whipsaw.

Respondent similarly fails to demonstrate that any judicial economy will be

accomplished by delay in this case. He never reasonably articulates why this

case, which is ripe for summary judgment and was filed years before Innovation

Ventures, should be the one that is delayed. R. Mem. 13. Respondent correctly

recognizes that "the purpose of summary judgment is to *expedite* litigation and

*avoid* unnecessary and expensive *trials*." R. Mem. 14 (emphasis added). A

ruling on the Motion would do just that.

For these reasons, and as explained below, the Court should reject

respondent's transparent efforts to avoid the merits and should grant the Motion.

<h2 style="text-align:center">STATEMENT OF FACTS</h2>

*Petitioner's Statement of Facts.* The only assertion in Petitioner's

Statement of Facts that respondent now contests is paragraph 2's statement, "The

parties to this proceeding agree that in 2008 Petitioner, as a nonresident alien, sold

her partnership interest in IV LLC." Respondent claims "the parties have not

---

Revisited, 43 Tax Law. 343 (1990). Neither of those facts and circumstances is
present here.

stipulated" to this, and that "these status reports should not be treated as a concession by respondent." R. Mem. 4. He bases this last claim on two theories: first, that the repeated status report statements that petitioner was a non-resident alien occurred only in the statement of an issue; and two, for the reasons supposedly "more fully discussed" elsewhere in respondent's memorandum. Id.

As to the first theory, the statements of the issue in the Joint Status Reports do not ask "whether respondent *is* a non-resident alien," but "whether, *as* a non-resident alien," she is subject to tax as contended by respondent. The form of the statement makes clear that the parties agree petitioner indeed *is* a non-resident alien, and that the only remaining question is whether she is subject to tax. Further, the Joint Status Reports connect this statement of the issue to Grecian Magnesite, which respondent must concede would have absolutely no bearing on the gain recognition questions unless petitioner *is* a non-resident alien. That was certainly how the Court must have understood the question, namely, that respondent was staking his position with respect to the Non-Inventory Gain on the theory that a non-resident alien was subject to tax on the sale of a partnership interest; and once Grecian Magnesite was decided and final, that debate would be over. Since the taxpayer won in Grecian Magnesite, the issue here must now be decided in petitioner's favor. Otherwise, the parties wasted more than two years

and misinformed the Court on eight different occasions on what respondent now

claims is an irrelevancy.[5]  Respondent's disappointment in losing Grecian

Magnesite does not permit him to fabricate a *post-hoc* factual dispute on

petitioner's residency status to save his adjustments.

    With respect to the "reasons more fully discussed" in respondent's

memorandum about petitioner's residency, respondent fails to produce any

affirmative evidence.  Respondent's argument consists entirely of two points:

respondent did not admit in his Answer the allegation that petitioner was a non-

resident alien in 2008; and the rest of respondent's inquiries have been

"inconclusive" on the point.[6]  R. Mem. 11-12.  The first is overcome by

respondent's acknowledgement of petitioner's non-resident alien status in the Joint

---

[5]    In this regard, note that the parties filed a Joint Status Report on Oct. 8, 2019, *after* respondent apparently decided to test petitioner's residency status by conducting third party discovery about that subject.  See Declaration of Katy S. Lin ("Lin Decl."), ¶ 17 (noting a Sept. 4, 2019 request to the Department of Homeland Security).  If respondent had any question about petitioner's nonresident alien status as of October 8, he should not have reaffirmed for the eighth time that, "as a nonresident alien," she may not have been subject to tax on the Non-Inventory Gain.

[6]    Petitioner notes that respondent has apparently been conducting third party discovery – with the Department of Homeland Security and the Government of Canada – without notifying petitioner or the Court.  All of this discovery has apparently occurred as a last-minute defense tactic in response to petitioner making it clear in the summer of 2019 that she intended to move for summary judgment in this case.

Status Reports and in the administrative record below; and the second is, as shown below, inadequate to establish that there is a genuine issue of material fact.

***Respondent's Statement of Facts.*** With respect to respondent's "Statement of Uncontested Material Facts," as more fully set forth below, petitioner does not contest many of the "fact" portions of this narrative, but strenuously disagrees with the legal conclusions respondent draws from them.

Paragraphs 1, 2, 3, 6, 7 and 16: Petitioner agrees.

Paragraph 4: Petitioner agrees with the first two sentences; the final three sentences are not even facts and are certainly not material to the determination of the issues before the Court.

Paragraph 5: Petitioner disagrees with the characterization of the Form 870-LT and submits that the form speaks for itself, as respondent himself asserted at least six times in his Answer. Answer, ¶¶ 5.u to 5.z.

Paragraph 8: Petitioner denies and submits that the Form 870-LT speaks for itself.

Paragraph 9: Petitioner submits that the unsigned Form 886A, which does not indicate that it was attached to the Form 870-LT, speaks for itself.

Paragraph 10: Petitioner submits that the Form 870-LT speaks for itself.

Paragraph 11: Petitioner submits that the Form 870-LT speaks for itself.

Paragraph 12: Petitioner submits that the Instructions for Signing Form 870-LT speak for themselves.

Paragraph 13: Petitioner submits that the Instructions for Signing Form 870-LT speak for themselves.

Paragraph 14: Petitioner submits that the Form 870-LT speaks for itself. It actually states: "The undersigned taxpayer(s) in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partner level determinations, *as set forth in the attached Schedule of Adjustments, plus any interest provided by law.*" Lin Decl., Ex. 3.

Paragraph 15: Petitioner agrees with the first sentence but denies the remainder. Petitioner submits that the "corrected report" referenced in the second sentence is a notice of computational adjustment dated March 12, 2012, and per the note on page 2, it "supersedes the report dated 2-10-2012." Lin Decl., Ex. 7, at 1-2. Petitioner notes that the documents cited do not support the second and third sentences.

Paragraph 17: Petitioner agrees with the first sentence but denies the remainder and submits that Ex. 8, Petitioner's Branerton response, speaks for itself.

Paragraphs 18 and 19: Petitioner can neither confirm nor deny due to a lack of information or knowledge.

## ARGUMENT

I.     **THERE IS NO GENUINE ISSUE OF MATERIAL FACT.**

A.     **Applicable Standards**

A party moving for summary judgment is initially responsible for "inform[ing] the court of the basis for its motion and to demonstrate the absence of a genuine issue of material fact." Krause v. Comm'r, 92 T.C. 1003, 1016 (1989); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The opposing party cannot simply negate the moving party's claims but must show specific facts evidencing the existence of a genuine issue for trial. Id., at 323-24. Tax Court Rule 121(d) clearly embodies this requirement by stating that once a motion for summary judgment has been made and supported as required by the Rules, "an adverse party may not rest upon the mere allegations or denials of his pleadings," and such party must "set forth *specific facts* showing that there is a genuine issue for trial." (Emphasis added.) See also Sundstrand Corp. v. Comm'r, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994); King v. Comm'r, 87 T.C. 1213, 1217 (1986). "Summary assertions and conclusory allegations are simply not enough evidence to raise a genuine issue of material

fact." Daniels v. Comm'r, T.C. Memo. 1994-591; see also Rauenhorst v.

Comm'r, 119 T.C. 157 (2002). The use of bare assertions by the opposing party

cannot establish an adequate defense to a motion for summary judgment. See

King, 83 T.C. at 1217 (holding that the IRS's bare allegation of a sham

transaction with nothing more is not an adequate defense to taxpayer's motion for

summary judgment).

### B. There is No Genuine Issue of Material Fact Regarding Petitioner As a Non-Resident Alien

As explained above, respondent repeatedly stated in eight Joint Status

Reports to the Court over the past three years that petitioner was a non-resident

alien. This was not an immaterial fact buried deep within the issues in dispute

nor (to use respondent's phrase) "a pluck[ing of] a concession from the status

reports (R. Mem. 4); instead, it was the central fact agreed to by respondent from

which all other issues emanated. It makes no difference that these status reports

were not captioned as "stipulations;" petitioner and the Court were entitled to rely

on respondent's repeated and consistent statement as a conceded fact. See, e.g.,

Williams v. Comm'r, T.C. Memo. 2011-227 (finding that a petitioner could not

repudiate the accuracy of a statement made in a status report).

This is particularly true in light of the lack of any contrary evidence

introduced by respondent. For instance, respondent relies on the *absence* of

evidence produced from the Canadian Government to assert that there must be a factual issue. Lin Decl. ¶ 18; R. Mem. 12, ¶ 19. Respondent further highlights his dearth of evidence by relying on "Treasury Enforcement Certification System" reports he received, which are so "inconclusive" regarding Mrs. Rawat's presence in the United States that respondent doesn't even submit them.[7] Lin Decl. ¶ 17; R. Mem. 12, ¶ 18. These are hardly the sort of "specific facts" to show a genuine issue for trial that Rule 121(d) and the Court's precedents contemplate. Rather than concede summary judgement after losing Grecian Magnesite, consistent with its prior representations to the Court and the lack of evidence to the contrary, respondent scrambled to begin late third-party discovery in the hope that it would identify any evidence that would represent some issue of material fact. That discovery has proven fruitless.

Moreover, respondent's late assertion of this new "issue" is inconsistent with an abundance of evidence in the record that Mrs. Rawat is a non-resident alien, as well as the long history of this proceeding. For example, the promissory note under which Mrs. Rawat received the income at issue (attached to Respondent's Answer, Ex. A) acknowledges the "Foreign Status" of the payee

---

[7]     Petitioner notes that the same "TECS" reports have been in the IRS's administrative file since at least 2014 and wonders why respondent would think they are any more conclusive now.

(herself), requiring receipt of a proper Form W-8BEN and referring to section 871, both of which apply only to non-resident aliens. See ¶¶ 4 (caption), 4.B., 4.D., 13. Similarly, the 2008 Form 1065 return of IV LLC reflects that it had a foreign partner (Schedule B, line 16), and on the attached Schedule K-1 identifies Mrs. Rawat as a partner and shows her address in India. Lin. Decl., Ex. 1, page 49 of 65. In addition, the Form 2848 appointing petitioner's representatives in August, 2010, also sets forth petitioner's address in India. See Lin Decl., Ex. 2.

There is a long administrative history of this matter,[8] and much other evidence indicating her non-resident alien status. For example, the IRS examination division considered the issue of petitioner's residency and abandoned the claim that she was not a non-resident alien. Thus, the "Corrected report" on Form 4549-A (dated March 16, 2012) sets forth Mrs. Rawat's India address; and the Form 886-A (Explanation of Items) attached to it states, "Ms. Indu Rawat ("Rawat"), a nonresident alien, was a partner in innovation Ventures LLC." See Lin Decl., Ex. 7, 7th unnumbered page.

---

[8]     Petitioner is well aware that this is a *de novo* proceeding and that under the rule of Greenberg's Express, Inc. v. Comm'r, 62 T.C. 324 (1974), respondent is not bound by the record below. It is, nevertheless, evidence why this issue has long been settled.

Docket No. 15340-16

In short, this purported issue has long been resolved, respondent has not

adduced any evidence (other than its claim that it is belatedly doing third-party

discovery but hasn't learned anything), and the evidence that does exist supports

Mrs. Rawat's non-resident alien status – including respondent's written

agreement to that point numerous times over at least three years. There is no

genuine issue of material fact as to Mrs. Rawat's residence.

### C. There is no Genuine Issue of Material Fact Regarding the Form 870-LT Agreement

Likewise, there is no issue of material fact regarding the Form 870-LT;

indeed there is no factual issue at all, just a legal question as to its significance.

Petitioner does not dispute that the parties executed a Form 870-LT that resolved

the Inventory Gain issue at the partnership level. The Inventory Gain issue is a

"partnership item,"[9] *i.e.*, whether section 751(a) applies to determine the character

of any of the gain recognized on the sale of a partnership interest, and if so in

what amount. In the Form 870-LT petitioner agreed that $6,523,175 of the sales

price of her partnership interest was allocable to inventory under section 751(a)

and that any gain attributable to the inventory would be characterized as ordinary

income.

---

[9]     Treas. Reg. § 301.6231(a)(3)-1(a)(1)(vi)(E).

However, in executing the Form 870-LT, petitioner did not agree that she was subject to tax on such ordinary income, nor did she agree to a deficiency, as defined by section 6211. Rather, the Form 870-LT provides that respondent can assess and collect the amount of *"any deficiency attributable to partner level determinations, as set forth in the attached Schedule of Adjustments . . . ."*

There was no attached Schedule of Adjustments setting forth the amount of deficiency attributable to *partner-level determinations*. See Lin Decl., Ex. 3; Petition, ¶¶ 5.x to 5.bb. No deficiency was set forth at all, even assuming that the unsigned, December 15, 2010 Form 886-A issued to Innovation Ventures was in fact attached to the Form 870-LT. See Lin Decl., Ex. 4. All that the Form 886-A reflected was a partnership-level adjustment – an allocation of $6,523,176 of ordinary income – to petitioner based on the fair market value of her 29.2% share of inventory at the time of her sale of her partnership interest, *i.e.*, the Inventory Gain. See Lin Decl., Ex. 4; Petition, ¶¶ 5.x to 5.bb (explaining that the Schedule of Adjustments attached to the Form 870-LT did not reflect any partner-level determinations).

Thus, the only item to which petitioner could be bound is the partnership-level adjustment of a partnership item. See IRC § 6224(c); Lin. Decl., Ex. 3; Petition, ¶¶ 5.x to 5.bb. By its terms, and as a matter of law, the Form 870-LT

only binds petitioner to its specific terms and any computations that may be

incorporated by reference in a Schedule of Adjustments. Since no Schedule of

Adjustments reflecting any partner-level determinations or any tax liability was

attached to the Form 870-LT, the unsigned Form 886-A only reflected her share

of partnership inventory. Whether the agreed adjustments resulted in a deficiency

depended on follow-on partner-level determinations by the IRS, such as for

example, whether petitioner was a non-resident alien or whether petitioner had

other deductions or tax attributes.

Respondent computed petitioner's tax based on the Form 870-LT

partnership-level adjustment and issued a Notice of Computational Adjustment

dated February 10, 2012. Lin Decl., Ex. 6. A second "corrected" Notice of

Computational Adjustment, dated March 12, 2012, superseded the February 10,

2012 notice. Lin Decl., Ex. 7. On March 19, 2012, respondent directly assessed

the tax pursuant to the Notice of Computational Adjustment. Lin Decl., Ex. 7.

The Code unambiguously allows partners to challenge computational adjustments

assessed in connection with settlement agreements. Specifically, section

6230(c)(1)(A)(ii) provides that a partner may file a claim for refund on the

grounds that the Secretary erroneously computed any computational adjustment

necessary to apply a settlement to the partner. Section 6230(c)(1)(C) further

provides that a partner may file a claim for refund on the grounds that the Secretary erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item. Accordingly, as a matter of law, the Form 870-LT does not impose a final tax liability on a partner.

Respondent's argument to the contrary – that there is a genuine issue of fact regarding the Form 870-LT – is unavailing, and in any event, irrelevant. Petitioner agreed to the partnership item adjustment and that a portion of the gain recognized by petitioner on her sale of her partnership interest was attributable to inventory, which under section 751 should be characterized as gain taxed at ordinary rates. What petitioner disagrees with are respondent's follow-on determinations of partner-level items, including (without limitation) his determination that petitioner is liable for tax on the section 751(a) gain that was the subject of the Form 870-LT. Such determinations are beyond the scope of the Form 870-LT.

Simply put, there is no question of fact concerning whether petitioner and respondent previously agreed to the partnership-level adjustment in the Form 870-LT regarding the Inventory Gain issue, and the Court should rule on petitioner's motion for summary judgment.[10]

---

[10]     Moreover, while respondent claims that "[t]he proper interpretation of

## II. THE INVENTORY GAIN IS NOT SUBJECT TO U.S. TAXATION UNDER GRECIAN MAGNESITE.

Respondent recognizes the most important point in petitioner's motion, namely, that like the taxpayer in Grecian Magnesite, Mrs. Rawat sold a *partnership interest, not inventory.* R. Mem. 24-25. While a portion of the gain on her sale of a partnership interest was attributable to inventory and thus taxable (if at all) at ordinary rates, she did not sell inventory. She sold a partnership interest.

Respondent also properly identifies the rationale behind section 751: Congress enacted this provision "to prevent the conversion of potential ordinary income into capital gain by virtue of a transfer of a partnership interest." R. Mem. 27-28; H.R. Rep. No. 1337, 83d Cong., 2d Sess. 70-71 (1954); S. Rep. No. 1622, 83d Cong., 2d Sess. 98 (1954). But nowhere in section 751, its legislative history, or respondent's brief (R. Mem. 28-29) is there any hint that Congress also intended section 751(a) to change the source (foreign or domestic) of the gain that the provision affects. Rather, section 751 affects only the *character* of the gain,

---

Form 870-LT is an issue of fact for the Court to resolve," respondent's unsupported statement is contrary to case law. R. Mem. 23. The "[i]nterpretation of a contract and the determination of ambiguity are questions of law, which this Court reviews de novo." F.D.I.C. v. McFarland, 33 F.3d 532 (5th Cir. 1994); see also Smith v. U.S., 850 F.2d 242 (5th Cir. 1988) ("A closing agreement is interpreted under ordinary principles of contract law.").

subjecting it to ordinary income rather than capital gain rates, not its source.

Even the relevant regulation is captioned, "*Character* of amount realized." Treas.

Reg. § 1.751-1(a)(1) (emphasis added).[11] Importantly, respondent never contests

petitioner's claim (Pet. Mem. 11) that "Section 751 is not a sourcing rule."

Respondent asserts that petitioner "is not required to actually sell inventory

for the Inventory Gain to be sourced separately and differently from Non-

Inventory Gain." R. Mem. 29. Respondent, however, notably fails to cite any

law for this proposition. Rather, section 751(a)'s reference "to property other

than a capital asset," along with the legislative history behind section 751(a),

make it abundantly clear that the provision was intended to operate only as an

income classification provision and not as an income sourcing rule. What

---

[11]    Respondent incorrectly cites the next paragraph of this regulation, Treas.
Reg. § 1.751-1(a)(2). See R. Mem. 29. This is misleading for two reasons. First,
that paragraph is about how the amount of gain or loss is "determined" or
calculated, which is not at issue here. Second, respondent asserts that the
paragraph shows there is a "deemed disposition" of the inventory held by the
partnership, later importing the "deemed disposition" concept into the sourcing
discussion. R. Mem. 29 ("a deemed sale of inventory is *explicit* in the language
of section 751(a)") (emphasis added), 31 ("petitioner is deemed to be engaged in
the business of the partnership"). But neither section 751 nor Treas. Reg. §
1.751-1(a)(2) ever uses that term. It is true that the gain on sale of the partnership
interest is disaggregated for characterization purposes, but there is no statutory
evidence it is disaggregated for all purposes under the Code, include sourcing. In
fact, section 751(d) is clear that this disaggregation is only for the purpose of
subchapter K of the Code.

petitioner sold is still a partnership interest, subject only to sourcing under the general rules of sections 865(a) and (b).

The cases cited by respondent are inapposite. In <u>George Edward Quick Trust v. Comm'r</u>, 54 T.C. 1336 (1970), <u>aff'd per curiam,</u> 444 F.2d 90 (8th Cir. 1971), the issue was the basis of a decedent partner's interest in partnership assets. The fact that one such asset included unrealized receivables, treated as ordinary income (and relatedly as income in respect of a decedent) under section 751, was incidental to the question, which was answered by the partnership basis provisions themselves (specifically, section 742's incorporation by reference of the general basis rules set forth in section 1011 and following).[12] Needless to say, subchapter K does not include any sourcing rules. Moreover, section 751(d) is clear that inventory as defined in section 751 is only for purposes of subchapter K and not for purposes of sourcing. The other case respondent cites, <u>Woodhall v. Comm'r</u>, T.C. Memo. 1969-279, <u>aff'd</u>, 454 F.2d 226 (9th Cir. 1972), actually supports petitioner's position, for all it holds is that the *character* of the gain at issue is ordinary under section 751. Neither case stands for the proposition to

---

[12]     Judge Tannenwald also pointedly noted, by contrast, that section 751 is in a subpart of subchapter K of the Code labeled, "Provisions Common to Other Subparts," *i.e.*, that it applies only for purposes of subchapter K, not the entire Code.  54 T.C. at 1343.

which respondent wishes to stretch them, namely, that "the principles" of these cases apply "to hold that the Inventory Gain is distinct from ownership in the partnership interest itself, and that separate treatment of the Inventory Gain under section 751 extends to section 865." R. Mem. 30-31. Both cases also pre-date by decades this Court's decision in Grecian Magnesite, which rejected the propositions that respondent continues to advance.

Respondent's lengthy detour into the rules under sections 865, 871, 875, etc. (R. Mem. 31-38) is thus essentially irrelevant, because it assumes petitioner sold inventory.[13] Petitioner agrees that if she had actually sold inventory of her own trade or business in the United States, then the proceeds would be sourced to the U.S. under the "inventory" exception of section 865(b).[14] But she did not.

---

[13]    Along the way respondent makes the subtle rhetorical switch from discussing a "deemed" sale of inventory (which as noted above is itself a stretch of section 751's language) to describing an actual sale of inventory. See R. Mem. 31 ("petitioner is deemed to be engaged in the business of the partnership (including the business of selling inventory)"), 32 (looking for sourcing rules for "the sale of inventory property" and "the sale of inventory"), 33 (speaking of "inventory sales"), 34 (discussing location of "title to the inventory").

[14]    There remains a question, which was much discussed at the administrative level and preserved in this litigation by petitioner (see Petition, ¶¶ 4.b and 4.d), concerning the extent to which the "Inventory Gain" portion of what petitioner received is properly recognized in the years at issue under the installment sale rules of sections 453 and 453A. Because petitioner contends that the Inventory Gain is not U.S. source income at all, this issue remains open only if respondent prevails on petitioner's Motion.

