[ORAL ARGUMENT NOT YET SCHEDULED]

# No. 23-1142

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

### INDU RAWAT,

Appellant

v.

### COMMISSIONER OF INTERNAL REVENUE,

Appellee

———————————

## ON APPEAL FROM THE DECISION
## OF THE UNITED STATES TAX COURT

———————————

## FINAL BRIEF FOR THE APPELLEE

———————————

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

JACOB EARL CHRISTENSEN          (202) 307-0878
DOUGLAS C. RENNIE               (202) 305-7546
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.    Parties and Amici**.  The petitioner, appellant in this Court, is Indu Rawat.  The respondent, appellee in this Court, is the Commissioner of Internal Revenue.  There were no amici or intervenors appearing before the Tax Court, and there are no amici or intervenors who have appeared in this Court.

**B.    Rulings Under Review**.  The rulings under review are the decision of the United States Tax Court by Judge David Gustafson entered on May 22, 2023, and the court's memorandum opinion denying appellant's motion for summary judgment entered on February 7, 2023, and published at T.C. Memo. 2023-14.

**C.    Related Cases**.  This case was not previously before this Court or any other appellate court.  A related case is pending in the Tax Court:  *Innovation Ventures, LLC, Manoj Bhargava, Tax Matters Partner v. Commissioner*, No. 5714-19.  Counsel is not aware of any other related cases currently pending in this Court or in any other court, as provided in Circuit Rule 28(a)(1)(C).

# TABLE OF CONTENTS

**Page**

Certificate as to parties, rulings, and related cases ................................i

Table of contents.................................................................................ii

Table of authorities ...........................................................................iv

Glossary ...............................................................................................ix

Statement of jurisdiction...................................................................1

Statement of the issue........................................................................2

Statutes and regulations.....................................................................3

Statement of the case ........................................................................3

    A.   Facts .......................................................................................4

    B.   Procedural history..................................................................6

Summary of argument ........................................................................9

Argument:

    The portion of Rawat's profits from her sale of a partnership
    interest attributable to the partnership's inventory is taxable
    as U.S.-source income .....................................................................13

        Standard of review ...............................................................13

    A.   Introduction:  U.S. taxation of foreign individuals...............13

    B.   Subchapter K defines the nature of the inventory gain,
        which is taxable under the source rules ...............................16

    C.   Rawat's arguments are unavailing .......................................25

        1.   Rawat's attempt to dissect the statute fails ................26

        2.   Section 751 incorporates a "deemed sale" approach ...30

        3.   Section 751 is not limited to characterization............33

**Page**

4.    Rawat's sale was "effectively connected" to the partnership's business ................................................. 38

5.    Section 897(g) does not support taxpayer's argument ........................................................................ 42

6.    The "entity theory" does not help Rawat ..................... 44

Conclusion ......................................................................... 46
Statutory Addendum .......................................................... 47
Certificate of compliance ................................................... 52

# TABLE OF AUTHORITIES

**Cases:**                                                     **Page(s)**

*Charron v. United States*,
    200 F.3d 785 (Fed. Cir. 1999) ................................................. 16

*Coggin Auto. Corp. v. Commissioner*,
    292 F.3d 1326 (11th Cir. 2002) .............................................. 31

*Dresser Indus., Inc. v. United States*,
    238 F.3d 603 (5th Cir. 2001) .................................................. 33

*Fluor Corp. & Affiliates v. United States*,
    126 F.3d 1397 (Fed. Cir. 1997) ............................................. 33

*Gerardo v. Commissioner*,
    552 F.2d 549 (3d Cir. 1977) ..................................................... 9

*Glade Creek Partners, LLC v. Commissioner*,
    T.C. Memo. 2023-82 .............................................................. 30

*Grecian Magnesite Mining, Industrial & Shipping Co. v.
    Commissioner*, 149 T.C. 63 (2017), *aff'd*,
    926 F.3d 819 (D.C. Cir. 2019) ........................... 6-7, 13, 19-22,
                                              30, 37, 39-42

*Greenberg v. Commissioner*,
    10 F.4th 1136 (11th Cir. 2021) .............................................8-9

*Hay v. Commissioner*,
    145 F.2d 1001 (4th Cir. 1944) ............................................... 16

*Helvering v. Stockholms Enskilda Bank*,
    293 U.S. 84 (1934) .............................................................15-16

*Innovation Ventures, LLC v. Commissioner*,
    No. 5714-19 (T.C.) ................................................................. 8

*Keasler v. United States*,
    766 F.2d 1227 (8th Cir. 1985) ............................................... 36

*Ledoux v. Commissioner*,
    77 T.C. 293 (1981), *aff'd*,
    695 F.2d 1320 (11th Cir. 1983) ....................................... 19, 38

*Madorin v. Commissioner*,
    84 T.C. 667 (1985) ................................................................ 19

*Marquardt Co. v. United States*,
    822 F.2d 1573 (Fed. Cir. 1987) ............................................. 33

**Cases (cont'd):**                                                          **Page(s)**

*Mingo v. Commissioner*,
    T.C. Memo. 2013-149, *aff'd*,
    773 F.3d 629 (5th Cir. 2014) ......................... 19, 22, 24, 34, 36

*Petroleum Corp. of Texas v. United States*,
    939 F.2d 1165 (5th Cir. 1991) ......................................... 31, 44

*Quick's Trust v. Commissioner*,
    54 T.C. 1336 (1970), *aff'd*,
    44 F.2d 90 (8th Cir. 1971), ................................................ 35-36

*Rodman v. Commissioner*,
    542 F.2d 845 (2d Cir. 1976) .................................................. 32

*Rosenthal v. Commissioner*,
    416 F.2d 491 (2d Cir. 1969) .................................................. 32

*SAS Inst., Inc. v. Iancu*,
    138 S. Ct. 1348 (2018) .......................................................... 28

*Schudel v. Commissioner*,
    563 F.2d 1300 (9th Cir. 1977) ........................................... 32-33

*Sherbo v. Commissioner*,
    255 F.3d 650 (8th Cir. 2001) .................................................. 9

*Unger v. Commissioner*,
    936 F.2d 1316 (D.C. Cir. 1991) ....................................... 36, 44

*United States v. Woods*,
    571 U.S. 31 (2013) ................................................................ 5

*United States v. Woolsey*,
    326 F.2d 287 (5th Cir. 1963) ..................... 18-19, 22, 24, 28-29

*Ware v. Commissioner*,
    906 F.2d 62 (2d Cir. 1990) ......................................... 17, 19, 28

*Woodhall v. Commissioner*,
    454 F.2d 226 (9th Cir. 1972) ................................................ 35

**Statutes:**

Internal Revenue Code (26 U.S.C.):

    § 453 .................................................................................. 34
    § 453(b) ............................................................................... 34
    § 631(a) ............................................................................ 32-33

**Statutes (cont'd):**                                                 **Page(s)**

Internal Revenue Code (26 U.S.C.) (cont'd):

§§ 701–761 ...................................................................17
§ 701 ...........................................................................17
§ 702 ...........................................................................17
§ 704 ...........................................................................17
§ 731(a) .......................................................................32
§ 741 ..............................................6-11, 17-18, 20-22, 25-29,
                        31-32, 38, 40, 43 45
§ 751 ........................................5, 8-9, 11-12, 18-19,
                        21-26, 28-45
§ 751(a) .................................................18, 26-27, 29-30
§ 751(a)(2) ...................................................................8
§ 751(d)(1) .................................................................42
§ 751(d)(2)–(3) ...........................................................42
§§ 861–865 ................................................................14
§ 861 ...........................................................................16
§ 861(a)(6) ..................................................................14
§ 862(a)(6) ..................................................................14
§ 863 ...........................................................................15
§ 864(c)(2) ..................................................................14
§ 864(c)(3) ........................................................14, 40, 42
§ 864(c)(8) (2018) ......................................................37
§ 865 ...........................................................................40
§ 865(a) .............................................................3, 9, 25
§ 865(a)(2) ......................................................10, 14, 26
§ 865(b) .......................................3, 9-10, 14, 25, 41-42
§ 865(b)(1) ..................................................................14
§ 865(b)(2) ............................................................14, 23
§ 865(e)(2)(A) .............................................................41
§ 865(i)(1) ...................................................................42
§ 865(i)(2) ..............................................................10, 23
§ 871(a) .......................................................................13
§ 871(b) ................................................................10, 13
§ 871(b)(1) ..................................................................14

**Statutes (cont'd):** **Page(s)**

Internal Revenue Code (26 U.S.C.) (cont'd):

§ 875(1) ................................................................14, 39-42