She sold a partnership interest. Respondent is fighting a straw man of his own creation.

As this Court properly held in Grecian Magnesite, section 751 applies a "look through" rule or aggregation concept to a portion of the gain on the sale of a partnership interest. But it does so only for purposes of the character of that income, not its source. As petitioner previously argued, P. Mem.1, 6-7, 11 – and respondent conspicuously fails to contradict – both Grecian Magnesite opinions find that a non-resident alien taxpayer does not conduct a U.S. trade or business merely by making a passive investment in a U.S. partnership, nor by selling that partnership interest, even if that partnership conducts a U.S. trade or business. See 926 F.3d at 826-27; 149 T.C. at 90-92.

Congress appears to have confirmed this with its response to Grecian Magnesite in new Code section 864(c)(8) (enacted in the Tax Cuts and Jobs Act of 2017, P.L. No. 115-97, § 13501(a)(1)). In the new provision, Congress specifically states, "gain or loss on the sale or exchange of all *(or any portion of)*" a partnership interest shall be treated as effectively connected income and thus sourced to the United States. The balance of the provision then essentially adopts and codifies respondent's position in Grecian Magnesite, Rev. Rul. 91-32, 1991-1 C.B. 107, and this case. Moreover, in the legislative history, Congress

specifically noted that section 751(a) is merely a character rule, not a sourcing rule.[15]  Prospectively, in light of new Code section 864(c)(8), Inventory Gain realized by a non-resident alien will be subject to U.S. sourcing and taxation; but under <u>Grecian Magnesite</u> and prior to section 864(c)(8)'s implementation, petitioner's position regarding the Inventory Gain is fully supported by the law.

Respondent appears mostly engaged in an effort to relitigate his loss in <u>Grecian Magnesite</u>.  But section 865(b) expressly and unambiguously limits its application to "the sale of [actual] *inventory property*"; it does not extend to the sale of partnership interests, even if part of the value of the interest is "attributable to" inventory property and characterized as ordinary income, nor to any other personal property.  Again, the legislative history behind section 865(b) explains why.  Prior to the 1986 reform of the Code, the source of income from a sale of any type of personal property (whether inventory or not) was determined by where title passed ("the title passage rule"), which was often abused by taxpayers – both U.S. and foreign – to generate foreign-source income and avoid U.S. taxation.  In response, in 1986 Congress enacted the residence-of-seller rule.  At

---

[15]  "The *character* (as capital or ordinary) of partnership items passes through to the partners as if the items were realized directly by the partners." H. Conf. Rep. 115-466 at 509.  Further, the money and property received that "represents the partner's share of ordinary income-producing assets of the partnerships give rise to ordinary income rather than capital gain." <u>Id.</u> (specifically citing §751(a)).

the same time, however, Congress was concerned that a complete repeal of the

title passage rule (including with respect to sales of inventory property) would

have a detrimental effect on U.S. businesses competing in international

commerce, subjecting a U.S. business to U.S. taxation whenever selling inventory

property anywhere in the world. H.R. 3838, 99th Cong. P.L. 99-514, General

Explanation of the Tax Reform Act of 1986, Joint Committee on Taxation, p.

918.

The section 865(b) exception to the residence-of-seller rule was therefore

intended to apply only to U.S. businesses actually selling inventory property

outside the U.S. in their ordinary course of trade or business. Against this

backdrop, the gain from a sale of a partnership interest could similarly be subject

to the section 865(b) title passage rule in only one circumstance—*i.e.*, if the seller

is a *U.S. taxpayer* who is engaged in the trade or business of buying and selling

partnership interests, and the partnership interest that such taxpayer sells is part of

her inventory of partnership interests. Clearly, this is not the case for petitioner:

her interest in IV LLC was, in her hands, merely an item of personal property (as

recognized under Grecian Magnesite), and not an item of inventory (as it would

be in the hands of, say, a partnership interest broker-dealer).

## CONCLUSION

The Court should therefore grant Petitioner's Motion for Summary

Judgment on both issues, determining that:

1)    Petitioner has no deficiency for 2008 attributable to the Non-

Inventory Gain;

2)    Petitioner is entitled to a refund of amounts paid with respect to 2008

attributable to the Inventory Gain.

Dated:  April 3, 2020                Respectfully submitted,

CHRISTOPHER S. RIZEK
Tax Court Bar No. RC0369
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Suite 1100
Washington, DC 20005
Telephone: (202) 862-8852
crizek@capdale.com

NATHAN J. HOCHMAN
Tax Court Bar No. HN0101
Browne George Ross LLP
2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067
Telephone: (424) 202-5559
nhochman@bgrfirm.com

Counsel for Petitioner

US TAX COURT
RECEIVED

APR 17 2020
8:23 PM

US TAX COURT
e L O D G E D

APR 17 2020

CLC

US TAX COURT
eFILED

APR 20 2020

INDU RAWAT,

        Petitioner,

       v.

COMMISSIONER OF INTERNAL REVENUE,

        Respondent

ELECTRONICALLY FILED

Docket No.  15340-16

# RESPONDENT'S FIRST AMENDED RESPONSE TO MOTION FOR SUMMARY JUDGMENT

**SERVED Apr 20 2020**

A286

**UNITED STATES TAX COURT**

INDU RAWAT,               )
                                   )
                 Petitioner,  )
                                   )
                 v.           )  Docket No.  15340-16
                                   )
COMMISSIONER OF INTERNAL REVENUE,  )  Filed Electronically
                                 )
               Respondent.  )  Judge David Gustafson

**FIRST AMENDED RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

1. Petitioner moved for summary judgment on December 20, 2019. Pursuant to the Court's Order dated January 28, 2020, the response to petitioner's motion for summary judgment is due on March 2, 2020.

2. Concurrently herewith, respondent is filing an amended memorandum in support of this response to petitioner's motion for summary judgment ("Respondent's Memorandum"). Respondent previously filed on March 2, 2020 the Declaration of S. Katy Lin ("Lin Declaration") in support of the response to petitioner's motion for summary judgment.

3. A petition for redetermination of partnership items for Innovation Ventures for the 2009-2014 tax years is currently pending before the Court at Docket No. 5741-19. <u>Innovation Ventures, LLC, Manoj Bhargava, Tax Matters Partner v. Commissioner</u>, Docket No. 5741-19 ("<u>Innovation Ventures</u>").

4. In the <u>Innovation Ventures</u> case, respondent has taken the position that petitioner's purported sale of petitioner's

partnership interest in Innovation Ventures at issue in the
current case should not be given effect for U.S. federal tax
purposes for several reasons, including that it lacked economic
substance.

5.  In light of respondent's foregoing position in
Innovation Ventures, respondent now considers and represents to
the Court that respondent's positions in this case, which assume
petitioner's purported sale of petitioner's partnership interest
in Innovation Ventures was bona fide, are protective (whipsaw)
positions that respondent will abandon if the Court adopts
respondent's position in Innovation Ventures that the sale of
petitioner's partnership interest should not be given effect for
U.S. federal tax purposes.  Accordingly, respondent requests
that the Court defer resolution of the pending summary judgment
motion until resolution of the Innovation Ventures case.

6.  As explained in Respondent's Memorandum, there are
unresolved issues of material fact that require the Court to
deny the pending motion for summary judgment.  Respondent's
Memorandum also states the correct legal framework under which
petitioner's motion for summary judgment should be analyzed,
once the issues of fact have been resolved.

7.  In many circumstances a non-resident alien will be
required to recognize that portion of gain from the sale of an

interest in a U.S. partnership that is attributable to a share
of inventory items.  The facts needed to make that determination
in this case are missing from the record.

    8.  Accordingly, petitioner's motion for summary judgment
should be denied.

                                  DRITA TONUZI
                                  Deputy Chief Counsel
                                  Internal Revenue Service


        4/17/2020                 /s/ H. Barton Thomas
Date:_____      By: _____
                                  H. BARTON THOMAS
                                  Special Trial Attorney
                                  (Large Business &
                                  International)
                                  Tax Court Bar No. TH0204
                                  200 West Adams St., # 2400
                                  Chicago, IL 60606
                                  Telephone: (312) 368-8155
                                  barton.thomas@
                                    irscounsel.treas.gov

                                  S. KATY LIN
                                  Senior Attorney
                                  (Large Business &
                                  International)
                                  Tax Court Bar No. LS0403
                                  500 Woodward Avenue
                                  Detroit, MI  48226
                                  Telephone:  (313) 628-3116
                                  s.katy.lin@irscounsel.treas.gov

OF COUNSEL:
ROBIN L. GREENHOUSE
Division Counsel
(Large Business & International)
WILLIAM G. MERKLE
Area Counsel
JAMES M. CASCINO
Deputy Area Counsel

US TAX COURT
RECEIVED

JUL 24 2020

PA

US TAX COURT
FILED

JUL 24 2020

INDU RAWAT,

       Petitioner,

           PAPER FILED

      v.

           Docket No.   15340-16

COMMISSIONER OF INTERNAL REVENUE,

       Respondent

# RESPONDENT'S REPORT

**SERVED Aug 17 2020**

A290



*Assigned*
*Gustafson*



OFFICE OF THE ~~TAX COURT RECEIVED~~

JUL 24 2020

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
OFFICE OF DIVISION COUNSEL
LARGE BUSINESS & INTERNATIONAL
200 WEST ADAMS STREET
SUITE 2300
CHICAGO, ILLINOIS 60606

July 23, 2020

The Honorable David Gustafson
United States Tax Court
400 2nd Street, N.W.
Washington, DC 20217

      Reference: <u>Indu Rawat v. Commissioner of Internal Revenue</u>
                 <u>Docket No. 15340-16</u>

Dear Judge Gustafson:

      On December 20, 2019, petitioner Indu Rawat filed a motion for summary judgment. On March 2, 2020, and April 20, 2020, respectively, respondent filed a response and first amended response thereto. We wish to advise the Court that respondent no longer contends that petitioner's residency is a material issue of fact that would preclude an order for summary judgment from issuing in her favor. Accordingly, Question 2, as framed by respondent's memorandum (and first amended memorandum) in support of his response to petitioner's motion for summary judgment (docket entries 41 and 51) is now moot. Respondent continues to object to Ms. Rawat's motion for the other reasons expressed in his memorandum.

      Counsel for respondent has contacted counsel for petitioner and expects to file a stipulation in accordance with the concession regarding Ms. Rawat's residency as soon as practicable.

      Should you have any questions, please contact the undersigned at (312) 368-8155.

                     Very truly yours,

                     H. Barton Thomas
                     Special Trial Attorney
                     T.C. Bar No. TH0204

cc:   Christopher Rizek, Esq.

ups.com for details on our privacy practices.

15 340-16

H BARTON THOMAS
312-368-8155
INTERNAL REVENUE SERVICE
200 W ADAMS ST
CHICAGO 1L 606065231

**0.5 LBS    LTR        1 OF 1**

**SHIP TO:**
THE HONORABLE DAVID GUSTAFSON
U.S. TAX COURT
400 2ND STREET, N.W.
**WASHINGTON  DC 20217-0001**





MD 201 9-78

**UPS NEXT DAY AIR**

TRACKING #: 1Z E60 967 01 9592 1821

**1**



BILLING: P/P

BOD: 9388

CS 22.0.11.    WNTNV50 31.0A 07/2020

UPS Ground
UPS Standard
UPS 3 Day Select®

https://www.campusship.ups.com/cship/create?ActionOriginPair=default_PrintWindowPage&key=labelWindow&type=html&loc=en_US&instr=A&do...    1/1

a Letter rate, UPS Express Envelopes may only contain
urgent documents, and/or electronic media, and must
ess. UPS Express Envelopes containing items other than
weighing more than 8 oz. will be billed by weight.

A292

US TAX COURT
RECEIVED

AUG 18 2020
3:40 PM

PA



US TAX COURT
eFILED

AUG 18 2020

INDU RAWAT,

        Petitioner,

              v.

COMMISSIONER OF INTERNAL REVENUE,

        Respondent

ELECTRONICALLY FILED

Docket No.   15340-16

# JOINT STIPULATION OF SETTLED ISSUES

## UNITED STATES TAX COURT

| | | |
|---|---|---|
| INDU RAWAT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Docket No. 15340-16 |
| | ) | |
| COMMISSIONER OF INTERNAL REVENUE, | ) | Filed Electronically |
| | ) | |
| Respondent. | ) | Judge David Gustafson |

## STIPULATION OF SETTLED ISSUES

For purposes of this case, the following issues are hereby settled in accordance with this stipulation of settled issues:

1.  The petition in this case presents two primary issues for resolution: (1) whether petitioner is subject to tax on that portion of the gain on a sale of her interest in Innovation Ventures, LLC, a U.S. partnership, that is attributable to her share of the value of partnership inventory items ("Inventory Gain") and (2) whether petitioner is subject to tax on the remaining balance of the gain on the sale of her partnership interest ("Non-Inventory Gain").

2.  Respondent concedes in this stipulation of settled issues that petitioner is not subject to tax on the Non-Inventory Gain.

A294

3.     In the Notice of Deficiency giving rise to this case, respondent determined deficiencies and additions to tax in the following amounts:

| Year | Deficiency | Additions to Tax | |
|------|-----------|------------------|---|
| 2008 | $3,833,820 | $958,454,99 | I.R.C. § 6651(a)(1) |
| 2009 | $2,555,880 | $575,073.00 | I.R.C. § 6651(a)(1) |
| | | $638,970,00 | § 6651(a)(2) |
| | | $46,768.98 | § 6654 |

4.     The deficiencies and additions to tax in the Notice of Deficiency are all attributable to the Non-Inventory Gain issue. Respondent concedes the Non-Inventory Gain issue, and therefore also concedes that petitioner is not liable for the deficiencies or additions to tax determined in the Notice of Deficiency, pursuant to Grecian Magnesite, Industrial & Shipping Co., SA v. Commissioner of Internal Revenue, 149 T.C. 63 (2017), aff'd, 926 F.3d 819 (D.C. Cir. 2019).

5.     This stipulation of settled issues does not resolve the Inventory Gain issue, which remains at issue because petitioner invoked the Court's overpayment jurisdiction in her petition.

Respectfully submitted,

                         DRITA TONUZI
                         Deputy Chief Counsel
                         Internal Revenue Service


                                   /s/ H. Barton Thomas
                      By:_____
NATHAN J. HOCHMAN              H. BARTON THOMAS
Tax Court Bar No. HN0101       Special Trial Attorney
Browne George Ross LLP         (Large Business & International)
2121 Avenue of the Stars       Tax Court Bar No. TH0204
Suite 2800                     200 West Adams St., #2400
Los Angeles, California 90067  Chicago, IL 60606
Telephone: (424) 202-5559      Telephone: (312) 368-8155
nhochman@bgrfirm.com           barton.thomas@irscounsel.treas.gov

CHRISTOPHER S. RIZEK           Date:  August 18, 2020
Tax Court Bar No. RC0369
Caplin & Drysdale, Chartered   Counsel for Respondent
One Thomas Circle, N.W.
Suite 1100
Washington, DC 20005
Telephone: (202) 862-8852
crizek@capdale.com


Date:  August 18, 2020

Counsel for Petitioner

Indu Rawat,            )
                             )
          Petitioner      )
                             )
            v.              ) Docket No.    15340-16.
                             )
Commissioner of Internal Revenue,    )
                             )
          Respondent      )

## O R D E R

This case involves the tax consequences for a nonresident alien individual upon the sale of her interest in a U.S. partnership when a portion of the sale proceeds is attributable to inventory items of the partnership. Now pending before the Court is petitioner's motion for summary judgment (Doc. 32). The motion asserts two issues--first, a so-called "Non-Inventory Gain issue" that respondent now concedes (see Docs. 54-55), and second, a so-called "Inventory Gain" issue that we address here. Except to the extent of respondent's concession, we will deny petitioner's motion.

### Background

Consistent with Rule 121 (discussed below), the facts pertinent to petitioner's motion are those shown by petitioner and not disputed by respondent. Some numbers below are rounded.

#### Petitioner and Innovation Ventures, LLC

Petitioner, Indu Rawat, was a Canadian citizen and was a nonresident alien individual for U.S. Federal tax purposes during 2008 and 2009. Petitioner filed U.S. Federal income tax returns as a nonresident alien for the 2000 through 2007 tax years. Petitioner did not file tax returns for the 2008 or 2009 tax years.

Innovation Ventures, LLC ("Innovation Ventures"), is a U.S. business that manufactures and sells popular consumer products including 5-Hour Energy

**Served 07/20/21**

A297

drinks. Innovation Ventures was treated as a partnership for federal tax purposes during all relevant years.

Between December 15, 2000, and January 1, 2007, petitioner acquired 300,000 Class A membership units (approximately a 30% interest) in Innovation Ventures. On December 28, 2007, petitioner contributed 5,000 of her membership units to Rural India Supporting Trust, and on January 4, 2008, petitioner executed a note for the sale of her remaining 295,000 units (an approximately 29% interest) to Manoj Bhargava for $438 million. The note provided for interest-only payments to petitioner until 2028, when the note would mature.

At the time the note was executed, Innovation Ventures had inventory items with a basis of $6.4 million, which it held for future sale. Innovation Ventures later sold those inventory items for a profit of $22.4 million, and petitioner's share of income attributable to the inventory was agreed to be $6.5 million. Thus, of the $438 million sales price paid to petitioner (by the note from Mr. Bhargava) for her interest in Innovation Ventures, $6.5 million was allocable to inventory.

Partnership examination and Form 5701

The IRS conducted an examination of Innovation Ventures for the 2007 and 2008 tax years. In December 2010 the IRS issued a Form 5701, "Notice of Proposed Adjustment" (Doc. 40, Ex. 4), to Mr. Bhargava (Innovation Ventures's tax matters partner ("TMP")) and Gerald Stein (petitioner's representative under a Form 2848, "Power of Attorney and Declaration of Representative", which she executed in August 2010). The Form 5701 proposed a $6.5 million adjustment to petitioner's income for 2008 arising from the Inventory Gain issue. The form states the "Account or Return Line" as "Form K-1 - Line 11(f)".[1] Under "Reasons for Proposed Adjustment", the Form 5701 states "See attached Form 886-A".

---

[1]The 2008 version of "Schedule K-1 (Form 1065)" had a Box 11 entitled "Other income (loss)". The instructions for Box 11 included codes A through F with directions for reporting specific items as "other income". "Code F" for Line 11 stated "[a]mounts with code F are other items of income, gain, or loss not included in boxes 1 through 10 or reported in box 11 using codes A through E"; and the instructions indicated that the partnership should provide a description and the amount of the partner's share for each of these items.

Form 886-A

The Form 886-A, "Explanation of Items", that is attached to the Form 5701 provides in part:

**Facts:**
On January 4, 2008, Ms. Indu Rawat sold her 29.2% interest in Innovation Ventures to Mr. Manoj Bhargava for $438,075,000. Ms. Rawat received an interest only note for $438,075,000 that matures in 2028 from Mr. Bhargava. The interest rate on the note is 4.39%. At the time of Ms. Rawat's sale, Innovation Ventures' [sic] had inventory of $6,426,056. This inventory was later sold for a profit of $22,339,644. Ms. Rawat's 29.2% of this profit is $6,523,176. IRC 751 requires the seller to recognize ordinary income to the extent of this inventory's fair market value exceeds its basis. Thus, Ms. Rawat must recognize ordinary income in the amount of $6,523,176. [Emphasis added.]

**Law and Argument:**
IRC 751 provides that the amount of money, or the fair market value of any property, received by a transferor partner in exchange for all or part of his interest in the partnership attributable to...(2) inventory items of the partnership, shall be considered as an amount realized from the sale or exchange of property other than a capital asset. Based on the fair market value of Ms. Rawat's 29.2% share of the inventory ($6,426,056) at the time of sale, she must recognize ordinary income in the amount of $6,523,176. [Emphasis added.]

**Taxpayer's Position:**
The taxpayer [presumably Innovation Ventures] is in agreement with this adjustment.

Agreement on Form 870-LT

Consistent with the Form 5701, petitioner later signed and transmitted to the IRS a Form 870-LT, "Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items". (Doc. 40, Ex. 3; emphasis added.) The Form 870-LT offered terms to settle contested items at the partnership-level and the partner-level, as follows.

A299

Settlement of partnership items in Part I

The Form 870-LT has two pages and consists of two parts: Part I (on page 1)--entitled "Offer of Agreement to Partnership Items * * *"--begins as follows (emphasis added):

> Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached Schedule of Adjustments.

Part I refers to the attached Schedule of Adjustments, and it provides a signature line for petitioner to agree to the partnership adjustments.

Settlement of partner-level items in Part II

Part II of the Form 870-LT (on page 2)--entitled "Offer of Agreement for Affected Items * * *"--similarly begins as follows (emphasis added):

> Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partner level determinations (affected items) as shown on the attached schedule of adjustments.

Part II also refers to the attached Schedule of Adjustments; and it provides another signature line for petitioner to agree to the partner-level adjustments.

Each part references sections 6224(c) and 7121 and the Commissioner's authority to agree with taxpayers to conclusively settle the items as set out in the respective parts of the Form 870-LT and the attached Schedule of Adjustments.

Schedule of Adjustments and Form 886-A

The attached Schedule of Adjustments (incorporated into both Part I and Part II of the Form 870-LT) includes, under "Other income (loss)", an adjustment of $6,523,176.00. The "Remarks" section of the Schedule of Adjustment explains:

A300

Other income relates to unrealized receivables[2] as defined under
Section 751. For additional information please refer to Form 886-A.

We infer that the Form 886-A attached to the Form 870-LT was the same
Form 886-A that had been attached to the earlier Form 5701. As quoted above, the
Form 886-A twice states that Ms. Rawat "must recognize ordinary income in the
amount of $6,523,176."