§ 897 ................................................................................43

§ 897(g) ....................................................................25, 42

§ 1014 ............................................................................35

§ 1221(a)(1) ........................................................23-24, 42

§ 6031 ............................................................................17

§ 6212(a) ..........................................................................1

§ 6213(a) ..........................................................................2

§ 6231(a)(6) ....................................................................5

§ 6512(b) ..........................................................................2

§ 7121 ..............................................................................5

§ 7442 ..............................................................................2

§ 7482(a)(1) ..............................................................2, 13

§ 7482(b)(1) ....................................................................2

§ 7483 ..............................................................................2

**Regulations:**

Treasury Regulations (26 C.F.R.):

§ 1.61-3(a) ......................................................................23

§ 1.751-1(a) ....................................................................33

§ 1.751-1(a)(2) ........................................................23, 31

§ 1.751-1(g) ....................................................................23

§ 1.861-7 ........................................................................10

§ 1.861-7(a) ............................................................15, 24

§ 301.7701-3 ....................................................................4

§ 864(c)(8)-1 (2023) ......................................................37

**Miscellaneous:**

Boris I. Bittker & Lawrence Lokken,
*Federal Taxation of Income, Estates and Gifts* ......................13

-viii-

**Miscellaneous (cont'd):**                                   **Page(s)**

H.R. Rep. No. 83-1337 (1954)........................................18-19, 35, 38

H.R. Rep. No. 99-426 (1985), *reprinted in*
    1986-3 C.B. (Vol 2) 1 ............................................................ 15

H.R. Rep. No. 96-1167 (1980), *reprinted in*
    1980 U.S.C.C.A.N. 5526.......................................................... 43

Joint Committee on Taxation, 99th Cong., *General*
    *Explanation of the Tax Reform Act of 1986*,
     (Comm. Print 1987)................................................................ 15

William S. McKee et al., *Federal Taxation of Partnerships &*
    *Partners*, 1997 WL 663649, ¶ 17.02 (2023) .................... 32, 44

S. Comm. on Budget, 115th Cong., *Reconciliation*
    *Recommendations Pursuant to H. Con. Res. 71*,
    S. Prt. 115-20 (Comm. Print. 2017) ...................................... 37

S. Rep. No. 83-1622 (1954) ................................................. 18, 35, 38

Arthur B. Willis et al., *Partnership Taxation*,
    1999 WL 630381, ¶ 14.03 (2023) .......................................... 32

-ix-

# GLOSSARY

| *Term* | *Definition* |
|--------|--------------|
| Code | Internal Revenue Code (26 U.S.C.) |
| Commissioner | Commissioner of Internal Revenue |
| Inventory gain | Rawat's share of the income from the partnership's inventory |
| I.R.C. | Internal Revenue Code (26 U.S.C.) |
| IRS | Internal Revenue Service |
| Non-inventory gain | Rawat's gain from the sale of her partnership interest, less the inventory gain |
| Partnership | Innovation Ventures, LLC, d/b/a/ Living Essentials |
| Treas. Reg. | Treasury Regulations (26 C.F.R.) |
| U.S. | United States |

**[ORAL ARGUMENT NOT YET SCHEDULED]**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

**No. 23-1142**

**INDU RAWAT,**

**Appellant**

**v.**

**COMMISSIONER OF INTERNAL REVENUE,**

**Appellee**

———————————

**ON APPEAL FROM THE DECISION
OF THE UNITED STATES TAX COURT**

———————————

**BRIEF FOR THE APPELLEE**

———————————

**STATEMENT OF JURISDICTION**

On May 13, 2016, the Commissioner issued a notice of deficiency under § 6212(a) of the Internal Revenue Code ("I.R.C.") (26 U.S.C.) to Indu Rawat determining deficiencies in her federal income taxes for the 2008 and 2009 tax years. (JA29–40.)[1] On July 7, 2016, Rawat timely

———————————

[1] Unless otherwise indicated, all statutory and regulatory references are to the Internal Revenue Code (26 U.S.C.) and the

(continued…)

-2-

petitioned the Tax Court challenging the deficiencies under I.R.C.
§ 6213(a) and seeking the determination of an overpayment of
$2,942,000.27 pursuant to I.R.C. § 6512(b). (JA16–41.) The Tax Court
had jurisdiction under I.R.C. §§ 6213(a), 6512(b), and 7442.

On May 22, 2023, the Tax Court entered a decision determining
that there were no deficiencies in income tax due from Rawat for the
2008 and 2009 tax years and that there was an overpayment in the
amount of $833.40 for the 2008 tax year, resolving all claims of all
parties. (JA383–84.) On May 31, 2023, Rawat filed a notice of appeal
that was timely under I.R.C. § 7483. (JA385–88.) This Court has
jurisdiction under I.R.C. § 7482(a)(1), and venue is proper under the
flush language of I.R.C. § 7482(b)(1).

## STATEMENT OF THE ISSUE

Indu Rawat, a nonresident alien for federal income tax purposes,
sold her interest in a U.S. partnership for a profit in 2008. A portion of
her gain on the sale, over $6.5 million, was attributable to inventory

---

Treasury Regulations (26 C.F.R.) in effect during 2008 and 2009, the
tax years at issue. "JA" references are to the parties' joint appendix.
"Doc." references are to the documents in the record, as numbered by
the clerk of the Tax Court. "Br." refers to appellant's opening brief.

-3-

held by the partnership.  The issue on appeal is whether the rules for determining the source of that gain (U.S. or foreign) are those generally applicable to personal property under I.R.C. § 865(a), as Rawat maintains, or those specifically governing inventory property under I.R.C. § 865(b) (and the provisions referenced therein), as the Commissioner maintains and as the Tax Court held.  There is no dispute that if I.R.C. § 865(b) applies, as the Tax Court held, then the over $6.5 million inventory gain at issue is sourced in the United States and is subject to federal income tax, as reflected in the Tax Court's decision.

## STATUTES AND REGULATIONS

The pertinent statutes and regulations are set forth in the attached addendum.

## STATEMENT OF THE CASE

Indu Rawat, a nonresident alien for federal income tax purposes, owned an interest in a business in the United States that sells "5-hour Energy" drinks.  She sold her stake in that business in 2008.  The IRS asserted that the portion of her proceeds from that sale attributable to the business's inventory was U.S.-source income subject to federal

-4-

income tax.  Rawat paid the taxes and sought a refund in the United

States Tax Court.  The Tax Court agreed with the IRS, and Rawat now

appeals.

### A.    Facts

Rawat is a nonresident alien who, during the relevant period,

claimed to be a citizen of Canada and a resident of India.  (JA341; JA20

¶ 5(a)-(b).)  Rawat held a 29.2% interest in a U.S. business, Innovation

Ventures, LLC, d/b/a/ Living Essentials, which was classified as a

partnership for federal income tax purposes during the years at issue.

(JA180); *see* Treas. Reg. § 301.7701-3.  The partnership sold consumer

products, including "5-hour Energy" drinks, in the United States.  (*See*

JA239.)  Its inventory was produced, purchased, and sold in the United

States.  (JA367 ¶ 3.)

In January 2008, Rawat sold her interest in the partnership for a

$438,075,000 promissory note.  (JA49–63; JA128 ¶12.)  The terms of the

note provided for interest-only payments until its maturity date in

2028.  (JA49–63.)  At the time of the sale, the partnership held

-5-

inventory with a cost or tax basis[2] of $6,426,056.  (JA128 ¶ 12.)  The partnership later sold the inventory for a profit of $22,339,664, and Rawat's share of that profit, attributable to the inventory, was $6,523,176 (the "inventory gain").[3]  (JA128 ¶ 12.)

The IRS audited the partnership's 2007 and 2008 tax returns. (JA22 ¶ 5(t).)  In 2010 and 2011, Rawat entered into a closing agreement with the IRS, *see* I.R.C. § 7121, agreeing to certain adjustments, including that Rawat would "recognize ordinary income" in the amount of the inventory gain.  (JA127–28 ¶¶ 9–12; JA200–08.) The IRS then issued a notice of computational adjustment, *see* I.R.C. § 6231(a)(6), determining that Rawat owed $2,258,984 in taxes on the inventory gain.  (JA216–31.)  After giving credit to Rawat for a carryover deduction, the IRS assessed the amounts due.  (JA129 ¶ 15.)

---

[2] "Tax basis is the amount used as the cost of an asset when computing how much its owner gained or lost for tax purposes when disposing of it."  *United States v. Woods*, 571 U.S. 31, 35 (2013).