The finality of Form 870-LT

Each of the two parts of Form 870-LT states that, when both parties sign the
form,"[t]his is a binding settlement". That is, when they sign Part I, they "agree to
the determination of partnership items"; and when they sign Part II, they "agree to
the determination of partner level determinations (affected items)". (Emphasis
added.) Finally, each part explains the finality of the agreement as follows:

> [Part I] The undersigned taxpayer(s), in accordance with IRC section
> 6224(b) and 6213(d), also waive(s) the restrictions provided by IRC
> sections 6225(a) and 6213(a) and consent(s) to the assessment and
> collection of any deficiency attributable to partnership items,
> penalties, additions to tax, and additional amounts that relate to
> partnership items, as set forth in the attached Schedule of
> Adjustments, plus any interest provided by law....
>
> This is a binding settlement only when you sign this form, it is
> returned to us, and we sign on behalf of the Commissioner....
>
> [Part II] The undersigned taxpayer(s), in accordance with IRC section
> 6224(b) and 6213(d), also waive the restrictions provided by IRC
> sections 6225(a) and 6213(a) and consent to the assessment and
> collection of any deficiency attributable to partner level
> determinations, as set forth in the attached Schedule of Adjustments,
> plus any interest provided by law. This is a binding settlement only
> when you sign this form, return it to us and we sign on behalf of the
> Commissioner.

---

[2]Respondent plausibly explains (and we assume) that the reference in the
"Remarks" to "unrealized receivables" is a "scrivener's error" that should instead
refer to inventory.

If Part II of this agreement form is signed for the Commissioner, the treatment under this agreement of the specified affected items and the partner level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of affected items or partner level determinations as to penalties, additions to tax, and additional amounts, or a refund or credit based on any change in the treatment of these affected items or partner level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

In February 2011 petitioner signed both parts of the Form 870-LT; and in April 2011 the IRS accepted and countersigned both parts.

## Notice of Computational Adjustment

In February 2012 the IRS issued to petitioner a Notice of Computational Adjustment for her 2008 tax year. (Doc. 40, Ex. 6.) The text of the notice indicates that "[t]he adjustments are being made as a result of" several possible alternatives, including "an agreement you signed", and a copy of the Form 870-LT agreement was attached. The notice included a Form 4549-A, "Income Tax Discrepancy Adjustments", that listed a $6.5 million increase in income for "Sch E - Inc/Loss - Partnership - Innovation Ventures LLC" (i.e., the Inventory Gain issue settled under the Form 870-LT) and a tax liability of $2.3 million. Additionally, the IRS determined nearly $1 million in additions to tax under section 6651(a)(1) and (2) and section 6654.

In March 2012 the IRS assessed these amounts (though they were later reduced to reflect a $1.9 million charitable contribution deduction carryover from the prior year).

## Statutory notice of deficiency and petition

In May 2016 the IRS issued to petitioner a statutory notice of deficiency ("SNOD") for her 2008 and 2009 tax years. (Doc. 1, Ex. A.) The SNOD reflected the previously assessed amounts for 2008 and determined additional income attributable to the installment obligation (Mr. Bhargava's note for the sale of the partnership interest) under section 453A(c)(2)(B) for each of 2008 and 2009. The

A302

SNOD indicated a $3.8 million increase in income for 2008 and $2.6 million in income for 2009. The deficiencies in tax in the SNOD that resulted from that additional income totaled $4.8 million in tax and additions for 2008 and $3.8 million for 2009. (These amounts relate to the Non-Inventory Gain Issue that the Commissioner now concedes.)

In June 2016, petitioner paid $2.9 million in tax, interest, and additions to tax attributable to the initial assessments for the 2008 tax year (i.e., the computational adjustments for the Inventory Gain issue). In July 2016, petitioner filed her petition with this Court in order to challenge the items in the SNOD and to invoke the Court's overpayment jurisdiction under section 6512(b) with respect to her $2.9 million payment for the computational adjustment.[3]

Petitioner's motion for summary judgment

Petitioner's motion for summary judgment (Docs. 32, 33) contends that our decision in Grecian Magnesite Mining, Industrial & Shipping Co., SA v. Commissioner, 149 T.C. No. 3 (2017), aff'd, 926 F.3d 819 (D.C. Cir. 2019), effectively resolves both issues in this case, including in particular the Inventory Gain issue now before us. Petitioner's general position is that under Grecian Magnesite a nonresident alien individual is not subject to U.S. income tax on the sale of the individual's interest in a U.S. partnership because those gains would be sourced outside the U.S. under the general rule of section 865(a)(2), irrespective of whether any portion of the gains would be attributable to inventory items under section 751(a). Petitioner contends that, under the rationale of this Court's decision in Grecian Magnesite, her nonresident status resolves both the inventory gain and the non-inventory gain issues in her favor. Petitioner's motion did not address the Form 870-LT.

Respondent's response

Respondent did not file a cross-motion for summary judgment but opposes petitioner's motion on various grounds. As an initial matter (and addressed in this

---

[3]The SNOD states that petitioner filed a claim for refund on May 24 and August 8, 2012, and that the issue raised in her claim was "[t]he propriety of an assessment using TEFRA procedures". Unless we have overlooked it, the refund claim or claims do not appear in the record of this case. It would seem appropriate that the refund claim on which our overpayment jurisdiction presumably depends would appear in the Court's record.

order), respondent contends that the Form 870-LT executed by the parties resolves the disputed inventory gain issue because both parties signed both parts of the Form 870-LT and thereby agreed to settle all partnership <u>and partner-level</u> items, including petitioner's recognition of $6.5 million of ordinary income attributable to the inventory gains. Respondent also disputes the merits of petitioner's motion on grounds that we need not address here.

## Petitioner's reply

In reply to respondent's argument concerning the Form 870-LT, petitioner does not contend that either party failed to execute the agreement or that the agreement was not binding with respect to partnership-level determinations. Petitioner contends that the agreement did not resolve any partner-level items because neither the Schedule of Adjustments nor the Form 886-A reflected any partner-level determinations that could have given rise to a deficiency. (Petitioner seems to question whether the Form 886-A was indeed attached to the Form 870-LT, but petitioner contends that even if the Form 886-A was attached, "[a]ll that the Form 886-A reflected was a partnership-level adjustment--an allocation of $6,523,176 of ordinary income--to petitioner based on the fair market value of her 29.2% share of inventory at the time of her sale of her partnership interest, *i.e.*, the Inventory Gain.") Petitioner contends that respondent made a computational adjustment to petitioner's income based on the partnership adjustments agreed to under the Form 870-LT, but that petitioner is permissibly challenging the computational adjustments under section 6230(c)(1)(A)(ii) on the grounds that the IRS failed to account for petitioner's nonresident status for purposes of whether or not to apply the adjustment.

For the reasons discussed below, we will deny petitioner's motion.

## Discussion

## I.    Summary judgment

In <u>Sundstrand Corp. and Consol. Subs. v. Commissioner</u>, 98 T.C. 518, 520 (1992), we explained that summary judgment is appropriate if the pleadings and other materials show that there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. <u>See also</u> Rule 121(b); <u>Naftel v. Commissioner</u>, 85 T.C. 527, 529 (1985). The moving party bears the burden of showing that no genuine dispute exists as to any material fact and that she is entitled to judgment on the substantive issues as a matter of law. <u>Celotex Cord. v.</u>

Catrett, 477 U.S. 317, 323 (1986); Espinoza v. Commissioner, 78 T.C. 412,
416 (1982). In deciding whether to grant summary judgment, we view the factual
materials and inferences drawn from them in the light most favorable to the
nonmoving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986);
Naftel v. Commissioner, supra at 529. If there exists any genuine dispute as to the
facts at issue, the motion must be denied. Espinoza v. Commissioner, supra at 416.

Petitioner has moved for summary judgment, so she has the burden to show
that there are no material facts in dispute and that she is entitled to judgment on the
substantive issues as a matter of law. Respondent contends that the closing
agreement on Form 870-LT forecloses petitioner's contentions about the effect of
her nonresident status and should resolve the Inventory Gain issue against her.
Consequently, we will limit our discussion herein to the Form 870-LT issue and
will deny petitioner's motion.

II.     General legal principles

To address petitioner's motion and respondent's opposition, we must
consider principles of closing agreements and the extent to which such agreements
are final. As we explained in Silverman v. Commissioner, 105 T.C. 157, 161
(1995), closing agreements are specifically authorized by section 7121(a),[4] and
section 7121(b) provides:

> If such agreement is approved by the Secretary (within such time as
> may be stated in such agreement, or later agreed to) such agreement
> shall be final and conclusive, and, except upon a showing of fraud or
> malfeasance, or misrepresentation of a material fact--
>
> (1)     the case shall not be reopened as to the matters agreed upon or
> the agreement modified by any officer, employee, or agent of the
> United States, and
>
> (2)     in any suit, action, or proceeding, such agreement, or any
> determination, assessment, collection, payment, abatement, refund, or

_____

[4]"The Secretary is authorized to enter into an agreement in writing with any
person relating to the liability of such person (or of the person or estate for whom
he acts) in respect of any internal revenue tax for any taxable period."
Sec. 7121(a).

> credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

Therefore, to the extent of matters agreed upon, a closing agreement under section 7121 is final and will not be set aside absent a showing of fraud or malfeasance, or a misrepresentation of a material fact. Silverman v. Commissioner, 105 T.C. 161.

III.   Analysis

The Form 870-LT agreement states that it is made "[u]nder sections 6224(c)[5] and 7121". Neither party disputes that the Form 870-LT was a valid closing agreement. See McAvey v. Commissioner, T.C. Memo. 2018-142 (acknowledging Form 870-LT as a valid closing agreement for purposes of section 7121). Neither party asks us to set aside the Form 870-LT in this case. Rather, the parties disagree about the extent of the items included in and agreed upon in the Form 870-LT. Petitioner would limit the scope of the agreement to partnership-level determinations without any binding effect upon partner-level consequences. That is, petitioner contends that any partner-level tax consequences of the agreed adjustments are subject to further individual determinations--such as whether or not she is liable for income tax as a nonresident (which petitioner challenges). Petitioner bases her construction of the Form 870-LT on the supposed fact that the Schedule of Adjustments and the Form 886-A did not effect adjustments at the partner-level.

Respondent, on the other hand, urges that the Form 870-LT reflects agreement as to adjustments at both the partnership and partner levels, and that the agreement yields a resulting liability with respect to petitioner's income for the inventory items. Respondent's position is based on petitioner's having executed Part I (for the partnership items) and Part II (for the affected items and partner-level determinations) of the Form 870-LT, which respondent contends included the attached Schedule of Adjustments and corresponding Form 886-A that together establish the resulting liability to petitioner. The Form 886-A twice states that Ms. Rawat "must recognize" the Inventory Gain; and "the word 'recognized' means 'taken into account in computing taxable income'". Venture Funding, Ltd. v. Commissioner, 110 T.C. 236, 241 (1998), aff'd, 198 F.3d 248 (6th Cir. 1999)

---

[5]Section 6224(c)(1) authorizes a "settlement agreement between the Secretary or the Attorney General (or his delegate) and 1 or more partners in a partnership with respect to the determination of partnership items".

A306

(quoting Bittker & McMahon, Federal Income Taxation of Individuals, par. 28.2, at 28–2 (2d ed.1995)).[6]

To resist this contention, petitioner's reply brief refers to "the unsigned Form 886A, which does not indicate that it was attached to the Form 870-LT." If petitioner means to suggest that the Form 886-A was not attached to the Form 870-LT, then for purposes of her motion, the suggestion fails. As movant, she must not merely raise questions about the non-movant's factual assertions but must affirmatively show the facts that her own position relies on. She fails to do so for two reasons:

First, the Form 870-LT undeniably "refer[s] to Form 886-A", and the Commissioner, though unable to present a signed copy of a Form 886-A, proffers as Exhibit 4 the Form 886-A that had previously been generated in the case and that appears in the IRS's records.[7] If, as Rule 121 requires, we draw inferences in favor of the non-movant, then we infer that the Form 886-A that the Commissioner proffers is the one referred to in the Form 870-LT. Petitioner does not even assert affirmatively that Exhibit 4 was not the referenced Form 886-A; much less does she offer her own declaration or that of her representative denying that the form was associated with the agreement she signed.

Second, the Form 870-LT undeniably includes a Part II ("Offer of Agreement for Affected Items * * *") that expressly recounts "agree[ment] to the determination of partner level determinations (affected items)", "agreement of the specified affected items", and "agreement with respect to affected items".

---

[6]Cf. sec. 7701(a)(45) ("The term 'nonrecognition transaction' means any disposition of property in a transaction in which gain or loss is not recognized in whole or in part for purposes of subtitle A" (emphasis added)). The word "recognized" may be contrasted with "realized". If someone has economically "realized" gain, it may remain to be seen whether she is required to "recognize" it as income. See, e.g., Hughes v. Commissioner, T.C. Memo. 2015-89, *22-*25.

[7]The Commissioner's declarant states: "Attached as Exhibit 4 is a true and correct electronic copy of Form 5701, Notice of Proposed Adjustment with Form 886-A, Explanation of Items, issued to Innovation Ventures, LLC, Mr. Manoj Bhargava, TMP, and Mr. Gerald Stein, CPA/POA dated December 15, 2010 (Form 886-A). Respondent is still in the process of seeking the original audit file for Innovation Ventures 2008 tax year and expects that file may contain a copy of the Form 886-A countersigned by Mr. Stein."

(Emphasis added.) It is not absolutely impossible that the IRS and a taxpayer might execute an agreement that purported to bind them to partner-level determinations when in fact there were no such determinations agreed to, but it seems unlikely. Neither petitioner nor any declarant states that this occurred, or explains why it occurred, or shows that there were agreed-to partner-level adjustments other than the Inventory Gain issue.

The Commissioner has, by his declaration and Exhibit 4, raised a genuine dispute as to whether there was (as petitioner argues) no agreement in the Form 870-LT to a partner-level adjustment for inventory gain.

Closing agreements are contracts governed by Federal common law and interpreted under ordinary principles of contract law. S & O Liquidating Partnership v. Commissioner, 291 F.3d 454, 459 (7th Cir. 2002). Contract law principles generally direct that we look within the "four corners" of the agreement, unless it is ambiguous as to essential terms. Rink v. Commissioner, 100 T.C. 319, 325 (1993). Respondent contends--and we agree--that the Form 870-LT is unambiguous; that the four corners of the Form 870-LT incorporate the Schedule of Adjustments, which include an adjustment of $6.5 million of other income and which "refer[s] to Form 886-A"; and that the Form 886-A states that "Ms. Rawat must recognize ordinary income in the amount of $6,523,176." Respondent is the non-moving party, and if we draw inferences and resolve doubts in his favor, then we must conclude, for purposes of petitioner's motion, that petitioner entered into a binding agreement as to the partner-level inventory gain determination and the resulting liability at issue in this case. Thus, there is a genuine dispute that prevents our granting petitioner's motion.

Based on the foregoing it is

ORDERED that petitioner's motion for summary judgment is granted in part as to the Non-Inventory Gain issue that respondent concedes and is denied in part as to the Inventory Gain issue. It is further

ORDERED that, no later than August 6, 2021, the parties shall file a joint status report (or if that is not expedient, then separate reports) that shall include their recommendations as to further proceedings in this case.

**(Signed) David Gustafson**
**Judge**



**Received**
08/18/21 04:26 pm

**Filed**
08/18/21

Indu Rawat,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed
Docket No. 15340-16

# Motion for Reconsideration of Findings or Opinion Pursuant to Rule 161

# UNITED STATES TAX COURT

INDU RAWAT,                              )
                                         )
                    Petitioner,          )
                                         )
v.                                       )     Docket No. 15340-16
                                         )
COMMISSIONER OF                          )
INTERNAL REVENUE,                        )     Filed Electronically
                                         )
                    Respondent.          )

## PETITIONER'S MOTION FOR RECONSIDERATION
## OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 161 of the Tax Court Rules of Procedure, Petitioner moves

for reconsideration of that portion of her motion for summary judgment (ECF No.

32), which the Court denied in its Order dated July 20, 2021 (ECF No. 58) (the

"Order").  Counsel for Respondent objects to the granting of this motion.

## <u>SUMMARY</u>

1.      The Court found in its Order that there is a fact issue sufficient to

deny Petitioner her motion for summary judgment with respect to the "Inventory

Gain," <u>i.e.</u>, the portion of her recognized gain on the sale of her partnership interest

in Innovation Ventures, LLC that represents the value of inventory of the entity

(taxable as a partnership).  Order at 12.

2.      The basis for the Court's Order denying Petitioner's motion with

respect to the Inventory Gain is that Petitioner contested the effect of the Form

870-LT that Petitioner executed in February, 2011. Exhibit 7 to Declaration of S.

Katy Lin in Support of Resp. to Mot. for Summary Judgment (ECF No. 40) ("R.

Ex. 7"); Order at 12. The Court held that there is a genuine issue of material fact

regarding whether Form 886-A was attached to the Form 870-LT, and the binding

effect of the Form 870-LT, sufficient to preclude Petitioner's motion for summary

judgment as to the foreign source of the Inventory Gain. Order at 12.[1]

    3.      While Petitioner acknowledges (without conceding) the Court's

---

[1]    The Court also intimated that there might be a jurisdictional concern in this case because Petitioner had not entered into the record certain refund claims she filed in 2012 with respect to the year at issue. Order at 7 n.3. But the Court's jurisdiction over the asserted overpayment in this instance does not turn on whether refund claims had been filed. Rather, it turns on section 6512(b), since the overpayment in question was paid after the issuance of the notice of deficiency, see Petition, ¶ 3, the conditions of section 6512(b)(3)(A) are thus met, and no refund claim is required. Cf. IRC § 6512(b)(3)(C); see Comm'r v. Lundy, 516 US 235 at 240-41 (1996) ("Unlike the provisions governing refund suits in United States District Court or the United States Court of Federal Claims, which make timely filing of a refund claim a jurisdictional prerequisite to bringing suit, the restrictions governing the Tax Court's authority to award a refund of overpaid taxes incorporate only the look-back period and not the filing deadline from § 6511. Consequently, a taxpayer who seeks a refund in the Tax Court, like [Lundy], does not need to actually file a claim for refund with the IRS; the taxpayer need only show that the tax to be refunded was paid during the applicable look-back period.") (citations omitted).

conclusion that there is a genuine dispute over the effect of the Form 870-LT,

Petitioner submits that this is a legal question, not a factual dispute.[2]  Most

importantly, however, it is ultimately irrelevant to the determinative issue, which is

the *source* of the income in question.  Even assuming *arguendo* that the Form 886-

A was attached, and that the Form 870-LT binds Petitioner, what they bind

Petitioner to is "recognizing" approximately $6.5 million of inventory-related gain

as ordinary income – which Petitioner has never disputed.  Neither the Form 870-

LT nor the Form 886-A commits Petitioner to recognizing *U.S. source* income; at

most they determine only the *amount* and the *character* of the income that is to be

recognized.  There is no mention whatsoever of the source of the income to be

recognized in either the Form 870-LT or the Form 886-A purportedly attached.

The Form 870-LT no more determined the source of the Inventory Gain than it

determined the source of the Non-Inventory Gain.

      4.      Only after this Court's decision in <u>Grecian Magnesite Mining, Indus.</u>

<u>& Shipping Co., SA v. Comm'r</u>, 149 T.C. 63 (2017), <u>aff'd</u>, 926 F.3d 819 (D.C. Cir.

---

[2]      Petitioner previously *conceded* that the parties executed Form 870-LT that resolved the recognition and character of the Inventory Gain.  <u>See</u> Pet. Rep. to Mem. in Support of Response to Mot. for Summary Judgment (ECF No. 43), page 14.

2019) ("Grecian Magnesite"), was it clear that both types of gain on the sale of a

partnership interest – the Non-Inventory Gain and the Inventory Gain – are foreign

source for a non-resident alien who is not engaged in a U.S. trade or business.

That was the basis for Petitioner's motion for summary judgment; and that fact is

entirely unaffected by the parties' factual disagreement over the Form 870-LT.

5.    The issue of fact identified by the Court – whether the Form 870-LT

binds Petitioner to recognize ordinary income in the amount of approximately $6.5

million – is conceded by Petitioner.  However, it is not material to the

determination of whether the income is US source or foreign source.  Only a

genuine issue of *material* fact is sufficient to deny a party's motion for summary

judgment.  T.C. Rules 121(b) ("decision shall thereafter be rendered if . . . there is

no genuine dispute as to any material fact"), 121(c) (Court considers what material

facts exist); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only

disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment."); Casanova Co. v.

Comm'r, 87 T.C. 214, 217 (1986) (explaining the materiality of facts depends

"upon the context in which they are raised, and the legal issues which exist

between the parties"); Vallone v. Comm'r, 88 T.C. 794, 802 (1987) (same).  As

demonstrated below, the concession in Form 870-LT that Petitioner will recognize approximately $6.5 million of ordinary income from the Inventory Gain – i.e., that income's recognition and character – is not material to the question of the gain's source, which the Court can still determine as a matter of law pursuant to Petitioner's motion for summary judgment.

6.      For this reason, the Court should reconsider, and grant, the portion of Petitioner's motion for summary judgment related to the Inventory Gain.[3]

## ARGUMENT

## I.      SOURCE IS A DISTINCT ISSUE FROM RECOGNITION AND CHARACTER.

7.      Numerous authorities, including the statute, legislative history, regulations, other IRS administrative actions, and cases in this and other courts, consider "source" as a separate issue from the "recognition" or "character" of income, which must be separately determined after recognition and character are established.

---

[3]      T.C. Rule 161, Motion for Reconsideration of Findings or Opinion, applies to orders like the instant one.  See Bedrosian v. Comm'r, 144 T.C. 152, 156 (2015) ("Although this Rule is in title XVI, addressing posttrial proceedings, such motions may be filed with regard to interlocutory orders."); Hawk v. Comm'r, T.C. Memo. 2012-259.