[3] As discussed below, the disputed amount here is properly considered "income" under Section 751 and its regulations.  For ease of discussion, this brief will use the term "inventory gain" to refer to that income, consistent with the Tax Court's memorandum opinion.  (*See* JA344–63.)

In May 2016, the IRS issued a notice of deficiency determining additional taxes owed from the partnership sale. (JA29–40.) In June 2016, Rawat paid the tax liability attributable to the inventory gain assessment, plus penalties and interest. (JA25 ¶ 5(hh).)

## B.    Procedural history

In July 2016, Rawat challenged the deficiencies in Tax Court and sought a $2,942,000.27 refund, corresponding to her payment. (JA16–41.) As filed, the case presented two issues for the court to resolve: (1) whether Rawat was liable for the tax attributable to the inventory gain; and (2) whether she was subject to tax on the remainder of the gain from the sale of her partnership interest (the "non-inventory gain"). (JA366 ¶ 1.) After this Court issued its decision in *Grecian Magnesite Mining, Industrial & Shipping Co. v. Commissioner*, 926 F.3d 819 (D.C. Cir. 2019), *aff'g* 149 T.C. 63 (2017), the IRS conceded the non-inventory gain issue. (JA294–95.)

Rawat moved for summary judgment, arguing that the inventory gain issue was also controlled by *Grecian Magnesite* and I.R.C. § 741. (*See* Doc. 32; JA110–24.) The Tax Court initially denied the motion, agreeing with the IRS that there was a genuine issue of material fact as

-7-

to whether Rawat had agreed to "recognize" the inventory gain in the

closing agreement.  (*See* JA297–308.)  Rawat then moved for

reconsideration, contending that although she agreed to recognize the

inventory gain, that did not mean it was taxable to her because she had

not agreed that the inventory gain was sourced in the U.S.  (JA309–31.)

The Tax Court granted that motion, but still denied Rawat's motion for

summary judgment because there was a genuine issue of material fact

as to her status as a nonresident alien.  (JA332–39.)  After the IRS

conceded Rawat's status as a nonresident alien, the court vacated that

order and took Rawat's motion for summary judgment under

advisement.  (JA343.)

After receiving further briefing, the Tax Court (Judge David

Gustafson) issued a memorandum opinion and order denying Rawat's

motion for summary judgment.  (JA344–64.)  The court acknowledged

that pursuant to *Grecian Magnesite*, "as a general rule, the asset to be

considered in the sourcing analysis is the partnership interest itself

(which is the subject of the sale) and not the underlying partnership

assets."  (JA353.)  But, the court explained, that general rule as

provided under Section 741 "gives way to the specific provision in

section 751(a)(2) that the portion of the sold partnership interest attributable to inventory items must be separately 'considered.'" (JA353–54.)  The court acknowledged Rawat's argument that Sections 741 and 751 are not "sourcing rules," but nonetheless rejected her attempt to confine § 751 to a determination of the character of gain while relying on § 741 for broader purposes.  (JA356–63.)  The court, accordingly, denied her motion.  After the parties resolved the remaining issues by stipulation, the court issued its decision determining that no deficiencies in tax were due and that Rawat was owed a refund of $833.40 for the 2008 tax year.  (JA383–84.)[4]  Rawat now appeals.  (JA385–88.)

---

[4] At Rawat's urging, the Tax Court also denied the Commissioner's request for a stay pending that court's decision in a separate but related case, *Innovation Ventures, LLC v. Commissioner*, No. 5714-19.  (JA383.)  As the Commissioner had explained, in the *Innovation Ventures* case, the Commissioner took the position that Rawat's sale of her partnership interest lacked economic substance and should be disregarded.  (*See, e.g.*, JA287–89.)  If that position prevailed, the Commissioner intended to abandon his position in the present case, which assumes the validity of the sale.  (JA288 ¶ 5.)  Contrary to Rawat's suggestion that this was improper (*see* Br. i), "[i]t is well established that the IRS 'is permitted to assert inconsistent positions against taxpayers on different sides of a transaction to protect the treasury against 'whipsaw' by taxpayers who themselves assert inconsistent positions.'"  *Greenberg v. Commissioner*, 10 F.4th 1136,

(continued…)

-9-

## SUMMARY OF ARGUMENT

Indu Rawat is a nonresident alien for federal income tax purposes who sold her interest in a U.S. partnership. Part of the gain realized from the sale of her partnership interest, over $6.5 million, was attributable to inventory held for sale by the partnership. Under I.R.C. §§ 741 and 751, the over $6.5 million of income from the sale that is attributable to inventory is considered as an amount realized from the sale of inventory property (rather than from the sale of a capital asset). Therefore, the source rules applicable specifically to inventory property under I.R.C. § 865(b) (and the provisions referenced therein)—rather than the source rules generally applicable to personal property under I.R.C. § 865(a)—govern in determining whether the inventory gain is sourced in or outside the United States for federal income tax purposes. The Tax Court correctly so held in its order denying Rawat's motion for summary judgment. Rawat does not dispute that if I.R.C. § 865(b)'s exception for inventory property applies, as the Tax Court held, then

---

1174 (11th Cir. 2021) (citations omitted); *accord Sherbo v. Commissioner*, 255 F.3d 650, 655 (8th Cir. 2001); *Gerardo v. Commissioner*, 552 F.2d 549, 555–56 (3d Cir. 1977).

the inventory gain at issue is sourced in the United States and is subject to federal income tax, as reflected in the Tax Court's decision.

Under the Internal Revenue Code, nonresident aliens are generally subject to U.S. taxes on income from U.S. business activities that are "effectively connected" to the United States. *E.g.*, I.R.C. § 871(b). But, with exceptions not relevant here, they are not subject to tax on activities sourced outside the United States, including sales of personal property (such as partnership interests), which are generally regarded as taking place in their country of residence. *See* I.R.C. § 865(a)(2).

For some purposes, the Code regards partnership interests as undivided capital assets rather than aggregations of the partnership's holdings. *See* I.R.C. § 741. For example, sales of those interests by nonresident aliens are generally sourced outside the United States like other personal property sales. I.R.C. § 865(a)(2). But that rule is subject to a specific exception for inventory property, which is instead generally sourced where the inventory is sold or otherwise disposed of. I.R.C. § 865(b), (i)(2); Treas. Reg. § 1.861-7. Under the Code, the income attributable to a partnership's inventory is severed from the rest of the

-11-

gain from the sale and deemed as if it arose from a separate sale of inventory. I.R.C. §§ 741, 751. In the present case, that meant that the portion of Rawat's profits from the sale of her partnership interest attributable to the partnership's inventory was sourced in and taxable by the United States. The Tax Court properly rejected her arguments to the contrary.

Rawat's various arguments on appeal to this Court are unavailing. She first suggests, incorrectly, that Section 741 may be dissected so that she can rely on it for the proposition that a partnership interest is a single, unitary interest in a capital asset, while ignoring its explicit exception for inventory items of the partnership. Second, she contends that Section 751 should not be considered as resulting in a separate "deemed" sale of inventory, even while acknowledging that its implementing regulations contemplate a "hypothetical" sale, and even though the courts have also held that identical language in similar statutes contemplate "deemed," "hypothetical," or "constructive" sales. Third, she contends that Section 751 should be construed as determining only the "character" of a gain (i.e., dictating whether amounts received are capital gains or ordinary income), without any

-12-

relevance to the Code's source rules.  But, again, the courts say otherwise and do not so limit the statute's provisions.  Fourth, she claims that she should be relieved of tax liability because her sale of a partnership interest was not "effectively connected" to the partnership's U.S.-based business of selling energy drinks (rather than selling partnership interests).  But, under Section 751, her inventory gain is considered to have arisen from a sale of the inventory (the energy drinks) in the U.S.  Fifth, she suggests that Congress's enactment of a separate provision addressing sales of U.S. real property interests by foreign individuals and entities indicates that Section 751 should not affect sourcing.  But the fact that a particular approach was taken by a later Congress addressing a specific type of transaction by foreign persons does not inform the meaning of Section 751.  And sixth, she repeatedly invokes the "entity" theory of partnership law for the proposition that the income from the inventory should not be separated from the rest of her profits.  But, as this Court has acknowledged, the Code utilizes both the "entity" and "aggregate" theories of partnerships for different purposes.  Section 751 represents the latter approach.

The Tax Court correctly denied Rawat's motion for summary judgment, and its subsequent decision incorporating that ruling should be affirmed.