8.      As in all situations of statutory interpretation, the analysis starts with

the actual language of the statutes in question.  <u>Hughes Aircraft Co. v. Jacobson</u>,

525 U.S. 432, 438 (1999) ("As in any case of statutory construction, our analysis

begins with 'the language of the statute.'") (citation omitted); <u>Belk v. Comm'r</u>, 140

T.C. 1, 10 (2013) ("The most basic tenet of statutory construction is to begin with

the language of the statute itself.").  The sourcing provisions of the Internal

Revenue Code *begin* with the assumption that there is gross (<u>i.e.</u>, recognized)

income that must be analyzed.  <u>See</u>, <u>e.g.</u>, IRC §§ 861(a) ("The following items of

gross income shall be treated as" US source), 862(a) "The following items of gross

income shall be treated as" non-US source).[4]  To conclude that income is

recognized means only that it is taken into account as gross income in the year in

issue; and to say that it is ordinary, as the Form 870-LT does, only determines its

character.  Neither determines the source of that income.[5]

---

[4]      Under section 61, "gross income" includes "gains derived from dealings in
property," IRC § 61(3); and as the Court pointed out, Order at 10-11, such gains
that are "recognized" (pursuant to IRC § 1001(c)) are taken into account in the
calculation of taxable income.  But the path by which they get included is via
section 61(3) as an item of "gross income."

[5]      Elsewhere, Congress has explicitly stated that recognition, character, and
source are separate issues.  For instance, in the legislative history to the foreign

Docket No. 15340-16

9.     Treasury Regulations also recognize that source is separate from recognition or character.  As the Court knows, the holding of <u>Grecian Magnesite</u> was reversed by Congress in 2017, <u>see</u> IRC § 864(c)(8), enacted by the Tax Cuts and Jobs Act of 2017, P.L. No. 115-97, § 13501(a)(1) (2017).  (The new provision is prospective and so inapplicable to the 2008 tax year at issue here.)  The IRS subsequently promulgated a regulation explicating this provision, Treas. Reg. § 1.864(c)(8)-1 (2020).  The regulation repeatedly describes income as first being "recognized," distinguishes "ordinary" from "capital" gains and losses, and then examines the extent to which that amount may be consider effectively connected to a US trade or business and thus (generally) sourced within the US.  For instance:

- Section 1.864(c)(8)-1(b)(2)(i) begins by stating (emphasis added):

  **In general.** The amount of gain or loss *recognized* by the foreign transferor in connection with the transfer of its partnership interest is determined under all relevant provisions of the Internal Revenue Code

---

exchange gain or loss provision in the Tax Reform Act of 1986, the legislative history explained, "The principal issues presented by foreign currency transactions relate to the timing of recognition, the character (capital or ordinary), and the geographic source (domestic or foreign) of exchange gains or losses."  H. Rep. No. 99-426, at 449 (1985); S. Rep. No. 99-313, at 433 (1986) (same); <u>see also</u> H.R. Rep. No. 99-841, vol. 2, at 662 (1986) (Conf. Rep.) ("Present law presents issues relating to the timing of recognition, the character, and the geographic source or allocation of exchange gain or loss.").

and the regulations thereunder.  <u>See, e.g.</u>, §§ 1.741–1(a) and 1.751–1(a)(2).

- That paragraph then distinguishes ordinary gains and losses from capital gains and losses (emphasis in original):

    For purposes of this section, the amount of gain or loss that is treated as capital gain or capital loss under sections 741 and 751 is referred to as *outside capital gain* or *outside capital loss*, respectively.  The amount of gain or loss that is treated as ordinary gain or ordinary loss under sections 741 and 751 is referred to as *outside ordinary gain* or *outside ordinary loss*, respectively.

- Section 1.864(c)(8)-1(b)(3) then continues (emphasis added):

    **Limitations.** For purposes of applying this section, this paragraph (b)(3) limits the *amount of gain* or loss *recognized by a foreign transferor that may be treated as effectively connected gain* or effectively connected loss.

- The regulation continues at length describing the extent to which some recognized gain, including gain treated as ordinary income under section 751 like the Inventory Gain here, is (or is not) effectively connected to a US trade or business.  <u>See, e.g.</u>, subsections (c) (determining the amount of recognized gain that is treated as effectively connected income), and (i) (providing several examples of how recognized gains and losses are sourced under the regulation's rules).[6]

---

[6]    Apparently both Congress and the IRS thought that <u>Grecian Magnesite</u> held that even "inventory gain" recognized as such upon the sale by a foreign person of a US partnership interest was to be foreign source, <u>i.e.</u>, the substantive position of Petitioner here.  The legislative history so indicates, <u>see</u> H. Rep. No. 115-466, at 509 (2017) (Conf. Rep.) (discussing gain treated as ordinary under section 751), 510-11 (stating <u>Grecian Magnesite</u> "rejects the logic of [Rev. Rul. 91-32] and

The regulation thus unequivocally shows that the recognition of gain, and its character, are separate questions from the source of that gain. Resolving recognition and character does not end the discussion of sourcing.

10.     The IRS's own forms similarly demonstrate that income that is recognized may nevertheless be either US or foreign source. For example, on the Form 1040NR for 2008,[7] gross income that is effectively connected with a US trade or business is reported on the first page and generally therefore fully taxable in the US. (Gains and losses from property transactions would be entered on line 15.) But gross income that is not effectively connected to a US trade or business is reported on a completely different portion of the form and thus subject to different

---

instead holds that, generally, gain or loss on sale or exchange by a foreign person of an interest in a partnership that is engaged in a U.S. trade or business is foreign source."). Likewise, the regulation cited above expressly sources gain that is ordinary pursuant to section 751, which would be unnecessary if that were already the law under Respondent's interpretation of Grecian Magnesite.

[7]     Petitioner never filed Form 1040NR for the year at issue, but a copy of a blank Form 1040NR for 2008 is attached for the Court's convenience as Exhibit A. It may be located at https://www.irs.gov/pub/irs-prior/f1040nr--2008.pdf. The current version of Form 1040NR may be obtained at https://www.irs.gov/pub/irs-pdf/f1040nr.pdf, but now an entirely separate schedule, Schedule NEC, is used for reporting income effectively connected with a US trade or business, see https://www.irs.gov/pub/irs-pdf/f1040nrn.pdf.

rules of taxation (primarily withholding).  (See page 4, where gains and losses are

detailed on line 89, and then summarized on lines 91 and 83.)  The amount and

character of gains are thus separate determinations from the source.

     11.    In fact, the IRS analyzed the source issue separately from the Form

870-LT in this very case.  The revised Form 886-A report (R. Ex. 7) that

accompanied the Notice of Computational Adjustment discusses the source issue

as a distinct question from the fact of income recognition (R. Ex. 7, Report, pages

2-4).  After reciting that the $6.5 million ordinary income adjustment "was already

made at the partnership level audit as a flow through item to [Petitioner]" (id. at 1

n.1), it goes on at some length to argue separately that the inventory gain is

effectively connected to a US trade or business – the IRS position stated in Rev.

Rul. 91-32, 1991-1 C.B. 107, that this Court rejected in Grecian Magnesite.

Needless to say, that analysis would have been entirely superfluous if the

recognition of the ordinary gain alone determined that it was US taxable income.

     12.    The courts routinely analyze source as a separate issue from income

recognition or character.  For example:

- In AMP, Inc. v. U.S., 492 F. Supp. 27 (M.D. Pa. 1979), the question of

  whether payments were royalties (ordinary income) or sale proceeds

(capital gains) did not resolve the question of whether income was
foreign source for foreign tax credit purposes. The Court explained, "the
concepts employed in determining whether a transaction was a sale for
capital gains purposes were not necessarily pertinent in deciding a source
of income problem." Id. at 32. The Court held that, independent of the
income's characterization, it was foreign source.

- In Rohmer v. Comm'r, 153 F.2d 61 (2nd Cir. 1946), cert. denied, 328
  U.S. 862 (1946), cited by AMP, the Court first determined whether
  income was from a sale or from license, and only then focused on the
  evidentiary standard for sourcing the income.

- In ITT Corp. v. U.S., 770 F. Supp. 863 (S.D.N.Y. 1991), the taxpayer
  argued that a settlement (i.e., filed stipulations) included an agreement
  that the gains in question were foreign source, which the IRS disputed.
  "The government contends that the analysis is more complicated, and
  distinct from the analysis required for the capital gain issue." Id. at 869.
  As with the Form 870-LT, "the sourcing issue . . . was not set forth in the
  text of the letter, but was contained in the enclosed draft stipulations that
  were rejected by the government," like the Notice of Computational

Adjustment here.  Id. at 871.

- In Motors Ins. Corp. v. U.S., 37 AFTR 2d 76-719, 728 (Ct. Cl. 1976), a case considering the amount of foreign tax credit to which the taxpayer was entitled, the court described the issue in Comm'r v. Ferro-Enamel Corp., 134 F.2d 564 (6th Cir. 1943), as follows: "for the year in which the loss was *recognized* for tax purposes the question arose as to whether it should be allocated to income from United States or Canadian sources under the predecessor of section 862(b)."  (Emphasis added.)

13.     Finally, Grecian Magnesite itself noted that sourcing and recognition were different concepts.  In reciting the facts there, the Court stated, "The [statutory notice of deficiency] determined that GMM *should have recognized U.S.-source capital gain net income* . . . ."  Grecian Magnesite, 149 T.C. at 69 (emphasis added).  In other words, the IRS was specific in the deficiency notice that it was addressing US-source income, and that such income's source was an additional determination beyond just its recognition and character.  Likewise, the Court repeatedly cited and analyzed the impact of sections 731(a) and 741 of the Code – both of which state that income "shall be recognized" – and yet the Court continued to analyze whether such recognized income was to be treated as US

source or not.  Affirming this distinction on appeal, the D.C. Circuit noted that "the disputed gain is within the class of income that is ECI *(and therefore taxable) if and only if it is U.S.-source income.*  As a result, the sole question before us is the source of the disputed gain." <u>Grecian Magnesite</u>, 926 F.3d 819, 821 (D.C. Cir. 2019) (emphasis added).

14.     Commentators agree that the Court's analysis of the sourcing issue began with, but was separate from, the recognition of gain.  One commented on <u>Grecian Magnesite</u> as follows: "In 2008, Premier made a series of liquidating distributions that *resulted in GMM recognizing* $4 million of gain from the sale or exchange of its partnership interest.  IRC § 731(a).  GMM and the Service, however, disagreed as to whether this should have been treated as U.S.-source, ECI.  In determining whether the disputed gain was ECI, the Tax Court began its analysis with § 741." Willis, Postlewaite & Alexander, <u>Partnership Taxation</u> ¶21.05 (8th ed. 2017 & Supp. 2021-2) (emphasis added).

15.     In short, all authorities – the Code, legislative history, Treasury Regulations, other IRS administrative materials, opinions from this and other courts, and even outside commentary – agree that the issue of specific income's source is different from the issues of its recognition or character.  An agreement

that income must be recognized and is ordinary in character does not determine

whether it is taxable, US-source income.

## II.     THE SOURCE OF THE INVENTORY GAIN HAS NEVER BEEN AGREED TO OR FINALLY DETERMINED.

16.     Therefore, even assuming the issue(s) of fact that the Court identified

in the Order – that the Form 886-A was enclosed with the Form 870-LT; and that

Petitioner is bound by the agreements they embody – Petitioner never agreed to the

*source* of that income.  What Petitioner agreed to is that a portion of the gain

arising from the sale or exchange of her partnership interest, to the extent that

portion is attributable to the partnership's inventory items, would be recognized

and treated as ordinary income under section 751 of the Code.  But as Petitioner

previously argued (Pet. Mem. in Support of Mot. for Summary Judgment (ECF

No. 33), page 10, that is all section 751(a) does: it determines the character of the

recognized gain, it does not determine its source.

17.     Section 865 provides the sourcing rules for this admittedly

recognized, ordinary income.  Under section 865(a), the source of income from the

sale of personal property, such as a partnership interest, is determined by the

residence of the seller; since Petitioner is a nonresident, the source of the income is

foreign source.  None of the exceptions to that rule in the remainder of section 865

applies to gain from the sale or exchange of a partnership interest.  See Pet. Mem.

in Support of Mot. for Summary Judgment (ECF No. 33), pages 8-13.

18.     Rather, the source of the income was the principal issue addressed by

the IRS in the (final) Notice of Computational Adjustment (R. Ex.7).  That

document indicates that the IRS knew the settlement on Form 870-LT is not

dispositive of the sourcing issue, notwithstanding the recognition of $6.5 million of

gain as ordinary income (which for present purposes is assumed *arguendo*).  The

Notice of Computational Adjustment is the best evidence that even the IRS knows

the sourcing of the income and resulting tax liability (if any) was outside the scope

of the settlement: disagreement regarding the source of the income continued after

the settlement, as plainly acknowledged by the IRS itself.  See ITT Corp., 770

F.Supp. 863 (holding that a settlement on the character and amount of income did

not extend to source).

19.     Therefore, pursuant to Grecian Magnesite, section 865, and

Petitioner's prior argument (see Pet. Mem. in Support of Mot. for Summary

Judgment (ECF No. 33), pages 8-13; Pet. Rep. to Mem. in Support of Response to

Mot. for Summary Judgment (ECF No. 43), pages 14-24), the admittedly

recognized $6.5 million of Inventory Gain is sourced outside the US.  Nothing in

the Form 870-LT or the Form 886-A changes that, even if Respondent's view of

those documents and their binding effect were to be adopted by the Court.

Because the Form 870-LT (and the Form 886-A to the extent applicable) do not

discuss source at all, there is consequently no issue of material fact preventing the

Court from making a legal determination as to the foreign source of that income, as

Petitioner requested in her motion for summary judgment.

## CONCLUSION

20.     For the reasons previously stated by Petitioner, even assuming the

Form 886-A was enclosed with the Form 870-LT, and the Form 870-LT is binding,

Petitioner is still entitled to summary judgment in her favor on the Inventory Gain

issue because that gain should be sourced outside the United States.

21.     Accordingly Petitioner requests that the Court reconsider, and grant,

that portion of Petitioner's Motion for Summary Judgment relating to the Inventory

Gain, assuming *arguendo* that the Form 870-LT was binding and included the

Form 886-A.

Dated:  August 18, 2021       Respectfully submitted,


_____
CHRISTOPHER S. RIZEK
Tax Court Bar No. RC0369
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Suite 1100
Washington, DC 20005
Telephone: (202) 862-8852
crizek@capdale.com

s/ Nathan J. Hochman
_____
NATHAN J. HOCHMAN
Tax Court Bar No. HN0101
Browne George Ross LLP
2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067
Telephone: (424) 202-5559
nhochman@bgrfirm.com

Counsel for Petitioner

| Form **1040NR**<br>Department of the Treasury<br>Internal Revenue Service | **U.S. Nonresident Alien Income Tax Return**<br>For the year January 1–December 31, 2008, or other tax year<br>beginning , 2008, and ending , 20 | OMB No. 1545-0074<br>**2008** |

Please print or type.

| Your first name and initial | Last name | Identifying number (see page 7) |

| Present home address (number, street, and apt. no., or rural route). If you have a P.O. box, see page 7. | Check if: ☐ Individual<br>☐ Estate or Trust |

| City, town or post office, state, and ZIP code. If you have a foreign address, see page 7. | Type of entry visa (see page 7)<br>▶ |

| Country ▶ | Of what country were you a **citizen** or national during the tax year? ▶ |

| Give address **outside the United States** to which you want any refund check mailed. If same as above, write "Same." | Give address in the country where you are a **permanent resident.** If same as above, write "Same." |

**Filing Status and Exemptions for Individuals** (see pages 7 and 8)

|  |  | 7a | 7b |
|---|---|---|---|
| Filing status. Check only one box (1–6 below). | | Yourself | Spouse |
| 1 | ☐ Single resident of Canada or Mexico, or a single U.S. national | | |
| 2 | ☐ Other single nonresident alien | | |
| 3 | ☐ Married resident of Canada or Mexico, or a married U.S. national ⎫ | | |
| 4 | ☐ Married resident of the Republic of Korea (South Korea) ⎬ If you check box 7b, enter your spouse's identifying number ▶ ............ | | |
| 5 | ☐ Other married nonresident alien ⎭ | | |
| 6 | ☐ Qualifying widow(er) with dependent child (see page 7) | | |

Attach Forms W-2 here.
Also attach Form(s) 1099-R if tax was withheld.

**Caution: Do not** check box 7a if your parent (or someone else) can claim you as a dependent.
**Do not** check box 7b if your spouse had any U.S. gross income.

No. of boxes checked on 7a and 7b ▶

**7c** Dependents: (see page 8)

| (1) First name | Last name | (2) Dependent's identifying number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 8) |
|---|---|---|---|---|
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |

No. of children on 7c who:
• lived with you ▶
• did not live with you due to divorce or separation ▶
Dependents on 7c not entered above ▶

| **d** | Total number of exemptions claimed . . . . . . . . . . . . . | Add numbers entered on lines above ▶ | ☐ |

Income Effectively Connected With U.S. Trade/Business

Enclose, but do not attach, any payment.

| 8 | Wages, salaries, tips, etc. Attach Form(s) W-2 . . . . . . . . . . | 8 | |
| 9a | Taxable interest . . . . . . . . . . . . . . . . . | 9a | |
| b | Tax-exempt interest. **Do not** include on line 9a . . . | 9b | | |
| 10a | Ordinary dividends . . . . . . . . . . . . . . . | 10a | |
| b | Qualified dividends (see page 10) . . . . | 10b | | |
| 11 | Taxable refunds, credits, or offsets of state and local income taxes (see page 10) | 11 | |
| 12 | Scholarship and fellowship grants. Attach Form(s) 1042-S or required statement (see page 10) | 12 | |
| 13 | Business income or (loss). Attach Schedule C or C-EZ (Form 1040) | 13 | |
| 14 | Capital gain or (loss). Attach Schedule D (Form 1040) if required. If not required, check here ☐ | 14 | |
| 15 | Other gains or (losses). Attach Form 4797 . . . . . . . . . | 15 | |
| 16a | IRA distributions . . . . | 16a | | 16b | Taxable amount (see page 11) | 16b | |
| 17a | Pensions and annuities | 17a | | 17b | Taxable amount (see page 12) | 17b | |
| 18 | Rental real estate, royalties, partnerships, trusts, etc. Attach Schedule E (Form 1040) | 18 | |
| 19 | Farm income or (loss). Attach Schedule F (Form 1040) . . . . . . | 19 | |
| 20 | Unemployment compensation . . . . . . . . . . . . . | 20 | |
| 21 | Other income. List type and amount (see page 14) .................. | 21 | |
| 22 | Total income exempt by a treaty from page 5, item M | 22 | | |
| 23 | Add lines 8, 9a, 10a, 11–15, 16b, and 17b–21. This is your **total effectively connected income** ▶ | 23 | |

Adjusted Gross Income

| 24 | Educator expenses (see page 14) . . . . . | 24 | | |
| 25 | Health savings account deduction. Attach Form 8889 . | 25 | | |
| 26 | Moving expenses. Attach Form 3903 . . . . | 26 | | |
| 27 | Self-employed SEP, SIMPLE, and qualified plans . | 27 | | |
| 28 | Self-employed health insurance deduction (see page 14) | 28 | | |
| 29 | Penalty on early withdrawal of savings . . . | 29 | | |
| 30 | Scholarship and fellowship grants excluded . . | 30 | | |
| 31 | IRA deduction (see page 15) . . . . . . | 31 | | |
| 32 | Student loan interest deduction (see page 15) . | 32 | | |
| 33 | Domestic production activities deduction. Attach Form 8903 . | 33 | | |
| 34 | Add lines 24 through 33 . . . . . . . . . . . . . . . | 34 | |
| 35 | Subtract line 34 from line 23. Enter here and on line 36. This is your **adjusted gross income** ▶ | 35 | |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 31.    Cat. No. 11364D    Form **1040NR** (2008)