## ARGUMENT

**The portion of Rawat's profits from her sale of a partnership interest attributable to the partnership's inventory is taxable as U.S.-source income**

### Standard of review

This Court reviews the Tax Court's decisions in the same manner as it would a district court's decision in a non-jury case. I.R.C. § 7482(a)(1). Where, as here, there are no disputed issues of fact, the Court "appl[ies] *de novo* review to the Tax Court's determinations of law." *Grecian Magnesite*, 926 F.3d at 823.

### A.    Introduction:  U.S. taxation of foreign individuals

Foreign individuals are generally subject to U.S. income tax on income from sources within the United States. Nonbusiness income is generally taxed at a flat, 30 percent rate, while business income is taxed at the same rates that apply to U.S. citizens and residents. I.R.C. § 871(a), (b); Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts*, 1997 WL 439848, ¶ 67.1.1 (2023). Thus, a foreign individual—that is, a "nonresident alien"—engaged in a U.S.

-14-

business is taxable on income "effectively connected" to that business.
*See, e.g.*, I.R.C. § 871(b)(1).  And a partner in such a business is
considered as being engaged in the business itself.  I.R.C. § 875(1).
Generally, income from sources within the United States is treated as
"effectively connected," while income from sources outside the United
States is not.  I.R.C. § 864(c)(2), (3).

Within Subtitle A of the Code (covering "Income Taxes"),
Subchapter N provides specific rules for determining the source—U.S.
or foreign—of a variety of types of income.  *See* I.R.C. §§ 861–865.  The
parties here agree that Rawat's partnership interest was considered
"personal property" under those rules.  (JA354.)  The source rules
provide that income from personal property sales by nonresidents
generally "shall be sourced outside the United States."  I.R.C.
§ 865(a)(2).  That general rule, however, is subject to an exception for
"income derived from the sale of inventory property."  I.R.C. § 865(b).

The source of income from inventory sales is *not* determined by
residency.  I.R.C. § 865(b)(1).  Instead, the taxation of inventory income
is determined by the location where the inventory was produced,
purchased, or sold.  I.R.C. § 865(b)(2) (citing §§ 861(a)(6), 862(a)(6), and

-15-

863).  Typically, such income is sourced in "the country in which the property is sold."  Treas. Reg. § 1.861-7(a).

The purpose of the source rules is to ensure that income from personal property sales is sourced based on the predominant situs of the economic activity generating the income.  As the legislative history states, "[s]ource rules for sales of personal property should reflect the location of the economic activity generating the income at issue or the place of utilization of the assets generating that income."  H.R. Rep. No. 99-426, at 360 (1985), *reprinted in* 1986-3 C.B. (Vol 2) 1, 360; *accord* Joint Committee on Taxation, 99th Cong., *General Explanation of the Tax Reform Act of 1986*, at 917 (Comm. Print 1987) ("source rules for sales of personal property should generally reflect the location of the economic activity generating the income").

The source rules, however, do not necessarily resolve all issues that may arise when determining whether income or gain is taxable.  Thus, it may be necessary to look outside Subchapter N to determine the nature of income or gain when applying the source rules.  For example, in *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 86 (1934), the Supreme Court determined that the source rules reached

-16-

interest accruing on a nonresident alien's U.S. tax refund. The prior

version of Section 861 indicated that income from "[i]nterest on bonds,

notes or other interest-bearing obligations of residents" should be

included in a nonresident alien's U.S.-sourced income. *Id.* at 85–86. In

holding that this provision included interest on tax refunds, the Court

referred to the Code sections which authorized the issuance of refunds

with interest. *Id.* at 86; *see also, e.g., Hay v. Commissioner*, 145 F.2d

1001, 1006–07 (4th Cir. 1944) (determining that liquidating distribution

of domestic corporation was derived from U.S. sources with reference to

Code section discussing treatment of corporate distributions in general);

*Charron v. United States*, 200 F.3d 785, 792–94 (Fed. Cir. 1999)

(nonresident aliens' entitlement to deductions determined under Code

sections applying to deductions and substantiation in general).

### B. Subchapter K defines the nature of the inventory gain, which is taxable under the source rules

Although the source rules must be consulted to determine whether

a foreign individual is liable for U.S. taxes on a given subject, they do

not define the underlying economic activity for tax purposes. For that,

one must turn to another subchapter within the Code's "Income Taxes"

title addressing subject matter at issue. In this case, that is Subchapter

-17-

K, governing "Partners and Partnerships." *See* I.R.C. §§ 701–761.
Under those rules, gain attributable to inventory is treated differently
than the rest of the gain from the sale of the partnership interest when
it is sold.

In general, a partnership is not subject to federal income tax; its
items of income, gain, loss, deduction, and credit are allocated and
passed through to its partners. I.R.C. §§ 701, 702. A partnership must
report its tax items on an information return, I.R.C. § 6031, and the
partners must report their shares of the partnership's tax items on their
own returns, I.R.C. §§ 702, 704.

Subchapter K also provides specific rules governing the transfer of
partnership interests. As Rawat emphasizes (Br. 13–14), those rules
generally provide that a sale of a partnership interest is treated as the
sale of a "capital asset." I.R.C. § 741. But that general rule "bears on
its face an explicit exception." *Ware v. Commissioner*, 906 F.2d 62, 66
(2d Cir. 1990).

Specifically, Section 741 provides that gain or loss from the "sale
or exchange of an interest in a partnership" "shall be considered as gain
or loss from the sale or exchange of a capital asset, *except as otherwise*

-18-

*provided in section 751 (relating to unrealized receivables and inventory items)*." I.R.C. § 741 (emphasis added).  Section 751, in turn, provides that "[t]he amount of any money" received by a "partner in exchange for all or a part of his interest in the partnership attributable to" either unrealized receivables or "inventory items of the partnership" "shall be considered as an amount realized from the sale or exchange of property other than a capital asset."  I.R.C. § 751(a).

Accordingly, under Subchapter K, inventory and unrealized receivables are regarded "'as severable from the partnership interest'" for income-tax purposes.  *United States v. Woolsey*, 326 F.2d 287, 292 n.7 (5th Cir. 1963) (quoting S. Rep. No. 83-1622, at 99 (1954)).  "In effect, the partner is treated as though he disposed of such items independently of the rest of his partnership interest."  H.R. Rep. No. 83-1337, at 70 (1954); S. Rep. No. 83-1622, at 98–99.  And the partner selling his or her interest is "'subject to the same tax consequences which would be accorded an individual entrepreneur.'"  *Woolsey*, 326 F.2d at 292 n.7 (quoting S. Rep. No. 83-1622, at 99); *accord* H.R. Rep. No. 83-1337, at 71.  As the Tax Court noted here, such individuals are

taxable on their "gain or loss on each" business asset when they sell a sole proprietorship. (JA350.)

"The purpose of the § 751 exception is to prohibit ordinary income from being transformed into capital gains (which is taxed more favorably) simply by being passed through a partnership and sold." *Mingo v. Commissioner*, 773 F.3d 629, 634 (5th Cir. 2014) (citing *Madorin v. Commissioner*, 84 T.C. 667, 682 (1985); H.R. Rep. No. 83-1337, at 70), *aff'g*, T.C. Memo. 2013-149. Without Section 751, "members of a partnership could, by dissolving and reforming the partnership each year, be able to treat their otherwise ordinary income as capital gains arising out of the partners' sales of their interests in the partnership." *Ware*, 906 F.2d at 64; *see also Ledoux v. Commissioner*, 77 T.C. 293, 301 (1981) (referring to this as "the problem of the so-called 'collapsible partnership'"), *aff'd*, 695 F.2d 1320 (11th Cir. 1983). Accordingly, courts have held that Section 751 should "be broadly and liberally construed." *Woolsey*, 326 F.2d at 291.

The Tax Court's decision in *Grecian Magnesite* illustrates how the source rules and partnership rules apply to the sale of a partnership interest. That case, like the present one, was decided by Judge

-20-

Gustafson.  The court there held that a nonresident alien's gain on the sale of its partnership interest was foreign-source income.  149 T.C. at 66.  In that case, the IRS argued that the foreign partner's liquidation of its interest should be evaluated as a disposition of its interest in the assets that made up the partnership's business.  *Id.* at 72.  It relied on the "aggregate" theory of partnership law under which a partnership is an aggregation of individuals with no distinct identity of its own.  *Id.* at 72–73.  The partner, in contrast, relied on the "entity" theory (under which the partnership is regarded as a separate entity akin to a corporation) as reflected in Section 741's general rule.  *See id.* at 73, 76–77.