A327

| | | | |
|---|---|---|---|
| **Tax and Credits** | 36 | Amount from line 35 (adjusted gross income) . . . . . . . . . | 36 | |
| | 37 | **Itemized deductions** from page 3, Schedule A, line 17 . . . . | 37 | |
| | 38 | Subtract line 37 from line 36 . . . . . . . . . . . . . | 38 | |
| | 39 | Exemptions (see page 17) . . . . . . . . . . . . . . | 39 | |
| | 40 | **Taxable income.** Subtract line 39 from line 38. If line 39 is more than line 38, enter -0- | 40 | |
| | 41 | **Tax** (see page 17). Check if any tax is from: **a** ☐ Form(s) 8814   **b** ☐ Form 4972 | 41 | |
| | 42 | **Alternative minimum tax** (see page 18). Attach Form 6251 . . | 42 | |
| | 43 | Add lines 41 and 42 . . . . . . . . . . . . . . ▶ | 43 | |

| | | 44 | Foreign tax credit. Attach Form 1116 if required . . . | 44 | | | |
|---|---|---|---|---|---|---|---|
| | 45 | Credit for child and dependent care expenses. Attach Form 2441 | 45 | | | |
| | 46 | Retirement savings contributions credit. Attach Form 8880 . | 46 | | | |
| | 47 | Child tax credit (see page 20). Attach Form 8901 if required . | 47 | | | |
| | 48 | Credits from: **a** ☐ Form 8396   **b** ☐ Form 8839   **c** ☐ Form 5695 | 48 | | | |
| | 49 | Other credits. Check applicable box(es): **a** ☐ Form 3800 **b** ☐ Form 8801   **c** ☐ Form | 49 | | | |
| | 50 | Add lines 44 through 49. These are your **total credits** . . . | | 50 | |
| | 51 | Subtract line 50 from line 43. If line 50 is more than line 43, enter -0- . . . . . ▶ | | 51 | |

| **Other Taxes** | 52 | Tax on income not effectively connected with a U.S. trade or business from page 4, line 88 | 52 | |
|---|---|---|---|---|
| | 53 | Unreported social security and Medicare tax from: **a** ☐ Form 4137   **b** ☐ Form 8919 | 53 | |
| | 54 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | 54 | |
| | 55 | Transportation tax (see page 20) . . . . . . . . . . . | 55 | |
| | 56 | Household employment taxes. Attach Schedule H (Form 1040) . . | 56 | |
| | 57 | Add lines 51 through 56. This is your **total tax** . . . . . . ▶ | 57 | |

| **Payments** | 58 | Federal income tax withheld from Forms W-2, 1099, 1042-S, etc. | 58 | | | |
|---|---|---|---|---|---|---|
| | 59 | 2008 estimated tax payments and amount applied from 2007 return | 59 | | | |
| | 60 | Excess social security and tier 1 RRTA tax withheld (see page 22) | 60 | | | |
| | 61 | Additional child tax credit. Attach Form 8812 . . . . . | 61 | | | |
| | 62 | Amount paid with Form 4868 (request for extension) . . . | 62 | | | |
| | 63 | Other payments from: **a** ☐ Form 2439 **b** ☐ Form 4136 **c** ☐ Form 8885 | 63 | | | |
| | 64 | Credit for amount paid with Form 1040-C . . . . . . . | 64 | | | |
| | 65 | U.S. tax withheld at source from page 4, line 85 . . . . | 65 | | | |
| | 66 | U.S. tax withheld at source by partnerships under section 1446: | | | | |
| | **a** | From Form(s) 8805 . . . . . . . . . . . . . . | 66a | | | |
| | **b** | From Form(s) 1042-S . . . . . . . . . . . . . | 66b | | | |
| | 67 | U.S. tax withheld on dispositions of U.S. real property interests: | | | | |
| | **a** | From Form(s) 8288-A . . . . . . . . . . . . . | 67a | | | |
| | **b** | From Form(s) 1042-S . . . . . . . . . . . . . | 67b | | | |
| | 68 | Refundable credit for prior year minimum tax from Form 8801, line 30 | 68 | | | |
| | 69 | Add lines 58 through 68. These are your **total payments** . . ▶ | | 69 | | |

| **Refund** Direct deposit? See page 22. | 70 | If line 69 is more than line 57, subtract line 57 from line 69. This is the amount you **overpaid** | 70 | |
|---|---|---|---|---|
| | 71a | Amount of line 70 you want **refunded to you**. If Form 8888 is attached, check here ▶ ☐ | 71a | |
| | **b** | Routing number | ▶ **c** Type: ☐ Checking ☐ Savings | |
| | **d** | Account number | | |
| | 72 | Amount of line 70 you want applied to your 2009 estimated tax ▶ | 72 | |

| **Amount You Owe** | 73 | Amount you owe. Subtract line 69 from line 57. For details on how to pay, see page 23 ▶ | 73 | |
|---|---|---|---|---|
| | 74 | Estimated tax penalty. Also include on line 73 . . | 74 | |

| **Third Party Designee** | Do you want to allow another person to discuss this return with the IRS (see page 24)?   ☐ **Yes.** Complete the following.   ☐ **No** |
|---|---|
| | Designee's name ▶    Phone no. ▶ ( )    Personal identification number (PIN) ▶ |

| **Sign Here** Keep a copy of this return for your records. | Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. |
|---|---|
| | Your signature ▶    Date    Your occupation in the United States |

| **Paid Preparer's Use Only** | Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code ▶ | | EIN | |
| | | | Phone no. ( ) | |

Form **1040NR** (2008)

A328

## Schedule A—Itemized Deductions (See pages 25, 26, and 27.)

07

| | | | | | |
|---|---|---|---|---|---|
| **State and Local Income Taxes** | **1** | State income taxes . . . . . . . . . . | 1 | | |
| | **2** | Local income taxes . . . . . . . . . . | 2 | | |
| | **3** | Add lines 1 and 2 . . . . . . . . . . . . . . . . . . . . | | **3** | |

| | | | | | |
|---|---|---|---|---|---|
| **Total Gifts to U.S. Charities** | | **Caution:** *If you made a gift and received a benefit in return, see page 25.* | | | |
| | **4** | Gifts by cash or check. If you made any gift of $250 or more, see page 25 | 4 | | |
| | **5** | Other than by cash or check. If you made any gift of $250 or more, see page 25. You **must** attach Form 8283 if "the amount of your deduction" (see definition on page 26) is more than $500 | 5 | | |
| | **6** | Carryover from prior year . . . . . . . . . | 6 | | |
| | **7** | Add lines 4 through 6 . . . . . . . . . . . . . . . . | | **7** | |

| | | | | | |
|---|---|---|---|---|---|
| **Casualty and Theft Losses** | **8** | Casualty or theft loss(es). Attach Form 4684. See page 26 . . . . . . . . | | **8** | |

| | | | | | |
|---|---|---|---|---|---|
| **Job Expenses and Certain Miscellaneous Deductions** | **9** | Unreimbursed employee expenses—job travel, union dues, job education, etc. You **must** attach Form 2106 or Form 2106-EZ if required. See page 26 ▶ . . . . . . . . . . | 9 | | |
| | **10** | Tax preparation fees . . . . . . . . . . | 10 | | |
| | **11** | Other expenses. See page 27 for expenses to deduct here. List type and amount ▶ . . . . . . . . . . | 11 | | |
| | **12** | Add lines 9 through 11 . . . . . . . . | 12 | | |
| | **13** | Enter the amount from Form 1040NR, line 36 . . . . . [ 13 ] | | | |
| | **14** | Multiply line 13 by 2% (.02) . . . . . . . . | 14 | | |
| | **15** | Subtract line 14 from line 12. If line 14 is more than line 12, enter -0- . . . . | | **15** | |

| | | | | | |
|---|---|---|---|---|---|
| **Other Miscellaneous Deductions** | **16** | Other—see page 27 for expenses to deduct here. List type and amount ▶ . . . . . . | | **16** | |

| | | | | | |
|---|---|---|---|---|---|
| **Total Itemized Deductions** | **17** | Is Form 1040NR, line 36, over $159,950 (over $79,975 if you checked filing status box 3, 4, or 5 on page 1 of Form 1040NR)? | | | |
| | | ☐ **No.** Your deduction is not limited. Add the amounts in the far right column for lines 3 through 16. Also enter this amount on Form 1040NR, line 37. | | | |
| | | ☐ **Yes.** Your deduction may be limited. See page 27 for the amount to enter here and on Form 1040NR, line 37. | . ▶ | **17** | |

Form **1040NR** (2008)

A329

## Tax on Income Not Effectively Connected With a U.S. Trade or Business
Attach Forms 1042-S, SSA-1042S, RRB-1042S, or similar form.

Enter amount of income under the appropriate rate of tax (see page 28)

| Nature of income | | (a) U.S. tax withheld at source | (b) 10% | (c) 15% | (d) 30% | (e) Other (specify) % | (e) Other (specify) % |
|---|---|---|---|---|---|---|---|
| 75 Dividends paid by: | | | | | | | |
| a U.S. corporations . . . . . | 75a | | | | | | |
| b Foreign corporations . . . . . | 75b | | | | | | |
| 76 Interest: | | | | | | | |
| a Mortgage . . . . . | 76a | | | | | | |
| b Paid by foreign corporations . . | 76b | | | | | | |
| c Other . . . . . | 76c | | | | | | |
| 77 Industrial royalties (patents, trademarks, etc.) | 77 | | | | | | |
| 78 Motion picture or T.V. copyright royalties | 78 | | | | | | |
| 79 Other royalties (copyrights, recording, publishing, etc.) | 79 | | | | | | |
| 80 Real property income and natural resources royalties | 80 | | | | | | |
| 81 Pensions and annuities . . . . | 81 | | | | | | |
| 82 Social security benefits . . . | 82 | | | | | | |
| 83 Gains (include capital gain from line 91 below) | 83 | | | | | | |
| 84 Other (specify) ▶ --------------------------------- | 84 | | | | | | |
| 85 Total U.S. tax withheld at source. Add column (a) of lines 75a through 84. Enter the total here and on Form 1040NR, line 65 . . . . . ▶ | 85 | | | | | | |
| 86 Add lines 75a through 84 in columns (b)–(e) . . . | | | | | 86 | | |
| 87 Multiply line 86 by rate of tax at top of each column | | | | | 87 | | |
| 88 Tax on income not effectively connected with a U.S. trade or business. Add columns (b)–(e) of line 87. Enter the total here and on Form 1040NR, line 52 . . . . . ▶ | | | | | | | 88 |

## Capital Gains and Losses From Sales or Exchanges of Property

| | 89 (a) Kind of property and description (if necessary, attach statement of descriptive details not shown below) | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Sales price | (e) Cost or other basis | (f) LOSS If (e) is more than (d), subtract (d) from (e) | (g) GAIN If (d) is more than (e), subtract (e) from (d) |
|---|---|---|---|---|---|---|---|
| Enter only the capital gains and losses from property sales and exchanges that are from the United States and not effectively connected with a U.S. business. Do not include a gain or loss on disposing of a U.S. real property interest; report these gains and losses on Schedule D (Form 1040). | 89 | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Report property sales or exchanges that are effectively connected with a U.S. business on Schedule D (Form 1040), Form 4797, or both. | 90 Add columns (f) and (g) of line 89 . . . . . | | | | 90 ( | ) | |
| | 91 Capital gain. Combine columns (f) and (g) of line 90. Enter the net gain here and on line 83 above (if a loss, enter -0-) ▶ | | | | | | 91 |

A330

## Other Information (If an item does not apply to you, enter "N/A.")

**A** What country issued your passport? .............................

**B** Were you ever a U.S. citizen? . . . . . ☐ Yes ☐ No

**C** Give the purpose of your visit to the United States ▶ ........
.........................................................................................
.........................................................................................

**D** Current nonimmigrant status and date of change (see page 28) ▶ .......................................................

**E** Date you entered the United States (see page 28)
▶

**F** Did you give up your permanent residence as an immigrant in the United States this year? . . . . . . . . ☐ Yes ☐ No

**G** Dates you entered and left the United States during the year. Residents of Canada or Mexico entering and leaving the United States at frequent intervals, give name of country only. ▶

**H** Give number of days (including vacation and nonworkdays) you were present in the United States during:
2006 .........., 2007 .........., and 2008 ........... .

**I** If you are a resident of Canada, Mexico, or the Republic of Korea (South Korea), or a U.S. national, did your spouse contribute to the support of any child claimed on Form 1040NR, line 7c? . . . . . . . ☐ Yes ☐ No
If "Yes," enter amount ▶ $ ...........................................

If you were a resident of the Republic of Korea (South Korea) for any part of the tax year, enter in the space below your total foreign source income not effectively connected with a U.S. trade or business. This information is needed so that the exemption for your spouse and dependents residing in the United States (if applicable) may be allowed in accordance with Article 4 of the income tax treaty between the United States and the Republic of Korea (South Korea).

Total foreign source income not effectively connected with a U.S. trade or business ▶ $ ...............................

**J** Did you file a U.S. income tax return for any year before 2008? . . . . . . ☐ Yes ☐ No
If "Yes," give the latest year and form number ▶ ............
.........................................................................................

**K** To which Internal Revenue office did you pay any amounts claimed on Form 1040NR, lines 59, 62, and 64? ............
.........................................................................................

**L** Have you excluded any gross income other than foreign source income not effectively connected with a U.S. trade or business? . ☐ Yes ☐ No

If "Yes," show the amount, nature, and source of the excluded income. Also, give the reason it was excluded. (Do not include amounts shown in item M.) ▶ ...............
.........................................................................................

**M** If you are claiming the benefits of a U.S. income tax treaty with a foreign country, give the following information. See pages 28 and 29 for additional information.

• Country ▶ ......................................................................

• Type and amount of effectively connected income exempt from tax. Also, identify the applicable tax treaty article. Do not enter exempt income on lines 8, 9a, 10a, 11-15, 16b, or 17b-21 of Form 1040NR.

For 2008 (also, include this exempt income on line 22 of Form 1040NR) ▶ ..........................
.........................................................................................

For 2007 ▶ ...................................................................
.........................................................................................

• Type and amount of income not effectively connected that is exempt from or subject to a reduced rate of tax. Also, identify the applicable tax treaty article.
For 2008 ▶ ...................................................................
.........................................................................................

For 2007 ▶ ...................................................................
.........................................................................................

• Were you subject to tax in that country on any of the income you claim you are entitled to the treaty benefits? . . . . . . ☐ Yes ☐ No

• Did you have a permanent establishment or fixed base (as defined by the tax treaty) in the United States at any time during 2008? ☐ Yes ☐ No

**N** If you file this return to report community income, give your spouse's name, address, and identifying number.
.........................................................................................
.........................................................................................

**O** If you file this return for a trust, does the trust have a U.S. business? . . . . . . ☐ Yes ☐ No
If "Yes," give name and address ▶ ...............................

**P** Is this an "expatriation return" (see page 29)? . . . . . . . . . ☐ Yes ☐ No
If "Yes," you must attach an annual information statement.

**Q** During 2008, did you apply for, or take other affirmative steps to apply for, lawful permanent resident status in the United States or have an application pending to adjust your status to that of a lawful permanent resident of the United States? ☐ Yes ☐ No
If "Yes," explain ▶ ........................................................
.........................................................................................

**R** Check this box if you have received compensation income of $250,000 or more and you are using an alternative basis to determine the source of this compensation income (see page 29) ▶ ☐

Form **1040NR** (2008)

A331


INDU RAWAT,

        Petitioner

        v.

COMMISSIONER
OF INTERNAL REVENUE,

        Respondent

Docket No. 15340-16.

## ORDER

This case involves the tax consequences for an individual for the sale of her interest in a U.S. partnership when a portion of the sale proceeds is attributable to inventory items of the partnership. Petitioner Indu Rawat filed a motion for summary judgment (Doc. 32)[1] that we denied in part by our order of July 20, 2021 (Doc. 58). This order presumes familiarity with that previous order.

Now pending before the Court is petitioner's motion for reconsideration (Doc. 61). The Commissioner filed a response (Doc. 66) to petitioner's motion, and petitioner filed a reply (Doc. 69). Petitioner persuades us that our previous order was in error, and we will therefore grant petitioner's motion for reconsideration and will vacate our previous denial of summary judgment in part. However, except to the extent of the Commissioner's concession, we will again deny petitioner's motion for summary judgment for the reasons stated in this order.

*Background*

*Petitioner's motion for summary judgment and arguments*

Petitioner filed a motion for summary judgment (Doc. 32) and a supporting memorandum (Doc. 33) that, in pertinent part, addressed the merits of the Inventory

---

[1] Parenthetical references to "Doc." are to documents as they are numbered in the docket record of this case, and the page numbers cited in those references are according to the numbering in the portable document format ("PDF") of the digital file. Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., as in effect at the relevant times, regulation references are to the Code of Federal Regulations, Title 26 ("Treas. Reg."), as in effect at the relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**Served 07/28/22**

Gain issue in this case.  In her discussion, petitioner stated that "[t]he parties to this proceeding agree that in 2008 Petitioner, *as a nonresident alien*, sold her partnership interest in [Innovation Ventures]", and she cited joint status reports filed by the parties to support her assertion.  (Doc. 33 at 4) (emphasis added).  The cited portion of one such status report reads: "The petition filed in this case presents two primary issues for resolution, (1) whether petitioner, *as a nonresident alien*, is subject to tax on that portion of the gain on the sale of her interest in a U.S. partnership that is attributable to inventory".  (Doc. 18 at 2) (emphasis added).  The same phrase appears in further joint status reports filed by the parties.  (*See* Docs. 16, 18, 20, 25-29, 31).  With her motion Ms. Rawat submitted no other documentary information (and no affidavit by herself or anyone else) to substantiate her nonresident alien status.

The Commissioner filed an opposition (Docs. 40, 51, 53), in which he disputed Ms. Rawat's position on the merits.  He objected to the allegation that the parties agreed to her nonresident status (Doc. 53 at 11), pointing to Ms. Rawat's initial allegation to that effect in her petition (Doc. 1 at 4-5) and to his objection to that allegation in his answer (Doc. 5 at 2); and he argued that a genuine issue of material fact exists as to Ms. Rawat's nonresident status in 2008.[2]  (Doc. 53 at 22).  The Commissioner also argued (see Doc. 53 at 26-30) that the parties had settled the Inventory Gain issue by means of a closing agreement on Form 870-LT, with attachments.

In her reply (Doc. 43 at 5, 16-19), Ms. Rawat resisted the Commissioner's argument as to Form 870-LT by contending that the form included no "Schedule of Adjustments" and that Ms. Rawat was bound "only . . . to the partnership-level adjustments, and not to any partner-level determinations".  (Emphasis added.)  She also disagreed that her nonresident status remained at issue, citing again to the joint status reports and "respondent['s] fail[ure] to produce any affirmative evidence [to that effect]".  (Doc. 43 at 8-9).

(As is explained below, her motion for reconsideration shows that she admits she agreed to partner-level determinations (though she did not use that term).  She indicated that in the Form 870-LT she had agreed that her portion of the Inventory Gain was attributable to her (i.e., at the partner level), but she argued in her reply that her agreed portion was not taxable to her (because of its alleged non-U.S. source, which she did not mention in that context).  This argument (that the Form 870-LT determined partner-level recognition but not source) was obscured by her insistence that she was "not [bound] to any partner-level determinations".)

------

[2] The Commissioner has made multiple attempts to solicit information regarding petitioner's nonresident status with requests made to petitioner, the U.S. Department of Homeland Security, and the Canadian government.  (Doc. 40 at 5-6, 124).

*Order denying summary judgment in part*

In our order dated July 20, 2021 (Doc. 58), we granted petitioner's motion for summary judgment in part (regarding the Non-Inventory Gain issue) and denied petitioner's motion in part (regarding the Inventory Gain issue), holding that "[t]he Commissioner had . . . raised a genuine dispute as to whether there was (as petitioner argue[d]) no agreement in the Form 870-LT to a partner-level adjustment for inventory gain." (Doc. 58 at 12). Drawing inferences in favor of the Commissioner (the non-movant), we concluded that petitioner entered into a binding agreement as to the partner-level inventory gain determination and the resulting liability at issue. We did not address the parties' arguments regarding petitioner's nonresident status or the source of the inventory gain.

*Petitioner's motion for reconsideration*

On August 18, 2021, Ms. Rawat filed a motion for reconsideration (Doc. 61). In her motion for reconsideration, Ms. Rawat concedes that the Form 870-LT binds her to recognize ordinary income (Doc. 61 at 5), and argues only that, because of the "sourcing" rules, she is not liable for any tax arising from the (partner-level) determination that she "must", as Form 886-A twice states, "recognize ordinary income in the amount of $6,523,176." In that connection, she disputes (Doc. 61 at 6–17) our statement that "the word 'recognized' means 'taken into account in computing taxable income'". (Emphasis added.)

Thus, she asks us to reconsider the meaning and effect of the Form 870-LT in requiring her to "recognize ordinary income in the amount of $6,523,176." She contends that this "recogni[tion]" provision in the closing agreement does not determine "taxable income" and does not preclude her contention that the sourcing rules relieve her from taxation on that amount, which she asserts is the determinative issue for our consideration. To support her argument that "recognition" does not determine "taxable income", she contends that the source of the inventory gain is determined separately from (and only after) the recognition and character of the inventory gain. (Doc. 61 at 6).

In his response, the Commissioner urges us to readopt our interpretation of "recognition" to find that petitioner agreed that she was liable for U.S. income tax on the inventory gain and reiterates his earlier arguments regarding the source of the inventory gain. (Doc. 66 at 4, 10).

## Discussion

Petitioner's contention regarding sourcing was unclear in her reply to the Commissioner's response (to her motion for summary judgment), but we acknowledge that she did make the contention and that we gave it insufficient attention, and we direct our attention to it now.

I.   *Analysis*

    A.   *Closing agreement and "matters agreed upon"*

    As we explained in *Silverman v. Commissioner*, 105 T.C. 157, 161 (1995), closing agreements are specifically authorized by section 7121(a),[3] and to the extent of matters agreed upon, a closing agreement under section 7121 is final and will not be set aside absent a showing of fraud or malfeasance, or a misrepresentation of a material fact. *Silverman*, 105 T.C. at 161.

    But section 7121 does not bind the parties as to the premises underlying their agreement; they are bound only as to the "matters agreed upon". *Zaentz v. Commissioner*, 90 T.C. 753, 761 (1988). Under section 7121 "a court may not include as part of the agreement matters other than the matters specifically agreed upon and mentioned in the closing agreement." *Id*. at 766. The scope of a closing agreement is therefore strictly construed to encompass only the issues enumerated in the closing agreement itself. *Analog Devices, Inc. v. Commissioner*, 147 T.C. 429, 445-446 (2016).

    The Form 870-LT agreement states that it is made "[u]nder sections 6224(c)[4] and 7121". Neither party disputes that the Form 870-LT was a valid closing agreement. See *McAvey v. Commissioner*, T.C. Memo. 2018-142 (acknowledging Form 870-LT as a valid closing agreement for purposes of section 7121). Neither party asks us to set aside the Form 870-LT in this case. Rather, the parties disagree about the extent of the items included in and agreed upon in the Form 870-LT. Petitioner argues that neither the source of the inventory gain nor the amount of tax due on the inventory gain were matters agreed upon in the Form 870-LT. She argues that she agreed only to recognize the income—not that it was sourced to the U.S. and therefore subject to U.S. taxation. The Commissioner defends the holding in our previous order (Doc. 58 at 10-11) that the term "recognition" has the meaning that we observed in *Venture Funding, Ltd. v. Commissioner*, 110 T.C. 236, 241 (1998), *aff'd*, 198 F.3d 248 (6th Cir. 1999) ("the word 'recognized' means 'taken into account in computing taxable income'") (quoting Bittker & McMahon, Federal Income Taxation of Individuals, par. 28.2, at 28–2 (2d ed.1995)), and argues that employing a plain meaning interpretation of "recognition" in this case necessarily leads to the conclusion that petitioner consented to the U.S. source of the inventory gain in the Form 870-LT. (Doc. 66 at 4-5).