The court agreed with the partner, finding that Section 741 was dispositive.  149 T.C. at 78–82.  In doing so, it rejected the IRS's argument that Section 741 applied "only to the *character* of the gain recognized—i.e., as capital rather than ordinary."  *Id.* at 78.  It noted that the IRS attempted to rely on other parts of Subchapter K in support of its arguments, but failed to offer any persuasive rational for relying on those provisions and not Section 741.  *Id.* at 80–81.  It explained that Subchapter K "mandate[d] treating the disputed gain as

-21-

capital gain from the disposition of a single asset" to which the source

rules then applied. *Id.* at 81–82. In other words, Section 741 "not only

determin[ed] the character of gain or loss but also identif[ied] . . . the

property involved in the transaction (i.e., 'an interest in a partnership'

. . . )." (JA357 n.12.)

The court also recognized that Section 741 included an explicit

exception ("except as otherwise provided in section 751"), observing that

"Congress is always free, having enacted a general rule, to enact

exceptions." 149 T.C. at 78. It noted that under the exception,

inventory and unrealized receivables are "addressed separately from

the remainder of the partnership interest when that interest is sold or

liquidated." *Id.* at 78 n.16. In such cases, "the partnership is deemed to

have bought the liquidated partner's share of those assets from that

partner, so that partner has gain of a character and amount consistent

with such a hypothetical sale." *Id.* But because there was no allegation

in that case that Section 751 applied (i.e., no allegation that the gain

-22-

was attributable to inventory), the Tax Court did not address its

application in *Grecian Magnesite*. *Id.*[5]

As Judge Gustafson recognized, this case is the mirror image of

*Grecian Magnesite* (*see* JA357 n.12; JA359–60); whereas *Grecian*

*Magnesite* did not implicate Section 741's exception for the treatment of

inventory as provided in Section 751, this case turns on it.  There is no

dispute that the gain at issue is attributable to the partnership's

inventory.  (*See* Br. 10.)  There is also no dispute that the inventory was

produced, purchased, and sold in the United States.  (Br. 28 n.16;

JA367 ¶ 3.)  Section 751 thus applies so that Rawat has gain of a nature

"consistent with . . . a hypothetical sale" of the partnership's inventory,

*Grecian Magnesite*, 149 T.C. at 78 n.16, so that the inventory gain is

"sever[ed]" from the rest of the partnership interest, *Woolsey*, 326 F.2d

at 292 n.7; *Mingo*, T.C. Memo. 2013-149, at [*10].  Thus, Rawat is

treated in the same manner that a sole proprietor or independent

entrepreneur would be for her deemed sale of inventory property.  (*See*

JA350); *Woolsey*, 326 F.2d at 292 n.7.  In the words of the statute, the

---

[5] The IRS appealed the Tax Court's decision in *Grecian Magnesite*
on a different ground not relevant here.  926 F.3d at 822.  This Court
ultimately affirmed.  *Id.* at 820–21.

-23-

amount of money received from the sale of her partnership interest that is attributable to inventory items of the partnership is "considered as an amount realized from the sale" of inventory (rather than a capital asset).  I.R.C. § 751.

Moreover, the source rules governing the treatment of "income derived from" inventory sales do not require a formal "sale" of inventory.  *See* I.R.C. § 865(i)(2) ("sale" includes "an exchange or any other disposition").  Under the Treasury Department's implementing regulations, the amount of the selling partner's "income" attributable to inventory is determined in the same manner as if the partnership had actually sold the inventory.  Treas. Reg. § 1.751-1(a)(2), (g) (example 1).  It follows that Rawat's inventory gain is considered "income derived from the sale of inventory property" under I.R.C. § 865(b)(2) and is therefore sourced according to a deemed sale of the inventory by the partnership in the United States.

Indeed, had the partnership sold the inventory before Rawat sold her partnership interest, her distributive share of the profits would unquestionably be ordinary income.  *See* Treas. Reg. § 1.61-3(a) (gross income includes business income from sales of merchandise); I.R.C.

-24-

§ 1221(a)(1) (defining "capital asset" as excluding a taxpayer's "stock in trade" or "other property of a kind which would properly be included in the inventory"). And that income would be U.S.-source income if the inventory was sold in the United States. *See* Treas. Reg. § 1.861-7(a); *see also* JA281 (agreeing that if Rawat "had actually sold inventory of her own trade or business in the United States" it would be taxable in the United States). Rawat's position that the sale of her partnership interest, as well as the gain attributable to the partnership's inventory, is all just part of a single capital asset sale is contrary to the purpose of Section 751 to "prohibit ordinary income from being transformed into capital gains . . . simply by being passed through a partnership and sold." *Mingo*, 773 F.3d at 634. "The existence of a partnership does not result in the creation of a sovereign alchemist that can transmute ordinary income into a capital asset." *Woolsey*, 326 F.2d at 291. For the same reason she cannot transform ordinary income derived from inventory into capital gain, Rawat may not transform her income attributable to U.S. inventory into foreign-source income simply by passing it through a partnership.

The Tax Court correctly held that the source rules specifically governing inventory property in I.R.C. § 865(b) (and the provisions referenced therein)—rather than the rule applicable to personal property in general in I.R.C. § 865(a)—applied to the portion of gain attributable to inventory from Rawat's sale of her partnership interest.

### C.    Rawat's arguments are unavailing

Rawat offers several arguments in support of her position that the Tax Court got it wrong and that her inventory gain is not taxable.  She contends:  (a) that she can rely on the first sentence of Section 741 as a "complete" provision to support her argument that her partnership interest is a capital asset, allowing her to ignore its exception and Section 751; (b) that Section 751 does not result in a "deemed sale" of inventory; (c) that Section 751 is limited to defining the character of gain from the sale of a partnership interest; (d) her sale was not "effectively connected" to a U.S. business because she actually sold a partnership interest and the partnership was not in the business of selling partnership interests; (e) that Section 897(g), as a "sourcing exception" in Subchapter N, supports her argument that Section 751 has no effect on sourcing; and (f) that the "entity theory" overrides the

plain language of Sections 741 and 751.  None of these arguments is

persuasive.

### 1.    Rawat's attempt to dissect the statute fails

The "plain language of section 741" (Br. 13 (emphasis omitted))

does not support Rawat's argument.  Rawat appears to argue that her

partnership interest was a unitary "capital asset" under Section 741

and, therefore, should be classified as a sale of personal property

sourced outside the United States under Section 865(a)(2).  But Rawat

cannot cherry pick from the statute by relying on part of it while

ignoring the remainder.

In its entirety, Section 741 provides:

> In the case of a sale or exchange of an interest in a
> partnership, gain or loss shall be recognized to the transferor
> partner.  Such gain or loss shall be considered as gain or loss
> from the sale or exchange of a capital asset, except as
> otherwise provided in section 751 (relating to unrealized
> receivables and inventory items).

Section 751(a), titled "Sale or exchange of interest in partnership,"

provides in turn that:

> The amount of any money . . . received by a transferor
> partner in exchange for all or a part of his interest in the
> partnership attributable to (1) unrealized receivables of the
> partnership, or (2) inventory items of a partnership, shall be

considered as an amount realized from the sale or exchange of property other than a capital asset.

This statutory scheme thus treats gain from the sale of a partnership interest as gain from the sale of a singular "capital asset," *except* for the amount of money from the sale of the partnership interest that is attributable to unrealized receivables or inventory items of the partnership.  As to any such amount of money, the statute carves out a specific exception, treating such amount *not* as gain from the sale of a capital asset, but rather as gain from the sale of "property other than a capital asset"—that is, where inventory items are concerned, the amount is considered as gain from the sale of those inventory items. Rawat would have this Court simply ignore the statutes' special treatment of gain attributable to inventory items in a transaction involving the sale or exchange of a partnership interest.

Rawat claims that she is relying on the first sentence of Section 741 because it is "a complete provision."  (Br. 33; *see also* Br. 31 ("The sale of the unified partnership interest is a *fait accompli* by the time the second sentence of section 741 and section 751(a)  . . . are applied.").) Even if that were true, it does not give her license to ignore the second sentence.  Section 741 is not a statute phrased in the disjunctive with

two alternative subsections such that the second provision does not apply if the first does. To the contrary, the second sentence explicitly refers back to the first sentence, building on it. And both sentences use mandatory ("shall be") phrasing indicating that they apply in all instances. *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) ("The word 'shall' generally imposes a nondiscretionary duty.").

In any event, Rawat is actually relying on the first sentence *and* the first clause of the second sentence of Section 741 (Br. 33), which is critical to her argument. It is that first clause of the second sentence that indicates that the sale of a partnership interest shall be "'considered as a gain or loss from the sale of a capital asset.'" (Br. 33 (quoting I.R.C. § 741).) Rawat cites this clause as a complete sentence—ignoring the "explicit exception," *Ware*, 906 F.2d at 66, that follows: "except as otherwise provided in section 751 (relating to unrealized receivables and inventory items)," I.R.C. § 741.