---

    [3] "The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period." Sec. 7121(a).

    [4] Section 6224(c)(1) authorizes a "settlement agreement between the Secretary or the Attorney General (or his delegate) and 1 or more partners in a partnership with respect to the determination of partnership items".

The Code and Treasury Regulations anticipate that the recognition of gross income and the source of that recognized income are two independent determinations—each contributing to the overall determination of taxable income. As petitioner points out, Treas. Reg. section 1.864(c)(8)-1(b)(3) expressly "limits the amount of gain or loss <u>recognized</u> by a foreign transferor <u>that may be treated as effectively connected gain</u> or effectively connected loss." (Emphasis added.) The income sourcing provisions of the Code, beginning with sections 861 and 862, provide that certain "items of *gross income*" are treated as income from sources within or without the U.S., and therefore imply that a taxpayer will have already recognized income prior to the source determination. Section 863 thereafter calculates *taxable income* by allocating expenses, losses, and other deductions that correspond with each source. Admittedly, section 865 (the source rules for personal property sales) provides only that "*income* from the sale of personal property"—excluding the "gross" prefix— is sourced based on residency, but we read section 865 *in pari materia* with sections 861–863 and see no reason to differentiate between the meanings of "income" in section 865 and "gross income" in sections 861-863.

In the Form 870-LT, the parties agreed to certain partner level determinations shown on a schedule of adjustments, and Ms. Rawat consented to "the assessment and collection of *any deficiency attributable to [those] partner level determinations*". (Doc. 5 at 25) (emphasis added). Whether there exists any deficiency that the IRS is entitled to assess was not determined in the Form 870-LT. The Form 870-LT determined adjustments to "ordinary income" and "other income" (relating to the inventory gain), among other income items and deductions, but specifically lacked a determination as to the <u>source</u> of the income or as to Ms. Rawat's deficiency and corresponding tax liability. (Doc. 5 at 26-28). Neither the source of the income, nor Ms. Rawat's deficiency, nor her tax liability were "matters agreed upon" within the meaning of section 1721 and we may not read them into the agreement. *Zaentz*, 90 T.C. at 761, 766 (1988). Therefore, we find that the parties did not agree to these items in the Form 870-LT, and that the source of the inventory gain Ms. Rawat recognized on the sale of her partnership interest remains at issue.

B.      *Nonresident alien status and the source of the inventory gain*

Setting aside our previous order, we return now to Ms. Rawat's motion for summary judgment, and specifically, to her contention that our previous order did not address—i.e., her contention that the inventory gain is "not sourced to or taxable by the United States . . . [and that she therefore] is entitled to a refund of amounts paid with respect to 2008 attributable to the Inventory Gain". (Doc. 33 at 14).

1.      *Summary judgment standards*

In *Sundstrand Corp. and Consol. Subs. v. Commissioner*, 98 T.C. 518, 520 (1992), we explained that summary judgment is appropriate if the pleadings and other materials show that there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. See also Rule 121(b); *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). The moving party bears the burden of

showing that no genuine dispute exists as to any material fact and that she is entitled to judgment on the substantive issues as a matter of law. *Celotex Cord. v. Catrett*, 477 U.S. 317, 323 (1986); *Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982). In deciding whether to grant summary judgment, we view the factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986); *Naftel*, 85 T.C. at 529. If there exists any genuine dispute as to the facts at issue, the motion must be denied. *Espinoza*, 78 T.C. at 416. However, only "[w]hen a motion for summary judgment is . . . supported as provided in this Rule" is the adverse party required to "set forth specific facts showing that there is a genuine dispute for trial". Rule 121(d). That is, a movant may not assert unsubstantiated facts and then insist that the non-movant prove them wrong.

Petitioner has moved for summary judgment, so she has the burden to show that there are no material facts in dispute and that she is entitled to judgment on the substantive issues as a matter of law. Respondent contends that she has failed to carry her burden and is not entitled to summary judgment in her favor.

### 2. *Nonresident alien status as a "material fact"*

An analysis of the source of the inventory gain (and therefore, whether it is subject to U.S. taxation) first requires a determination of Ms. Rawat's status as a nonresident alien. The source of the inventory gain remains at issue in this case and becomes relevant to determine petitioner's income tax liability *only if she is a nonresident alien.*[5] If Ms. Rawat is a U.S. citizen[6] or "resident" alien, then she is subject to income tax on the inventory gain regardless of its source. §§ 1, 61, 7701(b). But if she is a nonresident alien, then she is subject to income tax as provided by section 871. § 2(g). Section 871 imposes a tax on (among other items) income received by nonresident aliens from sources within the U.S., capital gains of nonresident aliens who are present in the U.S. for a certain period of time, and income received by nonresident aliens that is effectively connected with the conduct of a trade or business within the U.S. Therefore, petitioner has the burden to prove that she was not a U.S. citizen or resident alien in 2008, or if she was a nonresident alien, that she is not subject to tax on the inventory gain pursuant to section 871.

### 3. *Lack of showing of nonresident alien status*

Petitioner asserts that she was a nonresident alien in 2008, and therefore, is

---

[5] *See* § 871; 7701(b). *See also* Treas. Reg. § 1.871-2 ("The term nonresident alien individual means an individual whose residence is not within the United States, and who is not a citizen of the United States.").

[6] Petitioner alleged in her petitioner that she was a Canadian citizen during 2008, and the Commissioner denied this allegation in his answer. (Doc. 1 at 5; Doc. 5 at 2).

not subject to U.S. taxation on the inventory gain. (Doc. 1 at 5; Doc. 33 at 4). However, instead of putting forth evidence to support her assertion, petitioner asks us to draw inferences from statements of the parties in joint status reports—statements that merely clarify the issues set forth in the petition. The petition asserted that Ms. Rawat was a nonresident alien, and the Commissioner's answer expressly denied that assertion. When he thereafter joined in status reports—stating "The petition filed in this case presents two primary issues for resolution, (1) whether petitioner, *as a nonresident alien*, is subject to tax on that portion of the gain on the sale of her interest in a U.S. partnership that is attributable to inventory" (Doc. 18 at 2) (emphasis added)—we think he did not admit that she <u>was</u> a nonresident alien but rather joined in stating a disputed issue in the case of which her status was a component. It is not impossible that someone joining such a statement would intend thereby to signal his concession of nonresident alien status, previously disputed, but the Commissioner insists (Doc. 41 at 11) that he did not so intend. In resolving petitioner's motion, we draw all inferences in the Commissioner's favor, and we therefore decline to infer that his joining this status report constituted a concession of Ms. Rawat's alleged nonresident alien status.

In Ms. Rawat's reply brief (Doc. 43 at 14-15), filed after the IRS disputed her nonresident alien status, she cited additional vague or equivocal documents that do little more than provide for petitioner a mailing address in India.[7] Only the fourth of these documents actually uses the term "nonresident alien", and we think petitioner cannot fairly rely on it here. That fourth document is an IRS examination report prepared in 2012 that identifies Ms. Rawat as a "nonresident alien" and, we infer, derived that proposition from the fact that, "prior to tax year 2008, Rawat filed US nonresident individual income tax returns (forms 1040-NR) to account for the partnership income (loss) of [Innovation Ventures]." The examination relied on the IRS's longstanding Revenue Ruling 91-32 (only later overruled in *Grecian Magnesite Mining, Indus. & Shipping Co., S.A. v. Commissioner*, 149 T.C. 63 (2017), *aff'd*, 926 F.3d 819 (D.C. Cir. 2019)) and therefore evidently had little felt need to challenge Ms. Rawat's claim of nonresident alien status—a claim that, at the time, must have seemed not worth scrutinizing. There is no showing, and no reason to suppose, that the IRS's examining agent had personal knowledge of Ms. Rawat's residence; and the statement in the examination report is not so much an admission of the IRS as its

---

[7] Specifically, petitioner points to: (1) the promissory note accompanying petitioner's sale of the partnership interest (referencing the "foreign status" of the payee, petitioner) (Doc. 5 at 10); (2) Innovation Ventures' 2008 Form 1065 and accompanying Schedules K-1 (answering in the affirmative the question of whether the partnership had any foreign partners and providing Ms. Rawat's address in India) (Doc. 40 at 10, 56); (3) the Form 2848, "Power of Attorney and Declaration of Representative" (also providing Ms. Rawat's address in India) (Doc. 40 at 74); and (4) the Form 4549-A, "Income Tax Discrepancy Adjustments", and Form 886-A, "Explanation of Items" (providing Ms. Rawat's address in India and stating "Ms. Indu Rawat . . . a nonresident alien, was a partner in Innovation Ventures, LLC."). (Doc. 40 at 109, 115).

acceptance of Ms. Rawat's position.

Ms. Rawat did not submit her own declaration in support of her claim of nonresident alien status. We conclude that the documents she relied on instead do not support, in compliance with Rule 121(d), the disputed proposition that she was a nonresident alien (or even that she resided outside of the U.S. for any specific period of time). Therefore, petitioner has failed to carry her burden to show her nonresident alien status.

Without a determination regarding petitioner's status as a nonresident alien, we cannot decide the source issue.

It is, therefore,

ORDERED that petitioner's motion for reconsideration filed August 18, 2021, is granted; and that our order of July 20, 2021, is vacated in its entirety; and that petitioner's motion for summary judgment filed December 20, 2019, is granted in part as to the Non-Inventory Gain issue that the Commissioner concedes and is denied in part as to the Inventory Gain issue. It is further

ORDERED that, no later than August 29, 2022, the parties shall file a joint status report (or if that is not expedient, then separate reports) that shall include their recommendations as to further proceedings in this case.

**(Signed) David Gustafson**
**Judge**



**Received**

08/23/22 03:44 pm

**Filed**

08/23/22

Indu Rawat,

  Petitioner

  v.

Commissioner of Internal Revenue

  Respondent

Electronically Filed

Docket No. 15340-16

Document No. 71

# Stipulation of Settled Issues

**SERVED 08/23/22**

A340

# UNITED STATES TAX COURT

INDU RAWAT,                           )
                                      )
            Petitioner,               )
                                      )
v.                                    )     Docket No. 15340-16
                                      )
COMMISSIONER OF                       )     Filed Electronically
INTERNAL REVENUE,                     )
                                      )     Judge Gustafson
            Respondent.               )

## SECOND STIPULATION OF SETTLED ISSUES

For purposes of this case only, the following issues are hereby settled in accordance with this second stipulation of settled issues:

1.     The parties hereby stipulate and agree that Petitioner was a non-resident alien during the tax year at issue (2008).

[CONTINUED ON NEXT PAGE]

Dated: August 23, 2022                    Respectfully submitted,

                                          DRITA TONUZI
                                          Deputy Chief Counsel
                                          Internal Revenue Service

*[signature]*                      By: *[signature]*

CHRISTOPHER S. RIZEK                      H. BARTON THOMAS
Tax Court Bar No. RC0369                  Special Trial Attorney
Caplin & Drysdale, Chartered              (Large Business & International)
One Thomas Circle, N.W.                   Tax Court Bar No. TH0204
Suite 1100                                200 West Adams St., #2400
Washington, DC 20005                      Chicago, IL 60606
Telephone: (202) 862-8852                 Telephone: (312) 368-8155
crizek@capdale.com                        barton.thomas@irscounsel.treas.gov

NATHAN J. HOCHMAN                         Counsel for Respondent
Tax Court Bar No. HN0101
Ross LLP
1900 Avenue of the Stars
Suite 1225
Los Angeles, California 90067
Telephone: (424) 202-5559
NathanJHochman@gmail.com


Counsel for Petitioner



# United States Tax Court
### Washington, DC 20217

INDU RAWAT,

      Petitioner

      v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent

Docket No. 15340-16

## ORDER

      Petitioner filed a motion for summary judgment (Doc. 32). Our order of July 28, 2022 (Doc. 70), ruled that petitioner's motion was granted in part as to the Non-Inventory Gain issue that the Commissioner had conceded but was denied in part as to the Inventory Gain issue. We explained that we discerned a genuine issue of material fact as to petitioner's residency status, and we stated, "Without a determination regarding petitioner's status as a nonresident alien, we cannot decide the source issue" critical to the Inventory Gain issue. Our order (Doc. 70) therefore denied petitioner's motion for summary judgment in remaining part (i.e., as to the Inventory Gain issue) and directed the parties to make a filing that "include[s] their recommendations as to further proceedings in this case".

      In compliance with our order, the parties filed a "Stipulation of Settled Issues" (Doc. 71) that states: "The parties hereby stipulate and agree that Petitioner was a non-resident alien during the tax year at issue (2008)." This stipulation resolves the matter of petitioner's residency status that, we said, prevented us from fully deciding the source issue critical to the Inventory Gain issue that is still unresolved in this case. The parties also filed a status report (Doc. 72), from which we conclude that the Inventory Gain issue has been adequately briefed by the parties. It is therefore

      ORDERED that our order of July 28, 2022 (Doc. 70) is hereby vacated in part, insofar as it denied in part petitioner's motion for summary judgment (Doc. 32). The Inventory Gain issue remains unresolved, and petitioner's motion addressing it remains pending to that extent. Petitioner's motion for summary judgment is hereby taken under advisement as to the remaining Inventory Gain issue.

**(Signed) David Gustafson**
**Judge**

**Served 09/09/22**

A343

# United States Tax Court

T.C. Memo. 2023-14

INDU RAWAT,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket No. 15340-16.                    Filed February 7, 2023.

———————

P, a nonresident alien, was a partner in IV LLC, a U.S. partnership for federal income tax purposes. In 2008 (i.e., before the 2017 effective date of I.R.C. § 864(c)(8)), P sold her interest in IV LLC, and $6.5 million of the proceeds of that sale ("Inventory Gain") was "attributable to . . . inventory items" for purposes of I.R.C. § 751(a)(2). P moved for summary judgment on the grounds that the entire proceeds of the sale (including the Inventory Gain) are treated under I.R.C. § 741 as gain from the sale of a capital asset, are further treated as income from the sale of personal property under the general rule of I.R.C. § 865(a)(2), and are therefore non-U.S.-source income on which P is not taxed.

*Held*: Because the Inventory Gain was attributable to inventory items for purposes of I.R.C. § 751(a)(2), it is excepted from the general rule of I.R.C. § 741; it is, for purposes of the sourcing rules, "income derived from the sale of inventory property" under the exception of I.R.C. §865(b); and it may therefore be U.S.-source income. P's motion for summary judgment will be denied.

———————

**Served 02/07/23**

A344

**[\*2]** *Christopher S. Rizek* and *Nathan J. Hochman*, for petitioner.

*H. Barton Thomas* and *S. Katy Lin*, for respondent.

MEMORANDUM OPINION

GUSTAFSON, *Judge*: This case involves the federal income tax consequences for a nonresident alien individual upon the sale of her interest in a U.S. partnership when a portion of the sale proceeds is attributable to inventory items of the partnership held for sale in the United States. At issue are the years 2008 and 2009, for which the Internal Revenue Service ("IRS") issued to petitioner, Indu Rawat, a statutory notice of deficiency ("NOD"). She filed a petition in the Court pursuant to section 6213(a)[1] and claimed an overpayment pursuant to section 6512(b). Now pending before the Court is Ms. Rawat's motion for summary judgment. Doc. 32. The motion asserts two issues: first, a so-called "Non-Inventory Gain issue" that the Commissioner now concedes, *see* Docs. 54–55, and second, an "Inventory Gain issue" that we address in this Opinion. Potential U.S.-source income inheres in inventory that a partnership holds for sale in the United States, and when that inventory is later sold, U.S.-source income may be realized. However, a foreign partner who sells her partnership interest before that inventory gain is realized thereby receives compensation for the value of that inventory but might avoid U.S. taxation on her receipt of that value. Ms. Rawat asks us to hold that she is not liable for U.S. federal income tax on the Inventory Gain as a matter of law. We will deny her motion.

*Background*

The facts pertinent to Ms. Rawat's motion are not in dispute, and they can be stated briefly as follows.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., as in effect at the relevant times; regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), as in effect at the relevant times; and Rule references are to the Tax Court Rules of Practice and Procedure. Some dollar amounts are rounded. Parenthetical references to "Doc." are to documents as they are numbered in the docket record of this case, and the page numbers cited in those references are according to the numbering in the portable document format ("PDF") of the digital file.

[*3] *Petitioner and her partnership interest*

Ms. Rawat was a nonresident alien individual for federal income tax purposes during 2008 and 2009. She filed U.S. federal income tax returns as a nonresident alien for the 2000 through 2007 tax years. She did not file returns for the 2008 and 2009 tax years.

Innovation Ventures, LLC ("IV LLC"), is a U.S. business that manufactures and sells popular consumer products including 5-hour Energy drinks. IV LLC was treated as a partnership for federal income tax purposes during the years at issue.

Between December 2000 and January 2007, Ms. Rawat acquired a 30% interest in IV LLC. On January 4, 2008, Ms. Rawat executed a note for the sale of her interest in IV LLC to Manoj Bhargava for $438 million. The note provided for interest-only payments to Ms. Rawat until 2028, when the note would mature.

At the time the note was executed, IV LLC had inventory items with a basis of $6.4 million, which it held for future sale in the United States.[2] IV LLC later sold those inventory items for a profit of $22.4 million, and Ms. Rawat admits that her share of income "attributable to the inventory" was $6.5 million (an amount agreed to by Ms. Rawat and the IRS, as explained below). Thus, of the $438 million sale price paid to Ms. Rawat (by the note from Mr. Bhargava) for her interest in IV LLC, $6.5 million was allocable to inventory held in the United States for sale therein ("Inventory Gain").

*Partnership examination and Form 5701*

The IRS conducted an examination of IV LLC for the 2007 and 2008 tax years. In December 2010 the IRS issued Form 5701, "Notice of Proposed Adjustment", Doc. 40, Ex. 4, to IV LLC and to Ms. Rawat. The Form 5701 proposed to include in Ms. Rawat's income for 2008 $6.5 million arising from the Inventory Gain issue.

---

[2] The record does not show whether the inventory would be sold within or without the United States, so for purposes of deciding Ms. Rawat's motion for summary judgment (in which context we assume facts and draw inferences in favor of the non-movant, *see infra* Part I.A) we assume (in the Commissioner's favor) that the inventory was for sale in the United States (thus potentially yielding U.S.-source income, *see infra* Part II.B).

**[\*4]** *Agreement on Form 870–LT*

Consistent with the Form 5701, Ms. Rawat executed with the IRS Form 870–LT, "Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items". Doc. 40, Ex. 3. A "Schedule of Adjustments" attached to the Form 870–LT includes, under "Other income (loss)", an adjustment of $6,523,176, with the explanation that "[o]ther income relates to unrealized receivables[3] as defined under Section 751." In February 2011 Ms. Rawat signed the Form 870–LT, and in April 2011 the IRS countersigned. As we previously held,[4] Ms. Rawat and the IRS did not reach agreement about the "source" (whether U.S. or non-U.S.) of the $6.5 million of income nor about Ms. Rawat's ultimate tax liabilities for the 2008 and 2009 tax years.

*Notice of Computational Aajustment*

In February 2012 the IRS issued to Ms. Rawat a Notice of Computational Adjustment for her 2008 tax year. Doc. 40, Ex. 6. The text of the notice indicates that "[t]he adjustments are being made as a result of" several possible alternatives, including "an agreement you signed", and a copy of the Form 870–LT agreement was attached. The notice included Form 4549–A, "Income Tax Discrepancy Adjustments", that listed a $6.5 million increase in income for "Sch E - Inc/Loss - Partnership - Innovation Ventures LLC" (i.e., the Inventory Gain issue addressed in the Form 870–LT) and a tax liability of $2.3 million. Additionally, the IRS determined nearly $1 million in additions to tax under section 6651(a)(1) and (2) and section 6654.

---

[3] The Commissioner plausibly explains (and we assume) that the reference in the "Remarks" to "unrealized receivables" is a "scrivener's error" that should instead refer to inventory.

[4] Our order of July 28, 2022, Doc. 70, stated:

The Form 870–LT determined adjustments to 'ordinary income' and 'other income' (relating to the inventory gain), among other income items and deductions, but specifically lacked a determination as to the source of the income or as to Ms. Rawat's deficiency and corresponding tax liability. (Doc. 5 at 26–28). Neither the source of the income, nor Ms. Rawat's deficiency, nor her tax liability were 'matters agreed upon' within the meaning of section [7121] and we may not read them into the agreement. *Zaentz v. Commissioner,* 90 T.C. [753,] 761, 766 (1988). Therefore, we find that the parties did not agree to these items in the Form 870–LT, and that the source of the inventory gain Ms. Rawat recognized on the sale of her partnership interest remains at issue.

**[\*5]** In March 2012 the IRS assessed these amounts (though they were later reduced to reflect a $1.9 million charitable contribution deduction carryover from the prior year).

*Statutory notice of deficiency and petition*

In May 2016 the IRS issued to Ms. Rawat an NOD for her 2008 and 2009 tax years. Doc. 1, Ex. A. The NOD reflected the previously determined income for 2008 (from the Inventory Gain issue, as stated in the Notice of Computational Adjustment) and further determined additional taxes owed by Ms. Rawat under section 453A(c)(2)(B) as interest on the deferred tax liability attributable to the installment obligation (i.e., Mr. Bhargava's note for his purchase of Ms. Rawat's partnership interest in IV LLC) for both 2008 and 2009 ("Non-Inventory Gain"). Doc. 55, para. 4. The NOD indicated a $3.8 million deficiency in tax for 2008 and a $2.6 million deficiency in tax for 2009. Altogether, the deficiencies in tax and additions to tax totaled $4.8 million for 2008 and $3.8 million for 2009.