In *Woolsey*, 326 F.2d at 291, the Fifth Circuit rejected a similar argument. The Court explained that "[t]he taxpayers have thoroughly impressed upon us their strong reliance upon § 741 dealing with the capital asset provision in the sale or exchange of an interest in a

-29-

partnership; but we cannot escape the conclusion that the taxpayers have over-emphasized § 741 and have de-emphasized the exceptions to it as set forth in § 751." The court thus looked to the "underlying right" sold and held that part of the sale concerned rights to earn ordinary income in the future properly defined as "unrealized receivables" under Section 751. *Id.* at 291–92.

The same reasoning applies here. As the Tax Court explained, under Section 751 "the portion of the sold partnership interest attributable to inventory items must be separately 'considered' as pertaining to 'other than a capital asset.'" (JA355–56.) Here, "in the vocabulary of section 751(a), the Inventory Gain is 'attributable to inventory' and is 'considered' to have been 'realized from the sale' of 'inventory items.'" (JA356.) Although Section 741 does "preclude[ ]" an "aggregation approach" in general, "the singular 'capital asset' treatment of section 741 is thus partially disaggregated by section 751." (JA357.) The Tax Court thus properly rejected Rawat's attempt to read the exception out of Section 741.

-30-

### 2.    Section 751 incorporates a "deemed sale" approach

As many—including Rawat—have recognized, Section 751 contemplates a deemed or hypothetical sale of inventory to determine the tax consequences to the selling partner. Her arguments to the contrary have no merit.

The statute states that the amount of sale proceeds attributable to inventory items of the partnership "shall be considered as an amount realized from the sale or exchange of property other than a capital asset." I.R.C. § 751(a). It thus contemplates a deemed "sale" of "property other than" the partnership interest itself. Accordingly, when Section 751 applies, it "require[s] that we look through the partnership to the underlying assets and *deem such a sale* as the sale of separate interests in each asset owned by the partnership." *Grecian Magnesite*, 149 T.C. at 79 (emphasis added); *accord Glade Creek Partners, LLC v. Commissioner*, T.C. Memo. 2023-82, at [*12 n.10] (quoting *Grecian Magnesite*).

Likewise, the Treasury Regulations determine the selling partner's tax consequences by analyzing a deemed or hypothetical sale of the partnership's property. They explain that a partner selling a

partnership interest will recognize ordinary income in the amount that

the partner would have realized "if the partnership had sold all of its

property in a fully taxable transaction for cash in an amount equal to

the fair market value of such property."  Treas. Reg. § 1.751-1(a)(2).

The partner's capital gain is then reduced by the amount of ordinary

income realized in the sale.  *Id.*

Rawat contends that "[t]here is no basis for a 'deemed' sale of

inventory" even while conceding that the regulations "hypothesize a

sale transaction."  (*Compare* Br. 34 (emphasis omitted), *with* Br. 29.)  In

support of her argument, she cites (Br. 34–35) a case having nothing to

do with Sections 741 or 751.  *Coggin Auto. Corp. v. Commissioner*, 292

F.3d 1326, 1331–34 (11th Cir. 2002) (statute requiring a corporation

converting from a C corporation to an S corporation to recognize income

for certain inventory did not apply ).  Although the statute at issue in

that case concerned inventory, the court decided that it did not apply

based on its plain language.  *Id.* at 1331–32.  The other case she cites is

also off the mark.  *Petroleum Corp. of Texas v. United States*, 939 F.2d

1165, 1169 (5th Cir. 1991) (Sections 741 and 751 did not require

corporation distributing partnership interests to its shareholders to

-32-

recognize "recapture" income from distribution of certain types of property because distributions did not qualify as sales or exchanges). Meanwhile, "the preeminent treatise on partnership taxation" (according to taxpayer (Br. 31 n.20)) contradicts her argument, indicating that the statute uses a "'hypothetical sale' approach." William S. McKee et al., *Federal Taxation of Partnerships & Partners*, 1997 WL 663649, ¶ 17.02[3][a] (2023); *see also* Arthur B. Willis et al., *Partnership Taxation*, 1999 WL 630381, ¶ 14.03[1][b] (2023) (similar).

Although taxpayer notes (Br. 34) that other provisions in the Code explicitly use the phrase "deemed sale," the phrase "considered as" (used in both Sections 741 and 751) has been interpreted to have the same meaning. The Second Circuit, for example, referred to that same language in a related Subchapter K provision as resulting in a "deemed sale." *Rodman v. Commissioner*, 542 F.2d 845, 854–55 & n.9 (2d Cir. 1976) (discussing, *inter alia*, I.R.C. § 731(a)).

Outside of Subchapter K, the courts have construed Section 631(a) as treating the cutting of timber as a "constructive" or "hypothetical sale." *Rosenthal v. Commissioner*, 416 F.2d 491, 496 (2d Cir. 1969) ("constructive sale"), *Schudel v. Commissioner*, 563 F.2d 1300, 1301 (9th

-33-

Cir. 1977) ("hypothetical sale"). That statute is similar to Section 751 in providing that cut timber "shall be *considered as* a sale or exchange of such timber cut during such year." I.R.C. § 631(a) (emphasis added); *see also Fluor Corp. & Affiliates v. United States*, 126 F.3d 1397, 1401 (Fed. Cir. 1997) ("The ordinary meaning of the word 'deemed' in the legal context is 'considered' or 'treated as if.'"); *Dresser Indus., Inc. v. United States*, 238 F.3d 603, 610 (5th Cir. 2001) (similar); *Marquardt Co. v. United States*, 822 F.2d 1573, 1579 & n.10 (Fed. Cir. 1987) (referring to Code section providing that a corporation would be "treated as" having sold property as a "deemed 'sale'").

Therefore, Section 751 is properly interpreted as contemplating a deemed or hypothetical sale for purposes of determining the tax consequences to the selling partner.[6]

### 3.    Section 751 is not limited to characterization

The parties agree that Section 751 is not, itself, a "source" rule and that determining the nature and source of an economic gain may

---

[6] Section 751 and Treas. Reg. § 1.751-1(a) are concerned with the tax consequences to the selling partner upon sale of the partnership interest. Accordingly, the deemed or hypothetical sale under Section 751 and Treas. Reg. § 1.751-1(a) is for that purpose.

-34-

require separate analyses.  (*See* Br. 19–21.)  The Tax Court acknowledged as much.  (JA356.)  But Rawat fails to appreciate that Section 751 defines the nature of the property at issue, to which the source rules must be applied.  Critically, and contrary to Rawat's arguments (Br. 18–19), Section 751 is not limited to determining an asset's character.  The Fifth and Eighth Circuits have already so held.

In *Mingo v. Commissioner*, 773 F.3d at 632–34, the Fifth Circuit held that Section 751 precluded a partner from relying on the installment accounting method under § 453.  Taxpayer had sold her partnership interest and attempted to use the installment accounting method to defer payment of taxes on the portion attributable to unrealized receivables.  *See id.* at 635.  But that method can only be used for property sales (excluding inventory).  *Id.* at 634; I.R.C. § 453(b).  As the proceeds attributable to the partnership's unrealized receivables were severed from the rest of the gain from the sale and classified as ordinary income under § 751, they "d[id] not qualify for installment method reporting because they d[id] not arise from the sale of [non-inventory] property."  773 F.3d at 634.

-35-

Similarly, in *Quick's Trust v. Commissioner*, 444 F.2d 90 (8th Cir. 1971), *aff'g*, 54 T.C. 1336 (1970), the Eighth Circuit adopted the Tax Court's holding that Section 751 precluded a taxpayer from receiving stepped-up basis treatment under § 1014.  The taxpayer had received a partnership interest from a decedent and sought to benefit from a "stepped-up" basis adjustment that would have reduced its income taxes.  444 F.2d at 91–92.  But other Code provisions precluded that adjustment if the partnership's unrealized receivables were considered separately.  54 T.C. 1341 n.7.  The taxpayer argued that the "entity theory" applied and that the partnership interest was therefore "separate and distinct from the underlying assets" (i.e., "a unitary res, incapable of further analysis").  *Id.* at 1342, 1345.  The court rejected the taxpayer's argument, observing that under Section 751, unrealized receivables and inventory "are regarded 'as severable from the partnership interest and as subject to the same tax consequences which would be accorded an individual entrepreneur.'"  54 T.C. 1343 (citing H.R. Rep. No. 83-1337, at 71; S. Rep. No. 83-1622, at 99); *see also Woodhall v. Commissioner*, 454 F.2d 226, 229 (9th Cir. 1972) (denying

stepped-up basis treatment to sole heir and executrix of partner based on analysis of the legislative history).