In June 2016 Ms. Rawat paid $2.9 million in tax, interest, and additions to tax attributable to the initial assessments for the 2008 tax year (i.e., arising from the computational adjustments for the Inventory Gain issue). In July 2016 Ms. Rawat filed her petition with this Court in order to challenge the items in the NOD and to invoke the Court's overpayment jurisdiction under section 6512(b) with respect to her $2.9 million payment for the computational adjustment. Her petition alleges an address in Singapore.

*Petitioner's motion for summary judgment*

Ms. Rawat's motion for summary judgment, Docs. 32, 33, contends that the opinions of this Court and of the Court of Appeals for the D.C. Circuit in *Grecian Magnesite Mining, Industrial & Shipping Co., SA v. Commissioner*, 149 T.C. 63 (2017), *aff'd*, 926 F.3d 819 (D.C. Cir. 2019),[5] effectively resolve both the Non-Inventory Gain issue (which the Commissioner has since conceded) and the Inventory Gain issue (which is still in dispute and is now before us). Ms. Rawat's general

---

[5] Congress effectively overruled *Grecian Magnesite* in the Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, § 13501(a)(1), 131 Stat. 2054, 2138–41, by adding to the Code section 864(c)(8), effective for transactions after November 27, 2017. Ms. Rawat sold her interest in IV LLC in 2008, before the effective date of section 864(c)(8), so in resolving her motion we follow *Grecian Magnesite* without regard to section 864(c)(8).

[*6] position is that, under *Grecian Magnesite*, a nonresident alien individual is not subject to U.S. income tax on the sale of the individual's interest in a U.S. partnership because those gains would be sourced outside the United States under the general rule of section 865(a)(2), irrespective of whether any portion of the gains would be attributable to inventory items under section 751(a)(2). Ms. Rawat contends that, under the rationale of this Court's decision in *Grecian Magnesite*, her nonresident status resolves in her favor both the Inventory Gain and the Non-Inventory Gain issues.

*Respondent's response*

The Commissioner did not file a cross-motion for summary judgment but opposes Ms. Rawat's motion on the ground[6] that the sourcing of the Inventory Gain must be made under the rules of section 865(b), as to which Ms. Rawat has not yet made a showing.

*Discussion*

I.   *General legal principles*

A.   *Summary judgment*

Under Rule 121(b), summary judgment is appropriate if there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. *See also Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994); *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). The moving party bears the burden of showing that no such genuine dispute exists and that she is entitled to judgment on the substantive issues as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982). In deciding whether to grant summary judgment, we draw inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986); *Naftel*,

---

[6] The Commissioner's opposition also included two contentions that we do not address here: First, the Commissioner contended that the agreement on Form 870–LT executed by the parties resolves the disputed Inventory Gain issue in his favor, but we decided that issue against the Commissioner in a previous order. Doc. 70; *see supra* note 4. Second, the Commissioner originally contended that a genuine dispute of material fact as to whether Ms. Rawat was a nonresident alien in 2008 and 2009 precludes summary judgment on the Inventory Gain issue; but since then he has stipulated that she was a nonresident alien in 2008. *See* Doc. 71.

**[\*7]** 85 T.C. at 529. If any genuine dispute of fact exists, the motion must be denied. *Espinoza*, 78 T.C. at 416.

Ms. Rawat has moved for summary judgment, so she has the burden to show that there are no material facts in dispute and that she is entitled to judgment on the substantive issues as a matter of law.

B.   *Partnership taxation in an international context*

This case, like *Grecian Magnesite*, 149 T.C. at 71, "arises at the intersection of two areas of tax law—i.e., partnership taxation (subchapter K of the Code) and U.S. taxation of international transactions (subchapter N of the Code)." That is, we address the U.S. federal income tax treatment of a nonresident alien's sale of her interest in a U.S. partnership.

1.   *A partnership interest as a singular capital asset*

It may assist our discussion of Ms. Rawat's sale of her interest in IV LLC to give a simplified description of the legal context in which the current dispute arises. To survey that context, we can broadly describe several forms in which a taxpayer might own a business:

First, she might own a business as a sole proprietor. She would directly own each of the assets used in the business—its inventory to be sold, its assets used in the business, its cash in the bank, and so on. She would report the business's revenue, deductions, and income or loss on Schedule C, "Profit or Loss From Business", attached to her individual income tax return. If she sold the business, she would do so by selling its assets; and she would have to account for her gain or loss on each of those assets—whether capital assets, depreciable property or real property used in the business, or inventory.

Second, the business might be incorporated, and the owner would not directly own corporate assets but would instead own shares of stock in the corporation. The corporation is recognized as a legal person distinct from its owners. The corporation (and not the owner) would directly own the assets of the business. The corporation would report its revenue, deductions, and income or loss on its own corporate income tax return, on which it would report its own income tax liability. The owner would not report on her individual tax return any portion of the corporation's revenue and deductions as such but would instead report (on Schedule B, "Interest and Ordinary Dividends"), any dividends that she received from the corporation. The owner could sell her interest in

[*8] the corporation by selling her shares, and then on her individual tax return she would report on Schedule D, "Capital Gains and Losses", her gain or loss on the sale of the shares. In reporting that gain or loss on the sale of her stock, she would not account for the underlying items of gain or loss of the corporation nor attribute her proceeds to the various assets of the corporation. Rather, she owned stock; she sold stock; and she reports her gain or loss on the sale of the stock.

Third, as in this case, the business might be a partnership (or be treated as a partnership), and the taxpayer might be a partner who owns an interest in the partnership. For income tax purposes a partnership has some resemblance to a corporation, but in some respects it is treated as a confederation or aggregation of its partners. The partnership is not itself subject to the income tax, *see* § 701, but instead each partner separately reports on her individual income tax return her share of the partnership's taxable income or loss, *see* § 702(a), and the partnership's income is taxable to her to the extent of her distributive share, *see* § 702(c). That reporting can be thought of as roughly analogous to the sole proprietor's reporting on Schedule C.

However, if the owner of a partnership interest sells that interest, then we consult sections 741 and 751 (discussed below in Part II.A) to determine the income tax treatment of that sale. Generally speaking, under section 741 her gain or loss "shall be considered as gain or loss from the sale or exchange of a capital asset" (a proposition that Ms. Rawat stresses here)—but section 741 immediately provides an exception that the Commissioner invokes: "except as otherwise provided in section 751 (relating to . . . inventory items)." Section 751(a)(2) in turn provides:

> The amount of any money . . . received by a transferor partner in exchange for all or a part of his interest in the partnership attributable to—
>
> . . . .
>
> (2) inventory items of the partnership,
>
> shall be considered as an amount realized from the sale or exchange of property other than a capital asset.

The question now before us is whether this inventory exception referenced in section 741 calls for distinct treatment of the inventory-related portion of sale proceeds when the selling partner is a nonresident

**[\*9]** alien individual. That question is discussed in Part II below, but first we describe the general principles of taxation of international transactions.

  2.  *U.S. "source" and "effective[] connect[ion]" with a U.S. business*

  U.S. federal income tax is imposed on nonresident alien individuals by section 871. For "Income connected with the United States business", subsection (b)(1)[7] of section 871 provides:

> A [1] nonresident alien individual [2] engaged in trade or business within the United States during the taxable year *shall be taxable* as provided in section 1 or 55 on his taxable income which is [3] effectively connected with the conduct of a trade or business within the United States.

(Emphasis added.)

  The parties present no dispute about the application of these principles to most of Ms. Rawat's income from IV LLC. In order to address the dispute that does exist, it is helpful first to observe that undisputed treatment.

  a.  *Petitioner was liable for income tax on her distributive share of IV LLC's income.*

  Not at issue is Ms. Rawat's liability for U.S. income tax on her distributive share of IV LLC's income, and it is clear that when she was a partner in IV LLC she was so liable under the three conditions of section 871(b)(1) as numbered above: First, it is stipulated that Ms. Rawat is a nonresident alien individual. Second, section 875(1) provides that "a nonresident alien individual . . . shall be considered as being engaged in a trade or business within the United States if the partnership of which such individual . . . is a member is so engaged", and under that provision, as a matter of law, Ms. Rawat was "engaged

---

[7] Subsection (a)(1) of section 871 imposes tax on a nonresident alien individual for certain income that is "not effectively connected with the conduct of a trade or business within the United States", *see infra* note 11 (fixed or determinable annual or periodical income), but this subsection is not relied on by the Commissioner and is not at issue here.

**[*11]** income from the sale of personal property . . . (2) by a nonresident shall be sourced outside the United States." The parties concur that a partnership interest is "personal property" and that, for a sale in 2008,[10] the Code does not "otherwise provide[]" any relevant exception that might be applicable to the Non-Inventory Gain portion of the proceeds of the sale of that interest.

Still in dispute is the portion of the sale proceeds that is attributable to Inventory Gain. We must decide whether that portion should be treated as "effectively connected" to IV LLC's energy drink business in the United States.

II.  *Analysis*

    A.  *Characterizing the proceeds and sale under sections 741 and 751*

        1.  *Petitioner's reliance on section 741*

Ms. Rawat's contention, stated simply, is that the Inventory Gain portion should be treated like the Non-Inventory Gain portion, because (she contends) neither of those portions is "effectively connected" to the energy drink business in the United States. Section 741 provides:

> In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss *from the sale or exchange of a capital asset, except as otherwise provided in section 751* (relating to unrealized receivables and *inventory items*).

(Emphasis added.) Ms. Rawat is correct when she asserts that "the most important point in [her] motion", Doc. 43 at 20, is that she did not sell inventory but instead an interest in a partnership that owned inventory. Under section 741 Ms. Rawat's interest in IV LLC was a singular "capital asset"; and on the sale of that interest, she must recognize gain or loss. As a nonresident alien, she is taxable under section 871(b)(2) only on income that is "effectively connected with the conduct of a trade or business within the United States". Under section 864(c)(3), "[a]ll income, gain, or loss from sources within the United States . . . shall be

---

[10] For a sale on or after November 27, 2017, section 864(c)(8) now provides an exception that would change the outcome. *See supra* note 5.

**[*12]** treated as effectively connected",[11] while under section 864(c)(4)(A), "no income . . . from sources without the United States shall be treated as effectively connected". And under section 865(a)(2), "income from the sale of personal property [such as a partnership interest] . . . by a nonresident [such as Ms. Rawat] shall be sourced outside the United States". Ms. Rawat prevails unless some other statutory provision creates an exception to these generalities, and we conclude that there is such an exception, as we now explain.

### 2.    *The exception of section 751*

Section 741, the starting point of our summary above, does indeed provide that gain or loss on a partner's sale of her partnership interest "shall be considered as gain or loss from the sale or exchange of a [singular] capital asset"—a provision critical to Ms. Rawat's contention—but the Commissioner urges the express exception that immediately follows in section 741, i.e., "except as otherwise provided in section 751". That referenced section 751 provides:

> (a) Sale or exchange of interest in partnership.—*The amount of any money*, or the fair market value of any property, received by a transferor partner in exchange for all or a part of his interest in the partnership *attributable to*—
>
>> (1) unrealized receivables of the partnership,
>
> or
>
>> (2) *inventory items* [plural] of the partnership,
>
> *shall be considered* as an amount *realized from the sale* or exchange of property *other than a capital asset.*

(Emphasis added.) The Commissioner argues, and we agree, that the general approach of section 741, which calls for the sold partnership interest to be analyzed not asset-by-asset but rather as a singular "capital asset", gives way to the specific provision in section 751(a)(2) that the portion of the sold partnership interest attributable to

---

[11] In the quotation of section 864(c)(3) in text above, we elide the parenthetical qualifier "(other than income, gain, or loss to which paragraph (2) applies)", because it is not relevant here. Section 864(c)(2) makes special provision for "Periodical, etc., income"—i.e., income "of the types described in section 871(a)(1), section 871(h), section 881(a), or section 881(c)"; and sections 871(a)(1) and 881(a)(1) both define this income as "interest . . . , dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, and other *fixed or determinable annual or periodical* gains, profits, and income." (Emphasis added.)

**[*13]** inventory items must be separately "considered" as pertaining to "other than a capital asset". Consequently, our analysis cannot end with her "most important" point (that she actually sold not inventory but a partnership interest) but must proceed to ask: What is the "property other than a capital asset" from which the "money . . . received" is "considered" to have been "realized" under section 751(a)? The only answers suggested in the statute are "unrealized receivables" and, pertinent to this case, "inventory items". Therefore, in the vocabulary of section 751(a), the Inventory Gain is "attributable to inventory" and is "considered" to have been "realized from the sale" of "inventory items".

3.    *Sections 741 and 751 as non-sourcing rules*

a.    *The interaction of sections 741 and 751*

Ms. Rawat contends, however, that this argument makes an unwarranted use of section 751. She notes that the issue in this case is the source (U.S. or non-U.S.) of the proceeds, and she asserts that "[s]ection 751 is not a sourcing rule". In her view, the effect of section 751, where it applies, is to assure that the proceeds of a sale will take on the character (non-capital) of "property other than a capital asset" and will therefore be taxed—if at all—as ordinary income, not capital gain. Her assertions are not wrong, as far as they go. She is correct that section 751 is not a sourcing rule—but neither is section 741 (as she acknowledges). Where it applies, section 741 assures that proceeds on the sale of a partnership interest will be taxed—if at all— as gain arising from the sale of a capital asset. Both sections 741 and 751 are provisions that define the character of the property sold and of its proceeds, to which the sourcing rules must then be applied.

The reason that we know to treat the sale of a partnership interest as "the sale . . . of a [singular] capital asset" (as Ms. Rawat contends) is that section 741 so provides, imposing (where it applies) the "entity" theory on such sales. The proceeds of the sale are to be "considered as gain or loss from" such a sale. It is because of section 741 that the sale of a partnership interest is "considered as" the sale of a singular asset. Without section 741, we might instead invoke the aggregate character of the partnership and treat the selling partner as if, like a sole proprietor, she had sold her proportionate share of the

**[\*14]** underlying hotchpot of partnership assets; but section 741, where it applies, precludes that aggregation approach.[12]

However, to tautologize, section 741 applies only where it applies. As we have noted, section 741 has an explicit exception: "except as otherwise provided in section 751 (relating to unrealized receivables and inventory items)." Section 751 provides that the "inventory items" portion of proceeds "shall be considered as an amount realized from the sale or exchange of property other than a capital asset". Section 741, by its own terms, does not apply to the "inventory items" portion addressed by section 751, to which section 741 yields. The singular "capital asset" treatment of section 741 is thus partially disaggregated by section 751.

### b. *The differences of sections 741 and 751*

Moreover, Ms. Rawat's view—confining the effect of section 751(a) to the assuring of non-capital treatment—does not give sufficient attention to the different wording of the two statutes. Section 741 provides that in general the proceeds—

> shall be considered as gain or loss from the sale or exchange of a capital *asset*.

(Emphasis added.) But the exception in section 751(a) provides that the proceeds attributable to inventory—

> shall be considered as an amount realized from the sale or exchange of *property other than* a capital asset.

---

[12] Ms. Rawat's argument—that sections 741 and 751 merely determine the character (capital vs. ordinary) of a partner's gain or loss from the sale of a partnership interest—proves too much. Accepting her constricted view of sections 741 and 751 would undermine the rationale of *Grecian Magnesite*, on whose holding she depends. In *Grecian Magnesite* we construed section 741 as not only determining the character of gain or loss but also as identifying (subject to section 751 and other express statutory exceptions) the property involved in the transaction (i.e., "an interest in a partnership" as opposed to a proportionate share of partnership assets). And we accepted that the construct reflected in sections 741 and 751 (again, in the absence of express statutory exceptions, such as the one provided in section 897(g)) governed generally the tax consequences of a sale of a partnership interest. Petitioner's position, resting on the view that sections 741 and 751 have a more limited scope than we gave them in *Grecian Magnesite*, is an implicit claim that our decision in *Grecian Magnesite* was right for the wrong reasons. But petitioner offers no alternative rationale (from subchapter N or otherwise) to justify the result in *Grecian Magnesite* nor to salvage its holding that is critical to her argument.

**[*15]** (Emphasis added.) That is, the general rule refers to gain or loss from the sale of a singular "asset", § 741, whereas the exception refers to an amount realized from the sale of "property". This difference in the wording of these two statutes tends against Ms. Rawat's assumption that section 751 inherits the "entity" approach of section 741.

As we have noted, section 741 posits gain or loss from the sale of a singular "capital asset". It is the singular "asset" that signals that the partnership interest, and not the partnership's underlying (plural) assets, is the subject of the sale. The exception in section 751(a), however, posits an amount realized from the sale of "property" (i.e., "property other than a capital asset"). The word "asset" is necessarily singular, but the word "property" can mean "a thing or things owned; possessions collectively". *Property, Webster's New World College Dictionary* (4th ed. 2008).[13] One's "property" may consist of many "assets". If the drafters of sections 741 and 751 had intended section 751 to reflect the same "entity" approach reflected in section 741, they could perhaps have worded section 751 to provide (in a manner corresponding to section 741) that the inventory portion of proceeds "shall be considered as gain or loss from the sale or exchange of a non-capital asset". But they did not.

In *Grecian Magnesite* and in this case we give a close reading to section 741 and ascribe significance to "asset". This close reading benefits Ms. Rawat in the analysis of her Non-Inventory Gain. Turning then to section 751, we do not relax, take a casual view, and assume that the chosen wording—"property other than a capital asset"—was a random circumlocution. Rather, we observe that the drafters chose a word—"property"—that may stand for one asset or many assets. That being so, we note that when inventory is involved, the sale proceeds attributable to inventory are considered to have been realized from the sale of multiple assets.

In support of this broader understanding of section 751, the Commissioner cites *George Edward Quick Trust v. Commissioner*, 54

---

[13] To the same effect, the second definition of "property" in the *Oxford English Dictionary* (1933) is "[t]hat which one owns; a thing or things belonging to or owned by some person or persons; a possession (usually material), or possessions collectively; one's wealth or goods".

**[\*16]** T.C. 1336 (1970), *aff'd per curiam*, 444 F.2d 90 (8th Cir. 1971),[14] and *Mingo v. Commissioner*, T.C. Memo. 2013-149, *aff'd*, 773 F.3d 629 (5th Cir. 2014),[15] and he aptly quotes, Doc. 53 at 35, our opinion in *Grecian Magnesite*, 149 T.C. at 78 n.16, which states:

> Section 751 is a specific exception to section 741 that causes unrealized receivables and inventory items to be *addressed separately* from the remainder of the partnership interest when that interest is sold or liquidated. . . . We note that by the express terms of section 741, section 751 is (like section 897(g) . . .) an exception, and it mandates an "aggregation" approach for *characterizing* only gain "attributable to" "unrealized receivables" or "inventory items".

(Emphasis added.) To the same effect, and perhaps even more explicitly on point, our opinion in *Grecian Magnesite*, 149 T.C. at 79, characterized section 751 as one of the "exceptions to section 741 that, when they apply, do require that we look through the partnership to the underlying assets and *deem such a sale as the sale of separate interests in each asset* owned by the partnership." (Emphasis added.)

That is, governed in the Inventory Gain analysis not by section 741 but instead by section 751, "we look through the partnership to the underlying assets and *deem such a sale as the sale of separate interests in each asset*". *Grecian Magnesite*, 149 T.C. at 79 (emphasis added). Deeming a sale of the inventory is called for by section 751 (which "consider[s]" the proceeds to be "realized from the sale . . . of property", not of the partnership interest per se). Deeming a sale is

---

[14] As the Commissioner describes *Quick Trust*, *see* Doc. 53 at 37, it "addressed the treatment of an interest in a partnership that held unrealized receivables." That "treatment" was an effect on tax "basis" under section 1014(c) of an inherited partnership interest as affected by section 691 (concerning "income in respect of decedents"). *Quick Trust* is thus an instance in which the Court cited section 751 not only as governing the character of income as capital or ordinary (as Ms. Rawat would limit section 751) but also as warranting, for other tax purposes, the division of a partnership interest into different pieces.

[15] In *Mingo*, T.C. Memo. 2013-149, at \*11, we held that "the portion of gain attributable to section 751 property in the sale or exchange of a partnership [interest] may only be reported under the installment method to the extent that income realized on a direct sale of such property would be reportable under the installment method." The Commissioner correctly characterizes *Mingo* as "another example of the application of collateral consequences of the deemed transactions under the section 751 regulations". Doc. 77 at 5.

**[\*17]** likewise called for by equivalent text in the subparagraph of the implementing regulation, Treasury Regulation § 1.751-1(a)(1), that provides (as its caption indicates) for the "Character of amount realized".[16] Deeming a sale is consistent also with the subsequent subparagraph (entitled "Determination of gain or loss"), which provides:

> The income or loss realized by a partner upon the sale or exchange of its interest in section 751 property is the amount of income or loss from section 751 property . . . that would have been allocated to the partner (to the extent attributable to the partnership interest sold or exchanged) if the partnership had *sold all of its property in a fully taxable transaction for cash* in an amount equal to the fair market value of such property . . . immediately prior to the partner's transfer of the interest in the partnership.

Treas. Reg. § 1.751-1(a)(2) (emphasis added). That is, both the subparagraph that characterizes the transaction and its "amount realized" and the subparagraph that determines the "gain or loss" from that amount hypothesize a sale of the inventory to which the proceeds was attributable.

Admittedly, section 751 and Treasury Regulation § 1.751-1(a)(1) do not tell us the source of the proceeds nor their effective connection to a U.S. business; rather, they tell us the nature of the property considered to have been sold and the nature of the income that is to be taxed (or not). To find the sourcing rules and their effect on the nonresident alien's liability, we look elsewhere.