Rawat's attempts to distinguish these authorities are unavailing. She dismisses *Mingo* and *Quick Trust* for "relying on legislative history," despite her own extensive citation of legislative history. (*Compare* Br. 31 n.20 *with* Br. 15–16, 18–19.)  She also suggests (Br. 35) that they are distinguishable because they involved unrealized receivables rather than inventory, even though Section 751 treats the two types of assets identically.

Ignoring such authorities under these circumstances would be ill-advised.  "Uniformity of decision among the circuits is vitally important on issues concerning the administration of tax laws." *Unger v. Commissioner*, 936 F.2d 1316, 1320 (D.C. Cir. 1991) (quoting *Keasler v. United States*, 766 F.2d 1227, 1233 (8th Cir. 1985) (alteration marks omitted)).  "Thus, the tax decisions of other circuits should be followed unless they are demonstrably erroneous or there appear cogent reasons for rejecting them." *Id.* (quoting *Keasler*, 766 F.2d at 1233).  Taxpayer has failed to identify any "cogent reasons" for rejecting *Mingo* and *Quick Trust*, and they are by no means "demonstrably erroneous."

-37-

Instead of addressing these authorities on their merits, Rawat
relies on an extensive discussion of current law (even though she
acknowledges that it does not apply here) in support of her argument
that "character and source require separate analyses." (Br. 21–24
(discussing I.R.C. § 864(c)(8) (2018) and Treas. Reg. § 864(c)(8)-1
(2023).) As noted above, there is no dispute that source and character
may require separate analyses. (JA356.) And, as Rawat acknowledges
(Br. 21), the primary purpose of the new law was to prospectively
overrule the Tax Court's decision in *Grecian Magnesite*. *See* S. Comm.
on Budget, 115th Cong., *Reconciliation Recommendations Pursuant to
H. Con. Res. 71*, S. Prt. 115-20, at 211 (Comm. Print. 2017). But the
new law does not apply here. Rather, it is the law as it stood in 2008
and as construed by *Grecian Magnesite* that controls the outcome here.
And *Grecian Magnesite*, 149 T.C. at 78–82 & n.16, recognized that
Subchapter K determined the nature of the asset and that inventory
gain had to be treated differently than the remainder of the proceeds
from the sale.

Rawat also relies on legislative history for her contention that the
"sole purpose" of Section 751 is to change the character of gains. (Br. 18

(emphasis omitted).)  As she suggests, the legislative history is focused on Congress's efforts to address abusive transactions (such as the "collapsible partnership").  (*See* Br. 18–19 & n.7); *Ledoux*, 77 T.C. at 301.  But it also suggests that Section 751 was intended to have broader implications:  "The statutory treatment proposed, in general, regards the income rights as severable from the partnership interest and as subject to the same tax consequences which would be accorded an individual entrepreneur."  H.R. Rep. No. 83-1337, at 71; S. Rep. No. 83-1622, at 99.  Thus, the legislative history supports determining the income tax consequences to the taxpayer from her sale of her partnership interest as if the inventory had been sold, which she acknowledges would result in her liability for U.S. income tax.  (JA281.)

Consequently, although Sections 741 and 751 are not "sourcing rules," they are not limited to character either.  They define the nature of the property interest to which the source rules must then be applied.

### 4.    Rawat's sale was "effectively connected" to the partnership's business

Rawat contends that the inventory gain was not "effectively connected" income because "she is not in the business of selling partnership interests."  (Br. 25.)  The lynchpin of her argument is that

Section 875(1) "is inapplicable" under *Grecian Magnesite*. (Br. 25–27.) But this flawed argument is dependent on her other (incorrect) arguments that Section 751 is limited to characterization and does not require a deemed sale.

Section 875(1) provides that "for purposes of this subtitle"—i.e., Subtitle A, "Income Taxes—"a nonresident alien individual or foreign corporation shall be considered as being engaged in a trade or business within the United States if the partnership of which such individual or corporation is a member is so engaged." As the Tax Court concluded, "under that provision, as a matter of law, Ms. Rawat was 'engaged in a trade or business within the United States,' i.e., [the partnership]'s business of selling energy drinks." (JA352–53.)

Rawat's argument appears to be that, although she is "considered as" being in the energy drink business in the United States by virtue of her interest in the partnership under I.R.C. 875(1), her gain was non-U.S. source because it was from the sale of a partnership interest, not the sale of energy drinks. And that is true with respect to her non-inventory gain.

But Rawat ignores the fact that her inventory gain is "considered as" resulting from a deemed sale of inventory (i.e., energy drinks) under Section 751. *See* Point C.2, *supra*. As discussed above, because Section 751 is not limited to determinations of character, *see* Point C.3, *supra*, the inventory gain is considered as income from the deemed disposition of inventory located in the United States. Under Section 864(c)(3), all income or gain from sources in the United States are "effectively connected" with a U.S. business. Being engaged in any U.S. business is sufficient for that purpose, and taxpayer was engaged in the partnership's business by virtue of Section 875(1). Thus, the inventory gain falls under the inventory exception to Section 865's residence rule and is properly sourced in the United States, where it was produced, purchased, and sold.

Taxpayer relies on *Grecian Magnesite* for her arguments to the contrary—incorrectly suggesting that this Court's decision in that case "controls here" (Br. 36). Although the Tax Court's decision in that case is relevant to the analysis here, the appeal concerned a different issue.

As noted above, in that case, the Tax Court rejected the IRS's argument that Section 741 did not apply to the partner's sale of its

-41-

partnership interest because it was limited to determining the

"character" of the gain. *Grecian Magnesite*, 149 T.C. at 78. The court

correctly explained that Rawat's identical argument here regarding

Section 751 "proves too much" because, if correct, it would undermine

the court's holding in *Grecian Magnesite* on which she relied for her

separate argument that the non-inventory gain is not taxable. (JA357

n.12.)

The IRS appealed the Tax Court's decision in *Grecian Magnesite*

on its alternate argument—that the gain was taxable because it was

attributable to the partnership's U.S. office under I.R.C. § 865(e)(2)(A).

926 F.3d at 822. Taxpayer quotes portions of both opinions discussing

the office rule. (Br. 26–28 (quoting 149 T.C. at 88, 91, and 926 F.3d at

826–27).) But that rule is not at issue in this case. (*Cf.* Br. 27 n.15

(asserting that the IRS has "waived any such argument").) Here, Rawat

is subject to federal income tax on the gain attributable to the

partnership's inventory because she is treated as being engaged in the

partnership's business of selling energy drinks under Section 875(1),

and income or gain considered to be from the disposition of inventory is

treated as U.S. source under Section 865(b) and as effectively connected

-42-

income under Section 864(c)(3).  In *Grecian Magnesite*, the Tax Court

only referred to Section 875(1) in passing, and this Court did not

address it at all.  Regardless, Section 751 was not at issue in that case,

and the Tax Court's limited discussion of it supports the IRS's analysis

here.  *See* 149 T.C. at 78 n.16.

Consequently, Section 875(1) applies, and this Court's decision in

*Grecian Magnesite* provides no guidance here.[7]

### 5.    Section 897(g) does not support taxpayer's argument

Rawat repeatedly cites I.R.C. § 897(g) as an example of "an actual

statutory sourcing 'exception.'"  (Br. 16–17, 29 n.18, 30 n.19.)  That

provision was enacted as part of a broader package of reforms decades

---

[7] Rawat also mistakenly suggests (Br. 32 n.22) that the definition of "inventory items" in Section 751(d)(1) is narrower than the definition of "inventory property" in Section 865(i)(1).  Both sections incorporate by reference the definition in I.R.C. § 1221(a)(1):  "stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."  Although Section 751(d)(2)–(3) includes some other property specific to partnerships, there is no dispute that the inventory in question here satisfies both definitions.  Consequently, Rawat's inventory gain was considered as arising from a deemed sale or disposition under Section 751 and, therefore, qualified for the exception to the residence rule under Section 865(b).

-43-

after Sections 741 and 751. (*See* Br. 17 n.6.) The reforms were added as a new Section 897 in Part II (Nonresident Aliens and Foreign Corporations) of Subchapter N. The source rules, by contrast, are contained in Part I of Subchapter N.