B.  *Sourcing the proceeds*

The sourcing rules are given in sections 861–865. Section 865 (entitled "Source rules for personal property sales") provides in part as follows:

> (a) General rule.—Except as otherwise provided in this section, income from the sale of personal property—
>> (1) by a United States resident shall be sourced in the United States, or

---

[16] Treasury Regulation § 1.751-1(a)(1) bears the caption "Character of amount realized" and, like section 751, provides that proceeds attributable to inventory are "considered as an amount realized from the sale or exchange of property other than a capital asset".

**[\*18]**      (2) by a nonresident shall be sourced outside the United States.

(b) Exception for inventory property.—In the case of income derived from the sale of inventory property—

(1) this section shall not apply, and

(2) such income shall be sourced under the rules of sections 861(a)(6), 862(a)(6), and 863.

There is no dispute that the "General rule" of subsection (a) applies to the Non-Inventory Gain and sources it "outside the United States". *But see* § 864(c)(8) (covering sales on or after November 27, 2017). Section 741 provides the character of the partnership interest sold (i.e., "a capital asset"), and section 865(a)(2) dictates its source ("outside the United States"). The Commissioner has conceded that Ms. Rawat is not taxable on that Non-Inventory Gain portion of the proceeds of her partnership interest. Ms. Rawat would have us apply this non-U.S. source "General rule" of section 865(a)(2) to the Inventory Gain as well and thereby avoid the "Exception" of section 865(b) (and its incorporation of the more complicated "rules of sections 861(a)(6), 862(a)(6), and 863").

As to that Inventory Gain, however, we have held that this portion of the proceeds is excepted from section 741 and that, under section 751(a), this portion is "attributable to . . . inventory items". For that reason we cannot follow the general rule of section 865(a) ("sourced outside the United States") but must instead follow the "Exception for inventory property" that is provided in subsection (b) of section 865 for "income derived from the sale of inventory property".

As quoted above, that subsection—section 865(b)—directs us to find the sourcing rules for the Inventory Gain in the provisions of "sections 861(a)(6), 862(a)(6), and 863",[17] and those three sections provide in relevant part as follows (emphasis added):

Sec. 861(a). Gross income from sources within United States.—The following items of gross income shall be treated as income from sources *within the United States*:

_____

[17] Each of these three statutes makes provision as to "inventory property (within the meaning of section 865(i)(1))", and we elide the parenthetical in our quotations in text. Section 865(i)(1) provides: "The term 'inventory property' means personal property described in paragraph (1) of section 1221(a)"; and section 1221(a)(1)

**[*19]**       . . . .

(6) Sale or exchange of inventory property.—
Gains, profits, and income derived from the
purchase of inventory property . . . *without* the
United States (other than within a possession of the
United States) and its *sale* or exchange *within the
United States.*

Sec. 862(a). Gross income from sources without
United States.—The following items of gross income shall
be treated as income from sources *without the United
States*:

. . . .

(6) gains, profits, and income derived from the
purchase of inventory property . . . *within* the United
States and its *sale* or exchange *without the United
States*;

Sec. 863(b). . . . Gains, profits, and income—

. . . .

(2) from the sale or exchange of inventory
property . . . *produced* (in whole or in part) by the
taxpayer *within* and *sold* or exchanged *without* the
United States, or *produced* (in whole or in part) by
the taxpayer *without* and *sold* or exchanged *within*
the United States, or

(3) derived from the purchase of inventory
property . . . *within* a possession of the United States
and its sale or exchange within the United States,

shall be treated as derived *partly from sources within and
partly from sources without* the United States.

---

in turn specifies "stock in trade of the taxpayer or other property of a kind which would
properly be included in the inventory of the taxpayer if on hand at the close of the
taxable year, or property held by the taxpayer primarily for sale to customers in the
ordinary course of his trade or business". The parties have suggested no dispute that
the Inventory Gain at issue is attributable to "inventory property" so defined.

**[\*20]** We need not parse these statutes further than to observe that they provide the sourcing rules for—

- "income derived from the . . . [sale] of inventory property", §§ 861(a)(6), 862(a)(6);

- "income . . . from the sale . . . of inventory property", § 863(b)(2); and

- income "derived from the . . . [sale] of inventory property", § 863(b)(3).

We think these phrases, like the similar phrase in section 865(b)— "income derived from the sale of inventory property"—describe the Inventory Gain, which, under section 751(a), is "attributable to . . . inventory items" and is "considered as an amount realized from the sale or exchange of property other than a capital asset." Consequently, since Ms. Rawat's motion is based on her contention, which we reject, that the sourcing rule for the Inventory Gain is the general rule of section 865(a)(2), we will deny her motion.

Despite our rejection of Ms. Rawat's principal contention about the effects of sections 741 and 751 and her reliance on the default sourcing rule of section 865(a), she might nonetheless prevail in whole or in part by showing, pursuant to section 865(b), that the source of the Inventory Gain was "without the United States" under sections 861(a)(6), 862(a)(6), and 863. In the pending motion, however, she has not attempted to make that showing.

To reflect the foregoing,

*An appropriate order will be issued.*



# United States Tax Court
### Washington, DC 20217

INDU RAWAT,

      Petitioner

      v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent

Docket No. 15340-16

## ORDER

Pursuant to our Memorandum Opinion issued in this case as T.C. Memo. 2023-14, on February 7, 2023, it is

ORDERED that petitioner's motion for summary judgment (Doc. 32), previously granted in part as to the Non-Inventory Gain issue that the Commissioner concedes (see Doc. 70), is hereby denied in remaining part as to the Inventory Gain issue. It is further

ORDERED that, no later than March 10, 2023, the parties shall file a joint status report (or, if that is not expedient, then separate reports) proposing a schedule for further proceedings in this case.

**(Signed) David Gustafson**
**Judge**

**Served 02/07/23**

A364



**Received**

04/13/23 09:24 am

**Filed**

04/13/23

Indu Rawat,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed
Docket No. 15340-16
Document No. 83

# Stipulation of Settled Issues

## UNITED STATES TAX COURT

| | | |
|---|---|---|
| INDU RAWAT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Docket No. 15340-16 |
| | ) | |
| COMMISSIONER OF | ) | Filed Electronically |
| INTERNAL REVENUE, | ) | |
| | ) | Judge Gustafson |
| Respondent. | ) | |

## THIRD STIPULATION OF SETTLED ISSUES

For purposes of this case only, the following issues are hereby settled in accordance with this third stipulation of settled issues:

1. The petition in this case presents two primary issues for resolution: (1) whether petitioner is subject to tax on that portion of the gain on a purported sale of her interest in Innovation Ventures, LLC, a U.S. partnership, that is attributable to her share of the value of partnership inventory items ("Inventory Gain") and (2) whether petitioner is subject to tax on the remaining balance of the gain on the sale of her partnership interest ("Non-Inventory Gain").

2. In a previous Stipulation of Settled Issues filed August 18, 2020, respondent conceded that petitioner is not subject to tax on the Non-Inventory Gain, and accordingly that petitioner is not liable for the deficiencies in income tax

for the taxable years 2008 and 2009 determined in the Notice of Deficiency dated

May 13, 2016 attached to the petition in this case ("the Notice"), and that petitioner

is not liable for the penalties or additions to tax under I.R.C. §§ 6651(a)(1),

6651(a)(2) and 6654 for the taxable years 2008 and 2009 determined in the Notice.

3.      At all relevant times, the inventory items of Innovation Ventures,

LLC were produced, purchased, and sold by Innovation Ventures, LLC only

within the United States.

4.      Petitioner therefore concedes that she is subject to tax on the

Inventory Gain, pursuant to this Court's opinion filed February 7, 2023, T.C.

Memo. 2023-14. Petitioner, however, preserves her right to appeal the Court's

decision and thus this concession.

5.      With respect to petitioner's claim for overpayment of penalties or

additions to tax under I.R.C. §§ 6651(a)(1), 6651(a)(2) and 6654 paid for the

taxable year 2008, and subject to agreement under Rule 155 on computations

related to the payment petitioner made, petitioner concedes the penalties and

additions to tax were properly imposed and all defenses to the penalties and

additions to tax, subject only to the potential recalculation of such amounts as

described in the following paragraph.

6.     To the extent petitioner prevails on appeal or otherwise with respect to her claim for an overpayment of income tax for the taxable year 2008, respondent will recompute the penalties and additions to tax, such that petitioner will be entitled to a refund of the penalties and additions to tax previously assessed and paid for the taxable year 2008 to the same extent as with respect to the underlying tax.

7.     This stipulation shall not prejudice either party's right to contest the correctness of the Court's February 7, 2023, opinion through a timely appeal of the Court's decision in this case.

Dated: April 12, 2023                    Respectfully submitted,

                                         DRITA TONUZI
                                         Deputy Chief Counsel
                                         Internal Revenue Service

By: _____            _____
CHRISTOPHER S. RIZEK                     H. BARTON THOMAS
Tax Court Bar No. RC0369                 Special Trial Attorney
Caplin & Drysdale, Chartered             (Large Business & International)
One Thomas Circle, N.W.                  Tax Court Bar No. TH0204
Suite 1100                               200 West Adams St., #2400
Washington, DC 20005                     Chicago, IL 60606
Telephone: (202) 862-8852                Telephone: (312) 368-8155
crizek@capdale.com                       barton.thomas@irscounsel.treas.gov

NATHAN J. HOCHMAN                        Counsel for Respondent
Tax Court Bar No. HN0101
Ross LLP
1900 Avenue of the Stars
Suite 1225
Los Angeles, California 90067
Telephone: (424) 202-5559
NathanJHochman@gmail.com


Counsel for Petitioner



Indu Rawat,

      Petitioner

    v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed
Docket No. 15340-16
Document No. 85

# Motion for Entry of Decision



Indu Rawat,

       Petitioner

       v.

Commissioner of Internal Revenue

       Respondent

Electronically Filed
Docket No. 15340-16
Document No. 85

# Motion for Entry of Decision

# UNITED STATES TAX COURT

INDU RAWAT,            )
                                     )
           Petitioner,       )
                                     )
v.                               )     Docket No. 15340-16
                                     )
COMMISSIONER OF     )     Filed Electronically
INTERNAL REVENUE,     )
                                     )     Judge Gustafson
           Respondent.     )

## MOTION FOR ENTRY OF DECISION

Petitioner moves, pursuant to the provisions of Tax Court Rule 50, that the Court enter a decision in this case in accordance with the previous findings, orders, and opinions of the Court, and the stipulations of the parties; and in support of this motion petitioner states as follows:

1.     The deficiency notice in this case proposed income tax and penalties related primarily (for 2008) or exclusively (for 2009) to the so-called "Non-Inventory Gain." The parties have stipulated (Docs. No. 55 and 83) that there is no deficiency in income tax due from petitioner for taxable year 2008 and 2009, related to the Non-Inventory Gain.

2.     Accordingly, there are no penalties related to those deficiencies due from petitioner for taxable years 2008 and 2009.

3.    The parties have stipulated that at all relevant times, the inventory items of Innovation Ventures, LLC were produced, purchased, and sold by Innovation Ventures, LLC only within the United States. (Doc. No. 83.) Therefore, under the Court's Opinion filed February 7, 2023, T.C. Memo. 2023-14, petitioner has conceded that she is subject to tax on the "Inventory Gain."

4.    The payment made by petitioner after the statutory notice of deficiency was issues, and with respect to which petitioner invoked the Court's refund jurisdiction (Petition, paras. 3, 5.h.h) relates exclusively to the tax, penalties, and interest arising in taxable year 2008 from the so-called "Inventory Gain."

5.    Under the Court's February 7 opinion and the parties' stipulation, therefore, petitioner is not entitled to refund of any of the amount paid with respect to 2008, except to the extent of one minor, agreed-upon adjustment to that amount. (Doc. No. 83, para. 6.) (It appears that petitioner slightly overpaid deficiency interest by $833.40, which respondent has agreed should be refunded, along with additional statutory interest on that amount.)

6.    Because all legal and relevant factual issues in this case have been resolved, the case is ripe for entry of the Court's decision.

7.      Respondent opposes this motion, but his reason for doing so is unrelated to the merits of the case.  Rather, respondent seeks only to delay this case until another case pending in the Court (*Innovation Ventures, LLC, Manoj Bhargava, Tax Matters Partner v. Comm'r*, Docket No. 5741-19) is resolved.  But that case was filed *after* this one; it has been stayed for over three years, with periodic status reports being the only filings or indication of any progress whatsoever; and petitioner here has advised the Court repeatedly of her desire to obtain finality, notwithstanding the risk of an inconsistent result in *Innovation Ventures.  E.g.*, Joint Status Report, para. 5 (March 10, 2023) (Doc. No. 82).

8.      Accordingly, the Court should enter a decision in this case.  A proposed decision document reflecting the foregoing results is attached to this motion.

Dated: April 17, 2023                           Respectfully submitted,


CHRISTOPHER S. RIZEK
Tax Court Bar No. RC0369
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Suite 1100
Washington, DC 20005
Telephone: (202) 862-8852
crizek@capdale.com

s/ Nathan J. Hochman
NATHAN J. HOCHMAN
Tax Court Bar No. HN0101
Browne George Ross LLP
2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067
Telephone: (424) 202-5559
nhochman@bgrfirm.com

Counsel for Petitioner

# Attachment:

# Proposed Decision

# UNITED STATES TAX COURT

| | | |
|---|---|---|
| INDU RAWAT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Docket No. 15340-16 |
| | ) | |
| COMMISSIONER OF | ) | Filed Electronically |
| INTERNAL REVENUE, | ) | |
| | ) | Judge Gustafson |
| Respondent. | ) | |

## DECISION

Pursuant to the opinion of the Court filed February 7, 2023, and incorporating the stipulations of the parties as the findings of the Court, it is hereby ORDERED AND DECIDED:

1.    That there is no deficiency in income tax due from petitioner for the taxable years 2008 and 2009;

2.    That there are no penalties or additions to tax due from petitioner for the taxable years 2008 and 2009;

3.    That there is no overpayment due to petitioner for the taxable year 2008, except to the extent that that petitioner overpaid any deficiency interest, which shall be refunded to her with additional statutory interest as provided by law.

Judge.

**Received**

04/18/23 02:50 pm

**Filed**

04/18/23



Indu Rawat,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed

Docket No. 15340-16

Document No. 87

# Stipulation of Settled Issues

**SERVED 04/18/23**

A379

# UNITED STATES TAX COURT

| | | |
|---|---|---|
| INDU RAWAT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Docket No. 15340-16 |
| | ) | |
| COMMISSIONER OF | ) | Filed Electronically |
| INTERNAL REVENUE, | ) | |
| | ) | Judge Gustafson |
| Respondent. | ) | |

## FOURTH STIPULATION OF SETTLED ISSUES

For purposes of this case only, the following issues are hereby settled in accordance with this fourth stipulation of settled issues:

1.     Without prejudice to either party's right to appeal, it is hereby stipulated that the attached Form 3623, <u>Statement of Account</u>, shows petitioner's tax liability for the 2008 tax year, as computed pursuant to the Opinion of the Court filed February 7, 2023 and the prior stipulations of the parties.

Dated: 4/18/2023

Respectfully submitted,

DRITA TONUZI
Deputy Chief Counsel
Internal Revenue Service

By:

CHRISTOPHER S. RIZEK
Tax Court Bar No. RC0369
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Suite 1100
Washington, DC 20005
Telephone: (202) 862-8852
crizek@capdale.com

H. BARTON THOMAS
Special Trial Attorney
(Large Business & International)
Tax Court Bar No. TH0204
200 West Adams St., #2400
Chicago, IL 60606
Telephone: (312) 368-8155
barton.thomas@irscounsel.treas.gov

NATHAN J. HOCHMAN
Tax Court Bar No. HN0101
Ross LLP
1900 Avenue of the Stars
Suite 1225
Los Angeles, California 90067
Telephone: (424) 202-5559
NathanJHochman@gmail.com

Counsel for Respondent

Counsel for Petitioner

| Form **3623** (Rev. April 1985) | Department of the Treasury - Internal Revenue Service **Statement of Account** | Schedule Number A |
|---|---|---|

Name of Taxpayer
**INDU RAWAT**

| Kind of Tax Income | Docket Number 15340-16 | In Reply Refer To CC:SL:2:G8:HBT:LMD | |
|---|---|---|---|

| Tax Year Ended | | 12/31/2008 | | 12/31/2008 | | | | |
|---|---|---|---|---|---|---|---|---|
| Tax/Addition to Tax | | Tax | | IRC §6651(a)(1) | | | | |
| | Date | Amount | Date | Amount | Date | Amount | Date | Amount |
| Revised Liability | | 1,598,229.00 | | 359,601.53 | | | | |
| Assessment *(tax on return)* | | 1,598,229.00 | | 359,601.53 | | | | |
| Additional Assessments | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| Overassessments | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| **Total Assessments** | | 1,598,229.00 | | 359,601.53 | | | | |
| Increase *(Decrease)* in Assessment | | 0.00 | | 0.00 | | | | |
| Revised Liability | | 1,598,229.00 | | 359,601.53 | | | | |
| *Payment | 6/1/2016 | 1,599,062.40 | | 359,601.53 | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| Less Refunds or Credit | | | | | | | | |
| | | | | | | | | |
| **Total Payments** | | 1,599,062.40 | | 359,601.53 | | | | |
| Balance Due *(or overpayment)* | | (833.40) | | 0.00 | | | | |

| Tax Year Ended | Internal Revenue Code Reference | | Date Return Filed | Date Agreement Signed | Statute Extended To | Date Deficiency Notice Mailed | Date Claim Filed | Amount of Claim |
|---|---|---|---|---|---|---|---|---|
| | Year | Section | | | | | | |
| 12/31/2008 | 1986 | **6512(b)(3)(A)** | 4/28/11 | | | 5/13/16 | | |
| | | | | | | | | |
| | | | | | | | | |

Form 3623 (Rev. 4-85)

*The payment made on 06-01-2016 totaled $2,942,000.27.  $ 51,361.51 was applied to IRC 6654 addition to tax, $399,557.25 was applied to the 6651(a)(2) addition to tax and $532,417.58 was applied to the interest assessed on the account

A382



# United States Tax Court
Washington, DC 20217

INDU RAWAT,

      Petitioner

      v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent

Docket No. 15340-16

## <u>ORDER AND DECISION</u>

We decided in favor of the Commissioner the principal disputed issue in this case (concerning "Inventory Gain") by our opinion released February 7, 2023, as T.C. Memo. Op. 2023-14. By stipulation (see Docs. 55, 71, 83, 87) the parties have resolved the remaining issues, and have agreed on the form that the decision should take in order to effectuate the Court's opinion and the parties' stipulations. (See Doc. 92, para. 2, Ex. A; Doc. 94.)

Petitioner Indu Rawat has filed a motion (Doc. 85) for entry of that decision--not because she agrees with the Court's opinion but, on the contrary, because she evidently intends to appeal the decision once it is entered. The Commissioner opposes the motion as premature, urging that a related case is pending--i.e., *Innovation Ventures v. Commissioner*, Docket No. 5741-19--the outcome of which might be inconsistent with the adverse treatment resulting against Ms. Rawat from our opinion and, depending on that outcome, might prompt in this case a concession by the Commissioner, notwithstanding our opinion, if no decision has yet become final in this case. The Commissioner points to the risk that the entry of decision in this case now and a later entry of a decision in *Innovation Ventures* might yield an inconsistency that could not be cured because of the finality rules of section 7481(a), to Ms. Rawat's detriment.

Ms. Rawat observes, however, that the *Innovation Ventures* case "was filed after this one; it has been stayed for over three years, with periodic status reports being the only filings or indication of any progress whatsoever; and petitioner here has advised the Court repeatedly of her desire to obtain finality, notwithstanding the risk of an inconsistent result in *Innovation Ventures*. E.g., Joint Status Report, para. 5 (March 10, 2023) (Doc. No. 82)."

**Entered and Served 05/22/23**

A383

Given Ms. Rawat's willingness to assume that risk, it is

ORDERED that Ms. Rawat's motion (Doc. 85) for entry of decision is granted.

It is therefore

DECIDED:

1.      That there is no deficiency in income tax due from petitioner for the taxable years 2008 and 2009;

2.      That there are no penalties or additions to tax due from petitioner for the taxable years 2008 and 2009;

3.      That there is an overpayment due to petitioner for the taxable year 2008 in the amount of $833.40, which shall be refunded to her with additional statutory interest as provided by law.


**(Signed) David Gustafson**
**Judge**

A384



**Received**
05/31/23

**Filed**
05/31/23

Indu Rawat,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed
Docket No. 15340-16
Document No. 96

# Notice of Appeal for the D.C. Circuit

**SERVED 05/31/23**

A385



Indu Rawat,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed
Docket No. 15340-16
Document No. 96

# Notice of Appeal

**UNITED STATES TAX COURT**

INDU RAWAT,                 )
                                   )
             Petitioner,     )
                                     )
v.                                  )     Docket No. 15340-16
                                     )
COMMISSIONER OF       )     Filed Electronically
INTERNAL REVENUE,     )
                                     )     Judge Gustafson
             Respondent.    )

**NOTICE OF APPEAL**

Petitioner Indu Rawat hereby appeals to the United States Court of Appeals

for the District of Columbia Circuit from the decision entered on May 22, 2023.

Dated: May 31, 2023           Respectfully submitted,

                                  _____
                                  CHRISTOPHER S. RIZEK
                                  Tax Court Bar No. RC0369
                                  Caplin & Drysdale, Chartered
                                  One Thomas Circle, N.W.
                                  Suite 1100
                                  Washington, DC 20005
                                  Telephone: (202) 862-8852
                                  crizek@capdale.com

s/ Nathan J. Hochman
NATHAN J. HOCHMAN
Tax Court Bar No. HN0101
Browne George Ross LLP
2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067
Telephone: (424) 202-5559
nhochman@bgrfirm.com