Section 897 specifically targeted efforts by foreign investors to avoid taxes on the sale of U.S. real estate. *See* H.R. Rep. No. 96-1167, at 509–511 (1980), *reprinted in* 1980 U.S.C.C.A.N. 5526, 5872–74. Congress did not want such an investor to avoid the statutory safeguards "by holding the real estate through a corporation, partnership, or trust and disposing of his interest in that entity rather than having the entity itself sell the real estate." *Id.* at 511.

Thus, it is not surprising that Congress placed these foreign-investment reforms together in one section rather than subdividing them into various other subchapters. For example, it could have placed subsection (g) in Subchapter K and subsection (k) in Subchapter M (concerning real estate investment trusts). But it was entirely reasonable for Congress to put an exception that applied only to foreign taxpayers in a single section within a group of provisions addressing foreign individuals and entities. In contrast, because Section 751

-44-

affects the general nature of a partnership asset for income-tax
purposes, it is at home with related partnership rules in Subchapter K.

In any event, the manner in which a later Congress addressed
partnerships in a particular setting does not usefully inform the
meaning of Section 751.

### 6.   The "entity theory" does not help Rawat

Throughout her brief, Rawat relies heavily on the "entity theory"
of partnership taxation.  (Br. 13–14, 23, 28, 33.)  But the Code does not
treat a partnership interest as a "single, unitary interest" (Br. 12) for all
purposes.  As this Court has acknowledged, the Code "treats
partnerships as aggregates for some purposes and as separate entities
for others."  *Unger*, 936 F.2d at 1318; *accord Petroleum Corp. of Texas*,
939 F.2d at 1169 ("Federal income tax law is replete with examples of
applying the entity theory of partnerships on some occasions while
applying the conduit or aggregate theory on others."); McKee et al,
*supra*, ¶ 1.02 ("Subchapter K represents a blending of two views as to
the nature of partnerships"—namely, the "aggregate and entity
concepts") (capitalization omitted).

-45-

Thus, it is entirely plausible that the Code would use a general rule favoring the entity approach for some purposes (i.e., under § 741), but have exceptions that utilize the aggregate approach (i.e., under § 751). The Tax Court correctly concluded that "[t]he singular 'capital asset' treatment of section 741 is thus partially disaggregated by section 751." (JA357.) Section 741's exception applies here, and the entity theory does not change its effect on taxpayer's inventory gain.

# CONCLUSION

The Tax Court correctly denied Rawat's motion for summary judgment, and its subsequent decision entered in this case should be affirmed.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ Douglas C. Rennie

JACOB EARL CHRISTENSEN          (202) 307-0878
DOUGLAS C. RENNIE               (202) 305-7546
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

DECEMBER 19, 2023

-47-

# STATUTORY ADDENDUM

## I.R.C. § 741.    Recognition and character of gain or loss on sale or exchange

In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner.  Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items).

## I.R.C. § 751.    Unrealized receivables and inventory items

**(a) Sale or exchange of interest in partnership.**--The amount of any money, or the fair market value of any property, received by a transferor partner in exchange for all or a part of his interest in the partnership attributable to--

**(1)** unrealized receivables of the partnership, or

**(2)** inventory items of the partnership,

shall be considered as an amount realized from the sale or exchange of property other than a capital asset. . . .

## I.R.C. § 865.    Source rules for personal property sales

**(a) General rule.**--Except as otherwise provided in this section, income from the sale of personal property--

**(1)** by a United States resident shall be sourced in the United States, or

**(2)** by a nonresident shall be sourced outside the United States.

**(b) Exception for inventory property.**--In the case of income derived from the sale of inventory property--

    **(1)** this section shall not apply, and

    **(2)** such income shall be sourced under the rules of sections 861(a)(6), 862(a)(6), and 863.

Notwithstanding the preceding sentence, any income from the sale of any unprocessed timber which is a softwood and was cut from an area in the United States shall be sourced in the United States and the rules of sections 862(a)(6) and 863(b) shall not apply to any such income. For purposes of the preceding sentence, the term "unprocessed timber" means any log, cant, or similar form of timber. . . .

    **(i) Other definitions.**--For purposes of this section--

    **(1) Inventory property.**--The term "inventory property" means personal property described in paragraph (1) of section 1221(a).

    **(2) Sale includes exchange.**--The term "sale" includes an exchange or any other disposition. . . .

## Treas. Reg. § 1.751–1   Unrealized receivables and inventory items.

**(a) Sale or exchange of interest in a partnership—**

    **(1) Character of amount realized.** To the extent that money or property received by a partner in exchange for all or part of his partnership interest is attributable to his share of the value of partnership unrealized receivables or substantially appreciated inventory items, the money or fair market value of the property received shall be considered as an amount realized from the sale or exchange of property other than a capital asset. The remainder of the total amount realized on the sale or exchange of the partnership interest is realized from the sale or exchange of a

capital asset under section 741.  For definition of "unrealized receivables" and "inventory items which have appreciated substantially in value", see section 751(c) and (d).  Unrealized receivables and substantially appreciated inventory items are hereafter in this section referred to as "section 751 property".  See paragraph (e) of this section.

**(2) Determination of gain or loss.**  The income or loss realized by a partner upon the sale or exchange of its interest in section 751 property is the amount of income or loss from section 751 property (including any remedial allocations under § 1.704–3(d)) that would have been allocated to the partner (to the extent attributable to the partnership interest sold or exchanged) if the partnership had sold all of its property in a fully taxable transaction for cash in an amount equal to the fair market value of such property (taking into account section 7701(g)) immediately prior to the partner's transfer of the interest in the partnership.  Any gain or loss recognized that is attributable to section 751 property will be ordinary gain or loss.  The difference between the amount of capital gain or loss that the partner would realize in the absence of section 751 and the amount of ordinary income or loss determined under this paragraph (a)(2) is the transferor's capital gain or loss on the sale of its partnership interest.  See § 1.460–4(k)(2)(iv)(E) for rules relating to the amount of ordinary income or loss attributable to a contract accounted for under a long-term contract method of accounting. . . .

**(g) Examples.**  Application of the provisions of section 751 may be illustrated by the following examples:

**Example 1.**

(i)(A) A and B are equal partners in personal service partnership PRS.  B transfers its interest in PRS to T for $15,000 when PRS's balance sheet (reflecting a cash receipts and disbursements method of accounting) is as follows:

|  | Assets | |
| --- | --- | --- |
|  | **Adjusted basis** | **Fair market value** |
| Cash | $3,000 | $3,000 |
| Loans Receivable | 10,000 | 10,000 |
| Capital Assets | 7,000 | 5,000 |
| Unrealized Receivables | 0 | 14,000 |
| Total | 20,000 | 32,000 |
|  | **Liabilities and Capital** | |
|  | **Adjusted per books** | **Fair market value** |
| Liabilities | $2,000 | $2,000 |
| Capital: |  |  |
| A | 9,000 | 15,000 |
| B | 9,000 | 15,000 |
| Total | 20,000 | 32,000 |

(B) None of the assets owned by PRS is section 704(c) property, and the capital assets are nondepreciable.  The total amount realized by B is $16,000, consisting of the cash received, $15,000, plus $1,000, B's share of the partnership liabilities assumed by T.  See section 752.  B's undivided half-interest in the partnership property includes a half-interest in the partnership's unrealized receivables items.  B's basis

for its partnership interest is $10,000 ($9,000, plus $1,000, B's share of partnership liabilities).  If section 751(a) did not apply to the sale, B would recognize $6,000 of capital gain from the sale of the interest in PRS.  However, section 751(a) does apply to the sale.

(ii) If PRS sold all of its section 751 property in a fully taxable transaction immediately prior to the transfer of B's partnership interest to T, B would have been allocated $7,000 of ordinary income from the sale of PRS's unrealized receivables.  Therefore, B will recognize $7,000 of ordinary income with respect to the unrealized receivables.  The difference between the amount of capital gain or loss that the partner would realize in the absence of section 751 ($6,000) and the amount of ordinary income or loss determined under paragraph (a)(2) of this section ($7,000) is the transferor's capital gain or loss on the sale of its partnership interest.  In this case, B will recognize a $1,000 capital loss. . . .

**Treas. Reg. § 1.861–7      Sale of personal property.**

**(a) General.**  Gains, profits, and income derived from the purchase and sale of personal property shall be treated as derived entirely from the country in which the property is sold.  Thus, gross income from sources within the United States includes gains, profits, and income derived from the purchase of personal property without the United States and its sale within the United States. . . .

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    [X]   this document contains 8,938 words, **or**

    [ ]   this brief uses a monospaced typeface and contains _____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X]   this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

    [ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

(s)   _/s/ Douglas C. Rennie_

Attorney for _the Commissioner of Internal Revenue_

Dated: _____December 19, 2023_